IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 14  P 4: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| SHELDON G. ADELSON, | |
| Plaintiff, | Civil Action No. |
| v. | 04-cv-10356-RCL |
| MOSHE HANANEL, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF HANANEL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Moshe Hananel ("Hananel") offers this Memorandum in Support of his Motion to Dismiss For Lack Of Personal Jurisdiction. Pursuant to Fed. R. Civ. P. 12(b)(2) Hananel, a citizen of Israel, says that he lacks the minimum contacts with this District necessary for personal jurisdiction and seeks a dismissal of the present action. Hananel also relies on the Affidavit of Moshe Hananel In Support Of Motions filed herewith. Hananel has also filed, simultaneously herewith, a motion to dismiss for forum non conveniens and a motion to stay proceedings (in the alternative to dismissal) with supporting memoranda.

**Procedural Background**

Adelson commenced this action on February 23, 2004 by filing a Complaint in four counts. Service was accomplished in Israel on May 24, 2004. Adelson's Complaint alleges injury from Hananel's claim for interest in investments by Adelson and companies he controls in gambling casinos and hotels in Macau, China ("Macau claim"). Hananel has filed the present motion to dismiss for lack of personal jurisdiction, as well as a motion to dismiss for forum non conveniens and an alternative motion to stay proceedings pending the outcome of prior

proceedings in Israel between the same parties on the same issues.

## Facts

Hananel shows here that the working relationship between himself and Adelson was established and performed by him in Israel and other countries outside the United States. He shows this in his Affidavit and by Adelson's conduct in three litigations between Adelson and Hananel pending in Israel, where Adelson has never mentioned contacts or witnesses in Massachusetts, and asks this Court to conclude that Adelson's sole purpose in bringing this duplicative action in Massachusetts is to harass and cause additional expense to Hananel.

As grounds for personal jurisdiction Adelson's Complaint alleges (1) that "the terms of Hananel's employment by a company controlled by Adelson were negotiated and agreed to in Massachusetts" and (2) "tortious acts of [Hananel] have caused harm to [Adelson] in Massachusetts." Cplt. ¶ 3. Both of these allegations are insufficient because (1) Hananel's occasional visits to the United States in 1989-2000 did not encompass negotiation of the employment relationship Adelson refers to (Hananel's management of the Israeli office of Adelson's company Interface Partners, Inc. ("IPI")), all of which negotiations occurred in Israel, not Massachusetts, and (2) Hananel's Macau claim is not directed to Massachusetts and Adelson cannot reasonably be found to have suffered any harm in Massachusetts, as by his own admission he is a domiciliary of Las Vegas and his business interests are international, with none of any significance in Massachusetts. Hananel draws the relevant facts from Adelson's Complaint, some of which are taken as true only for the purposes of this Motion but are otherwise denied, and the Hananel Affidavit.

### Hananel's Alleged Pre-1995 Contacts With Massachusetts Were Minimal And Unrelated To His Employment By Adelson.

1.	Paragraphs 4-9 of Adelson's Complaint only vaguely allege Hananel's visits to

Massachusetts "during the early 1990's" (¶ 8) for reasons concerning the travel business. In Paragraph 9, Adelson admits that he also had meetings with Hananel in Israel in this period. Adelson makes no allegation that these visits by Hananel, nearly ten years ago or more, have any relationship to his present claim.

2. In fact, almost all meetings between Hananel and Adelson before Hananel's IPI employment began in October 1995 were in Israel. Hananel Aff. ¶¶ 8, 24. None of Hananel's visits to Massachusetts had anything to do with the terms of his IPI employment, which had been determined and had begun before Hananel's December 1995 visit, and included Hananel's visit to the Joslin Diabetes Clinic for medical reasons and scholarly visits to the Kennedy School at Harvard to participate in discussions of Israel and the Middle East. *Id.* ¶¶ 7, 18.

3. Hananel has never had any personal connections and has no ongoing business connections with Massachusetts. *Id.* ¶¶ 6-7.

**The Terms of Hananel's Employment As Israeli Branch Manager Of IPI Had Been Negotiated And Established In Israel Before Hananel's December 1995 Visit To Massachusetts.**

4. Adelson first alleges, in paragraphs 14 and 15 of the Complaint, that the negotiations and agreement concerning IPI's employment of Hananel took place in Massachusetts "at the end of 1995." In paragraph 17 he alleges that the terms of Hananel's employment "were confirmed and finalized" "in meetings held in Massachusetts during the first week of December 1995."

