IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHELDON G. ADELSON, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. |
| v. | ) 04-cv-10356-RCL |
| MOSHE HANANEL, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM IN SUPPORT OF HANANEL'S MOTION TO STAY PROCEEDUNGS**

Defendant Moshe Hananel ("Hananel") offers this Memorandum in Support of his Motion to Stay Proceedings. Hananel seeks a stay only as an alternative to dismissal for lack of personal jurisdiction or on forum non conveniens grounds, the subject of separate motions filed simultaneously herewith. Pursuant to the federal doctrine of international abstention, Hananel seeks a stay of proceedings pending the outcome of substantively identical litigation between the same parties commenced before this action and still pending in Israel, part of a series of Israeli litigations between Hananel and Plaintiff Sheldon Adelson ("Adelson") and an Adelson-controlled company pending since 2001. Hananel also relies on the Affidavit of Moshe Hananel In Support Of Motions filed herewith. Hananel seeks a stay only as an alternative to dismissal, because has also filed, simultaneously herewith, a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for forum non conveniens with supporting memoranda.

**Procedural Background**

Adelson commenced this action on February 23, 2004 by filing a Complaint in four counts. Adelson's Complaint alleges injury from Hananel's claim for interest in investments by Adelson and companies he controls in gambling casinos and hotels in Macau, China ("Macau

claim"). Adelson failed to disclose, however, that Hananel's Macau claim <u>is the subject of an earlier-filed and still pending Israeli lawsuit</u> by Hananel against Adelson and his controlled company. Adelson also fails to disclose two even earlier litigations in which Hananel and the Adelson-controlled company are parties to a suit and a countersuit (by Adelson's company) concerning all aspects of the very same employment relationship Adelson alleges in his present Complaint. Hananel Aff. ¶ 26.

Adelson's present Count 1 seeks declaratory judgment that Hananel's Macau claim is invalid. Cplt. ¶ 33. Significantly, Count 1 is based on "an actual controversy between the parties concerning the terms of an oral agreement made in Massachusetts;" although Hananel denies that any of the agreements on which his Macau claim or any other employment claims were made in Massachusetts, he asks this Court to note that Adelson contends that the <u>same agreements which are the subject of the Israeli actions</u> underlie his present Complaint.

Adelson's Count 2, entitled "civil extortion," Count 3 for interference with an advantageous "business relationship," and Count 4 for "disparagement and defamation" all allegedly arise from Hananel's Macau claim. Thus all counts depend solely on alleged contracts and claims which are at the core of the earlier-filed Israeli proceedings, as set forth in the Facts section below.

In this motion, Hananel seeks a stay of the present action pending the outcome of the three Israel actions involving the same parties and issues.

### Facts

The three proceedings in which Adelson and Hananel are presently before the Tel Aviv District Labor Court of Israel are described in the Hananel Affidavit at ¶¶ 25-32. Adelson is a party to the 2001 and 2003 suits, and in all three his wholly-owned company Interface Partners,

Inc. ("IPI") is a party. The Hananel Affidavit attaches as Exh. 1 an affidavit by Adelson filed in the 2001 suit, showing that all of the details of the employment relationship which Adelson inserts in the present proceeding are the subject of the 2001 Israeli proceeding. The Hananel Affidavit also attaches as Exh. 4 a May 24, 2004 ruling by a judge of the Israeli court in the 2003 suit (the Macau claim) in which she emphasizes the contacts Adelson enjoys with Israel and the extremely close relationship between the 2003 suit and the 2001 suit; indeed, she orders that steps be taken to <u>consolidate</u> them. Hananel Aff. ¶¶ 29-32 & Exh. 4.

The following paragraphs, using Adelson's Complaint in this action as an outline, show the identity between the facts and issues in dispute in the Complaint and in the prior Israeli proceedings. Hananel does not admit the truth of any allegations of the Complaint, and has denied many of Adelson's and IPI's allegations in Israel, but, for the purposes of the present motion only, asks the Court to use Adelson's allegations as admissions that he is raising certain factual disputes and legal issues.

    1.    **Parties.** Adelson's Complaint alleges the same parties as those in the Israeli proceedings. Adelson is domiciled in Nevada, but confirms that he has varied international business interests and travels widely, including to Israel. Cplt. ¶¶ 1, 4, 9, 11, 21. He admits he is the owner of a Delaware corporation named Interface Partners International, Ltd. ("IPI") which "was established for the purpose of making investments in Israel-based high technology companies" and has an office in Israel. Cplt. ¶ 10-11. Hananel is a resident of Israel. Cplt. ¶ 2. Adelson visited Israel and met Hananel in Israel. *Id.* ¶ 9. All of these admissions by Adelson help explain why the parties have become thoroughly engaged in litigation in Israel, Adelson either individually or through IPI.

