UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

SHELDON G. ADELSON,

        Plaintiff,

v.

MOSHE HANANEL,

        Defendant.

Docket No. 04CV10357RCL

**OPPOSITION OF THE PLAINTIFF TO THE MOTIONS OF THE DEFENDANT TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ON THE GROUNDS OF *FORUM NON CONVENIENS*, OR FOR A STAY**

The Plaintiff hereby submits his opposition to the motions of the defendant, to dismiss or alternatively stay this case. The grounds for the opposition are set forth in the memorandum of law that follows.

**MEMORANDUM OF LAW**

**GROUNDS OF THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTIONS TO DISMISS OR STAY THIS ACTION**

**STATEMENT OF FACTS**

**The Parties**

The plaintiff, Sheldon Adelson, is an American citizen, domiciled in Nevada, but owning a residence in Newton Massachusetts that he uses when he works in his Massachusetts office. (Affidavit of Paul G. Roberts, ¶26, 27 "Roberts") He has a variety

of business interests in the United States, including a casino resort (The Venetian Hotel & Casino) in Las Vegas and other business related to tourism. (Roberts, ¶¶2, 3) Mr. Adelson is chairman and CEO of the Interface Group of Massachusetts, a Massachusetts business trust. He controls Interface Partners International Limited, a Delaware corporation (IPI). The Interface companies' principal place of business is in Needham Massachusetts, (Roberts ¶ 4) where Adelson has maintained an office since the 1980s. (Roberts, ¶¶ 1,2,4) An objective of IPI's Israel branch is to invest in promising high-tech enterprises in Israel. IPI opened a branch office in Israel. Adelson also has family connections in Israel, having married an Israeli citizen.

The defendant, Moshe Hananel, is a citizen of the State of Israel. The parties have had a close business relationship for many years The parties first met in Israel, but have had significant business contacts in Massachusetts since their first meeting. Hananel managed a tourist company in Israel, and after the 1991 Gulf War, came to Massachusetts on business trips to solicit business, because tourism had declined in Israel.[1]

Hananel made many trips to Massachusetts for business as well for non-business activities. In late 1995 Adelson's brother in law, whom he had hired to manage the IPI Israeli branch office decided to resign. IPI needed a replacement. At first Hananel took the role of a temporary caretaker for IPI (Roberts ¶7) and was given authority to write checks. He wrote very few. Because of the parties long business and personal relationship, Adelson trusted Hananel, and Hananel performed the caretaker tasks as an accommodation. In December 1995 while Hananel was visiting Massachusetts the

---

[1] After the Oslo Agreement in late 1993, tourism increased substantially until 2001

parties (IPI and Hananel) had serious negotiations which ended in an oral contract of employment for Hananel. (Roberts ¶¶7-9) There was to be a short phasing in period, and employment was to commence in January, 1996. Thereafter, IPI commenced paying him a salary.

Hananel has admitted in Israeli court pleadings that he received no pay slips and no salary checks from either Adelson or IPI until January 1996.(Hananel Complaint for employment related damages, ¶3, "Hananel #1") After Hananel became the Israel branch manager, the parties communicated regularly between Massachusetts and Israel about company matters. (Hananel Affidavit ¶8) Hananel claims that "within the employment relationship between the plaintiff and the defendants, the plaintiff was promised options in ventures initiated during the course of his work" (Hananel Macau Casino Complaint, "Hananel #2" ¶5.1) with IPI. It is from this employment by IPI that the claim for a piece of the action in a casino which third parties in which Adelson had interests and other joint venturers have been licensed to build in Macau arises.

