IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHELDON G. ADELSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | **04-cv-10357-RCL** |
| | ) | |
| MOSHE HANANEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY MEMORANDUM IN SUPPORT OF HANANEL'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

Defendant Moshe Hananel ("Hananel") offers this Reply Memorandum in support of his motions to dismiss for lack of personal jurisdiction and for forum non conveniens and motion to stay proceedings (in the alternative to dismissal). Plaintiff Sheldon Adelson ("Adelson") has filed an opposition memorandum ("Opposition"), an affidavit of Paul G. Roberts, Esq., in-house counsel to Adelson's companies ("Roberts Aff."), and an affidavit of Adelson himself ("Adelson Aff.").

Adelson's opposition papers fail to meet his burden of showing a prima facie basis for personal jurisdiction over Hananel in Massachusetts. They fail to rebut the overwhelming balance of convenience favoring resolution of all issues in the pending proceedings in Israel. Adelson does not even oppose Hananel's motion in the alternative for a stay of proceedings, which is now ripe for allowance.

In a highly significant event occurring since Adelson filed his Opposition, the Israeli court having jurisdiction over Hananel and Adelson and the Macau claim has now issued a ruling consolidating the 2001 employment-contract and 2003 Macau-project cases, over Adelson's

opposition, on the very same grounds, i.e., the identity of the issues and the need to avoid waste of judicial and party resources. The July 21, 2004 ruling is attached as Exh. 1 to the Second Affidavit of Moshe Hananel, filed herewith.

As Adelson chose to file a single Opposition in response to Hananel's three motions, this Reply will address the entire Opposition.

<b>Reply to Facts</b>

Adelson's Opposition purports to state facts that do not appear in the affidavits and exaggerates the statements that do appear, and the affidavits themselves are evasive of the central factual issues raised by Hananel's motions. As a result, the present record establishes, for the purposes of these motions: (a) Hananel's facts showing that he lacked minimum contacts with Massachusetts, requiring dismissal for lack of personal jurisdiction; and (b) Adelson's deep and abiding presence in Israel, including participation in the consolidated Israeli proceedings adjudicating issues identical to those he seeks to raise here, which causes the balance of convenience overwhelmingly to favor Israel as a forum, to avoid conflicting judicial determinations, duplicative expense to all parties, and substantial injustice to Hananel who lacks the worldwide resources Adelson boasts.

As for jurisdiction, the Roberts and Adelson affidavits combined do not deny the following essential facts: (1) The contact between Hananel and Adelson concerning the formation and performance of the employment agreement and the Macau claim which are the subjects of Adelson's Complaint occurred in Israel, with the exception of the disputed account of a single visit to Needham, Massachusetts, which is more fully addressed below; (2) Hananel initiated the Macau opportunity for Adelson while both were in Israel, and provided Adelson with written materials before his first two trips in 1999 and 2000, and Adelson's Macau trips began and ended

in Israel. As to the balance of convenience, the affidavits do not deny (and the Second Hananel Affidavit provides additional documentary evidence confirming) that (1) Adelson has a residence, office, lawyers, investments, and resources in Israel, visits there regularly for substantial periods, and has been actively engaged in litigation in Israel with Hananel since 2001 concerning the issues in his Complaint; and (2) Hananel has no similar contacts or resources in the United States.[1]

### 1.    Hananel's Lack Of Contacts With The United States Is Confirmed.

### a.    The formation of the agreement in Israel is not disputed and the Needham meeting was not significant.

Hananel's motion to dismiss for lack of jurisdiction and his first Affidavit (filed June 14, 2004), paragraphs 14-15, showed that his employment agreement with Adelson to serve as Israeli branch manager of IPI was made in Israel in September and October 1995 and that Adelson introduced him as such in Israel in October and November and gave him significant tasks to perform.[2] The Second Hananel Affidavit ¶ 5 refers to documentation in corporate minutes of Adelson's introduction, Hananel's position, and his check-writing authority in this period.

