IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) **04-cv-10357-RCL** |
| | ) |
| MOSHE HANANEL, | ) |
| | ) |
| Defendant. | ) |

**OPPOSITION OF HANANEL TO ADELSON'S MOTION FOR LEAVE TO FILE A
RESPONSE TO HANANEL'S REPLY MEMORANDUM**

Defendant Moshe Hananel ("Hananel") opposes the motion of Plaintiff Sheldon G.

Adelson ("Adelson") for leave to file a response to Hananel's Reply Memorandum on the

following grounds:

1.      The "Plaintiff's Response" attached to the motion for leave does not address,

much less reply to, the basic grounds for Hananel's motions to dismiss:  (1)  Hananel and

Adelson agreed on, and Hananel began to perform, Hananel's employment contract in Israel

before the December 1995 visit; (2) Hananel had no contacts with Massachusetts at any time

which constitute purposeful availment of a Massachusetts forum; and (3) the prior ongoing

litigation in Israel is entirely duplicative of Adelson's present action.[1]  Because Adelson's current

Response ignores these issues, it can have no effect on the determination of Hananel's motions.

---

[1]      Adelson files another affidavit by an attorney of his (Mr. Zabin added to Mr. Roberts) despite the disfavor
of counsel affidavits, especially in jurisdictional situations. *See Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 674 n.
1 (1st Cir. 1992) (counsel filing affidavit of allegedly relevant facts "risks impairing both the attorney/client and
attorney/court relationship").

2.    Even if Adelson's Response is considered, its factual assertions and arguments fall

of their own weight.

a.    Reference (Response at 2) to Hananel's work as IPI's representative at the Auto

Depot company does not deny that Adelson himself, during a lengthy visit to

Israel in the Summer and Fall of 1995, introduced Hananel to the Auto Depot

board as IPI's branch manager in November 1995 and gave him IPI's authority as

an investor at that time.  Nor does it avoid Adelson's previous admission that

Adelson gave Hananel the right to sign checks for IPI in the pre-December period.

*See* (First) Hananel Aff. ¶¶ 14-18; Second Hananel Aff. ¶ 5; Adelson's

Opposition (July 15, 2004) at 2 ("At first . . . [Hananel] was given the authority

to write checks").

b.    Reference  (Response at 2-3 and Exh. A) to Hananel's Declaration in the Melnik

litigation ignores Hananel's statement in paragraph 9 of his Declaration (Adelson's

Response Exh. A) that "I informed [Melnik] of that [that Melnik did not have a

place at IPI], clearly, in September 1995." (Emphasis added.)[2]  Thus Hananel's

statement in paragraph 2 of the Declaration that he (Hananel) began to represent

IPI in Israel "close to the time of termination of [Melnik's] work at [IPI]"

confirms that Hananel's IPI employment began close to September, and that

Melnik's official termination of employment as of December 31, 1995 is not the

date close to the commencement of Hananel's employment.

c.    Reference  (Response at 3) to Adelson's lack of ownership of a house in Israel is a

continuation of his effort to mislead the Court and ignores the evidence before this

Court of his many public claims of a residence in Israel (i.e., his wife's house), his frequent visits to Israel for business purposes, and his offices, counsel, resources, and investments in Israel, all of which render it highly convenient for him to litigate the Macau claim in Israel in the prior ongoing entirely duplicative proceeding, leading to dismissal for *forum non conveniens*.

d.    Reference (Response at 3) to Adelson being forced to litigate in Israel against his will ignores years of previous conduct by Adelson. Neither Adelson or IPI had ever sought avoid personal jurisdiction by the Israeli courts in these proceedings, which began in 2001, or claimed jurisdiction over Hananel in the United States. Instead, both entities have always chosen to litigate in Israel and have recognized the Israeli court's personal jurisdiction over both of them, together with the overwhelming convenience of the Israeli forum.

e.    Reference (Response at 4 and Exh. B, the Zabin Aff.) to Hananel's trips to Europe in 2003 and 2004 has fatal defects. First, it is irrelevant, as Hananel has never claimed that it is impossible for him to travel, but that, since his disabilities became severe in 2002 he can only do it with substantial direct support from family members or others.[3] Accordingly, his trips to European countries do not alter the balance of convenience. Second, the Zabin Affidavit is entirely hearsay,

---

[2]    By providing this affidavit, Adelson concedes that he had given Hananel the authority to deal with IPI employees in Israel.

