IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, | ) <br> ) <br> ) |
| Plaintiff, | ) Civil Action No. <br> ) <br> ) 04-cv-10357-RCL |
| v. | ) <br> ) |
| MOSHE HANANEL, | ) <br> ) |
| Defendant. | ) <br> ) |

**[REVISED] REPLY MEMORANDUM IN SUPPORT OF HANANEL'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS**

Defendant Moshe Hananel ("Hananel") offers this Reply Memorandum in support of his motions to dismiss for lack of personal jurisdiction and for forum non conveniens and motion to stay proceedings (in the alternative to dismissal). Adelson does not even oppose Hananel's motion in the alternative for a stay of proceedings, which is now ripe for allowance.

In a highly significant event occurring since Adelson filed his Opposition, the Israeli court having jurisdiction over Hananel and Adelson and the Macau claim has now issued a ruling consolidating the 2001 employment-contract and 2003 Macau-project cases, over Adelson's opposition, on the very same grounds, i.e., the identity of the issues and the need to avoid waste of judicial and party resources. The July 21, 2004 ruling is attached as Exh. 1 to the Second Affidavit of Moshe Hananel, filed herewith.

**Reply to Facts**

The present record, consisting of Adelson affidavits that do not deny Hananel's essential points and Adelson arguments unsupported by affidavits, establishes (a) that Hananel lacked minimum contacts with Massachusetts; and (b) Adelson's deep and abiding presence in Israel,

including the consolidated Israeli proceedings adjudicating the Macau claim, causes the balance of convenience overwhelmingly to favor Israel as a forum, to avoid conflicting judicial determinations, duplicative expense to all parties, and substantial injustice to Hananel who lacks the worldwide resources Adelson boasts.

The Roberts and Adelson affidavits combined do not deny that all contact between Hananel and Adelson concerning the formation and performance of the employment agreement and the initiation of the Macau claim occurred in Israel, with the exception of the disputed account of a single visit to Needham, Massachusetts, which is more fully addressed below. As to the balance of convenience, the affidavits do not deny that (1) Adelson has a residence, office, lawyers, investments, and resources in Israel, visits there regularly for substantial periods, and has been actively engaged in litigation in Israel with Hananel since 2001 concerning the issues in his Complaint; and (2) Hananel has no similar contacts or resources in the United States.[1]

1. **Hananel's Lack Of Contacts With The United States Is Confirmed.**

a. **The Needham meeting was not purposeful availment.** Adelson's affidavits are insufficient to refute that Hananel's employment agreement with Adelson to serve as Israeli branch manager of IPI was made in Israel in September and October 1995.[2] The Roberts Affidavit Paragraph 7 confirms that Adelson had previously "told [Roberts] the terms he wished to offer to Hananel for employment" and Paragraph 8 states that, at the meeting, "*Hananel told me his understanding of the general terms that had been discussed between him and Adelson.*"

---

[1] The Second Hananel Affidavit filed herewith specifically refutes many testable statements in the Roberts and Adelson Affidavits, but the Court should find that Adelson has failed to provide prima facie evidence of jurisdiction based on the facts and documents provided by Hananel which these evasive affidavits do not deny.

[2] Adelson's Opposition at 3 and the Roberts Affidavit at 7 attempt to downplay Hananel's substantial work for IPI in October and November, 1995, but they concede that Hananel had check-writing authority, and that he performed services. Adelson, moreover, nowhere denies any part of Hananel's detailed description of his pre-December efforts or Adelson's introduction of him to others in Israel as IPI's branch manager. The Second Hananel Affidavit ¶ 5 refers to documentation in corporate minutes of Adelson's introduction, Hananel's position, and his check-writing authority in this period.

Mr. Roberts never uses the word "negotiation."[3] Thus Mr. Roberts' version, however erroneous in its details,[4] does not dispute the uniform testimony of Adelson himself in his two Israeli affidavits, the September 29, 2002 affidavit attached to the first Hananel affidavit (*see* ¶ 12 and Exh. 1 thereto) and the recent July 3, 2004 affidavit attached to the Second Hananel Affidavit (*see* ¶ 22 and Exh. 6 thereto) that Hananel's employment was contracted for between Adelson and Hananel.

      b.    **Even the Roberts version does not amount to purposeful availment.** Even if the Roberts version is considered, the Needham meeting was not "purposeful availment" by Hananel of a privilege of doing business in Massachusetts. His visit to Massachusetts on this occasion was for the purpose of seeking medical treatment.

