UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Docket No. 04cv-1035RCL

SHELDON G. ADELSON,

        Plaintiff,

v.

MOSHE HANANEL,

        Defendant.

## PLAINTIFF'S RESPONSE TO DEFENDANT, MOSHE HANANEL'S REPLY MEMORANDUM

At the outset, the Plaintiff points out that the Defendant's assertion that the Plaintiff had not objected to the Motion to Stay Proceedings is palpably incorrect. The court need only refer to the title of the Plaintiff's Opposition. As the Defendant more ingenuously observes later on in its memorandum, the Plaintiff has resisted the Defendant's Motions with one argument. The Plaintiff represents to this court that he most vigorously objects the stay in the proceedings and intends to prosecute the action with vigor and dispatch.

### FACTUAL ISSUES

In the section of its reply entitled "Reply to Facts", the Defendant makes the assertion that the Roberts and Adelson Affidavits "do not deny" that the contact between Hananel and Adelson concerning the formation and performance of the IPI employment agreement and the Macau claim occurred in Israel, with exception of the disputed account of a single visit to Needham. What is that one single visit? It is the visit at which the parties agreed upon the terms

BOS\108455.1

of the contract for Hananel's IPI employment, the employment from which the alleged Macau agreement arose. The place of the making of the contract is a well recognized jurisdictional fact that gives a court in a contract claim jurisdiction to decide the case on the merits. The assertion that Hananel makes, "that the formation of the agreement in Israel is not disputed and the Needham meeting was not significant" (Reply page 13) is essentially wishful thinking. The second affidavit that Hananel has filed speaks to his having done work for a different company of Mr. Adelson's, Auto Depot, Ltd-- a separate corporation of which IPI (not Adelson) is a stockholder.. It does not establish that Hananel was actually employed by IPI. On the contrary, it is undisputed that Hananel received no pay from IPI until after January of 1996. Moreover, Hananel has filed an affidavit in a separate case in Israel in which he stated facts which lead inexorably to the inference that, before the end of December, he was not employed by IPI. Hananel gave that affidavit (<u>Exhibit A</u>) in the litigation that one Moshe Melnik brought against IPI, as a result of his discharge. In the second paragraph of the declaration, Hananel swore, "Close to the time of termination of the Plaintiff's work at the Defendant, I began to represent the Defendant in Israel." He then attached a copy of a letter that he sent to the insurance company that would pay Melnik's legally required severance pay. In that letter, he wrote, "The above employee terminated his employment with us on 12/31/95 under terms that entitle him to severance pay. We are transferring to his ownership the manager's policy that is under my name." These sworn statements and the letter attached to the affidavit corroborates the statements that Paul Roberts and Adelson made at their depositions, which fix the time and place of the employment agreement between IPI and Hananel as December of 1995. Close to the time of termination of Melnik in December of 1995 is not September or October. Contrary to the Defendant's assertion, the Roberts affidavit does sharply dispute Hananel's version of the

meeting and its significance. Not only is Roberts affidavit different from Hananel's, but it is corroborated by Hananel's own affidavit made in the Melnik case.

The second assertion in the Defendant's "facts" section of his opposition also is in error and seriously overstates the extent of Mr. Adelson's connection with Israel. It is true that Mr. Adelson's wife, Dr. Miriam Adelson, does own a residence in Israel. Adelson does not. The very fact that Dr. Miriam Adelson has been appointed as a registered agent IPI far from establishing Adelson's personal tight connections with Israel, does just the opposite. Israeli law[1] requires that foreign corporations which establish a place of business in Israel appoint agents who are resident in Israel. Mr. Adelson could not be a registered agent for any of the corporations that he owns that are operating in Israel, because he is not usually in Israel, as the statute requires. While it is true he is engaged in litigation with Hananel, this court, one hopes, would not lose sight of the fact that Adelson involvement in litigation in Israel is wholly against his will. Hananel misappropriated funds from the Israeli office of IPI, and IPI has sued for reimbursement. If at the trial it appears, and the judge decides, that there is no personal jurisdiction over Adelson, the case against Adelson would go no further. Nonetheless, the issue

---

[1] The Israeli Companies Ordinance, in its relevant sections provide:

> §383 (b)**The registration application shall be filed with the Registrar within one month after the establishment of the place of business, and be accompanied by the following documents:**
>
> (3)   <u>The name and address of a person residing in Israel</u> who is **authorized to accept service of process for the company and notices which have to be served on the company;**
>
> (4)   **A copy of a deed of authorization empowering** <u>a person who resides routinely in Israel</u> **to act on behalf of the company in Israel, certified in the manner determined.**

before this court is not whether an Israeli court has personal jurisdiction over Adelson, but whether this court has jurisdiction over Hananel.

