UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

SHELDON G. ADELSON,

        Plaintiff,

v.

MOSHE HANANEL,

        Defendant.

Docket No. 04CV10357RCL

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ENJOIN THE DEFENDANT FROM PURSUING PARALLEL CAUSES OF ACTION IN ISRAEL

### FACTS[1]

Moshe Hananel ("Hananel") was a salaried employee of Interface Partners International Limited, a Delaware corporation, ("IPI") from January 1996 until the spring of 2000. The sole shareholder of IPI is the plaintiff, Sheldon G. Adelson ("Adelson"). In addition to IPI, Adelson is the majority shareholder in the Interface Group of Massachusetts, LLC ("IG") with offices in Needham, Massachusetts and the Las Vegas Sands, Inc. ("LVSI") in Las Vegas, Nevada

In December 1995, Hananel met with Paul G. Roberts ("Roberts"). Roberts was general counsel to IG and performed legal services for Adelson, IPI, and LVSI. At that meeting in December, Roberts (acting on behalf of IPI) and Hananel reached an oral agreement concerning the terms of Hananel's employment by IPI.[2]

---

[1] A complete recitation of facts is set out in the various memoranda already on file.

[2] In the Affidavits previously filed Hananel admits to meeting with Roberts but denies discussing terms of employment.

Hananel's employment and subsequent termination have lead to suits and countersuits between him and IPI. Of concern to this motion, however, are the cases filed in Israel and the United States between Hananel and Adelson.

Hananel has never been paid by Adelson. His sole relevant income was derived from IPI. Nevertheless, Hananel claims that one of the terms of his oral employment agreement was that he would receive "options in ventures initiated during the course of his work". These options were alleged to be 12% of the shares of a successful Adelson venture or a company controlled by Adelson.[3]

In affidavits filed in the case at bar, Hananel claims that he was instrumental in Adelson obtaining the right to operate gambling casinos in Macau. In essence, Hananel alleges that without him Adelson would never have gone to Macau (or even been able to find Macau). Having provided this opportunity for Adelson, and the opportunity having been exploited by LVSI, Hananel claims his fee.

In the case pending in this Court, Adelson has sued for a declaration that he owes Hananel nothing. Adelson has a home in Massachusetts, has long established businesses in Massachusetts, and asks this Court to make a declaration of rights concerning a contract made in Massachusetts.

The matter requires urgent action. Hananel has harassed and threatened Adelson. He has issued press releases and articles have appeared in Chinese and American newspapers. As recently as October 12, 2004 he wrote to the Israeli attorneys for Goldman Sachs to protest that

---

[3] Complaint, Hananel v. IPI and Adelson, Labor Case 7704103, District Labor Court of Tel Aviv Jaffa, Paragraphs 5.1 and 5.2, copy attached hereto as Exhibit "A".

his claims are not referenced in an LVSI registration statement filed with the United States Securities and Exchange Commission.

A copy of the letter is attached hereto as Exhibit "B". The intent is obvious. Goldman Sachs is underwriting a public offering of shares for LVSI. Hananel hopes to be able to interfere with an offering of several hundred million dollars in a further attempt to secure a settlement/payoff.

## ANTISUIT INJUNCTION

<u>Standards</u>

A request to enjoin litigation in a foreign country, so that a case between the same parties with the same issues can proceed solely in the United States evokes a well established dilemma:

"It is well settled that [foreign] and American Courts have power to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions. However, the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be plead as res judicata in the other." <u>Laker Airways Ltd. v. Sabena, et al.</u>, 731 F.2d 909, 926, 927 (D.C.C.T. 1984).

The First Circuit recently articulated standards for resolving this conundrum. In <u>Hans A. Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren</u>, 361 F.3d11 (1st Cir., 2004) Judge Selya began with the premise that there is a rebuttable presumption against stopping either side of the parallel prosecutions. However, "…we hold that in every case a district Court should examine the totality of the circumstances in deciding whether a particular case warrants the issuance of an international antisuit injunction." id. at 21.

In examining those circumstances, <u>Quaak</u> holds that respect for international comity must be balanced against the character of the foreign action and the public policy at stake in the U.S. case. The Appeals Court's Opinion approved the reasoning of Judge Saris who first granted the injunction holding that it was necessary to protect the Court's jurisdiction over discovery and to protect investors from fraud. <u>In Re Lernout and Haupsie Securities Litigation</u> 2003 U.S.Dist.Lexis 22466.

Other Courts that have dealt with issues of foreign suit injunctions have put similar emphasis on the importance of protecting the jurisdiction of the Court with the most interest in the resolution of the matter. <u>Mutual Service Casualty Insurance Company v. frit Industries</u>, 805 F.Supp. 919 (D.M.D. Alabama, 1952). Similarly, Courts have held that antisuit injunctions are appropriate when the foreign litigation, if decided first, would result in the defeat or evasion of important policies which would be upheld in the United States Courts. See for example, <u>International Fashion Products, B.V. v. Calvin Klein, Inc.</u>, 1995 U.S.Dist.LEXIS 2598 (S.D.N.Y., 1995) in which an injunction was granted to stop a foreign proceeding that violated the public policy of honoring forum selection clauses in agreements.

