IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHELDON G. ADELSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | **04-cv-10357-RCL** |
| | ) | |
| MOSHE HANANEL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF HANANEL IN SUPPORT OF MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES, PRODUCTION OF DOCUMENTS, AND DEPOSITION TESTIMONY AND CERTIFICATION OF L.R. 37.1 CONFERENCE**

Defendant Moshe Hananel ("Hananel") offers this Memorandum in support of his motion pursuant to Fed. R. Civ. P. 37 for an Order to Compel Plaintiff Sheldon G. Adelson ("Adelson") to make further responses respond to Hananel's discovery requests. The L.R. 37.1 certification and description of the discovery conference appears in Hananel's motion to compel.

**NATURE OF THE CASE AND FACTS RELEVANT TO THE DISCOVERY MATTERS TO BE DECIDED.**

Adelson filed this action in February, 2004 against Hananel, a resident of Israel, claiming that Hananel's assertion, in litigation between the parties in Israel, of a claim to a share of Adelson's investment in a casino project in Macau, China was invalid. Hananel moved to dismiss for lack of personal jurisdiction and on forum non conveniens grounds, and for a stay in favor of the Israeli proceedings, in June, 2004. The Court has denied the stay motion without a hearing, and has denied the other motions without prejudice to their renewal following limited discovery. The Court entered a stipulated order (Exh. 1 hereto) on February 23, 2005. The parties dispute whether Adelson complied with his discovery obligations arising under that order and the interrogatories, document production requests, and deposition notice served on him by

Hananel.

The relevant facts have been the subject of affidavits and briefing by the parties, and the Court is asked to consider those previous filings.  In summary, both parties admit the existence of an oral employment contract between them.  Hananel has sought to discover information in Adelson's possession or control concerning:

1.    the extensive services performed by Hananel for Adelson in Israel before December, 1995, because Hananel contends that the employment contract was made in Israel at that time, while Adelson claims that Hananel is subject to personal jurisdiction in Massachusetts because of an alleged meeting to discuss the contract on Dec. 5, 1995; and

2.    evidence confirming that Hananel initiated and developed the Macau casino project while he and Adelson were in Israel in 1999 and 2000.

This information will assist the Court in deciding jurisdiction and forum non conveniens issues.

## 1.    FAILURE TO PRODUCE REQUESTED DOCUMENTS.

1.    All aircraft flight manifests concerning travel by Adelson from June 1, 1995 to the present:

a.    to or from Israel;

b.    to or from Jordan; and

c.    to or from Massachusetts.

RESPONSE NO. 1.

Plaintiff objects to this request as the term "aircraft flight manifests" is not defined. Without waiving that objection plaintiff will produce documents which list travel by plaintiff to or from the places listed in the request for the appropriate time period. Such documents are produced herewith.

**Hananel's position:**  This response is incomplete and evasive.  Adelson produced only certain pages of computerized and handwritten documents listing travel by date, time, place, and persons for 1996-2004 but did not produce them for 1995, and counsel blacked out information

- 2 -

concerning many of Adelson's trips.   To complete this production Adelson should produce all

pages of these documents without blackout, and should produce flight information for 1995.

This full production is likely to produce information relevant to jurisdiction because may show

that Adelson traveled more to Israel, from or to Macau from Israel or Jordan, and from or to

other places with Hananel from Israel, confirming that Hananel's business with Adelson

consisted of work for all of Adelson's companies both in Israel and in other parts of the world

derived from his work in Israel, showing no basis for jurisdiction in the United States.

Adelson should complete the production by producing all pages of the computerized and

handwritten flight documents, without blackout, and these pages should be the most fully

updated that are available.  If Adelson believes a protective order limiting dissemination of some

of the information is necessary (which Hananel denies), Adelson should seek one immediately.

> 2.      All documents concerning business, social, or other
> activities by Adelson in Israel from June 1, 1995 to January 1, 1996.

