IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) 04-cv-10357-RCL |
| MOSHE HANANEL, | ) |
| Defendant. | ) |

**FOURTH AFFIDAVIT OF MOSHE HANANEL IN SUPPORT OF MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS**

I, Moshe Hananel, depose and say:

1. I am the Defendant in the above action. I provide this affidavit as part of the rebuttal of the Plaintiff Adelson's Second Supplementary Brief In Opposition To The Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction ("2d Supp. Brief").

2. On pages 6-7 of the 2d Supp. Brief Adelson refers to documents he attaches as Exhibits K and L. Exhibit K states that it is a Settlement of Accounts, and I approved it as an accounting of what I was owed by Adelson as of May 7, 2000, but I did not agree that my employment commencement date was January 1, 1996. In 1998 Interface paid me back salary for my work in the months of November and December in 1995, as shown in the check register for check no. 844 for 20,000 shekels attached hereto as Exh. 1, although this payment is now a matter of dispute among the details of the Israeli proceedings.

3. Adelson claims to dispute some of the numerous events which occurred during my employment by him and Interface in October and November, 1995. In the course of the Israeli proceedings, I have received a copy of my work diary kept by the secretary at Galilee Tours,

where I had an office, for those months (and it has been made available to Adelson in Israel). This diary refreshes my memory of appointments and meetings that I attended as an employee of Adelson and Interface. I have attached the relevant diary entries in translation as Exhibit 2 hereto, and added numbers for each item and Remarks to identify the purpose of the meetings and the relationship of the parties to Adelson and Interface. These entries confirm many meetings with Adelson in Israel, meetings I attended as Interface's branch manager in Israel, and meetings concerning casino development, all of which show that Adelson and I had made an employment agreement long before Dec. 5, 1995. The secretary at the Interface office in Ramat Gan kept a diary on a computer, which had all of these events (in parallel with my Galilee Tours diary), plus more detail. I also used that Interface diary at the time. The existence of the Interface diary has been confirmed by Adelson, who has produced certain pages from it concerning his schedule during his December, 1995 visit to Israel. Adelson has not produced pages from the Interface diary concerning August, September, October, or November 1995 although he made trips to Israel in August, October, and November.

4. I have attached as Exh. 3 a true copy of the first page (with medical information masked) and the blood test page of the medical record of my visit to the Joslin Clinic in Boston on Dec. 5, 1995. The blood test page shows that it was taken at 2:43 p.m. Following the blood test I conferred with another doctor, settled my account, and discussed a summary of the findings with another doctor. It is my best memory that I left the Joslin Clinic at 4:30 or 5:00 p.m., and that it took more than an hour in traffic to get to Needham.

5. I have attached as Exh. 4 copies of the affidavits of Avi Heifetz, Max Blankstein, and David Itach (with translation) filed in the Israeli proceedings, in which they confirm the

nature and extent of many meetings I had with Adelson and others in September, October and November 1995 pursuant to my employment by Adelson and Interface.

    a.    Mr. Heifetz is a prominent business consultant in Israel, and I employed him on behalf of Interface beginning in September, 1995, as part of my work for Interface and Adelson. He confirms the important business meeting of Nov. 1, 1995 concerning the Eilat project, and the significance of my employment by Adelson as Interface's branch manager in Israel at that time.

    b.    Mr. Blankstein is a tourism expert in Israel, whom Mr. Heifetz engaged to assist Interface in the Eilat project, at my recommendation. Mr. Blankstein, using his personal diary attached to his affidavit, confirms many meetings and phone calls with me and other Interface personnel before Dec. 5, 1995, showing the significance of my employment:

        i.    Sept. 3 – Hananel phone call;

        ii.    Sept. 6 – Interface meeting;

        iii.    Sept. 19 – Dan Raviv [Interface employee] phone call;

        iv.    Oct. 3 – Hananel phone call;

        v.    Oct. 18 – Dan Raviv [written in Hebrew, 9:00 a.m.] meeting;

        vi.    Nov. 3 – Hananel meeting;

        vii.    Nov. 30 – Heifetz report pickup.

    c.    Mr. Itach was my driver during this period, and confirms my substantial work on Interface and Adelson business in September, October, and November 1995.

    6.    I have attached as Exhibit 5 hereto a copy of a Reuters News Service article dated March 18, 2005, describing a press conference Adelson held in Macau, which states that Adelson

flies from the U.S. to Macau "in his private jet once a month." Also, I have read an article in the April 22, 2005 issue of *Yedioth Aharonot*, an Israeli magazine, pages 88-92, in which Adelson was interviewed in Israel and says that Israel is his "second home," that he tries to come to Israel at least once every two or three months, and that he promises to invest millions of dollars in a casino in Eilat if the government approves a license.

7. In the Israeli proceeding concerning the Macau claim, the court has issued three decisions and conducted a hearing, and the parties have exchanged disclosure affidavits and documents, since February 22, 2005. As stated in my earlier affidavits, my financial resources are being severely strained by Adelson's pursuit of the United States litigation in addition to the Israeli litigations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this ____ day of June, 2005.

_____
Moshe Hananel

at least once every two or three months, and that he promises to invest millions of dollars in a casino in Eilat if the government approves a license.

7. In the Israeli proceeding concerning the Macau claim, the court has issued three decisions and conducted a hearing, and the parties have exchanged disclosure affidavits and documents, since February 22, 2005. As stated in my earlier affidavits, my financial resources are being severely strained by Adelson's pursuit of the United States litigation in addition to the Israeli litigations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this 22 day of June, 2005.

_____
Moshe Hananel

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail - hand on _____.

- 4 -