## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

**SHELDON G. ADELSON,**

> **Plaintiff,**

**v.**

**Docket No.: 04CV10357RCL**

**MOSHE HANANEL,**

> **Defendant.**

## AFFIDAVIT OF STEPHEN J. O'CONNOR IN RESPONSE TO THE ORDER OF SOROKIN, M.J. FOR FURTHER AFFIDAVITS ON MOTION TO DISMISS

1.    My name is Stephen J. O'Connor. At all relevant times, I was and still am the Chief Financial Officer of IPI headquartered in Needham, Massachusetts (as well as other entities owned or controlled by Plaintiff). My responsibilities as Chief Financial Officer are to manage the financial affairs and accounting procedures of the various companies including IPI. The facts set out in this Affidavit are from my own personal knowledge and from business documents that were created and maintained in the normal course of business.

2.    This Affidavit is made in response to the Order of the Court to describe the communications that occurred between the plaintiff and the defendant from fall of 1995 and ending at approximately the termination date of Mr. Hananel's employment with IPI in May of 2000.

3.    Throughout the period that the Court wishes this Affidavit to address, I was the Chief Financial Officer of IPI. I and Mr. Ralph Cadman, the Needham based

1

Treasurer of IPI, were in consistent communication with Mr. Hananel and Mr. Oded Efrat, Hananel's assistant manager of the IPI branch in Israel.

4.    From a financial perspective, the Israeli branch of IPI was not self-sufficient. Its operations and investments were consistently funded from the home office in Needham. The Israeli office each year would provide a budget of its anticipated operating expenditures. This budget was the basis on which funds would be requested. Hananel was supposed to provide to IPI explanations of deviations from the budget. Approval of these deviations should have been obtained from the Needham office. Mr. Hananel would request operating funds on either a monthly or quarterly basis. Mr. Hananel also needed to request funds for investments and non-budgeted activities. **Exhibit 1** to this Affidavit is an example of such request for funds.

5.    Upon receipt of each funding request, if there were insufficient funds in the IPI account, Mr. Cadman or I would consult with Mr. Adelson and usually, but not always, obtain his written approval of the transfer from his personal account. If IPI's Massachusetts account had sufficient funds, I or a member of my staff would direct the transfer from the IPI Massachusetts account to its Israel account. Only then would we inform Mr. Hananel of the monies that would be forwarded. The monies would then be wired to IPI's account(s) in Israel, usually from accounts maintained in Massachusetts. The fax from Mr. Hananel to Mr. Cadman and me, dated January 13, 1998, (Exhibit 2) shows such a transaction. There are literally scores of such documents that illustrate the practice that I briefly describe.

6.    On investment matters, Mr. Hananel often sent raw information on Israeli high tech companies to the IPI office in Needham.

2

7.      As noted, IPI maintained such control over Mr. Hananel that he would be required to request funds for normal operating expenses and investments, often on a month by month basis or for specific expenses. An example of this practice is attached as **Exhibit 2** showing a request for Mr. Adelson's approval for the transfer of $1,000,000.00 for an investment by IPI.

8.      The money for IPI funding came from Mr. Adelson's personal accounts maintained or administered in Massachusetts, or from the IPI bank accounts in Massachusetts.

9.      IPI's Needham based stewardship of Mr. Hananel included such relatively mundane matters as the calculation of a 401(k) replacement benefit for an employee of a company in which IPI had invested. (**Exhibit 3**).

10.     Hananel was supposed to report to us on a regular basis on how monies were spent as well as the activities in which IPI had become involved. I have attached in **Exhibit 4** copies of such communications. These documents are only a sample of these communications.

11.     Our involvement in financial and accounting matters required that I or a member of my staff often dealt directly with the Israeli accountants on accounting matters.

12.     We also required that IPI in Israel follow certain protocols and procedures in its bookkeeping. See **Exhibit 5** for an example.

13.     In addition to the paper communications that are attached to this Affidavit, I had numerous telephone conversations with Mr. Hananel and Mr. Efrat, most of

BOS\135277.1

which were placed to me. There were many communications that I or a member of my

staff made to him regarding financial issues. We spoke with the Israel office at a

minimum of several times a week throughout Hananel's tenure as manager of the Israeli

IPI office.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ✝ DAY

OF AUGUST, 2005.

STEPHEN J. O'CONNOR

## CERTIFICATE OF SERVICE

I, Albert P. Zabin, hereby certify that I served a copy of the foregoing on all
Defendants this 5ᵗʰ day of August, 2005, via U. S Mail to the following:

James A. G. Hamilton, Esquire
Perkins Smith & Cohen
30th Floor
One Beacon Street
Boston, MA 02108-3106

Albert P. Zabin, B.B.O. No.: 538380

4

**1**