IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | 04-cv-10357-RCL |
| ) | |
| MOSHE HANANEL, ) | |
| ) | |
| Defendant. ) | |

**FIFTH AFFIDAVIT OF MOSHE HANANEL IN SUPPORT OF MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS**

I, Moshe Hananel, depose and say:

1. I am the Defendant in the above action. I provide this affidavit in accordance with the Court's Order for Further Affidavits dated July 22, 2005.

**I. Communications regarding IPI between Adelson and Hananel from the fall of 1995 to the termination of Hananel's employment (April 2000), including Adelson's location at the time of the communication, the frequency of the communication, and whether Hananel knew of Adelson's location.**

2. My communications with Adelson regarding IPI were in person, by telephone call, and occasionally in writing. I do not recall any telephone conversations or written correspondence with Adelson while he was in Massachusetts. Many conversations took place when Adelson was at different places in about forty countries around the world. Adelson was an international businessman and entrepreneur, and from 1994 on, he traveled in his private jet which was for his exclusive use.

3. I have attached as Exhibit 1 hereto a summary Table 1 and the partial flight logs Adelson produced in discovery, which he says show all his travel to Massachusetts and Israel. (Adelson did not provide his logs for 1995 but did provide an office calendar which showed some

travel.) These flight logs show that he took hundreds of flights a year and more than a thousand flights altogether during the period I worked for him, and show why I usually did not know where he was calling from.

4. Adelson never made a point of telling me that he was calling from Massachusetts. He had explained to me that for tax reasons he should not stay very long in Massachusetts, but only for no more than a limited number of days per year, which was important to him because Nevada tax rates were lower than in Massachusetts. He has stated to me that he did not pay personal income taxes in Massachusetts. I am informed and believe that IPI never paid any taxes in Massachusetts. Adelson's flight records and Table 1 of Exh. 1 show that he spent only a few days in Massachusetts. Adelson told me, and the flight logs confirm, that most of his stops in Massachusetts were for technical reasons while he was in transit, especially for transatlantic flights because he could not fly non-stop from the West Coast to Europe or return.

5. His location was irrelevant to our phone calls because our conversations concerned our personal affairs, his interest in following news about Israel on a day-to-day basis (the IPI office in Israel sent him a copy of the Jerusalem Post every day), business in Israel, and political affairs in Israel (including causes and institutes to which he had donated money). Adelson himself has stated, with regard to our discussions of IPI business, "It would not matter if I was in the U.S., Israel, or any other country." Adelson's Answer to Interrogatory No. 1 dated February 14, 2005 in the present action, ¶ 4 (Exh. 3 to my Memorandum in Support of Renewed Motion to Dismiss).

6. Other communications occurred on the many occasions when we traveled together. In these circumstances we held both telephone conversations and meetings. We were

together in Jordan, Cyprus, Turkey, Bulgaria, England, France, Ireland, the Czech Republic, Rhodes, and other places outside the United States.

7. When Adelson was in Israel (as he often was as shown in Table 1, Exh. 1) we had many telephone conversations in addition to daily meetings. As stated in my first Affidavit, paragraph 14, in face-to-face conversations in Israel in September and October 1995 Adelson and I made our employment agreement.

8. Adelson and I, in all our conversations, never discussed any business involving me that was related to the United States. Adelson instructed me especially not to do any business in the United States. Adelson has denied clearly in affidavits submitted to the Israeli Court that any of my visits to the United States were for business purposes, saying "on occasion I invited Hananel to meet with me in the United States. These invitations were for social reasons and not for Interface's business." This statement, contrary to what he is claiming now, appears in paragraph 29 of both his July 3, 2004 affidavit, Exh. 6 to Hananel's Second Affidavit (docket no. 21), and his Sept. 7, 2004 affidavit, Exh. 4 to Memorandum of Hananel dated May 17, 2005 (docket no. 46).

