IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MOSHE HANANEL, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br><br> 04-cv-10357-RCL |

**SIXTH AFFIDAVIT OF MOSHE HANANEL IN SUPPORT OF MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS**

I, Moshe Hananel, depose and say:

1. I am the Defendant in the above action. I provide this affidavit in accordance with paragraph 1 of the Court's Order On Motions To Strike dated August 17, 2005, permitting an evidentiary response to the Affidavit of Stephen J. O'Connor dated August 4, 2005 and filed by Adelson on August 5, 2005 ("O'Connor Aff.").

2. All decisions concerning the business of IPI were made either by Adelson, by me, or by the two of us in consultation. During my employment, I reported directly to Adelson and to no one else and I made recommendations to, and got instructions from, only him. As stated in my previous affidavit, I do not recall that any telephone conversations or written communications with Adelson occurred while he was in Massachusetts. I never consulted orally or in writing with Stephen O'Connor or anyone else located in Massachusetts about IPI's business decisions. At no time did Stephen O'Connor or anyone else located in Massachusetts exercise any control or direction over my activities as Manager of the Israel office of IPI. At no time in the Israeli litigations has Adelson or anyone else claimed that Stephen O'Connor or

anyone else located in Massachusetts exercised any control or direction over my activities as Manager of the Israel office of IPI. I attach as exhibits 3-5 documents produced by me or Adelson/IPI in the Israeli litigations.

    3.    O'Connor has filed an Affidavit in Israel dated June 3, 2004 (after the commencement of this action) (copy attached as Exh. 1). In this affidavit, O'Connor confirms, contrary to his current position in the present affidavit, that only I, and not he, had the authority to control and direct IPI's Israel branch, as follows:

> *"Due to my understanding that Hananel had Mr. Sheldon Adelson's (the controlling shareholder of Interface [IPI]) full confidence and faith, I told [Israeli] CPA Zamir that as far as Interface is concerned, Hananel is the authority regarding Interface's Israeli branch [and Zamir can rely on Hananel for information]."*

Exh. 1, ¶ 2.

    4.    The O'Connor Aff. does not contain any evidence that I consulted O'Connor or anyone else located in Massachusetts concerning business decisions for IPI. His documents and statements confirm that the only control or direction over my work came from Adelson, and that funds for IPI were disbursed from accounts in Israel over which I had control, pursuant to decisions that Adelson made, or that I made and Adelson approved. I address the relevant paragraphs of the O'Connor Aff. as follows:

    a.    Paragraph 4 says that IPI's "operations and investments were consistently funded from the home office in Needham," but this statement is misleading, as O'Connor later admits, in paragraph 8, that "[t]he money for IPI funding came from Mr. Adelson's personal accounts" and, although this paragraph goes on to state that Adelson's personal accounts were "maintained or administered in Massachusetts," the exhibits to the O'Connor Aff. show otherwise. *See* O'Connor Exh. 1, showing transfers to two IPI Israeli bank accounts (and one bank account in Boston belonging not to IPI but to the investment recipient, iMD); and O'Connor Exhs. 2, 4 and 5 referring explicitly to funding of IPI's activities from

- 2 -

Israeli bank accounts. I have provided additional examples, which I discuss in paragraph 8 below.

b. Paragraph 5 confirms that neither O'Connor or Cadman could act except in accordance with my instructions to them (called by O'Connor "requests" but clearly, from the documents, instructions). Indeed, this paragraph admits that they followed my instructions sometimes with, and sometimes without, Adelson's written instructions ("usually, but not always"). (See ¶ 3 above and Exh. 1 for O'Connor's own admission of my authority in an affidavit filed in Israel.)

c. Paragraph 6, stating that I sent information about Israeli high-tech companies to the Needham office, is untrue. All such information was addressed to Adelson. I never discussed any investments in Israeli high-tech companies, or any other IPI investments, with O'Connor or anyone else in Massachusetts. O'Connor also does not assert any role for evaluation, control or direction by anyone except Adelson and myself, and it's not a coincidence that O'Connor provides no documents to support this claim.

d. Paragraph 7 is misleading, because all my requests for funds for investments and operations were made to Adelson and my correspondence to O'Connor were instruction. O'Connor's Exh. 2 shows that he had no control or direction of the funding, and that only Adelson and I had such a role.

e. Paragraph 8, mentioned previously, confirms that Adelson had a role in all funding decisions and O'Connor had no role.

f. Paragraph 9 and O'Connor's Exh. 3 confirm that O'Connor, at most, performed ministerial accounting functions subject to the direction of others, including myself.

g. Paragraph 10 and O'Connor's Exh. 4 show that I, and others in the IPI Israel office, were informing O'Connor of the decisions that I had made in Israel (by myself or in consultation with Adelson), and show no control or decisions by him.

h. Paragraph 11 admits what was the case, that IPI had Israeli accountants and that O'Connor's role was limited to that of an accountant/bookkeeper, mainly registering bank transactions, i.e., having no direction or control over IPI's business decisions.

i. Paragraph 12 and O'Connor's Exh. 5 confirm that O'Connor had only an accounting/bookkeeping role.

