IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHELDON G. ADELSON, | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | **04-cv-10357-RCL** |
| | ) | |
| MOSHE HANANEL, | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF HANANEL'S RENEWED MOTION TO DISMISS FOR FORUM NON CONVENIENS

Defendant Moshe Hananel ("Hananel") offers this Memorandum in Support of his Renewed Motion to Dismiss For Forum Non Conveniens. The principal ground is that Adelson and Hananel have been engaged since 2001 in litigation in Israel concerning the identical subject matter of Count I of the Complaint (the sole remaining claim). In his Report and Recommendation on Defendant's Renewed Motion to Dismiss For Lack Of Personal Jurisdiction, Oct. 31, 2005, Dkt # 78 at 2 ("Rept."), Magistrate Judge Sorokin expressly found that:

> The fourth [Gestalt] factor–the judicial system's interest in obtaining resolution to the controversy in the most efficacious manner–counsels against relegating a suit to several different jurisdictions. *Pritzker [ v. Yari]*, 42 F.3d [53] at 64. While this factor weighs against plaintiff in this case because of the earlier filed suits pending in Israel, it is insufficient to tip the constitutional balance on the facts of this case, especially when other more targeted approaches, if appropriate under the applicable law, such as abstention or forum non convenience, could directly address the potential problem of conflicting judgments or bifurcation of a dispute among two jurisdictions without preventing plaintiff from invoking a constitutional exercise of the Court's jurisdiction.

Rept. at 22-23 (emphasis added).[1] Adelson has cited no precedent where an American court has

---

[1] The First Circuit in *Pritzker* stated: "Such a result [furcation of the dispute] would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes." *See also Ionescu v. E. F. Hutton & Co. (France) S.A.*, 465 F. Supp. 139, 145 (S.D.N.Y. 1979) ("[P]arties who choose to engage in international transactions

allowed a person who, like Adelson, has been fully engaged in litigation on the same issue in another country for years, to belatedly create a duplicative proceeding in a distant forum.

Hananel also relies on the Seventh Affidavit of Moshe Hananel filed herewith and his prior filings including his Memorandum in Support (Dkt # 9), his Reply Memorandum (Dkt # 29), and Affidavits of Moshe Hananel cited specifically herein.

FACTS

1.    **Israeli Court Proceedings Between The Parties On The Identical Issue And The Applicability Of Israeli Law.**

**Prior proceedings on issue identical to Count I.**  The most significant set of facts showing the convenience of Israel rather than Massachusetts are the extensive involvement by Adelson in litigation with Hananel in three (now consolidated to two) pending litigations, including one commenced by Adelson himself through his controlled company, which began four years ago in Israel.  Magistrate Judge Sorokin found that the issues in Israel were identical to those of Count I:

> Several lawsuits are pending between plaintiff and defendant in Tel Aviv District Labor Court concerning severance, employment terms and what, if anything, plaintiff may owe defendant under the oral employment contract. In 2001, Hananel sued Adelson and IPI for compensation Hananel claims he was owed under his oral employment contract. In 2002, Adelson countersued in the same court, seeking the return of allegedly misused IPI funds. In 2003, Hananel filed a second suit against Adelson and IPI, claiming his oral employment contract with Adelson entitled Hananel to purchase twelve percent of the stock option shares in Adelson's new Macau casino venture. The Israeli court has consolidated the 2001 and 2003 cases.
> . . .
> At bottom, this case [the present action] concerns defendant's claim, under the oral employment agreement, to a twelve percent share [in] a casino plaintiff has developed in Macau.

Rept. at 12-13 (emphasis added).[2]

---

. . . cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.")

[2]    The subjects of the Israeli actions are described in the 7th Hananel Aff. filed herewith, which includes as an

More than a year previously, on July 21, 2004, the Israeli Labor Court had reached the same conclusion, consolidating Hananel's 2001 employment lawsuit against Adelson and IPI with his 2003 lawsuit against the same defendants concerning his contractual rights to a share of the Macau investment. 2d Hananel Aff. (Dkt # 21) ¶ 2.[3]   A true copy of the court's order in Hebrew and an accurate translation thereof are also attached hereto as Exh. 1 for convenience.  In that order, Chief Judge Alia Fogel said:

> Even though the two claims, of which consolidation is discussed here, do not deal in completely identical facts, both arise from <u>the same set of employment relationships, between the same parties, and in both the court will be asked to decide similar issues, namely the type of commitments that Plaintiff [Hananel] received, as he alleges, from the Defendants [Adelson and IPI], as to the terms of his employment.</u>

> Indeed, the two cases are in different stages of proceedings, but <u>after balancing all considerations, for each side,</u> and with the aim of <u>avoiding a situation in which two judges will reach different rulings on similar issues,</u> I was convinced that it is appropriate to consolidate the proceeding of the cases.

Exh. 1 hereto (emphasis added).[4]  In other words, Chief Judge Fogel applied a balancing test, and found that the public interest in judicial economy and avoidance of conflicting rulings required placing the Macau claim together with the other claims arising from Hananel's employment contract.

---

exhibit the relevant paragraphs from previous Hananel affidavits.

