IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHELDON G. ADELSON, | ) | |
| Plaintiff, | ) | Civil Action No. |
|  | ) | |
| v. | ) | 04-cv-10357-RCL |
|  | ) | |
| MOSHE HANANEL, | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF HANANEL'S RENEWED MOTION TO DISMISS FOR FORUM NON CONVENIENS**

Defendant Moshe Hananel ("Hananel") offers this Reply Memorandum in Support of his Renewed Motion to Dismiss For Forum Non Conveniens, together with the Eighth Affidavit of Hananel. The Opposition of Plaintiff Sheldon Adelson ("Adelson") dated Dec. 30, 2005, despite its irrelevant, repetitive, and inadmissible vituperation, nevertheless provides additional material in support of Hananel's argument that the long-standing Israeli actions concerning the terms of the employment agreement make Israel the only convenient forum. Adelson's Opposition, apparently recognizing that he has no substantive arguments against dismissal, can only offer inadmissible and false statements concerning Hananel's disabilities of blindness and diabetes, misleading descriptions of the Israeli proceedings, and discredited vituperation copied from his earlier pleadings. Of Adelson's twenty-four page Opposition more than half consists of <u>verbatim</u> repetitions of previously and conclusively discredited accusations, thus providing the Court with additional grounds to conclude that Adelson brought this duplicative action solely to harass Hananel.[1]

---

[1] Adelson headlines accusations of perjury, mendacity, and fraud in his first argument on pages 1-3, claiming as a devastating discovery that Hananel can walk sometimes without assistance, use a cell phone, and look at large print a few inches from his face without machine assistance. Because the few minutes of video, submitted without a proper affidavit and lacking any of the usual foundations for evidence, nevertheless show what the photographs edit out–the presence of Mrs. Hananel as his driver and helper, the extreme difficulty in reading, and difficulty in walking–this Reply addresses them later. Adelson's accusations are frivolous, insulting, and cruel and do not belong

I.      THE ISRAELI ACTION IS THE ONLY REASONABLE CONVENIENT FORUM.

Adelson's Opposition argument on pages 3-10, only some of which is new, fails on every point. Notably, he concedes by silence many elements of the applicable tests, and Hananel addresses only those raised here by Adelson. The Court should also note that Adelson has never filed a motion in Israel asserting forum non conveniens, showing that his present arguments about witness convenience, etc. are empty of significance.

A.      Adelson's Belated Choice Of This Forum Should Be Given No Weight, As His Chosen Precedents Confirm.

Forgetting that "[A] plaintiff's choice of forum is entitled to much less weight when it is made after the filing of a concurrent action arising out of the same series of transactions" (*Linkco, Inc. v. Nichimen Corp.*, 164 F. Supp. 2d 203, 214 (D. Mass. 2001) (Saris, J.) (quoting *MLC (Bermuda) Ltd. V. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 254 (S.D.N.Y. 1999), Adelson refers the Court to *Nowak v. Tak How Invs. Ltd.*, 94 F.3d 708 (1st Cir. 1998). In that case, the Massachusetts-resident plaintiffs sued for damages for the drowning death of their wife and mother in the swimming pool of the Holiday Inn Crowne Plaza Harbour View hotel in Hong Kong owned by the corporate defendant. *Id.* at 711. No other suit had been filed. The court noted the extreme difficulty and cost to the father of bringing a suit in Hong Kong. *Id.* at 720.

