UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS
DOCKET NO.:  04CV-10357RCL

SHELDON G. ADELSON,
          Plaintiff,

v.

MOSHE HANANEL,
          Defendant.

## PLAINTIFF, SHELDON G. ADELSON'S, REBUTTAL BRIEF

### Facts, Setting The Record Straight

**1. The Mendacious Claim That Hananel Is Too Ill and Disabled To Participate In A Trial In The United States**

The Defendant, Moshe Hananel ("Hananel"), despite the photographic evidence that conclusively proves that, while he may have diabetic-related problems with both his vision and his extremities, he is not so disabled that he cannot testify in the United States without grave consequences. While he rails against the "inadmissible vituperation," he conveniently ignores the fact that it was he who put his medical and physical condition into issue. He would like the Court to forget that his efforts in this respect were not without some success in inducing the Court to allow him to be deposed in Israel. His assertion of the grave inconvenience of having the case tried in Massachusetts, while unsuccessful in defeating personal jurisdiction, was not without its sympathetic effect on this Court. With shameless audacity, he now asserts that the photographic evidence of his ability to walk, his ability to read and handle telephone calls on his cell phone are all "improperly selective and cropped photographs to mock these disabilities."

Hananel writes that "even these truncated selections demonstrate that Hananel's wife drove him and accompanied him on these two days." He asks the Court to look at the handwritten notes (unsworn and inadmissible) from three of his physicians concerning his hundred (100%) percent blindness determination. These notes are entitled to no weight. They do not indicate that the physicians saw the videos or even considered a second hand report of their contents. In short, Hananel asks the Court to disbelieve its eyes and accept notes from physicians that not only do not meet the standards of 28 U.S.C. §1746 but do not meet the standards for a verified statement under Israeli practice. As for Hananel's other excuses – his wife having to guide him and that he is walking only on a walking street and not a regular street – they are proven to be false by the attached DVDs made from video movies taken on other days, one of which shows him walking on an ordinary street at night, unaided by anyone[1] (attached as Exhibit 1).

### 2. The Misleading Assertion That An Israeli Lawsuit With Identical Claims Has Been Rapidly Moving To Resolution In Israel

One of Hananel's major arguments is based on his assertion that the case here is identical in every significant respect to the cases in Israel, which he claims long antedated this case. The litigation in Israel is different in important respects from the case at bar. The case that Hananel brought in Israel in 2001 was brought against Interface Partners International Limited and Sheldon Adelson.[2] The claims alleged in the 2001 action were to recover for allegedly unpaid

---

[1] In fact these new videos show Mr. Hananel strolling unaided down a major street, paying at a car park and counting his change, eating at restaurants, and conversing with friends. Mr. Hananel spoke a little too fast and too loose when he branded the previous submissions as isolated instances in an otherwise totally disabled life. All of this raises the old question Mr. Hananel seems to ask, "are you going to believe me or your lying eyes." Hananel has been caught red-handed attempting a fraud on the court.

[2] The Complaint has been filed as an exhibit in the earliest briefs of the parties concerning personal jurisdiction.

severance pay (Hananel Complaint §§5.1 through 5.5.6), for reimbursement, for "unjustified set-offs" (2001 Complaint §6), damages for harm to the Plaintiff's business and goodwill (2001 Complaint §7), the failure or refusal to allow Hananel to exercise options in two Israeli companies (2001 Complaint §8), and "debt in respect of a bonus that the Plaintiff was promised" (2001 Complaint §9). Hananel alleged that each of these claims were due from IPI. With respect to the options claim in that case, Hananel alleged "in the scope of the employer-employee relationship between the Plaintiff and the Defendants, the first Defendant (IPI)granted the Plaintiff through Adelson options of unlimited duration for shares in two companies. . . " (2001 Complain §8.1). The basis for the claim that he was entitled to the options was found in §8.3, in which Hananel alleges "The undertaking for the options was also given to the Plaintiff's predecessor and the first Defendant (IPI), Mr. Farbstein. <u>This indicates the existence of a practice to give options to the first Defendant's general manager.</u>" (emphasis supplied).

There are at least three important differences between the case at bar and the 2001 Israeli lawsuit. First, the allegations of the 2001 Complaint are that these debts were due from the corporation, not from Adelson. Adelson is apparently a Defendant (over his objection on jurisdictional grounds) because he controlled IPI, by virtue of his hundred (100%) percent ownership of the shares. In the case at bar, Adelson seeks a declaration of personal non-liability, IPI is not a party.

