IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | **04-cv-10357-RCL** |
| ) | |
| MOSHE HANANEL, ) | |
| ) | |
| Defendant. ) | |

**MOTION OF HANANEL TO STRIKE AFFIDAVITS OF NITZAN AND SABAG FILED JANUARY 25 AND 26, 2005**

The Defendant, Moshe Hananel ("Hananel"), moves to strike the Affidavits of Avi Nitzan and Yehiel Sabag filed on January 25, 2006 (DVD exhibits filed and served January 26) as they do not meet the requirements of the Federal Rules of Evidence and on other grounds. As grounds, Hananel states:

1. The Nitzan and Sabag Affidavits are, on their face, based on manipulated, uncorroborated, incomplete video evidence subject to cropping, editing, and image manipulation, and the affiant does not deny such activity. The DVD attachments do not meet the requirements of F. R. Evid. 1001-1003.

2. The affidavits are untimely. These affidavits purport to describe dates in December, 2005, showing that they have been available to Adelson since before he filed his Dec. 30, 2005 Opposition. Adelson first filed the Nitzan and Sabag affidavits on January 24, 2006 with a paper falsely claiming that they were mere substitutes for affidavits and videos previously filed, and without the DVD exhibits. On January 25 they were filed with a rebuttal memorandum, but the DVDs were not served until the following day, knowing that the huge computer files could not be transmitted electronically to Israel and that reasonable mailing costs

were not available to permit Mr. Hananel to review the DVDs in advance of the hearing scheduled for January 27, 2006. Adelson's rebuttal brief was in response to Hananel's reply served on January 11, 2006, more than 14 days before the DVDs were served.

    3.    If the Court were to view the videos, it should also accept the 9th Affidavit of Hananel and the Affidavit of Dan Tichon attached hereto as Exhs. 1 and 2 respectively, which describe Mr. Hananel's activities on the days mentioned in the affidavits. The DVDs themselves show Mr. Hananel's wife accompanying him[1] and guiding him across streets and on sidewalks, and show Mr. Tichon doing the same. On occasion the video view is narrowed to exclude Mr. Hananel's companion. The videos, indeed, show that the reason Adelson did not include them on Dec. 30 is that they tend to show even more strongly the opposite of Adelson's assertions, and demonstrate even clumsier attempts to manipulate the context than the Leibovitz affidavit/video. (Perhaps they needed more time to edit, also.) One of them, for example, does not even make the pretense of accuracy that a time stamp provides.

WHEREFORE, for the foregoing reasons, the Court should strike the Affidavits of Avi Nitzan and Yehiel Sabag filed on January 24, 25 and 26, 2006.

Dated: January 27, 2006

    Respectfully submitted,
    MOSHE HANANEL
    By His Attorneys,


    /s/ James A. G. Hamilton
    James A. G. Hamilton (MA Bar # 218760)
    PERKINS, SMITH & COHEN, LLP
    One Beacon Street
    Boston, MA  02108
    617.854.4000

**Certificate of Service**
I hereby certify that this document filed through the ECF system will be sent

---

[1] The assertion that Mr. Hananel was unassisted is surprising, as one of Mr. Adelson's counsel had visited the Hananels' home and had met Mrs. Hananel, who clearly appears in several of the videos.

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 27, 2006.

/s/ James A.G. Hamilton

-31216-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | **04-cv-10357-RCL** |
| ) | |
| MOSHE HANANEL, ) | |
| ) | |
| Defendant. ) | |

### NINTH AFFIDAVIT OF MOSHE HANANEL IN SUPPORT OF RENEWED MOTION TO DISMISS FOR FORUM NON CONVENIENS

I, Moshe Hananel, depose and say:

1. I am the Defendant in the above action. I state the following facts of my own personal knowledge, except where stated to be on information and belief, and, as to such facts, I believe them to be true.

