| | |
|---|---|
| At the District Labor Court<br>in Tel Aviv Jaffa | Labor Case 6245/01<br>Motion 4718/03 |

Re:     **Moshe Hananel**
        Represented by Haim Zadok & Co.
        of 20 Lincoln St., Tel Aviv 67134
        Tel. 03-6254000; Fax 03-6254040

                                                    **The Plaintiff**

**Versus**

1.   **Interface Partners International Limited**
2.   **Sheldon G. Adelson**
     Represented by Danziger, Klagsbald, Rosen & Co.
     of 28 Bezalel St., Ramat Gan 52521
     Tel. 03-6110700; Fax 03-6110707

                                                    **The Defendants**

# Notice to the Court

In accordance with the Honorable Court's decision of September 22, 2003 in Motion 4718/03, the Plaintiff respectfully files rebutting evidence to the affidavit of CPA Zamir for the Defendants.

            (-)                    (-)
    _____    _____
    Eyal Rosovsky, Adv.    Ravit Lahmany, Adv.
            **Haim Zadok & Co.**
            Counsel for the Plaintiff

## Affidavit

I, the undersigned, Moshe Hananel, bearer of I.D. No. 52750726, of 21 HaElla St., Mevaseret Zion, after having been cautioned to tell the truth, failing which I shall be liable for the penalties prescribed by law, do hereby state in writing as follows:

1. I am the Plaintiff in Labor Case 6245/01 at the Tel Aviv Jaffa District Labor Court, and am making this affidavit as evidence rebutting the statements made in the affidavit of CPA Yehuda (Dadi) Zamir for the Defendants, and in accordance with the Decision of the Honorable Court (the Hon. Justice Etsyon) of September 22, 2003 (Motion 4718/03).

2. In CPA Zamir's complementary affidavit of September 7, 2003, CPA Zamir claims that his letter to me of April 3, 2000 was accompanied by the two checks mentioned in Sections 2.18 and 2.19 of my discovery affidavit, the one, check no. 905 of August 30, 1998 in the sum of NIS 10,000 to the order of Miri Schory, and another check, no. 844 of July 5, 1998, in the sum of NIS 20,000 to my order (hereinafter: the "**Checks**").

3. CPA Zamir's said letter is dated April 3, 2000, but the letter was transferred to me only several days after the date stated on the letter, and the letter was not accompanied by the Checks or by copies of the said Checks. In the letter, CPA Zamir requested, *inter alia*, clarifications about the Checks, at the request of Interface's accountants at Somekh Chaikin, who prepared Interface's financial statements at that time. A copy of the letter is attached hereto as **Annex A**.

4. In view of the fact that the letter was sent without copies of the Checks, and I had no details on the nature of the sums drawn, I was unable to answer CPA Zamir's questions in his letter dated April 3, 2000. CPA Zamir explained to me that at that stage he did not have copies of the Checks and that he had requested the same of Somekh Chaikin. Under these circumstances, on the eve of my leaving my work at the First Defendant (hereinafter: "**Interface**") and preparation of the "settlement of accounts", as mentioned also in my affidavit in lieu of direct testimony of September 9, 2002, Interface offset two checks against my salary, whilst agreeing that the issue would thereafter be looked into, at the time of inquiry into the nature of the Checks, and that if it transpired that the setoff had been unjustified, the money would be returned to me.

5. Only on May 30, 2003 [sic] did CPA Zamir call, with apologies, to inform me that he was faxing me the copies of the said Checks, which had been forwarded to his office (the firm of Joseph Shimoni) from Somekh Chaikin only one day earlier, as is clearly visible in the record of the facsimile data at the top of the page. A copy of the check [sic] that was provided to me by CPA Zamir on May 30, 2000 is attached hereto as **Annex B**.

6. After having perused the copies of the Checks and looked into the nature of the setoffs, it transpired to me that they had no basis and that, *inter alia*, the check in the sum of 10,000 that had been given to a clerk at Interface, Miri Schory, had been offset against my salary. The check was made out to the order of Miri Schory and was cashed by her in cash for her salary for working

at Interface from February 1996 (as Miri Schory herself declared in her affidavit of November 7, 2002) until the end of April 1996, for which Miri Schory was not paid a salary via a pay slip from Interface, since Miri Schory began receiving pay slips from Interface only from May 1996. A copy of Miri Schory's affidavit and a copy of the form of confirmation of salaries and deductions for the tax year 1996 are attached hereto as **Annexes C-1 and C-2**.

7. Also with respect to check no. 844 in the sum of NIS 20,000, the said check was offset against my salary on the assumption that it was given to me as a loan "on account", while in fact the check was given to me as salary for my work during the months in which I worked without pay slips at the beginning of the period of my employment at the end of 1995, and the setoff that was performed was unjustified.

8. After I understood that the sums of the Checks had been unjustifiably offset against my salary, I asked Interface, in accordance with the agreement, to pay me the amount. Interface refused and conditioned any payment on its part on my waiver of my other rights.

