UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHELDON G. ADELSON,                          :

Plaintiff,                                   :

v.                                           :    Civil Action No. 04-cv-10357-RCL

MOSHE HANANEL,                               :

Defendants.                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S OBJECTIONS TO

## THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

> MAYER, BROWN, ROWE & MAW, LLP
> Andrew H. Schapiro
> Philip Allen Lacovara
> 1675 Broadway
> New York, New York 10019
> (212) 506-2500
>
> DUANE MORRIS LLP
> Franklin H. Levy
> 470 Atlantic Avenue
> Boston, MA 02110
> (617) 289-9200
>
> Attorneys for Plaintiff Sheldon G. Adelson

## TABLE OF AUTHORITIES

**Cases**                                     **Page**

*Alpha Therapeutic Corp. v. Nippon Hoso Kyokai,*
   199 F.3d 1078 (9th Cir. 1999) ............................................... 3, 4

*Am. Stock Exch., LLC v. Towergate Consultants Ltd.,*
   No. 03 Civ. 856 (RBB), 2003 WL 21692814 (S.D.N.Y., July 21, 2003) ................... 6

*Asiatic Petroleum Corp. v. Italia Societa Anonima Di Navigazione,*
   119 F.2d 610 (3d Cir. 1941) ................................................... 7

*Barkas v. Cia Naviera Coronado, S.A.,*
   126 F Supp 532 (S.D.N.Y. 1954) ............................................. 9

*Beltappo, Inc. v. Rich Xiberta, S.A.,*
   No. C05-1343Z, 2006 WL 314338 (slip op.) (W.D. Wash. Feb. 7, 2006) ............ 12, 15

*Boudreau v. Scitex Corp., Ltd.,*
   Civ.A.No. 91-13059-Y, 1992 WL 159667 (D. Mass. June 25, 1992) ............... 17, 19

*Bravo Co. v. Chum, Ltd.,*
   60 F. Supp. 2d 52 (E.D.N.Y. 1999) ........................................... 5

*Burt v. Isthmus Dev. Co.,*
   218 F.2d 353 (5th Cir. 1955) ................................................ 5

*Carlson Corp. v. Univ. of Vt.,*
   402 N.E.2d 483 (Mass. 1980) ................................................ 14

*Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC,*
   273 F. Supp. 2d 172 (D. Mass. 2003) ......................................... 17

*Colorado River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976) ......................................................... 7

*Dalmas v Stathatos,*
   84 F. Supp. 828 (S.D.N.Y 1949) ............................................. 9

*Diatronics, Inc. v. Elbit Computers, Ltd.,*
   649 F. Supp. 122 (S.D.N.Y. 1986) ........................................... 8

*DiRienzo v. Philip Servs. Corp.,*
   294 F.3d 21 (2d Cir. 2002) ................................................. 8, 17

## TABLE OF AUTHORITIES
(continued)

**Cases**                                                                                           **Page**

*Founding Church of Scientology v. Verlag,*
    536 F.2d 429 (D.C. Cir. 1976) ...............................................................................4, 18

*Guidi v. Inter-Continental Hotels Corp.,*
    224 F.3d 142 (2d Cir. 2000)....................................................................................4, 6

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947).............................................................................................3, 8, 15

*Hodas v. Morin,*
    814 N.E.2d 320 (Mass. 2004) .................................................................................13

*Hoffman v. Goberman,*
    420 F.2d 423 (3d Cir. 1970)...................................................................................5

*Iragorri v. Int'l Elevator, Inc.*
    203 F.3d 8 .............................................................................................................15

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
    313 U.S. 487 (1941)...............................................................................................13

*Leasco Data Processing Equip. Corp. v. Maxwell,*
    468 F.2d 1326 (2d Cir. 1972)..................................................................................4

*Linkco v. Nichimen Corp.,*
    164 F. Supp. 2d 203 (D. Mass. 2001) .................................................................6, 7, 9

*Mercier v. Sheraton Int'l, Inc.,*
    935 F.2d 419 (1st Cir. 1991)...................................................................................3, 4, 5

*Mercier v. Sheraton Int'l, Inc.,*
    981 F.2d 1345 (1st Cir. 1992) ...................................................................... 1-2, 3, 4, 15

*Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS,*
    315 F.Supp.2d 286 (W.D.N.Y. 2004) ...................................................................7

*MLC (Bermuda), Ltd. v. Credit Suisse First Boston Corp.,*
    46 F. Supp. 2d 249 (S.D.N.Y. 1999)......................................................................5, 8

*Mobil Tankers Co., S.A. v. Mene Grande Oil Co.,*
    363 F.2d 611 (3d Cir. 1966)...................................................................................5

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
    911 F.2d 993 (5th Cir. 1990) .................................................................................6

## TABLE OF AUTHORITIES
(continued)

**Cases**                                                                                    **Page**

*Ocean Shelf Trading Inc. v. Flota Mercante Grancolombiana S.A.,*
    638 F. Supp. 249 (S.D.N.Y. 1986) ......................................................................10

*Olympic Corp. v. Societe Generale,*
    462 F.2d 376 (2d Cir. 1972)...........................................................................4

*Peach v. Shopshire,*
    No. CV 05-0369C, 2006 WL 456772 (slip op.) (W.D. Wash., Feb. 23, 2006).............6, 11, 15

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)........................................................................4, 14, 15

*Pritzker v. Yari,*
    42 F.3d 53 (1st Cir. 1994)...........................................................................8

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,*
    361 F.3d 11 (1st Cir. 2004)........................................................................2, 7

