## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON,<br><br>      Plaintiff,<br><br>v.<br><br>MOSHE HANANEL,<br><br>      Defendant. | Docket No. 1:04CV-10357RCL |

## AMENDMENT TO THE COMPLAINT

  The plaintiff, never having amended and the defendant never having served a responsive pleading, hereby amends his complaint by adding an additional count to the claim for declaratory relief, by striking counts, III, IV and V and by adding in their place a new count II and by deleting prayers 2-6 and adding new prayers 3 and 4. The Amended Complaint accompanies this amendment

.                           The Plaintiff,

                           SHELDON G. ADELSON,
                           By his attorneys,


                           /s/  Franklin H. Levy
                           Franklin H. Levy, B.B.O. No.:  297720
                           470 Atlantic Avenue, Suite 500
                           Boston, MA  02210
                           (617) 289-9200

          /s/ Andrew H. Schapiro
          Andrew H. Schapiro
          Philip Allen Locovara
          Mayer, Brown, Rowe & Maw LLP
          1675 Broadway
          New York, NY  10019
          (212) 506-2672

Dated:  April 28 , 2006

2

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

SHELDON G. ADELSON,

        Plaintiff,

v.

MOSHE HANANEL,

        Defendant.

Docket No. 1:04CV-10357RCL

## **FIRST AMENDED COMPLAINT**

1.    The plaintiff Sheldon G. Adelson ("Adelson") is an individual who maintains a residence in Massachusetts on Dudley Road in Newton (and is a domiciliary of Nevada) and at all relevant times conducted business at an office in Needham, Massachusetts.

2.    The defendant, Moshe Hananel ("Hananel") is an individual who resides at 21 Ha'Ella Street, Mevaseret Zion, Israel.

3.    This Court has jurisdiction over the matters set out in this complaint pursuant to 28 USC §1333 and because the terms of Hananel's employment by a company controlled by Adelson were negotiated and agreed to in Massachusetts. There is now a dispute as to those terms. Jurisdiction and venue are proper in this Court because plaintiff and third parties who participated in those meetings and negotiations have residences in Middlesex County, Massachusetts, and defendant is a citizen of Israel. The amount in controversy exceeds one

million dollars. In further support of jurisdiction and venue, tortious acts of the defendant have caused harm to plaintiff in Massachusetts.

## FACTS

4. Adelson is a successful entrepreneur and businessman, born and raised in Boston with business interests of national and international scope.

5. He is the majority and controlling shareholder of a number of business entities. One such business is GWV Travel, an international travel and tour operator headquartered at 300 First Avenue, Needham, Massachusetts. Adelson maintained an office at that address (the "Needham Office") at all relevant times.

6. Through the GWV Travel business, Adelson, in the late 1980's became acquainted with Hananel, who was at that time working for Galilee Tours, Ltd. an Israel company which was owned by Hananel's wife's family and himself.

7. Galilee Tours was in the business of providing local ground handling operations in Israel. Typically this required Hananel to provide sightseeing buses, tour leaders, and translators for package tours to Israel sold by GWV and other tour operators.

8. It was common practice for Hananel to travel to Massachusetts and be in the Needham Office to meet with Adelson and GWV employees. The frequency of these visits grew considerably during the early 1990's when, after the Gulf War, travel to Israel declined dramatically and Hananel solicited the support of GWV to promote travel to Israel to sustain and save Galilee tours.

9. During this period, Adelson and Hananel developed a social friendship. When Hananel was in the United States or Adelson was in Israel they and their wives would occasionally dine together or meet in other social settings.

10. As a result of these social contacts between them, Hananel learned about Adelson's many business interests, one of which was Interface Partners International, Ltd ("IPI").

11. IPI is a Delaware corporation owned by Adelson, which had established an office in Ramat Gan, Israel. IPI was established for the purpose of making investments in Israel-based high technology companies. Adelson was also involved in the trade show business and had created "Comdex" which grew to be the most successful computer and technology trade show in the world. He intended to utilize the many Comdex contacts he had made over the years to build IPI in Israel.

12. In the Fall of 1995, Hananel became aware that the then manager of the Israeli office would be leaving that position. He learned this, as did many other Adelson friends and acquaintances, through casual conversation.

