IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
SHELDON G. ADELSON,                       )
                                          )
Plaintiff,                                )        Civil Action No.
                                          )
v.                                        )        **04-cv-10357-RCL**
                                          )
MOSHE HANANEL,                            )
                                          )
Defendant.                                )
_____)

**RESPONSE OF HANANEL TO PLAINTIFF'S OBJECTIONS TO THE  MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION OF ALLOWANCE OF
MOTION TO DISMISS FOR FORUM NON CONVENIENS**

Defendant Moshe Hananel ("Hananel"), pursuant to Fed. R. Civ. P. 72 and the Court's

order extending his time to respond until May 2, 2006, responds to the Objections of the Plaintiff

Sheldon G. Adelson ("Adelson") to Magistrate Judge Sorokin's March 28, 2006 Report and

Recommendation to the Court that Hananel's motion to dismiss for forum non conveniens be

allowed.

**INTRODUCTORY STATEMENT**

Adelson's Objection immediately sets the wrong tone for rejecting Magistrate Judge

Sorokin's lengthy, detailed, and well-supported recommendation, by stating (on page 1) that

Judge Sorokin has "thrown out" Mr. Adelson's case.  Judge Sorokin carefully pointed out that

Mr. Adelson's "case," with all its rights and remedies, is fully preserved in the prior pending

action before the Israeli courts.  Mr. Adelson has long had a residence, personal office, and

several businesses in Israel which made it perfectly convenient for him to litigate there.  He has

also actively chosen Israel as a forum for his case, and since 2001 has engaged enthusiastically in

litigation in Israel with Mr. Hananel concerning the fundamental, controlling issue, the terms of

his agreement with Mr. Hananel.  The Magistrate Judge has found, and Adelson does not

dispute, that "Adelson has already availed himself of the Israeli Court by filing suit against Hananel in that court as noted in footnote 1." Report at 7.

In these circumstances, Judge Sorokin applied long-standing Supreme Court, First Circuit, and District of Massachusetts precedent endorsing dismissal of duplicative litigation when all relevant considerations have been met. He correctly noted (Report at 9) that Adelson had found no precedent in which a United States Court had allowed such duplicative litigation to proceed. Adelson's Objection fails to meet the challenge, as this Response shows that all of his authorities are fully distinguishable and, upon review, contain substantial analysis supporting the Magistrate Judge's Recommendation of dismissal and the goal of avoiding wasteful duplicative litigation.[1] The Objection's suggestion that he deprived Adelson of anything to which he may have been entitled fails.[2] Magistrate Judge Sorokin stated:

> If this [U.S.] case proceeds, both the Court in Israel and the Court here will spend judicial resources adjudicating the same claim. Ultimately, one court will resolve the matter first, thereby rendering pointless the efforts of the other court (assuming the application of claim preclusion principles). Absent the application of claim preclusion principles, if this Court allows these two cases to proceed, simultaneously in two courts, it presents the likely risk of conflicting judgments.

Report at 10.

The central argument by Adelson, that he was deprived of his choice of forum, is without substance because Adelson initially chose <u>Israeli courts</u> as a forum for the resolution of the terms of his agreement with Hananel. Since 2001, he has engaged in the Israeli court actions by filing

---

[1]    Adelson's accusation on page 1 of the Objection that Judge Sorokin misunderstood, indeed reversed, a presumption in favor of a plaintiff's choice of forum ignores the Magistrate Judge's careful review of uniform precedent that the presumption weakens in the face of prior pending litigation in another convenient forum, and disappears when the plaintiff has actually or constructively chosen the alternative forum previously, as Adelson has done with Israel.

[2]    The Magistrate Judge could have, but did not, refer to Adelson's deposition statements admitting that his goal was to cause Hananel to exhaust his limited resources in fighting the present action (Hananel Memorandum in Support of Renewed Motion to Dismiss, Docket # 46, Exh. 1, Adelson Depo. 88: 14-22, 231: 15-20).

multiple affidavits of his own (placing himself at the center of each case), producing thousands of pages in Hebrew in document production asserting that they concern the employment agreement, engaging in motion practice, and appealing of an evidentiary matter (resolved in Hananel's favor) all directed towards litigating his claim that Hananel is not entitled to options in investments. Over the many years of Israeli litigation, he has never filed any motion asserting that he is in any way inconvenienced by the Israeli litigation, or that he cannot fully establish in the Israeli courts every right and remedy he may be entitled to, or that Israeli law does not apply. Given Adelson's enthusiastic embrace of the Israeli litigation for many years, any argument that Judge Sorokin has thwarted a legitimate "choice" fails.

This failure is highlighted by Adelson's choice of two First Circuit cases to cite in his Preliminary Statement. In *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir. 1992), *cert. den.*, 502 U.S. 1095 (*Mercier II*) the court affirmed a forum non conveniens dismissal in favor of Turkish courts even though (unlike the present case) both parties were United States citizens and no prior pending Turkish action existed. Adelson's quotation of dictum from Judge Selya's opinion for the Court in *Quaak v. Klynfeld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11 (1st Cir. 2004) ignores that the opinion roundly condemns the type of parallel lawsuit that Adelson has filed here. The First Circuit upheld Magistrate Judge Collings' recommendation, and Judge Saris's international antisuit injunction, precisely because they prevented the kind of harm Adelson is seeking to inflict on Hananel here. Judge Sorokin, of course, specifically addressed theses aspects of the *Quaak* case in his Report at 11 n.5 and it is unfair of Adelson to imply that he was not aware of it.

Moreover, Adelson's implication that because Judge Sorokin found that certain private convenience factors were in equipoise, they can be ignored, is incorrect. The facts in the record show that Judge Sorokin cautiously understated the private factors favoring the Israeli litigation.

