# United States Court of Appeals
## For the First Circuit

Nos. 06-2281, 06-2282

SHELDON G. ADELSON,

Plaintiff-Appellant/Cross-Appellee,

v.

MOSHE HANANEL,

Defendant-Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Fusté, District Judge.

Andrew H. Schapiro, with whom Philip Allen Lacovara,
Christopher J. Houpt, Mayer, Brown, Rowe & Maw LLP, Franklin H.
Levy, and Duane Morris LLP, were on brief, for appellant/cross-
appellee.
James A. G. Hamilton, with whom Burns & Levinson LLP was on
brief, for appellee/cross-appellant.

December 5, 2007

* Of the District of Puerto Rico, sitting by designation.

**TORRUELLA**, **Circuit Judge**. This is an appeal from the district court's dismissal of a case for forum non conveniens. Plaintiff Sheldon Adelson, a United States citizen, is an international businessman with substantial holdings around the world, including several casinos and a corporation named Interface Partners International, Ltd. ("IPI"). IPI is a Delaware corporation which was established for the purpose of making business investments in Israel, and has offices in Needham, Massachusetts, Nevada, and Israel. The defendant, Moshe Hananel, is a citizen and resident of Israel who was hired in 1995 to serve as the General Manager of IPI's operations in Israel. Adelson terminated Hananel's employment with IPI in April 2000, resulting in several lawsuits in an Israeli labor court. In February 2004, Adelson filed the instant suit in the United States District Court for the District of Massachusetts seeking a declaration of the parties' respective rights pursuant to an oral employment contract between IPI and Hananel.

After finding that it had personal jurisdiction over the defendant for the declaratory action, the district court dismissed the case for forum non conveniens. The court determined that Israel is an adequate alternative forum and that the balancing of public and private interest factors weighs in favor of the Israeli forum. Adelson v. Hananel, No. 04-10357 (D. Mass. July 18, 2006) (order dismissing the case on grounds of forum non conveniens).

-2-

The plaintiff now appeals, arguing, inter alia, that the district court failed to afford heightened deference to the plaintiff, a U.S. citizen, and his choice of forum, and erred in relying on the pendency of concurrent action in Israel. The defendant cross-appeals and contends that the district court lacks personal jurisdiction over him. We affirm the district court's finding of personal jurisdiction, but reverse the dismissal for forum non conveniens.

## I.  **Background**

Adelson and Hananel enjoyed a social friendship prior to their decision to become involved in business together. In late 2005, Hananel became aware that IPI's General Manager in Israel would be vacating that position and he expressed interest in the job. According to the facts alleged in the complaint, on December 5, 1995, Adelson, Hananel, and IPI's General Counsel, Paul Roberts, met in IPI's office in Needham and formally agreed that Hananel would become a full-time employee of IPI.[1]  Hananel's responsibilities were to identify, recruit, and hire business analysts and portfolio managers who would help IPI search out and identify opportunities in Israel in the high technology sector. His agreed salary was $100,000 and twelve percent of the net profits realized by IPI from any high tech investments which were

---

[1] Although the exact date on which they agreed that Hananel would begin his employment with IPI is in dispute, he became a full-time employee by January 1, 1996.

-3-

found, recommended, and made as a result of his efforts. Although the parties confirmed and finalized the terms of employment and all three men shook hands, nothing was ever set in writing.[2]

In the course of Hananel's employment, he and Adelson stayed in constant communication via daily telephone calls to discuss IPI business. Although it is unclear whether Adelson was in Massachusetts during those phone calls, it is undisputed that the substance of the conversations was IPI-related. Hananel was also in frequent contact with other IPI officers, such as Chief Financial Officer Stephen O'Connor and IPI's Treasurer, who were based in Needham. The Needham office also managed all of the budgeting and funding for the Israel branch; Hananel submitted his annual budget to and made all requests for operating funds through that office because the funds were held in Massachusetts bank accounts. Various written communications between Hananel and O'Connor confirm that reporting structure.

