# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHELDON G. ADELSON, )
       Plaintiff, )
)
v. ) Civil Action No. 04-cv-10357-RCL
)
)
MOSHE HANANEL, )
       Defendant. )
_____ )

### REPORT AND RECOMMENDATION OF DEFENDANT'S RENEWED MOTION TO DISMISS FOR FORUM NON CONVENIENS (Docket # 87)

SOROKIN, M.J.

Defendant has filed a renewed Motion to Dismiss for forum non-conveniens (docket #45). In response to an Order of Reference (docket #50), I recommend that Defendant's Motion be ALLOWED.

### OTHER MOTIONS

Several other Motions require resolution at the outset. Defendant's Motion to Strike (Docket #125) some of Plaintiff's evidence as inadmissible and untimely is DENIED, however, the Court accepts the additional evidence submitted by Defendant with the Motion. Plaintiff's Motion to Supplement the Record (Docket #126) is ALLOWED. Defendant's Motion to File a Rebuttal Brief (Docket #122) is ALLOWED, which the Court has received and reviewed. Finally, Defendant filed a post-hearing Motion (Docket #132) to supplement the record with a recently issued decision from the Israeli Court. Plaintiff opposed the Motion both for failure to comply with Local Rule 7.1 and because, plaintiff asserts, defendant submitted only part of the

1

decision. Plaintiff submitted the entire decision. The Motion is DENIED IN PART AND ALLOWED IN PART; the Court will consider the parties submissions as filed with the Court.

## BACKGROUND

The factual background to this Motion is set forth in the Report and Recommendation on Defendant's Motion to Dismiss (docket # 78) adopted by the District Judge (Electronic Order entered November 29, 2005). The additional relevant facts follow.

Both parties agree that the very dispute before this Court, i.e. whether Defendant is entitled to 12% of Plaintiff's share of a casino development in Macau (or, stated more generally, whether Defendant is entitled to 12% of any business investment to which he referred Plaintiff during the course of Defendant's employ at one of Plaintiff's companies), is also pending before Israeli courts, in the form of a 2003 action filed by Hananel against Adelson. That Israeli action was filed on December 17, 2003, predating Adelson's filing of the instant suit on February 23, 2004, by approximately two months. Memorandum in Support of Plaintiff's Motion to Enjoin Defendant from Pursuing Parallel Causes of Action in Israel (Docket # 33), Ex. A (Complaint, Hananel v. IPI and Adelson, CC- 7704103 (Tel-Aviv-Jaffa), (hereinafter the "December 2003 Complaint").

In addition, the parties are embroiled in a 2001 lawsuit brought by Hananel in Israel concerning a variety of other matters relating to the incidents of his employment at IPI, a company wholly owned by Adelson. Letter from Attorney Hamilton dated February 3, 2006 (Docket # 131)(attaching Complaint, Hananel v. IPI et al, filed August 2001)(Tel Aviv-Jaffa)(hereinafter the "2001 Complaint"). The 2001 suit does not reference the Macau matter

2

expressly, nor does the legal theory advanced by Hananel in that suit encompass his subsequent claim to a share of Adelson's interest in a casino in Macau.[1] Rather, the 2001 suit claims only that Hananel did not receive certain "options . . . for shares in two companies- Dankes Medical Software Systems LTD . . . and IMD Soft Ltd," which options IPI allegedly "granted [Hananel] . . . through [A]delson" as part of the "employer- employee relationship." 2001 Complaint at ¶ 8.1.

Hananel's 2003 suit affirmatively asserts that the Macau claim "derives from a cause of action different than that" raised in the 2001 Complaint, further stating that the Macau claim arises out of a "separate contractual undertaking" that is not part of the 2001 Complaint. 2003 Complaint at ¶¶ 8.3. Both of Hananel's Israeli suits (and the suit that Adelson filed in Israel, noted in footnote 1) share some common facts with the instant suit; each involves roughly the same parties fighting over various aspects of Hananel's employment relationship or work for Adelson and/or IPI.

## DISCUSSION

"When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir.2000).

A defendant can satisfy the first requirement by demonstrating that the alternative forum addresses the types of claims brought by the plaintiff, and that "the defendant is amenable to

---

[1] Adelson, *though IPI*, also filed a suit against Hananel in 2002 in Israel, asserting claims relating to the employment relationship, e.g. for recovery of funds allegedly stolen, etc.

