IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHELDON G. ADELSON,<br>Plaintiff,<br><br>v.<br><br>MOSHE HANANEL,<br>Defendant. | )<br>)<br>)  Civil Action No.<br>)<br>)  **04-cv-10357-RCL**<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION OF HANANEL TO SUPPLEMENT
RECORD WITH CONTRARY TESTIMONY IN ISRAEL**

Defendant Moshe Hananel ("Hananel") offers this Memorandum in support of his motion to allow supplementation of the record in this action. The supplement consists of sworn testimony at trial of the Consolidated Israeli Action in Israel by Paul G. Roberts, Esq., filed simultaneously as an attachment to the 13th Affidavit of Moshe Hananel.

Mr. Roberts was and is Plaintiff Sheldon G. Adelson's personal and business lawyer. He claims to have been present[1] and to have advised Adelson at the time Adelson and Hananel made the employment agreement which is the subject of the present case (and the Consolidated Israeli Action). Now, in Israel, he has testified that Hananel "*was supposed to be employed in Israel according to the Israeli law*," thereby contradicting Adelson's arguments made to this Court that Massachusetts law applied. Adelson relied on his Massachusetts-law argument in support of his

---

[1] Mr. Roberts's affidavits in the present case, concerning the purported December 5, 1995 meeting in Massachusetts and other disputed statements, were essential to Adelson's claim of a prima facie showing of personal jurisdiction and his opposition to a forum non conveniens dismissal. Hananel has maintained all along that the Roberts and Adelson testimony of a December 5, 1995 business meeting in Massachusetts concerning the contract was a late fabrication by them, and did not occur. The employment contract had been discussed, negotiated, and finalized between Hananel and Adelson in Israel, and performance had commenced in Israel, <u>before</u> that date. Hananel disputes all of the factual elements of Adelson's purported prima facie case, and has always stated that the contract was to be governed by Israeli law. Hananel has pointed, inter alia, to the fact that before filing the present action Adelson had never claimed any Massachusetts connection to the employment agreement during more than two years of litigating the Consolidated Israeli Action in Israel (which began in 2001).

purported prima facie showing of personal jurisdiction and in support of his opposition to Israel as a strongly more convenient forum. These arguments are now contradicted.[2]

### Mr. Roberts's Israel Testimony

The 13th Hananel Affidavit, filed herewith, attaches the only official court record of Mr. Roberts's testimony on January 17, 2008. In that testimony, Mr. Roberts confirms[3] his position as Adelson's personal and business legal adviser and as chief legal adviser to Adelson's companies, including IPI.[4]

> Q. Will it be accurate to say that you according to your opinion are the Vice president and legal counsel of all the group?
> A. Yes.
> Q. Your salary is still paid by Interface Group Massachusetts (hereafter – AG"S)?
> A. Yes.
> Q. You also said that you are providing legal services to Adelson, I am reading your #3 to T/35. Is it accurate?
> A. Yes.
>
> . . . . . . . .
>
> Q. <u>You give personal legal services to Mr. Adelson?</u>
> A. <u>Yes</u>.
> Q. Are you paid for these services?
> A. All my salary comes from AG"S.
> Q. Is it true to say that you are employed by Adelson and all his other companies?
> A. Legally I am employed by Interface Group Massachusetts.

---

[2] Adelson argued the application of Massachusetts law to claim (a) the reasonableness of personal jurisdiction over Hananel and (b) that public factors of forum non conveniens favored Massachusetts equipoise. The Court has found that the exercise of jurisdiction was reasonable (favoring Adelson) and that Hananel had not shown the applicability of Israeli law as a public forum non conveniens factor favoring Israel (i.e., that the factor was in equipoise) (also favoring Adelson). Following Mr. Roberts's testimony in Israel, the necessary jurisdictional elements of relatedness and purposeful availment are seen to have been based on false arguments, and the reasonableness factors are seen to favor Israel more heavily. As to forum non conveniens, the balance of private and public factors also alters significantly in favor of Israel.