5. These allegations ignore the truth, which was that Adelson negotiated and agreed with Hananel on all the terms of his employment by IPI before December 1995.[1] Hananel Aff. ¶ 18. Adelson asked Hananel in Israel in September, 1995 to replace Adelson's brother-in-law

---

[1] Indeed, Adelson's allegation in paragraph 17 of his Complaint that the terms were "confirmed" in

David Farbstein, who had left in August 1995, as IPI branch manager in Israel. Hananel Aff. ¶ 14 and Exh. 1, ¶ 7. The terms of Hananel's employment were negotiated and concluded in Israel by October, 1995, as shown by Adelson's conduct, which included visiting Jordan with him, designating him to negotiate with the Israeli Land Authority, electing him to chair the board of directors of an Israeli company owned by IPI, and announcing Hananel's employment as IPI branch manager in Israel, all of which occurred in October and November in Israel. Hananel Aff. ¶ 15.

6. Hananel did visit Massachusetts in December, 1995, but only after he had been working for IPI for almost two months. Hananel Aff. ¶ 18. One of the primary causes for his visit was Adelson's urging that Hananel get a second medical opinion on his diabetic condition from the Joslin Clinic in Boston. *Id.* Hananel also participated in scholarly discussions at the Kennedy School. *Id.*

### Adelson's Numerous Pleadings In Israel Never Asserted United States Contacts Or Jurisdiction.

7. As set forth in Hananel Aff. ¶26, Adelson and IPI are parties to three pending litigations against Hananel in Israel. In none of those litigations has Adelson ever asserted that employment terms were agreed to in Massachusetts.

8. Moreover, Adelson has affirmatively asserted that the employment agreement was reached between Adelson himself and Hananel, and did not mention the presence or involvement of others. Hananel Aff. Exh. 1, ¶¶ 8, 16, 43.

9. Thus Adelson's allegations in paragraph 3 of his Complaint that "third parties who participated in those meetings and negotiations have residences in Middlesex County, Massachusetts" and in paragraph 17 that "IPI's counsel" was present at negotiations are

---

December 1995 constitutes an admission that the terms had been determined previously.

inconsistent with the facts he has put forward in Israeli filings.

**All Events Giving Rise To The Macau Claim Occurred Outside The United States.**

10. Adelson's Complaint makes no allegation that any events concerning Hananel's claim for a share of Adelson's investment in Macau occurred in the United States. In fact, Hananel informed Adelson, while they were both in Israel, of casino opportunities in Macau and supplied him with relevant materials, and as a result Adelson traveled twice <u>from Israel to Macau and back to Israel</u> in 1999 and 2000. Hananel Aff. ¶¶ 19-24.

11. In April, 2000, immediately after his return to Israel from his second visit to Macau, Adelson dismissed Hananel from IPI. Hananel Aff. ¶ 21. Adelson concealed his activity in Macau from Hananel at first, but in the course of negotiations in Israel over the terms of Hananel's severance from IPI, proposed to Hananel that Hananel release all claims against Adelson concerning casinos in "any other country," i.e., including Macau. Hananel Aff. ¶ 24 & Exh. 3. Hananel did not agree to this release. After he learned through the international press of Adelson's Macau activity and reminded Adelson on Feb. 21, 2002 of Hananel's agreed option interest, Hananel Aff. ¶ 22, Adelson rejected Hananel's claim[2] and Hananel eventually brought suit against Adelson and IPI on his claim in Israel on December 17, 2003. *Id.* ¶ 26c. All of these events occurred while Hananel was in Israel and no party alleges any link between these events and Massachusetts. *Id.* ¶¶ 19-26.