2. **Employment relationship between Hananel and IPI.** Hananel and Adelson agree that IPI employed Hananel and terminated his employment on April 2000, Cplt. ¶¶ 16, 19, although Hananel's Affidavit cites specific evidence that the employment agreement was reached and finalized in Israel in September and October, 1995, and not later, as Adelson claims. Hananel Aff. ¶¶ 15-18. Hananel's work was identifying, recruiting, and hiring persons in Israel to identify investment opportunities in Israel. Cplt. ¶ 15. Adelson's Complaint alleges that Hananel worked as manager of the IPI office in Israel. *Id.* ¶¶ 11, 12, 14, 15. Hananel points out many other relevant efforts, including his initiation and support of Adelson's Macau investment, all of which took place in Israel. Hananel Aff. ¶¶ 19-24.

3. **Employment dispute between Hananel and Adelson/IPI reaches Israeli court.** After Hananel was fired in April 2000, Adelson, IPI and Hananel attempted to negotiate the terms of Hananel's severance. Cplt. ¶¶ 19-20. Although Adelson's Complaint does not mention it, after the negotiations broke down Hananel filed suit against Adelson individually and IPI in the Tel Aviv District Labor Court in Israel on August 19, 2001 ("the 2001 suit"). Hananel Aff. ¶ 26a.

4. **IPI chooses Israeli forum for countersuit against Hananel.** On November 17, 2002, IPI filed suit in the same Israeli court against Hananel ("the 2002 suit"). Hananel Aff. ¶ 26b. In its Israeli suit, IPI (as always controlled by Adelson) confirmed, as does Adelson in the present Complaint, that there was an employment agreement between IPI and Hananel. *Id.*

5. **Hananel sues Adelson and IPI in Israel on his Macau claim.** The following year, on December 17, 2003, Hananel commenced another suit in the same Israeli court against both Adelson individually and IPI for his rights in options and stock in the Macau project ("the 2003 suit"). Hananel Aff. ¶ 26c.

6.  **Adelson has been aware for years of the Macau claim.** Hananel informed Adelson of his Macau claim in February 2002 and Adelson's counsel acknowledged it in July, 2002. Hananel Aff. ¶ 23 and Exh. 2.

From the above facts, it may be concluded that Adelson filed the present action knowing it to be entirely duplicative, untimely, and merely a response to Hananel's 2003 suit in Israel intending to drive up Hananel's expenses, harass him personally by causing him to travel while burdened by his blindness and other health problems, and hinder his pursuit of his claims.

### Argument

**I.  THIS PROCEEDING SHOULD BE STAYED PENDING FINAL JUDGMENT IN THE ISRAELI ACTIONS.**

Hananel asks the Court to stay proceedings under the doctrine of international abstention until final judgment is rendered in the pending Israeli actions. The United States Supreme Court has recognized the discretion this Court has to grant Hananel's motion.

> . . . the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.

*Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999); *see Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222-1224 (11th Cir. 1999)(U.S. action stayed pending outcome of Bermuda action); *Boushel v. Toro Co.*, 985 F.2d 406, 409-411 & n.2 (8th Cir. 1993)(district court's stay order pending outcome of Quebec action unappealable but would have been upheld on merits).

The doctrine of "international abstention" applicable here has been recently discussed *Goldhammer v. Dunkin' Donuts, Inc., supra,* 59 F. Supp. 2d at 251-256 (D. Mass. 1999), in which the court stayed a Massachusetts action pending the outcome of a prior English action. *See LinkCo, Inc. v. Nichimen Corp.*, 164 F.Supp.2d 203, 213 (D. Mass. 2001) (international

comity favors dismissal for forum non conveniens). According to the *Goldhammer* court, in a situation in which, like the present case, an American court is deciding whether to stay proceedings pending the outcome of a prior pending case in a foreign country, the factors stated by, among other courts, the Eleventh Circuit Court of Appeals in *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512 (11th Cir. 1994) were applicable. *Goldhammer*, 59 F.Supp.2d at 251-253.

The *Turner* court elucidated the principles of international abstention based on Supreme Court precedent and a review of the law of other circuits. 25 F.3d at 1518. It concluded that

> . . . courts have sought to fashion principles that will promote three readily identifiable goals in the area of concurrent international jurisdiction:
>
> a proper level of respect for the acts of our fellow sovereign nations - - a rather vague concept referred to in American jurisprudence as international comity;
>
> fairness to litigants; and
>
> efficient use of scarce judicial resources.

*Turner, supra,* 25 F.3d at 1518 (footnote omitted). Application of the six considerations adopted in *Goldhammer* to the present case will lead to a stay of proceedings with full protection of the rights of Adelson.

### A.  THE PARTIES AND ISSUES ARE IDENTICAL.

The first factor weighs strongly in favor of a stay. Adelson's Complaint has parties and issues that are identical to the Israeli proceedings.