Hananel has alleged that he "was promised options in ventures initiated during the course of his work." (Hananel Complaint #2, ¶5.1)[2] Hananel's claim is that in early 1999 he found the opportunity to obtain a franchise from the Chinese government to build a casino in Macau. Supposedly, this was a tip from another Israeli entrepreneur. Hananel claims he provided Adelson with a guidebook for investment in Macau. The guidebook was clearly taken from the Internet, and its most recent edition is readily available to

---

[2] Hananel, on the face of his complaint and the invitation for expression of interest of the Macau government, has no case. The Macau authority issued the invitations in September, 2001, Roberts ¶17, long after the date of Hananel's termination (May 10, 2000, according to Hananel, Hananel Complaint ¶3.6)

anyone with a computer. Hananel also claimed that he gave a good deal of advice and information to Adelson, including showing him where Macau was. He claims that his information that he gave Adelson, enabled Adelson to gain an "edge and advantage over competing entrepreneurs in the gambling field, who were too late in discovering the business opportunity in Macau." (Hananel #2,¶ 4.11) It would be an interesting story, save for the fact that Adelson, dissatisfied with Hananel's performance, discharged him (according to Hananel) on May 10, 2000 (Hananel #2 ¶3.6);sixteen months before the Macau authorities invited expressions of interest in applying for a casino license in September, 2001.(Roberts ¶17) Mr. Adelson's company, Las Vegas Sands Inc. (a company for which Hananel never worked) sent its Expression of Interest to the Macau Gaming Committee on October 16, 2001—nearly a year and a half after the termination of Hananel's employment[3].

Hananel sued Adelson and IPI in the District labor court of Tel Aviv, of the State of Israel, alleging various breaches of his employment contract by IPI and Adelson. IPI countersued to recover money wrongfully misappropriated by Hananel. Hananel filed a separate action asserting the claim for piece of the action in the Macau casino. Initially his attorneys asserted a claim for an 8 percent interest in the Macau casino, (Rosovsky letter, February 21, 2002. Exh. 1) but recognizing that 12 percent is larger than 8 percent, Hananel brought suit seeking a 12 percent interest. (Hananel complaint #2) Adelson challenged the jurisdiction of the Israeli court over him. The Israeli court recognized that Adelson's contacts with Israel on which Hananel relied were essentially unrelated to the

---

[3] There were numerous competitors for a license. Steve Wynn a well known operator of resorts and casinos was the other successful applicant. One might wonder, after reading Hananel's claims how Wynn managed to obtain a license without Mr. Hananel's help.

claims against IPI, but held that it had jurisdiction over Adelson anyway because Adelson was the controlling stockholder and was personally running the company. It made no finding that Adelson ran the company from Israel. Adelson, whatever agreement Hananel alleges he made, made it on behalf of a corporation, not himself. Moreover, entities with which Hananel never had any relationship are operating under a license from the Macau authorities. More significantly Hananel's claim, as he correctly alleged in his Israel Court complaint, is intimately tied to a negotiation that resulted in the employment contract to be the general manager of IPI's branch in Israel. (Labor Court Decision, Exh. 2)

Hananel, to support his motion to dismiss or stay the action on the ground of *forum non conveniens*, has alleged that he is so sick and blind that it would be an onerous burden for him to defend this case in the United States. This assertion appears to be much overblown. Hananel has recently traveled to Macau/Hong Kong to issue a defamatory press release announcing his law suit against Mr. Adelson. He has also has also traveled to France. (Roberts ¶25) Hananel has pointed to no witnesses in Israel that would be needed for the defense or prosecution of this lawsuit. The plaintiff, in the affidavit of Attorney Roberts, has listed twelve witnesses in addition to Mr. Roberts who would be witnesses in this case. Other potential witnesses would be other competitors for the license, such as Donald Trump and Steve Wynn.