Moreover, Adelson's opposition papers do not effectively deny that the agreement was made in Israel prior to Hananel's December 1995 medical visit to the United States. The Roberts Affidavit itself admits that negotiation of the employment agreement <u>had occurred prior to the Needham visit</u>, which is what Hananel has stated. Roberts's Paragraph 7 confirms that Adelson had previously "told [Roberts] the terms he wished to offer to Hananel for employment" and Paragraph 8 states that, at the meeting, "*Hananel told me his understanding of the general terms*

---

[1]    The Second Hananel Affidavit filed herewith specifically refutes many testable statements in the Roberts and Adelson Affidavits, but the Court may find that Adelson has failed to provide prima facie evidence of jurisdiction based on the facts and documents provided by Hananel which these evasive affidavits do not deny.

[2]    Adelson's Opposition at 3 and the Roberts Affidavit at 7 attempt to downplay Hananel's substantial work for IPI in October and November, 1995, saying he wrote a "few" checks and performed "certain limited services." Adelson, however, nowhere denies any part of Hananel's detailed description of his pre-December efforts or

*that had been discussed between him and Adelson.*" Mr. Roberts, in what follows, never suggests
that these terms were changed in any way. It is therefore an error in the Adelson Opposition to
call this meeting one of "negotiation," because, as Roberts has admitted, no negotiation took
place. Indeed, he never uses the word.[3] Thus Mr. Roberts' version, however erroneous in its
details,[4] does not dispute the uniform testimony of Adelson himself in his two Israeli affidavits,
the September 29, 2002 affidavit attached to the first Hananel affidavit (*see* ¶ 12 and Exh. 1
thereto) and the recent July 3, 2004 affidavit attached to the Second Hananel Affidavit (*see* ¶ 22
and Exh. 6 thereto) that Hananel's employment was contracted for between Adelson and
Hananel.

     **b.**     **Even the Roberts version does not amount to purposeful availment.** Even if
the Roberts version of the conversation is considered for the purposes of this motion, and it is
given the significance the Opposition claims, the Needham meeting was not "purposeful
availment" by Hananel of a privilege of doing business in Massachusetts. His visit to
Massachusetts on this occasion was for the purpose of seeking medical treatment. The incidental
visit to the Needham office was to greet acquaintances, not for a meaningful business purpose.
Adelson never states, for example, that Mr. Roberts' approval or even input were required, and
has, in his July 3, 2004 affidavit in Israel, confirmed that it was his decision alone.[5]

---

Adelson's introduction of him to others in Israel as IPI's branch manager.

[3]    Adelson's equivocal statements in the Adelson Affidavit ¶ 5 do not contradict the existence of a prior agreement, because Adelson does not (because he cannot) deny his numerous prior public statements that Hananel was IPI's new Israel branch manager, as listed in the first Hananel Affidavit ¶¶ 14-15 and confirmed in the corporate minutes referred to in the Second Hananel Affidavit ¶ 5.

[4]    The Second Hananel Affidavit contradicts the alleged details put forward by Mr. Roberts in his Affidavit at ¶¶ 6-9, and shows that Mr. Roberts sought to exaggerate the length of the meeting by claiming that Hananel's medical appointment was "nearby" rather than at the Joslin clinic in Boston, a substantial distance at rush hour.

[5]    Exh. 6 to the Second Hananel Affidavit. While this affidavit is full of invective against Hananel, Adelson regularly confirms his sole responsibility for employing Hananel. *See* paragraphs 7, 8, and 14, where Adelson states that the employment was by "Interface (through myself)" and paragraph 26, where Adelson states "*I made it crystal clear that I – and only I – was authorized to approve the employment of [IPI employees] and the terms of their employment.*" Adelson thus confirms again that any Hananel-Roberts meeting in Needham was incidental to

       **c.**     **Other alleged Hananel contacts with Massachusetts are insufficient.**

Adelson's Opposition at 2 says that Adelson and Hananel "have had significant business

contacts in Massachusetts since their first meeting" and that "Hananel made many business trips

to Massachusetts for business as well as non-business activities." Neither of these statements

cites to an affidavit, and no dates are given, rendering them insufficient to support jurisdiction.