[3]    Hananel reserves any rights he may have to assert that the information in the Zabin affidavit was improperly obtained, but states for this Court's information that the trips Zabin lists were (a) to Holland with his family for ceremonies at the passing of a family member of his wife's; (b) to Bulgaria with his family by official invitation to address the Parliament concerning Holocaust memorial events; (c) to Ireland with his wife and friends to visit a friend; and (d) to Hong Kong/Macau as fully set forth in Hananel's Second Affidavit ¶ 19. Applying arithmetic to the Zabin Aff. shows that if Hananel made "over 60" trips abroad since 1998 that he made at least 55 of them in the four years before 2003 and only five thereafter, confirming that Hananel's disabilities began to be severe, including legal blindness, in 2002, as stated in the (First) Hananel Aff. ¶ 3.

as it makes clear on its face (and should be ignored pursuant to Mr. Zabin's own authorities he cites elsewhere in this filing).[4]

f.    Reference (Response at 4 and Exh. C) to the State Department's advisory concerning travel to Israel ignores, and therefore admits, that many of the witnesses alleged as necessary by Adelson regularly travel to Israel and have connections there, despite the advisory. 2d Hananel Aff. ¶ 14. Indeed, hundreds of thousands of Americans visit Israel every year. *See* Exh. 1 hereto, a newspaper article reporting official tourism statistics.

g.    Reference (Response at 5-6) to a dispute over the significance of the Needham visit adds nothing to the record; as indicated, Adelson nowhere denies his pre-December employment of Hananel, his announcement in Israel of Hananel's position, or Hananel's performance of duties for IPI as its branch manager in Israel, before the Needham visit.

h.    Reference (Response at 6-7) to a dispute over the Macau claim does not deny that Hananel had the vision concerning opportunities in Macau, initiated Adelson's interest in Macau and pushed him to pursue the opportunities, gave Adelson advice and documents in Israel before Adelson's first two trips, or that the trips began and ended in Israel.[5] If Adelson persists in denying that Hananel initiated

---

[4]    On the issue of whether Adelson has met his burden of providing plausible evidence, Hananel asks the Court to note that the Zabin Affidavit confirms (although by hearsay) that the Roberts Affidavit statement that Hananel was in France in 2004 (¶ 25: "I also know . . . [that] at one point several months ago . . . he was traveling in France") was false. Adelson provides no explanation or apology to the Court.

[5]    The Response's sarcastic reference at page 7 to Adelson's 1999 trip to Macau on the Hong Kong-Macau ferry cannot obscure prior efforts by both Mr. Roberts and Adelson to deny a Hananel-initiated 1999 Adelson trip to Macau (Roberts Aff. ¶ 14: "[Adelson's private] airplane landed in Macau for purely aviation related reasons"; Adelson Aff. ¶ 6). Moreover, the present Response concedes the misleading nature of the Roberts and Adelson Affidavits and admits that Adelson's Macau trips took place, at page 7 n. 3. The Response does not deny that casino investment discussions took place on these trips. Footnote 3 proposes only an implausible alternative explanation for these visits, showing that Adelson believes himself free to change his story.

the Macau investment, that is a matter squarely pending before the Israeli court.

Adelson's dispute about the merits of the Macau claim cannot avoid these

admissions that the claim is thoroughly based in Israel and has no relationship

with Massachusetts.

i.      Reference (Response at pages 8-9) to Israeli language law and ordinances shows,

by the terms of the laws quoted, that the laws <u>do not</u> impose Hebrew on litigants

in Israel, but <u>expressly permit</u> the use of other languages in Israeli courts.  That

Adelson will enjoy the opportunity to use English in the prior ongoing

proceedings in Israel is demonstrated by his multiple lengthy affidavits in English

there ((First) Hananel Aff. Exh. 1 (Sept. 29, 2002), Second Hananel Aff. Exh. 6

(July 3, 2004)), and his submission of many hundreds of pages of documents in

English to the court there, and is not denied in this Response.

3.      Despite a suggestion that he will do so, Adelson still <u>fails to contest</u> Hananel's

motion for stay of proceedings pending the outcome of the prior Israeli proceedings, of which

Adelson's present Complaint is entirely duplicative.  Hananel's motion can be granted without

opposition.

WHEREFORE, because of its failure to add relevant factual information or legal argument,

Adelson's motion for leave should be denied.  If his Response is considered, its conclusion

should be rejected, and Hananel's motions granted.

Dated: September 1, 2004

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand on 9/1/04

MOSHE HANANEL
By His Attorneys,

James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

OppHanToMotLvResp-31216-1