      c.    **Other alleged Hananel contacts with Massachusetts are insufficient.** Adelson's Opposition at 2 says that Adelson and Hananel "have had significant business contacts in Massachusetts since their first meeting" and that "Hananel made many business trips to Massachusetts for business as well as non-business activities." Neither of these statements cites to an affidavit, and no dates are given, rendering them insufficient to support jurisdiction. As pointed out in the Second Hananel Affidavit, ¶ 7, the Roberts Affidavit attaches a faked version of a July 30, 2002 letter altered to imply that Needham, Massachusetts, and not Israel, was IPI's principal office.

---

[3] Adelson's equivocal statements in the Adelson Affidavit ¶ 5 do not contradict the existence of a prior agreement, because Adelson does not (because he cannot) deny his numerous prior public statements that Hananel was IPI's new Israel branch manager, as listed in the first Hananel Affidavit ¶¶ 14-15 and confirmed in the corporate minutes referred to in the Second Hananel Affidavit ¶ 5. *See* paragraphs 7, 8, and 14 of Adelson's July 2004 Affidavit, where he states that the employment was by "Interface (through myself)" and paragraph 26, where Adelson states "*I made it crystal clear that I – and only I – was authorized to approve the employment of [IPI employees] and the terms of their employment.*"

[4] The Second Hananel Affidavit contradicts the alleged details put forward by Mr. Roberts in his Affidavit at ¶¶ 6-9, and shows that Mr. Roberts sought to exaggerate the length of the meeting by claiming that Hananel's medical appointment was "nearby" rather than at the Joslin clinic in Boston, a substantial distance at rush hour.

**d.     Adelson concedes that Hananel's initiation of the Macau project took place in Israel.** The Opposition and Roberts and Adelson affidavits <u>do not deny the details of Hananel's essential role in initiating the Macau project while he and Adelson were in Israel</u>. Adelson does not deny, for example, that Hananel initiated Adelson's August 1999 and March 2000 visits, or that Adelson's trips began and ended in Israel, or that Hananel provided Adelson with written materials before the trips, nor does he deny that these visits were the cause of two years of intensive interactions with the Macau and national Chinese authorities preceding the actual invitation to bid in October 2001.[5] The Second Hananel Affidavit, ¶ 13 and Exh. 3, shows another contradictory statement by Adelson concerning the timing of the Macau license, this time to the Securities and Exchange Commission.

### 2.     Adelson Concedes Continued Involvement In Identical Israeli Litigation, Rendering The Israeli Forum More Convenient For Both Parties.

Adelson's Opposition makes no attempt to deny that the subject matter of the ongoing Israeli litigations (now consolidated) over the employment contract and the Macau claim is identical to that of the present case. Any doubt has been put to rest by the terse July 21, 2004 decision of the Israeli Labor Court ordering consolidation of the contract and Macau-claim actions, stating *"with the aim of avoiding a situation in which two judges will reach different rulings on similar issues."* 2d Hananel Aff. ¶ 2 and Exh. 1.

### 3.     Hananel's Personal Physical Limitations.

Adelson's Opposition's attack on Hananel's physical limitations at page 5 cites to no admissible evidence.[6] The attack is insulting, because Hananel did not in fact assert any more

---

[5]     Mr. Roberts's handwritten emendation, in paragraph 16 of his affidavit, of the date of Hananel's termination by Adelson from the actual date of April 2000 to the incorrect date of April 1999 appears to be wishful thinking, an attempt to exaggerate the distance between Hananel's initiation and the fruition of the Macau project.
[6]     The Roberts Aff. ¶ 25 reports the hearsay from an unidentified source that Hananel was in France sometime in the Spring of 2004. This is both inadmissible and false. 2d Hananel Aff. ¶ 19.

than the usual difficulties faced by a blind person while traveling. The attack is misdirected, because Hananel based the overwhelming inconvenience of the Massachusetts forum on the absence of readers, machines, and travel assistants he needs, which are available to him in Israel and not as easily provided in the U.S., and the additional effort which he would require for a trial in English in the U.S. Adelson nowhere denies the convenience to himself of being able to testify in English (a convenience confirmed by the multiple affidavits in English he has already filed there). Nor does Adelson deny the enormous cost in time and money of translating the hundreds of documents consisting of thousands of pages in Hebrew which both parties have already submitted to the Israeli court.