Hananel contends that the balance of convenience tips in his favor. One of the arguments that he has advanced is that because of his blindness, he "requires specialized computer and other equipment to assist in reviewing documents and communicating in writing." (*See* Hananel's first Affidavit, paragraph 3). He states that, because of his blindness, he finds it "difficult to travel abroad." In his second Affidavit, having been caught failing to inform the court he was able to and did make a trip to Macau, he asserts that Mr. Roberts statement that "I am often out of my house" is false, and Mr. Roberts' assertion that he traveled to France this year is false. What he doesn't inform the court is that in 2003, he traveled to Holland for 10 days, to Ireland for 8 days, to Bulgaria for 9 days, to Hong Kong for 5 days, and to Holland for 4 days, the latter trips occurring in January and February of 2004. He apparently has traveled abroad since 1998 64 times. (Exh. B. affidavit of Albert P. Zabin)

The other factual issue that seems to be in contention is whether travel to Israel at this time would be dangerous and make it difficult for other witnesses from other parts of the world to come to Israel. In paragraphs 14 and 15, Mr. Hananel takes the Plaintiff's attorneys to task for raising this issue. His criticism is not well taken. The affidavits of the witnesses referred to in paragraph 14 of the second Hananel Affidavit, by signing these affidavits by no means agreed they would go to Israel. His statements in paragraph 15, simply are irrelevant. What is relevant is that that the State Department has recently issued a travel advisory advising American Citizens not to travel to Israel (<u>Exhibit</u> C attached hereto).

**NEITHER THE FACTS ASSERTED IN THE DEFENDANT'S REPLY BRIEF NOR ITS ARGUMENTS IN ANY WAY WEAKEN THE PLAINTIFF'S PRIMA FACIE CASE FOR PERSONAL JURISDICTION.**

The Defendant argues that Mr. Roberts' version of the meeting of December does not amount to purposeful availment. That argument, as it develops, totally ignores the substance of Mr. Roberts' Affidavit. It assumes to be true and undisputed that Hananel's assertions of what happened at his meeting are uncontested or disproved. To the contrary, one might ask even if Mr. Hananel went to the Leahy Clinic, which the Plaintiff does not deny, why would he be at the Needham office, if not to discuss business? The obvious answer is that he was there to discuss and to come to an agreement about his employment. Hananel argues that it was a long drive from the clinic to the office. Why then come to the office to meet with IPI's attorney if not to conclude a contract? Why come to the office if Hananel's intention was to go to go to a social event with the Adelsons, as he claims? To receive the congratulations and good wishes of persons he does not identify? Why not meet Mr. Adelson at Mr. Adelson's Newton home? Undoubtedly, prior conversations with Mr. Adelson may have taken place by phone when Adelson was in Massachusetts or elsewhere in the United States or otherwise; they had been taking place since 1988, when the two became acquainted and later friends, but it is clear from Mr. Roberts that he was instructed by Mr. Adelson to make an offer, not in general terms, but quite specific. That is what Mr. Roberts did, and Mr. Hananel accepted that offer. The offer and acceptance of a contract in the forum state is, as the cases cited in the Plaintiff's Opposition to the Motion to Dismiss show, uniformly recognized as purposeful availment. Hananel does not and cannot deny, either in his first affidavit or his second, that after taking the job in Israel, he was in contact on business matters by telephone and otherwise[2] with IPI in Massachusetts and

---

[2] Hananel's company credit card records (Exh. D) show that he was at the Sheraton Hotels Needham on August 8, 1997 and many other places in the United States while an IPI manager.

elsewhere in the United States. He does not and cannot deny that he never received pay from IPI, until after January 1, 1996.

Hananel has provided this court with no admissible evidence that, as a result of whatever he claims to have done to interest Adelson in operating a casino in Macau, Adelson ever did anything. He has presented no evidence that anything Hananel did in this connection led to the success of one of Adelson's companies becoming involved in a Macau casino.

The statement in the Reply Brief that Adelson concedes that Hananel's initiation of the Macau project took place in Israel is surprising, to say the least. Adelson certainly does deny that Hananel initiated Macau enterprise or that he provided documents to support Adelson's trip to China, and the plaintiff certainly denies that the visits were the cause of "two years of intensive interactions with the Macau and National Chinese Authorities preceding the actual invitation to bid in October 2001." As pointed out in the Plaintiff's Motion to Strike Portions of the Defendant's Affidavit, he has provided no admissible evidence that anything that Mr. Adelson did while in Hong Kong or Macau had anything to do with the casino project. The invitation to bid, or more correctly, the invitation for expressions of interest, issued by the Macau Government for the creation of a casino was not made to Mr. Adelson, nor did he have "an inside track." The bidding was very competitive, as the materials that the Defendant provided this court in connection with his Reply show. Hananel has made the assertion, without any evidence, much less evidence in admissible form, that Mr. Adelson's visits gave him a "substantial advantage over competitors" (Defendant's Reply Memorandum, page 5). Adelson certainly denies that assertion, if any denial were necessary. The Defendant has not identified any documents, other than the guide to investment that he claims to have given to Adelson, which as has been pointed out, has nothing relevant to a casino development. In fact, a the time that Mr.

Adelson allegedly went to Macau with the documents[3] that were supposed to be so invaluable in giving him a substantial edge over his competitors, gambling casinos in Macau were in the hands of one person, who had a government permitted monopoly and operated all ten casinos in the city.