<u>Argument</u>

Hananel's claim against Adelson pending in the Israel courts is for a finder's fee in connection with the Macau casino. Although difficult to discern from the face of the complaint, Hananel's affidavits clarify his cause. In his June 4, 2004 affidavit filed in this Court, he states in paragraph 20 and elsewhere that in 1999 he was the prime mover in initiating the Macau casino project as a "potential investment by Adelson". A copy is attached as Exhibit "C".

Motion papers already on file in this case make it clear that Hananel has no likelihood of success in his claim against Adelson. Taking his claim in its most positive light, it boils down to

4

him telling Adelson in 1999 where Macau was, that Macau had gambling and that Adelson could get to Macau from Hong Kong. The one written document he allegedly provided Adelson was an investment guide concerning Zhuhai, which is a seaside city in South China, has no casino gambling and is not Macau.

Nowhere in any of the papers filed in this case has Hananel come to grips with the uncontroverted fact that it was not until the fall of 2001 that Macau first created a Tender Commission and announced that interested parties could make bids for casino licenses. (Roberts July 13, 2004 Affidavit, a copy is attached as Exhibit "D").

Of importance here is that not only is there no likelihood of success, but Hananel's case relies completely on an oral agreement to pay a finders fee. In Massachusetts and most other states that claim is barred by the Statute of Frauds MGL Ch. 259 §7.[4]

This has been the law in Massachusetts since 1984 when the legislature amended Chapter 259, Section 7. It is the public policy of Massachusetts that agreements to pay finder's fees or commissions for identifying business opportunities must be in writing. Cantell v. Hill Holliday Connors Cosmopolos, Inc., 55 Mass.App.Ct. 550, 772 N.E.2d 1078(2002). The purpose for the enactment of these types of laws was stated by the New York Law Revisions Committee when it enacted a similar amendment to its Statute of Frauds. "The nature of the transactions is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted... The controversies are commonly resolved by juries on

---

[4] §7. Agreements to pay compensation for service as a broker or finder; necessity of writing.
Any agreement to pay compensation for service as a broker or finder or for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business, its good will, inventory, fixtures, or an interest therein, including a majority of voting interest in a corporation, shall be void and unenforceable unless such agreement is in writing, signed by the party to charged therewith, or by some other person authorized.

5

conflicting testimony, with the consequent danger of erroneous verdicts." (1949 Report of NY Law Rev Commission, p. 615 [NY]. There is no such public policy embedded in Israeli law, and as a consequence, that "protection from erroneous verdicts" does not exist in Israel (See Affidavit of Dr. Yoram Danziger, Exhibit "E".)

This case involves a United States citizen who owns both a home and businesses in Massachusetts in a dispute with an Israeli citizen concerning a business venture in Macau. To the extent any agreement was made, it was made in Needham, Massachusetts.

In Leflar, the Nature of Conflicts Law, 81 Colum.L.Rev. 1080, 1085 (1981), cited in Bushkin v. Raytheon, 393 Mass 622, 473 N.E. 2d 662 (1985) five factors are used in determining choice of law:

> "(A) Predictability of results; (B) maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of forum's governmental interests; (E) Application of the better rule of law."

Each of those standards argues for the application of Massachusetts law. Israel has no interest in this case.

## CONCLUSION

The Commonwealth of Massachusetts has a significant public policy as enacted in the Statute of Frauds. Courts have granted antisuit injunctions when a party litigates in a foreign jurisdiction to avoid those public policy considerations. See Unterwaser Redeaderei GMBH v. M/S Bremen, 428 F.2d 888 (1970) rev'd on other grounds sub nom Bremen v. Zapata, 407 U.S. 1 (1972) in which a court enjoined litigation in England which would have lead to the enforcement of a contract provision which was unenforceable in the United States.

In the case at bar Hananel seeks to obtain a result in Israel that which he could never obtain in Massachusetts. He hopes that in the Israeli Labor Court he can obtain what is beyond

his reach here – an "erroneous verdict." This Court should stop that attempt to thwart public policy and justice.

                                              SHELDON G. ADELSON

                                              By his attorneys

                                              _/s/ Franklin H. Levy_

                                              Franklin H. Levy, B.B.O. No.: 297720
                                              Albert P. Zabin, B.B.O. No.: 538380
                                              DUANE MORRIS LLP
                                              470 Atlantic Avenue, Suite 500
                                              Boston, MA 02210
                                              (617) 289-9200

Dated: November 1, 2004

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true and correct copy of the above document was served upon the attorney of record for each party by ~~mail~~/by hand.

Dated: 11/1/04      _/s/_

BOS\112474.1