RESPONSE NO. 2

> Plaintiff objects to this request as it is so broad as compliance is
> not possible. Without waiving that request plaintiff will produce such
> documents as have been found which reasonably respond. Such
> documents are produced herewith.

**Hananel's position.** This response is incomplete and evasive.  Adelson's objection is

phrased to exclude documents that Adelson unilaterally decides are too "broad," thereby

asserting the right to withhold some.  Adelson's assertion that "compliance is not possible"

avoids any description or explanation of any burdens.  Adelson should withdraw this objection.

Adelson further hides behind the phrase "such documents as have been found."  He

avoids describing who made a search, where the search was made, and the results of a search.

Adelson's deposition testimony provides no comfort that he has tried to meet his Rule 34

obligations.

Adelson controls all of his business dealings, and should be able to provide all documents meeting the description of this request for a six-month period for his Israeli businesses. His social and other activities in this period presumably would not generate many documents, but knowledge of them is necessary to fill in any blanks concerning his activities in Israel during this crucial period.

Adelson's activities in Israel, particularly his business activities, during the second half of 1995 go right to the heart of the contentions placed in issue by Adelson. Hananel has explained how Adelson proposed, and then made an oral agreement, in Israel, to employ Hananel on behalf of Adelson personally and the companies he controlled, to manage personal and business affairs in Israel, and to work on casino and other projects in Israel and elsewhere outside the United States. A complete response to No. 2 would confirm that the agreement was made in Israel between Adelson and Hananel well before Hananel's medical trip to the U.S. on Dec. 4-6, 1995.

The few documents Adelson produced, such as a computerized calendar with uncertain dating, and scraps of business documents, offer tantalizing glimpses of his activities, and demonstrate that further investigation and production are necessary. His calendar, for example, shows many weeks spent in Israel, attendance at an economic forum in Jordan, meetings on casino projects and board meetings where Hananel was present as his employee and representative, and other activities. Several documents, including DX 29 in his own handwriting, state that Hananel's employment includes check-signing authority on corporate and personal accounts. Documents produced by Hananel earlier provide Adelson a road map to production of documents from accountants, Adelson's businesses in Israel, and Adelson's businesses in Las Vegas, all of whom were dealing with Hananel as Adelson's employee at that time, demonstrating

- 4 -

that the employment contract was made in Israel before December 1995.

   3.   Documents Adelson intends to present to the Court in support of his allegations of personal jurisdiction over Hananel in this action.

RESPONSE NO. 3

Plaintiff does not now know what documents in addition to those produced herewith, if any, he will present to the court. When such decision is made those documents will be produced.

   **Hananel's position.** This evasive response must at least be updated or if additional documents are compelled from Adelson. The Court has determined that discovery of documents concerning jurisdiction must be produced now.

   4.   All documents concerning business, social or other activities by Hananel from June 1, 1995 to January 1, 1996, including, but not limited to, the diary kept in IPI's Israel office by a person named "Daisy" (or similar).

RESPONSE NO. 4

   There was/is no person named "Daisy" in the IPI Israel office. No "diary" is known to exist other than within the documents removed from the IPI office by Hananel. Such other documents as exist and within plaintiff's possession and control are produced herewith.

   **Hananel's position.** Adelson's response is evasive and incomplete. From the few documents he produced, it appears that a woman named "Davy" was in the Israel office during this period, and Adelson may not fairly claim that the request did not sufficiently identify her by the phrase " 'Daisy' (or similar)." Adelson admitted at his deposition having made no effort to contact Davy concerning documents.

   The backhanded reference to "documents removed from the IPI office by Hananel" is not an excuse for Adelson's failure. Adelson admitted at his deposition that he has no personal knowledge that Hananel "removed from the IPI office" any documents. Adelson knows that the

- 5 -

documents concerning IPI Hananel has produced in the Israeli litigation and in this action were

not removed by him from the IPI office but were in the lawful custody of Hananel or Galilee

Tours.  Adelson also knows that the "diary kept in IPI's Israel office by [Davy]" is not among

the documents produced, and must therefore be produced by Adelson from IPI's office.