9. Adelson has described his view that my responsibilities as IPI's Israel branch manager were limited to business in Israel, in his Affidavits in Israel dated September 29, 2002, ¶ 8 (Exh. 1 to my first Affidavit) and Sept. 7, 2004, ¶ 7 (Exh. 1 to my Motion for Leave to Supplement Record dated Oct. 7, 2004, allowed by the Court) and in his Answer to Interrogatory No. 1 dated February 14, 2005 in the present action, ¶ 3.c. (Exh. 3 to my Memorandum in Support of Renewed Motion to Dismiss). At no time in any filings in Israel has Adelson described any business done by me for IPI in the United States. He has not described any business dealings by me on behalf of IPI in the United States in this lawsuit. In particular,

Adelson did not mention any business dealings by me on behalf of IPI in the United States in his Answer to Interrogatory No. 1, referred to previously, in which he was required to state all grounds for personal jurisdiction over me in Massachusetts.

10. The telephone communications regarding IPI were initiated by Adelson and received by me mostly in Israel and concerned IPI's business mostly in Israel (but also in Jordan, Europe, and other countries but never in the United States). The calls were likely to be from various locations around the world and unlikely to have been from Massachusetts, as can be seen from Adelson's private jet flight records list more than a thousand flights over the years in question, but only a few trips to Massachusetts, where he stayed only a few days each year, as shown in Table 1 in Exhibit 1.

11. Adelson's view of some of our telephone calls appears in his affidavits to the Israeli Court dated September 29, 2002, ¶ 8 (Exh. 1 to my first Affidavit), his July 3, 2004 affidavit, Exh. 6 to Hananel's Second Affidavit (docket no. 21), and his Sept. 7, 2004 affidavit, Exh. 4 to Memorandum of Hananel dated May 17, 2005 (docket no. 46):

> 12. The years since Hananel's appointment as the manager of Interface's Israel branch were very busy years for me, in which I constructed my largest project yet- the Venetian Hotel in Las Vegas. For that reason, I was unable to dedicate much attention in that period of time to Interface's branch in Israel (a project in the scope of U.S. $1.4 billion) [the parenthetical phrase appears in the 2002 Affidavit but nit in the 2004 Affidavits]. Also the geographic distance and time difference between Israel and the United States hampered my ability to monitor the office.

> [2004 Affidavits only] 20. As mentioned above, I am a resident of Las Vegas in the United States. The time difference between Las Vegas and Israel is 10 hours. This made it easy for me not to notice Hananel's work for HaGalil Tours. Because of the time difference, only rarely would I or my secretary call Interface's office to talk to Hananel, since the working hours in Israel (say, 9 a.m.-5 p.m.) are 11 p.m. – 7 a.m. in Las Vegas (for instance, at 8.30 a.m. ) I wouldn't have expected to catch Hananel at Interface office (since by than it was 6:30 p.m. in Israel).

>Therefore, in order to reach Hananel, I or my secretary would generally call Hananel's home or cellular phone. . . .

**II.  All my travel to Massachusetts between September 1995 and April 10, 2000, and whether there was any IPI-related business purpose.**

12.  At no time in any filing in the Israel case has Adelson ever claimed that I traveled to Massachusetts for any IPI-related business purpose. In his affidavits in Israel filed on July 3 and Sept. 7, 2004, ¶ 29, cited in paragraph 8 above, he stated:

>**"Chapter IV - Foreign Travel**
>
>29.  Hananel's job description at Interface <u>did not call for Hananel to travel abroad</u>. [Emphasis added.] Hananel's duty was to identify investments for Interface in the field of hi-tech <u>in Israel</u> [emphasis in original]. . . . I would like to mention that on occasion I invited Hananel to meet with me in the United States. These invitations were for social reasons and <u>not for Interface's business</u>. [Emphasis added.]"