5.  Adelson, in his deposition of February 15, 2005 (pages attached as Exh. 2), confirms, contrary to his present position, that Adelson and Hananel (and Hananel's predecessor as Israeli branch manager), and no one else, made "all the decisions" for IPI.

Page 99:
```
19      Q. (By Mr. Hamilton) Who made all the decisions for
20   the company that had a branch office in Israel?
21         MR. LEVY: When?
22         MR. HAMILTON: At any time.
23         THE WITNESS: And what decisions?
24         MR. LEVY: I've going to object to the form of
25   the question.
```

                              100

```
 1      Q. (By Mr. Hamilton) Were there any decisions made
 2   that you did not make yourself?
 3      A. Sure.
 4      Q. By whom?
 5      A. Hananel.
 6      Q. Anyone else?
 7      A. No. During what period?
```
. . . .

Page 102:
```
 6      Q. (By Mr. Hamilton) I asked you the question. How
 7   many employees at any time in that company?
 8      A. I can't answer you in the manner in which you
 9   asked me that question.
10         MR. LEVY: Do you mean that company, the
11   branch in Israel, the company everywhere, a day?
12      Q. (By Mr. Hamilton) Let's start with Mr. Levy's
13   question. At the branch in Israel?
14         MR. LEVY: On what day?
15         THE WITNESS: When?
16         MR. HAMILTON: At any time.
17         MR. LEVY: But there may be different people
18   at different times. What's the point of the question?
19         THE WITNESS: I'll give him a range. One to
20   three. Maybe -- one, two -- maybe four.
21      Q. (By Mr. Hamilton) And some of them --
22      A. To the best of my knowledge. It was an
23   infinitesimal operation in the scheme of things.
24      Q. And some of them at some time were authorized to
```

>  25  make decisions on behalf of that company?

                                    103

>  1   A. No, they were not. Oh, yes, some of them were.
>  2   Q. Who?
>  3   A. Mr. Farbstein [Hananel's predecessor] *and Mr. Hananel.*

6.   Adelson also confirmed that only he and Hananel (and, in the case of Auto Depot, Hananel's predecessors) managed IPI's Israel investments. Adelson even made it clear that, as to the transfer of money between bank accounts - O'Connor's occasional role at most - *"I wouldn't interpret that as managing something."*

Page 150:
>  13   Q. And you made sure of that because you were in
>  14  charge of what it invested in; is that right?
>  15   A. No. No. *Yes, I made the decisions over what it*
>  16  *would invest in.*

Page 166:
>  23   Q. (By Mr. Hamilton) The question is did you ask
>  24  anyone other than Mr. Hananel to manage any investments?
>  25   A. I'm sorry, I can't answer the question. Give me

                                    167

>  1   the -- give me the so-called investment and give me
>  2   the -- the time frame and explain the word "manage." You
>  3   can put anything under the concept of management.
>  4       *If I say to somebody, "Transfer -- do me a*
>  5   *favor. Call the bank and transfer some money or go*
>  6   *take -- I got a check in, take it and put it in the*
>  7   *bank," somebody could interpret that as managing*
>  8   *something. I wouldn't interpret that as managing*
>  9   *something.* So I need to know how you use the word
>  10  "management."

Page 170:
>  8    Q. *Did anyone besides Mr. Hananel exert any*
>  9   *influence over IPI's investments?*

- 5 -

> 10   A. No. Well, except for the Auto Depot.
> 11   Q. Who was that?
> 12   A. Farbstein and Melnik.