[3]     At the time Hananel filed the first action concerning contract terms and entitlement to share in investments, Adelson had not disclosed publicly that he had begun a casino development scheme in Macau (or that he had been directed to the Macau opportunity by Hananel, which he continues to deny.)  Accordingly Hananel sued for recognition of his agreed share in Adelson's investments Hananel knew about in the Israeli companies iMDSoft and Denex (expressly mentioned in the 2001 case), and sued for his agreed share of Macau, after Adelson's investment became known, in the 2003 action, which was later consolidated by the Israeli court.  This consolidation constitutes a clear determination that the terms of the Hananel agreement applied to Adelson's Macau opportunity in the same way as to the others.  When Adelson responded to Hananel's 2001 suit against him, he was aware of the need to prove every term of the employment contract, and especially aware of the need to prove terms concerning investment opportunities and Hananel's rights to share in them.  For example, Adelson's 2002 affidavit in the Israeli case, at ¶¶ 33-37, discusses extensively his contentions on the terms and conditions of Hananel's right to receive options and "monetary remuneration" for investments found by Hananel. (1st) Hananel Aff. (Dkt # 12) Exh. 1.

[4]     Previously, Judge Davidov-Mutola of the same court had ruled, on May 24, 2004, that the 2003 suit should be consolidated with the 2001 suit "to save judicial time and to prevent inconsistent decisions on the same issues."

Since 2001 the Israeli actions have proceeded through many stages, set forth in the 7th Hananel Aff. filed herewith.  The activity includes the exchanges of hundreds of documents in Hebrew and many affidavits, including three by Adelson himself (dated Sept. 29, 2002, and July 3 and Sept. 7, 2004), two by Roberts (Feb. 24 and June 3, 2004), three by O'Connor (June 3, 2004, April 6 and June 29, 2005), and one each by Irwin Chafetz, Theodore Cutler, and Lawrence Marder that were submitted on June 18, 2004.  Adelson has been to Israel on many occasions over these years, including meeting with his counsel to prepare and sign his affidavits.

Hananel's 7th Aff. Exhs. 1-3 shows this Court that the issues, not only of Adelson's Count I concerning the employment contract, but many subsidiary issues, are being actively litigated and presented for decision to the Israeli court.   Adelson's activity in these cases is thoroughgoing and substantial, as the exhibits show.[5]  Adelson, in the course of hundreds of pages of filings in Israel including his own three affidavits, never once mentioned Massachusetts as the location of any significant events or the existence of any witnesses to his agreements with Hananel, much less any located in Massachusetts, prior to the commencement of this action. Hananel Aff. ¶ 26; Int. Ans. 7, Mem. Hananel, Dkt # 46, Exh. 3.

**Applicability of Israeli law.**  Adelson himself has expressly recognized the applicability of Israeli law to Hananel's employment contract.  In his Israeli affidavit in the 2001 case, he stated ". . . after Interface's [IPI's] counsel in Israel explained to me that according to Israeli law an employee has to be paid an advance notice [of termination] payment . . ., I instructed Interface [IPI] to treat Hananel as required by the law."  Adelson Aff. Sept. 29, 2002, ¶ 18, Exh. 1 to (1st) Hananel Aff. (Dkt # 12) (emphasis added).

---

She stated that the 2003 suit was "another layer of" the 2001 suit. (1st) Hananel Aff. (Dkt # 12), ¶ 32 and Exh. 4.
[5]        The exhibit shows that Adelson had asked several times for delays including repeated delays, even in the claim that he brought (for example, delay in his deadline for submitting affidavits)  and most of the requests for delay  of  pre-trial hearings were by him, resulting in extending the time to trial in the litigation in Israel.

### 2.    Witnesses And Language.

**Israeli witnesses in the 2001 action.**  Pursuant to Israeli court rules, the parties have disclosed witness lists to each other in the earliest case, the first action filed by Hananel against Adelson and IPI, in which <u>all the terms</u> of the employment contract are in issue, including the terms of Hananel's entitlement to share in investments he initiated.  When Adelson filed his witness list in this proceeding, in November 2002, he was thus aware of the need to address <u>all contract terms</u>, including Hananel's <u>right to participate in Adelson's investments</u> in opportunities found by Hananel.  <u>On this list Adelson named only Israeli citizens plus himself.</u>  Adelson's Israeli witnesses all have Israeli ID numbers: Yehuda (Dadi) Zamir ID 054178033, Dan Raviv ID00880625, Miri Schori ID 078856234, and David Farbstein ID 52340296, and have <u>all given affidavits in Hebrew in Israel</u>.  That is, in 2002 Adelson did not name Roberts, O'Connor, or any other U.S. citizen as having relevant knowledge of the terms of Hananel's employment contract, including the rights to share in investments (options).  7th Hananel Aff. ¶¶ 3-5.

All of Hananel's witnesses designated in the 2001 action are Israeli (Oded Efrat, Mira Adelson, and more Israeli witnesses will be called to testify: Arieh Lees, Max Blankstein, David Itach, Avi Heifetz, Uzi Katz, Philis Gotlib, Ido Sheinberg, Alon Haike, Ehod Sol, Jacob Neeman, Dan Chin, Zveda Shelomo, David Ilan, and Moshe Melnick).  7th Hananel Aff. ¶¶ 3-5.

**Israeli witnesses in the 2002 action.**  In the case Adelson brought (through his company IPI) against Hananel, alleging misuse of funds, both sides have filed witness lists.  Adelson has identified five United States residents, but all are either employees or partners of Adelson and have traveled to Israel on at least several occasions, and four Israeli citizens; Hananel has identified ten witnesses, all Israeli citizens. 7th Hananel Aff. ¶¶ 3-5.