Thus *Nowak* stands in decisive contrast to the present case, where Adelson has fully and enthusiastically engaged since 2001 in litigation in Israel to determine the terms of the employment contract and Hananel's rights to shares in investments he found, and Adelson has himself chosen Israel as a forum by causing his wholly-owned company IPI to sue Hananel for breach of that contract there in 2002. Moreover, Adelson's misplaced reliance on *Nowak* highlights his complete failure to identify any precedent in which a United States court has held

---

in the Court's consideration. From caution, Hananel has filed a motion to strike the improper materials.

that a much-later-filed case by a plaintiff, who has actively engaged in litigation over the same subject matter for years in another forum, is entitled to any of the deference usually accorded plaintiffs like the Nowaks.[2]

Adelson's other citations also support dismissal. Judge Selya's opinion for the Court in *Quaak v. Klynfeld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11 (1st Cir. 2004) roundly condemns the type of parallel lawsuit that Adelson has filed here. The First Circuit upheld Magistrate Judge Collings' recommendation, and Judge Saris's international antisuit injunction, precisely because it <u>prevented</u> the kind of harm Adelson is seeking to inflict on Hananel here. A Belgian defendant in a longstanding District of Massachusetts class action case filed an "interdictory strike" suit in Belgium seeking to avoid discovery orders from the District of Massachusetts. *Id.* at 13-14, 22. The motive of the *Quaak* defendant was transparent–to harass the opposing party and impair or stymie the longstanding ongoing litigation between them in a forum never previously challenged as inconvenient. *Quaak* stands for the proposition that a strike suit in a distant forum was so unfair to the opposing party in a prior action that it should be enjoined. It is this proposition that speaks in favor of Hananel's motion to dismiss Adelson's strike suit here.

      **B.**      **The Balance Of Convenience Of Witnesses Strongly Favors Israel.**

Adelson's headline at 4 stating that Israeli witnesses and documents are "errant [sic] nonsense," is frivolous because he himself has named many Israeli witnesses and produced many documents in Hebrew in the Israeli litigation over the terms of the employment agreement <u>and Hananel's entitlement to options in investments, which was filed in 2001</u> (although not including the Macau claim at that time, because Adelson had concealed his activities, Hananel sought

---

[2]     Almost the entire first paragraph (all after the first sentence) of Adelson's argument on pages 3-4 is verbatim from his Opposition dated July 15, 2004, at 16. Adelson has found no authority after eighteen more months.

judgment concerning his rights to share in other investments, adding Macau after it became public knowledge). Hananel has also named many, and those put forward by both sides are listed in Hananel's 7th Aff. which Adelson does not try to contradict.[3] Indeed, Adelson's entire argument in this section is mistaken.

In the face of the overwhelming balance favoring Israel as the most convenient place for witnesses, Adelson at 4-8 argues a new list of American and Chinese witnesses; the argument fails, however, because it relies on a misstatement of the subject matter of this action in Count 1 of his Complaint. When the issue is properly stated, most of Adelson's proposed non-Israeli witnesses become irrelevant. The subject matter is the terms of Hananel's employment agreement, particularly his entitlement to share in investments he found. This subject matter has been for years, and continues to be, actively litigated in Israel, where both parties have identified many Israeli witnesses and Hebrew documents (and where English-speaking witnesses have filed affidavits in English in Israel, particularly Adelson himself, but also Roberts, O'Connor, Chafetz, Cutler and Marder (all of whom are also regular visitors to Israel)).[4]

Adelson's reliance on a misstatement of his Count 1 is confirmed in the second and third paragraphs on page 8, where Adelson admits that his voluminous list of witnesses (newly augmented without explanation for the delay, compelling the inference that they are pure makeweights in the face of Hananel's strong arguments) includes those who have "testimony

---

[3] The *Quaak* case (discussed above) exposes Adelson's counsel's tactics at Hananel's deposition in seeking disclosure of witnesses prior to their scheduled disclosure in Israel. Like the Belgian defendant, Adelson sought to evade and circumvent the procedures of the forum in which he had engaged in litigation for a long time, seeking a one-way advantage over Hananel. Moreover, Adelson's castigation of Hananel's refusal to disclose witness names outside the Israeli court's scheduling orders, which repeats a previous argument, is now moot as the Israeli proceeding has led to additional witness disclosures by both sides (7th Hananel Aff.). In addition, Adelson's present (repeated) argument unintentionally reinforces the harassing intent of the present suit; although the orders of this Court (January 19, 2005) clearly contemplate the hearing and decision of a forum non conveniens motion before the commencement of truly onerous discovery, Adelson pretends here that Hananel has the full burden of disclosure and discovery responses that the Court has consciously not imposed.