Second, the basis of the claim in the Israeli litigation for the options was that they were given, because it was the practice to give options to the local general manager of IPI. This is far different from the claim that Hananel makes in this case and in the case he brought in Israel in December of 2003, claiming that he was due a twelve (12%) percent cut of an investment that Adelson made in the Macau Casino Development.   In the case at bar, Hananel claims that he is

3

entitled to 12% of Adelson's interest in the Macau casino because of a special agreement between them. As he alleged in the 200 Israeli complaint, "Under the circumstances, the said cause of action is entirely unrelated to the termination of the employment relationship and to the rights stemming from the termination thereof." (2003 Complaint §5.5.3). The 2001 Complaint, as we have seen, relates solely to the claims that arose from the termination of Hananel's employment by IPI..

Third, the Israeli 2001 action is directed primarily at Hananel's former corporate employer, IPI. IPI is not a party in this case.

Hananel has also falsely claimed that the Israeli action has been moving to resolution expeditiously. That is not true. There is no related case in Israel between these litigants that is even close to conclusion. The Israeli IPI v. Hananel case, in which, a hearing on interlocutory matters was scheduled for January, has now been postponed to July. The Court order contains language suggesting the possibility of future postponements. (Exh. 2)

Throughout the litigation here, Hananel's attorneys have sought to confuse the two Israel claims and obliterate the distinctions between them, as well as obliterating the distinction between the two Israeli claims and the issues in this case. Distinctions are important, because Hananel continues to insist in the face of the facts of his allegations in Israel that the cases in the two countries are identical. They are not.

### 3. Hananel's Unsupported Assertion Of A Host of Witnesses and a Cornucopia of Documents In Israel

A word or two is necessary to point out to the Court the disingenuous and sly attempts to put admissions, which were never made, into the case. For example, on page 5 of his reply brief Hananel's attorney writes, "Adelson correctly points out (4-5; new material) that the oral agreement was made between Hananel and Adelson in Israel (emphasis applied) in October of

4

1995 with no witnesses to the conversation. "Of course, the Adelson Brief says no such thing. It says "Adelson contends that the contract was sealed with a handshake after Hananel had final negotiations with IPI's counsel, Paul Roberts in Massachusetts."

Hananel continues to assert that there are thousands of documents and dozens of witnesses all in Israel. The witnesses designated by both parties in Israel, so far as anything that Hananel has shown either in Israel or in this litigation (which is nothing), deal with the issues raised by the first 2001 Complaint and not by the issues and claims raised in the 2003 Complaint (later consolidated with the 2001 Complaint).

On page 7 of his brief, Hananel mischaracterizes statements that Adelson's attorneys made in their brief. See Hananel Reply Brief page 7. Hananel's counsel wrote, "Adelson also concedes (Opp. at 10) that neither Roberts nor Macau witnesses are necessary to determine the employment terms in Israel. In Israel it will be Hananel's word against Adelson. The context of the statement that Hananel's lawyer quotes shows that there was no concession of any kind. The full quote is "likewise in this case, the ease of obtaining and using foreign based evidence in the United States Federal Courts weighs heavily against dismissal. Furthermore, Adelson's inability in the Israeli litigation to compel testimony by deposition in Macau and Hong Kong will deprive him of full and adequate defenses if the case were tried in Israel. In Israel it will be Hananel's word against Adelson." In this District Court, it will be Hananel's word against Adelson and those witnesses who can testify by deposition concerning what actually happened in Macau." Mr. Hamilton writes, "The opposition, refreshingly, admits that 'those who work for his companies can be predicted with certainty to travel to Israel'; this is refreshing because earlier Adelson sought to imply to this court that such witnesses would find Israel inconvenient and/or

dangerous." The quotation is grossly out of context and its lack of context completely changes its meaning. The full quote and its immediate context shows a very different meaning.

> "These rules make Israel a most difficult forum for Adelson, who has witnesses from the United States, (only those who work for his companies can be predicted with certainty to travel to Israel) and most important witnesses from Macau and Hong Kong who would most likely not wish to come to either country to testify or who might not even receive permission from the government of Macau or Hong Kong to testify abroad." Plaintiff's Opposition to Motion to Dismiss pages 9-10.