2. On, January 25, 2006, there was brought to my attention: "Plaintiff's motion to grant leave to file substitute affidavits", which mentioned four affidavits claimed to have been previously served and filed already in this court. Two of them had never been served on me or my counsel, and I read them on January 25 for the first time, i.e., those of Mr. Avi Nitzan and Mr. Yehiel Sabag. On January 26 I learned that these affidavits had been filed again, this time admitting that they were new affidavits. I am informed by my counsel that he did not receive the DVDs that were claimed to be part of the affidavits until the morning of January 26. My wife and myself (through my wife) have not yet had an opportunity to see those DVDs. I have had the videos described to me briefly over the telephone.

3. On December 11, 2005 I was all day with Mr. Dan Tichon. His affidavit is being filed with this one. He volunteered to be with me all day, to take me in his car from my home

and to bring me back. Mr. Tichon was with me all the time and assisted me, including during the meeting with the lawyer Moshe Lipka, Esq. in the coffee house.

4.   Mr. Tichon assisted me on the short walk to the parking lot. Together we came to the pay booth. Mr. Tichon gave me a single bill to pay with and went to get the car. I gave the cashier the one bill Mr. Tichon gave to me and got change. Since I was waiting and could not stand, I then moved towards the noise and lights of Mr. Tichon's car in order to take my seat.

5.   The affidavit off Mr. Yehiel Sabag concerning my activities on Dec. 11 is misleading and far from the truth.

6.   On December 21, 2005 I was with my wife all day. She drove me with her car to the office of my lawyer Mr. Peretz to discuss the Adelson case. I understand that the video shows me waiting for her by a white pillar in front of his office, and then entering into the car when she came from the parking place. We then continued to the "Vitosha" Restaurant, with which I am very familiar with as I have eaten there with my father and my wife many times. We met there with a lady who had repeatedly requested a meeting, for reasons which turned out to be false. My wife joined us and was with me all the time and participated in the meeting. I am informed that the video shows the hand of another person at the restaurant table. I am informed that the video shows my wife and me together at all times while we are walking on the sidewalk or crossing a street.

7.   We then drove to Tel Aviv to listen to a lecture by the Nobel Prize professor Uman. As we arrived early, we sat together at a coffee shop and both of us used the toilet. We crossed the street together and went to the lecture. My wife assisted me and was with me the whole time until we returned home.

8.   On December 27, 2005 my wife was with me the whole day, helped me and assisted me the whole time. I am informed that the video does not show the date of Dec. 27.

9. The affidavit off Mr. Nitzan is false, misleading and far from the truth.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to my personal knowledge, this 27th day of January 2006.

Moshe Hananel

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 27, 2006.

/s/ James A.G. Hamilton

- 3 -



## AFFIDAVIT OF MR DAN TICHON

1. My name is Dan Tichon. I am director in several public companies and I was the Speaker of the Israeli parliament and Knesset member for 19 years

2. At December 11, 2005, I accompany Mr. Moshe Hananel from his house to Tel Aviv in my car

3. I know Mr. Hananel for the last twenty years and I am aware about his disabilities since I and my wife accompany him during his eye operations, his long stay in hospitals, and his fight trying to recover.

4. During the above day I volunteered, since his wife could not be with him that day, to take him from his house and to be with him all day, all the time until I brought him back to his home, due to his condition.

5. Mr Hananel can not manage alone even though he is trying very much to do so. This is why I took the whole day off to be with him and to assist him.

6. I saw the affidavit off Mr. Yehiel Sabag and I find it misleading and far from the truth.

7. I was with Mr. Hananel also during his conversation at the Coffee house. From the Coffee house I took Mr. Hananel to the parking boot and asked him to hang over the money I gave him before and to wait for me there, so that I can bring the car near him. When I had difficulties in getting out from the parking place with the car, I saw and watched Hananel follows towards the lights and the engine noise of the car until he reached and join me in the car. My car was the only one with lights and engine on in the parking.

7. I would like to add, that I find the way of dealing in Mr. Hananel disabilities and his "Legal Blindness" offensive and against any basic human rights. As a sport fun person, I am aware that Boston is proud that in its Marathon there are groups of blinds participating in it, but they need assistance even when you don't see it in TV.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: 25 January, 2006.

Signature: _____
Dan Tichon