9. CPA Zamir's denial, in his affidavit, of the fact that the setoff against my salary was made under the agreement that if it were subsequently found that the setoff had been unjustified, the offset amounts would be returned, is inconsistent with the late date on which the copies of the Checks were forwarded to me (May 30, 2000), since until I reviewed the copies of the Checks at that time I could, in any event, not have sweepingly agreed to their being offset against my salary without any inquiry into the questions of for whose benefit and for what the sums were drawn.

10. CPA Zamir's claim whereby copies of the Checks had been attached to his letter of April 3, 2000 is neither correct nor consistent with the fact that the copies had been transferred to CPA Zamir from Somekh Chaikin (as may be seen by the writing at the top of the page: "KPMG Somekh Chaikin") on May 29, 2000, nor with the fact that only on May 30, 2000 did CPA Zamir forward the copies of the Checks to me, as may clearly be seen in the record of the facsimile data at the top of that page.

11. If CPA Zamir had indeed already sent the Checks to me together with the letter dated April 3, 2000, he already had the copies of the Checks and there was no need for the Checks to be re-sent by Somekh Chaikin to CPA Zamir on May 29, 2003 [sic], and there was no need to re-send the copies to me on May 30, 2000, i.e. approximately two months after they had allegedly been sent to me, according to CPA Zamir.

12. Furthermore, if there was indeed no agreement to look into the setoff and return it if it were found to be unjustified, why were the copies of the Checks re-sent to me from CPA Zamir's office? And why were they re-sent at the end of May 2000 – after the "settlement of accounts"? CPA Zamir's affidavit offers no explanation for these discrepancies, because the only reason that the Checks were sent to me only on May 30, 2000 is that CPA Zamir had received the Checks from Somekh Chaikin only one day earlier, and had forwarded the copies of the Checks to me in accordance with the agreement that had been

reached with me, so that I may examine whether the offset that was performed was justified or, as I learned in practice, whether there was no reason to offset the sums of the Checks and the setoff amounts should be returned to me.

I declare that my name is Moshe Hananel, the signature hereinbelow is my own and everything stated in this affidavit is the truth.


(-)
_____
Moshe Hananel


### Certification

I certify that on January 7, 2004 appeared before me, Ravit Lahmany, Adv. (License No. 36560) of 20 Lincoln St., Tel Aviv, Mr. Moshe Hananel, who is known to me personally, and who, after I cautioned him to tell the truth, failing which he would be liable for the penalties prescribed by law, confirmed the veracity of his foregoing affidavit and signed it in my presence.


[ stamp and signature ]
_____
Ravit Lahmany, Adv.

## Affidavit

I, the undersigned, David Miro, bearer of I.D. No. 059272476, of 645/16 Keren Hayesod St., Beit Shemesh, after having been cautioned to tell the truth, failing which I shall be liable for the penalties prescribed by law, do hereby state in writing as follows:

1. I am making this affidavit on behalf of the Plaintiff in Labor Case 6245/01 at the Tel Aviv Jaffa District Labor Court and in accordance with the Decision of the Honorable Court (the Hon. Justice Etsyon) of September 22, 2003.

2. In the context of my work for HaGalil Tours Ltd., which provided services to the First Defendant (hereinafter: "**Interface**"), I used to perform transportation services and run errands for Interface. Subsequently, and for more than a year, I continued to perform the transportation services and to run errands for Interface as an employee of the Company, until termination of my employment with Interface in May 2000.

3. In the context of my work for Interface, as aforesaid, I also ran, *inter alia*, various errands for Interface at various bank branches, including at the branch of the First International Bank of Israel Ltd. (Opera branch) (hereinafter: the "**Bank**"), at which Interface's bank account was maintained, and in the context of such errands I was asked, *inter alia*, to deposit checks, cash checks and deliver documents to the Bank.

4. As part of my duties and from time to time, Interface's General Manager at the time, Mr. Moshe Hananel, used to ask me to go to the Bank branch to cash a check for him. The checks Moshe Hananel had given me to cash were always made out to the order of Moshe Hananel, and I was able to cash them by the fact that Moshe Hananel used to endorse each check by signing on the back of the check and stating his I.D. number. In addition, Moshe Hananel would call or fax the Bank branch before I left for the Bank branch, to inform them of my arrival and ask them to enable me to cash the check.

5. I was never given a check that was made out to my order to cash and transfer the money to Mr. Hananel or to anyone else at Interface, and in any event there was no need to do so, in view of Moshe Hananel's practice, which was accepted at Interface, to endorse the check, as aforesaid, and to enable it to be cashed.

I declare that my name is David Miro, the signature hereinbelow is my own and everything stated in this affidavit is the truth.

(-)
_____
David Miro

**Certification**

I certify that on January 7, 2004 appeared before me, Ravit Lahmany, Adv. (License No. 36560) of 20 Lincoln St., Tel Aviv, Mr. David Miro, whom I identified according to an I.D. card, and who, after I cautioned him to tell the truth, failing which he would be liable for the penalties prescribed by law, confirmed the veracity of his foregoing affidavit and signed it in my presence.


[ stamp and signature ]
_____
Ravit Lahmany, Adv.