*Rederiaktierbolaget v. Compania De Navegacion "Anne" S.A.,*
    124 F. Supp. 118 (S.D.N.Y. 1954) ...................................................................7

*Reid-Walen v. Hansen,*
    933 F.2d 1390 (8th Cir. 1991) .......................................................................4

*Teleco Oilfield Servs., Inc. v. Skandia Ins. Co.,*
    656 F. Supp. 753 (D. Conn. 1987)...............................................................12, 15

*Terris-Feldman v. Dan Hotels of Israel,*
    No. 95 Civ. 9666(AB), 1997 WL 109441 (S.D.N.Y. Mar. 11, 1997) ....................................17

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)..............................................................................12, 15

*Volkswagen of Am., Inc. v. S. S. Silver Isle,*
    257 F.Supp. 562 (N.D. Ohio 1966)....................................................................9


**Statutes**

Fed. R. Evid. 804(b)(1) ................................................................................17

## <u>TABLE OF AUTHORITIES</u>
(continued)

**<u>Other Authorities</u>**                                                                                 **<u>Page</u>**

Wright, Miller & Marcus, Federal Practice & Procedure § 3828 ....................................................5

Restatement (Second) of Conflict of Laws § 188 ..........................................................................13

Pursuant to Rule 72, Fed. R. Civ. P., Plaintiff Sheldon G. Adelson hereby objects to the Magistrate Judge's Report and Recommendation of March 28, 2006 (the "Report") and seeks a *de novo* determination denying Defendant Moshe Hananel's motion for dismissal on the ground of *forum non conveniens*.

## PRELIMINARY STATEMENT

Dismissal on *forum non conveniens* grounds is appropriate only in rare circumstances, not present here, where the relevant factors "strongly" favor dismissal and are sufficient to overcome the heavy presumption in favor of a plaintiff's choice of forum. In accordance with governing Supreme Court precedent, the Magistrate Judge considered both "private factors" of convenience to the parties and "public factors" relating to judicial administration. The Magistrate Judge recommended that this lawsuit be thrown out on *forum non conveniens* grounds, even though he expressly found (a) that all of the private factors are in "equipoise" (*id.*, pp. 5, 8), (b) that Massachusetts has a "meaningful connection to the litigation" (*id.*, p.9, n.4), (c) that the plaintiff's choice of this venue was not intended to "vex or harass" Hananel (*id.*), and (d) that Hananel indeed "can testify here" and is physically capable of returning to this jurisdiction, where the oral agreement at issue "was formalized" (*id.*, pp. 6, 8).

The basis for the recommendation of dismissal is that a lawsuit presenting similar – but not identical -- questions is pending in Israel and the Magistrate Judge's view that there is "no reason why Adelson cannot fairly litigate his claim in Israel." *Id.*, p. 10. This rationale, however, stands on its head the firmly-settled presumption in favor of the plaintiff's choice of forum. The pendency of the Israeli lawsuit does not transform Massachusetts into an "inconvenient" forum or begin to overcome the "strong presumption favoring the American

forum selected by [an] American plaintiff[].” *Mercier* v. *Sheraton Int'l, Inc.*, 981 F.2d 1345, 1355 (1st Cir. 1992). The Magistrate Judge's rationale disregards the First Circuit's recognition of the "accepted proposition that parallel proceedings on the same in personam claim generally should be allowed to proceed simultaneously." *Quaak* v. *Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 16 (1st Cir. 2004). Accordingly, this Court should decline to follow the Magistrate Judge's recommendation and should deny Defendant's motion to dismiss.


## STATEMENT OF FACTS[1]

The plaintiff in this case, Sheldon Adelson, is a U.S. citizen with a residence in Newton, Massachusetts. He seeks a declaratory judgment establishing the extent of his personal liability on an oral agreement executed in Massachusetts between a company under his control (Interface Partners International Ltd. – "IPI") and defendant Moshe Hananel, an English-speaking Israeli citizen. The agreement and all negotiations relating to it were conducted in English.

Various aspects of the Adelson-Hananel relationship are the subject of litigation brought by Hananel in the Tel Aviv District Labor Court, in Israel. One (the "2001 Action") seeks compensation allegedly owed to Hananel by Adelson and IPI, a Delaware corporation with offices in Needham, Massachusetts; Las Vegas; and Tel Aviv.[2] IPI sued in Israel in 2002 for the return of funds misappropriated by Hananel. Another suit (the "2003 Action"), filed by Hananel just two months before the action in this Court, seeks 12% of the shares owned by Adelson (or IPI or any company under Adelson's control) in a casino development in Macau, China.

---

[1]     Because this is a motion to dismiss, the facts must be viewed in the light most favorable to Adelson, the non-moving party.

[2]     IPI's finances are controlled from its Newton office.

Although Hananel initiated the Israeli proceedings in August 2001, they have not progressed far. Adelson has sworn two affidavits to the Israeli court in the 2001 and 2002 actions; the court has thus far required that one of these affidavits be translated into Hebrew, a language Adelson does not speak. Meanwhile, Hananel's claim for 12% of the multi-billion dollar investment still hangs over the Macau project.