13. Hananel represented to Adelson that he wanted to get away from Galilee Tours. He offered himself to replace the departing manager.

14. In meetings which took place in the Needham office between Hananel and individuals acting on behalf of IPI, including Adelson, it was agreed that Hananel would transition out of Galilee Tours and become a full time employee of IPI by January 1, 1996 after which he would devote all of his energy, attention and ability to the business of IPI in Israel, except for occasional consulting to Galilee Tours (which Hananel stated would be done after normal business hours).

15. At these meetings in Massachusetts at the end of 1995 it was agreed that Hananel's responsibility would be to assist to identify, recruit and hire business analysts and

portfolio managers who would search out and identify investment opportunities in Israel in the high technology sector and present them to IPI and its legal and financial advisors.

16. It was agreed that beginning January 1 1996, Hananel would be paid an annual salary of $100,000 USD by IPI and in addition he would receive 12% of the net profits realized by IPI from the high tech investments in Israel which were found, recommended and made by IPI as a result of Hananel's efforts. It was specifically explained to Hananel while he was in Massachusetts that he would only be entitled to such profits, if any, if realized by IPI during the term of Hananel's employment. In addition, he knew he would be an employee at will and knew this meant he could be discharged at any time, with or without cause.

17. The terms of Hananel's employment by IPI were confirmed and finalized between Hananel and IPI (through Adelson and IPI's counsel) in meetings held in Massachusetts during the first week of December, 1995. The terms were never reduced to writing.

18. Hananel accepted the terms as described above before he left Massachusetts to return to Israel. At no time before leaving the various meetings in Massachusetts, nor at any time thereafter during his employment did he ever seek to vary this agreement.

19. In April 2000, IPI terminated Hananel's employment on account of his incompetence. Subsequently IPI (and Adelson) learned that Hananel had failed to keep the agreement made at the meetings in Needham referred to above. Hananel did virtually nothing for IPI but spent most of his time on other personal business of his own. He used IPI's finances and personnel for his own personal and business uses and generally abused IPI's trust, including in that abuse the misappropriation of funds.

20. After Hananel's termination, and after the parties were attempting to negotiate the terms of Hananel's severance, if any, Hananel in or about February 2002 began to make

demands against Adelson for consideration to which Hananel is not entitled and which were never subject to any agreement. The background of those demands follows:

21. Among his business interests, Adelson is the majority shareholder of Las Vegas Sands, Inc. ("LVSI") which is the developer and owner of the Venetian Resort Hotel Casino and the Grand Canal Shoppes Mall in Las Vegas, Nevada. As a consequence of this business, Adelson (through companies under his control) has sought out and investigated other sites for casinos and hotel casinos throughout the world. This activity has been carried out in Massachusetts, Rhode Island, Missouri, Nebraska, Mississippi, Mexico, Israel, Cyprus, The United Kingdom, Greece, Spain, Switzerland, South Korea, Japan, Thailand, and Taiwan amongst other locations.

22. One area in which LVSI and its affiliates have succeeded in obtaining the right to operate a casino is in Macau, a Special Administrative Region of China.

23. These actions in Macau have received substantial publicity and were widely reported by the international and online press.

24. Hananel must have been aware of this publicity because after LVSI or an affiliate first obtained approval to operate a casino in Macau, Hananel began to make claims against Adelson for an interest in the Macau project.

25. Hananel advanced for the first time the novel notion that he had an agreement with Adelson to receive an option to purchase 12% of successful ventures developed by Adelson in Macau, that he was a "partner" in Macau; and that only because of him did Adelson take an interest in Macau, and only because of his guidance was a successful investment made in Macau. He buttresses this outrageous falsehood by claiming that he provided unique value by telling Adelson how to "present himself" to the Macau authorities.

26. Adelson, through counsel, has rejected Hananel's claims as preposterous on their face. There is no such agreement. Hananel provided no value. Billions of dollars are being invested in Macau and to think that Hananel has a claim to an option of 12% is absurd. LVSI has been in the hotel and casino business since 1989. Adelson is recognized worldwide as an expert in the casino business, having created the most successful hotel-casino in history. LVSI's or its affiliates success in Macau is the result of long hard work by Adelson and many others – but not Hananel.