## FACTS

Adelson's statements of fact on pages 2-3 are often wrong or misleading.[3]  Thus the Magistrate Judge properly took into account that although Adelson owned a dwelling in Newton, Massachusetts, he is a domiciliary of Nevada, is "a very wealthy international businessman with substantial holdings in the United States, Israel, and other countries around the world making him a reputed billionaire," and has (or has available to him through his Israeli citizen wife) a residence in Israel.  Oct. 2005 Report at 5.

Judge Sorokin also found that the agreement was negotiated in Israel.  Report at 8. Adelson's statement that the oral agreement between him and Hananel was "executed in Massachusetts" ignores Adelson's concession, in his deposition testimony, that, prior to the Massachusetts meeting on Dec. 5, 1995, there was "a deal with Moshe that [he] had in mind" as a result of their discussions in Israel over the preceding months and that the meeting was only to "confirm the deal."  Oct. 2005 Report at 7.  ". . . [P]laintiff and defendant discussed some or most of the general terms of defendant's employment prior to December 5th [1995]."  *Id.*[4]  The Objection also ignores that the oral agreement was for Hananel to work for Adelson in Israel, initiating and managing his investments there, and in other countries around the world, not

---

[3]     Judge Sorokin incorporated his factual findings in his Report on Hananel's motion to dismiss for lack of personal jurisdiction dated October 31, 2005 (Dkt # 78), adopted by the Court (order of Nov. 29, 2005) ("Oct. 2005 Report").

[4]     Judge Sorokin had noted that Hananel, who was present in Massachusetts primarily to seek treatment for his diabetes at the Joslin Clinic, "seriously dispute[d]" that any substantive discussions had occurred in Massachusetts, as he and Adelson had agreed on all terms while in Israel and that Hananel had begun to perform his duties, managing Israeli company and personal checking accounts for Adelson, appearing for him at directors' meetings in Israel, and directing Adelson's investments in Israel, in September-November 1995.  Oct. 2005 Report at 7, 9.  Judge Sorokin held himself bound to Adelson's version under the applicable standard on a motion to dismiss.  *Id.* at 9.  Notably, however, and relevant to the issue of forum non conveniens, Adelson, in years of prior litigation in the Israeli courts with Hananel over the terms of the oral agreement, had never mentioned, much less asserted, any connection with Massachusetts or its residents either in the formation or operation of the agreement.

including the United States.[5]

Contrary to the Objection's statement at 2 that "various" aspects of the relationship between Adelson and Hananel are being litigated in the prior pending actions in the Israeli courts, all aspects are being litigated there. Magistrate Judge Sorokin had earlier found (and the Court had adopted his recommendation) that the issues in Israel were identical to those of Count I:

> Several lawsuits are pending between plaintiff and defendant in Tel Aviv District Labor Court concerning severance, employment terms and what, if anything, plaintiff may owe defendant under the oral employment contract. In 2001, Hananel sued Adelson and IPI for compensation Hananel claims he was owed under his oral employment contract. In 2002, Adelson countersued in the same court, seeking the return of allegedly misused IPI funds. In 2003, Hananel filed a second suit against Adelson and IPI, claiming his oral employment contract with Adelson entitled Hananel to purchase twelve percent of the stock option shares in Adelson's new Macau casino venture. The Israeli court has consolidated the 2001 and 2003 cases.
> . . .
> At bottom, this case [the present action] concerns defendant's claim, under the oral employment agreement, to a twelve percent share [in] a casino plaintiff has developed in Macau.

Oct. 2005 Rept. at 12-13 (emphasis added).[6] Judge Sorokin again states, and Adelson does not try to contradict, that:

> Both parties agree that the very dispute before this Court, i.e. whether Defendant is entitled to 12% of Plaintiff's share of a casino development in Macau (or, stated more generally, whether Defendant is entitled to 12% of any business investment to which he referred Plaintiff during the course of Defendant's employ at one of Plaintiff's companies, is also pending before Israeli courts, in the form of a 2003 action filed by Hananel against Adelson.[7]

Report at 2 (emphasis added).

---

[5]    Adelson's suggestion at 2 n.2 that IPI's finances were "controlled from its Newton office" has no support

[6]    The subjects of the Israeli actions are described in the 7th Hananel Aff. filed herewith, which includes as an exhibit the relevant paragraphs from previous Hananel affidavits.

[7]    Part of Hananel's claim is the option to invest 12% of Adelson's original investment and to receive a 12% share which appears in the 2001 complaint in Israel at ¶ 8.2.

Although the "cause of action" of Hananel's 2003 complaint, which seeks remedies for Adelson's breach of contract and concealment concerning the Macau development, was not in the 2001 complaint (precisely because of Adelson's concealment), the legal theory, breach of contract, is the same, and the requirement that the Israeli courts determine the terms of the contract and their applicability is the same. The full congruence of the 2001 and 2003 actions, and the inseparable nature of the necessary determinations by the trier of fact, was finally determined by the (unappealed by Adelson) 2004 decision of the Israeli court to <u>consolidate</u> the two actions <u>for all purposes</u>. On July 21, 2004, Chief Judge Alia Fogel of the Israeli Labor Court ruled:

> Even though the two claims, of which consolidation is discussed here, do not deal in completely identical facts, both arise from <u>the same set of employment relationships, between the same parties, and in both the court will be asked to decide similar issues, namely the type of commitments that Plaintiff [Hananel] received, as he alleges, from the Defendants [Adelson and IPI], as to the terms of his employment.</u>
>
> Indeed, the two cases are in different stages of proceedings, but <u>after balancing all considerations, for each side</u>, and with the aim of <u>avoiding a situation in which two judges will reach different rulings on similar issues</u>, I was convinced that it is appropriate to consolidate the proceeding of the cases.