On at least one occasion, Hananel went to Massachusetts to attend a meeting on behalf of an Israeli company, iMD Soft, Ltd., in which IPI had a substantial investment. As a representative of IPI, Hananel was a member of iMD's Board of

---

[2] According to an affidavit submitted by Roberts, he offered to prepare a written contract memorializing the terms of the employment contract, but Hananel replied that it was unnecessary because of his personal relationship with Adelson.

Directors and participated in a meeting with officers from Agilent
Technologies in Andover, Massachusetts.

Hananel's employment was terminated in April 2000,
allegedly for malfeasance. Adelson claims that Hananel did little
to no work for IPI and used IPI's finances and personnel for his
own personal and business purposes. In 2001, Hananel sued Adelson
and IPI in Tel Aviv District Labor Court for compensation which he
alleges he was owed under his oral employment contract. Adelson
countersued in the Israeli court, seeking the return of the
allegedly misused IPI funds. In February 2002, as the parties were
negotiating the severance terms, Hananel demanded twelve percent of
Adelson's shares in a new multi-billion dollar real estate, casino,
resort hotel, and convention project in Macau, China. Hananel
claimed that he had facilitated the venture and, pursuant to his
employment contract, was entitled to a percentage of the shares.
Denied his request, Hananel filed a second suit in the Tel Aviv
District Labor Court alleging that he was entitled to twelve
percent of the stock option shares. The Israeli court soon
thereafter consolidated the two cases.

Adelson filed the instant complaint in federal court on
February 23, 2004, seeking a declaratory judgment regarding
Hananel's alleged interest in the Macau business, injunctive
relief, and damages. The complaint alleges that Hananel harassed
and threatened Adelson and IPI, issuing defamatory claims in press

releases in Chinese and American news media and threatening other parties involved in the business project. Adelson contends that Hananel's claims amount to extortion and that they are inhibiting his ability to deal freely in his Macau business venture.[3]

Following jurisdictional discovery, Hananel filed renewed motions to dismiss for lack of personal jurisdiction and forum non conveniens.[4] The district court referred the motions to the Magistrate Judge who recommended that the motion to dismiss for lack of personal jurisdiction be denied as to Count One for declaratory judgment, but granted as to the other three counts. The Magistrate Judge also recommended that the motion to dismiss for forum non conveniens be granted. Rejecting the parties' various objections to the Magistrate Judge's report, the district court adopted and accepted both recommendations. Adelson now appeals the dismissal for forum non conveniens, and Hananel cross-appeals the denial of his motion to dismiss, for lack of personal jurisdiction, Count One of the complaint.

---

[3] During his deposition, Hananel asserted that he was entitled to shares of Adelson's other international investments, beyond the interests in Macau. Adelson's suit in the District of Massachusetts refers broadly to investments anywhere in the world, while the Israeli suit is focused specifically on Macau.

[4] Hananel initially filed motions to dismiss for lack of personal jurisdiction and forum non conveniens in June 2004. After a hearing, the district court denied, without prejudice, the motion to dismiss for lack of jurisdiction and ordered that it could be renewed after jurisdictional discovery. The court also denied, without prejudice, the dismissal for forum non conveniens until it could establish that it had jurisdiction over the defendant.

## II.  **Discussion**

### A.  **Personal Jurisdiction**

We first review the district court's denial of Hananel's motion to dismiss Count One for lack of personal jurisdiction.[5] Faced with a motion to dismiss for lack of personal jurisdiction, a district court "may choose from among several methods for determining whether the plaintiff has met [its] burden." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50-51 (1st Cir. 2002). In this case, the district court employed the most common method, the "prima facie method" or the "prima facie evidentiary standard," rather than adjudicating the jurisdictional facts. The district court found that the amount of detailed and specific evidence provided by the plaintiff weighed in favor of applying the prima facie standard. Under this standard, the court need only "consider . . . whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)(quoting Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

We review both the district court's decision to use the prima facie standard and its conclusion under that standard de

---

[5] Adelson neither objected to nor appeals the district court order dismissing Counts Two - Four for lack of personal jurisdiction.

novo. Foster-Miller, 446 F.3d at 147; see also United States v.
Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001).
Here, the parties do not object to the court's choice of method;
the defendant contends only that it was misapplied.