3

service of process there." Id. Defendant has met his burden as to the first requirement. He is an Israeli citizen and thus subject to the jurisdiction of Israel's courts, and Israeli courts can hear the type of claim that Plaintiff advances here.

Adelson makes one argument suggesting that Israel is not an adequate forum. He contends that some of his witnesses are in Macau and will not (or cannot) travel to Israel to testify. Adelson says that litigating in Israel will thus substantially prejudice his case because Israel apparently requires in person testimony and makes no provision for depositions. The short answer, discussed in more detail below, is that Adelson has not established that these witnesses are anything more than peripheral to his claim, even assuming their testimony is relevant. In addition, based on the comments of counsel at the hearing, Adelson may be able to arrange for these witnesses to testify by way of a live video hookup. Thus, I find that Israel provides an adequate alternative forum. See Diatronics Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122, 128 (S.D.N.Y. 1986)(finding Israel an adequate alternative forum).

"The second requirement evokes a more sophisticated balancing: the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12. The litigants' private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [and the] possibility of view of premises, if view would be appropriate to the action" as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Additionally, "the flip side of this coin has equal pertinence; the judge must consider those factors that threaten to make trial more cumbersome, prolong it, or drive up

4

costs." Iragorri, 203 F.3d at 12 (quoting Gulf Oil, 330 U.S. at 508-09).

Despite the strenuous arguments of the parties to the contrary, the private factors are in equipoise. Essentially this case is a swearing match between Plaintiff and Defendant. Both parties agree that they formed an oral agreement, though they disagree on that agreement's terms. Hananel contends that Adelson granted him 12% of Adelson's share of any venture arising from opportunities about which Hananel informed Adelson, while Adelson describes a far narrower agreement. Of course, Hananel asserts he told Adelson of the possibility of pursuing a casino venture in Macau; and, Adelson denies this assertion.

Hananel concedes that no one other than the two parties witnessed these conversations; in other words, the parties are the only percipient witnesses to either the contract or the presentation of the Macau opportunity. Nonetheless, Hananel contends that many Israeli witnesses are important to this dispute (many of whom Hananel avers cannot or will not, travel to the United States, and many of whom speak only Hebrew). He has failed to meet his burden on this point.

Hananel's 2003 suit in Israel raises two material questions: (1) what are the terms of the agreement, and (2) if the terms are as he contends, did he tell Adelson of the Macau opportunity. Hananel's only affirmative witness as to these two points is Hananel, himself. Thus, although the witnesses in Israel might corroborate general aspects of the parties' relationship, these witnesss offer no relevant testimony on the central issue in this case, i.e. the agreement between Hananel and Adelson. See The nature of the parties' relationship, the work completed and all of the other disputed issues as to Hananel's employment with IPI (vacation pay, termination severance pay etc) are not very relevant, if indeed they are relevant at all, to Hananel's claim

5

concerning the nature of Adelson's alleged promise to provide Hananel with 12% of certain ventures.

Furthermore, Hananel has not submitted any affidavit evidence detailing the substance of the anticipated testimony of these witnesses. Merely stating that these witnesses have important information is insufficient. Hananel attempts to buttress the importance of these witnesses by stating that they are identified as witnesses for the Israeli action. This means little here, however, since the consolidated action in Israel concerns many issues beyond those raised by the instant claim.[2] Also, there is no reason these witnesses could not testify by video hook-up. Though this procedure is not as effective as live testimony, it is sufficient where, as here, the witnesses are, at best, of diminished importance.

Moreover, Hananel can testify here; not only does he speak English, all of the discussions material to this case occurred in English. While Hananel now suffers from diabetes and a variety of other health problems, I do not find these limitations are so great that they constitute such a significant burden to warrant defeating this Court's exercise of its jurisdiction over Adelson's Complaint, for the reasons described in my prior opinion. I make this finding without regard to whether Hananel is vastly overstating the seriousness of his health condition, something that Adelson contends based upon video surveillance of Hananel. Hananel naturally disputes Adelson's contention.

Next, Hananel contends that thousands of Hebrew documents located in Israel are

---

[2] The Israeli Court consolidated the 2001 and 2003 actions. That decision, however, does not render the larger consolidated action identical to the narrower claim pending before this Court.