[3] The first Roberts Affidavit, Dkt. # 16, also states that he is counsel to Adelson personally (¶ 2) and IPI (¶ 4).

[4] This Court has made the following finding: "All legal matters for IPI are handled by or directed by Paul G. Roberts, Esq." (Report and Recommendation Dkt # 78 at 5). Mr. Roberts now confirms his authority as Adelson's personal legal adviser as well.

I see myself as employed by Adelson and his partners and all the related companies.

**145**

. . . . . . . .

Q. What is your involvement in the businesses of Interface Group?
A. Giving [or supplying] legal counsel. Besides that, I don't take business decisions[,] I know the businesses of the companies.
Q. Your job is limited to legal counseling?
A. Most of my job is like this. Sometimes I'm involved in business discussions and in giving advice.
. . . .
Q. Does Mr. Adelson consult with you before taking business decisions?
A. Only when they have legal implications.
. . . . . .
Q. Do you see yourself as the personal lawyer of Adelson?
A. I hold him and his partners and his family members as customers that I give legal services to in all matters.
Q. Do you give these services with or without compensation?
A. I am not getting extra compensation beyond what I already get from AG"S.

Pages 144-145 (emphasis added).

After establishing his position, Mr. Roberts admitted that both he and Adelson intended that the agreement would be governed by Israeli law.

Q. Why didn't you insist on a written agreement?

**153**

A. It's not customary in our company to do written agreements with anyone. In fact, all the time (that I had) worked in the company, I don't think we had anyone with a written agreement until we bought a management team for the hotel in Vegas. It concerned 3 people who had worked together in a hotel in Atlantic City and we brought them to Vegas together and they wanted a written agreement. Before this, there were no written agreements and the company had hundreds of employees in all levels and never in writing, but Mr. Adelson recognized that maybe the common practice in Israel is different and he told me that if the plaintiff will say that in Israel the practice is that there is a written agreement, do so, and even if it's not the practice and he wants this, do a contract.
Q. Why was Adelson concerned with the practice in Israel?
A. In our business, when we ran Comdex (computer show), we had people in a number of countries, France, Mexico and around the world, and we had a terrible

> problem from a labor [point of view] and we had difficulties in firing them. And in those states we found out that there was a difference if you have a written contract or a verbal one. And a written agreement could help us.
> Q. So you thought that if there would be a written agreement in Israel it could help you?
> A. In the case of the plaintiff, Adelson did not need an agreement because he was [not] worried by the plaintiff, but he raised this in order to calm the plaintiff. He wanted to suggest to the plaintiff the possibility of protecting himself in a written agreement. <u>He was supposed to be employed in Israel according to the Israeli law.</u> The purpose of the conversation was also if I was needed to edit an agreement.
> Q. You were not authorized to change any of the terms of the plaintiff?
> A. I understood that the final conclusion should be approved by Mr. Adelson. <u>I was not authorized to change anything in the terms of his employment.</u>

Pages 152-153 (emphasis added).[5]


### ADELSON'S ARGUMENTS FOR THE APPLICATION OF MASSACHUSETTS LAW ARE EXPOSED AS FALSE.

Hananel has consistently argued for the application of Israeli law.[6] Although the Complaint does not specifically allege that the contract was governed by Massachusetts law (*see* ¶¶ 14-18), the three Roberts affidavits in the present action (as well as the Adelson affidavit) and arguments by counsel listed below are designed to support an argument to this Court that Massachusetts law applies, and that Massachusetts therefore has an interest in the outcome. The Complaint, Roberts and Adelson affidavits, and arguments by counsel are now seen to be based on a false premise.

Adelson's false argument appeared in Dkt. # 14, his Opposition to Hananel's motions to dismiss.

---

[5] Hananel notes here that Mr. Roberts's confirms Hananel's factual contention that all terms had been discussed, negotiated, finalized, and made between Adelson and Hananel in Israel previously, and that the alleged Dec. 5 meeting was not intended by Adelson to, and did not have any meaningful relationship to the contract, defeating Adelson's arguments of relatedness and purposeful availment.