12. Adelson's vague allegation that he has been harmed in Massachusetts fails. By his own admission in the Complaint, he is a domiciliary of Nevada, and his business interests are

---

[2] Adelson's response, in part, was a letter from Mr. Roberts to Hananel dated July 30, 2002, in which Mr. Roberts stated "neither Mr. Adelson nor IPI has received any franchise to build a casino in Macau." Hananel Aff. Exh. 3. This statement, however, conflicts sharply with Adelson's allegation in paragraph 24 of his Complaint that "<u>after</u> [Adelson's company] LVSI or an affiliate first obtained <u>approval to operate a casino in Macau</u>, Hananel began to make claims against Adelson for an interest in the Macau project." (Emphasis added.) Thus Adelson admits that Hananel's February 2002 written notification to Adelson of his Macau claim was <u>after</u> Adelson had obtained

"international." Complaint, ¶¶ 1, 4. His contacts with Israel are pervasive and vastly overshadow any presence in Massachusetts. *See* Hananel Aff. ¶¶ 12, 26 (family, residences, businesses, personal investments, litigations defended and commenced). Hananel targeted nothing to Massachusetts, as he brought the 2003 suit in Israel concerning the Macau claim.

Thus the facts before the Court show that Hananel had no general contacts with Massachusetts (or the United States) or specific contacts concerning the employment relationship or the Macau project which are the subjects of Adelson's Complaint.

## Argument

### I.   IN PERSONAM JURISDICTION OVER HANANEL IS LACKING.

#### A.   APPLICABLE STANDARDS.

On a motion to dismiss for lack of personal jurisdiction the burden rests with the Plaintiff, Adelson, to establish that the forum court has personal jurisdiction over Hananel. *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). To do this Adelson must show (a) that Hananel has either the "continuous and systematic linkage with the forum state" to support general jurisdiction or (b) that the "case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." *Id.* (citations omitted). Adelson has not and cannot meet this burden.

The First Circuit has established several standards that a district court may choose from when faced with a motion to dismiss for lack of personal jurisdiction. These include the prima facie standard, the preponderance standard, and the likelihood standard. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675-78 (1st Cir. 1992); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 284 F.Supp.2d 204, 211 (D. Mass. 2003).

---

approval for a Macau casino.

The prima facie standard permits the district court "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit, supra,* 967 F.2d at 675. Hananel argues the prima facie standard in this memorandum because Adelson's allegations and admissions in Israeli proceedings leave little doubt that he will be unable to meet this standard. Hananel requests, however, that this Court consider the preponderance and likelihood standards if necessary, and states them in the footnote.[3]

The prima facie standard requires Adelson to demonstrate the existence of every fact required to satisfy "both the forum's long-arm statute and the Due Process Clause of the Constitution." *Boit, supra,* 967 F.2d at 675. Adelson cannot rest upon mere averments in the pleadings, but must adduce competent evidence of specific facts and must "go beyond the pleadings and make affirmative proof." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 987 F.2d 39, 43 (1st Cir. 1993). Because the Massachusetts long-arm statute extends to the Constitutional limits of jurisdiction, Adelson must meet Constitutional standards. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 52 (1st Cir. 2002). Adelson must show either general jurisdiction or specific jurisdiction.

### B.   ADELSON CANNOT SHOW GENERAL JURISDICTION OVER HANANEL IN MASSACHUSETTS.

For general jurisdiction to exist two criteria must be met: "continuous and systematic general business contacts" and reasonableness. *U.S. v. Swiss American Bank,* 274 F.3d 610, 619

---

[3] When a court "determines that in the circumstances of a particular case it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to *in personam* jurisdiction" the preponderance standard is appropriate. *Boit,* 967 F.2d at 676. The preponderance standard should be employed "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are 'patently incredible,' . . .. This standard requires hearings and should be used sparingly because of the expense and the possibility of preclusive effects on a trial. *Daynard, supra,* 284 F. Supp. at 211, citing *Boit,* 967 F.2d at 677. The likelihood standard, also requiring fact-finding by this Court, is appropriate only when the jurisdictional facts are "bound up in

(1st Cir. 2001). Here, Adelson has not alleged any continuous and systematic general business contacts between Hananel and Massachusetts, and the facts set forth in the Hananel Affidavit ¶¶ 6-11 show that he had no such contacts at any time, and no recent contacts at all. *See Phillips, supra,* 196 F.3d at 288 (plaintiff does not claim general jurisdiction). Hananel's employment was performed entirely in Israel or elsewhere in the world outside the United States. Any business visits to Massachusetts were at best incidental to his activities outside the United States, and he has not visited Massachusetts since 2000. Moreover, as discussed below, exercise of jurisdiction would be unreasonable. Accordingly, Adelson cannot show general jurisdiction.