### B.  PROMOTION OF JUDICIAL EFFICIENCY FAVORS A STAY.

In *Goldhammer* as in the present case, the earlier-filed English action had proceeded further. 59 F.Supp.2d at 250. The effort to avoid the consumption of "judicial, administrative, and party resources" to be devoted to parallel proceedings should be avoided and is a "key

factor." *Id.* at 254. The present situation leads to the same result, as the efforts in this Court and Israel would be overwhelmingly duplicative.

### C. ADEQUACY OF RELIEF AVAILABLE IN THE ALTERNATIVE FORUM.

As all claims by Adelson can be resolved through injunctive relief and damages available in Israel, this factor favors a stay.[1] Hananel's Memorandum In Support Of Motion to Dismiss For Forum Non Conveniens, filed herewith, sets forth the facts and precedent to support a finding that Israel is a fully available and adequate forum for both parties, and he respectfully asks the Court to consider that memorandum as support for the factor of adequacy of relief.

### D. CONVENIENCE OF THE PARTIES, COUNSEL, AND WITNESSES.

Although the *Goldhammer* court found this factor to be neutral, it weighs heavily in Hananel's favor in the present case. Hananel's Memorandum In Support Of Motion to Dismiss For Forum Non Conveniens, filed herewith, sets forth the facts and precedent to support a finding that Israel is by far the most convenient forum for parties and witnesses, and he respectfully asks the Court to consider that memorandum as support for the present motion. Adelson is also possessed of Israeli counsel thoroughly familiar with the issues as a result of the previous litigations. In summary, the convenience for Hananel, an individual with only one residence and place of business, in Israel, and the difficulties he would face in travel and appearing in a distant forum because of his blindness and other health problems, is heavily weighted towards Israel. Witnesses to the Macau claim are located in Israel (and include Adelson, who has a residence and a place of business in Israel). Adelson's first visits to Macau in 1999 and 2000, made at Hananel's urging and benefiting from Hananel's preparation, <u>were</u>

---

[1] The *Goldhammer* court noted that some claims could be brought later in the United States following the resolution of the English proceedings, if still viable, 59 F.Supp.2d at 254, but the same is not true of the present case, as the issues and relief are identical.

<u>made from Israel and he returned to Israel</u>.  Hananel and Adelson have both spent years in the 2001 and 2002 suits preparing for proof of the terms and performance of the employment contract which Adelson insists is relevant to the Macau claim, and the parties' efforts in Israel should not be wasted.  The financial cost and personal effort required to present his claims in Massachusetts in addition to the costs and efforts in Israel would be extremely onerous to Hananel, and Adelson can also realize savings by proceeding in Israel.

Adelson, by his own admission, conducts a worldwide business involving much personal travel.  Adelson also has substantial resources, residences, offices, and strong personal connections to Israel.  The facts comparing Adelson's substantial presence in Israel with Hananel's absence of any significant contacts with Massachusetts are set forth in Hananel's Memorandum In Support Of Motion to Dismiss For Lack Of Personal Jurisdiction, filed herewith, and he respectfully requests the Court to consider that memorandum as support for the present motion.

### E.   POSSIBILITY OF PREJUDICE TO ANY OF THE PARTIES.

The possibility of any prejudice to Adelson from a stay pending the outcome of the Israeli proceedings is effectively negated by his own choice to bring the 2002 claim in Israel through IPI, and by his own substantial participation in the 2001 suit over several years, including the submission of an affidavit (Hananel Aff. ¶¶ 12, 26a and Exh. 1) in which he does not assert any prejudice and does not assert significant contacts with Massachusetts.

### F.   TEMPORAL SEQUENCE OF THE FILING OF THE ACTIONS.

In the present case, Hananel's 2003 Israeli suit was filed in December, 2003, two months before the present action, while the parties had been litigating his employment agreement for more than two years, and Hananel had communicated his Macau claim by at least February 2002.

Hananel Aff. ¶ 23 and Exh. 2.  Adelson did not seek declaratory judgment then (presumably regarding the Macau claim as part and parcel of the pending 2001 action).  The *Goldhammer* court noted that "litigation lethargy is an important consideration" and noted that the prior English proceeding had begun discovery.  The hundreds of documents (almost all of which are in Hebrew) filed by the parties in Israel, and Adelson's choice to wait until after Hananel filed the 2003 action, weigh strongly in favor of a stay.

## Conclusion

For all of the above reasons, as an alternative to dismissal for lack of personal jurisdiction or on forum non conveniens grounds, the subject of separate motions filed simultaneously herewith, the Court should dismiss or stay the action pending the outcome of the Israeli proceedings or until further order of the Court.

Dated: June 14, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on _____

MOSHE HANANEL
By His Attorneys,

_____
James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000