- **THE EVIDENCE THAT THE PLAINTIFF HAS PRESENTED ESTABLISHES, *PRIMA FACIE,* THAT THE COURT HAS PERSONAL JURISDICTION OF THE DEFENDANT, AND, THEREFORE, THE PLAINTIFF HAS MET HIS BURDEN OF PROOF.**

While a plaintiff has the burden of proof that the Court has jurisdiction of the defendant, that burden is carried when a plaintiff makes a showing with evidence, if believed, that the claim arises out of one of the jurisdictional activities of M.G. L. c.223A, §3 and is consistent with due process. The Court does not act as a fact finder. *Pike v. Clinton Fish Packing, Inc., et al* 143 F. Supp. 2d 162 (D. Mass. 2001 citing *United Electrical Workers of America v. 143 Pleasant Street Corp.* 987 F.2d 39 (1st Cir. 1993), but must accept the facts as true that the plaintiff presents. *id, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57(1st Cir., 2002) (facts to be viewed most favorably in favor of party asserting jurisdiction)

**BY VIRTUE OF THE FACT THAT THE PARTIES NEGOTIATED AND AGREED TO HANANEL'S EMPLOYMENT CONTRACT WITH THE PLAINTIFF'S COMPANY IN MASSACHUSETTS, THIS COURT HAS JURISDICTION OVER HIM IN CONNECTION WITH ADELSON'S CLAIM FOR DECLARATORY RELIEF, WHICH ARISES FROM THAT CONTRACT**

Under Massachusetts General Laws Chapter 223A, §3A, this court has jurisdiction over the defendant arising out of his having transacted business in Massachusetts. General laws chapter 223A., §3(a) is to be broadly interpreted, *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 144 (1st Cir.,1995), and it is "easily satisfied." *Boudreau vs. Scitex Corp. Ltd.* 1992 U.S. Dist. LEXIS 9629 (D. of MA, 1992);

> Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth . . . will satisfy the transacting any business requirement." *Connecticut Nat'l Bank v. Hoover Treated Wood Prods., Inc.,* 37 Mass. App. Ct. 231, 234, 638 N.E.2d 942 (1994) (Gillerman, J.). "It is clear that anything but the most incidental commercial conduct with a Massachusetts resident is sufficient

to satisfy the transacting any business test." *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99, 105 (D. Mass., 2000)

In *Salpoglou v. Widder*, 899 F. Supp. 835 (D. Mass. 1995) a Massachusetts resident plaintiff engaged the defendant, a Virginia plastic surgeon to operate on her nose in Virginia. While in Massachusetts, she had seen his advertisement in the Washington *Times* and had spoken with him on the phone about having the pre-operative blood work done in Massachusetts. He agreed. Later, when she was dissatisfied with his work, he agreed through an employee in a telephone conversation between Virginia and Massachusetts that he would pay for another operation, but allegedly reneged on the agreement. The Court held that his contacts with Massachusetts were sufficient to meet both the terms of the Massachusetts Long Arm Statute and the 14th Amendment.

The case at bar is far stronger. In this case, the parties conducted negotiations, partly in Massachusetts, and came to an agreement between IPI and the defendant in Massachusetts. That easily satisfies the transacting business test of section 3(a) of the Long Arm Statute. In *Hahn vs. Vermont Law School*, 698 F.2d 48 (1st Cir. 1983), the Court of Appeals held that the law school, having mailed its application information and acceptance letter to the plaintiff, who was in Massachusetts, had transacted business for purposes of the Long Arm Statute. In *Landmark Bank vs. Machera*, 736 F.Supp. 375 (D. Mass 1990) the court held that making a telephone call and sending correspondence to Massachusetts in furtherance of business interests amounted to transacting business. As the Court of Appeals recognized in *Hahn*, a cause of action that stems from a contract arises from the transaction of business in Massachusetts if the cause of action is for breach of the contract and the business transacted in the Commonwealth was instrumental in the formation of the contract. That is the just this case.