As pointed out in the Second Hananel Affidavit, ¶ 7, the Roberts Affidavit attaches a faked

version of a July 30, 2002 letter altered to imply that Needham, Massachusetts, and not Israel,

was IPI's principal office.

       **d.**     **Adelson concedes that Hananel's initiation of the Macau project took place**

**in Israel.** The Opposition and Roberts and Adelson affidavits contain general denials of

Hananel's rights to a share in the Macau project, but do not deny the details of Hananel's

essential role in initiating the project while he and Adelson were in Israel. Hananel's first

Affidavit, ¶¶ 19-22, described his informing Adelson of the Macau opportunity and providing

him with written materials to use on his first trips to Macau, and Adelson does not deny

Hananel's work.[6] Adelson does not deny, for example, that Hananel initiated and provided

documents to support Adelson's August 1999 and March 2000 visits, nor does he deny that

these visits were the cause of two years of intensive interactions with the Macau and national

Chinese authorities preceding the actual invitation to bid in October 2001.[7] Adelson does not

deny that he obtained a substantial advantage over competitors because of these early visits

---

the agreement between Hananel and Adelson previously made in Israel.
[6]    Adelson suggests a baseless inference that the two-year gap between his first August 1999 visit to Macau which Hananel suggested to him and the formal invitation to bid issued in 2001 (Roberts Aff. at ¶¶ 17-20; Opposition at 3-4 (with many statements unsupported by any affidavit)) minimizes Hananel's contribution. Adelson's persistent effort to misstate the sequence of events in his Macau success should be rejected, however.
[7]    Mr. Roberts's handwritten emendation, in paragraph 16 of his affidavit, of the date of Hananel's termination by Adelson from the actual date of April 2000 to the incorrect date of April 1999 appears to be wishful thinking, an attempt to exaggerate the distance between Hananel's initiation and the fruition of the Macau project.

initiated by Hananel.[8]  Hananel has previously directed the Court's attention to the multiple

contradictory statements as to the dates of the true evolution of the Macau project in Adelson's

Complaint in this action, Mr. Roberts's July 30, 2002 letter, etc.  *See* first Hananel Aff. ¶ 23.

The Second Hananel Affidavit, ¶ 13 and Exh. 3, shows another contradictory statement, this time

to the Securities and Exchange Commission.  Adelson's present contradictions are more of the

same.

### 2.    Adelson Concedes Continued Involvement In Identical Israeli Litigation, Rendering The Israeli Forum More Convenient For Both Parties.

Adelson's Opposition makes no attempt to deny that the subject matter of the ongoing

Israeli litigations (now consolidated) over the employment contract and the Macau claim is

identical to that of the present case.  If any doubt remained that Hananel's Macau claim against

Adelson, together with any issues concerning Hananel's employment contract, are being fully

litigated in the previously pending Israeli actions, it has been put to rest by the terse July 21,

2004 decision of the Israeli Labor Court ordering consolidation of the contract and Macau-claim

actions, stating "*with the aim of avoiding a situation in which two judges will reach different*

*rulings on similar issues.*"  2d Hananel Aff. ¶ 2 and Exh. 1.