4. **Alleged Witnesses Relevant To The Macau Claim.**

The reply to Adelson's vague catalogue of alleged witnesses (Roberts Affidavit ¶ 21) is that, if they are necessary to Adelson, they will be necessary to him in Israel because of the consolidated proceeding there, and he has the resources and authority over them to produce them in Israel. Some of the persons listed have already stated that they are willing to appear in Israel to testify. 2d Hananel Aff. ¶ 14. Indeed, they appear to be witnesses concerning the later stages of the project, whose testimony, if relevant at all, would likely be duplicative.

5. **Adelson Concedes The Convenience Of Israel For Himself.**

Nowhere does Adelson assert that it would be inconvenient for him personally to litigate in Israel. Although he denies his <u>ownership</u> of a residence in Israel he does not deny that he <u>has</u> a residence in Israel, or that his wife owns it. Indeed, IPI has designated Adelson's wife Miriam as its agent with power of attorney in Israel, a person who "usually resides" in Israel, and has listed her address at the residence they share. 2d Hananel Aff. ¶ 21 and Exh. 5. Nor does Adelson deny his extensive business interests in Israel or regular visits to attend to them. He does not

assert any travel difficulties and has a private plane.[7]

### Argument

**I.    UNDER THE AGREED STANDARD OF DECISION, ADELSON'S PROFFERS DO NOT ESTABLISH A PRIMA FACIE CASE OF PERSONAL JURISDICTION.**

Adelson does not dispute Hananel's statement of the law governing jurisdiction or *forum non conveniens*.[8]  He does, however, make a misleading statement that "The Court . . . must accept the facts as true that the plaintiff presents" and cites to *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162 (D. Mass. 2001)(Lindsay, J.). Opposition at 6. The correct statement of the law by this Court in 2001 was that " 'the district court . . . accepts <u>properly supported</u> proffers of <u>evidence</u> by a plaintiff as true . . . ,' " quoting from *United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 987 F.2d 39, 44 (1st Cir. 1993). *Pike*, 143 F. Supp. at 165-166 (emphasis added). *See also Champion Exposition Servs., Inc. v. Hi-Tech Electric, LLC*, 172 F. Supp. 2d 172, 175 (D. Mass. 2003) (Lindsay, J.)("properly made assertions" required). Adelson's submission includes much hearsay not amounting to "evidence" and key factual claims in his Opposition are not "properly supported" by affidavit. Other claims, such as the importance of the Needham meeting, are inconsistent with documents and all other statements by Adelson and IPI.

As has been noted, Adelson does not oppose Hananel's motion for a stay, or dispute the factual or legal bases for a stay.

---

[7]    As the 2d Hananel Aff. ¶ 20 and Exh. 4 show, between February 2004 and July 2004 Adelson has caused his standard biography on his corporate website to be altered by deleting his statement that he has a residence in Israel. His use of his private plane for international travel is referenced in 2d Hananel Aff. Exh. 6, ¶ 33.

[8]    Nor does Adelson dispute that, if the Court determines that it cannot act under the *prima facie* standard, it should consider the preponderance standard or the likelihood standard, set forth in Hananel's Jurisdiction Memorandum at 7 n.3.

### A. Adelson Has Not Shown That Hananel Has Constitutionally Sufficient Contacts With Massachusetts.

In each of Adelson's cited cases (Opposition at 6-9) the court insisted on a showing that the defendant had contacted someone in Massachusetts to purposefully avail himself of the opportunity for commercial gain from Massachusetts residents. In the present case it remains undisputed that Hananel was contacted by Adelson in Israel, offered the opportunity to perform work in Israel and elsewhere (but not in Massachusetts), and accepted the opportunity in Israel, all before the December 1995 medical visit. Without some proof of purposeful availment, Adelson has not met his burden of showing personal jurisdiction. In *Champion Exposition Servs. Inc. v. High-Tech Electric LLC*, 273 F. Supp. 2d 172 (D. Mass. 2003), the defendant not only visited but transmitted to Massachusetts a term sheet and an executed Letter Agreement which provided for the application of Massachusetts law. The *Champion* Court called these items the defendant's "deliberate choice to avail itself of the rights and protections afforded by Massachusetts law." *Id.* at 176. No such deliberate choice was made in the present case. In *Nowak v. Tak Ho Investments*, 94 F. 3d 708 (1st Cir. 1996) the Court of Appeals for the First Circuit concluded that the defendant hotel had "directly target[ed] residents in an ongoing effort to further a business relationship" rendering jurisdiction reasonable. *Id.* at 715.[9]