Hananel also contends that his instructions to Adelson to take the high-speed ferry from Hong Kong to Macau was a piece of invaluable material information that gave him an inside track. I am sure the court would recognize how important this piece of information must have been to Mr. Adelson, who owns and operates one of the largest tour companies in the United States. Undoubtedly, without Mr. Hananel's valuable travel information, Mr. Adelson would still be wandering around Hong Kong asking for directions to Macau.

The attempts of Hananel to distinguish the cases supporting jurisdiction that Adelson has cited in his brief opposing the Motion to Dismiss point to factual differences, which only make those cases stronger as precedent, because virtually all of the cases involved contact with Massachusetts that the Defendants had initiated by telephone, by mail or by general national advertising. In this case, the agreement on which Hananel's claim must be based was made in Massachusetts[4].

---

[3] Adelson's trips to Macau were marketing trips to induce the super high rollers (many of whom come to Macau) to patronize his Las Vegas casinos

[4] The Defendant suggests that if the court decides that it cannot decide this case on the prima facie standard, it should look to the substantial evidence or preponderance standard. If the court should choose to use the preponderance or likelihood standard, the Plaintiff submits that the submitted evidence weighs heavily in his favor for the reasons discussed previously in this Memorandum. However, the Plaintiff would be more than willing, and has served a motion for leave to have limited discovery on the jurisdictional issues, as they have evolved in the parties' briefs.

## II   THE GESTALT FACTORS DO NOT FAVOR HANANEL.

### A.   The Personal Difficulties Alleged by Hananel.

Hananel's admitted travels to Macau and Europe, disclosed by the private investigation strongly suggests that Mr. Hananel, despite his disabilities, certainly can travel. He does not explain why the equipment that he uses cannot come with him or why he cannot rent that equipment in the United States. The contention that Adelson concedes that the contract was negotiated and that performance began before December of 1995 in Israel simply is wrong. Moreover, whether or not Hananel came to Massachusetts in December of 1995 for medical treatment or not does not change the fact that the agreement, according to Mr. Roberts, was made here. Hananel does not and cannot deny that his job required him to be in frequent contact with IPI here in Massachusetts. The *Burger King case* is good precedent, despite Hananel's attempt to distinguish it, because there, the Michigan franchisee had continuous direct dealings with the corporate headquarters in Florida, but not in person. The situation is similar here.

Hananel again asserts that litigating in the United States is a hardship because English is not his native tongue. Adelson does not know Hebrew and conducts business in English. Hananel does not contend otherwise. All of Hananel's extensive communications with Adelson over their many years of acquaintance were made only in English.

He claims that the language burden on Adelson is less because English is one of the official languages in the Israeli courts. That assertion is false. The Order in Council for the Land of Israel, 1922, §82, as presently in effect, provides as follows:

**Official Languages**

> All Ordinances, official notices and official forms of the Government and all official notices of local authorities and municipalities in areas to be prescribed by order of the Government, shall be published in Arabic and Hebrew. The two

BOS\108455.1

- 8 -

languages may be used, subject to any regulations to be made from time to time by the Government, in the Government offices and the Law Courts"[5].

Moreover, The Administration of Rule and Justice Ordinance, §15(b) provides, "Any provision in a law requiring the use of the English language, is null and void".

## CONCLUSION

Hananel's claim that this Court lacks jurisdiction over him rests on his assertion that he became the operating officer of IPI in Israel before the meeting of December, 1995. He does not deny that he was in the IPI office in Needham in December, 1995; he denies that Attorney Roberts made an offer of employment that he accepted in the Needham office. His own affidavit in the litigation that Moses Melnik brought states that Melnik's termination (on 12/31/1995) occurred close in time to Hananel's commencement as IPI's representative in Israel. That sworn statement is compatible with Mr. Robert's affidavit, not Hananel's assertions. The Court should deny the defendant's motion to dismiss.

## THE PLAINTIFF REQUESTS ORAL ARGUMENT

The plaintiff requests oral argument. Plaintiff's counsel believes that oral argument would aid the court, by sharpening the issues and answering any questions or concerns the Court might have.

---

[5] Under Israeli law, the ordinances and laws of the British Palestine Mandate are part of the laws of the State, except as modified or repealed. This ordinance initially named English as one of the official languages of the Mandate territory. The Knesset deleted English from the ordinance after the establishment of the State of Israel.

BOS\108455.1

The Plaintiff,
SHELDON G. ADELSON,
By his attorneys,

*/s/ Albert P. Zabin*

Albert P. Zabin, B.B.O. No.: 538380
Franklin H. Levy, B.B.O. No.: 297720
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

Dated: August 19, 2004

## CERTIFICATE OF SERVICE

I, Albert P. Zabin, do hereby certify that I served a copy of the foregoing on all counsel of record listed below via first class mail, postage prepaid this 19th day of August 2004.

James A.G. Hamilton, Esquire
Perkins, Smith & Cohen, LLP
One Beacon Street
Boston, MA 02108

*/s/ Albert P. Zabin*
Albert P. Zabin