These requested documents will confirm that the employment relationship between Hananel and

Adelson began months before December, 1995.

> 7.    Copies of all checks signed by Hananel or bank orders
> drawn on bank accounts of IPI in Israel and elsewhere in 1995.

RESPONSE NO. 7

> Plaintiff is informed by the IPI keeper of records that no such
> documents are requested exist/and or [sic] they do not exist within the files
> and records of IPI.

> 8.    Copies of all checks signed by Hananel or bank orders
> drawn on bank accounts of Adelson-controlled companies in Israel and
> elsewhere in 1995.

RESPONSE NO. 8

> Plaintiff is informed by the IPI keeper of records that no such
> documents are requested exist/and or [sic] they do not exist within the files
> and records of IPI

**Hananel's position.**  These responses are garbled and unclear.  In the absence of

a clear statement, Adelson should make a complete response as to the knowledge of himself and

his Interface controlled companies about such checks or bank orders.  In addition he is required to

produce documents to which he has a legal right, such as bank and accountant records.

> 9.    All documents concerning bank account or other signature
> rights granted to Moshe Hananel in 1995  on any personal bank or other
> account of Adelson or of an immediate family member of Adelson,
> including but not limited to protocols or other documents required by
> banks for such signature rights.

## RESPONSE NO. 9

All responsive documents which have been located in response to this request are produced herewith.

      10.    All documents concerning bank account or other signature rights granted to Moshe Hananel in 1995 on any bank or other account of IPI, including but not limited to protocols or other documents required by banks for such signature rights.

## RESPONSE NO. 10

All responsive documents which have been located in response to this request are produced herewith.

**Hananel's position.** These responses are incomplete because they are limited by the clause "which have been located." Adelson must make a complete response as to the existence and production of documents, and he is required to produce documents to which he has a legal right, such as bank and accountant records.

      11.    All documents concerning bank account or other signature rights granted to Moshe Hananel in 1995 on any bank or other account of Auto Depot.

## RESPONSE NO. 11

Plaintiff objects to this request as accounts relating to Auto Depot are absolutely irrelevant nor will production lead to anything of relevance. Without waiving that objection plaintiff produces herewith those items that have been located and are responsive.

**Hananel's position.** Adelson's objection is improper, as Auto Depot was one of the many Adelson-controlled companies for which Hananel worked as part of his employment agreement with Adelson made in Israel, all before December 1995. This objection should be withdrawn, and in light of Adelson's admissions at his deposition, further search should be made and described.

This response is further incomplete because it is limited by the clause "which

- 7 -

have been located." Adelson must make a complete response as to the existence and production

of documents, and he is required to produce documents to which he has a legal right, such as bank

and accountant records.

> 13.    All documents concerning communications between
> Hananel and IPI from October 1, 1995 to January 1, 1996.

RESPONSE NO. 13

> All responsive documents which have been located in response to
> this request are produced herewith.

> 14.    All documents concerning communications between
> Hananel and Adelson from October 1, 1995 to January 1, 1996.

RESPONSE NO. 14

> All responsive documents which have been located in response to
> this request are produced herewith.

**Hananel's position.**  These responses are incomplete because they are limited by

the clause "which have been located."  Adelson must make a complete response as to the

existence and production of documents, including the locations searched, and including all

Interface companies for this limited time period.

> 15.    The entire translation of the protocol (and/or transcript)
> and documents in evidence of Moshe Melnik's trial to English,  part of
> which was submitted to this Court.

RESPONSE NO. 15

> Plaintiff neither possesses nor controls "the entire translation" as
> requested and is therefore unable to produce same.

**Hananel's position.**  This response is evasive and Adelson should produce all

translations of any part of the Melnik proceedings he or his companies or lawyers have.  His

failure to do so is evidence of his intent to harass Hananel by forcing unnecessary translations of

Hebrew documents showing that Hananel's employment agreement with Adelson occurred in

- 8 -

Israel prior to December 1995.