Adelson filed these affidavits <u>with full awareness</u> about my three visits to Massachusetts described below (as he was with me during two of the visits and fully aware of my presence (and talked to me on the phone) after the third). In the present case (see Answer to Interrogatory No. 1, cited in paragraph 8 above), Adelson has never claimed that I traveled to Massachusetts for any IPI-related business purpose other than the alleged conversation on Dec. 5, 1995, which I dispute. He has not made any such claim despite my disclosure of United States trips in my first affidavit in this action. Any such claim Adelson makes now will contradict his sworn testimony in the Israeli actions and his sworn interrogatory answer in the present action. I am informed, however, that Adelson's counsel stated to the Court orally on July 20, 2005, that they will attempt to assert a jurisdictional claim based on a visit to Andover, Massachusetts.

13.  In accordance with the Court's instructions, I have reviewed my passport and other documents in an effort to refresh my recollection. My passport indicates that I visited

- 5 -

Massachusetts only three times between September 1, 1995 and April 10, 2000, not including my December 5, 1995 visit to the Joslin Clinic.

14. I did not conduct any IPI business in Massachusetts, but I will describe each visit.

   a. On December 29, 1996 I visited Boston for the purpose of attending a board meeting and giving a lecture at the Middle East Institute at the Kennedy School of Harvard University. Because I was there, Adelson asked me to be present at a meeting at the corporate offices of Hewlett-Packard in Andover regarding a proposed medical research collaboration which would take place between an H-P subsidiary in Bublingen, Germany, and the Israeli company, IMD, in which Adelson had invested. At the meeting were an Israeli physician (the company's president) and an Israeli research manager, who were making a presentation about IMD, and three Americans, Adelson's lawyer, financial manager, and an assistant. My role was to be an observer. Adelson had instructed me on that occasion (and on other occasions) that only Americans would be authorized to do business for him in the United States, and that is why the Americans were there. I did not participate in any business dealings during this visit. No business was done at this meeting or as a result of it.

   My trip to Massachusetts lasted less than three days. I paid the full cost for the flights for this trip and for part of the other travel expenses.

   b. On Aug. 5-8, 1997, I attended one of Adelson's 65th birthday parties, a surprise party held by his wife at Adelson's house in Massachusetts. (Other parties took place in Tel Aviv and Las Vegas.) Because it was a surprise party, I made no connection and had no communication with Adelson concerning this visit except at the party. I remember bringing to the party 300 copies of the front page of the New York Times for the date of Adelson's birth, which had a small article added about his birth, and giving them to his guests. I did not visit the Needham office building, and I conducted no IPI business in Massachusetts during my visit, which lasted less than three days. I also spent time with friends, and after the party I flew to New York and left there for Israel.

   For this trip also I paid all flight costs and part of the other travel expenses.

   c. On July 31, 1998, Adelson invited me to join him on his private jet on a flight from Israel to Massachusetts and to join him in a meeting with Hewlett-Packard to see his performance there. The flight landed at Bedford, MA and Adelson and I were taken by limousine to Andover for a meeting with H-P concerning IMD. The president of IMD and an American were waiting for us in the lobby of the H-P office. The meeting

- 6 -

lasted less than two hours. I was silent, like all the others, and Adelson did all the talking, except for words of courtesy from myself. After the meeting, as we left the building, Adelson told me, "I shocked them, Moshe, they don't talk to a billionaire like me every day." From there I was taken to Logan Airport to fly to New York, where I had social meetings at the Council on Foreign Relations, and later I met with the Envoy of King Hussein of Jordan. My entire presence in Massachusetts was less than six hours. I flew from New York to Israel via Tower Air at my own expense. No collaboration between Bublingen and IMD occurred.

### III.  Description of "IPI office" in Needham.

15.   No IPI (or "Interface Partners International, Ltd.") office existed in Needham in the fall of 1995 or thereafter. Adelson and his partners owned the office building in Needham where I spent a short time between arriving from my Joslin appointment and leaving with Adelson for dinner. On the whole premises, inside and outside, there was no sign for IPI or any office designated for IPI. There was no telephone subscribed by IPI. There were no paid employees of IPI in the building then or during my work for IPI. The only business signs on or in the building were for GWV Travel and Interface Group which, according to his testimony are completely separate entities from IPI (Adelson Dep., Exh. 2, page 94):

> 4    Q. Is there any relationship between The Interface
> 5    Group and Interface Partners International Limited?
> 6    A. No.