7.   Adelson also confirmed that IPI had few employees (i.e., that O'Connor was not an employee of IPI), that Hananel would handle "*[w]hatever phase we had there*" and that it was "*just an investment vehicle.*"

> Page 153:
> 13   Q. And at some point Mr. Hananel became branch
> 14   manager in Israel for IPI; is that right?
> 15   A. Yes.
> 16   Q. And did he --
> 17   A. I don't know if his title was branch manager.
> 18   *Whatever phase we had there, he said he would handle it*
> 19   *and he would spend his full time looking for high-tech*
> 20   *investments.*
> 21   Q. Did he have the same duties and responsibilities
> 22   as Mr. Farbstein?
> 23   A. Essentially. You've got to understand, this was
> 24   a company, if you could call it that, *with one to three*
> 25   *employees or three or four employees.* It was not a
>
>                                     154
>
> 1   company with 10,000 employees.
> 2        It was not a company that had operating
> 3   businesses where there are thousands of employees
> 4   hired, inventory acquired. *It was just an investment*
> 5   *vehicle to go ahead and find in the Halcyon days of*
> 6   *high-tech development in the state of Israel,* it was
> 7   Teddy Farbstein's idea to capitalize on all the
> 8   high-tech contacts that we had because of Comdex. I
> 9   didn't need another business. It was just a minor,
> 10  minuscule thing to me.

8.  I provide the Court with the following documents, produced by Adelson, IPI, and/or Hananel in the Israeli litigation, which show that I managed IPI's business without any consultation, direction or control from O'Connor or anyone else in Massachusetts:

   a. Exh. 3, showing that Adelson and I merely instructed O'Connor and/or Cadman to transfer money to IPI's bank in Israel, without consulting them in any way;

   b. Exh. 4, comprehensive powers of attorney granted to my by Adelson over bank accounts in Israel and (produced by Adelson in this action) his handwritten instructions of November 1995; and

   c. Exh. 5 (July 27, 1997 and Aug. 4, 1997; plus translations), instructions by me to an Israeli bank to transfer money from Adelson's personal accounts in Israel to IPI's accounts in Israel, without any involvement by O'Connor or others.

9.  I reported to, and made recommendations to, only Adelson and got instructions only from him. Adelson or anyone else never suggested that O'Connor or anyone else located in Massachusetts or elsewhere (other than Adelson) had any direction or control over the activities of IPI. Neither Adelson or anyone else ever told me that O'Connor or anyone else located in Massachusetts was giving advice or instructions concerning IPI's business decisions. Adelson, indeed, told me that he would not tolerate any business decisions being made by accountants, just as he had stated concerning lawyers.

10. At no time in any Israeli proceeding has Adelson made the claim that O'Connor or anyone else located in Massachusetts or elsewhere (other than Adelson) had any direction or control of my activities. The O'Connor Aff. to which I respond is the first occasion in this

action on which Adelson has claimed to offer evidence that any activities by O'Connor were relevant to jurisdiction. Affidavits of Roberts (July 13, 2004 and April 29, 2005), Adelson (July 15, 2004 and April 8, 2005), and Albert P. Zabin, Esq. (August 19, 2004), do not mention any control or direction by O'Connor or anyone else located in Massachusetts or elsewhere (other than Adelson). The same is true of Adelson's Interrogatory Answers (signed under oath by Adelson February 14, 2005) (Exh. 1 to my Renewed Motion to Dismiss (May 17, 2005)) and Adelson's deposition (February 15, 2005). Adelson produced none of the Exhibits attached to the O'Connor Aff. in discovery, despite being requested, pursuant to Court-ordered discovery in February, 2005, to produce "documents constituting any part of the basis for the allegations of personal jurisdiction over Hananel in this action" (request no, 23, Exh. 2 to Hananel's Renewed Motion to Dismiss (May 17, 2005)) and "documents Adelson intends to present to the Court in support of his allegations of personal jurisdiction over Hananel in this action" (request no. 3, *id.*).

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this 26th day of August, 2005.

_____
Moshe Hananel

31216-1-6thAff

action on which Adelson has claimed to offer evidence that any activities by O'Connor were relevant to jurisdiction. Affidavits of Roberts (July 13, 2004 and April 29, 2005), Adelson (July 15, 2004 and April 8, 2005), and Albert P. Zabin, Esq. (August 19, 2004), do not mention any control or direction by O'Connor or anyone else located in Massachusetts or elsewhere (other than Adelson). The same is true of Adelson's Interrogatory Answers (signed under oath by Adelson February 14, 2005) (Exh. 1 to my Renewed Motion to Dismiss (May 17, 2005)) and Adelson's deposition (February 15, 2005). Adelson produced none of the Exhibits attached to the O'Connor Aff. in discovery, despite being requested, pursuant to Court-ordered discovery in February, 2005, to produce "documents constituting any part of the basis for the allegations of personal jurisdiction over Hananel in this action" (request no. 23, Exh. 2 to Hananel's Renewed Motion to Dismiss (May 17, 2005)) and "documents Adelson intends to present to the Court in support of his allegations of personal jurisdiction over Hananel in this action" (request no. 3, *id*).

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this 26th day of August, 2005.

_____
Moshe Hananel

31216-1-0thAff

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail - hand on _____.

- 8 -