**Witnesses claimed in the present action.**  In his initial opposition to Hananel's FNC motion, Adelson had Roberts list alleged American witnesses in an affidavit.  (First) Roberts

Affidavit, Dkt # 16, ¶ 21).   At the time he presented this list to this Court, however, all of Adelson's counts, including damages for interference, etc., were alive.[6]  Now that the non-contract counts have been dismissed, Adelson's list of purported American witnesses is shown to be irrelevant to a determination of Hananel's rights as requested in Count I.  First, Adelson has already informed the Israeli court (in the 2001 case) that he only needs Israeli citizens plus himself to resolve all issues concerning Hananel's contract rights.  Even if Adelson's new list is considered, almost all of the persons on it have expressed their willingness to testify in Israel, and are business partners or (like Paul G. Roberts, Esq.) employees of Adelson, thus rendering them conveniently available to him in Israel.  7th Hananel Aff. ¶ 6.  Moreover, the witnesses named by Roberts  are irrelevant to <u>events from 1995 to 1999</u>, when Hananel's employment contract was formed and when (in 1999) he initiated Adelson's first visit to Macau.[7]  Events after Hananel initiated Adelson's visit are <u>not</u> relevant in the U.S. action, because Adelson's Count 1 is expressly limited to the terms of "an oral agreement" (Complaint, ¶ 32).[8]

Adelson's catalogue of alleged witnesses from the United States does not support a balance-of-convenience argument, because, <u>if</u> Adelson now claims that they are necessary to Adelson's proof of the terms of Hananel's employment agreement– Count I–here (which Adelson did not do in Israel, and which Hananel denies), they will also be necessary to him <u>in Israel</u> because he is fully litigating the contract terms there, including filing (through IPI) his own suit against Hananel in the same court.  As described above, Adelson has the resources and authority over them to produce them in Israel.

**Use of English in Israeli courts.**  Adelson and other witnesses have the convenience of

---

[6]      Judge Sorokin's dismissal of three counts has confirmed the irrelevance to Count I of witnesses concerning the issues of alleged conduct by Hananel after his employment agreement was performed, i.e., after he introduced Adelson to the Macau opportunity in 1999.

[7]      Although Adelson disputes that Hananel directed him, he has admitted that he went to Macau on this occasion <u>from Israel</u> and returned to Israel).  Mem. Hananel, Dkt # 46, p.8 and Exh. 1 (Adelson Depo. 343: 2-6).

[8]      Although Adelson's Complaint says that the oral agreement was "made in Massachusetts," Magistrate

being able to testify in Israel in English (a convenience confirmed by the multiple affidavits in English he, and several of his witnesses including Roberts, O'Connor, Chafetz, and Cutler, have already filed there). This same convenience would not be available to Adelson's or Hananel's Israeli witnesses in the United States.

### 3.    Documents And Translation.

An extraordinarily expensive additional effort would be required to translate the hundreds of documents consisting of thousands of pages in Hebrew, which both parties have already submitted to the Israeli court, for a trial in English in the U.S. Hananel would be required, in this country, to pay for translating these documents whereas they can be addressed in Israel without either party having to purchase translations. Hananel would be required to assist his United States counsel in translating, understanding, and presenting these documents, at great expense (and moreover at great physical difficulty because his blindness prevents him from easily finding and identifying particular documents or relevant parts). The Court and jurors would be heavily burdened by the additional time necessary to translate testimony at trial.

### 4.    Adelson's Substantial Presence In Israel.

Adelson first denied in this court that he has a residence in Israel, while claiming at the same time on his company web site in 2004 that he "maintains an office and residence in Tel Aviv, Israel." 2d Hananel Aff., Dkt # 21, ¶ 20 and Exh. 4 thereto.[9] Judge Sorokin finally confirmed that:

> [Adelson] has, or has available to him, through his Israeli citizen wife, a residence in Israel titled in the name of his wife.

Rept. At 5. The first Hananel Affidavit lists many other undisputed contacts, including bank accounts, real estate and business investments, and systematic and continuous presence in Israel

---

Judge Sorokin has found that "the evidence regarding this fact [the alleged Dec. 5, 1995 meeting in Needham] is in serious dispute." Rept. at 9. The dispute over terms has been actively litigated for four years in Israel.

[9]    Adelson's denial to this Court required Hananel to obtain and translate numerous Hebrew documents

for business purposes. Hananel Aff. (Dkt. # 12), ¶¶ 12-24. Adelson has lawyers and accountants assisting him in his Israeli businesses and litigations. He has stated that he planned to be Israel two or three times a year and whenever needed. Mem. Hananel, Dkt # 46, Exh. 1 (Adelson Depo 73: 25 - 74:12). Adelson admitted that he keeps an office in Israel because "I like going to an office when I'm in a city, and I like a place that has a secretary and I can do the work that I'm doing from here at a place somebody can call me. I have office machines, like copier and a fax machine and computers." *Id.* 103: 22-25.

### 5. Adelson's Travels And International Business Ventures.

Adelson's Complaint admits his involvement in many international business ventures for which he travels widely. Cplt ¶¶ 1, 4, 11.

> Plaintiff is also a very wealthy international businessman with substantial holdings in the United States, Israel and other countries around the world making him a reputed billionaire.

Rept. at 5. "Adelson lived in Nevada during this period [1995-2000] and traveled throughout the world regularly." *Id.* at 10. "[N]either a Massachusetts citizen or a Massachusetts corporation are parties to this litigation." *Id.* at 22.