[4] Other witnesses on Adelson's disclosure have visited Israel on multiple occasions: Weidner, Friedman, Stone, Goldstein, Miltenburger, and Leonard Adelson. Adelson's other belatedly claimed witnesses in Hong Kong and Macau are considerably closer to Israel (4,810 air miles) than to Boston (7,950 air miles).

about the Macau sub-concession." The "Macau sub-concession," of course, occurred <u>long after</u> Adelson and Hananel agreed to employment terms in 1995, and <u>some time after</u> Hananel found and disclosed the Macau opportunity to Adelson in 1999. By limiting their testimony to this subsequent event, Adelson thus admits that his witnesses are irrelevant to the present calculus of convenience under his Count 1.

Both parties have agreed for years on the importance of Israeli witnesses in determining the terms of the employment agreement, the core of the Israeli proceedings and of Count 1 in this duplicative action. Adelson correctly points out (4-5; new material) that the oral agreement was made between Hananel and Adelson in Israel in October 1995 with no witnesses to the conversation.[5] (Hananel Depo. (Opposition Exh. A) 73: 2-13.) Indeed, Adelson's three affidavits in the Israeli actions specifically state that he, Adelson, made the agreement, and <u>do not mention the presence of Roberts or anyone else</u>; Adelson gave two of these affidavits <u>after filing the present action</u>. 1st Hananel Aff. (Dkt. # 12) Exh. 1, ¶ 8 (Adelson Aff. Sept. 29, 2002); 2d Hananel Aff. (Dkt. # 21) Exh. 6, ¶ 7 (Adelson Aff. July 3, 2004); Mem. Supp. Renewed Mot. (Dkt. # 46) Exh. 4, ¶ 7 (Adelson Aff. Sept. 7, 2004). In his 2002 affidavit (in the consolidated case) Adelson identified three Israeli witnesses (two employees and his accountant) who would give affidavits-Zamir, Raviv and Schory-alleging that they will support his case concerning the employment contract (and <u>no United States witnesses</u> except himself.) ¶¶ 28, 30, 32. In November 2002 he added his Israeli brother-in-law Farbstein to his witness list; all four gave affidavits in Hebrew. 7th Hananel Aff. ¶ 4. In his two 2004 affidavits (July (¶¶ 11, 30) and September (¶¶ 11, 30), he identified only <u>the same three</u> (Zamir, Raviv and Schory) and again did not mention any U.S. witnesses. Adelson himself, of course, visits Israel with the same convenience he visits any of his residences and offices. The frequency of his visits is undenied;

---

[5] Adelson admits, again, that even according to his disputed testimony and the disputed testimony of Roberts that the contract was not negotiated in Massachusetts but only "sealed" there (page 5).

for example, on the day the Opposition was filed, Adelson was in Israel on a two-week stay.

Adelson does not deny the long list of Israeli witnesses he has identified, affidavits by them, and the thousands of pages of Hebrew documents that he, IPI, and Hananel have submitted in Israel. Hananel 7th Aff., ¶¶ 4-7. These witnesses and documents will be relevant to the employment terms because they will show the course of Adelson's dealings with Hananel over the years, including his reliance on Hananel to find and develop business ideas for him, consistent with the agreement to reward him with a percentage. In Massachusetts, Hananel will be denied all his Israeli witnesses, including those that agreed to testify in Israel and gave affidavits there (but did not agree to testify in the U.S.), and those who <u>refused</u> to give affidavits but can be compelled under Israeli law to appear at trial in Israel but not in the U.S., and Hananel would face enormous translation costs which neither party will face in Israel. Moreover, problems arising from the inherent ambiguity of translations will not arise in Israel. (Adelson, of course, has already announced his intention to produce all his witnesses in the Israeli court, where, because of his boasted wealth, he will be able to pay travel costs, hotel accommodations, and compensation to any witnesses he chooses, and the majority on his list are employees, partners, or have business relationships with him so are likely to be available in Israel.)