## ARGUMENT

1. **Adelson's choice of the District of Massachusetts as the forum is entitled to great weight, contrary to Hananel's misstatement to the contrary, which is based a misreading of two important cases.**

Hananel claims that Adelson has "fully and enthusiastically engaged since 2001 in litigation to determine the terms of the employment contract and Hananel's rights to shares and investment he found. . . " This clearly is not true. Adelson has resisted the assertion of personal jurisdiction in Israel. The claim, as we have seen, in the 2001 suit that Hananel brought relating to options is that general managers got options and that he allegedly was granted options and now wants to exercise them. It was only in the latter half of December, 2003 that Hananel sued Adelson, claiming that he had a deal that, if he initiated a venture, he would get an option to purchase12% of IPI or Adelson's stock in any entity that Adelson owned or controlled and that he had suggested to Adelson (and provided him with useful information ) that IPI invests in tourism in Macau, presumably a casino. That claim was asserted only in December two months before Adelson brought this claim for declaratory relief, not for IPI, but for himself.

The cases that Hananel cites to support his position that Adelson's choice of forum is entitled to no weight are entirely distinguishable. In *Linkco., Inc. v. Nichimen Corp. and Kanda*, 164 F. Supp. 2d 203 (D. Mass. 2001), a Japanese firm sued the plaintiff in the Japanese court and obtained a judgment. Linkco then appealed, brought suit in the northern district of Illinois for

fraud, voluntarily dismissed that case, and brought suit in the federal court in Massachusetts for fraud and unfair and deceptive business practices against Nichimen and one of its employees, Kanda. The fact that the Japanese litigation had progressed through judgment was the major factor on which Judge Saris relied in entering an anti-suit injunction against Linkco. It is important to note that she denied the motion by Kanda for an injunction, because he was not a party to the Japanese action, even though his actions formed the basis of part of Linkco's claim against Nichimen for unfair business practices and breach of contract.

The fact that the Japanese case had gone to judgment was important in several respects. Judge Saris concluded that the comparative trial costs of the two different forums was a factor she no longer would consider, because the trial cost had largely been incurred in the trial of the Japanese case. She also felt that an action in the Federal Court in Massachusetts might well be fruitless, because of the possible *res judicata* effect of the Japanese decision. Likewise, the question of judicial economy was of no importance, because the Japanese courts already had a trial, and it rendered a judgment. The issues of comity weighed heavily in favor of granting the injunction, because the Japanese court had rendered judgment, and for a court of the United States to disregard that in its entirety, would be inconsistent respect of comity. It would, therefore, be inappropriate for the court in Massachusetts to allow the case to go forward.

In this case, the claim against Adelson doesn't arise out of any business that he conducted in Israel, except (if one credits all of Hananel's testimony) in the most tangential way. Hananel claims that he planted the idea in a private conversation in Israel and gave Adelson some material (which, on its face, relates to Zhuai, which has nothing to do with Macau), and Hananel further claims that he had an international telephone conversation with Adelson, where he urged

7

Adelson to go visit Macau. This is quite different from the sustained business relationship out of which the dispute in *Linkco* arose.

The most significant difference, of course, is that in the present case, the claim involving the Macau matter in Israel is barely two months older than the claim here, and it has not gotten off the ground. Thus, in this case, there is no significant offense to international comity for this court to allow this litigation to go forward. Clearly there are no *res judicata* concerns. In contrast to the situation in *Linkco,* the issue of convenience and ability to get witnesses, in this case, is very significant, whereas in *Linkco*, Judge Saris considered that issue of little weight, because of the Japanese judgment. Of great significance in considering the applicability of *Linkco* to the case at bar, is that the case against the defendant Kanda did go forward, even though he was intimately related to the case in Japan, because there was no judgment rendered against or for him in the Japanese courts.