## ARGUMENT

### I. The Report Reverses the Burden of Proof and Fails to Give Adequate Deference to Plaintiff's Choice of Forum.

A defendant seeking dismissal on *forum non conveniens* grounds bears the burden of proving both the adequacy of the alternative forum and the strong balance of interests in favor of that other forum. *See Mercier* v. *Sheraton Int'l, Inc.*, 935 F.2d 419, 423-24 (1st Cir. 1991); *Alpha Therapeutic Corp.* v. *Nippon Hoso Kyokai*, 199 F.3d 1078, 1092 (9th Cir. 1999) (reversing district court's dismissal where "[t]he court improperly placed the burden on [plaintiffs], instead of deferring to their choice of forum."). The defendant must satisfy that burden, even where the plaintiff "fail[s] to provide competing evidence on this issue." *Mercier*, 935 F.2d at 425. And "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947).

Magistrate Judge Sorokin reversed the burden of proof, requiring Adelson to prove that he could not litigate in Israel. Report at 10 ("Put another way, I see no reason why Adelson cannot fairly litigate his claim in Israel."). It is not the plaintiff's duty to prove that the alternative the defendant would prefer is impractical; rather, it is the defendant's obligation to prove "unfairness" and "injustice" resulting from the plaintiff's choice. The Magistrate Judge's

3

approach is especially unsound because dismissal here would close the doors of the federal courts to Adelson, a U.S. citizen, and force him to litigate overseas.

Where a plaintiff chooses to sue in his home jurisdiction, courts presume that the forum is convenient.[3] *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."); *Guidi* v. *Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000) (reversing *forum non conveniens* dismissal because "failure to grant Plaintiffs choice of an American forum significant deference was unsound"); *Alpha Therapeutic*, 199 F.3d at 1090 (9th Cir. 1999) ("The moving party must make a showing sufficient to overcome the **great deference** due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience that the defendant may have shown.") (internal quotations omitted) (emphasis added).

Courts almost never dismiss a case where doing so would force an American plaintiff to seek relief in a foreign court. *See Mercier*, 981 F.2d at 1355 (noting "strong presumption favoring the American forum selected by American plaintiffs"); *Founding Church of Scientology* v. *Verlag*, 536 F.2d 429, 435 (D.C. Cir. 1976); *Leasco Data Processing Equip. Corp.* v. *Maxwell*, 468 F.2d 1326, 1344 (2d Cir. 1972); *Olympic Corp.* v. *Societe Generale*, 462 F.2d 376, 378 (2d Cir. 1972) ("the balance must be even stronger [in favor of the alternative forum] when

---

[3]     The First Circuit has held that, where the choice is between a U.S. and a non-U.S. forum, it is national, not state, citizenship that matters. *See Mercier*, 935 F.2d at 429 (1991) ("[T]he district court erred in concluding that the [plaintiffs'] non-Massachusetts citizenship and residence favored dismissing the case. Rather, the [plaintiffs'] *United States* citizenship and residence * * * are factors that make this a controversy local to the United States, if not necessarily to Massachusetts."); *see also Reid-Walen* v. *Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991) (where the alternative is a foreign court, "the 'home' forum for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives"). Moreover, plaintiff here "operates his businesses out of the United States through entities based in Massachusetts and Nevada." Report, p.8.

the plaintiff is an American citizen and the alternative forum is a foreign one"). "It is settled that while an American citizen suing in his own right does not have an absolute right under all circumstances to maintain his suit in a federal court, his election of such a forum should not be disregarded in the absence of persuasive evidence that the retention of jurisdiction will result in *manifest injustice to the defendant*." *Hoffman* v. *Goberman*, 420 F.2d 423, 428 (3d Cir. 1970) (emphasis added). *See also Burt* v. *Isthmus Dev. Co.*, 218 F.2d 353, 357 (5th Cir. 1955) ("[C]ourts should require positive evidence of *unusually extreme circumstances*, and should be thoroughly convinced that *material injustice* is manifest before exercising any such discretion to deny a citizen access to the courts of this country.") (emphases added).[4] "This presumption is fortified where an American plaintiff brings suit against a foreign entity and the alternative forum is foreign." *Bravo Co.* v. *Chum, Ltd.*, 60 F. Supp. 2d 52, 56 (E.D.N.Y. 1999) (internal quotation omitted).

Mr. Adelson's U.S. citizenship and his business presence in Massachusetts receive short shrift in the Magistrate Judge's opinion.[5] In minimizing the importance of the plaintiff's U.S. citizenship, the Report cites two cases. But neither is even remotely on point. The plaintiff in MLC (Bermuda), Ltd. v. Credit Suisse First Boston Corp., 46 F. Supp. 2d 249 (S.D.N.Y. 1999), was a *Bermudan* citizen, not an American (as is evident from the caption). The Report also cites *LinkCo* v. *Nichimen Corp.*, 164 F. Supp. 2d 203, 214 (D. Mass. 2001), in which the defendant in

---

[4]     *See also* WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE § 3828 ("While a citizen of the United States may have no absolute right to have a case tried in the federal court, his election of such forum should not be disregarded in the absence of persuasive evidence that retention of jurisdiction will result in manifest injustice to the respondent, and this is true even though the more convenient forum may be the foreign one.") (citing *Mobil Tankers Co., S.A.* v. *Mene Grande Oil Co.*, 363 F.2d 611, 611 (3d Cir. 1966)).

[5]     The First Circuit rule is that a district court's failure to consider a material factor in the *forum non conveniens* analysis is grounds for reversal. *See Mercier*, 935 F.2d at 423 (1st Cir. 1991).

the U.S. action had already won declaratory judgment in a Japanese court; the U.S. plaintiff's action was thus barred by the principle of comity. *Id.* at 213. Neither of these cases provides any support for discarding the presumption in favor of a domestic forum for a domestic citizen on the sole ground that a concurrent action is pending overseas.