27. Nevertheless, Hananel has harassed and threatened Adelson looking for a payoff. He has issued press releases and contacted Chinese and American news media to repeat and republish his defamatory claims. He has threatened to contact LVSI's joint venturers, the Macau government, and LVSI's and its affiliates bankers to interfere with financing. He has threatened to file claims in Macau.

28. Hananel has harassed and coerced former employees of Adelson in an effort to obtain false testimony.

29. Despite the pellucid and preposterous nature of his claims, his persistence has created a dispute as to what the IPI employment agreement negotiated between the parties provides, if anything, to Hananel with respect to Macau or otherwise.

30. Furthermore, plaintiff contends that defendant's claims are in the nature of extortion. Adelson and his companies must be able to deal freely with Macau and other projects without harassment and unjustified claims from Hananel.

## COUNT I
### Declaratory Judgment

31. Plaintiff repeats paragraphs 1-30 as if set out fully herein.

32. There is an actual controversy between the parties concerning the terms of an oral agreement made in Massachusetts.

33. Plaintiff alleges that he owes defendant nothing and that defendant is not entitled to any option, interest, profit or claim to any business in which plaintiff has any interest.

34. Plaintiff requests that the court declare the rights of the parties.

## COUNT II.

Declaratory Judgment (Amendment).

35. Plaintiff repeats paragraphs 1-34 as if set out fully herein.

36. As set forth in some detail in paragraph 21, *supra.* the plaintiff, through various business entities, has sought out, investigated, and is seeking other sites for casinos and hotels throughout the world.

37. On or about April 20, 2006, the Las Vegas Sands Corp., (the successor to LVSI and in which plaintiff serves as Chief Executive Officer and Chairman of the Board), applied for a gaming license in Hungary. (Las Vegas Sands Corp. has also applied for a gaming license in Singapore and is working on a casino venture in the United Kingdom).

38. In his deposition taken in this case, the defendant, has claimed that the plaintiff is obligated to give him an option for 12% of the shares in any casino venture in which the plaintiff (or any company in which he has an interest) made an investment, so long as Hananel planted "the idea." The defendant has claimed that such options were to be exercisable at any time, for a payment of 12% of the original investment, regardless of the value of the investment at the time Hananel should choose to exercise the option.. (Hananel deposition taken in this case, ("Hananel Deposition") pp. 82:10—84:6) All deposition references herein are attached as Exhibit "A".

DM1\630002.2

39. The defendant has asserted in an affidavit filed with this Court that the plaintiff "employed me to identify and work on casino projects in Israel, Jordan, Italy, Rhodes (Greece), Bulgaria, Ireland and <u>elsewhere</u>."

40. In addition, Hananel has asserted, in this case, that even if the "idea" came from his son, Hananel would be entitled to a 12% stock option in any casino investment that the plaintiff or one of his companies made. (Hananel Deposition, 135:9—23).

41. Hananel has also asserted that he would be entitled to a 12% option in any other venture anywhere in the world in which the plaintiff invested, as a result of Hananel's "idea." (Hananel Deposition, 123:10—28).

42. As a result of the recent application for a gaming license that has been made to the government of Hungary and because of the breadth of Hananel's claims, there is a compelling need for this court to enter a declaratory judgment that Hananel has no rights in any of the casino/hotel/real estate/investments anywhere in the world made by plaintiff or in which plaintiff has any interest.

WHEREFORE, THE PLAINTIFF DEMANDS JUDGMENT, IN ADDITION TO THE PRAYERS IN THE COMPLAINT, AS FOLLOWS:

1. On Counts I and II issue a declaration of the rights of the parties as requested.

2. On Counts 1 and II enjoin defendant from making any claim to any interests, profits, rights, royalties or otherwise in or to plaintiff's direct or indirect interest in hotels and casinos in Macau, Europe, the United Kingdom or anywhere else in the world.

3. For such other relief as is meet and just.

.

        The Plaintiff,
        SHELDON G. ADELSON,
        By his attorneys,


/s/  Franklin H. Levy
Franklin H. Levy, B.B.O. No.:  297720
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210
(617) 289-9200


/s/ Andrew H. Schapiro
Andrew H. Schapiro
Philip Allen Locovara
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, NY  10019
(212) 506-2672

Dated:  April 28 , 2006


## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 28, 2006.


/s/  Franklin H. Levy

11