2d Hananel Aff. (Dkt # 21) ¶ 2. [8] In other words, Chief Judge Fogel applied a "balancing" test,

---

[8]    Previously, Judge Davidov-Mutola of the same court had ruled, on May 24, 2004, that the 2003 suit should be consolidated with the 2001 suit "to save judicial time and to prevent inconsistent decisions on the same issues." She stated that the 2003 suit was "another layer of" the 2001 suit. (1st) Hananel Aff. (Dkt # 12), ¶ 32 and Exh. 4. At the time Hananel filed the first action concerning contract terms and entitlement to share in investments, Adelson had not disclosed publicly that he had begun a casino development scheme in Macau (or that he had been directed to the Macau opportunity by Hananel, which he continues to deny.) Accordingly Hananel sued for recognition of his agreed share in Adelson's investments knew about in the Israeli companies iMDSoft and Denex (expressly mentioned in the 2001 case), and sued for his agreed share of Macau, after Adelson's investment became known, in the 2003 action, which was later consolidated by the Israeli court. This consolidation constitutes a clear determination that the terms of the Hananel agreement applied to Adelson's Macau opportunity in the same way as to the others.

        When Adelson responded to Hananel's 2001 suit against him, he was aware of the need

and found that the public interest in judicial economy and avoidance of conflicting rulings required placing the Macau claim together with the other claims arising from Hananel's employment contract. <u>This is precisely what Magistrate Judge Sorokin has done</u>, and Adelson is showing little regard for the respect due to either court by objecting to his decision and not appealing Chief Judge Fogel's.

Judge Sorokin also found that, not only the 2001 and 2003 consolidated actions but the 2002 Israeli action, which he found was <u>filed by "Adelson, through IPI,"</u> "share[s] some common facts with the instant [U.S.] suit; each involves roughly the same parties fighting over various aspects of Hananel's employment relationship or work for Adelson and/or IPI." Report at 3 and n. 1. In the face of this undisputed finding[9] Adelson cannot deny that he chose the Israeli courts as his forum nor can he reasonably suggest that he is being deprived of any right or remedy. In the face of his necessity of thoroughly litigating these issues in the Israeli courts, he cannot reasonably suggest that the convenience of the parties or the public interest of the courts in avoiding duplicative litigation is not substantially harmed by litigating them twice.

---

to prove every term of the employment contract, and especially aware of the need to prove terms concerning investment opportunities and Hananel's rights to share in them. For example, Adelson's 2002 affidavit in the 2001 Israeli case (now consolidated), at ¶¶ 33-37, discusses extensively his contentions on the terms and conditions of Hananel's right to receive options and "monetary remuneration" for investments found by Hananel. (1st) Hananel Aff. (Dkt # 12) Exh. 1. Moreover, the 2001 complaint itself, at ¶¶ 3.8-3.9, raised the issue of Hananel's option rights in Israel, Jordan, "or any other country," which was a phrase in a draft agreement <u>from Adelson's counsel in early 2001</u>, showing that Adelson was fully aware in 2000 that his obligation to Hananel to provide options extended to Macau, and that he was fully aware in 2001 that this obligation was encompassed in the 2001 Israeli action. Hananel's 2003 Complaint, Dkt # ____, at ¶ 6.3, quoted from attached the same draft agreement he had received from Adelson in early 2001. The draft agreement is Exh. 3 to 1st Hananel Aff. Dkt. # 12. Adelson's reference to "any other country" came from his knowledge, concealed from Hananel, that Adelson intended to pursue the Macau opportunity Hananel had initiated (and had indeed already begun to pursue it while concealing his actions from Hananel, and while engaged in firing Hananel in 2000).

[9]    As noted, exactly the same parties - Adelson and Hananel - are disputing exactly the same thing - whether the employment agreement entitles Hananel to participate with Adelson in investments initiated by Hananel - in the consolidated Israeli action. The Israeli actions include the Macau claim but are broader. Report at 6 n. 2.

Adelson's suggestion in the Objection at 3 that "the Israeli proceedings have not

progressed far" is disingenuous at best. Judge Sorokin specifically addressed and rejected this

argument. Report at 10 n. 5. His rejection was solidly based on the record of the Israeli court

proceedings, which demonstrate Adelson's constant employment of motion practice and use of

the Israeli right of interlocutory appeal on preliminary evidentiary issues (an appeal which he

filed in September 2003 and lost on March 1, 2006, Dkt # 132, and is not pending as of May 1,

2006, contrary to the statement in Adelson's Objection. Despite his activity, the Israeli judges

have imposed regular deadlines in an effort to move the cases to trial.

## ARGUMENT

I.    **THE MAGISTRATE JUDGE CORRECTLY APPLIED SUPREME COURT AND FIRST CIRCUIT PRECEDENT IN BALANCING ADELSON'S WEAKENED CHOICE OF FORUM.**

The fundamental principles supporting dismissal in the face of a plaintiff's choice of

forum appear in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507-509 (1947).

> The principle of *forum non conveniens* is simply that a court <u>may resist imposition upon its jurisdiction</u> even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

> . . . .

> . . . [T]he problem is a very old one affecting the administration of the courts as well as the rights of litigants and both in England and in this country the common law worked out techniques and criteria for dealing with it.

> . . . .

> . . . The doctrine leaves much to the <u>discretion of the court</u> to

- 8 -

> which plaintiff resorts, and experience has not shown a judicial tendency
> to renounce one's own jurisdiction so strong as to result in many abuses.