Applying the prima facie standard, Adelson bears the
burden of establishing that the district court has personal
jurisdiction over Hananel.  We "must accept the plaintiff's
(properly documented) evidentiary proffers as true for the purpose
of determining the adequacy of the prima facie jurisdictional
showing." Foster-Miller, 46 F.3d at 145.  In fact, we accept those
facts as true, irrespective of whether the defendant disputes them,
and in so doing, "construe them in the light most congenial to the
plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover,
Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  Those
facts put forward by the defendant become part of the mix only to
the extent that they are uncontradicted. Id. at 34.

It is undisputed that Adelson is proceeding under a
theory of specific (rather than general) jurisdiction and,
therefore, must demonstrate that the Massachusetts long-arm statute
grants jurisdiction over Hananel and that the exercise of that
jurisdiction comports with the Due Process Clause of the Fifth
Amendment.  See Foster-Miller, 46 F.3d at 144.  Under the
Massachusetts statute, "[a] court may exercise personal
jurisdiction over a person, who acts directly or by an agent, as to

-8-

a cause of action in law or equity arising from the person's . . .
transacting any business in this commonwealth." Mass. Gen. Laws
ch. 223A, § 3(a)(2000). In Massachusetts, the Court can "sidestep
the statutory inquiry and proceed directly to the constitutional
analysis" because the state's long-arm statute is coextensive with
the limits allowed by the Constitution. Daynard, 290 F.3d at 52
(citing "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,
361 Mass. 441 (1972)).

       In order for Massachusetts to exercise personal
jurisdiction over Hananel, an out-of-state defendant, the Due
Process Clause requires that Hananel have sufficient minimum
contacts with the state, such that "maintenance of the suit does
not offend 'traditional notions of fair play and substantial
justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For
specific jurisdiction, we have broken the minimum contacts analysis
into three categories -- relatedness, purposeful availment, and
reasonableness:

> First, the claim underlying the litigation
> must directly arise out of, or relate to, the
> defendant's forum-state activities. Second,
> the defendant's in-state contacts must
> represent a purposeful availment of the
> privilege of conducting activities in the
> forum state, thereby invoking the benefits and
> protections of that state's laws and making
> the defendant's involuntary presence before
> the state's courts foreseeable. Third, the
> exercise of jurisdiction must, in light of the
> Gestalt factors, be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144).

## 1. **Relatedness**

Generally, relatedness refers to the requirement that the underlying claim "arise out of" or be "related to" the activities within the forum state. The relatedness standard is a "flexible, relaxed standard," Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994), which focuses on the "nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). Count One of the complaint seeks a judgment declaring the rights and obligations under Hananel's oral employment contract. We have held that in contract claims, we may look to and draw inferences from "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Daynard, 390 F.3d at 52 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)) (internal quotation marks omitted). Furthermore, where the cause of action is for an alleged breach of contract, we ask whether the defendant's activity in the forum state was "instrumental either in the formation of the contract or its breach." See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999).

At the heart of this declaratory action is a dispute regarding the specific terms of an oral employment contract; the district court properly observed that "[n]othing could be more

instrumental in the formation of a contract than the literal act of forming the contract itself." The court first found that the contract between the parties was "formalized and entered into in Massachusetts" and "subjected Hananel to substantial control and ongoing connection to Massachusetts in the performance of this contract." Hananel's appeal urges us to reject Adelson's version of the events which Adelson alleges transpired on December 5, 1995. His arguments are unpersuasive; the law makes it clear that under the prima facie standard, Adelson's evidence is accepted as true and all inferences are drawn in favor of his jurisdictional claim. See Mass. Sch. of Law, 142 F.3d at 34. Affidavits from both Adelson and Roberts recount that the three men finalized the specific terms of employment which Adelson and Hananel had informally discussed prior to that meeting. The district court properly found that the employment contract was formalized and entered into during Hananel's December 5, 1995 trip to Massachusetts when he met with Adelson and Roberts. Accordingly, the instant action arises from and is related to Hananel's activities within the forum. See Phillips Exeter Acad., 196 F.3d at 289.