6

relevant to this matter, thereby tipping the scales toward Israel. I reject this contention. As already noted above, this case is primarily a swearing match between the parties. Hananel has identified no specific document or category of documents relevant to disposition of the claim at issue in this case, or the parallel claim made in the 2003 case in Israel (other than perhaps a draft proposal for a casino venture in Jordan, which I infer was in English because it was given to Adelson). The notion that the parties' "course of conduct," as shown in every, or many, IPI documents generated in the course of Hananel's years of employment by IPI, are relevant to this claim is simply incorrect. There is no dispute that Hananel ran IPI for Adelson; however, only documents bearing on the specific issue here, i.e. the Macau opportunity, would support moving the case to Israel, and as to that, Hananel has identified no documents.[3] Moreover, the mere fact that a document may have some relevance to one of the legal issues presented in the context of the much broader dispute of the parties before the Israeli court does not automatically make that document relevant to the narrow dispute here. Accordingly, Hananel could litigate his claims before this Court.

Nonetheless, it is also without question that Adelson can litigate in Israel, given his connections to Israel that were described in my prior Report and Recommendation, and the fact that Adelson has already availed himself of the Israeli Court by filing suit against Hananel in that court as noted in footnote 1. Moreover, Adelson's foreign witnesses are of a minimal significance comparable to Hananel's witnesses: at most they speak to Hananel's contribution, if

---

[3] The many documents to which Hananel refers are potentially relevant to the many additional issues in dispute in the consolidated litigation in Israel, e.g. vacation time, severance pay, etc.

7

any, to the Macau casino venture. The legal significance of this testimony is relatively minor and these witnesses could also testify by video hook-up if necessary. For all of the foregoing reasons, I find that the private interest factors do not weigh in favor of either party.

Next, "[f]actors relevant to the public interest include such things as the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." Iragorri, 203 F.3d at 12 (quoting Gulf Oil, 330 U.S. at 508-09). Hananel argues this is an Israeli-based dispute and therefore, the Court should allow his Motion. This factor is also in equipoise between the parties, however. On the evidence before the Court, taken in the light most favorable to Adelson as the non-moving party, the oral agreement was negotiated in Israel, but it was formalized in Massachusetts according to Adelson's evidence. Moreover, it was an agreement between an Israeli citizen and a U.S citizen, Adelson, who is based in America and who operates his businesses out of the United States through entities based in Massachusetts and Nevada. According to Adelson's evidence, much of Hananel's work was monitored, if not partially supervised, by Adelson's Massachusetts-based employees.

Though Hananel himself was based in Israel, he reported to Adelson regularly to wherever in the world Adelson happened to be at the time. The venture at issue is in Macau. The scope of the agreement, as described by Hananel, is international. That is, Adelson allegedly promised Hananel "options in ventures initiated during the course of [Hananel's] work," which promise apparently applied to ventures anywhere in the world (though Hananel's pleadings suggest that the agreement was inapplicable to ventures in the United States). 2003 Complaint ¶

8

5.1. Finally, Hananel asserts that he accompanied Adelson on business trips outside of Israel and advised him of business opportunities outside of Israel. In light of the foregoing, the locus of the dispute does not decidedly tilt toward Israel or the United States. Plainly both forums have significance, but neither is materially more important (in this regard, I note that IPI has no part in the Macau venture and Hananel has not limited his claim to those ventures in which IPI participates).

In essence, only a few factors bear on the Motion. The Supreme Court accords a heavy presumption in favor of the plaintiff's choice of forum, here, Adelson's decision to sue in Massachusetts.[4] The weight accorded this presumption is much less, however, "when it is made after the filing of a concurrent action arising out of the same series of transactions," as occurred here. Linkco, Inc. v. Nichimen Corp., 164 F.Supp.2d 203, 214 (D. Mass. 2001)(Saris, J.)(quoting MLC (Bemuda) Ltd. v. Credit Suisse First Boston Corp., 46 F.Supp.2d 249, 254 (S.D.N.Y. 1999)). This presumption might weigh more significantly in favor of Adelson in the context of a lawsuit brought by a United States citizen arising out of an international business dispute. I note, however, that Adelson has not cited a case supporting this proposition, and plainly "an America citizen does not have an absolute right to sue in an American court." Diatronics, 649 F.Supp. at 129.