[6] Hananel has previously pointed out that Adelson swore in an affidavit in Israel that he ordered Hananel's contract termination to be treated "according to Israeli law." Dkt. # 12 and 74, Aff. of Hananel, Exh. 1 ¶ 18.

4

> Clearly Massachusetts has an interest in preserving application of its substantive contract rules for contracts created in this state, and in enforcing contracts made with its residents.

*Id.* at 14.

> The applicable substantive law should be the law where the contract was made. The reasonable expectations of the parties surely was or should have been that Massachusetts law would govern the interpretation of the agreement, especially when [Hananel] now seems to be making a claim that Adelson is personally liable on the contract. Assuming that an Israeli court would try to apply Massachusetts law, it is far better for a judge who is most familiar with Massachusetts rules of decision to try the case. The choice of law and the best court to apply that law is a factor that this court should consider, *Mercier v. Sheraton Int'l, Inc.,* 981 F.2d 1345, 1357 (1st Cir. 1992) and which weighs in favor of the plaintiff.

Dkt. # 14 at 17.

> The resolution of the case at bar will depend largely . . . on the application of Massachusetts law.

*Id.* at 18.[7]

Adelson never retracted this argument, and it was reflected in the jurisdictional ruling of this Court. *See* Report and Recommendation Dkt # 78 at 17-18 (finding claim arose out of Massachusetts contacts); 20 ("Hananel purposefully availed himself of Massachusetts law"); 22-23 (finding Massachusetts has substantial interest in litigation and social policy).

Adelson, represented by new counsel (his present counsel), attacked this Court's forum non conveniens dismissal using the same false argument. Dkt. # 137 (Adelson's objections to the Report and Recommendations of forum non conveniens dismissal (Dkt. # 135)). In a bold-face heading, Adelson argued "III. The Report Ignores This Court's Familiarity With The Governing Substantive Law" and contains four pages of argument to that effect, Dkt. # 137 at 11-15, all now shown by Mr. Roberts's testimony to be false. Adelson also boldly criticized the Court's refusal, Dkt. # 135 at 10 n. 5, to engage in a choice of law analysis, as "relegat[ion] to

---

[7] *See also* Dkt. # 35, Adelson's memorandum in support of an antisuit injunction (denied by the Court) at 5 (arguing applicability of Massachusetts law).

half a footnote." Dkt. # 137 at 12; *see also id.* at 14 (Magistrate Judge "trying to sidestep this <u>important</u> factor" (emphasis added)). Adelson stated that Court erred, "simply because the law [the interest-balancing test favoring choice of Massachusetts law] is straightforward." *Id.* It now turns out that the "straightforward," i.e., truthful, conclusion by all parties was that Israeli law applies.

Adelson used the same false argument in appealing this Court's forum non conveniens dismissal to the Court of Appeals for the First Circuit. His principal brief referred to a "Massachusetts contract." Brief at 3. He specifically argued to the First Circuit that "Massachusetts law governs the contract." Adelson's Reply Brief at 57-58 (argument heading and argument). Adelson argued that the District Court's finding of "equipoise" in forum non conveniens factors demonstrated that Hananel had not met his burden of showing that factors strongly favored dismissal.[8] The now-demonstrated falsity of Adelson's choice-of-law argument to the First Circuit undermines that entire decision.

## Conclusion

The Court should grant Hananel's motion to supplement the record, and take into account Mr. Roberts's testimony that Israeli law applies to the employment agreement in all further proceedings.

James A.G. Hamilton, BBO #218760
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000

---

[8] The First Circuit adopted Adelson's conclusion of "equipoise," rejecting Hananel's argument that many factors strongly favored Israel.

6

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 6, 2008.

/s/ James A.G. Hamilton
James A.G. Hamilton

J:\Docs\31216\00001\01213428.DOC