### C.   ADELSON CANNOT SHOW SPECIFIC JURISDICTION OVER HANANEL IN MASSACHUSETTS.

Specific jurisdiction only exists when the plaintiff can establish three elements.

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

*Phillips Exeter Academy v. Howard Phillips Fund, Inc., supra,* 196 F.3d 284, 288 (1st Cir. 1999). Adelson clears none of these hurdles. It is appropriate to analyze aspects of Adelson's contract claim (Count 1) and his tort claims (Counts 2-4) separately. *Id.* at 289.

#### 1.   Adelson's Claims Do Not Arise From Massachusetts Contacts.

##### a.   *Adelson's contract claim does not arise from Massachusetts contacts.*

A plaintiff seeking jurisdiction in a contract claim must show that "the defendant's contacts with the forum were instrumental either in the formation of the contract or its breach." *Philips,* 196 F.3d at 289. Here, Adelson alleges no Massachusetts contacts instrumental in the

---

the merits." *Foster-Miller,* 46 F.3d at 136; *Daynard,* 284 F. Supp. at 211-212.

- 8 -

breach of a contract, and his assertion that Hananel's 1995 visit to Massachusetts was somehow instrumental in the formation of the contract fails because it is vague, implicitly contradictory and at odds with Adelson's sworn statements in Israel over several years and hundreds of documents that show no contacts with Massachusetts. Hananel Aff. ¶¶ 25-32 & Exh. 1. Moreover, Hananel has shown that his IPI employment agreement had been reached in Israel months before his U.S. visit in December 1995. *Id.* ¶ 18. Finally, all activity with respect to Hananel's claim for options in Adelson's Macau casino investment on which Count 1 of Adelson's Complaint is based occurred outside Massachusetts, in Israel and Macau. *Id.* ¶¶ 19-24. Hananel initiated Adelson's interest in Macau while they were in Israel, and his supplied Adelson in Israel with information and materials leading to Adelson's first trips to Macau which began and ended in Israel. *Id.* None of these Macau-related events occurred in Massachusetts.

### b.   *Adelson's tort claims do not arise from Massachusetts contacts.*

Adelson's allegations in the remaining counts of his Complaint that Hananel's public assertion of the Macau claim is harming him do not assert any contacts with Massachusetts. In fact, Hananel has made his assertions formally and responsibly in a judicial forum, the 2003 suit in Israel, Hananel Aff. ¶ 26c, and Adelson chose not to disclose this prior pending action in his Complaint. It is undisputed that Hananel never purposefully contacted anyone in Massachusetts to assert his claim. Under these circumstances no tort has been alleged in Massachusetts, and the mere receipt of a claim through international media (Adelson, moreover, does not allege any such receipt in Massachusetts, but only vaguely alleges dissemination to "the United States and China," Complaint ¶ 44) does not meet the relatedness criterion. *See Philips,* 196 F.3d at 291 (receipt in forum of a payment is not a *cause* of tortious breach of fiduciary duty occurring outside the forum).

### 2. Adelson Cannot Show Purposeful Availment Of Massachusetts Laws By Hananel.

With respect to the second part of the test, purposeful availment, Adelson's Complaint does not even allege that Hananel voluntarily chose Massachusetts as a place to negotiate his employment terms. In fact, all terms were agreed upon and Hananel had worked for almost two months before Hananel made his December 1995 visit. Hananel Aff. ¶ 18. The Complaint also confirms that the employment was to be centered in Israel, dealing with Israeli and other international business opportunities, with no reference to Massachusetts or to the United States. Hananel never contracted to perform services in Massachusetts and he has not voluntarily directed any efforts to establish a business relationship within Massachusetts.

Another element of the purposeful availment prong, foreseeability, explores whether the defendant benefited from forum-based contacts in a way that made jurisdiction foreseeable. *See Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999). In general, the existence of a relationship or contract between the parties, without more, does not show that the defendant purposefully established minimum contacts with the forum state. *See Phillips*, 196 F.3d at 292 ("The mere fact that defendant willingly entered into a tendered relationship does not carry the day"). In the present case, Adelson does not show either that his present claims arose from contacts with Massachusetts, or that Hananel purposefully sought or benefited from such contacts. *See Interface Group-Massachusetts, LLC v. Rosen*, 256 F.Supp.2d 103, 106-107 (D. Mass. 2003)(defendant's contacts with Massachusetts, including visits and alleged telephone calls speaking "abusively" and "derisively" of Mr. Sheldon Adelson, the chairman of Interface, insufficiently related to claim for interference with contract).[4]

---

[4] The *Interface-Massachusetts* case has other parallels with the present case as Adelson alleged financial injury from statements by a California resident, and the plaintiff (of which Adelson was chairman) was represented by the same counsel as in the present case. Judge Harrington dismissed the case for lack of personal jurisdiction.