Moreover, as Hananel concedes in his affidavit supporting his motion to dismiss, the parties contemplated continuous communication, and they had almost daily telephone conversations, (In this case the cause of action that has led to Adelson's seeking declaratory relief is intimately connected with Hananel's employment contract for IPI). In *Champion Exposition Services Inc. vs. High-Tech Electric LLC*, 273 F. Supp. 2d 172 (D. Mass, 2003) the defendant's President traveled to Massachusetts to meet with officers of the plaintiff. Those meetings culminated in a letter agreement. The court held that it had personal jurisdiction over the defendants because "the defendant's contacts with the forum were instrumental in the formation of the contract." The court found that the pre contract visits to the plaintiff and the "transmission back and forth of the business plan and letter agreement were instrumental in forming the agreement...."

In *Nowak vs. Tack Ho Investments D/B/A Holiday Inn Crowne Plaza Harbour View*, 94 F.3d 708 (1st Cir. 1996) the plaintiff brought an action for the wrongful death of his wife who drowned in the defendant's swimming pool at its only asset, a hotel in Hong Kong. The defendant moved to dismiss for lack of personal jurisdiction or alternatively on the grounds of *forum non conveniens*. The only connection that the defendants had with Massachusetts was that it advertised its Holiday Inn in "certain national and international publications, some of which circulated in Massachusetts. In addition, in February 1993, Tack Ho sent direct mail solicitations to approximately 15,000 of its previous guests including previous guests residing in Massachusetts." 94 F. 3rd 711. The court held that it had personal jurisdiction because "but for" the contract the drowning never would have occurred. Likewise in the case at bar, but for the employment agreement, Hananel would have no colorable claim. The Court of Appeals

reasoned, "When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction..." 93 F. 3rd at 715. In the case before this court, the basis for jurisdiction is even stronger. In *Nowak* the court made the jump from a contract to a resulting tort. In the case at bar the jump is far smaller, because, by Hananel's own statements in pleadings filed in Israeli courts, his responsibilities as general manager for IPI's Israel arose directly from a contract. He agreed to that contract while in Massachusetts. Without that arrangement which was consummated in Massachusetts, there could have been no claim that Hananel was entitled to any percent of the Macau casino. *Tatro vs. Manor Care Inc.*, for 16 Mass 763 (1994) (similar facts to Nowak)

### Hananel's Arguments Are Fundamentally Flawed And Inconsistent With The Position He Successfully Urged The Israeli Court to Adopt

Virtually all of the allegations in Hananel's affidavit in support of his motion to dismiss are either inaccurate or irrelevant. For example, in paragraph 15 he asserts that he was given signature rights to an account of a business, Auto Depot, and elected to its Board of Directors. He asserts that Adelson owned Auto Depot "through IPI." That assertion is so imprecise, it is not clear what Hananel is asserting, but from his own affidavit it is clear that Auto Depot is not IPI.

Hananel makes much of Adelson's business interests outside of IPI in Israel and his personal connections through his wife to that country. (Hananel affidavit ¶12) Those are irrelevant to the issues in the case at bar. The issue is not whether Israel could assert jurisdiction over Adelson, but whether Massachusetts can exercise jurisdiction over

Hananel. See *Nowak* at 709. These are separate issues and it may be that both sovereignties could exercise jurisdiction of the case.

The defendant also argues that because Adelson did not assert, in the Israeli action, that that the employment agreement with Hananel was formed in Massachusetts before witnesses, he has taken inconsistent positions. (Hananel's brief pp. 4-5.) There is no inconsistency. The issues before the Israeli Labor Court only dealt with the sufficiency of process. The place where the parties agreed to the contract of employment is not material, as can be seen from the decision of the Court ruling that service of process was sufficient, but that all other issues are open. (Decision of Tel Aviv Jaffa District Labor Court, "Court Decision" p. , Exh. 2) Interestingly, one of the grounds for decision (contrary to one of the fundamental tenets of American corporation law) was that as a controlling shareholder in IPI, Adelson "managed" the business from the United States through his "long arm." (Court Decision, Exh. 2, p.8) That basis of the Israeli court decision that Hananel urged upon that Court, supports the assertion of jurisdiction in Massachusetts because it recognizes that the employment contract and Hananel's performance was intimately bound to activities of Adelson and IPI initiated from the United States. He should not be heard to urge an inconsistent contention upon this Court. The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)