### 3.    Hananel's Personal Physical Limitations.

Adelson's Opposition's attack on Hananel's physical limitations at page 5 cites to no

---

[8]     The flight logs of Adelson's plane, described by both Roberts and Hananel, confirm (despite the Roberts Affidavit's attempt to confuse the issue) that Adelson visited Macau on both occasions leaving from and returning to Israel, and had printed material provided by Hananel.  *Compare* Roberts Aff. ¶¶ 14-15 and 2d Hananel Aff. ¶ 9-11 and Exh. 2.  Mr. Roberts's statement in paragraph 15 (purely hearsay) that Adelson did not meet "concerning applying for a casino license" compels the conclusion that Adelson did in fact meet with both "Macau authorities" and "other part[ies]" concerning other purposes, i.e., at least the preliminaries of the Macau casino project, and that he did so at Hananel's initiative.  Mr. Roberts' statement in paragraph 16 that no connection exists between Adelson's August 1999 and March 2000 visits confirming his interest and Adelson's firing of Hananel in April 2000 is pure hearsay, as Mr. Roberts asserts no role in or personal knowledge of the reasons for Adelson's decision. Adelson's own affidavit does not deny that he fired Hananel in an attempt to deprive him of the benefits of what appeared to be a successful venture.

admissible evidence.[9]  The attack is insulting, because Hananel did not in fact assert any more than the usual difficulties faced by a blind person while traveling.  The attack is misdirected, because Hananel based the overwhelming inconvenience of the Massachusetts forum on the absence of readers, machines, and travel assistants he needs, which are available to him in Israel and not as easily provided in the U.S., and the additional effort which he would require for a trial in English in the U.S.  Adelson, notably, nowhere denies the convenience to himself of being able to testify in English, an official language of the Israeli court (a convenience confirmed by the multiple affidavits in English he has already filed there).  Nor does Adelson deny the enormous cost in time and money of translating the hundreds of documents consisting of thousands of pages in Hebrew which both parties have already submitted to the Israeli court.

### 4.    Alleged Witnesses Relevant To The Macau Claim.

The Roberts Affidavit ¶ 21 purports to list witnesses allegedly important to Adelson in the trial of the Macau claim.  The simple answer to Adelson's vague catalogue of alleged witnesses is that, if they are necessary to Adelson, they will be necessary to him in Israel because of the consolidated proceeding there, and he has the resources and authority over them to produce them in Israel.  Some of the persons listed have already stated that they are willing to appear in Israel to testify. 2d Hananel Aff. ¶ 14.  The witnesses will certainly be inconvenienced by having to appear in two different courts, and the inconvenience can be completely removed by dismissing the present action.  Moreover, the Second Hananel Affidavit ¶ 14 shows that witnesses who will corroborate the Macau claim by testifying as to Adelson's conduct are located in Israel.  Adelson does not deny that he himself is a principal witness to the Macau claim (and, as we have seen, does not deny that his initial trips began and ended in Israel).

---

[9]    The Roberts Aff. ¶ 25 reports the hearsay from an unidentified source that Hananel was in France sometime

Adelson's Opposition does not state that any of the United States witnesses on his list had any role in the formation of his agreement with Hananel to share the Macau project. Indeed, they appear to be witnesses concerning the later stages of the project, whose testimony, if relevant at all, would likely be duplicative. In summary, Adelson has failed to show that the convenience of witnesses is greater in Massachusetts than in Israel.

### 5. Adelson Concedes The Convenience Of Israel For Himself.

Hananel's first Affidavit, ¶¶ 12-17, listed Adelson's continuous, regular, and intensive contacts with Israel, and Adelson does not deny them. Indeed, nowhere does Adelson assert that it would be inconvenient for him personally to litigate in Israel. Some of his statements in the Opposition and Adelson Aff. ¶ 4 are merely misleading. For example, he denies his <u>ownership</u> of a residence in Israel but does not deny that he <u>has</u> a residence in Israel, or that his wife owns it. Indeed, IPI has designated Adelson's wife Miriam as its agent with power of attorney in Israel, a person who "usually resides" in Israel, and has listed her address at the residence they share. 2d Hananel Aff. ¶ 21 and Exh. 5. Nor does Adelson deny his extensive business interests in Israel or regular visits to attend to them. He does not assert any travel difficulties and has a private plane.[10]

### Argument

### I. UNDER THE AGREED STANDARD OF DECISION, ADELSON'S PROFFERS DO NOT ESTABLISH A PRIMA FACIE CASE OF PERSONAL JURISDICTION.