### B. The Gestalt Factors Favoring Hananel Are Not Effectively Disputed.

Adelson's Opposition at 11-15 addresses only the first two of the Gestalt factors, conceding that the three others unequivocally favor dismissal, i.e.: Adelson can obtain full relief in Israel; the United Stated judicial system's interests in effective resolution can be realized in the Israeli action; and the common interests of the United States and Israel in social policies are

---

[9] The Opposition's statement at 8 that Adelson and Hananel had "almost daily telephone conversations" does not state that Adelson was in Massachusetts for those conversations.

favored by dismissal.[10]

Adelson's attack on Hananel's convenience (the first Gestalt factor) is misdirected.[11] Adelson concedes Hananel's general difficulties in travel, and does not address, much less contradict, the even more onerous additional burdens which Hananel identifies concerning his appearance in the United States, including the need for English translation of the hundreds of Hebrew documents submitted by both parties in the Israel litigations.[12]

As to the second Gestalt factor, the interest of the forum, Israel has a very strong interest, as Adelson, with diverse business interests in Israel (and a residence) affirmatively asserts the right to make all employment decisions and contract terms with Israeli citizens. *See* note 3, *supra*. By contrast, Adelson does not even assert that Massachusetts has any particular significance for either himself or Hananel. Indeed, Adelson has fully confirmed the stronger interests of Israel, by causing IPI to sue Hananel in Israel.[13]

Adelson's effort to claim purposeful availment fails because Hananel made no unprompted solicitation towards Massachusetts or purposely derived business benefit from his December 1995 Massachusetts visit. The visit was for medical purposes and the meeting with

---

[10] The Court need not even reach the Gestalt factors because Adelson has not carried his burden of showing purposeful availment, but Hananel addresses them from caution.
[11] Adelson's citation to *Woodson*, which he describes as a holding of the Supreme Court, does not support his argument. The citation is not to the Supreme Court's holding, but to Justice Brennan's dissent in a case where the majority had refused to find jurisdiction in Oklahoma over a New York automobile dealer or the New York regional distributor. The holding favors dismissal. *See also Champion Exposition Servs., Inc. v. Hi-Tech Electric, LLC, supra*, 172 F. Supp. 2d at 179 (primary purpose of gestalt factor to prevent harassing litigation).
[12] Adelson goes on (Opp. at 14) to make an astonishing assertion that Hananel is "harassing" Adelson in the Israeli courts and apparently suggests to this Court that continuation of the present entirely duplicative United States litigation will somehow prevent "harassment" of Adelson. A review of Adelson's citation to *Nowak* reveals the correct principle of law. There, the Court of Appeals for the First Circuit pointed out that the plaintiffs, Massachusetts residents suing a Hong Kong hotel for the wrongful death of a family member who drowned in a swimming pool there, could not be accused of bringing the suit merely to harass the hotel. 94 F.3d at 718. The contrast with the present case is stark; Adelson is initiating a fourth litigation with Hananel in a remote forum on entirely duplicative issues, and *Novak* confirms that dismissal is entirely proper. Adelson himself, of course, brought the 2002 employment suit against Hananel in Israel through his control of IPI.
[13] The Court should note that Mr. Roberts attached as Exh. 1 to his affidavit a fake copy of a letter to Hananel's Israeli lawyer which was altered from the original by replacing IPI's principal return address in Israel with the Needham address in the footer. 2d Hananel Aff. ¶ 7.

Mr. Roberts and Adelson (the length and import of which are disputed) had, even according to the admissions of Mr. Roberts and Adelson, (a) no significant business effect, (b) no benefit to Hananel, and (c) no particular effect on Massachusetts.[14]

## II. ISRAEL IS AN AVAILABLE AND ADEQUATE FORUM AND THE BALANCE OF CONVENIENCE STRONGLY SUPPORTS DISMISSAL IN FAVOR OF ISRAEL.