> 21.    Documents concerning Adelson's schedule from June-December 1995, including but not limited to a diary or schedule kept by Betty Yurich [or similar spelling].

RESPONSE NO. 21

> Those documents which have been located and are responsive are produced herewith except that those matters which are privileged (and/or confidential and irrelevant) have been redacted.

**Hananel's position.**  This response is incomplete because it is limited by the clause "which have been located."  Adelson must make a complete response as to the existence and production of documents.  This response is further incomplete because it is limited by the word "irrelevant," a determination which Adelson is not entitled to make at this stage.

> 22.    Documents constituting any part of the basis for the allegations of personal jurisdiction over Hananel in this action.

RESPONSE NO. 22

> Defendant objects to this request as it is vague and response is not possible. Without waiving that objection plaintiff refers defendant to all other documents produced herewith as well as his response to Request No. 3.

**Hananel's position.**  This response is incomplete for the reasons stated under request no. 3 above.

## SECOND REQUEST FOR PRODUCTION

Hananel served a second set of document production requests after Adelson's deposition, where Adelson and his counsel disclosed that only limited inquiries had been made for important categories of documents.

23.    Adelson's passports in effect from January 1, 1995 to the present (including the opportunity to inspect originals in Boston to avoid problems arising from copying).

RESPONSE NO. 23

Plaintiff objects to this request as it is overbroad, burdensome, and not calculated to produce relevant information "concerning jurisdiction". Without waiving that objection plaintiff says that he has already produced flight logs showing his travel and that this request (especially to "inspect originals in Boston") serves no purpose other than to annoy and harass plaintiff.

**Hananel's position.** This response is insufficient. The request is not overbroad or burdensome because it seeks a single document or a few documents if expired passports are involved. Indeed, Adelson and his counsel agreed on the record at the deposition that the passport(s) were "the record of [Adelson's] travel to and from Macau" and that they would make a search for the passports. Exh. 2, 346:24 - 348:3. The flight logs, which have been altered, are an insufficient response also because they do not show entry and exit times to the relevant countries. The inspection of originals in Boston, for example in Mr. Levy's office, is not burdensome or unreasonable, as the legibility of passport stamps can often only be resolved by inspection and high-quality photographs or other copying methods.

24.    All documents meeting the description of requests nos. 7-14 inclusive in the possession, custody, or control of accountants for Adelson-controlled companies in Israel, including particularly, but not limited to, the accountants for TIG, IPI, and Auto Depot for the calendar and fiscal years 1995 and 1996. (This request is prompted by testimony at the Adelson deposition that inquiries had not been made of these persons/entities.)

RESPONSE NO. 24

Plaintiff objects to this request on the grounds that it seeks the production of documents which have no relation to any matter "concerning jurisdiction" and will not produce any such information.

25.    All documents meeting the description of requests nos. 7-

14 inclusive in the possession, custody, or control of auditors for Adelson-controlled companies in Israel, including particularly, but not limited to, the auditors for TIG, IPI, and Auto Depot for the calendar and fiscal years 1995 and 1996. (This request is prompted by testimony at the Adelson deposition that inquiries had not been made of these persons/entities.)

RESPONSE NO. 25

25. Plaintiff objects to this request on the grounds that it seeks the production of documents which have no relation to any matter "concerning jurisdiction" and will not produce any such information.

26.    All documents meeting the description of requests nos. 7-14 inclusive in the possession, custody, or control of Dan Raviv. (This request is prompted by testimony at the Adelson deposition that inquiries had not been made of this person.)

RESPONSE NO. 26

26. Plaintiff objects to this request on the grounds that it seeks the production of documents which have no relation to any matter "concerning jurisdiction" and will not produce any such information.

**Hananel's position.** These responses are incomplete for the reasons stated under nos. 7-14 above, and because Mr. Adelson stated that inquiries had not been made of these persons or entities. As there is no denial of control of these documents, and as they are clearly relevant to proof that Adelson employed Hananel in Israel before December 1995, they must be produced.