16.   In his deposition Adelson stated that the Interface Group companies, including Interface Group Massachusetts, Inc., which had offices in Needham, did not do "any business in Israel" except that an unincorporated division known as GWV arranged accommodations in Israel for tourists; that there was "no" relationship between The Interface Group and IPI. Adelson Dep. (Exh. 2) 93:23 - 94:6. Adelson testified that Attorney Roberts, in Needham, never did any business for IPI:

25    Q. What responsibilities for -- for business deals

133

1  did Mr. Roberts have for IPI?
2      MR. LEVY: Object to the form.
3      *THE WITNESS: Give me a company, give me a*
4  *time frame.*
5    Q. (By Mr. Hamilton) Did he ever have any
6  responsibility for any business deals done by IPI?
7      MR. LEVY: I still object to the form.
8    Q. (By Mr. Hamilton) You can go ahead and answer.
9    *A. When he tells me to answer, I'll answer.*
10     MR. LEVY: You can answer if you can figure it
11  out.
12     *THE WITNESS: Was he responsible? You have to*
13  *give me an example.*
14    Q. (By Mr. Hamilton) No, that's not what I asked,
15  Mr. Adelson.
16    *A. He was a lawyer. He did legal work, period, end*
17  *of statement. I don't allow or I try to do everything I*
18  *can not to allow any of my attorneys to make business*
19  *decisions. That is a very, very strong point for me.*

Adelson Dep. (Exh. 2) 132:25-133:19.

Adelson also stated that IPI's purpose "was to do business in Israel, period."

14    Q. (By Mr. Hamilton) Do you remember what company
15  Mr. Farbstein was working for?
16    *A. Technically, I don't know. To the best of my*
17  *knowledge, IPI was set up to do business in Israel,*
18  *period. And there was no reason for any other company to*
19  *be -- to do business there except for The Interface Group*
20  *Massachusetts unincorporated division, GWV, to send a*
21  *handful of passengers to Israel. That's all. There was*
22  *no other business conducted.*

Adelson Dep. (Exh. 2) 120: 14-22. I never received any salary from Massachusetts, or any

payment from the United States, as all was paid by IPI in Israel from an Israeli bank pursuant to

Israeli law, where IPI and I paid taxes (income tax, national health insurance (employee and

- 9 -

employer contributions), and employer tax). My only instructions came from Adelson and never from anyone in the Needham office.

17. I have reviewed my business diary and schedules as produced in the Israeli actions and Adelson's business diary as produced in this action and they confirm my memory that I was never scheduled for any business meeting at the Needham premises.

18. Documents produced in this action (attached as Exhibit 3 hereto) show that Adelson made IPI become an Israeli-registered company, with all the implications. I was told, and the Israeli authorities were told via the documents in Exh. 3, that IPI was a Delaware corporation with only one office in Las Vegas and not Massachusetts (see the letterheads and Power of Attorney). These documents show that Adelson had taken the relatively rare step of registering his company in Israel, and Adelson's wife Miriam, a resident and citizen of Israel, was listed as IPI's agent, thereby submitting IPI to Israeli jurisdiction; by Israeli law, only an Israeli resident can serve as such an agent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this ___ day of August, 2005.

_____
Moshe Hananel

31216-1-5thAff

18    Documents produced in this action (attached as Exhibit 3 hereto) show that Adelson made IPI become an Israeli-registered company, with all the implications. I was told, and the Israeli authorities were told via the documents in Exh. 3, that IPI was a Delaware corporation with only one office in Las Vegas and not Massachusetts (see the letterheads and Power of Attorney). These documents show that Adelson had taken the relatively rare step of registering his company in Israel, and Adelson's wife Miriam, a resident and citizen of Israel, was listed as IPI's agent, thereby submitting IPI to Israeli jurisdiction; by Israeli law, only an Israeli resident can serve as such an agent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this 5th day of August, 2005.

_____
Moshe Hananel

31216-1-5thAff

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail - hand on _____.