In 2005, press articles confirmed Adelson's ability to travel frequently and freely around the world, and his convenience as a frequent visitor to Israel. A Reuters News Service article dated March 18, 2005, described a press conference Adelson held in Macau and stated that Adelson flies from the U.S. to Macau "in his private jet once a month." Also, an article in the April 22, 2005 issue of *Yedioth Aharonot*, an Israeli magazine, pages 88-92, quotes Adelson saying that Israel is his "second home," that he tries to come to Israel at least once every two or three months, and that he promises to invest millions of dollars in a casino in Eilat if the government approves a license. 4th Hananel Aff., Dkt # 56, ¶ 6 and Exh. 5.

---

refuting him.

### 6. Hananel's Lack Of Contacts With Massachusetts And Extraordinary Inconvenience Of Distant Litigation.

As found by Magistrate Judge Sorokin, Hananel has no personal or ongoing business contacts with Massachusetts and no resources in the United States to support activity here. Rept. at 6. *See also* Hananel Aff. (Dkt # 12) ¶¶ 6-7. He has not visited the United States for any purpose since 2000. *Id.* Judge Sorokin noted that even the Dec. 5 meeting (disputed by Hananel) was not necessarily an essential contact with Massachusetts. Although Hananel's Dec. 5, 1995 visit to Massachusetts was found to be an occasion for "discussion and finalization of his employment terms," "some or many of the terms of his employment were discussed between Hananel and Adelson prior to Dec. 5th" [when Hananel and Adelson were in Israel]. Rept. at 16 (emphasis added).[10]

**Physical disabilities limiting conduct of foreign litigation.** Hananel has severe medical difficulties, including legal blindness, diabetes, and kidney pathology which make it impossible to conduct litigation without mechanical devices, or without personal assistance in reading and physical support which he obtains from family members in Israel but would be unable to afford in the United States, including some services which cannot be purchased. Rept. at 7; Hananel Aff. (Dkt # 12) ¶¶ 3-5. His medical conditions of diabetes and kidney pathology are inherently unstable, requiring him to remain under the care of family members and near sources of

---

[10]    The Rept. stated that its holding of jurisdiction applied even if it was assumed that "all contract terms had been finalized prior to Hananel's arrival in Needham," as Hananel has asserted. This statement shows that, although Judge Sorokin refused to give decisive jurisdictional weight to them, many findings demonstrated lack of convenience, including that (a) Hananel "came to Massachusetts to obtain a second opinion at the Joslin Clinic regarding the treatment of his diabetes" (Rept. at 8), (b) that the phone calls between Adelson and Hananel occurred while Hananel was in Israel and while Adelson called "from many different places, . . . and, importantly, Adelson has never said he called Hananel from Massachusetts," (Rept. at 10 (emphasis in original)); and (c) that Hananel's post-Dec. 1995 contacts with Massachusetts were limited to a meeting in Andover "with an Israeli company in which IPI had invested" and "submitting requests [for investment funds], budgets and expenditure reports and obtaining funds for IPI's Israeli branch from [persons in Needham]" (Rept. at 17). Thus although the jurisdictional findings were deemed to have met a prima facie threshold, they do not affect the much larger body of undisputed facts placing the center of gravity of the employment agreement in Israel, where Adelson and Hananel had been litigating it for years before the filing of the present duplicative action.

treatment from his physicians familiar with his conditions, who are in Israel.[11]  Hananel spends much of his time at home using the Vision Technology, Inc. equipment and the computer installed there, as he lives, functions, and works primarily in his house.  2d Hananel Aff., Dkt # 21, ¶ 19.  Although the Report at 21 asserts that it is fair to require an executive to travel, Hananel's present medical situation (which worsened in 2002) is in stark contrast to his situation in the years 1995-2000, when he traveled frequently.  The trips Hananel has taken since 2002 were planned on short notice as his medical situation is unstable and cannot be predicted or planned for long in advance.

### 7.     Macau Claim

Adelson cannot show that the circumstances of Hananel's initiation of the Macau opportunity in 1999 have any connection with Massachusetts.  Adelson himself has testified at his deposition that his first trip to Macau in 1999, which Hananel asserts was the result of Hananel's urging, began in and returned to Israel. Mem. Hananel, Dkt # 46, p.8 and Exh. 1 (Adelson Depo. 343: 2-6).  In contrast, he has never formally asserted in four years of Israeli proceedings any Massachusetts connection to the employment contract terms or (later) the Macau casino and hotel development.

## ARGUMENT

### THE POLICY OF FORUM NON CONVENIENS REQUIRES DISMISSAL OF THIS ACTION.

The United States Supreme Court has established the doctrine of forum non conveniens to deal with cases where a plaintiff commences an action in the courts of the United States which, on equitable grounds, should properly be pursued in another forum, including in a foreign country.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 250 (1981); *Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1349 (1st Cir. 1992), *cert. den.,* 502 U.S. 1095 (*Mercier II*); *Mercier v. Sheraton Int'l, Inc.,* 935 F.2d 419, 424 (1st Cir. 1991) (*Mercier I*); *Iragorri v. International Elevator, Inc.,*

---

[11]     All of Hananel's journeys abroad since his medical condition deteriorated in September 2002 have been for short periods.

203 F.3d 8, 12-18 (1st Cir. 2000). "[T]he *forum non conveniens* doctrine's principal purpose is to ensure that trials are convenient, both for the parties and for the court." *Mercier I, supra,* 935 F.2d at 424. "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Iragorri, supra,* 203 F.2d at 12, quoting *Koster v. (American) Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 527 (1947). Hananel shows here that both parties have already agreed that trial in Israel will serve their convenience, as they have engaged in four years of substantial ongoing litigation there (including litigation commenced by Adelson through IPI) concerning the identical issue of Count I of the present Complaint. The ends of justice are best served by completing the proceedings in Israel, because it is the only forum that can deal with all issues and avoid conflicting judgments.