Pages 6-8 (end of first paragraph) are verbatim from Adelson's April 29, 2005 Second Supplementary Brief (Dkt. # 44) except for five sentences at the end of the first full paragraph on page 6. (*See* Section III, *infra*, for citations to Hananel's conclusive rebuttal.) Adelson's new sentences, beginning "Even if . . ." depend on false premises. First, it is undisputed that the Israeli witnesses identified by Adelson and Hananel will address the employment contract issues of the Israeli cases, and any consideration of the merits of Count 1 of Adelson's Complaint would be unfair and incomplete without them, as Adelson has admitted in his Israeli pleadings. Second, while it was once true that "the 2001 case is not the Macau case" Adelson has known

that to be <u>false</u> since the consolidation in 2004, where Judge Fogel stated in her consolidation order:

> Even though the two claims, of which consolidation is discussed here, do not deal in completely identical facts, both arise from the <u>same set of employment relationships</u>, between the <u>same parties</u>, and in both the court will be asked to decide similar issues, namely, the <u>type of commitments that [Hananel] received</u>, as he alleges, from [Adelson and IPI] as to the <u>terms of his employment</u>.

(2d Hananel Aff. (Dkt # 21) Exh. 1 (emphasis added)); moreover, Adelson also knows, as the Israeli court stated (*id.*), that the danger of conflicting judgments as to the terms of the employment contract and option commitments exists and should be avoided.

Adelson also concedes (Opp. at 10) that neither Roberts nor Macau witnesses are necessary to determine the employment terms in Israel: "In Israel it will be Hananel's word against Adelson."[6] Finally, neither Adelson nor Roberts has ever told an Israeli court that the employment contract had any connection with Massachusetts or that Roberts had knowledge of its terms from a meeting in Massachusetts.

Roberts, like the other Americans, is completely Adelson's to command, and, indeed, has visited Adelson at his residence and office in Israel, and has actively participated in the Israeli litigations. The Opposition, refreshingly, admits that "those who work for his companies <u>can be predicted with certainty</u> to travel to Israel" (p. 10; emphasis added); this is refreshing because earlier Adelson sought to imply to this Court that such witnesses would find Israel inconvenient and/or dangerous.

---

[6] Adelson's Opposition goes on to say, "In this District Court, it will be Hananel's word against Adelson and those witnesses who can testify by deposition <u>concerning what actually happened in Macau.</u>" (Emphasis added.) Here, Adelson first agrees by implication that only he and Hananel are necessary to the employment agreement, rendering Roberts irrelevant; Adelson has also forgotten that "what happened in Macau" has no relevance to the establishment of the employment terms in 1995, their performance in Israel, or Hananel's communication of the opportunity to Adelson in 1999.

Thus Adelson's actions in Israel have steadily and for years belied any claim that he needs any witnesses to the employment terms that are not readily available to him in Israel. The Court can easily infer that his arguments to the contrary are lately conceived and baseless.

### C. Israel Is Favored By Other Tests Of Adequacy And Convenience.

By his long-term participation in the Israeli litigation, Adelson has irrevocably conceded the adequacy of the Israeli forum. Presumably seeking to avoid this concession, his Opposition fabricates a concept of "less adequate fora" (p. 8-11). No citation supports this concept and it should be rejected. Hananel will address Adelson's unwarranted and misleading descriptions of the Israeli litigation, asking the Court to note that nowhere does Adelson deny the essential characteristics making Israel an adequate and vastly more convenient forum: jurisdiction over the subject matter and the parties, and long-standing currently active litigation encompassing the precise issue of Count 1 of Adelson's Complaint.