The case that Judge Saris cited to support her decision, *MLC v. Credit Suisse*, 46 F. Supp. 2d 249 (S.D.N.Y. 1999) also is distinguishable from the case at bar. In *MLC*, the defendant sued the plaintiff for breach of contract in London, pursuant to a choice of forum clause in their contract. *MLC* raised the defense of fraud carried out on behalf of the London plaintiff as a defense. Its claim was that subsidiaries of Credit Suisse, whom it sued in New York, had acted under the control of Credit Suisse, and thus, created vicarious liability for fraud. The court entered an anti-suit injunction, because it found that the London decision case would proceed, whether or not the suit against the subsidiaries proceeded, and there was truly a risk of inconsistent verdicts after double trials. A trial in that case would not necessarily have preclusive effect on the other case. The result would be extremely unsatisfactory and might well result in the British court refusing to enforce a judgment on behalf of MLC. The case here is

8

very different. A decision by this Court on the Macau claim would end the litigation in Israel on that claim.. What is significant, however, in Judge Saris' case is that she recognized that ordinarily two identical lawsuits in different fora should be allowed to proceed independently.

Hananel's assertion that *Quaak v. Klynfeld Pete Mowick Goerdeler Bebrijfsrevisoren*, 361 F.3d. 11 (1st Cir. 2004) which Adelson cited to this Court "roundly condemn the type of parallel lawsuit that Adelson has filed here." According to Hananel's brief, the Court of Appeals upheld Judge Saris' international anti-suit injunction "precisely because it prevented the kind of harm Adelson is seeking to inflict on Hananel here" – is wrong. Hananel's description of the case hardly does it justice.

*Quaak* involves and anti-suit injunction against the defendant, whom the plaintiff had sued for auditing fraud in an *Enron*-like case. It resisted discovery, and after the court ordered it to turn over documents that the demanded, sought the intervention of a Belgian court requesting that substantial penalties "be imposed on those who might take any step of a procedural or other nature in order to proceed with the discovery procedures." It asked for a fine of one million euros per infraction. The basis of the injunction was that the strong U.S. policy to enforce the anti-fraud provisions of its security laws would have been frustrated if the case in Belgium proceeded. The Court of Appeals also stated "This attempt to chill legitimate discovery by in terrorem tactics can scarcely be viewed as anything but an effort to quash the practical power of the U.S. Courts." It also cited the strong policy in open discovery in the United States courts.

There is no parallel at all between the defendant's action in *Quaak* and Adelson having brought this suit in Massachusetts. In no way does this suit prevent Hananel from trying to move the courts in Israel to speed up litigation there. Contrary to trying to suppress discovery and the development of facts, the suit in the United States does just the opposite. It makes discovery of

facts and the availability of witnesses easier for both, so that justice can be done with the full consideration of available evidence. Any witness that either party believes has relevant evidence can be deposed easily from the procedural mechanism of the United States courts. That is the main reason that Hananel finds a trial in the U.S. discomforting.

2. **The balance of convenience of witnesses strongly favors U.S. District Court for the District of Massachusetts.**

The short answer to the Hananel contention of dozens of witnesses and thousands of documents is that he has not designated a single witness whom he would wish to have testify in this case on the Macau dispute. He has not yet identified any documents that he would care to introduce that would bear on the Macau dispute. Even were the issue stated, as Hananel wishes, "the subject matters and terms of Hananel's Employment Agreement, particularly his entitlement to share investments he found" he shows that the witnesses needed in this case are not likely to be Israeli. It is clear that there are apparently two versions of how, when and what the contract of employment was. One version, that is the Plaintiff's version, requires testimony for Massachusetts witnesses. But aside from the question of what was the agreement, even Hananel agrees that he is entitled to share only investments that he found. In this case, the determination of what investments he found means it involves establishing that, in some way, Hananel was a proximate cause of the investment, and this requires a comparison of what he claims he told Adelson and what information he gave with the realities of how the sublicense came about. This requires the testimony of witnesses from Macau, who are or were members of the Macau administration charged with granting the licenses. These witnesses are unlikely to travel to either the United States or to Israel to give testimony, but their testimony can be easily obtained, through the procedures of this court and not in an Israeli Court. The procedures here are much less complex than the procedures in Israel. Hananel's statement that "by limiting their (the

Macau witnesses) to the subsequent event (the granting of the sub-concession) Adelson thus admits that his witnesses are irrelevant to the present calculus of convenience under his Count I" is just silly.