## II. The Report's Exclusive Reliance on the Pendency of a Concurrent Action in Israel Is Legally Unsound.

According to the Magistrate Judge, the sole factor that favors dismissal – a factor to which he assigned dispositive significance – is the pendency of an action in Israeli court. Having found that all other factors were "in equipoise," Magistrate Judge Sorokin decided that this single factor overcame the "strong presumption" in favor of the plaintiff's forum. This Court should reject that clearly erroneous conclusion.

### A. *Pendency of a Concurrent Action Is Not Only Insufficient to Establish a Strong Balance in Favor of Dismissal, It Is Not Considered an Important Factor at All in the* Forum Non Conveniens *Analysis.*

The Second Circuit has pointed out that "[t]he existence of related litigation, while of major significance in § 1404(a) cases [transferring venue between federal courts], is not listed as a relevant factor in the *forum non conveniens* analysis laid out in *Gilbert*." *Guidi*, 224 F.3d at 148. *See also Peach* v. *Shopshire*, No. CV05-0369C, 2006 WL 456772, at *9 (slip op.) (W.D. Wash., Feb. 23, 2006) ("the U.S. Supreme Court has never noted the fact of pending litigation in an alternative forum as a relevant factor in a *forum non conveniens* analysis"); *Am. Stock Exch., LLC* v. *Towergate Consultants Ltd.*, No. 03Civ. 856(RBB), 2003 WL 21692814, at *5 (S.D.N.Y., July 21, 2003) ("the pendency of the United Kingdom action does not factor into the *forum non conveniens* decision"); *New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*, 911 F.2d 993, 1005 n.8 (5th Cir. 1990) (explaining that pendency of concurrent action is not relevant to *forum non conveniens*); *Rederiaktierbolaget* v. *Compania De Navegacion*

6

*"Anne" S.A.*, 124 F. Supp. 118, 118-19 (S.D.N.Y. 1954) (concurrent litigation "involv[ing] the same parties and the same issues" in Canal Zone District Court did not require dismissal); *Asiatic Petroleum Corp.* v. *Italia Societa Anonima Di Navigazione*, 119 F.2d 610, 613 (3d Cir. 1941) ("It is also settled that the pendency of a suit in personam is not a bar to suits brought in other jurisdictions upon the same cause of action.").

The Supreme Court has emphasized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" in holding that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976). Given that federal courts permit concurrent litigation in *U.S. state* courts, the pendency of a suit in another country is hardly a basis to throw out a plaintiff's case. The First Circuit itself has recognized the "accepted proposition that parallel proceedings on the same in personam claim generally should be allowed to proceed simultaneously." *Quaak*, 361 F.3d at 16. *See also Minibooster Hydraulics A/S* v. *Scanwill Fluid Power ApS*, 315 F.Supp.2d 286, 290-91 (W.D.N.Y. 2004) (denying *forum non conveniens* motion in case with Dutch parties on both sides, evidence in the Netherlands, and action brought by same plaintiff pending in Dutch court).

The Magistrate Judge proffered three cases to justify relying solely on the pendency of concurrent litigation abroad, but none supports that decision. As already discussed, *LinkCo* involved not merely a concurrent proceeding, but a prior foreign *judgment* in favor of one defendant; that judgment barred the plaintiff's claim against that defendant. The *LinkCo* court *denied* the *forum non conveniens* motion of a related defendant and allowed that action to proceed in Massachusetts. See 164 F. Supp. 2d at 214-16. In *MLC*, as also noted above, the plaintiff in the U.S. action was a *Bermudan* citizen whose suit was dismissed in favor of a

7

proceeding in Great Britain (whose legal system is similar to those of both the U.S. and Bermuda). Unlike here, the court in *MLC* also held that the private factors in that case favored litigating in Britain, and the parties and issues in the two actions were substantially identical. *See* 46 F. Supp. 2d at 251-53. Finally, *Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994), did not involve a *forum non conveniens* motion at all – there, the court *exercised* jurisdiction, in part to avoid forcing the plaintiff to file multiple suits in different courts. 42 F.3d at 64. None of these cases, therefore, comes close to finding that a concurrent action against an American citizen in a foreign court mandates – or even justifies – dismissal of a U.S. citizen's suit in a U.S. court, simply because he filed it "merely two months after" the defendant had filed a foreign proceeding raising a related issue (Report, p.9, n.4), when no other factor overcomes the strong presumption in favor of the plaintiff's chosen forum. Those cases certainly do not require dismissal of a U.S. suit regarding the terms of a contract negotiated and formed entirely in the United States.[6]

Moreover, the existence of concurrent actions is of especially little relevance where, as here, the action in the alternative forum is not far advanced. *Compare Ocean Shelf Trading Inc.* v. *Flota Mercante Grancolombiana S.A.*, 638 F. Supp. 249, 253 (S.D.N.Y. 1986) ("Since the Colombian action has advanced no further than this one, this factor weighs only minimally in