330 U.S. at 507-508 (citations omitted) (emphasis added).  The Court indicated that one purpose

of the doctrine to avoid allowing a plaintiff to "'vex,' 'harass,' or 'oppress' the defendant by

inflicting upon him expense or trouble <u>not necessary to his own right to pursue his remedy</u>."  *Id.*

at 508 (emphasis added).  Magistrate Judge Sorokin has properly applied this doctrine, and

Adelson's accusations fail.

Adelson's statement that he will be "forced to litigate overseas" (Objection at 4) rings

hollow, as he himself has chosen  to litigate enthusiastically in Israel where he has a residence

and businesses, and more than ample resources  Not only has the Recommendation properly

given him the unconstrained "right to pursue his remedy," (as in *Gulf Oil* quoted above)but it has

endorsed his earlier choice.  The Objection, by seeking to imply that Adelson is being punished

for non-existent harassment, ignores the express language of the Supreme Court in *Gulf Oil*

explaining why the doctrine exists and has existed in the common law of England and the United

States: when the plaintiff has an unimpaired right to pursue his remedy in another forum,

dismissal improves the administration of justice as well as the fairness to litigants.[10]

In this regard, Adelson also fails to prove that "[c]ourts almost never dismiss a case

where doing so would force an American plaintiff seek relief in a foreign court."  Objection at 4.

As stated above, *Mercier* is just such a case.  Adelson's "see" cites (Objection at 4) are easily

distinguishable.  *Mercier I* resulted in affirmance of dismissal after remand, in *Mercier II*.  In

*Founding Church of Scientology v. Verlag*, 536 F.2d 429 (D.C. Cir. 1976) the action, concerning

an allegedly libelous publication in the District of Columbia, was <u>between U.S. residents</u> and all

---

[10]    Adelson cites *Alpha Therapeutic Corp. v. Nikkon Hoso Kyokai*, 199 F.3d 1078 (9th Cir. 1999) but this case does not stand as a critique of Judge Sorokin's report.  In that case, the claim was for harm for defamation resulting from a television broadcast in the United States, and no other action was pending.  *Id.* at 1082.  Unlike the Magistrate Judge, the district judge in *Alpha*

non-U.S. defendants had been dismissed.  *Id.* at 435.[11]  In *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1344 (2d Cir. 1972) the action involved misrepresentations made in New York about the value of a British company, *id.* at 1331-1333.  In *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir. 1972), the Massachusetts plaintiff had sold chemicals to a French company expecting payment under a letter of credit from the defendant French bank, which had been issued in Boston; no other action was pending.  *Id.* at 377.  In *Hoffman v. Goberman*, 420 F.2d 423 (3d Cir. 1970), the plaintiff was a resident of Maryland and the defendant of Pennsylvania.  *Id.* at 424.  No other action was pending.  In *Burt v. Isthmus Dev. Co.,* 218 F.2d 353 (5th Cir. 1955), the plaintiff was a New York citizen and the defendant was a Texas corporation, and no suit was pending in Mexico, the proposed alternative forum.  *Id.* at 354.  Adelson's quotations from both *Hoffman* and *Burt* are at best dicta with no bearing here.  In *Bravo, Inc. v. Chum, Ltd.*, 60 F. Supp. 2d 52 (E.D.N.Y. 1999), the action involved substantial alleged misrepresentations and trademark misconduct <u>in the United States</u>.  *Id.* at 61.  In Wright & Miller § 3828 at 308, the authors confirm the flexibility that a court should apply because a United States citizen does not have an absolute right to proceed in a United States court.

Adelson's accusation (Objection at 5) that Judge Sorokin gave "short shrift" to Adelson's U.S. citizenship is incorrect.  The Report noted the citizenship, weighed Adelson's belated choice of a United States forum against his earlier, longstanding choice of an Israeli forum both defensively and offensively, and reached the conclusion endorsed by the doctrine of forum non conveniens.  Magistrate Judge Sorokin did not cite to the *MLC (Bermuda)* and *Linkco* cases to

---

had conducted no private factor analysis and had ignored public factors.  *Id.*  at 1092-1093.

[11]    The District of Columbia Court of Appeals noted that "the doctrine that a United States citizen <u>does not have an absolute right</u> to use United States courts usually is expressed in the context of a <u>citizen doing business abroad</u> . . . .  And usually the<u> defendant was not a United States citizen or resident, and was only served because of minimal contacts with the forum.</u>"  536 F.2d at 435 (citations omitted) (emphasis added).  This is precisely the context of the present case, as Adelson is doing business abroad and does not have an absolute right to use U.S. courts.

undermine citizenship, but to point out the consistent awareness by courts (like the Supreme Court in the passage from *Gulf Oil* cited above) of the danger of allowing a plaintiff, whatever his citizenship, to be tempted into abusing the court system and harming the defendant by bringing litigation in a distant forum where it was not necessary for vindication of a plaintiff's rights.  Both cases provide clear and substantial support for the Recommendation, as they upheld Magistrate Judge Sorokin's efforts to determine "[T]he ultimate inquiry [which] is where trial will best serve the convenience of the parties and the ends of justice." *Iragorri v. International Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000), quoting *Koster v. (American) Lumbermen's Mut. Cas. Co.,* 330 U.S. 518, 527 (1947).


## II.     THE RECOMMENDATION CORRECTLY RELIED ON THE PRIOR PENDENCY OF A CONCURRENT ACTION AS A PUBLIC INTEREST FACTOR.

Adelson's accusation (Objection at 6) that Magistrate Judge Sorokin was "clearly erroneous" in applying the great public interest in preventing the multiplication of duplicative actions is wrong.  Adelson's purported case authority does not apply, and he relies on substantially incorrect  factual statements concerning the identity of the Israeli court action with the present one (an identity to which, Judge Sorokin noted, "[b]oth parties agree."  Report at 2.