## 2. Purposeful Availment

Our next inquiry is whether Hananel's contacts with Massachusetts constitute purposeful availment. This requirement ensures that jurisdiction is not based on merely "random, isolated

-11-

or fortuitous" contacts with the forum state. Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The two key focal points of this concept are voluntariness and foreseeability. Id., 70 F.3d at 1391 (citing Ticketmaster, 26 F.3d at 207). The contacts must be voluntary and not based on the unilateral actions of another party. Burger King, 471 U.S. at 475. And, the defendant's contacts must be such that he could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Here, the district court concluded that the two requirements were easily met. First, Hananel freely and of his own volition expressed interest in and obtained employment with IPI and negotiated and executed his own contract while in Massachusetts. Second, the court found that the evidence established the foreseeability of litigation in Massachusetts: (1) his employment relationship was formalized in Massachusetts with IPI's lawyer, (2) his business card acknowledged his ongoing relationship with the state, and (3) all of his budgets and financial funds were submitted to and obtained through IPI's Needham office. Moreover, given that it was Hananel who sought this employment contract with a company whose key officers were all located in Massachusetts and whose financial accounts were all administered out of Massachusetts, the court properly concluded that Hananel had

-12-

purposefully availed himself of Massachusetts law. See Burger King, 471 U.S. at 473 ("[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950))).

On appeal, Hananel challenges the district court's findings on both voluntariness and foreseeability. He contends that he had traveled to Massachusetts in December 1995 for the purpose of seeking medical advice on his diabetic condition. While that may be true, we do not see how it is relevant to the district court's findings of voluntariness and foreseeability. The district court did not conclude that the sole purpose of coming to Massachusetts had been to formalize the agreement; the court simply concluded that on December 5, Hananel freely met with IPI and Adelson, and finalized his employment contract. Likewise, the foreseeability of litigation in Massachusetts was established upon meeting with IPI and Adelson and agreeing to the terms of the employment contract. The original purpose of the Massachusetts visit is inconsequential. Hananel's independent and voluntary meeting with Adelson and Roberts transformed the relevant portion of his visit into a business visit.

Furthermore, the district court properly found that the additional evidence proffered by Adelson demonstrated that

-13-

Hananel's contacts with Massachusetts continued during his employment. Although he oversaw the Israel office, Hananel communicated regularly with members of IPI's Needham office regarding various financial matters. His annual budgets were submitted to the Needham office and all operational funds were approved and disbursed through the Needham office. It is clear that the evidence reviewed by the district court supports a finding that there existed sufficient ties between Massachusetts and the employment contract. Hananel knowingly affiliated himself with a corporate entity which was based primarily in Needham, Massachusetts and, thus, the possibility of a suit there was amply foreseeable.

### 3. **Reasonableness**

Even after concluding that minimum contacts exist, personal jurisdiction may only be exercised if it would be reasonable, pursuant to a series of factors known as the "Gestalt factors." Foster-Miller, 46 F.3d at 144. Those factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (citing Burger King, 471

-14-

U.S. at 477). The factors, intended to aid the court in achieving substantial justice, play a larger role in cases where the minimum contacts question is very close. See Ticketmaster, 26 F.3d at 210 ("[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."); see also Burger King, 471 U.S. at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable."). The court below found that the Gestalt factors support the conclusion that jurisdiction is reasonable. We agree.