---

[4] Hananel makes much of the fact that choosing a forum in order to vex or harass an opponent may defeat the presumption that a plaintiff otherwise enjoys. On the record before the Court, however, Hananel has not established such a purpose. Plainly this Court possesses subject matter jurisdiction over the complaint. Plainly, on the evidence submitted by Plaintiff, Massachusetts has a meaningful connection to the litigation. The instant suit was filed merely two months after Hananel's 2003 suit first raised the Macau venture issue. On this record, I do not find that this suit was filed to vex or harass.

9

Weighed against these factors is the fact that the very issue Adelson brings to this court is already pending before the Court in Israel, in the form of the 2003 action brought by Hananel. If this case proceeds, both the Court in Israel and the Court here will spend judicial resources adjudicating the same claim. Ultimately, one court will resolve the matter first, thereby rendering pointless the efforts of the other court (assuming the application of claim preclusion principles). Absent the application of claim preclusion principles, if this Court allows these two cases to proceed simultaneously in two courts, it presents the likely risk of conflicting judgments. Both of these considerations are public interest factors, which weigh more heavily here than the evenly-balanced private interest factors. In addition, the Court in Israel has before it additional, albeit different, claims, arising out of the same and related facts, involving basically the same parties. For these public interest reasons, I believe that Hananel has met his burden of proof.[5]

Put another way, I see no reason why Adelson cannot fairly litigate his claim in Israel.

---

[5] Two other factors bear discussion. First, the question of what substantive law governs this dispute. Both parties assume that the law of their chosen jurisdiction applies, yet neither has engaged in a choice of law analysis. Accordingly, I decline to resolve the choice of law issue. In addition, the fact that Massachusetts law may be more favorable to Plaintiff than the law of Israel is not a basis to deny Defendant's Motion. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247 (1981)(expressly rejecting argument that a plaintiff can "defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum"). Second, Plaintiff states that the cases in Israel are dragging on due to the pace of litigation set by the Israeli Court; based upon this docket congestion he asserts the Court should deny the Motion. Defendant asserts Plaintiff, rather than the court in Israel, bears responsibility for the delays. Assuming without deciding that a slow pace is inherent in the nature of litigation in Israel, the significance of the delay to the present motion is unclear. This case, though filed over two years ago, is just now passing the Motion to Dismiss stage, albeit after some jurisdictional discovery. On the record before the Court, the delay in Israel is not so significant to make it an inadequate forum and beyond that even if the pace here favors Plaintiff, it is not so significant as to defeat the other factors noted above.

10

Therefore, there is no reason for this Court to adjudicate a matter already pending before the Israeli Court, particularly where the court in Israel has other matters related to this case before it. Therefore, dismissal "will best serve the convenience of the parties and the ends of justice." Iragorri, 203 F.3d at 12 (quoting Koster v. (American) Lumbermans Mut. Cas. Co., 330 U.S. 518 (1947)).

This is consistent with the decisions of other courts in similar, though not identical, contexts. See MLC., 46 F. Supp.2d at 254 (dismissing case based upon similar grounds of "deference to a pending foreign action," where related jurisdiction was pending in London); see also Diatronics, 649 F. Supp. at 129 (noting pendency of litigation in Israel favored dismissal). Moreover, the First Circuit generally disfavors permitting multiple litigation when resolving forum non convenience motions. Pritzker v. Yari, 42 F.3d 53, 64(1st Cir.1994)(noting judicial system's interest "counsels against furcation of the dispute among several different jurisdictions").[5] Finally, Adelson has identified no case where a court denied a forum non conveniens Motion when parallel litigation was pending in a foreign jurisdiction in similar circumstances (or, indeed, under any circumstance).

---

[5] While the First Circuit has recognized "the accepted proposition that parallel proceedings on the same in personam claim generally should be allowed to proceed simultaneously" and further stated that the "decisional calculus must take account of this presumption in favor of concurrent jurisdiction," it did so while analyzing the propriety of a district court order enjoining defendants from bringing suit in a foreign court. Quaak v. Klynveld Peat Marwick, 361 F.3d 11, 16 (1st Cir.2004). That circumstance presents very different considerations of comity than those applicable here to Defendant's motion to dismiss for forum non conveniens grounds in the face of already pending litigation.

11

CONCLUSION

For the foregoing reasons, I recommend that the Court ALLOW Defendant's Motion (Docket # 45).[6]

                                        /s Leo T. Sorokin
                                        LEO T. SOROKIN
                                        UNITED STATES MAGISTRATE JUDGE

Date:   March 28, 2006.

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also, Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).