As to his tort claims, Adelson makes no showing that the Macau claim is directed towards Massachusetts. Any such argument would fail in light of the parties' engagement in pending Israeli litigation over the Macau claim, which shows that Hananel is taking normal procedural steps to present his claim to a court of competent jurisdiction, and is not attempting to maliciously slander Adelson anywhere.

### 3. The Exercise Of Jurisdiction Over Hananel Is Not Reasonable.

Where the plaintiff has not made a prima facie showing of relatedness and purposefulness, just as Adelson is factually unable to do here, there is no need for the Court to enter into the reasonableness analysis. *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995). However, Hananel will continue with the reasonableness analysis to further demonstrate how the exercise of *in personam* jurisdiction in this matter would not comport with constitutional requirements. If a plaintiff (unlike Adelson in the present case) has made a prima facie showing of relatedness and purposeful availment a court must then consider five additional factors before exercising personal jurisdiction. The five factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The purpose of the five Gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. *Ticketmaster-NY, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

Turning to the Gestalt factors, first, Hananel has established that he has never had any business or property in Massachusetts and no contacts at all since April 2000. Hananel Aff.

¶¶ 6, 11. He is legally blind, not in good health, and English is not his native language. *Id.* ¶¶ 2-5. He is engaged in three suits in Israel, one of which (the 2002 suit) was instigated by Adelson's company IPI and another of which (the 2003 suit) is a full litigation of the Macau claim. *Id.* ¶ 26. Thus, Hananel lacks resources to carry a duplicative, onerous and costly burden of defending himself in Massachusetts.

The second factor inquires into the forum state's interest in adjudicating the dispute. While Massachusetts may have an interest in disputes between its residents and persons alleged to have breached contracts or interfered with business opportunities, Adelson is <u>not</u> a domiciliary of Massachusetts, nor is IPI, nor is the company, LVSI, which he admits is involved in the Macau project (or the unnamed international businesses Adelson says he is engaged in); moreover, the Macau business opportunity is extremely remote from Massachusetts and the investment there will have no effect in Massachusetts. Accordingly, no basis appears for any interest in the dispute by Massachusetts.

The third factor considers Adelson's interest in obtaining convenient and effective relief. Adelson cannot argue that Massachusetts is more convenient to him because he has chosen the Israeli forum for an action and counterclaims in his employment dispute with Hananel (the 2001 and 2002 suits), and is actively involved as a defendant in the 2003 Israeli suit concerning the Macau claim. He has a residence, an office, and substantial business interests in Israel and he travels there regularly for extended periods. Hananel Aff. ¶ 12. If Adelson is entitled to any relief against Hananel, none can be obtained in Massachusetts, but all can be obtained in Israel.

The fourth factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy. Because Hananel is a resident of Israel and because there is pending, first-filed litigation of the same issues between the parties in Israel, the only effective

resolution of the controversy will be in Israel, not Massachusetts. Documents and the vast majority of necessary witnesses will be located outside this forum. The hundreds of documents in Hebrew and court submissions in Israel are available there. Although Adelson's present complaint alleges unnamed Massachusetts witnesses, his Israeli filings contradict the relevance or existence of the testimony of such witnesses. Adelson's own presence in Israel and availability for trial there is foreordained by his continuous and systematic contacts and his own choice to conduct litigation against Hananel there. Dismissing the complaint in favor of the pending action in Israel, where <u>both</u> Adelson and Hananel have purposefully and foreseeably availed themselves of the benefits of the forum will provide the only effective resolution of this controversy.

## Conclusion

For all of the above reasons, the Court should dismiss this action on the grounds of lack of personal jurisdiction.

Dated: June 14, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on _____

MOSHE HANANEL
By His Attorneys,

_____
James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA 02108
617.854.4000

MemPersJurisd-31216-1