Hananel argues that because Adelson never asserted in the Israeli action that he had witnesses in the United States that he has made a binding admission that there are no witnesses or at least that the Court should not credit the assertion. Contrary to the

assertions that Hananel flings in the general direction of this Court, Adelson never asserted or implied that there were not witnesses to the formation of the contract. Mere silence under circumstances such as this (no statement, no face to face confrontation, legal proceedings, and no duty or expectation to make the statement) are not admissions of anything.

> [I]n all [such] cases, the burden is on the proponent to convince the judge that in the circumstances of the case a failure to respond is so unnatural that it supports the inference that the party acquiesced in the statement(citations omitted) In making the evaluation, the trial judge considers the nature of the statement, the identity of the person offering the testimony, the identity of the maker of the statement, the context, and whether the circumstances as a whole show that the lack of a denial is so unnatural as to support an inference that the undenied statement was true. *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 67 (1st Cir., 2002)

Clearly the facts of this case fit quite nicely with the statutory standards of the Massachusetts Long Arm Statute.

### The Assertion Of Personal Jurisdiction Over Hananel Is Compatible with Due Process

The next question to be addressed is whether the assertion of personal jurisdiction is consistent with the constitutional protections of the due process clause of the 14th amendment to the Constitution of the United States[4]. To decide whether the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice, the Court of Appeals of the First Circuit. has adopted "a sliding scale approach: the

---

[4] In *Automatic Sprinkler Corporation of America v. Seneca Foods Corporation*, 361 Mass 441,443 (1972) the court stated, "We see the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."

BOS\105744.1                                11

weaker the plaintiff's showing on the first two prongs (relatedness and purposeful of element), the less a defendant need show of unreasonableness to defeat jurisdiction." *Nowak* at 717. In view of the fact that some negotiations, *Daynard v. Ness, Motley, Loadholt, Ricardson & Poole, P.A. et al.*, 290 F.3d 42 (1st Cir. 2002) (Court considers prior negotiations), as well as the final agreement occurred in Needham Massachusetts, the defendant has a heavy burden to show unreasonableness.

The defendant makes much of his difficulties were he required to defend this action in Massachusetts. Litigating in a foreign jurisdiction, particularly one far from home is usually a burden. Travel to Israel, given the plaintiff's age and health, is at least as onerous as travel to the United States for the defendant. Paul Roberts, a witness to the making of the employment contract, is a resident of Massachusetts. Moreover witnesses, who can speak to the whole nature of the Macau agreement negotiations, are in the United States. It is far more difficult for the plaintiff to have to bring them all to Israel than to bring them to Boston. It is certainly more convenient and comfortable for the witnesses to have to testify in the United States, where the security concerns are much less than in Israel.

In truth, were Hananel's assertions of frailty truthful, their burdens are not much greater than they would be with this action tried Israel. His alleged blindness is a burden in either place. However, he speaks English well enough to conduct business in the United States; whereas, the plaintiff does not speak Hebrew and has conducted his business in Israel speaking English. The plaintiff's witnesses to the contract are located in Massachusetts. The defendant does not claim that anyone was present in Israel when he claims they made their agreement. He has revealed no witnesses to that critical part of

the case to bring to the United States. There are witnesses to the formation of the contract in Massachusetts. There are other witnesses in the United States, who will testify concerning the negotiations and the Macau casino franchise. (Roberts ¶¶20-21) It would be most inconvenient and costly for the plaintiff to have to bring those witnesses to Israel. In fact, plaintiff cannot compel third party witnesses in the United States to testify in Israel. All the corporate documents that relate to Hananel's claim are in the United States. The testimony of the other applicants will be important to corroborate Adelson's testimony concerning the timing and process of the bidding and negotiations. They are resident in the United States. Hananel, on the other hand, has not even asserted that there are important witnesses *to the Macau casino claim* in Israel.[5] It is the mobility of Adelson's case that litigating in Israel would hamper.