Adelson does not dispute Hananel's statement of the law governing jurisdiction or *forum non conveniens*.[11] He does, however, make a misleading statement that "The Court . . . must

---

in the Spring of 2004. This is both inadmissible and false. 2d Hananel Aff. ¶ 19.

[10]    As the 2d Hananel Aff. ¶ 20 and Exh. 4 show, between February 2004 and July 2004 Adelson has caused his standard biography on his corporate website to be altered by deleting his statement that he has a residence in Israel. His use of his private plane for international travel is referenced in 2d Hananel Aff. Exh. 6, ¶ 33.

[11]    Nor does Adelson dispute that, if the Court determines that it cannot act under the *prima facie* standard, it

- 8 -

accept the facts as true that the plaintiff presents" and cites to *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162 (D. Mass. 2001)(Lindsay, J.). Opposition at 6. The correct statement of the law by this Court in 2001 was that " 'the district court . . . accepts properly supported proffers of evidence by a plaintiff as true . . . ,' " quoting from *United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 987 F.2d 39, 44 (1st Cir. 1993). *Pike*, 143 F. Supp. at 165-166 (emphasis added). *See also Champion Exposition Servs., Inc. v. Hi-Tech Electric, LLC*, 172 F. Supp. 2d 172, 175 (D. Mass. 2003) (Lindsay, J.)("properly made assertions" required). As has been shown above, Adelson's submission includes much hearsay not amounting to "evidence" and key factual claims in his Opposition are not "properly supported" by affidavit. Other claims, such as the importance of the Needham meeting, are inconsistent with documents and all other statements by Adelson and IPI.

As has been noted, Adelson does not oppose Hananel's motion for a stay, or dispute the factual or legal bases for a stay.

## A.  Adelson Has Not Shown That Hananel Has Constitutionally Sufficient Contacts With Massachusetts.

Adelson's Opposition at 6-9 lists personal jurisdiction cases readily distinguishable from the present case. In each of these cases the court insisted on a showing that the defendant had contacted someone in Massachusetts to purposefully avail himself of the opportunity for commercial gain from Massachusetts residents. In the present case it remains undisputed that Hananel was contacted  by Adelson in Israel, offered the opportunity to perform work in Israel and elsewhere (but not in Massachusetts), and accepted the opportunity in Israel. Without some proof of purposeful availment, Adelson has not met his burden of showing personal jurisdiction.

---

should consider the preponderance standard or the likelihood standard, set forth in Hananel's Jurisdiction Memorandum at 7 n.3.

In *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99 (D. Mass. 2000) the defendant's contractual contacts were insufficient for jurisdiction and the court relied on a copyright infringement warning letter to Massachusetts which was "a purposeful act" and "significant licensing and distribution agreements in Massachusetts" as the basis. *Id.* at 109. Here, Hananel's employment was the result of solicitation <u>by Adelson in Israel</u>. Neither IPI nor Adelson is a true resident of Massachusetts; as Exh. 5 to the Second Hananel Affidavit shows, IPI has its principal offices in Israel and Las Vegas and a full legal presence in Israel where Adelson's wife is the agent to receive service of process, at Adelson's Israel residence. Adelson, the plaintiff in the present case, is clearly a resident of Las Vegas and Israel and does not claim more than an incidental home in Massachusetts.