Adelson's argument on *forum non conveniens* likewise concedes significant factors of decision. He does not dispute, that Israel is an available and adequate forum for adjudication of Adelson's present lawsuit. Adelson effectively concedes that the absence of any litigation activity in Massachusetts favors Israel, where three actions are pending; and he makes no proffer of admissible evidence that docket congestion is a factor.

Adelson does not deny the necessity of bringing his alleged witnesses to Israel to support his side of the cases pending there (including the one he commenced through IPI), where they can testify in English. The Opposition ignores as well the obvious importance of Israeli witnesses to both sides, and the difficulty of having their testimony translated from Hebrew in the United States. Adelson does not deny that many relevant documents are in Israel, in Hebrew, and are already before the Israeli court, and does not claim that additional documents from the United States cannot be readily produced there (where their English is accepted without costly translation). Adelson does not now deny that he has a residence, offices, counsel, and resources in Israel and that he visits Israel regularly, or that he has never claimed a Massachusetts venue for the formation of the employment contract in any of the Israeli proceedings.[15]

---

[14] Adelson's citation to *Burger King* highlights the distinction from the present case, as the Supreme Court there found Florida jurisdiction over a Michigan fast-food franchisee who had continuous direct dealings with a corporate headquarters located in Florida, unlike the present case, where only one visit is claimed, and even that visit was for another purpose.

[15] The Opposition seeks at page 10 to create a false impression that Hananel has taken inconsistent positions in the Israeli court. The May 24, 2004 ruling does not, as the Opposition suggests, make a finding that Adelson's relevant activities were all in the United States. For example, at Page 7 of the decision, the court quotes Adelson's own affidavit ("there are businesses in Israel which I manage outside of the Israeli branch of [IPI], such as

Finally, Adelson does not address, much less deny, Hananel's clear statement at page 8 of his Convenience Memorandum, that Adelson's Complaint should be dismissed under *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1946) as an attempt to vex, harass and annoy Hananel. Nowhere does Adelson attempt to draw any distinction between the ongoing Israeli proceeding concerning the Macau claim and the action in this Court. As the Israeli court has, on July 21, 2004 rejected any distinction and consolidated it with the earlier contract action "with the aim of avoiding a situation in which two judges will reach different rulings on similar issues" (Exh. 1 to Second Hananel Affidavit), this Court may confidently do the same.

## Conclusion

For the above reasons and reasons in Hananel's principal memoranda, the Court should dismiss the Complaint for lack of personal jurisdiction, and for *forum non conveniens*, and in the alternative should grant the unopposed motion for a stay of proceedings.

Dated: August 4, 2004 (revised to ten pages September 8, 2004)

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 9/10/04

MOSHE HANANEL
By His Attorneys,

_____
James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

ReplyDismissRev-31216-1

---

investments in real estate and in movie theaters in Israel") and goes on to conclude, on page 8, as the Opposition concedes, that service of process on IPI was proper service on Adelson under Israeli law. The court does not say that Hananel argued that Adelson acted exclusively from the United States.

- 10 -

 **PERKINS SMITH & COHEN**

Perkins Smith & Cohen LLP
Attorneys at Law

**James A.G. Hamilton**
(617) 854-4203 Direct Dial
jhamilton@pscboston.com

September 10, 2004

**BY HAND**

Lisa Hourihan, Clerk to
The Honorable Reginald C. Lindsay
United States District Court
 for the District of Massachusetts
One Courthouse Way, Suite 5130
Boston, MA 02210

Re:   <u>Sheldon G. Adelson v. Moshe Hananel</u>
       U.S. District Court District of Massachusetts, Docket No. 04CV10357RCL

Dear Ms. Hourihan:

Pursuant to Judge Lindsay's Order entered September 6, 2004, the Defendant Moshe Hananel respectfully seeks to take advantage of the Court's invitation "to file a revised reply brief so long as it is filed within ten days of this order and does not exceed ten, double-spaced pages with customary margins." Enclosed for filing please find a [Revised] Reply Memorandum in Support of Hananel's Motions to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens Or, in the Alternative, to Stay Proceedings to replace the original filed on August 4, 2004.

The Defendant regrets any inconvenience to the Court. Thank you for your attention to this matter, and please contact the undersigned if further action is necessary.

Very truly yours,

James A. G. Hamilton

JAGH/gc
Enclosures

cc:   Franklin H. Levy, Esq. *(by mail, w/encls.)*

31216-1-LtrUSDC