27.    Copies of all audits of Adelson-controlled companies in Israel, including particularly, but not limited to, TIG, IPI, and Auto Depot, for the calendar and fiscal years 1995 and 1996 signed by Hananel.

RESPONSE NO. 27

27. Plaintiff objects to this request on the grounds that it seeks the production of documents which have no relation to any matter "concerning jurisdiction" and will not produce any such information.

**Hananel's position.** This response is incomplete because these audits are likely to contain evidence of Adelson's employment of Hananel in Israel before December 1995. As there

- 11 -

is no denial of control or existence of these documents, they must be produced.

> 28.    All aircraft flight manifests concerning travel by Adelson from June 1, 1995 to the present to or from Hong Kong, including but not limited to travel to Hong Kong which included ferry trips to or from Macau. (This request is prompted by testimony at the Adelson deposition that he commonly stayed in Hong Kong when traveling to or from Macau, and by the production of documents missing pages from 1995, 2000, and 2002 and other years, and having public information blacked out.)

RESPONSE NO. 28

> 28. , Plaintiff objects to this request on the grounds that it seeks the production of documents which have no relation to any matter "concerning jurisdiction" and will not produce any such information. Plaintiff further says that defendant seeks what he calls "public information" and as such is capable of obtaining whatever he wants without this request.

**Hananel's position.**  This response is incomplete because, while Adelson continues to deny that the Macau project identified in his Complaint as the basis for his suit was the subject of an agreement with Hananel made in Israel. Adelson testified that he commonly stayed in Hong Kong when traveling to or from Macau, and has produced only documents missing pages from 1995, 2000, and 2002 and other years, and having public information blacked out. The information was public at the time, but is not easily available to Hananel at this time. Adelson has the information, because it was his counsel who blacked it out in the course of production in this action.

## 2.    FAILURE TO ANSWER INTERROGATORIES.

### INTERROGATORY NO. 2

Describe in detail all contacts between (a) Adelson and Hananel, (b) IPI (including but not limited to Paul G. Roberts and/or any other employee or

agent of IPI or TIG) and Hananel, and/or (c) Auto Depot and Hananel, from

June 1, 1995 to January 1, 1996, including, for each such contact:

      --      identifying all communications concerning such contact,
      --      identifying all persons present at such contact,
      --      for direct contacts, stating the location, and the length or estimated
length of time during which Hananel and Adelson were in each other's physical
presence during such contact,
      --      for telephone contacts, stating the length or estimated length of
time during which Hananel and Adelson were speaking to each other by
telephone during such contact, and whether Adelson was in Israel or not
during such telephone contact,
      --      identifying all documents concerning such contacts.
Such contacts include, but are not limited to, contacts concerning the Eilat
project, the Beit Shean Naharin project, the Amman Summit, and directors'
meetings.

## ANSWER NO. 2

Reference is made to the documents produced in response to defendant's
request. I cannot answer the question with the requested specificity because
these events took place so long ago. I do know that prior to the winter of
1995 I had developed a personal relationship of trust and confidence with
Moshe Hananel. I first met him when his travel company in Israel did
business with GWV Travel in Needham, Massachusetts. I saw him for
business and social purposes in both Israel and the United States. As we
became better friends we often discussed our business with each other.

I do not have records of telephone calls or of specific meetings other than
those that have been supplied in document production. I do know that in the
fall of 1995, Hananel, through conversations with me, became aware that I
would be looking for someone to take be manager of IPI in Israel. He offered
himself to me as that person. He said that he would like to phase out of the
travel business and work for IPI in Israel. We had numerous conversations
about this. I cannot remember where or when. But we did reach an
understanding sometime in or around November 1995 followed by an oral
contract in made in Needham in December 5 1995, that he would go to work
for IPI in January of 1996. See Answer No. 1 for greater detail.