Hananel further shows that he has overwhelmingly met the tests established by the First Circuit Court of Appeals and has carried his burden of showing that Israel is the proper forum, because (1) Israel is an adequate alternative forum, as demonstrated *inter alia* by Adelson's own choice to litigate all employment contract issues in Israel, and (2) there is the "likelihood of serious unfairness to the parties in the absence of a transfer to the alternative forum," *Mercier, supra,* 981 F.2d at 1349, because of the enormous, expensive, and duplicative efforts required to re-litigate what was a contract for employment in Israel, where thousands of Hebrew documents have been introduced, where English speakers like Adelson can be heard in English, and proceedings already well advanced. This burden falls far more heavily on Hananel, who is (compared to Adelson) financially unable to conduct duplicative litigation, than on Adelson, whose resources, and consequent ability to litigate in multiple forums, are extraordinarily large.[12]

---

[12]    The facts of the *Mercier* case are helpful. In a suit by American citizens against an American company headquartered in Massachusetts concerning contracts for the development of a casino in Turkey, the district court concluded that Turkey was an adequate forum and that, although private interest factors may have been neutral or favored retaining the case in Massachusetts, public interest factors favoring dismissal outweighed the private factors. *Mercier I,* 935 F.2d at 423. The First Circuit remanded the case in *Mercier I* on the grounds that the district court had erred in concluding that Turkey was an adequate forum. After remand, the First Circuit panel confirmed further findings that Turkey was an adequate forum and affirmed dismissal. *Mercier II,* 981 F.2d at 1359.

### B.    Israel Is An Adequate Alternative Forum.

The first inquiry is whether Israel is an "adequate alternative forum." *Iragorri*, *supra*,

203 F.3d at 13.  An alternative forum is "available" if the defendant is subject to jurisdiction

there.  *Mercier II, supra,* 981 F.2d at 1349.  Hananel satisfies this test because he is a resident of

Israel and indisputably subject to jurisdiction there.  Adelson has acknowledged the adequacy of

the Israeli forum by (a) choosing Israel to commence (through IPI) employment contract

litigation against Hananel there and (b) since 2001 vigorously defending (without questioning

venue or jurisdiction) employment contract litigation there, including Hananel's claims under his

employment contract for the shares in investments (options) Adelson agreed to pay him.  Thus in

Israel both parties are fully engaged in litigating the employment contract and the Macau claim,

fully encompassing all issues and remedies sought by Adelson in Count I of his Complaint.

The only remedy sought hereby Adelson (in the remaining Count I) is a declaratory

judgment concerning the terms of the Adelson/Hananel employment contract.  No damages and

no other remedies are sought or otherwise implicated, and this remedy–a finding of the terms of

Hananel's employment contract, especially as they may relate to the Macau claim–is fully

available in Israel and Adelson has never denied this over four years of litigation.  *See Mercier*,

981 F.3d at 1351 (finding that foreign court would take cognizance of dispute and afford

remedies).  Moreover, as the Israeli court has squarely before it all issues concerning an

Adelson/Hananel agreement, and has already decided many subsidiary issues, only it will be able

to offer the parties complete relief on this score.

In *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986) the court,

in granting a motion to dismiss for forum non conveniens and on other grounds, held that Israel

was an "adequate alternative forum" for a securities dispute.  *Id.*  at 127.  To the plaintiff's

argument that the litigation should remain in the United States because the plaintiff was a United

States corporation, the court replied:

> The fact that the plaintiff is a United States corporation, does not
> prevent dismissal of the action, since an American citizen does not have
> an absolute right to sue in an American court.

*Id.* at 129 (citation omitted).[13] This precedent and reasoning are directly applicable to Adelson in the present case. *See also Kato v. Ishihara,* 239 F. Supp. 2d 359, 365-366 (S.D.N.Y. 2002) (FNC dismissal as parties had appeared in Japanese court in suit filed by plaintiff).

**C.    Israel Is A Convenient Forum Necessary To Avoid Unfairness.**

The next "inquiry is whether the alternative forum is sufficiently more convenient for the parties as to make transfer necessary to avoid serious unfairness," *Mercier II,* 981 F.3d at 1354, because "a defendant's right to obtain dismissal on forum non conveniens grounds hinges on whether it can show that considerations of convenience and judicial efficiency strongly favor the proposed alternative forum." *Iragorri, supra,* 203 F.3d at 15. In *Mercier II,* involving a casino development in Turkey, the First Circuit affirmed dismissal even though both the plaintiffs and defendant were American citizens, individual and corporate, because the public and other private factors outweighed the presumption in favor of a plaintiff's choice of forum, noting that "the cases demonstrate that defendants frequently do rise to the challenge" of meeting their burden. 981 F.2d at 1354. Adelson has the resources to continue his full-scale litigation in Israel, has a residence, offices, counsel, and businesses in Israel and visits Israel regularly, and has never claimed a Massachusetts venue for the formation of the employment contract in any of the Israeli proceedings.