Lawyer Klagsbald's affidavit (Opp. Exh. D) is inadmissible for failure to comply with 28 U.S.C. § 1746, which requires an affidavit executed outside the United States to agree to the application of its perjury laws. Even if it is considered, any opinion must be rejected for his failure to qualify as an expert. His bias as Adelson's long-time counsel in the Israeli actions must be taken into account.[7] Even if the Court considers Klagsbald's testimony, the Israeli court orders Klagsbald selected (from among many) show that the Israeli courts are proceeding expeditiously towards a resolution of all issues, the opposite of what Adelson hopes to show. Klagsbald Exh. B, p. 2, contains Judge Tenenbaum's April 2005 ruling (in the consolidated actions including the Macau claim) ordering an end to discovery in 60 days , following which he will decide when to file the "affidavits in lieu of testimony" (which, according to the Klagsbald

---

[7] Klagsbald at 2 n. 1 misquotes the Translator's note from Exh. B, p. 1. The translation of Exh. A, page 3, ¶ 1, adds the words "without prejudice" which do not appear in the original.

Aff. ¶ 4 are a key step towards trial[8]).

Precisely contrary to Adelson's statement in the Opposition at page 9, there is no stay of proceedings; Hananel's counsel (Klagsbald Exh. B, first paragraph) notes that Adelson has not sought to stay the proceedings.[9]  Indeed, the extensive discovery motion practice after Judge Tenenbaum's order, detailed in Hananel's 7th Aff. and not disputed by Adelson (or Klagsbald), is not "procedural" as the Opposition at 9 n. 8 would have it, but results from disputes that have merely delayed the conclusion of discovery ordered by Judge Tenenbaum.  Contrary to the implication in Klagsbald's ¶ 12, the last eight months have been busy with efforts to conclude the discovery and proceed to the next stage.  In summary, the Israeli cases are fully active now as they have been for years, and the conclusion desired by Adelson must be rejected.

Adelson's statement at page 8 that "one cannot even state with certainty whether Adelson will be a party to that [Israeli] trial [of the Macau claim] or will have been dismissed" is a transparent flouting of the interests of justice of both nations.  Adelson, of course, has not sought to get himself dismissed in Israel, no doubt because he knows he would lose.  (In his Opposition at 8 Adelson does not even suggest grounds; they certainly cannot be for convenience or lack of jurisdiction.)

Adelson's complaint that he can get depositions in this action and not in Israel is utterly spurious; it is the law that discovery differences do not affect the convenience calculus.  "The case law is clear that an alternative forum ordinarily is not considered 'inadequate' merely

---

[8] Klagsbald's ¶ 4 has left out the discovery which has been ongoing and which is nearly completed, presumably in an effort to conceal from this Court the vast amount of work that has been done in Israel by the parties and the courts.
[9] The assertion that Hananel has said the action was "effectively stayed" is not warranted by the context:  in his argument to the appellate court (Klagsbald Exh. C) seeking to expedite Adelson's appeal of an evidentiary decision, Hananel's counsel pointed out that Adelson's actions had caused the problem.  Hananel's counsel's statements that Adelson was using the appeal to delay progress were in the context of urging the lower court to proceed on other matters and in urging the appellate court to rule quickly; Adelson's counsel opposed proceeding on other matters (but did not have the grounds to formally request a stay), although he gave support for a quick appellate ruling.  Moreover, counsel made this argument on April 5, 2005, before Judge Tenenbaum ordered discovery to proceed and conclude in 60 days (Exh. B).  While Adelson may be exercising legitimate options in the

because its courts afford different or less generous discovery procedures than are available under American law." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352-1353 (1st Cir. 1992), *cert. den.*, 502 U.S. 1095. Adelson's argument also fails to take into account that both Israel and the United States are signatories to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, and can approach Chinese authorities on the same international legal footing.