Hananel's argument that in Massachusetts he will be "denied all his Israeli witnesses, including those that agreed to testified in Israel and gave affidavits there and those who refused to give affidavits but can be compelled under Israeli law to appear to a trial in Israel but not in the U.S. is simply wrong." Both the United States and Israel are signatories to the Hague Convention for obtaining evidence in foreign countries, and those witnesses in Israel can be deposed, even videotaped, and their depositions presented in this court. The presentation of videotaped deposition testimony will make it easier for the court to make decisions concerning credibility and make it easier for both parties to develop points that perhaps remained undeveloped in the course of affidavits and cross examination of those affidavits. Despite Hananel's contention otherwise, Adelson has no right in Israel to give testimony, either his own or that of witnesses, solely in English. In fact, of the three affidavits that Hananel claims Adelson gave in Israel, two were the same, the first one was translated to Hebrew at the order of the Court.

One other point concerning affidavits needs to be made. While it is true as both parties have indicated in their briefs that the different or less generous discovery procedures in a foreign court by themselves do not make, by themselves, that court an unsuitable forum. However, there is nothing in the case of *Mercier v. Sheridan International Inc.*, 981 F.2d 1345 (1st Cir. 1992) *cert. den.* 502 U.S. 1095 that suggests that the difference in discovery procedures is not a relevant factor to be considered. But of greater importance than discovery is the fact that Adelson's concerns raised here are not about discovery depositions but about difficulties in the

11

presentation of testimony of witnesses, who are likely to be unavailable in the best way possible, short of voluntary attendance of witnesses. The court in *Mercier* recognized that the ability to obtain witnesses was a very important factor in determining what an adequate forum is.

## CONCLUSION

Hananel has made his health an important issue in connection with the Motion to Dismiss for Lack of Personal Jurisdiction and for Forum not Conveniens. It is now revealed that he has lied to the court about his disabilities and, in fact, has carried on a bit of a charade, appearing at his videotape deposition with a cane and black glasses, neither of which are in evidence on a regular basis when walking about during the day or after dark. Hananel has sought to blunt the force of the photographic evidence of his fraudulent conduct and perjurious assertions of 100% disability by asserting that the photographs are "cropped" and "improperly selective." What was cropped out of the photographs? The photographs are not false, and what is most important, Hananel is not cropped out of them. The photographs show what they show. Hananel doesn't deny that they are photographs of him. He claims only that he was "looking" at the table of contents. One is reminded of the excuse or explanation for having smoked marijuana, "I didn't inhale". The videos submitted with this memo are further evidence which undeniably points to Hananel's ability to participate in a trial in the United States (this Court has already commented on Hananel's many foreign trips). If he can travel abroad to pursue his case in Macau as well as fly off for cultural pursuits, he can certainly come to Boston. In any event, the Plaintiff intends to file a motion under Rule 35 of the Federal Rules of Civil Procedure for a medical examination to settle the issue of his disability. We intend that motion to be supported by an ophthalmologist seriously calling into question the truthfulness of Hananel's claims and even the accuracy of the

BOS\143651.1

doctor's notes.  If the court has any doubts about the inaccuracy of Hananel's claims, we intend to ask it to grant a motion for a physical examination.

The factors, both public and private, for determining whether or not a case should be dismissed for Forum Non-Conveniens, weight heavily against dismissal.  The alleged thousands of documents, as yet unidentified and unseen in this case and alleged dozens of witnesses in Israel clearly do not relate to the Macau claim.  The contract of employment is oral.  Hananel has listed no witnesses or the subject matter of their testimony for the case at bar.  He has designated and produced no documents that he intends to use as either offensively or defensively, and in his deposition he has refused to give the names of alleged witnesses.  The Court should conclude that his arguments concerning the convenience of witnesses in Israel is pure sham.  In any event, to the extent there are witnesses in Israel who can give relevant evidence, their testimony can be taken by videotaped deposition.  There will be little increase in expense over what it would cost to obtain affidavits and spend the time cross-examining from those affidavits, as is the practice in Israel.

The Israeli litigation, as it relates to the Macau claim, has not gotten off the ground, and allowing this case to go forward would do no violence to the interest of comity.  The motion should be denied.

        The Plaintiff,
        SHELDON G. ADELSON,
        By his attorneys,

/s/Albert P. Zabin
Franklin H. Levy, B.B.O. No.: 297720
Albert P. Zabin, B.B.O. No.: 538380
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

Dated: January 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 25, 2006.

/s/Albert P. Zabin
Albert P. Zabin

14

BOS\143651.1