---

[6]    The Magistrate Judge also stated that his decision was "consistent" with the decision in *Diatronics, Inc.* v. *Elbit Computers, Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986). Report, p.11. The Second Circuit, however, later emphasized why *Diatronics* has no bearing on a case like this, explaining in *DiRienzo* v. *Philip Servs. Corp.*: "In [*Diatronics*], an American corporation had purchased a majority interest in one Israeli corporation from a second Israeli corporation. The contracts at issue had been negotiated and executed in Israel, and the purchaser had hired an Israeli attorney for the negotiations." 294 F.3d 21, 33 (2d Cir. 2002). Here, by contrast, the contract was negotiated and executed in Massachusetts and was allegedly for employment by a Massachusetts-based corporation. In *DiRienzo*, the Second Circuit, applying the general rule, rejected a *forum non conveniens* motion, explaining that "unless the balance strongly favors defendant, plaintiffs' choice of forum should rarely be disturbed." 294 F.3d at 30-31 (citing *Gulf Oil*, 330 U.S. at 508) (internal quotation omitted).

defendants' favor.") *with LinkCo*, 164 F. Supp. 2d 203 (granting motion where alternative forum had conducted trial and rendered judgment as to one party).  Though the Israeli litigation began in 2001, and the Israeli Macau litigation in December 2003, it has not advanced past the pleadings and is tied up in disputes and appeals related to jurisdiction, admissibility of evidence, and other issues.  *See infra* Section IV.

B.  *Concurrent Suits Are of Little Importance Where the Issues and Parties Are Not Identical*

Concurrent suits are also of minimal significance where the parties to the two suits are different, even though they may be closely related.  *See Volkswagen of Am., Inc.* v. *S. S. Silver Isle*, 257 F. Supp. 562, 563-64 (N.D. Ohio 1966) (cargo owner not represented in Canadian action by bailee of cargo); *see also Dalmas* v. *Stathatos*, 84 F. Supp. 828, 829 (S.D.N.Y 1949) (foreign arbitration not binding on present party not relevant to *forum non* analysis); *Barkas* v. *Cia Naviera Coronado, S.A.*, 126 F. Supp 532, 533 (S.D.N.Y. 1954) (same).

Here, the parties are different:  IPI, Hananel's corporate employer, is the principal party in the Israeli suit but is not a party to the present suit.[7]  Even more important, the issues in the two cases differ critically.  The 2003 Israeli action deals **only** with Macau.  The lawsuit in this Court, on the other hand, seeks a declaration that Adelson "owes defendant nothing and that defendant is not entitled to any option, interest or claim to **any business** in which plaintiff has any interest."  Complaint ¶ 33.[8]  That is a vital distinction.  In his deposition in this case, Hananel has asserted an exceedingly broad, general right to obtain a 12% share of Adelson's projects

---

[7]     IPI in fact, however, has no connection to what Hananel in his Israeli suit calls the "Macau venture."

[8]     See also Complaint ¶ 29 ("Despite the pellucid and preposterous nature of [Hananel's] claims, his persistence has created a bogus dispute as to what the IPI employment agreement negotiated between the parties provides, if anything, to Hananel with respect to Macau **or otherwise**.") (emphasis added).

worldwide – not just the Macau development.[9]  These broader allegations are not at issue in the Israeli proceedings.  If this case is dismissed, the legitimacy of Hananel's claim for rights beyond the Macau project will not be adjudicated anywhere.  Indeed, Hananel could *lose* the Israeli action and yet, if an Adelson company undertook a project in a country to which Adelson first traveled with Hananel, still try to claim a percentage of that investment.[10]  That of course would not be the case if Adelson prevails in the Massachusetts suit.  Adelson has brought suit in this Court to have his rights vis-à-vis Hananel determined once and for all.  That is simply not the subject of the Israeli action.

Indeed, the Magistrate Judge could only go so far as to offer this tenuous characterization of the relationship between the present case and the Israeli litigation:

> Both of Hananel's Israeli suits (and the suit that Adelson filed in Israel noted in footnote 1) *share some common facts* with the instant suit; each involves *roughly the same parties* fighting over *various aspects* of Hananel's employment relationship or work for Adelson and/or IPI.

Report, p.3 (emphasis added).  Even if a complete identity of foreign and U.S. cases could outweigh the "strong presumption" in favor of a U.S. plaintiff's choice of a U.S. forum, there is no such identity here.

---

[9]     *See, e.g.*, February 22, 2005 Hananel deposition at 135-36 ("[I]n my affidavit I am mentioning Bulgaria, Italy, Rhodes, Turkey, Jordan, all these countries we were together. Czechoslovakia, we had approached Mr. Raviv of a gentleman that got concession for casino in Carlo Vivari and Prague . . . . [H]e was trying to interest us for Carlo Vivari which is a resort city in Czech and I asked Sheldon, you really want me to go there and so on to study the matter?  He said yes.  Raviv was the one that initiate this one and I went with this gentleman twice to Czechoslovakia to explore this thing about the casino.... And if was materialize, I would see myself entitled to 12% for the casino ....  I was entitled to 12% whether I was initiating, whether Sheldon delegated me a subject that I handled in Israel, I was also initiate for 12%, whether anybody ... that were working under me, whether they were on commission or not commission, were initiate a subject that I handled.  In all these cases and maybe others, I was entitled to 12%.").

[10]     *See, e.g.*, February 22, 2005 Hananel deposition at 123-130 (asserting right to a 12% share of any casino projects in Bulgaria, Ireland, Cyprus, and other countries.).

*C. The Magistrate Judge's Assumption That This Court, Rather Than the Israeli Labor Court, Should Relinquish Jurisdiction Was Unjustified*

Finally, even assuming that judicial economy does militate in favor of consolidating the cases, the Magistrate Judge provided no legitimate reason why ***this*** action should be dismissed, rather than the Israeli action. *Cf. Peach*, 2006 WL 456772, at * 9 (pendency of action filed by same plaintiff in another forum "fails to demonstrate why litigating the present case in [this forum] raises administrative difficulties"). As the Magistrate Judge himself acknowledged, plaintiff filed this suit to disclaim any *personal* responsibility to Hananel "merely two months after Hananel's 2003 suit first raised the Macau venture issue." Report, p.9 n.4.