### A.     Pendency Of A Prior Action On The Same Claim Between The Same Parties Is A Substantial Ground For Dismissal.

The high value to the public interest of preventing a plaintiff from creating duplicative litigation in another forum is evident in the quotations from *Gulf Oil* above, and has been endorsed by all the precedents Magistrate Judge Sorokin relies on.  It is inconceivable that any court, applying the goals and principles of *Gulf Oil*, would not consider a prior pending action between the same parties on the same claim to be powerful grounds for dismissal.  Indeed, if, as the First Circuit in *Mercier II* ruled, an action by American citizens against an American

corporation can be dismissed in favor of an action in Turkey that has not even been commenced, how much more substantial the grounds would have been if there had been a prior pending action there and, as in the present case, a choice by the plaintiff to litigate there.

A review of the cases Adelson cites shows that his radical request to ignore his own long-standing litigation of the Hananel agreement in Israel has no basis in law.  In *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000) the plaintiffs' (residents of New Jersey and Maryland) claim was for wrongful death resulting from a terrorist attack on a hotel in Egypt owned by the defendant, a Delaware corporation with offices in the forum (New York).  The "related" action in Egypt was by "<u>completely different</u>" plaintiffs.  *Id.* at 148 (emphasis added). Moreover, the *Guidi* court itself expressly distinguished cases where, as here, "the parties to the American and foreign actions were identical and there was the likelihood of 'significant duplication of legal efforts on behalf of all the parties.'"  *Id.* (citations omitted).  The rest of Adelson's argument is based on this fundamental error, avoided by the *Guidi* court and by Judge Sorokin but urged on the Court by Adelson, of equating a "related" pending case with one in which the parties and issues are identical.[12]

---

[12]     In *Peach v. Shropshire,* 2006 WL 456772 (W.D. Wash. Feb. 23, 2006), the <u>plaintiff</u> in a wrongful death action had filed the previous suit in the foreign forum, and therefore her choice of forum was not an issue. *Id.* at \*9.  In  *American Stock Exch., LLC v. Towergate Consultants, Ltd.,* 2003 WL 21692814 (S.D.N.Y. July 21, 2003) the court, while noting (\*2, citations omitted) that "there need not be strict identity between the two parties and issues in two actions in order to defer to a prior pending foreign action," found it "critical" that the plaintiff was "absent from the foreign litigation."  In *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 911 F.2d 993 (5th Cir. 1990), not only does the citation not support Adelson's blurb, but the court affirmed a stay of an identical federal suit in favor of a state suit, *id.* at 1005, noting "other difficulties of proceeding in parallel forums [such as] <u>waste of judicial resources, duplication of effort, expense</u>" *id.* at 1005 n. 8 (emphasis added), all of which are considerations under *Gulf Oil.*  In *Asiatic Petroleum Corp. v. Italia S. A. di Navigazione,* an <u>admiralty</u> case decided before *Gulf Oil,* the court expressly found that the plaintiff had not achieved the pre-judgment security provided under admiralty law in the other pending actions, and that he would be deprived of a remedy by dismissal.  In *Rederiaktiebolaget  v.  Compania De Navegacion "Anne," S.A.*, 124 F. Supp. 118 (S.D.N.Y. 1954), another admiralty case, the only ground for not dismissing the action was, just as in *Asiatic Petroleum*, that there was insufficient security in the action (which itself

In *Linkco*, previously mentioned, there was a Japanese judgment (which the plaintiff was appealing), and the action against the related defendant was allowed to proceed explicitly because he was <u>not</u> a party to the Japanese action.  In *MLC*, the court found that the parties and issues in the two actions were substantially identical, as Adelson admits (Objection at 8); in the present case, the parties are identical and, as Judge Sorokin noted, the parties agree that the issues are identical.  *Pritzker v. Yari,* 42 F.3d 53 (1st Cir. 1994), as Adelson reluctantly admits, endorse the avoidance of multiple duplicate litigations, again confirming that the First Circuit would endorse Judge Sorokin's result as favoring a strong public interest.[13]  Unfortunately, Adelson cannot resist an egregious misstatement of fact in seeking to justify his radical proposal to ignore this interest, by suggesting that the agreement was "negotiated and formed entirely in Massachusetts" (Objection at 8); as we have seen, and Judge Sorokin found, Adelson conceded that he had discussed most of the terms in Israel before Hananel came to Massachusetts. *See, e.g.,* Adelson's Interrogatory Answer No. 2, attached to Hananel Memorandum Docket # 46 as Exh. 3, page 4 ("*we did reach an understanding sometime in or around November 1995. . . .*").

Adelson again repeats, Objection at 8, that the Israeli courts are "not far advanced."  This statement mocks the five-year dedication of Israeli judges, in the face of Adelson motion practice

---

was in the United States District Court for the Canal Zone).  *Id.* at 118.  *Quaak* has been discussed previously; the First Circuit opinion affirmed harsh measures to stamp out later-commenced duplicative litigation.  In *Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*, 315 F. Supp. 2d 286 (W.D.N.Y. 1994) the foreign action was for trademark violations in Denmark (not the Netherlands) while the U.S. action was for violations in the U.S.  *Id.* at 291.