        Admittedly, Hananel lives and works in Israel and is a legally blind diabetic. While those facts evoke sympathy for the undeniable burden placed upon Hananel, the district court properly concluded that no "special or unusual burden" existed here. Pritzker, 42 F.3d at 64. The court noted that neither his foreign residence nor his medical condition precluded him from traveling internationally in the course of his employment or from agreeing to work for an American company. Furthermore, Adelson, a resident of the state, has an interest in bringing this action in Massachusetts, which weighs in favor of a finding of personal jurisdiction. And, as we noted in an earlier case, Massachusetts has a "stake in being able to provide a convenient forum for its

-15-

residents to redress injuries inflicted by out-of-forum actors."
Daynard, 290 F.3d at 62 (quoting Sawtelle, 70 F.3d at 1395)
(internal quotation marks omitted).  The state's interest in the
case is further heightened by the involvement of IPI's executive
officers who are employed in Massachusetts and of funds which are
held and managed in Massachusetts.  Although Hananel casts doubt
upon Adelson's ability to claim that Massachusetts is more
convenient than Israel, he fails to recognize that this factor
requires deference to a plaintiff's choice of forum.  See Foster-
Miller, 46 F.3d at 151; see also Ticketmaster, 26 F.3d at 211
(recognizing that a plaintiff must be accorded "a degree of
deference in respect to the issue of its own convenience").
Lastly, while the interests of the judicial system in achieving
efficient resolution militate against Adelson because of the prior
suits pending in Israel, the district court properly concluded that
this factor alone was insufficient to tip the constitutional
balance on the facts of this case.

Accordingly, Hananel's contacts with Massachusetts
constitute "minimum contacts" in such a manner that it does not
"offend traditional notions of fair play and substantial justice"
for Adelson to bring this case in the state.  Int'l Shoe, 326 U.S.
at 316 (quoting Milliken, 311 U.S. at 463).

## B.  Forum Non Conveniens

Adelson appeals from the decision of the district court to dismiss the suit for forum non conveniens. The decision to grant or deny a motion to dismiss for forum non conveniens is generally committed to the district court's discretion. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). We will find an abuse of discretion if the district court (1) failed to consider a material factor; (2) substantially relied on an improper factor; or (3) assessed the proper factors, but clearly erred in weighing them. Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000). Errors of law, however, are reviewed de novo. Id.

We begin with the well-known framework for forum non conveniens outlined by the Supreme Court in a pair of 1947 opinions, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, and Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518. Those cases and their progeny established forum non conveniens as a discretionary tool for the district court to dismiss a claim, even when it has proper jurisdiction. See Gilbert, 330 U.S. at 507. That power, however, is limited by the overarching principle that a "plaintiff's choice of forum should rarely be disturbed." Id. at 508; see also Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 950 (1st Cir. 1991) (forum non conveniens is intended to "avoid trials in places so 'inconvenient' that transfer is needed to avoid serious unfairness" (quoting Piper Aircraft Co., 454 U.S. at 259)). Accordingly, the party moving

-17-

for dismissal bears the heavy burden of establishing that an adequate alternative forum exists and that "considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum." Iragorri, 203 F.3d at 12 (emphasis added). Neither party disputes the availability and adequacy of the Israeli forum. The issue is whether the district court properly balanced the factors in the second step of the analysis.

In this case, the district court found that the suit was not vexatious and that no great equity weighed in the defendant's favor. Yet, because there was already a case pending before the Israeli court, the district court concluded that the public interest factors weighed in favor of dismissal. On appeal, Adelson contends that the district court (1) improperly reversed the burden of proof, requiring the plaintiff to prove why he could not fairly litigate his claim in Israel; (2) failed to give proper deference to a United States plaintiff's choice of forum; and (3) placed undue significance on the existence of concurrent litigation in the Israeli court. We agree with Adelson and reverse the district court's dismissal.