That said, it is important to keep in mind the admonition of the Court of Appeals. In *Nowak*, the Court of Appeals recognized that "[I]t. is almost always inconvenient and costly for a party to litigate a foreign jurisdiction. However, the burden necessary to defeat jurisdiction must be of "constitutional dimensions." *World-Wide Volkswagen Corp. et al v. Woodson*, 444 U.S. 286, 301 (1980).

> [T]he constitutionally significant 'burden' to be analyzed relates to the mobility of the defendant's defense. For instance, if having to travel to a foreign forum would hamper the defense because. . .there were a disproportionately large number of witnesses or amount of evidence that would have to be transported at the defendant's expense, or if being away from home for the duration of the trial would work some special hardship on the defendant, then the Constitution would require special consideration for the defendant's interests. *id.*

---

[5] The other lawsuit pending in the Labor Court in Israel, deals only with Hananel's claims for compensation from IPI for his work as branch manager and IPI's counterclaim. (Complaint #2)

The assertions of inconvenience in Hananel's affidavit fall far short of meeting the constitutional standards that the Supreme Court has enunciated. It is clear that the factors that The Court describes in *Woodson* support the plaintiff's assertion of jurisdiction in this court.

Moreover, the inconvenience and difficulties of travel for the defendant could be somewhat accommodated by the court requiring that his deposition, for example, be taken in some places between the U.S. and Israel, so that only one trip, which the defendant has made many times, need be taken for trial. The burden of appearance in the plaintiff's chosen forum, said the Court of Appeals, "is an important Gestalt factor primarily because it allows court to guard against harassing litigation." *Nowak* at 718. That concern is clearly not a case here. Litigation in Israel was first commenced between Hananel and IPI. It is Hananel's subsequent harassing claims against the plaintiff individually in those courts that make it all the more necessary for this court to assert jurisdiction.

The next Gestalt factor, the interest of the forum, weighs heavily in the plaintiff's favor. The Court of Appeals cautioned "nonetheless, our task is not to compare the interest of the two sovereigns... but to determine whether the forum state has an interest." *Nowak* at 718. Clearly Massachusetts has an interest in preserving the application of its substantive contract rules for contracts created in this state, and enforcing contracts made with its residents. *The Carlson Corporation v. The University of Vermont*, 380 Mass. 102 (1980) In this case the parties agreed that Hananel would work for a limited liability corporation. It was never intended that an officer would be personally bound by that contract, but that the corporation would be the obligor and that Adelson as an individual

would not to be hauled before any court to answer claims of contract liability.

Neither the policies of Israel nor Massachusetts should be affected by the choice of the forum. Both jurisdictions have interest in seeing in that the rules of law applies to commercial disputes be predictable so that commerce between the jurisdictions can be encouraged. Unless parties make agreements for the choice forums when they made a contract, they should be able to predict that the place where they make it is where they will adjudicate their rights. This is particularly true for contracts that involve nationals of different countries because the breach could occur in any number of jurisdictions who might have a claim to personal jurisdiction. Consequently if there are any policy consideration which to be considered in this case it was certainly seem to favor the assertion of jurisdiction by Massachusetts.

Clearly Hananel has derived benefits from his activities both business and personal in Massachusetts. He has used his visits to cultivate business relationships with the plaintiff and with others. He can hardly complain if Massachusetts courts now assert personal jurisdiction over him to determine disputes with Massachusetts residents.