The Virginia surgeon in *Salpoglu v. Widder*, 899 F. Supp. 835 (D. Mass. 1995), made "purposeful advertisements in Massachusetts" and made "numerous telephone calls to Salpoglu in Massachusetts to discuss the alleged contract with her." *Id.* at 838. He discussed the operation while the plaintiff was in Massachusetts, and negotiated and finalized the agreement at issue in telephone calls to Massachusetts. The entire formation of the contract at issue occurred while one party was in Massachusetts, unlike the present case, where Hananel and Adelson reached agreement in Israel and Hananel began his performance in Israel before December 1995. Likewise in *Hahn v. Vermont Law School*, 698 F.2d 48, 52 (1st Cir. 1983) (jurisdiction based on law school's advertising in and mailing of application to Massachusetts) and *Landmark Bank v. Machera*, 736 F. Supp. 375, 382 (D. Mass. 1990) (bank officers "purposely established contacts" with the plaintiff, a Massachusetts resident) the defendant had initiated the business relationship by repeated, purposeful communications with the plaintiffs in Massachusetts. No purposeful business activity was directed to Massachusetts by Hananel in the present case, and

the meeting incidental to a medical visit was not instrumental to, and indeed had no bearing on, an agreement already made in Israel.

The Opposition's statement at 8 that Adelson and Hananel had "almost daily telephone conversations" does not state that Adelson was in Massachusetts for those conversations. Hananel has stated (first Hananel Aff. ¶ 8) that the overwhelming majority of these telephone conversations occurred while Hananel was in Israel, and that fact is not denied. It is therefore inapposite to cite the *Champion Exposition Servs. Inc. v. High-Tech Electric LLC*, 273 F. Supp. 2d 172 (D. Mass. 2003) case, which relied on not only a visit but on the transmission to Massachusetts of a termsheet and an executed Letter Agreement which provided for the application of Massachusetts law. The *Champion* Court called these items the defendant's "deliberate choice to avail itself of the rights and protections afforded by Massachusetts law." *Id.* at 176. No such deliberate choice was made in the present case.

The *Nowak v. Tak Ho Investments*, 94 F. 3d 708 (1st Cir. 1996) case is as inapposite as the others. The plaintiff's claim for personal injury arose from advertising in international publications circulated in Massachusetts, and direct mail to Massachusetts citizens. 94 F.3d at 711. The First Circuit Court of Appeals concluded that the defendant hotel had "directly target[ed] residents in an ongoing effort to further a business relationship" rendering jurisdiction reasonable. *Id.* at 715. Contrary to Adelson's statement at 9 that the present case is "stronger," Hananel had made no solicitation whatsoever to anyone in Massachusetts at any time, much less the "unprompted" and specific commercial solicitation of *Nowak*, 94 F. 3d at 717.

**B.    The Gestalt Factors Favoring Hananel Are Not Effectively Disputed.**

Adelson's Opposition at 11-15 addresses only the first two of the Gestalt factors listed

by Hananel in his Jurisdiction Memorandum at 11.[12] The Court may therefore conclude that Adelson concedes that the three unaddressed factors unequivocally favor dismissal, i.e.: Adelson can obtain full relief in Israel; the United Stated judicial system's interests in effective resolution can be realized in the Israeli action; and the common interests of the United States and Israel in social policies are favored by dismissal.

Adelson's attack on Hananel's convenience (the first Gestalt factor) is misdirected.[13] Adelson concedes Hananel's general difficulties in travel, and does not address, much less contradict, the even more onerous additional burdens which Hananel identifies concerning his appearance in the United States. The burden of travel, while great, is added to the burden of appearing in a distant forum without the family or employee assistance and technical equipment a blind person needs. The United States forum will require English translations of the hundreds of Hebrew documents filed by both parties in the three Israeli actions. This Court can conclude from the statements of both parties that the employment contract was at least initiated in Israel (Hananel says, and Adelson does not deny, that it was negotiated there and performance begun there before December 1995), was performed in Israel, and that the Macau trips by Adelson that Hananel initiated began and ended in Israel. At least the witnesses to these events are in Israel (including Adelson, who does not deny regular visits) and this Court cannot doubt the need for a substantial number of Israeli witnesses.[14]

---

[12] The Court need not reach the Gestalt factors because Adelson has not carried his burden of showing either relatedness or purposeful availment, but Hananel addresses them from caution.