At first he started to perform favors for me and IPI and another company
in which I was involved called Auto Depot. But, he was to work solely for
IPI. He also agreed to become a signatory for the IPI account before going to
work because the then manager was terminated at the end of ,1995. My best
memory is that he kept his office at his travel business and did not have an
office at IPI until on or about the beginning of 1996.

At some time during November we discussed his employment terms. I

- 13 -

don't remember where these discussions took place and I know that only he and I were present. I told him that his chief responsibility would be to hire (subject to IPI's consent) business analysts and portfolio managers to assist him and IPI and to find investment opportunities in Israel in the high technology sectors. He agreed to devote his full time to this task in exchange for an annual salary of $100,000. In addition, as an added incentive I told him that he would receive 12% of the net profits received by IPI from high tech investments in Israel which came about as a result of his efforts. I also told him that he would only receive these profits so long as he worked for IPI.

I knew that Hananel would be in Massachusetts on December 5, 1995 and made arrangements to meet him in my Needham office at the end of the day. Prior to that I had directed Paul Roberts to reach agreement with Hananel as to those terms and make sure there was no misunderstanding. I returned from New York City at the end of the day on December 5 and did meet with Roberts and Hananel. Paul had already met with Moshe and in my and Moshe's presence Paul repeated the terms outline above. Hananel said that he agreed and I said I agreed. We shook hands and then Hananel and I went out to dinner.

I was in Israel during the last week of December 1995. I had meetings which included Hananel (according to my schedules) but I do not now remember the contents of those meetings. On the occasions noted in document production I did travel to Eilat and Jordan. The primary purposes of these trips was to investigate possibilities for development. In each case Hananel learned of my travel plans and offered to come with me because he said he had "contacts" who could assist. In the case of Jordan, his travel company was ground operator in Israel for the Royal Jordanian Airline. As it turned out, Mr. Hananel did not have any "contacts" of material value and nothing came of the trips.

**Hananel's position.** This response is incomplete because it ignores the requirement to give details about the contacts in Israel, which Adelson admits in only a general way. Adelson ignores the directors' meetings to which he testified in his deposition, as well as contacts during the many weeks Adelson spent in Israel in 1995 before December, and the contacts between TIG and Hananel. Adelson is required to provide the details of all of the contacts as requested.

## INTERROGATORY NO. 5

Identify fully all businesses and/or real estate in Israel in which Adelson or his immediate family members, including children of a former marriage, have an interest, and for each such business or real estate state the nature of the interest, the fair market value of the interest, and describe any contacts

- 14 -

between Hananel and such business or real estate.

### ANSWER NO. 5

The plaintiff objects to this interrogatory on the grounds that it is
overbroad and seeks information that has no relevance to the jurisdictional
issues to which discovery is limited.  As a further ground for objection the
plaintiff states that the interrogatory seeks private and confidential
information about property interests of strangers to this law suit.  The
information sought would not lead to the discovery of admissible evidence
relevant to the matter now before this court.

**Hananel's position.**  This answer is incomplete.  Adelson does not respond as to his

own interests, which are relevant to show the interest of Israel in adjudicating the Macau claim.

Moreover, the interrogatory is not overbroad because Adelson's contacts with Israel through

immediate family members are relevant to show his extensive business and personal interests in

Israel which explain his many private-jet trips to Israel for court proceedings and other business,

rendering his participation in the long-established and ongoing Israeli litigation comparatively

convenient for him as compared with Hananel's lack of convenience in the United States.

### INTERROGATORY NO. 9

Describe in detail the visits of Adelson to Israel and Jordan between June
1, 1995 and Jan. 1, 1996, stating for each visit the inclusive dates of all stops
in his itinerary, the purposes of each visit, identifying each person with whom
Adelson communicated concerning such purpose, and identifying any
documents concerning such visits and any documents concerning such
purpose.

### ANSWER NO. 9

Objection:  This interrogatory seeks information  that is irrelevant,
immaterial and unlikely to lead to the discovery of admissible evidence on the
issue of the jurisdiction of a federal court sitting in Massachusetts.  The
interrogatory is unduly burdensome since it would the plaintiff to make
inquiries of many other people to help his memory of events that occurred 9+
years ago. Without waiving this objection, the plaintiff has produced air logs
that contain some of the information sought.