> **1.    ADELSON'S CHOICE OF FORUM SHOULD BE GIVEN NO
> WEIGHT, AS HE HAS PREVIOUSLY CHOSEN ISRAEL AS A
> FORUM, AND HAS SHOWN NO GOOD REASON TO PREFER
> MASSACHUSETTS.**

The district court must consider an American citizen's choice of forum as a "private"

---

[13]    The *Diatronics* court noted that (as in the present case) a key employee of the plaintiff would certainly travel to Israel for the trial, and had been there several times before so it "does not seem unjust to require him to travel to Israel again." 649 F. Supp. at 129. Moreover, the Israeli defendant Elbit had already instituted an action in Israel concerning the contract at issue, and the plaintiff Diatronics had reserved its right to bring counterclaims there. *Id.* at 129 & n. 13.

factor, but a full consideration of other factors will demonstrate that this choice was given sufficient weight. *Mercier II,* 981 F.2d at 1355. Here, as a primary consideration, <u>Adelson himself has chosen Israel as a forum for litigation of this contract.</u> Adelson's prior choice of Israel is consistent with the entire purpose of the contract, which was to employ Hananel to find and develop investments in Israel and other countries, <u>not</u> including the United States. Adelson's business interests are international, he flies around the world regularly (in his private jet) and he has a presence in Israel (residence, regular visits, businesses, offices, lawyers, accountants).[14] This international presence, with a particular concentration in Israel, shows that his choice of a United States forum for the opening of duplicate litigation should be given no weight. Notably, also, Adelson has never told an Israeli court that he was suffering from any inconvenience in Israel, or that litigation was more convenient for him in Massachusetts. The inference is strong that Adelson opened the second front to harass Hananel and not because it was necessary .

The Court's finding of personal jurisdiction over Hananel does not alter the undisputed facts that Hananel's employment by Adelson/IPI occurred almost entirely in Israel. *See* Rept. at 5-7 (Hananel was employed as General Manager of IPI in Israel; Adelson founded IPI for the purpose of investments outside the U.S.; IPI has no employees in Massachusetts separate from Adelson's other company, Interface Group; Hananel "has never been employed in or paid taxes to the United States"). Adelson "established IPI for the purpose of making business investments in Israel. [Adelson] is the only shareholder of IPI." Rept. at 5.

As an additional consideration, a court should give no weight to a plaintiff's choice of forum where evidence of forum-shopping exists.

> On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons–such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United

---

[14]    Adelson "has, or has available to him through his Israeli citizen wife, a residence in Israel titled in the name of his wife." Rept. at 5.

> States or in the forum district, the plaintiff's popularity or the
> defendant's unpopularity in the region, or the inconvenience and
> expense to the defendant resulting from litigation in that forum–the
> less deference the plaintiff's choice commands and, consequently, the
> easier it becomes for the defendant to succeed on a *forum non*
> *conveniens* motion by showing that convenience would be better
> served by litigating in another country's courts.

*Iragorri v. United Technologies Corp.,* 274 F.3d 65, 72 (2d Cir. 2001) (emphasis added).[15]  Here,

Adelson has directly stated that he chose to file this action to duplicate the Macau claim in the

United States (Mem. Hananel, Dkt # 46, p. 10 and Exh. 1 (Adelson Dep. 88: 14-22) (thus tacitly

stating that he wishes to remove it from the Israeli court, *see Linkco, Inc. v. Nichimen Corp.,* 164

F. Supp. 2d 203, 212 (D. Mass. 2001) (Saris, J.) (factor in granting motion to dismiss for forum

non conveniens is that "[i]nstead of accepting the prospect of resolving this dispute in Japan,

[plaintiff] appears to have snubbed the Japanese court at several turns").[16]

## 2. LITTLE CONNECTION EXISTS BETWEEN THE DISPUTE AND MASSACHUSETTS.

An attenuated connection between the particular forum in the United States and the claim

to be litigated is a "public" factor favoring dismissal. *MercierII,* 981 F.3d at 1355.  Here, as

Judge Sorokin's Report observes, there is substantial evidence of the negotiation of and

agreement to the terms of Hananel's employment contract in Israel; "some or many of the terms

of his employment were discussed between Hananel and Adelson prior to December 5th [1995]."

Rept. at 16.  "Prior to the December 5th, 1995, meeting, [Hananel] was at least helping [Adelson]

with matters related to IPI.  For example, [Hananel] stood in for [Adelson] at various business

meetings involving IPI interests or investments during the fall of 1995 and [Adelson] appears to

have invested defendant with some authority to sign checks on IPI's behalf during this time."

Rept. at 7.  It is undisputed that performance of his employment contract, which is the subject of

---

[15]    In this Second Circuit case, the plaintiff's choice of forum was upheld because she needed to obtain jurisdiction over a United States defendant here, in stark contrast to the present case, where jurisdiction over Hananel in Israel has always existed.
[16]    In *Linkco,* the Japanese court had already rendered a judgment against Linkco, which, however, Linkco was appealing.  164 F. Supp. 2d at 208.

Adelson's remaining count, occurred in Israel and elsewhere in the world outside the United States and has no connection with Massachusetts. Adelson has never claimed a connection with Massachusetts during four years of litigation in Israel.[17] In the present case, the insubstantiality of the connections between Hananel's employment contract terms and performance and Massachusetts is of the most tenuous kind, and Judge Sorokin's Report provides ample evidence that a dispute over them has an overwhelming center of gravity in Israel.[18]

### 3.   WITNESSES AND DOCUMENTS ARE CONVENIENTLY AVAILABLE IN ISRAEL AND NOT IN MASSACHUSETTS.

One private interest factor of convenience is based on the relative ease of access to sources of proof. *Mercier I, supra,* 935 F.2d at 419; *Mercier II, supra,* 981 F.2d at 1355-1356. Hananel has shown that the cost and efficiency of litigation, in terms of witnesses and documents, is a "private" factor weighing heavily in favor of Israel, where litigation concerning the terms of his contract is well advanced, where most witnesses live (and where Adelson's alleged American witnesses are accustomed to appearing), and where language and translation difficulties and costs do not occur, rather than the United States, where Hananel cannot provide any of his witnesses and cannot afford to translate the necessary documents.