As to Adelson's statement that a deposition of Hananel and Adelson have been taken, the *Mercier III* court rejected a similar circumstance as weight against dismissal, noting that the number of relevant witnesses in the foreign forum weighed for dismissal. 981 F.3d 1345, 1357 (1st Cir. 1992). Furthermore, the Court ordered these depositions solely for jurisdictional discovery, and neither party has waived the right to question witnesses on the merits.[10]

*Boudreau* (Opposition at 10) supports Hananel's arguments. In that case, the plaintiff commenced the <u>only</u> action in Massachusetts, where his employment by the Israeli corporation defendant had occurred. Judge Young in fact held that Israel was <u>an equally convenient forum</u> to Massachusetts, allowing the first-filed plaintiff's choice to tip the balance. 1992 U.S. Dist. LEXIS 9629, *13, *15. He also recognized the burden of expensive translations. *Id.* *15.

Adelson's reliance on *Terris* (also cited at 10) to argue a ban on the taking of foreign testimony is frivolous. Section 13 of the Evidence Ordinance (New Version 1971) of Israel provides:

> 13.    (a) Pursuant to a request of a party in a civil case, the Court may, if seems necessary for justice, and in accordance with conditions imposed by the Court, make an order that a witness or any other person shall be interrogated, by making an affidavit, by a designated person at a designated place outside the jurisdiction of the Court, and the Court may give an instruction in respect to any matter

---

Israeli proceeding, it is completely unfair to allow him to obtain an advantage in this Court from his tactics.
[10]     Adelson's motion for summary judgment, the subject of Hananel's motion to postpone, is likewise frivolous and harassing. It is yet another example of Adelson's contradicting himself for the purpose of confusing and delaying his dismissal: while he requests many depositions and argues many witnesses, he is also telling the Court (erroneously) that no issues of fact exist.

> relating to such interrogation, as seems just and fair, and it may allow any party to submit the testimony transcript as evidence in such a case.
>
> (b) A person who was so instructed to carry out an interrogation, shall be entitled to swear [others] and to prepare a special report for the Court in respect to the interrogation and in respect to the behavior of any witness or other person therein or in respect to his absence therefrom, and the Court may instruct on
> any proceeding and give any warrant as it shall deem just.

Moreover, far from being a "major" factor personal attendance in Israel was noted as one of many cost factors. 1997 U.S. Dist. LEXIS 2666, *13-*18. As in *Boudreau*, the court expressly found that Israel was an adequate forum, and allowed the plaintiff's preference to tip an otherwise close balance. *Id.* *19. Adelson's citations are, and have been throughout his briefing in this case, part of a pattern and practice of misleading the Court and causing Hananel to spend time and pages in rebuttal.

Adelson's rehash of the language question (p. 11) (argument repeated from Plaintiff's Response, Aug. 19, 2004 at 8-9) is another example. Neither of his quoted statutes bar the courts from allowing submissions in English without the necessity of translation. The Court, however, need go no further than Adelson's affidavits in English in the Israeli proceedings (and those of Roberts, and of O'Connor, Chafetz, Marder and Cutler) to rule Adelson's contention frivolous. (It would be interesting to imagine Adelson's Israeli counsel informing the Israeli court that Adelson's United States counsel is arguing that English cannot be used there.)

## II.   ADELSON'S ATTACK ON HANANEL'S DISABILITIES FAILS.

Adelson's Opposition seeks to hold up to ridicule Hananel's legal blindness and physical disabilities resulting from his diabetes. Adelson, of course, has been personally aware of Hananel's diabetes since the 1995 visit to the Joslin Clinic. He has not denied the evidence in the present record that Hananel is legally blind and diabetic. In his Opposition, Adelson can only resort to an inadmissible affidavit and improperly selective and cropped photographs to mock

these disabilities.[11]

Hananel asks the Court, even if the affidavit and photos are considered, to review all of the short video excerpts. Even these truncated selections demonstrate that Hananel's wife drove him and accompanied him on these two days,[12] where he walked for a short distance on a walking street, not a main street, and that he was looking at titles and tables of contents of a few books, not reading them. 8th Hananel Aff. ¶ 4. Hananel also provides the Court with his current blindness determination and updated notes from three of his physicians concerning his 100% disability, retinopathy, impaired vision, eye operations, danger of dramatic downturns in his health, concern for the dangers to his retinas of air travel, and his physical limitations arising from his serious diabetic foot condition. 8th Hananel Aff. ¶ 3 and Exh. 1. Adelson's attack, despite his knowledge of the seriousness of Hananel's disabilities, is shown to be yet another form of harassment, which the Court should vigorously condemn.