The Magistrate Judge seemed to think it important that the Israeli action was "already pending" (for two months) before this action was filed. Report at 10. *Forum non conveniens* doctrine, however, does not automatically reward a litigant's race to the courthouse, and the Report cites no authority for that proposition. Given the pace of the Israeli litigation and the substantial choice-of-law problem it presents, *see infra* Section III, it makes much more sense for this Court to issue a declaratory judgment that the Israeli court can then apply to its own proceeding.[11]

## III. The Report Ignores This Court's Familiarity With the Governing Substantive Law.

The relative differences in familiarity of the two alternative forums with the governing substantive law is a factor of longstanding importance in the *forum non conveniens* analysis. *See Van Dusen* v. *Barrack*, 376 U.S. 612, 645 (1964):

"[I]t has long been recognized that: 'There is an appropriateness * * * in having the trial of a diversity case in a forum that is at home with the state law that must govern the case,

---

[11]    The trial of this case, with its narrow focus on a single question and its limited universe of witnesses, should take no more than a few days.

rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" (quoting *Gulf Oil*, 330 U.S. at 509 (1947).

*See also Teleco Oilfield Servs., Inc.* v. *Skandia Ins. Co.*, 656 F. Supp. 753, 759-60 (D. Conn. 1987) (rejecting dismissal in favor of foreign forum in part because Connecticut law would govern contract). Where, as here, the governing law is that of the plaintiff's forum, and dismissal would require a foreign court to apply U.S. law, this factor must weigh heavily against dismissal. See *id.*; *Van Dusen*, 376 U.S. at 644-45 (emphasizing importance of court's familiarity with applicable law in remanding § 1404 transfer for reconsideration), *Beltappo, Inc.* v. *Rich Xiberta, S.A.*, No. C05-13432, 2006 WL 314338, at *9 (slip op.) (W.D. Wash., Feb. 7, 2006) (citing applicability of local law in denying *forum non* dismissal).

Dismissal is particularly inappropriate in this case, because the plaintiff seeks only declaratory relief. Adelson asks only that the court determine the validity of the contract and interpret its terms, pursuant to Massachusetts law, with which this Court is familiar. Armed with that legal determination, the Israeli court could then answer the fact-laden questions of whether either party breached. Of course, if this court were to find the contract invalid or conclude that it does not entitle Mr. Hananel to any interest in the plaintiff's developments, the Israeli court could dispose of the case before trial.

In recommending that this Court abdicate jurisdiction in favor of the Israeli courts, the Magistrate Judge relegated this crucial factor to half of a footnote. His justification for this omission was the erroneous assertion that "neither [party] has engaged in a choice of law analysis." Report, p.10 n.5. Plaintiff, in fact, has done so. See Opp. of the Pl., July 15, 2004, at 17. That discussion was brief, simply because the law is straightforward.

A diversity court applies the conflict of laws rules of the state in which it sits. *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Massachusetts follows the

12

interest-balancing test set out in Section 188 of the RESTATEMENT (SECOND) OF CONFLICT OF
LAWS.  *See Hodas* v. *Morin*, 814 N.E.2d 320, 324 (Mass. 2004).  Section 188 lists five factors
for determining the applicable law.  Massachusetts was the place of both contracting, § 188(a),
and negotiation, § 188(b).  See Magistrate Judge's Report of Oct. 31, 2005 (denying motion to
dismiss for lack of personal jurisdiction), at 15-16.[12]  According to Hananel, the contract was to
be performed, § 188(c), worldwide.  See Affidavit of Moshe Hananel, dated June 14, 2004, at ¶¶
16, 19 (alleging performance through work in "Israel, Jordan, Italy, Rhodes (Greece), Bulgaria,
Ireland, and elsewhere").  The last factor is the "domicil, residence, nationality, place of
incorporation and place of business of the parties."  Section 188(e).[13]  One of the parties to the
contract, IPI, is a Delaware citizen with a principal place of business in Massachusetts.
Furthermore, this suit addresses the personal liability of Sheldon Adelson, a U.S. citizen and
Boston native who owns a residence and maintains an office in Massachusetts.  The first two
factors unequivocally favor Massachusetts law; the last factor is consistent with applying
Massachusetts law to this contract dispute.  No factor points clearly in favor of the law of any
other jurisdiction and certainly not to Israel.

"Massachusetts has an interest not only in providing a forum for its residents, but also in
enforcing business transactions consummated within its boundaries.  * * *  We think failure to
honor a contractual obligation incurred in a state cannot reasonably be said to be without

---

[12]    In the Report now before the Court, the Magistrate Judge recognized that any oral
agreement was at least "formalized" in Massachusetts.  Report, p.8.  It is unclear, however, why
he suggested that, on the evidence "taken in the light most favorable to Adelson * * * the oral
agreement was negotiated in Israel . . . ."  Report, p.8.  Adelson has contended throughout that
the agreement was negotiated in Massachusetts and has presented evidence supporting that
claim.  See Affidavit of Paul G. Roberts, dated July 13, 2004 at ¶¶ 6-9.