[13]    Adelson's criticism, Objection at 8 n. 6, of the Magistrate Judge's reliance on *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp 122 (S.D.N.Y. 1986), is misplaced.  Adelson supports his criticism only with *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21 (2d Cir. 2002), a substantially different case in which the plaintiffs were a class of investors in the Unites States claiming securities fraud against a Canadian corporation which had U.S. subsidiaries and traded on the New York Stock Exchange.  *Id.* at 25.  Indeed, *DiRienzo* pointed out precisely those factors which make *Diatronics* apposite to the present case, namely that an American investor had negotiated contracts in Israel and had purchased part of an Israeli company, not unlike Adelson's negotiations, investments, and other activities in Israel out of which the prior pending actions arose.

and interlocutory appeal, to bringing the issue of the contract terms to trial.[14]  Moreover,

Adelson's Objection at 8 makes the incorrect assertion that Adelson has tied up the litigation

with "disputes and appeals related to jurisdiction" when Adelson has, despite filing many other

motions, not made any motions, much less appeals, to avoid personal jurisdiction in Israel (a

frivolous enterprise in any case, as shown by Judge Sorokin's findings).[15]

> **B.      "Both Parties Agree That The  Very Dispute Before This Court . . . Is
> Also Pending Before Israeli Courts . . . ."**

The above quotation from the Report at 2 is not undermined by Adelson's arguments.[16]

Adelson seeks to avoid the undisputed identity of Hananel and Adelson as parties to both suits,

but the participation of Adelson's wholly owned alter ego IPI in the Israeli suit has no legal or

practical effect on the grounds for dismissal.  (Indeed, it weighs in favor of Israel, as any issues

to which it is a necessary party can be decided there but not here.)  Moreover, Adelson is

incorrect to claim that the U.S. suit is somehow broader than the Israeli suits, because the Israeli

suits have been based on the entire contractual relationship between Adelson and Hananel since

---

[14]     Like Adelson's other citations, *Ocean Shelf Trading Inc. v. Flota Mercante Grancolombiana S.A.*, 638 F. Supp. 249 (S.D.N.Y. 1986) is inapposite.  The prior pending action in Colombia was, the court said, favored dismissal only slightly when private factors were considered; but because "[i]t is a waste of judicial resources to have two actions pending at once" the public interest favored dismissal.  *Id.* at 253.  The court granted the motion to dismiss for forum non conveniens.  *Id.*

[15]     Adelson ostensibly supports his incorrect allegation of a jurisdictional dispute by citation to "*infra* Section IV," i.e., the Objection itself.  Examination of Section IV shows that the only allusion to a jurisdictional dispute appears on page 15, where the ostensibly supporting citation is to page 4 Adelson's Dec. 30, 2005 memorandum in opposition to Hananel's motion to dismiss.  This Page 4 has no reference to a jurisdictional dispute.  Page 3 of that document contains an unsupported reference to an "objection on jurisdictional grounds."  When this game of hide-the-ball is exposed, it turns out that there is no ball.

[16]     Adelson, Objection at 10, quotes from the Report at 3, where Judge Sorokin is discussing the combination of all issues in the Israeli actions; there can be no dispute that he properly concluded that the parties and the issues in the U.S. suit were comprehensively included in the Israeli consolidated action.  Remarkably, Adelson also cites (Objection at 9) three cases which point out that where a foreign action is not binding on a party a court has the discretion to refuse to defer to it; these cases support the Report, because no dispute exists that the Israeli actions are

2001, and would include all of the rights and remedies of both parties.  He is forced to admit, by

quoting ¶¶ 29 and 33 of his own Complaint in the present action, that the entire relationship is at

stake; that is what is being tried in Israel.  *See* Report at 11.  Adelson is also forced to admit

(Objection at 10 and n. 9) that Hananel correctly defined the scope of the Israeli litigation as

including all of the opportunities Hananel initiated, which occurred in many countries (other than

the United States).  All of the obligations of Adelson to Hananel will receive binding

adjudication in the Israeli courts, where both parties are (and have been since 2001) seeking to

establish all the terms of the agreement between them.[17]

### C.    The Magistrate Judge Correctly Decided That This Action, And Not The Israeli Action, Should Be Dismissed.

In an apparent slip, the Objection at 11 defines the issue as to whether the cases should be

"consolidated."  As both parties seem to agree, however, the later-filed action should be

<u>dismissed</u> when "judicial economy does militate in favor of" (Objection at 11) relegating the

parties to the forum they both had chosen (especially where, as here, Adelson chose Israeli courts

for years).  Adelson, of course, has never made any motions to dismiss the Israeli actions since

they began in 2001.

Adelson proceeds in this section of the brief to raise a straw man, implying that the

record permitted any doubt that the same parties had been litigating the same terms of the

agreement between them since 2001, not just since 2003; that Adelson himself, by acting through

his alter ego IPI, had filed suit in the same Israeli suit against Hananel concerning actions during

his employment; that the Israeli court had ordered the 2001 and 2003 suits consolidated, an

action which Adelson had not appealed; and, significantly, that Adelson had never, before 2004,

---

binding on Adelson.

[17]    Adelson's Objection at 9-10 repeats the incorrect characterization of Hananel's claim as a right to "obtain" 12% of Adelson's investment; even Adelson's Complaint at ¶ 25 recognizes that Hananel is claiming an "option to purchase 12%" of Adelson's investments initiated by

suggested that any part of the agreement had been formed in Massachusetts, or that the agreement and performance or breach had any relationship to Massachusetts, or made any motions to apply Massachusetts law to the agreement and its performance or breach.[18]

### III.     THE MAGISTRATE JUDGE WEIGHED THE ISSUE OF APPLICABLE LAW, AND ADELSON'S YEARS OF LITIGATION UNDER THE APPLICATION OF ISRAELI LAW TO THE AGREEMENT FAVOR DISMISSAL.

Adelson's Objection at 11-15 argues for the first time a suggestion that Massachusetts law may apply, which is wrong, and that the application of Massachusetts law is grounds for discarding the Recommendation, which is also wrong. Adelson has never made a motion to object to the application of Israeli law to the issues, and the courts and parties have proceeded according to Israeli law throughout the proceedings.