As a starting point, it is undisputed that a plaintiff enjoys some degree of deference for his original choice of forum. See Gulf Oil, 330 U.S. at 508. Added to that is the heightened deference which accompanies a plaintiff's choice of home forum. See Koster, 330 U.S. at 524 (holding that when the plaintiff has

-18-

chosen his home forum, he should not be deprived of it absent a "clear showing" of either "oppressiveness and vexation" or evidence that the chosen forum is "inappropriate"). Although Adelson is not a Massachusetts domiciliary, the Massachusetts district court is still deemed a "home forum" where the alternative is foreign. See Reid-Walen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991) (in a forum non conveniens case involving a foreign court, "the 'home' forum for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives"). A logical extension of that heightened deference in favor of a plaintiff's "home forum" applies in cases such as this which involves a U.S. citizen plaintiff who is seeking to litigate in a United States forum. While the Supreme Court held that dismissal is "not automatically barred" in such cases, Piper Aircraft Co., 454 U.S. at 256 n.23, a heavy presumption weighs in favor of that plaintiff's initial forum choice.

In the past, we have implicitly recognized the "strong presumption favoring the American forum selected by American plaintiffs." Mercier v. Sheraton Int'l Inc., 981 F.2d 1345, 1355 (1st Cir. 1992). Other circuits have more explicitly articulated the strength of this presumption when the plaintiffs are citizens, residents, or corporations of this country. See, e.g., SME Racks, Inc. v. Sistemas Mecánicos Para Electrónica, S.A., 382 F.3d 1097, 1104 (11th Cir. 2004) ("[T]here is a strong federal interest in

-19-

making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." (quoting Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1311 (11th Cir. 2002)); Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 238 (2d Cir. 2004) (noting the "presumptive validity of a United States resident's choice of a United States forum"); Raytheon Eng'rs and Constructors, Inc. v. HLH and Assocs. Inc., No. 97-20187, 1998 WL 224531 at *2 (5th Cir. Apr. 17, 1998) (recognizing the presumption in favor of a plaintiff's choice of forum, "especially when a United States plaintiff has chosen the home forum").

While the district court properly observed that Adelson is a United States citizen and that there is a "heavy presumption" in favor of his choice of forum, the district court ignored that presumption because of the existence of the concurrent action in the Israeli court. Indeed, in its analysis up to that point, the district court had found that the "private interest factors did not weigh in favor of either party" and that the public interest was "also in equipoise between the parties." Moreover, the court also found that Adelson's suit was neither vexatious nor oppressive. Thus, it was the existence of concurrent litigation that not only caused the balance to shift in favor of the foreign forum, but also eviscerated the presumption in favor of the plaintiff's forum. In

discussing the Israeli suit, the district court stated, "I see no reason why Adelson cannot fairly litigate his claim in Israel." The district court erred in so construing the importance of concurrent litigation within the forum non conveniens analysis.

Having found the public and private interest factors to be in equipoise, the district court should have concluded that the defendant failed to overcome the heavy presumption in favor of the plaintiff's home forum. It is the defendant who carries the burden of establishing that the "compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12 (emphasis added). Factors relevant to the public interest analysis include:

> administrative difficulties of docket congestion; the general goal of "having localized controversies decided at home," and . . . ease of access to the proceedings on the part of interested citizens, the trier's relative familiarity with the appropriate rules of decision, and the burdens of jury duty.

Id. (quoting Gilbert, 330 U.S. at 508-509). The existence of concurrent litigation is not a relevant factor to the analysis; none of the factors enumerated above invokes a comparison between the two competing fora. By focusing on the existence of parallel proceedings in a foreign court, the district court essentially converted the analysis into a determination of which of the two pending cases should go forward. In so doing, the court erroneously lowered the defendant's burden of proving that the

-21-

balance of factors justified dismissal of a suit from a U.S.
plaintiff's choice of home forum.

## III.  **Conclusion**

For the foregoing reasons, the judgment of the district
court denying the motion to dismiss for lack of personal
jurisdiction is affirmed, and the judgment dismissing for _forum_ _non_
_conveniens_ is reversed.

**Affirmed in part; and Reversed in part.  Costs are taxed**
**in favor of Sheldon G. Adelson.**