> Moreover, were individuals' who purposefully derive benefit' from their interstate activities (citation omitted) it may well be unfair to allow them to escape having to account in other states for consequences that arise approximately from such activities; the due process clause may not readily be wielded as a territorial shield to avoid interstate obligations that have involuntarily assumed. And because 'modern transportation and communications have made it much less burdensome for a parties through to defend himself in a state were he engages in the economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another form for disputes relating to such activity. *Burger King Corp. vs. Rudzywicz*, 471 U.S. 462 (1985)

## THE DEFENDANT HAS NOT CARRIED HIS BURDEN TO SHOW THAT THE CASE SHOULD BE DISMISSED OR STAYED BASED ON THE DOCTRINE OF FORUM NON CONVENIENS.

A defendant has the burden- and a heavy burden it is ,*Nowak v. Tak How Invs., Ltd.,* supra.,at 719 (1st Cir. 1996) (There is a "strong presumption in favor of a plaintiff's forum choice, [against which] the defendant must bear the burden of proving . . . that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum.") of demonstrating that a case should be dismissed or stayed because of *forum non conveniens.*; In *Nowak,* the Court of Appeals for the First Circuit quoted the Supreme Court's decision in *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947), for the proposition that plaintiff should not be deprived of the advantages of his own jurisdiction except upon a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiffs convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems." *Nowak,* supra. at 720; see also *Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 15 (1st Cir. 2000).

Much of the discussion of the "gestalt factors" above is relevant to the issue of *forum non conveniens* and will not be repeated in any detail. There appear to be no witnesses of significance in Israel, while there are more than a dozen witnesses in the United States and in Massachusetts. The rather voluminous documents that bear on the Macau joint venture are in the United States. Of importance, should Hananel's case

survive a summary judgment motion, is the presence in the United States of the unsuccessful competitors who can corroborate that the "assistance" that Hananel claims to have given Mr. Adelson, could not have been relevant to the process of winning the license. These witnesses cannot be compelled and probably not induced to go to Israel to testify. The doctrine of *forum non conveniens* exists primarily for the convenience of witnesses and parties. The defendant has made no showing that litigation in Israel is convenient for anybody but him.

The inconvenience and supposed hardship to the defendant is much exaggerated. A trip or two to the United States cannot be a greater burden on the defendant, who is in his fifties than for Mr Adelson who is over 70. Moreover, Hananel has been well enough to travel in 2004, and (Roberts, ¶25) surely, a trip of an additional 6-7 hours is not beyond his ability

The applicable substantive law should be the law where the contract was made. The reasonable expectations of the parties surely was or should have been that Massachusetts law would govern the interpretation of the agreement, especially when the defendant now seems to be making a claim that Adelson personally is liable on the contract. Assuming that an Israeli court would try to apply Massachusetts law, it is far better for a judge who is most familiar with Massachusetts rules of decision to try the case. The choice of law and the best court to apply that law is a factor that this court should consider, *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1357 (1st Cir., 1992) and which weighs in favor of the plaintiff.

## CONCLUSION

This Court should deny the motion of the defendant to dismiss. The contract on which Hananel must base his claim for a piece of the Macau casino was finalized and agreed to in Massachusetts. The defendant and Adelson have strong relationships to Massachusetts. Hananel came willingly and voluntarily to Massachusetts to close the negotiations successfully. He had come to Massachusetts many times as well for business purposes. The issue in this case comes down to what did the parties agree. Did they agree that Hananel would not only be the branch manager in Israel, but would get 12% of any venture that was "initiated" by any of Adelson's entities (even ones with which Hananel had no connection, such as LVSI). Did Hananel's efforts initiate the Macau venture? These are questions that are grounded in Massachusetts, unlike the original suit in Israel, which deals with the alleged failure of IPI to pay Hananel all the compensation and benefits due him and his performance as manager, and which does not deal with the Macau casino claim. The resolution of the case at bar will depend largely on the testimony of American witnesses, documents located in this country and the application of Massachusetts law. It should proceed here.

Respectfully Submitted,

The Plaintiff, by his Attorney

Franklin H. Levy,
B.B.O. No. 297720
Albert P. Zabin, B.B.O. No.: 538380
DUANE MORRIS, LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

DATED: July 15, 2004