[13] Adelson's citation to *Woodson*, which he describes as a holding of the Supreme Court, does not support his argument. The citation is not to the Supreme Court's holding, but to Justice Brennan's *dissent* in a case where the majority had refused to find jurisdiction in Oklahoma over a New York automobile dealer or the New York regional distributor. The holding favors dismissal. *See also Champion Exposition Servs., Inc. v. Hi-Tech Electric, LLC, supra,* 172 F. Supp. 2d at 179 (primary purpose of gestalt factor to prevent harassing litigation).

[14] Adelson goes on (Opp. at 14) to make an astonishing assertion that Hananel is "harassing" Adelson in the Israeli courts and apparently suggests to this Court that continuation of the present entirely duplicative United States litigation will somehow prevent "harassment" of Adelson. A review of Adelson's citation to *Nowak* reveals the correct principle of law. There, the Court of Appeals for the First Circuit pointed out that the plaintiffs,

- 12 -

The second Gestalt factor, the interest of the forum, is not convincingly argued by Adelson. Israel clearly has the stronger interest, as Adelson does not deny a residence and substantial business interests in Israel, and he affirmatively asserts the right to make all employment decisions and contract terms with Israeli citizens. *See* note 5, *supra.* His presence in Israel and the employment agreements he makes there with its citizens give Israel a paramount interest. By contrast, Adelson does not claim that his own relationship with Massachusetts has any particular significance for either himself or Hananel, and certainly not for the performance of the employment contract. Indeed, Adelson has fully confirmed the stronger interests of Israel, by causing IPI to sue Hananel in Israel, and cannot now point to any interest by Massachusetts in adjudicating this long-standing dispute.[15]

Adelson adds a three-sentence paragraph at the end of this section (page 11) in which he purports to address purposeful availment. His effort fails because he cites to no facts (and none exist) showing that Hananel made an unprompted solicitation towards Massachusetts or that he purposely derived business benefit from his December 1995 Massachusetts visit, as the visit was for medical purposes and the meeting with Mr. Roberts and Adelson (the length and import of which are disputed) had, even according to the admissions of Mr. Roberts and Adelson, (a) no significant business effect, (b) no benefit to Hananel, and (c) no particular effect on Massachusetts.[16]

---

Massachusetts residents suing a Hong Kong hotel for the wrongful death of a family member who drowned in a swimming pool there, could not be accused of bringing the suit merely to harass the hotel. 94 F.3d at 718. The contrast with the present case is stark; Adelson is initiating a fourth litigation with Hananel in a remote forum on entirely duplicative issues, and *Novak* confirms that dismissal is entirely proper. Adelson himself, of course, brought the 2002 employment suit against Hananel in Israel through his control of IPI.

[15] The Court should note that Mr. Roberts attached as Exh. 1 to his affidavit a fake copy of a letter to Hananel's Israeli lawyer which was altered from the original by replacing IPI's principal return address in Israel with the Needham address in the footer. 2d Hananel Aff. ¶ 7.

[16] Adelson's citation to *Burger King* highlights the distinction from the present case, as the Supreme Court there found Florida jurisdiction over a Michigan fast-food franchisee who had continuous direct dealings with a corporate headquarters located in Florida, unlike the present case, where only one visit is claimed, and even that

## II.    ISRAEL IS AN AVAILABLE AND ADEQUATE FORUM AND THE BALANCE OF CONVENIENCE STRONGLY SUPPORTS DISMISSAL IN FAVOR OF ISRAEL.

Adelson's argument on *forum non conveniens* likewise concedes significant factors of decision. He does not mention, much less dispute, that Israel is an available and adequate forum for adjudication of Adelson's present lawsuit. Other factors applied by courts in the First Circuit listed by Hananel in his Memorandum in support of his motion to dismiss for *forum non conveniens* at 6-8 are not disputed: Adelson effectively concedes that the absence of any litigation activity in Massachusetts favors Israel, where three actions are pending; and he makes no proffer of admissible evidence that docket congestion is a factor.