- 15 -

**Hananel's position.** This response is incomplete. The interrogatory covers Adelson's activities, including meetings and conversations with Hananel in Israel in which Adelson employed Hananel, introduced him to others as a new manager, and authorized him to act in that capacity for Adelson in many ventures. These activities, meetings and conversations will show that the employment contract which is the subject of the Complaint was made in Israel, thus depriving Adelson of any grounds for seeking to claim jurisdiction in Massachusetts.

### 3.    FAILURE TO RESPOND AT DEPOSITION.

**Mr. Adelson's deposition should be continued for at least two hours and it should be continued in Boston.** If further responses to document requests or interrogatories are ordered, additional deposition time is appropriate. On numerous occasions when Mr. Adelson gave evasive answers to questions. On many of these occasions, it was obvious, from the documents he was being shown and his detailed prior affidavits in the United States and Israel which are part of the record in this case, that he was exercising selective memory.

In addition to these evasions, which negated the value of a significant part of the deposition, Mr. Adelson used constant interruptions of questions and lengthy statements that were not responsive to yes-or-no questions to deprive Mr. Hananel of the stipulated seven hours. These lengthy non-responsive statements (which could easily be called diatribes) increased following a warning from Hananel's counsel that the non-responsive statements might be used as evidence in a motion to compel resumption of the deposition in Boston if they resulted in significant loss of deposition time. Mr. Adelson apparently disregarded the warning and chose to challenge the Court's authority to require substantive answers instead. At one

point, however, he recognized that his delaying tactic was harmful to the deposition, stating (at

page 182, part of Exh. 2 hereto):

> 12    Q. And you met Mr. Hananel at that time?
> 13    A. Don't know.
> 14    Q. That was the time Mr. Farbstein was leaving,
> 15    wasn't it, in August?
> 16    A. You know, I've seen the allegations about his
> 17    involvement in these trips. I have to tell you
> 18    something --
> 19    Q. Well, could you just answer my question,
> 20    Mr. Adelson, because we don't have time -- we don't have
> 21    time not to answer the questions.
> 22    A. I'll extend the time for that.

There followed an eleven-line diatribe against Mr. Hananel. Adelson also acknowledged that he

knew that extending the deposition was financially harmful to Hananel (p. 231-232):

> 8    Q. (By Mr. Hamilton) Do you recall that The
> 9    Interface Group had a bank account in Haifa --
> 10    A. No, I don't. No, I don't.
> 11    Q. -- that paid Ms. Schory's salary?
> 12    A. No. No. I don't know why somebody would have
> 13    opened a separate account in Haifa to pay a secretary's
> 14    salary in Tel Aviv. That's stupid.
> 15    Q. I have to mark a document, Mr. Adelson.
> 16    A. Mark a document.
> 17    (Exhibit 15 marked for identification.)
> 18    THE WITNESS: It's your time you're wasting
> 19    and it's Mr. Hananel's money you're wasting. One day
> 20    he'll run out.

The Court will also note that even Mr. Adelson and his counsel appeared to agree that

additional time was fair, Exh. 2, 357:17-19 but then withdrew the offer by manipulating the next

day's schedule after learning of Hananel's counsel's flight schedule.

As to having the continued deposition in Boston, it became clear from Adelson's

testimony concerning his extensive and regular traveling that no real inconvenience would prevent

him from coming here. The possibility of resuming in Boston was recognized. Exh. 2, 357:11-

- 17 -

13, 364:17-18.

The evasions, diatribes, and withdrawn agreements appear in the transcript pages

attached hereto as Exh. 2, and are bracketed for emphasis.

WHEREFORE, The Court should enter the Proposed Order filed herewith.

Dated: May 19, 2005

MOSHE HANANEL
By His Attorneys,

James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail - hand on 5/19/05.

MemHanCompel-31216-1

- 18 -