As discussed at pages 5-7, *supra,* and the 7th Hananel Aff., most of the witnesses put forward by both Adelson and Hananel in the Israeli litigations are Israeli citizens, many of whom are available only in Israel, and most of the witnesses from the United States (other than Adelson) suggested by Adelson have expressed their willingness to come to Israel to testify and

---

[17]     The Report's jurisdictional finding was based on at most three short visits involving a few hours of meetings, and on communications while Hananel was in Israel concerning the transfer of funds and office budgets. None of these, except the short Dec. 5 meeting (which Hananel denies, and which Adelson's only alleged witnesses, himself and Roberts, are freely available in Israel), add any weight to the choice of a Massachusetts forum, and the balance weighs heavily in favor of completing the Israeli proceedings.

[18]     Judge Sorokin, while finding that Massachusetts had an interest in the litigation sufficient for jurisdictional purposes, noted that <u>any</u> interest would do, and that he was not comparing the interest of Israel with that of Massachusetts. Rept. at 22. His findings cited above support the conclusion that the center of gravity of the employment contract dispute is in Israel.

are either partners or employees of Adelson, giving him the power to arrange their presence.[19]

In *Iragorri* the plaintiff was attempting to avoid Colombia as the more convenient and just alternative forum, and the court held that "[a] plaintiff's familiarity with the alternative forum, her comfort level there, and her fluency in the language used in its courts may be weighed in deciding a forum non conveniens motion." 203 F.3d at 13. The court noted several facts that apply to Adelson in Israel–his residence, businesses, and family ties–and, of course, Adelson can use English in Israeli courts. *Id.*

The First Circuit court in *Iragorri* also expressly approved the district court's evaluation of translation needs as favoring the forum where crucial witnesses could appear without the need for translation, 203 F.3d at 16; only in Israel will the Israeli witnesses for both sides and numerous documents in Hebrew be conveniently considered without the need for translation. *See also U.S. Vestor, LLC v. Biodata Information Technology AG*, 290 F. Supp. 2d 1057, 1069 (N.D. Cal. 2003) (FNC dismissal because public interest factor disfavors burden of translating law and testimony from and to German).

### 4.   THE ABSENCE OF ANY LITIGATION ACTIVITY IN MASSACHUSETTS FAVORS ISRAEL.

Dismissal is favored when there has been only limited activity addressing the merits in the chosen forum, a "public" factor. *Mercier*, 981 F.3d at 1356-1357.[20] Here, there has been no activity relating to the merits in Massachusetts, and (unlike the situation in *Mercier*) detailed and

---

[19]    The First Circuit has recognized the impossibility of a burden Adelson may try to inflict on Hananel in this motion. It has refused to require defendants moving to dismiss on convenience grounds to prove by affidavit either the unavailability of a foreign witness or the significance of the witness's testimony, because "a blanket rule 'would tend to inflict an impossible burden on defendants for the very reason that they cannot compel evidence, including the evidence necessary for dismissal.'" *Mercier II*, 981 F.2d at 1386 (citation omitted). Hananel will be able to compel only in Israel witnesses he may need to prove the terms and performance of his employment agreement and his entitlement to the promised share of the Macau opportunity.

[20]    In *Mercier II*, the plaintiffs had asserted two depositions in the forum to be substantial activity, but the court rejected their assertion, citing to cases where substantial progress in the exchange of documents and preparation for trial had been made. In the present case, the Israeli forum is years ahead in the discovery and pre-trial phases of litigation concerning the complex issues of Hananel's employment contract and the Macau claim.

vigorous activity for four years by both parties in Israel directly addressing the merits of the business relationship between Adelson and Hananel, which is the subject of Adelson's Count I. This factor one-sidedly favors dismissal in favor of the Israeli actions.[21]

### 5. THE NEED FOR INTERPRETATION OF ISRAELI LAW FAVORS DISMISSAL.

It is proper to give some weight to the "public" factor of the difficulty of interpreting and applying the law of a foreign country. *Mercier I*, 935 F.2d at 428; *Mercier II*, 981 F.3d at 1357. Adelson has (a) by announcing the application of Israeli law to the employment relationship, (b) by litigating for years in Israel, and (c) particularly by commencing the 2002 countersuit by IPI against Hananel, already admitted that Israeli law governs the employment contract. *See* p. 4, *supra*. Indeed, the application of Israeli law had already been determined by Adelson's decision to hire an Israeli citizen to work in Israel for a company he registered to do business there, and the payment of corporation and payroll taxes of all kinds; Adelson merely recognized the inevitable when he chose Israel as a forum for his claims against Hananel. Accordingly, the strong likelihood that Israeli law may govern the dispute is a factor favoring dismissal.

### 6. THE CASE CAN BE MOST QUICKLY TRIED IN ISRAEL.

The parties' full-scale engagement in litigation in Israel since 2001 concerning the employment contract and investment sharing obligations between Hananel and Adelson, shows that this factor favors the Israeli proceedings. This complicated case has engendered numerous pre-trial motions and controversies with which the Israeli court has dealt. *See* 7th Hananel Aff. Exhs. 1-3. The Israeli court has recognized that the issues are well advanced towards trial by ordering consolidation of the 2001 and 2003 cases for the express purposes of avoiding a waste of judicial time and the possibility of conflicting rulings on the same issues. Hananel Aff. ¶ 32. Accordingly, the goal of a prompt resolution favors Israel.