### III.   ADELSON'S OPPOSITION PAGES 12-23, WITH MINOR EXCEPTIONS, ARE VERBATIM REPETITIONS OF HIS APRIL 29, 2005 FILING AND HAVE BEEN PREVIOUSLY DISCREDITED.

Without disclosing his repetition, Adelson has pasted into pages 12-23 of his opposition a copy of pages 4-17 of his April 29, 2005 Second Supplementary Brief (Dkt. # 44), not eschewing the inflammatory vituperation in headlines and text. Hananel therefore respectfully directs the Court to his response, Reply Memorandum (Dkt. # 55) and 4th Hananel Aff. (Dkt. # 56), and his Memorandum in Support of Renewed Motion to Dismiss (Dkt. # 46), especially the exhibits thereto.[13] It is especially important that the Court consider Hananel's responses at this time,

---

[11]   Hananel has, from caution, filed a motion to strike the affidavit.
[12]   On Dec. 19th she wore black pants and a violet sweater, and on Dec. 25th, as shown in the stills, a green coat.
[13]   In his present brief, Adelson has (a) inserted into the old material at page 21 a paragraph beginning "There is no . . ." which is itself repeated from pages 6-7 of his present brief; and (b) omitted a significant admission he made earlier, discussed in the text.

because Hananel exposed the flagrant misdating, misquotation, and concealment of contradictory evidence that Adelson relied on then and repeats now to make his scurrilous accusations; notably, instead of using his valuable page limits to address Hananel's documented rebuttal, Adelson merely repeats his errors, effectively admitting that Hananel's rebuttal was conclusive.

Adelson's only omission from the pasted material was a significant admission he made on April 29, 2005:

> If he [Hananel] could persuade the Court that Adelson had made him manager of another of his companies before Dec. 5, 1995 that might appear to give some support for his claim that his employment with IPI commenced before the December 5 meeting.

Adelson presumably omitted this statement this time around because it correctly acknowledges the effect of documents produced by both Adelson and Hananel showing Adelson's introduction of Hananel at a November 7, 1995 board meeting (in Israel) of Auto Depot as Farbstein's replacement as branch manager of Interface (Mem. Renewed Mot. (Dkt. # 46) Exh. 9, ¶ 7-8), Hananel's sitting at a November 14, 1995 board meeting of Auto Depot as director and as chairman because of Adelson's absence (*id.* Exh. 13, p. 1), Hananel's authorizing of the expenditure of hundreds of thousands of shekels of Interface funds for Auto Depot's benefit (*id.* p. 2), and Adelson's written directions to give Hananel control of bank accounts (*id.* Exh. 11), all before Dec. 5, 1995. The uncontradicted documentation presented in the Hananel Responses listed above shows substantial additional detail confirming the importance of Israel's interest in this dispute and the importance of Israeli witnesses concerning the employment.

## CONCLUSION

For all of the above reasons, the Court should dismiss this action on the grounds of forum non conveniens.[14]

Dated: January 11, 2006

MOSHE HANANEL
By His Attorneys,

/s/ James A.G. Hamilton
James A. G. Hamilton (MA Bar # 218760)
PERKINS, SMITH & COHEN, LLP
One Beacon Street
Boston, MA  02108
617.854.4000

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 11, 2006.

/s/ James A.G. Hamilton

---

[14] Adelson's Opposition's title contains a reference to a motion for sanctions.  The Court's docket does not disclose the filing of such a motion and none has been served on Hananel.  Hananel requests the Court to strike all references to sanctions and to condemn this kind of harassment as well.

- 14 -