[13]    A fourth factor, the "location of the subject matter of the contract," § 188(d), comes into
play only when the contract "deals with a specific physical thing * * * or affords protection
against a localized risk."  See *id.* at cmt. b.

consequences there. The effects of such a breach of contract on the general conduct of business may not be readily quantifiable, but they are, nonetheless, real." *See Carlson Corp.* v. *Univ. of Vt.*, 402 N.E.2d 483, 486 (Mass. 1980) (internal quotation and alteration omitted) (holding that this state interest supports finding of jurisdiction). As the Magistrate Judge previously found, in addition to the Commonwealth's interest in enforcing contracts formed within its boundaries:

> Several factors heighten Massachusetts' interest: two or three of IPI's executive officers work in Massachusetts; IPI's corporate funds are held in Massachusetts, at least until disbursed to Israel; and IPI's corporate funds are managed or monitored from Massachusetts.
> * * *
> And finally, with respect to substantive social policies, Massachusetts has an interest in redressing harms inflicted on businesses operating here.

Magistrate Judge's Report of Oct. 31, 2005, at 22-23.

It thus would be a substantial error for a Massachusetts diversity court to take the extraordinary step of refusing to exercise jurisdiction in favor of a foreign court in a case that directly implicates a significant interest of the forum state.

In trying to sidestep this important factor, the Magistrate Judge misconstrued the relevance of the applicable substantive law. He cited *Piper Aircraft*, in which the Supreme Court rejected a Third Circuit rule "that plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." 454 U.S. at 247. But that misses the point. Plaintiff takes no position as to which law is *more favorable* in this case. Rather, it is "the trier's relative familiarity with the appropriate rules of decision" that is a relevant "public interest" factor. *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000) (citing *Gulf Oil*, 330 U.S. at 508-09); see also cases cited *supra* at 11-12. The

applicability of Massachusetts law, whichever party it assists, weighs heavily in undermining Hananel's effort to litigate these issues in a different forum.

## IV. The Report Ignores That the Present Case Is Further Advanced Than the Israeli Proceedings and Is Likely to Move Faster.

The public interest in expeditious dispute resolution has been recognized as relevant to the *forum non conveniens* analysis since *Gulf Oil. See* 330 U.S. at 508; *Piper Aircraft*, 454 U.S. at 241 n.6 (noting "administrative difficulties flowing from court congestion"); *Mercier*, 981 F.2d at 1354. Nonetheless, the Magistrate Judge treated this issue in half a footnote, stating that "the significance of the delay [in the Israeli courts] to the present motion is unclear." Report, p.10, n.5. As a practical matter, the present case is further advanced than the Israeli litigation and is likely to move faster.

The personal jurisdiction of the Tel Aviv District Labor Court over Adelson awaits final resolution. See Pl. Opp., Dec. 30, 2005, at 4. Affidavits, which are a required preliminary step in Israeli litigation, have not yet been filed in the 2003 action, nor has any date for their filing even been set. The last pre-trial hearing in the Israeli lawsuits was a year ago, in April 2005, and no date has been set for the next one. No testimony has been taken. And an appeal to the Israel Supreme Court on the admissibility of certain evidence is pending. See *id.*, p.9. Trial of the Israeli action is, to say the least, not imminent.[14]

In the present case, by contrast, the parties actually have taken depositions and filed motions for summary judgment. Further progress has been held up only by the *forum non conveniens* motion itself; if not for that motion, this case would undoubtedly be even further ahead of the Israeli proceedings. It would be perverse to find that this delay requires dismissal in

---

[14] Before a trial of the Israeli action can occur, the court there will have to set dates for and then receive Hananel's affidavits and defendants' affidavits among other things.

favor of the Israeli proceedings. The parties in this case have also taken depositions on the substantive issues of the case, a development that has not yet occurred in Israel. It was thus wrong for the Magistrate Judge to assume that a mere two-month head start, which has dissipated over the several years in which both actions have been pending, could justify denying Adelson a U.S. forum.

Furthermore, neither Hananel nor the Magistrate Judge has offered any reason to expect that this case will impose a burden on this Court. This case can be disposed of quickly. Motions for summary judgment are already on file. Even if the dispute went to trial, it concerns a single, narrow question, will require the testimony of only a handful of witnesses, and would take only a few days to try.[15]

## V. The Private Factors Counsel Keeping the Action in Massachusetts.

The Magistrate Judge also erred in finding that the "private factors" were "in equipoise." Report, p.5.[16] A fair consideration of the private factors demonstrates the clear superiority of a

---

[15]    This case should also be easy to resolve because Hananel's claims as to the 12% agreement are absurd on their face. It is highly implausible, to say the least, that Sheldon Adelson – an experienced and savvy businessman, who rose from an impoverished childhood in Roxbury to become a self-made billionaire – would have made a deal with Hananel whereby (a) Hananel had the right to buy into 12% of any Adelson deal anywhere in the world if Hananel alerted Adelson to it; (b) Hananel would be entitled to buy 12% of the investment at its original price at any time, and thus to sit back and wait to see how the investment played out before electing to reap, risk-free, any increase in value that had occurred; and (c) the right to a share of the investment would arise by actions as mundane as mentioning that a place would be a good location for a casino, or providing some brochures about a country. The notion that Adelson (or any sane businessperson) would make such a deal is ridiculous.