The Magistrate Judge was essentially correct in finding that "neither party has engaged in a choice of law analysis." Report at 10 n. 5.[19] He was also correct in choosing not to resolve the choice of law issue because any facts that might have supported a choice of Massachusetts law are in substantial dispute, while the facts that support a choice of Israeli law are substantially

---

Hananel.

[18]     Adelson's incompatible positions in Israel and Massachusetts raise the specter of inconsistent adjudications which the doctrine of forum non conveniens and the Report seek to avoid. *See* Report at 10 (dismissal avoids "likely risk of conflicting judgments").

[19]     With respect, Hananel states that no choice of law analysis has been required because the undisputed facts and the actions of the parties show that Israeli law will apply to the agreement. Hananel respectfully points out that the Magistrate Judge need not have stated that "both parties assume that the law of their chosen jurisdiction applies." Report at 10 n. 5. There is a substantial basis for concluding that Adelson has conceded that the law of Israel applies, as he has litigated the agreement in Israel for many years, and chose Israel as his jurisdiction by bringing suit himself there (through IPI), without ever stating to the Israeli court that Massachusetts law would apply (or, indeed, that the agreement had any connection with Massachusetts). Thus despite his fleeting reference to an argument that Massachusetts law should apply in his first opposition brief, Dkt # 14, on the sole grounds that the agreement was made in Massachusetts (a highly disputed issue, and a claim never made to the Israeli courts before commencing the present action, *see* Adelson affidavits dated Sept. 29, 2002, Exh. 1 to 1st Hananel Aff. Dkt # 12, 74 and Sept. 7, 2004, Dkt. # 31), Adelson has shown no basis to consider the applicability of any law other than Israeli law.

undisputed (negotiation in Israel, employment in Israel, performance in Israel and elsewhere outside the United States, Adelson's failure to file a motion to use any law but Israel's or to assert any contacts with any jurisdiction other than Israel during years of Israeli litigation). Finally, he correctly pointed out that the Supreme Court (*Piper Aircraft*) had said that Adelson had no absolute right to apply the law he attempted to choose.

The weakness of Adelson's current argument is shown by the inappropriateness of his citations. *Van Dusen* concerns a 28 U.S.C. § 1404 transfer of venue, and lacks the considerations properly applied by the Magistrate Judge. *Beltappo, Inc. v. Rich Xiberta, S.A.,* 2006 WL 314338 (slip op.) (W.D. Wash. Feb. 7, 2006) concerns a commercial contract for the sale of goods for the Spanish defendant to purchase synthetic corks from the Washington plaintiff, and the Washington suit was filed before the Spanish suit. *1, *3.

Adelson's suggestion, made for the first time, that this Court could try the validity of the agreement and interpret its terms while leaving the determination of breach to the Israeli court, runs afoul of his own Complaint, which sought a determination of breach. At the time of filing his Complaint Adelson knew that the issues being litigated in Israel between himself and Hananel would resolve this action as well, and the Magistrate Judge was correct in his analysis.

Adelson's summary of Massachusetts choice of law criteria is correct, but proves that a Massachusetts court would apply the law of Israel. The fully supported finding of the Magistrate Judge, based on Adelson's statement in his deposition,[20] was that "the agreement was negotiated in Israel" (Report at 8). The rest of Adelson's present argument for choice of Massachusetts law would also fails, as the contract involved worldwide performance, which did not include the United States, and Hananel was based in Israel where Adelson had a residence and office (and

---

[20]    Although an admission by the party is such strong evidence that no more is necessary, the record before the Magistrate Judge contained ample additional supporting uncontradicted evidence, only part of which he summarized in Oct. 2005 Report at 7, and the rest of which

from which the initiating trips to Macau and other opportunities originated); and Adelson, as the Magistrate Judge found, is a businessman with worldwide interests.

## IV.    THE MAGISTRATE JUDGE PROPERLY CONSIDERED RECORD EVIDENCE OF ADVANCED ISRAELI PROCEEDINGS AND ADELSON'S ACTIONS THEREIN.

The Magistrate Judge was correct in refusing to find that the progress of the Israeli courts weighed against dismissal.  With respect, he could have found that the Israeli courts had acted expeditiously and that Adelson's motion practice and interlocutory appeal (decided on March 1, 2006, in favor of Hananel, and is not pending, contrary to the statement in the Objection at 15; Hananel promptly made the decision part of this record, Dkt. # 132, and the Magistrate Judge considered it, Report at 2) were the cause of any delay asserted here by Adelson.  Notably, Adelson's Objection <u>does not deny</u> that he was the cause of the alleged delays.

As previously noted, Adelson has never filed any motion in Israel concerning lack of personal jurisdiction over him, and no record citation supports his allegation of a dispute. Adelson's argument, Objection at 15, that substantive depositions have been taken in this case, is incorrect, because this Court specifically ordered that discovery be limited to issues of personal jurisdiction over Hananel.  Adelson  (Objection at 16) raises a straw man because neither the parties nor the Magistrate Judge suggested that the proceedings in this Court have been inordinately delayed.  (Such an argument mocks the doctrine of forum non conveniens and the deliberations of this Court.)

Adelson underrepresents the force of the Magistrate Judge's findings when he suggests that they were based merely on the two-month priority of the Israeli action filed in 2003.  The Magistrate Judge found (as had the Israeli court in a 2004 decision Adelson did not appeal) that the issues had been asserted between the identical parties in 2001.  Report at 2, 3, 10.  Adelson raises another straw man because the Magistrate Judge did not base his Report on a finding of an

---

appears in the documents and affidavits of Hananel and others in Dkt ## 12 (74) and 21.

inordinate burden on this Court, but on the longstanding policy of the Supreme Court, the First

Circuit, and the District of Massachusetts against multiplying litigation unnecessarily.