Adelson's repetition of his unsupported contentions regarding the convenience of witnesses is unavailing. He continues to ignore that the result of his argument is that all witnesses will have to appear in two court proceedings rather than one. He does not deny the necessity of bringing these alleged witnesses to Israel to support his side of the cases pending there (including the one he commenced through IPI). He ignores that five of the witnesses have made affidavits in the Israeli proceedings and have stated their willingness to come to Israel to testify. 2d Hananel Aff. ¶ 14. The Opposition ignores as well the obvious importance of Israeli witnesses to both sides. It does not deny that many relevant documents are in Israel, in Hebrew, and are already before the Israeli court, and does not claim that additional documents from the United States cannot be readily produced there (where their English is accepted without costly translation). He repeats the canard that Hananel's difficulties in litigating in the United States are limited to travel difficulties, ignoring the language and vision-technology difficulties, and the convenience for Adelson in litigating in Israel in English.

As part of his proof that the balance of convenience overwhelmingly favors Israel

---

visit was for another purpose.

Hananel has offered substantial evidence, none of which the Opposition denies, that Adelson has a residence, offices, counsel, and resources in Israel and that he visits Israel regularly. Adelson does not now deny that he has never claimed a Massachusetts venue for the formation of the employment contract in any of the Israeli proceedings. The Opposition, however, seeks at page 10 to create a false impression that Hananel has taken inconsistent positions in the Israeli court. The May 24, 2004 ruling does not, as the Opposition suggests, make a finding that Adelson's relevant activities were all in the United States. For example, at Page 7 of the decision, the court quotes Adelson's own affidavit ("there are businesses in Israel which I manage outside of the Israeli branch of [IPI], such as investments in real estate and in movie theaters in Israel") and goes on to conclude, on page 8, as the Opposition concedes, that service of process on IPI was proper service on Adelson under Israeli law. The court does not say that Hananel argued that Adelson acted exclusively from the United States. There is therefore nothing inconsistent and Hananel's factual evidence of Adelson's regular physical presence in Israel for business purposes including purposes related to Hananel's employment and the Macau claim, remain unrebutted.

In a continued exaggeration unsupported by affidavits, Adelson suggests (page 17) that the agreement was "made" in Massachusetts. Even if this suggestion were true, which it is not, it does not follow that either Adelson, IPI, or Hananel expected that Massachusetts law would govern. None of them testify to such an expectation. None have ever told an Israeli court that such was the case. Even the Opposition can only speculate that "[t]he reasonable expectations of the parties surely was [sic] or should have been that Massachusetts law would govern the interpretation of the agreement." Adelson offers no basis for a finding that Massachusetts law governs and his conduct requires an opposite finding.

Finally, Adelson does not address, much less deny, Hananel's clear statement at page 8 of

his Convenience Memorandum, that Adelson's Complaint should be dismissed under *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-509 (1946) as an attempt to vex, harass and annoy Hananel. Nowhere does Adelson attempt to draw any distinction between the ongoing Israeli proceeding concerning the Macau claim and the action in this Court. As the Israeli court has, on July 21, 2004 rejected any distinction and consolidated it with the earlier contract action "with the aim of avoiding a situation in which two judges will reach different rulings on similar issues" (Exh. 1 to Second Hananel Affidavit), this Court may confidently do the same.

## Conclusion

For the above reasons and reasons in Hananel's principal memoranda, the Court should dismiss the Complaint for lack of personal jurisdiction, and for *forum non conveniens*, and in the alternative should grant the unopposed motion for a stay of proceedings.

Dated: August 4, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on Aug 4, 2004

MOSHE HANANEL
By His Attorneys,

James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

ReplyDismiss-31216-1

- 16 -