---

[21]    The importance of the pre-existing litigation activity in Israel is well demonstrated by Adelson's motion before this Court for letters rogatory to take the deposition of a Mr. Sou in Macau; as his motion papers disclose, the role of Mr. Sou is squarely under the purview of the Israeli court, as a result of events in Israel, and that court should

### 7.    RELATIVE FINANCIAL HARDSHIPS FAVOR ISRAEL.

The First Circuit in *Iragorri* noted that

> at the second stage [the balance of convenience phase] of a forum non
> conveniens analysis, financial hardships, a "private" factor, may be
> relevant.  Moreover, even if such a hardship does not make foreign
> litigation impossible, it nonetheless may constitute one of the
> 'practical problems' that help to determine whether trial of a case in a
> given venue will (or will not) be convenient. *Gilbert [v. Gulf Oil Co.],*
> 330 U.S. at 508.

203 F.3d at 17.  Hananel has given evidence of the financial hardship the duplicate litigation in

the United States is causing (and of the enormous burdens, financial, medical, and physical,

which any need to conduct trial proceedings here would impose; Hananel's very limited work is

done from his home).   As this factor is recognized as a balancing one, this Court should take

into account the corresponding evidence that  Adelson "is also a very wealthy international

businessman with substantial holdings in the United States, Israel, and other countries around the

world making him a reputed billionaire." Rept. at 5.   Adelson has a private jet, and offices,

residence, and staff in Israel at his beck and call.

### 8.    INFERENCES OF HARASSMENT AND FORUM-SHOPPING SUPPORT
###         DISMISSAL.

Harassment is a consideration expressly endorsed by the United States Supreme Court,

where that the plaintiff chose an inconvenient forum to "'vex,' 'harass,' or 'oppress' the

defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his

remedy." *Gulf Oil Corp., supra,* 330 U.S. at 508-509.  Here, Adelson has always regarded the

Israeli proceedings as fully convenient for "his own right to pursue his remedy" of contract

terms, and did not file this duplicative action until years after they began.  In Israel, both sides

can rely on one attorney instead of two, conduct discovery under a single set of court rules,

proceed without translations, have witnesses attend only one set of proceedings, can observe a

single court's rulings, and can litigate where both parties are comfortably situated.  The Court

---

be allowed to continue the appropriate inquiry without Adelson opening a second front.

would be fully justified in inferring that the present entirely duplicative action was filed to intimidate Hananel and to cause him unnecessary extra expense.

## CONCLUSION

For all of the above reasons, the Court should dismiss this action on the grounds of forum non conveniens.

Dated: December 15, 2005

MOSHE HANANEL
By His Attorneys,

/s/ James A.G. Hamilton
James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

# EXHIBIT  1

Exh. 1

בתי המשפט

21/07/2004

ביה"ד האזורי לעבודה בת"א/יפו
עב 6245/01

בתבע: משה חננאל

ע"י ב"כ: שלו חגי

נגד

נתבע: אינטרפרייס פרטנרס אינטרנשיונל לימיטד
ע"י ב"כ: דנציגר יורם

החלטה:

צעבק: הצעת ב"כ התובע לתגובת התובע בקשר לשאלת איחוד הדיון מיום: 18/07/2004

על אף שהתובעות שונות אינן אחד כמו עסקות במערכות עובדות זהה לחלוטין, שונהן עדיין מבעת מאותה מערכת יחסי עבודה, בין אותם צדדים, ובשתנין יתרא ב"ב, להכריע בסוגיות דומות – קרי, באופן התמקבייבית שקיבל התובע לטענתו, מהתנבעם, בגוב לתנאי העסקתו.

אמנם שני התיקים מצויים בשלבים דיונים שונים; אולם לאחר איזון של כל השיקולים; לכאן ולשאן; רוחף שאיפה להימנע ממצב בו שני שופטים יריעו הכרעות שונות בסוגיות דומות, שנובעתי כי מן הראוי לאחד את הדיון בתיקים.

המנ"ת יקבע את התיק המאוחד לשופט קדם, שיקיים דיון וקבע בו את המשך סדר הדיון.

פוגל עליה שופטת ראשית



ת הדין האזורי לעבודה בתל-אביב
חגי מאשר
שהעתקת זה ...... ומתאים למקור

התאריך 26 ...... 23.7.04
מזכיר ראשי

הופק ע"י רחל רוזה

**<u>Decision: Tel Aviv District Labor Court, July 21, 2004, Honorable Judge Fogel Alia,
In re: Moshe Hananel ("Plaintiff") v. Interface Partners International Ltd. ("IPI"),
Case No. 6245/01</u>**

<u>DECISION</u>

[IPI and Sheldon Adelson are referred to as "Defendants"]

In the matter of the response by IPI to the response of Plaintiff as to the question of the
consolidation of the proceeding from July 18, 2004.

Even though the two claims, of which consolidation is discussed here, do not deal in
completely identical facts, both arise from the same set of employment relationships,
between the same parties, and in both the court will be asked to decide similar issues,
namely, the type of commitments that Plaintiff received, as he alleges, from the
Defendants, as to the terms of his employment.

Indeed the two cases are in different stages of proceedings, but after balancing all
considerations, for each side, and with the aim of avoiding a situation in which two
judges will reach different rulings on similar issues, I was convinced that it is appropriate
to consolidate the proceedings of the cases.

The [court office of file assignment] will submit the consolidated case to the initial judge,
who will hold a hearing and determine the continuation of the proceedings.