[16]    Even if this finding were correct, the Court must still deny the motion. *See DiRienzo*, 294 F.3d at 30 ("plaintiffs should not have been deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience"). The Magistrate Judge's recommended ruling would simply substitute inconvenience to Adelson for inconvenience to Hananel. See *Boudreau* v. *Scitex Corp., Ltd.*, Civ. A. No. 91-13059-Y, 1992 WL 159667, at *5 (D. Mass., June 25, 1992) (denying *forum non* motion where "the translation and travel expenses

16

Massachusetts forum.  Indeed, that is why Adelson chose to bring suit here.  *Cf. Champion Exposition Servs., Inc.* v. *Hi-Tech Elec., LLC*, 273 F. Supp. 2d 172, 180 (D. Mass. 2003) (Lindsay, J.) (defendant's view of private factors was "belied by the fact that Champion chose to bring this action in Massachusetts for reasons of convenience").

> A.  *The More Flexible American Rules of Procedure and the Location of Material Witnesses Both Counsel in Favor of a Massachusetts Forum.*

The Israeli requirement of in-person testimony and refusal to accept depositions from unavailable witnesses was an important reason why the Southern District of New York denied a *forum non conveniens* motion to dismiss in favor of Israeli courts.  *See Terris-Feldman* v. *Dan Hotels of Israel*, No. Civ. 9666(AB), 1997 WL 109441, at *6 (S.D.N.Y., Mar. 11, 1997).  By contrast, Federal Rule of Evidence 804(b)(1) permits the introduction of deposition testimony by unavailable witnesses.  Thus, the convenience of the forums as regards witnesses is *not* evenly balanced:  any Israeli witnesses whom Hananel could not compel to appear in person in Massachusetts could still provide depositions in this Court, while the testimony of Adelson's non-Israeli witnesses could be lost if they could not, or would not, personally appear in Tel Aviv.

The Magistrate Judge speculated that "Adelson may be able to arrange for those witnesses to testify [in Israeli court] by way of a live video hookup."  Report, p.4.  He did not point to any Israeli rule or statute permitting video testimony; rather, he relied "on the comments of counsel at the hearing."  *Id.*  The Magistrate Judge also failed to cite any authority providing that, even if the testimony could be *presented* in an Israeli court, it could be *compelled* by Israel. In addition, this unsupported speculation is another example of an impermissible reversal of the burden of proof.  It is not the plaintiff's responsibility to show that litigating in an alternative forum would be impossible, it is the defendant's burden to prove that litigating in the plaintiff's

which [defendant] must bear in litigating the case in Massachusetts are roughly equal to those which [plaintiff] would have to bear if the case were to proceed in Israel.").

chosen forum would be so inconvenient that it would work a "manifest injustice." *See Founding Church of Scientology*, 536 F.2d at 436 (denying motion where defendant "intend[ed] to call almost exclusively German witnesses" and "[t]he risk that foreign evidence cannot be obtained is no greater in federal court in the District of Columbia than it would be in a West German court").

Moreover, as the Magistrate Judge correctly found, there are no Israeli witnesses who would need to testify on behalf of Hananel. Report, p.5. On Adelson's side, however, there are a number of witnesses from the U.S. and Macau, including William P. Weidner[17] and Eric Ho,[18] who would directly contradict Hananel's description of the facts, including his account of his involvement in the Macau deal – the basis for his claim of a 12% share. These witnesses are critical to Adelson's case. Without them, Hananel will argue that the fact finder would have nothing more than the testimony of the parties on which to decide – what the Magistrate Judge called a mere "swearing contest" between Adelson and Hananel. This Court, in which these witnesses could present their testimony, is thus far superior to the Israeli Labor Court in seeking to get at the truth.

### B. Dismissing the Action in Adelson's Home State Would Be Inconvenient and Unfair Because He Faces a Language Barrier in Israeli Court.

Hananel does not contest that all witnesses, including himself, speak English. Adelson, by contrast, has submitted an affidavit stating that he does not speak Hebrew. See Pl. Opp., Dec. 30, 2005, at 11. Although an Israeli judge may choose to hear English testimony or admit

---

[17]    Weidner has sworn in an affidavit that Adelson did not receive the casino "license" that Hananel claims he helped acquire and that Hananel was not involved in the negotiations for the subconcession obtained.

[18]    Ho, the Secretary General of the Tender Commission, which manages the casino licensing process in Macau, has submitted an affidavit attesting to the wide publicity surrounding the liberalization of the Macau casino market and the efforts of the Tender Commission to publicize investment opportunities and solicit and select bidders. He would also testify that the information about casino development in mainland China that Hananel claims to have provided Adelson would not have been relevant to obtaining a license in Macau.

English briefs, Israeli judicial proceedings are conducted in Hebrew. Hananel's testimony will be given in Israel in Hebrew, thus preventing Adelson from hearing his adversary's testimony in his own words. Moreover, the parties agree that "all of the discussions material to this case" – a case that centers on an oral agreement – "occurred in English." Report at 6. Thus, an American court, where all proceedings and court documents are in a language spoken by both parties and all witnesses, would clearly be a preferable forum. And even if the *overall* balance did not favor this Court, the fact that dismissal would force the *plaintiff* to proceed in a court in which he could not understand the proceedings in his own case counsels further deference to his choice of a domestic forum. *See Boudreau*, 1992 WL 159667, at *5 (denying *forum non conveniens* motion after noting "translation and travel expenses" that dismissal would force upon plaintiff").

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss on the ground of *forum non conveniens*.

19

February 6, 2006

Respectfully submitted,

/s/ Andrew H. Schapiro
Andrew H. Schapiro
Philip Allen Lacovara
MAYER, BROWN, ROWE & MAW, LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

Franklin H. Levy
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, MA 02110
(617) 289-9200

Attorneys for Plaintiff Sheldon G. Adelson