**V.      UNDISPUTED EVIDENCE IN THE RECORD SHOWS THAT PRIVATE FACTORS
        CONSISTENTLY FAVOR HANANEL.**

In the guise of objecting to the Magistrate Judge's statement that the private factors were

"in equipoise," Adelson repeats (Objection at 16-19 and n. 16) the previously discredited

argument that this Court lacks the power to enforce the public factors favoring dismissal.  In fact,

undisputed evidence shows that the private factors favor Israel, and that the Magistrate Judge

was being overly cautious in finding them in balance.  The Court need go no farther than the

undisputed fact that Adelson never made any motion to the Israeli court concerning any

inconvenience to him in litigating there, and indeed confirmed the superior convenience of Israel

by filing suit there himself (through IPI).[21]

**A.      The Magistrate Judge Correctly Found That Israeli Procedures And
        Witness Locations Supported Dismissal.**

Adelson unfairly attacks (Objection at 17) the Magistrate Judge for his acknowledgement

(Report at 4) that Adelson's witnesses can testify in Israel by video hookup.[22]  Moreover,

Adelson does not deny that Adelson's counsel admitted as much to the Magistrate Judge at the

hearing.  The record before Judge Sorokin also included an undisputed quotation from the

Evidence Ordinance of Israel permitting a judge "to allow any party to submit the testimony

transcript [of a foreign interrogation] as evidence in such a case" and that Israel is a signatory to

the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or

---

[21]     In that regard, the *Champion* case stands for the proposition that Adelson can fairly be
held to his long-standing (2001-2004) choices to both defend and attack Hananel in Israel on the
agreement and its performance.
[22]     Adelson calls the Magistrate Judge's statements "unsupported speculation" and an
"impermissible reversal of the burden of proof."  Objection at 17.  The Magistrate Judge,
however, demonstrates familiarity with the record that the Objection lacks.

Commercial Matters.  Reply Memorandum, Dkt. # 112, at 10-11.  Adelson, having used Israeli

counsel for so many years in the litigations there, must be aware of this rule and it is

disingenuous of him to attack the Magistrate Judge for lack of authority.  Contrary to the

statement in the objection, under the Hague Convention Adelson enjoys in Israel the same rights

to compel foreign testimony as he would in the United States.[23]

      In discussing the convenience of the parties in obtaining witnesses, the Magistrate Judge

underestimated the value of Israeli witnesses who will support Hananel's claim for options, by

testifying as to Adelson's conduct during the negotiation of the agreement in Israel in 1995

(before December), during Hananel's employment in Israel, and at or around the time Hananel

delivered the Macau initiative to him in Israel.  If Adelson denies the terms of the agreement and

the initiation of Macau, as expected, these Israeli witnesses will become highly relevant.

Adelson himself has identified Israeli witnesses who have given affidavits in Hebrew and has

produced many documents in Hebrew.  *See* 7th Hananel Aff., Dkt # 89, ¶¶ 4-7.  All of the

witnesses Adelson now claims he might need, Objection at 18, were considered by the

Magistrate Judge and do not provided grounds for rejecting his conclusion that Adelson could

easily continue to litigate and prepare for trial in Israel as he has done for years.

### B.    The Language Issue Favors Israel.

      Adelson's Objection based on an assertion that he will not be able to understand the

proceedings in the Israeli courts has never been raised before in this Court or in Israel.  It is also

simply disposed of for this reason.  As noted, Adelson chose to sue in Israel, and has identified

Hebrew-speaking witnesses and numerous Hebrew documents as relevant, as has Hananel; these

---

[23]    On the record in the present case, *Terris-Feldman v. Dan Hotels of Israel*, 1997 WL
109441 (S.D.N.Y. Mar. 11, 1997) is not apposite.  In that personal injury action commenced by a
United States plaintiff (with no other action pending) the court relied principally on the
plaintiff's need for medical testimony from her U.S. physicians, and apparently relied only on
statements by the defendants concerning Israeli procedure, not taking into account Evidence

would require translation in the United States, but not in Israel.[24]

## Conclusion

For the above reasons, the Court should confirm the Report and Recommendation.

Dated: May 2, 2006                                   MOSHE HANANEL
                                                     By His Attorneys,


                                                     _/s/James A.G. Hamilton_____


                                                     James A. G. Hamilton (MA Bar # 218760)
                                                     PERKINS, SMITH & COHEN, LLP
                                                     One Beacon Street
                                                     Boston, MA  02108
                                                     617.854.4000

RespToObjToReport-31216-1

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 2, 2006.
                                                     /s/ James A.G. Hamilton_____

---

Ordinance 13 or the Hague Convention as Judge Sorokin did.  *Id.* at \*6.

[24]      The Report mentions Hananel's "diabetes and . . . other health problems," (at 6) (actually an advanced diabetic condition that limits travel), and noted previously (Oct. 2005 Report at 7) that he is legally blind.  Hananel requires readers and equipment to lessen the consequences of this disability, and he is able to rely on family members in Israel but would not be able to in the United States.  1st Hananel Aff., Docket # 12, 74, ¶ 3.  *Boudreau v. Scitex Corp., Ltd.*,  1992 WL 159667 (D. Mass. June 25, 1992)(Objection at 19) supports Hananel's arguments.  In that case, the plaintiff commenced the <u>only</u> action in Massachusetts and Judge Young held that Israel was <u>an equally convenient forum</u> to Massachusetts, allowing the first-filed plaintiff's choice to tip the balance.  \*1, \* 5.  He also recognized the burden of expensive translations and imposed them on the plaintiff.  *Id.*