Exhibit 1
to

13th Hananel Affidavit



143

בתי הדין לעבודה

עב 006245/01

בית הדין האזורי לעבודה תל אביב – יפו

17/01/2008

בפני:    כב' השופט אילן איטח
         נ.צ. (ע) מר מעוז הלוי
         נ.צ. (מ) מר מילר עמירם

| | | |
|---|---|---|
| 1 | ת. | לא. |
| 2 | ש. | אתה יכול לתאר את הקשר בין התובע למר אדלסון? |
| 3 | ת. | לא. |
| 4 | ש. | יש לך הסכם העסקה בכתב? |
| 5 | ת. | לא. אין חוזה בארה"ב על דברים. כשאתה מגיע לעבודה בארה"ב אתה מקבל מסמך |
| 6 | | ממשאבי אנוש שאומר לך מה הזכויות ומה החובות. את זה קבלתי. חתמתי על זה. |
| 7 | ש. | אתה חתום על הסכם סודיות? |
| 8 | ת. | כן. |
| 9 | ש. | לכמה שנים ממועד סיום עבודתך? |
| 10 | ת. | אין לי מושג. |
| 11 | ש. | מותר לך לספר למשהו משהו שהיית עד לו בעבודתך עם אדלסון? |
| 12 | ת. | זה שאלה מאוד כללית.  מה שהסבירו לנו שכל מה שקשור ליחסים האישיים בין |
| 13 | | המאובטחים לעניני המשפחה אנחנו מחויבים בסודיות מוחלטת. לגבי שאר הדברים אין |
| 14 | | מחויבות. |
| 15 | ש. | הבנתי את מה שרצית להגיד על הדברים האישיים. אני שואל אותך על הדברים העסקיים |
| 16 | | של מר אדלסון. על בתי המלון. על הפגישות. על הנכסים. אתה לא מחוייב לסודיות? |
| 17 | ת. | אם הייתי עתונאי לא היתי משיב אבל אני בבית משפט ולכן אני משיב. |
| 18 | ש. | מחוץ לבית משפט ? |
| 19 | ת. | כל עתונאי שישאל אותי מה קרה כאן או במקום אחר זה לא מעניינו. |
| 20 | ש. | האם זה נכון שבמהלך הימים הקרובים אמור מר אדלסון להחליט לגבי החלפת זוהר לחב |
| 21 | | בך? |
| 22 | ת. | לא. תגדיר מה זה החלפת זוהר לחב בך. |
| 23 | ש. | שדרוג מעמדך במערך האבטחה של מר אדלסון? |
| 24 | ת. | לא. מר זוהר להב הוא סגן נשיא ואנחנו שנינו דואגים למערך האבטחה. אנחנו ביחד 9 |
| 25 | | שנים . לא אמור לחול שינוי. |
| 26 | | |
| 27 | | |
| 28 | | **חקירה חוזרת:** |
| 29 | | אין. |
| 30 | | |
| 31 | | **עו"ד פול רוברטס מזהר כדין ומעיד בחקירה ראשית:** |
| 32 | | הגשתי שני תצהירים וכל האמור בהם אמת. |



144

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו                    עב 006245/01

                                                        17/01/2008

בפני:    כב' השופט אילן איטח
        נ.צ. (ע) מר מעוז הלוי
        נ.צ. (מ) מר מילר עמירם

**חקירה נגדית:**

| | |
|---|---|
| 1 | |
| 2 | ש.  אתה יכול לאמר לי מה המקצוע שלך? |
| 3 | ת.  אני עורך דין. אני מועסק במסצ'וסטס. מעסיקי הוא אינטרפייס גרופ מסצ'וסטס. |
| 4 | ש.  אינטרפייס גרופ משלמת את שכרך? |
| 5 | |
| 6 | ת.  כן. |
| 7 | ש.  מה מעמדך באינרטפייס גרופ? |
| 8 | ת.  סגן נשיא ויועץ משפטי. |
| 9 | ש.  אני מפנה אותך לתצהיר שנתת ב- 14/7/2004. (מסומן ת/35). מפנה אותך לסעיף 1. אתה |
| 10 | יכול להגיד מה ההבדל בין אינטרפייס גרופ וכאן אתה הוספת את השם מסצ'וסטס |
| 11 | LLC? |
| 12 | ת.  אינטרפייס גרופ הוא שם שבו החברה ידועה זה כמו שם מותג. אם אני אומר שאני עובד |
| 13 | עבור גירל מוטורס , כל מיני מחלקות שלהם, אז יש הרבה חברות ותאגידים שהם חלק |
| 14 | ממה שמכונה אינטרפייס גרופ. |
| 15 | ש.  האם יהיה מדוייק לאמר שאתה לפי דעתך סגן נשיא ויועץ משפטי של כל הקבוצה ? |
| 16 | ת.  כן. |
| 17 | ש.  עדיין משלמים את שכרך על ידי אינטרפייס גרופ מסצ'י (להלן – אג"ס)? |
| 18 | ת.  כן. |
| 19 | ש.  אתה גם אמרת שאתה מספק שרותים משפטיים לאדלסון , אני מקריא לך מס' 3 לת/35. |
| 20 | האם זה מדוייק? |
| 21 | ת.  כן. |
| 22 | ש.  האם השכר בגין השרותים האלה איך אתה מקבל אותו? |
| 23 | ת.  אמרתי מקודם שאני מקבל את כל שכרי מאינטרפייס גרופ מס' LLC. לפני זה היא היתה |
| 24 | inc. |
| 25 | ש.  ספקת שרותים לחברות אחרות ועדיין שלמו את שכרך מאג"ס? |
| 26 | ת.  כן. |
| 27 | ש.  אתה מספק שרותים משפטיים אישיים למר אדלסון? |
| 28 | ת.  כן. |
| 29 | ש.  האם משולם לך שכר בגין שרותים אלה? |
| 30 | ת.  כל שכרי מגיע מאג"ס. |
| 31 | ש.  האם זה נכון לאמר שאתה מועסק על ידי אדלסון וכל שאר חברותיו? |
| 32 | ת.  מבחינה משפטית אני מועסק על ידי אג"ס . אני רואה את עצמי כמועסק על ידי אדלסון ושותפיו וכל החברות הקשורות. |



145

בתי הדין לעבודה

עב 006245/01

בית הדין האזורי לעבודה תל אביב – יפו

17/01/2008

בפני :   כב' השופט אילן איטח
         נ.צ. (ע) מר מעזו הלוי
         נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ש. | אמרת שאתה סגן נשיא אני מפנה אותך לעדות המוקדמת של מר אדלסון בארה"ב. (נספח | 1 |
| | 5א' לתצהירו המשלים של מר חננאל) אני מפנה אותך לעמ' 131 שורה 2 . שם אדלסון ענה | 2 |
| | לשאלה האם אתה סגן נשיא והוא משיב שלמיטב ידיעתו אתה לא בתפקיד הזה. | 3 |
| ת. | אני סגן נשיא מאז 1993 ואדלסון טועה. | 4 |
| ש. | מה היא מעורבותך בעסקיה של קבוצת אינטרפס. | 5 |
| ת. | מספק ייעוץ משפטי. חוץ מזה, אני לא מקבל החלטות עיסקיות אני מכיר את עסקים של | 6 |
| | החברות. | 7 |
| ש. | תפקידך מוגבל לייעוץ משפטי? | 8 |
| ת. | רוב תפקידי הוא כזה. לפעמים אני מעורב בשיחות עיסקיות ומספק עצות. | 9 |
| ש. | מבלי להעליב, סגן נשיא זה רק תואר. | 10 |
| ת. | בארה"ב זה מאוד מקובל שהיועץ המשפטי הבכיר אוחז בתואר של סגן נשיא. | 11 |
| ש. | האם מר אדלסון מתייעץ איתך לפני קבלת החלטות עסקיות. | 12 |
| ת. | רק כשיש להם השלכות משפטיות. | 13 |
| ש. | האם אתה חבר אישי שלו? | 14 |
| ת. | אני רואה עצמי כך. | 15 |
| ש. | האם הוא חולק איתך על דברים אישיים? | 16 |
| ת. | הייתי אורח בביתו באירועים אישיים אני משתתף בימי הולדת וארועים במסלול החיים | 17 |
| | עם משפחתו! | 18 |
| ש. | האם סיפקת לו ייעוץ משפטי בעניינים אישים ולא עסקיים? | 19 |
| ת. | כן. | 20 |
| ש. | באיזה כובע שלך? | 21 |
| ת. | כעורך הדין שלו. | 22 |
| ש. | האם אתה רואה עצמך כעו"ד אישי של אדלסון! | 23 |
| ת. | אני מחזיק אותו ואת שותפיו ואת חברי המשפחה כלקוחות שאני מספק להם שירותים | 24 |
| | משפטיים בכל העניינים. | 25 |
| ש. | האם אתה מספק את השירותים האלה עם או בלי תמורה? | 26 |
| ת. | אני לא מקבל תמורה נוספת למה שאני מקבל מאג"ס. | 27 |
| ש. | האם אתה מחזיק מניות באיזה מהחברות בקבוצה? | 28 |
| ת. | כן. לאס וגאס סנדס. אני קניתי את המניות בשוק החופשי. | 29 |
| ש. | האם קיבלת אופציות או מניות במסגרת תנאי העסקתך ? | 30 |
| ת. | לא. | 31 |
| ש. | למה? | 32 |



146

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו          עב 006245/01

17/01/2008

בפני:    כב' השופט אילן איטח
         נ.צ. (ע) מר מעוז הלוי
         נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ת. | צריך לשאול את מר אדלסון. פעם הוא הציע לי וסרבתי. זה היה לפני היציאה לחופשה. | 1 |
| | היו עיסקאות מר אדלסון ולאס וגאס סנדס. ואני הצגתי את מר אדלסון בעיסקה וחשבתי | 2 |
| | שזה יהיה ניגוד עניינים אם אקבל מניות או אופציות. | 3 |
| ש. | לפי העיקרון הזה לעולם לא תקבל ? | 4 |
| ת. | אתה צודק. | 5 |
| ש. | אתה אמרת שפגשת את התובע ב-5/12/95 | 6 |
| ת. | אכן נפגשתי איתו . | 7 |
| ש. | האם פגשת את התובע חוץ מאותה פגישה? | 8 |
| ת. | כן. | 9 |
| ש. | תתאר באילו נסיבות! | 10 |
| ת. | אני חושב שפגשתי אותו בפעם הראשונה שהייתי בישראל בדיון עם מר אדלסון במשלחת | 11 |
| | של חברי קונגרס והתובע ערך את הסידורים להסעה של החברים וכך נפגשנו. נפגשנו שוב | 12 |
| | כשהוא הגיע לבוסטון במשרדו של אדלסון . זה היה שנים לפני 95. | 13 |
| ש. | תאר את טיב היחסים בינך לבין התובע לפני 5/12/95 | 14 |
| ת. | התובע היה מנהל של טיולי הגליל בע"מ ואחד מחברות הקבוצה GWV היה סידור עם | 15 |
| | טיולי הגליל. ל GWV היה מערך ..... | 16 |
| ש. | אני שואל על טיב היחסים? | 17 |
| ת. | לא היו לי יחסים אישיים, לגבי טיב היחסים העסקיים אז אני יכול לומר שהם היו טובים | 18 |
| | ומוגבלים. | 19 |
| ש. | האם לפני הפגישה היית מודע ליחסים בין התובע לבין אדלסון? | 20 |
| ת. | כן. הם היו חברים קרובים והחליטו לעבור לפסים של יחסים עיסקיים. | 21 |
| ש. | התכוונת לחשבסקה ? | 22 |
| ת. | כן. קודם היו יחסים בין טיולי הגליל לבין קבוצת GWV טיולי הגליל בארה"ב. | 23 |
| ש. | אבל לא היו להם יחסים עסקיים אישיים? | 24 |
| ת. | היו להם יחסים אישיים וגם יחסים עסקיים במסגרת החברות הנ"ל. | 25 |
| ש. | כשאתה אומר יחסים עסקיים אתה מתכוון ליחסים בין חברות. | 26 |
| ת. | אחת מהחברות שלתובע היו אינטרסים היו יחסים עם חברה שלשלדון היו אינטרסים בה. | 27 |
| ש. | איך ומתי למדת שאדלסון והתובע עוברים ליחסי העסקה? | 28 |
| ת. | מר אדלסון סיפר לי זאת. הוא סיפר לי מס' שבועות לפני הפגישה, בנובמבר. | 29 |
| ש. | מה הוא אמר לך? | 30 |

ב"כ הנתבעים :                                                                      31

העובדה שאינני מתנגד לעניינים של חסיון עו"ד לקוח אינה צריכה להתפרש כוויתור על חסיון זה.      32



147

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו                          עב 006245/01

בפני:   כב' השופט אילן איטח                                    17/01/2008
        נ.צ. (ע) מר מעוז הלוי
        נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | ת.   הוא אמר שהוא מתכוון לאינטרפס בע"מ בישראל שתשכור את התובע ושהוא שוחח עם |
| 4 | התובע  על תנאי ההעסקה. אבל הוא מבקש ממני לסגור באופן סופי את הפרטים. הוא |
| 5 | אמר שבגלל שהם חברים טובים לא נעים לו לנהל את המו"מ על הפרטים. |
| 6 | ש.   זה היה בנוב'? |
| 7 | ת.   כן. בשנת 95. |
| 8 | ש.   מפנה אותך לנספח 5א' הנ"ל לעמ' 352 שורה 21, מתי זה היה בנוב' ב4 או ב5 לדצמבר? |
| 9 | זה היה בשני המועדים. |
| 10 | ש.   למה אדלסון שהוא בטוח מבין שאתה בפעם הראשונה היה צריך לומר פעמיים? |
| 11 | ת.   עברו כמה שבועות מאז שדיברנו בפעם הראשונה, הייתי בביתו של מר אדלסון בערב לפני |
| 12 | הפגישה עם התובע והוא הזכיר זאת שוב. |
| 13 | ש.   האם ידעת בנוב' 95 מהם הנסיבות בגין התובע הולך להיות מועסק? |
| 14 | ת.   אני לא בטוח אם אתה מתכוון לכך , ידעתי שהתפקיד של מנהל השלוחה הישראלית פנוי |
| 15 | ולא הייתי מופתע כשמר אדלסון אמר לי ד. לא הייתי מופתע כי הוא נחר בתובע. |
| 16 | ש.   למה המשרה בישראל היתה פנויה? |
| 17 | ת.   כי המנהל הקודם מר פרבשטיין שהוא גיסו התפטר. |
| 18 | ש.   למה הוא התפטר? |
| 19 | ת.   למיטב זכרוני, היו לו אי הסכמות עם מר אדלסון לגבי האופן בו יש לנהל את השלוחה |
| 20 | הישראלית. |
| 21 | ש.   האם זה נכון שבסוף  1995, מאוקטובר ואילך,  ההשקעה היחידה של IPI היתה בחברה |
| 22 | בשם אוטודיפו ? |
| 23 | ת.   לא. |
| 24 | ש.   היכן עוד ? |
| 25 | ת.   היתה חברה בשם  פגסוס מדיקל סיסטם ההשקעה הזאת נמכרה לחברה אמריקאית בשם |
| 26 | HBO והמכירה היתה בשנת 1995, אבל עדיין זה נחשב בקבוצה  כי התשלומים לא |
| 27 | הסתיימו. |
| 28 | ש.   לא היתה עוד פעילות מעבר לקבלת הכסף בגין פגסוס? |
| 29 | ת.   נכון. |
| 30 | ש.   החברה היחידה שעסקו בה היא אוטודיפו באותו זמן ? |
| 31 | ת.   למעשה הגביה בגין פגסוס דרשה מעורבות שלי  ושל אדלסון במשא ומתן . אני לא זוכר |
| 32 | אם פרבשטיין היה מעורב, יתכן שכן, אבל אני לא זוכר. |



148

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו

17/01/2008

בפני :    כב' השופט אילן איטח
נ.צ. (ע) מר מעוז הלוי
נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ש. | מפנה לת/35 – סעיף 7 שורה שלישית מלמעלה מה היו למיטב זכרונך השירותים | 1 |
| | המוגבלים ? | 2 |
| ת. | הם היו בישראל למיטב זכרוני  בטיפול בחשבונות בנק, העברת כספים בין חשבונות ואני | 3 |
| | מאמין שמשהו שקשור לרכבים בישראל . זה מה שאני זוכר . | 4 |
| | | 5 |
| | | 6 |
| | השעה 16.00. | 7 |
| | הפסקה של 20 דקות. | 8 |
| ש. | האם היית ער לכך שהתובע מונה כדירקטור באוטודיפו לכל המוקדם בנובמבר 1995 ? | 9 |
| ת. | כן . כשאני מסתכל על הפרוטוקול  שהוצגת לי (פרוטוקול מיום 14.11.1995 אשר צורף | 10 |
| | במסגרת נספח ט' לתצהיר התובע וסומן אקזיביט 12 A ) אני נזכר. | 11 |
| ש. | לאחר שאתה זוכר האם אתה חושב שמינוי כדירקטור נופל במסגרת שירותים מוגבלים | 12 |
| | שהתובע סיפק כפי שאתה מתאר בתצהירך בסעיף 7 ? | 13 |
| ת. | כן. לתובע לא היתה לו סמכות פעולה כללית אלא פעולה מאוד מסוימת שהוא התבקש על | 14 |
| | ידי מר שלדון לבצע. | 15 |
| | | 16 |
| ש. | האם אתה זוכר שמר חננאל קיבל זכויות חתימה באוטודיפו ? | 17 |
| ת. | אני לא זוכר בדבר כזה. אבל זה מתישב עם היותו יו"ר  הדירקטוריון בפרוטוקול | 18 |
| | שהראתה לי. (הערה : הפרוטוקול לא הוגש ). | 19 |
| ש. | אני מראה לך מסמך (מתוך נספח ט' לתצהיר התובע – פרוטוקול מיום 7.11.1995 מסומן | 20 |
| | B ) האם אתה נזכר לאור המסמך שהתובע קיבל זכות חתימה באוטודיפו ? | 21 |
| ת. | אני לא זוכר אבל זה כתוב בפרוטוקול.  אני נזכר שהוא היה דירקטור יו"ר אבל לא את | 22 |
| | מתן זכויות החתימה . | 23 |
| ש. | האם עדיין אתה עומד על דעתך כי מדובר בשירותים מוגבלים של התובע לפני הגישה | 24 |
| | בדצמבר 05 ? | 25 |
| ת. | לאחר שלמדתי שהיו לו זכויות חתימה, זה לא משנה את דעתי  שבצפיה להעסקתו | 26 |
| | המלאה ב- IPI הוא ביצע פעולות מוגבלות לבקשת חברו הטוב והנאמן שלדון אדלסון. | 27 |
| ש. | אני מציג לך אישור על פתיחת חשבון ל- IPI וזה לפני 1.1.1996 שבו אמרת שהתובע החל | 28 |
| | לעבוד  ובסעיף 3, מצויין שהתובע הוא בעל זכות חתימה  יחד עם זאת מר יסמין ומר אדלסון. | 29 |
| | האם אתה נזכר שהתובע קיבל זכות חתימה כזאת ? | 30 |
| ת. | כן. אני הזכרתי חשבונות בנק קודם לכן.  (הערה : המסמך מסומן כת/36 והוא מתקבל | 31 |
| | על תנאי שהוא נכלל במסגרת נספח ט'. תוגש הודעה נפרדת של הצדדים בעניין ). | |



149

בתי הדין לעבודה

ביח הדין האזורי לעבודה תל אביב – יפו                    עב 006245/01

17/01/2008

בפני :     כב' השופט אילן איטח
נ.צ. (ע) מר מעוז חלוי
נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ש. | 1  אני מראה לך פקס  ממר פרבשטיין לתובע שהוא מבקש הנחיות להעברת הלוואה |
| | 2  לאוטודיפו (הערה : מסומן ת/37 על תנאי כמו ת/36) לאור המסמכים האלה, נראה שמר |
| | 3  פרבשטיין הפסיק לפעול עבור IPI והסמכויות עברו לחננאל? |
| ת. | 4  אין לי זכרון ספציפי בענין הזה. אתה יכול להראות לי הרבה מסמכים וזה לא ישנה את |
| | 5  האמת שכתבתי בתצהירי. העסקתו ב- IPI החלה  ב- 1.1.1996 לפני מועד זה היא היתה |
| | 6  ללא מנהל והתובע ביצע מספר דברים והכנות כדי להפוך  למנהל . |
| ש. | 7  בהנחה שמה שכתוב זה נכון, האם זה לא מספיק כדי שהתובע יחשב |
| | 8  כעובד של מר אדלסון ו/או IPI לפני 1.1.1996 ? |
| ת. | 9  זה לא מכוון יחסי העסקה בגלל שהיתה הסכמה  והבנה שזה לא מבסס יחסי עבודה לפני |
| | 10  1.1.1996. הבנה זו והסכמה זו אושרה על ידי התובע בפני בפגישה של 5.12.1995. |
| ש. | 11  אמרת שהוא לא קיבל שכר לפני 1.1.1996?! |
| ת. | 12  נכון. |
| ש. | 13  האם כל הפעילויות של התובע לפני 1.1.1996 שכללו כהונה כדירקטור וזכות חתימה ומה |
| | 14  שכתוב במכתב של מר פרבשטיין ת/37, כל זה ואולי יותר  היו אמורים להתבצע ללא |
| | 15  תמורה ? |
| ת. | 16  כל השירותים שתיארת  לא לקחו יותר ממספר שעות  לכל התקופה עד סוף דצמבר 1995 |
| | 17  והוא לא היה אמור משולם בגין זה. |
| ש. | 18  כל השעות שהתובע ביצע שלדעתך היו ספורות שעות אלה היו יקרות כי הם נעשו על ידי |
| | 19  אדם בכיר  אם  הייתם רוכשים את השירותים האלה מאדם אחר, כמה אתה חושב שזה |
| | 20  היה עולה ? |
| ת. | 21  אני לא יודע. אני לא יודע כמה היו משלמים בחוץ. |
| ש. | 22  האם נראה לך סביר שאדם שמקבל כזאת אחריות כמתואר קודם ללא פיצוי ? |
| ת. | 23  בנסיבות שיש לנו כאן והתובנות שהיו בין התובע לנתבע תשובתי היא כן. |
| ש. | 24  האם אתה אומר שהתובע ואדלסון סיכמו שהתובע לא יקבל שכר בגין שירותים אלה ? |
| ת. | 25  כן. התובע אמר לי כך בפגישה בתאריך 5.12. |
| ש. | 26  אני מפנה אותך לתצהירך מחודש אפריל 05 מסומן ת/38 בסעיף 8 האם הפגישה ל- 5.12. |
| | 27  נקבעה ב- 4.12 יום קודם לכן ? |
| ת. | 28  לא.  כאשר מר אדלסון ביקש ממני לעשות  את הסגירה הסופית עם התובע, הוא ביקש |
| | 29  ממני להתקשר לתובע . אני התקשרתי לתובע בישראל והוא אמר לי שהוא יהיה בארה"ב |
| | 30  בקרוב ואנחנו נוכל להפגש אז. ביקשתי שיודיע לי כשהוא מגיע. לא דיברנו איתו מאז. |
| | 31  אבל למדתי מהמזכירה של מר אדלסון בתי על היום שבו התובע יהיה בבוסטון בענין |



150

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו

עב 006245/01

17/01/2008

בפני:        כב' השופט אילן איטח
נ.צ. (ע) מר מעוף הלוי
נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| 1 | רפואי ושהאו יבוא אחר כך למשרדים שלנו. מאז שיחת הטלפון לישראל ואני פגשתי אותו |
| 2 | בב4. ורציתי לוודא שהוא אכן מגיע ב- 5.12. |
| 3 | ש. מר אדלסון אמר לך שהתובע מגיע לבוסטון ? |
| 4 | ת. מר אדלסון לא אמר לי שהתובע מגיע לבוסטון אלא התובע הוא זה שאמר לי זאת בשיחת |
| 5 | הטלפון שלי אליו לישראל . |
| 6 | ש. למה לא כתבת בתצהיר של אפריל 05 את כל הסיפור שעכשיו סיפרת ? |
| 7 | ת. הדבר החשוב בסיפור היה ההסכם שעשינו בפגישה, איך הפגישה נקבעה זה לא חשוב. |
| 8 | ש. מפנה לת/38 מאפריל 05 בסעיף 3, ומדובר בתצהיר משלים לת/35 ובסעיף 3 אתה אומר |
| 9 | שהתובע זוכר שהוא נכח אך לא זוכר מה דיברנו ובסעיף 4 אתה אומר שאתה כן זוכר את |
| 10 | הפגישה! |
| 11 | ת. הקשר   תצהיר של ת/38   והתצהיר שקדם לו ת/35, הוא תביעה בבוסטון שהעניין הוא |
| 12 | סמכות שיפוט. ועורכי הדין של התובע התכחשו שהיתה מספיק הקשר למדינת מסצ' |
| 13 | ואנחנו היינו צריכים לאשר שהוא בא למדינה הזו לפגישה והוא טען שזאת היתה פגישה |
| 14 | חברתית ולא עיסקית. הדבר היחיד שהיתה לתצהירים אלה  זה מה שעורך הדין |
| 15 | שלנו בתביעה שלנו חשב שרלבנטי לסמכות השיפוט.  זה לא היה בכוונתי לספר את כל |
| 16 | הסיפור אלא את העובדות החשובות לביסוס סמכות השיפוט. |
| 17 | ש. אמרת שטיילפנת לתובע והוא עדכן אותך שהוא בא לבוסטון , בת/38 בסעיף 5 אמרת... |
| 18 | אני עדיין שואל למה לא כתבת פה שיחששתי עם התובע והוא עדכן אותך וכדי להראות |
| 19 | אותך שזה רלבנטי אני מראה לך תצהיר נוסף שנתת באוגוסט 2005, ת/39 ובתצהיר זה |
| 20 | השלישי לבסוף אתה מספר את כל הסיפור אתה אמרת בסעיף 6 שורה חמישית באמצע |
| 21 | אמרת ... אני שואל מדוע היית צריך שלושה תצהירים כדי לספר סיפור פשוט שאם זה |
| 22 | בגלל שהמצאת כזה סיפור ? |
| 23 | ת. כל מה שסיפרתי היום  סיפרתי לעורך הדין שלנו בבוסטון. הוא בחר את מה שהוא צריך |
| 24 | לתצהירים ואני חתמתי שזה נכון. הוא  בחר את מה שהוא צריך לצרכים שלו. |
| 25 | ש. אבל אתה לא עד רגיל, אתה בעצמך עורך דין האם לא היה צורך לספר את כל הסיפור |
| 26 | בשלמותו בתצהיר הראשון ? |
| 27 | ת. אני לא עורך דין מייצג. אני עורך דין עיסקי, מסחרי. אני לא מייצג בבית משפט, אני לא |
| 28 | מגיש כתבי טענות. אני מסתמך על עורכי דין מומחים לכך. |
| 29 | ש. אמרת שלמדת על הביקור של התובע גם מבתי המזכירות?! |
| 30 | ת. בתי יורסצ' |
| 31 | ש. בת/39 בסעיף 7 אתה מדבר על מכתב שבו התובע אומר שהוא ינסה להיות בשבוע הראשון |
| 32 | של דצמבר בבוסטון , איך אתה מסיק מזה שהוא אכן יהיה שם ב- 5.12 ? |



151

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו        עב 006245/01

17/01/2008

בפני:    כב' השופט אילן איטח
נ.צ. (ע) מר מעוז חלוי
נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ת. | כמו שהעדתי קודם. למדתי מהתובע בטלפון שהוא מתכנן לבוא לבוסטון בזמן הקרוב. כל |
| | זה למדתי מהטלפון. למדתי מבתי מה התאריך הספציפי שהוא אמור להגיע, וכך ידעתי |
| | שהוא בא ב- 5.12 , כתבתי לעצמי ביומן פגישה עם התובע ב- 5.12 ושמרתי את הזמן פנוי |
| | לכך . וערב קודם ב- 4.12 אישרתי בפגישה את הגעתו למשרדי למחרת אחר הצהרים |
| | לסכם את תנאי העסקתו. |
| ש. | מדוע דוקא איתך מכולם ביקש מר אדלסון שתסכם את תנאי העסקתו ? |
| ת. | אני הייתי האדם הכי הגיוני שיבחר כי הייתי עורך דין של הקבוצה. הייתי עם מר |
| | אדלסון מאז 1980 וזה מסוג הדברים שהוא סומך עלי לעשות. |
| ש. | האם ראית בעיה כעורך דין לדבר עם התובע שאיננו איש מקצוע כדי לסכם פרטים? |
| ת. | לא ראיתי בעיה. דיברנו על תנאי העסקה. בזמן השיחה שאלתי אותו אם הוא רוצה לקבל |
| | מסמך כתוב שהוא יכל היה לחבון על ידי כל עורך דין שהוא היה רוצה. |
| ש. | האם לא חששת שאתה עלול להטעות את התובע כשאתה מדבר על עניינים משפטיים כמו |
| | רווח נטו ? |
| ת. | רווח נטו אינו מונח משפטי. אני מכיר את התובע שהוא מתוחכם ומבריק בעסקים ואני |
| | לא דואגים בכך שיש לי עלי יתרון בתחום הזה. |
| ש. | האם הצעת לו לקבל ייעוץ משפטי ? |
| ת. | אני לא זוכר שעשיתי דבר כזה. אך התובע עשה שימוש בעורכי דין משלו. והוא ידע למצוא |
| | אותם אם הוא היה צריך אותם . |
| ש. | האם אתה בדרך כלל מדבר עם מי שאינם עורדי דין בעסקאות ? |
| ת. | בארה"ב זה נחשב לא אתי שעורך דין ידבר עם אדם שמיוצג על ידי עורך דין אחר. אין |
| | בעיה כאשר הוא אינו מיוצג. |
| ש. | אני מפנה אותך לנספח 5 א' לעמ' 352 – שורות 13 – 16, אדלסון אומר שלמיטב ידיעתו |
| | לא שלמו לתובע על נסיעתו לבוסטון בדצמבר ולא הייתי מרשה זאת, בתצהירך ת/39 |
| | בסיפא של סעיף 7, אמרת שתנאנל  בא לפגישת עסקית איתי ועכשיו אני שואל אותך |
| | האם זה נראה לך הגיוני שהתובע ישא בהוצאות נסיעה שבה הוא צריך להפגש איתך |
| | בעניינים עסקיים ? |
| ת. | זה הגיוני. וגם אם מר אדלסון היה מציע לשלם גם זה היה נראה הגיוני. הרבה פעמים |
| | אנו מביאים אנשים מחוץ לעיר לעסקים ולפעמים אנחנו משלמים את הוצאותיהם |
| | ולפעמים לא. |
| ש. | באותו תצהיר ת/39, בסעיף 6 בסוף עמ' 2, זה נכון מה שכתוב ? |
| ת. | כן. |
| ש. | נהלת משא ומתן כפי שביקש אדלסון ? |



152

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו                    עב 006245/01

בפני :    כב' השופט אילן איטח                    17/01/2008
          נ.צ. (ע) מר מעוז חליו
          נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| כן. | ת. |
| דיברת בתצהירך הראשון ת/35 בסעיף 8 , שנהלתם משא ומתן ולאחר מכן סיכמתם האם זה נכון ? | ש. |
| זה תיאור הוגן של מהלך הדברים. | ת. |
| לפי מה שאני מבין את המונע משא ומתן, היו חילוקי דיעות שאחר כך יושבו. האם כך קרה כאן ? | ש. |
| אני לא מתאר כל דבר ששוחחנו עליו כמשהו שנוי במחלוקת אלא דברים שהיו צריכים להבהיר. | ת. |
| אז למה כתבת משא ומתן ? | ש. |
| אני חושב שמשא ומתן היא מילה מתאימה לתהליך של דיון והבהרה של פרטים. | ת. |
| אני מפנה לנספח ת/5 לעמ' 353 שורה 9 – 11,, אדלסון אומר שאין חילוקי דיעות. אני מפנה אותך לתצהיר נוסף של מר אדלסון מסומן ת/ 40, בתשובתו לשאלה 2 עמ'4 פיסקא שניה , שורה רביעית מהסוף מר אדלסון אומר... אדלסון והתובע כבר סיכמו בנובמבר והוא אומר שאין חילוקי דיעות. אתה בעצמך שדיברתם על ההברות, האם לאור כך למה היה צורך בפגישה איתך , הכל סוכם, בכל מקרה זה הסכם בעל-פה, אין חילוקי דיעות, מדוע היה צורך שהוא יבוא מישראל במיוחד ? | ש. |
| אני חושב שאתה קורא מה שלא כתוב בתשובה של מר אדלסון.  הוא רק אמר שהוגנו להבהיר, וכפי שהוא תיאר לי מדובר בהבהרה כללית והוא רצה שאני אודא שיש לנו פרטים מספיק מסוימים . אני לא הבנתי את תפקידי כיצור את תנאי העבודה אלא להבהיר, לפרט ולאשר  את הפרטים. למשל : כאשר נפגשנו ב- 5.12 התובע אמר לי שהוא יעבור מטיולי הגליל ל- IPI. והוא אמר שהוא רוצה להבהיר שהוא עדיין יצטרך לעסוק בעניני טיולי הגליל אחרי שהוא יועסק על ידי IPI ואני אמרתי אבל שהעסקתך אצלנו תהיה במשרה מלאה והוא אמר כן זה נכון אבל עדיין אני אצטרך ליעץ מעת לעת לטיולי הגליל. הוא אמר שיש דברים שהוא עשה לטיולי הגליל מספר קשרים שאף אחד לא יכול להחליף אותו. הוא אמר שהזמן שהוא יצטרך לחקדיש  בייעוץ יהיה מאוד מוגבל. אז אני הרגשתי שמדובר בהבהרה מאוד חשובה . | ת. |
| אתה עורך דין ואפילו הדוגמא הזניחה הזאת הרי שיעוץ מקצועי היה צריך להגדיר את מספר השעות ? | ש. |
| אני לא נכנסתי בשיחות בין אדלסון לתובע שנמשכו על פני זמן. הייתי זקוק לרכז את הכל לתוך סט אחד של תנאים ואני לא ידעתי עד לסיום פגישתי עם התובע האם הוא רוצה את זה בכתב או לאו. מר אדלסון הסמיך אותי לעשות הסכם בכתב אם התובע היה מעונין. | ת. |
| למה לא התעקשת על הסכם בכתב ? | ש. |



153

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו                עב 006245/01

17/01/2008

בפני:        כב' השופט אילן איטח
             נ.צ. (ע) מר מעוז הלוי
             נ.צ. (מ) מר מילר עמירם

ת.    זה לא נהוג אצלנו בחברה  לעשות הסכמים בכתב עם אף אחד. למעשה כל הזמן עבדתי          1
      עם החברה, לא חושב שלמישהו היה הסכם בכתב עד  שהבאנו קבוצת הניהול  למלון          2
      בוגס.  מדובר ב- 3 אנשים שעבדו יחד במלון באטלנטיק סיטי והבאנו אותם יחד לווגס          3
      והם רצו הסכם בכתב. לפני כן,  לא היו הסכמים בכתב ולחברה יש מאות עובדים מכל          4
      הרמות  ומעולם לא היה בכתב אך מר אדלסון הכיר בכך שאולי הפרקטיקה הנוהגת          5
      בישראל שונה והוא אמר לי כך אם התובע יגיד שבישראל הפרקטיקה שיש הסכם בכתב          6
      תעשה כן, גם אם זאת לא הפרקטיקה והוא רוצה בכך תעשה חוזה.          7

ש.    למה אדלסון היה מוטרד מהפרקטיקה בישראל ?          8

ת.    בעסקים שלנו כאשר נהלנו את קומדקס (תערוכת מחשבים),  היו לנו אנשים במספר          9
      מדינות, צרפת, מקסיקו וברחבי תבל, והיו לנו בעיות איומות  מבחינת העבודה והיו לנו          10
      קשיים לפטר אותם. ובמדינות האלה גילינו שיש הבדל אם יש לך חוזה בכתב או בעל-פה.          11
      והסכם בכתב היה עוזר לנו.          12

ש.    אז חשבתם שאם יהיה הסכם בכתב בישראל זה יכול לסייע לכם ?          13

ת.    במקרה של התובע  אדלסון לא היה צריך הסכם כי הוא מודאג  מפני התובע אלא  העלה          14
      זאת כדי להרגיע את התובע. הוא רצה להציע לתובע את האפשרות להגן על עצמו בהסכם          15
      בכתב.  הוא היה אמור להיות מועסק בישראל לפי החוק הישראלי. מטרת השיחה היתה          16
      גם אם אצטרך לערוך הסכם.          17

ש.    אתה לא היית מוסמך לשנות איזה מהתנאים של התובע ?          18

ת.    אני הבנתי שהסיכום הסופי צריך להיות מאושר על ידי מר אדלסון.  לא הייתי מוסמך          19
      לשנות משהו בתנאי העסקתו.          20

ש.    בוא נדבר על התנאים. אתה אמרת בת/35,   בסעיף D 8   שסכמתם 12%... כמתואר שם          21
      ואני שואל אותך למה הכוונה ״כתוצאה ממאמצי התובע״ – איך זה נמדד ?          22

ת.    תפקידו של התובע כפי שהבנתי היה   לעסוק בזרם העיסקאות בישראל . הוא היה צריך          23
      ליצור קשרים אולי לשכור יועצים...אם הוא ביצע את תפקידיו ביחס להשקעה כלשהי          24
      ואם נוצר רווח מההשקעה כי אז זה יחשב כתוצאה מהמאמצים שלו. אני לא חושב שזה          25
      לא ברור. אני מסכים שזה לא מושג מתמטי חד וברור והוא יכול להיות נתון לחילוקי          26
      דעות.          27

ש.    ב- 12% שתיארת, האם זה מקובל אצל אדלסון ?          28

ת.    לא.          29

ש.    מדוע הוא הציע זאת לתובע ?          30

ת.    אין לי מושג. הוא לא חלק את מחשבותיו עימי.          31

ש.    הסיכום של תנאי ההעסקה עם התובע האם התבסס על מידע שנמסר לך מאדלסון?          32

154



בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו        עב 006245/01

17/01/2008

בפני:    כב' השופט אילן איטח
        נ.צ. (ע) מר מעוז הלוי
        נ.צ. (מ) מר מילר עמירם

1   ת.    בעיקרון כן וכן על חילופי המידע ביני לבין התובע בפגישה .
2   ש.    אבל שקדם הסכמת התובע שלא יכולת לשנות בה פרטים ?
3   ת.    נתתי לך דוגמא.  מה שדיברנו היה מעבר למה שהתובע סיכם עם מר אדלסון בעניינים
4       מסוימים.  אני לא מוסמך לשנות מה שסוכם. לדבר מעבר ולשנות תנאים אלה דברים
5       שונים. בהשגת חסיכום ידעתי שהוא צריך להיות מאושר על ידי מר אדלסון ואם הוא היה
6       אומר לי על משהו מסוים לא, אז זה היה משנה זאת.
7   ש.    האם זה נכון שזכות התובע ל- 12% קיימת רק שהוא מועסק על ידי IPI, האם היא פוקעת
8       שהוא מפסיק להיות מועסק?
9   ת.    כן. זה הדבר ששוחחתי איתו עליו באופן ספציפי.
10  ש.    האם זה מקובל אצל אדלסון שההסכמים מסוג זה מסתיימים בתום תקופת ההעסקה ש?
11  ת.    אני כבר העדתי שכל ההסכם הזה לא מקובל.
12  ש.    האם מנגנון דומה בדרך כלל מסתיים לאחר סיום העבודה ?
13  ת.    לא היו מנגנונים כאלה. לא היה סידור כזה אם הוא אף אחד אחר.
14  ש.    האם היו הסדרים קרובים שאתה ער להם או דומים ?
15  ת.    כן. באותו זמן מר אדלסון עשה הסכם כזה עם דן רביב .
16  ש.    אני חוזר על השאלה. האם מקובל שהסדר כזה פוקע בתום יחסי העבודה ?
17  ת.    מאחר וההסדר הנוסף היחיד הוא אם דן רביב, ומאחר שגם עם דן רביב הוא  זהה (לאחר
18       שהעד נשאל האם זהה או דומה הוא מתקן  - זהה למיטב ידיעתי). אני מבין שזה המצב –
19       לגבי פקיעת הזכות – גם עם דן רביב אך אני מעולם לא שוחחתי עם דן רביב בעין זה. מר
20       אדלסון לא ביקש ממני עם דן רביב.
21  ש.    למה מר אדלסון ביקש שתסכם עם התובע אבל לא עם דן רביב ?
22  ת.    למיטב ידיעתי הוא לא ביקש ממישהו אחר לדבר עם דן רביב.  ומדוע הוא לא ביקש ממני
23       ולא ממישהו אחר לדבר עם דן רביב אינני יודע.
24  ש.    האם עשית תרשומת לאותה פגישה ?
25  ת.    אני לא זוכר.
26  ש.    האם אתה בדרך כלל עורך תרשומות של פגישות ?
27  ת.    לא תמיד.
28  ש.    אני מפנה אותך לנספח D בת/39 –זאת תרשומת של פגישה וצירפת אותה כדי להוכיח את
29       קיומה ?
30  ת.    נכון . זו תרשומת שעשיתי. התרשומת הזאת היתה  כהכנה לעיסקה מסובכת של מיזוג
31       חברות HP ו- IMD .



155

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו

17/01/2008

בפני :    כב' השופט אילן איטח
          נ.צ. (ע) מר מעוז הלוי
          נ.צ. (מ) מר מילר עמירם

| | | |
|---|---|---|
| ש. | אני מפנה  לתצהיר של אדלסון **ת/41 סעיף 8**, זהו התצהיר המוקדם ביותר מספטמבר | 1 |
| | 2002, ובסעיף 8 אמר אדלסון שתחסכם – האם לאור מה שכתוב פה אתה רוצה לחזור בך | 2 |
| | מעודתך כאילו אתה בעצמך סיכמת עם חננאל? | 3 |
| ת. | אני מאמין שתיארתי בתצהירי שבסוף הפגישה שבה סיכמנו את התנאים , אדלסון הגיע | 4 |
| | ואמר שהוא מסכים לתנאים והתובע מסכים וכולם יכלו לחצו ידיים. זה הסיכום של ההסכם | 5 |
| | ואני מניח שלזה הוא התכוון בסעיף 8. | 6 |
| ש. | האם היית מודע בזמן אמת לתצהיר הזה בת/41 ? | 7 |
| ת. | ראיתי את התצהיר הזה קודם ואני לא יכול להגיד מתי זה היה . | 8 |
| ש. | אמרת בתצהירך שאתה מפקח אחר ההליכים בישראל כך שהיית אמור לראות את | 9 |
| | התצהיר ? | 10 |
| ת. | הפיקוח על ההליכים לא כלל קריאה של כל מסמך. | 11 |
| ש. | זה לא כל מסמך, זה תצהיר של מר אדלסון זה משהו נדיר ? | 12 |
| ת. | אני מסכים שזה מסמך מהותי. אבל אני לא זוכר אם ראיתי או לאו בזמן אמת. אני זוכר | 13 |
| | את הפגישה מ- 5.12 לפרטיה. אני לא זוכר מתי  ראיתי את התצהיר הזה . אני לא הייתי | 14 |
| | זוכר את היום בו נפגשתי עם התובע אם הדבר לא היה רשום ביומני. | 15 |
| | | 16 |
| ש. | למה לא הצגת את יומנך ? | 17 |
| ת. | זה יומן קטן (העד מוציא יומן קטן מכיסו ל שנת 2008.). ולא ביקשו | 18 |
| | ממני לצרף | 19 |
| ש. | מפנה אותך לתצהירו של אדלסון ת/40 לעמ' 3 לשאלה מס' 2 שמבקשת את כל המסמכים | 20 |
| | בקשר למגעים, האם התבקשתם להציג את המסמך הזה או לא? | 21 |
| ת. | אף אחד לא ביקש ממני ספציפית להציג את יומני ולא חשבתי שהיומן שלי הוא מסמך | 22 |
| | בתחום שבו עסקה השאלה. | 23 |
| ש. | מראה לך מסמכים של מר אדלסון לתובע ב- 1.5.2000  - **מתקבל ומסומן ת/42** מראים | 24 |
| | על 12% שלפי גירסת אדלסון (בסעיף קטן 3)  זה מסמך שאדלסון שלח לתובע  זה אומר | 25 |
| | בדיוק מה שהתובע אומר לגבי הזכאות לאחוזים. מה יש לך לומר ? | 26 |
| | | 27 |

ב"כ הנתבעים: אין בקבלת המסמך משום הסכמה לקבילות המסמך . אבל מעבר לזה גם ההנחה
שהוצגה לעד  כאילו סעיף קטן 3 תואם לחלוטין את גירסתו של התובע בתביעה, גם זה לא נכון
לחלוטין.

ש. ב- ת/42 אדלסון מציע מנגנון שונה שהוא שונה מהמנגנון שאתה טוען שסוכם עם התובע, האם אתה
מסכים שזה מנגנון שונה מהמנגנון שאתה טוען שסוכם בפגישה ב- 5.12 ?

ת.    זה אכן מנגנון שונה.

| | |
|---|---|
| | 28 |
| | 29 |
| | 30 |
| | 31 |
| | 32 |

156



בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו                                עב 006245/01

17/01/2008

בפני:   כב' השופט אילן איטח
        נ.צ. (ע) מר מעוז הלוי
        נ.צ. (מ) מר מילר עמירם

| | |
|---|---|
| ש. | יש לך הסבר למה זה מנוגנן שונה ? |
| ת. | בזמן סיום העסקתו של התובע בשנת 2000 לא היתה יריבות ביניהם. מר אדלסון האמין |
| | שהתובע לא יבצע את תפקידו והם היו עדיין חברים. מעט אחרי הסיום  היו מספר |
| | שיחות בטלפון והתובע ביקש מאדלסון מספר דברים בקשר לסיום ההתקשרות. הוא רצה |
| | לנהל משא ומתן על תנאי הסיום . מכתב זה שהראו לי משקף את השיחות בין התובע |
| | למר אדלסון ואין לזה שום קשר לסיכום העסקה המקורי. ואפשר לראות בסוף המכתב |
| | שהוא אומר מבלי לפגוע בזכויות ורק לצורכי משא ומתן. אני חושב  ששורות אלה |
| | הועתקו ממכתב של התובע. זה משקף את מה שהתובע ביקש מאדלסון  ולא משקף את |
| | תנאי העסקה. |
| ש. | לשיטתך זאת הצעה של אדלסון ? |
| ת. | כן. |
| ש. | זאת הצעה שנעשתה אחרי סיום העסקת התובע  שנכשל בתפקידו  -  כך נטע והחצעה |
| | הזאת מציעה שאתה בתצהירך אומר שזה מנוגנן שהוא בלתי נתפס ואתה לא יכול |
| | להאמין שזה דבר שסוכם אז אדלסון הציע זאת למנהל כושל, למה שהוא יציע מנוגנן |
| | בלתי נתפס ? |
| ת. | לאור ידידותם הוא הציע לו משהו שהתובע לחלוטין לא היה זכאי.  כל זכויותיו |
| | להשתתפות ברווחים פקעו עם סיום העסקתו  ולמרות זאת הוא ביקש לקבל משהו. ומר |
| | אדלסון היה מוכן מרצונו לתת כמתנה . |
| ש. | עדיין אדלסון הציע לו משהו פי עשרות מונים טוב ממה שהיה לו כעובד ? |
| ת. | כן. אני יודע שבאותו זמן מר אדלסון הרגיש לא טוב שפיטר את התובע והם היו חברים |
| | והוא הציע זאת .  לפני שמסיקים שזה פי עשר ממה שהיה לו  צריך לשים לב  שהחוזים |
| | הופרו לגבי השקעה אחרת בסעיף 4. |
| ש. | אני מציג בפניך מסמך  שאתה מכותרתיו  היא הסכם... האם אתה מכיר את המייר הזה ? |
| ת. | ראיתי אותו קודם **מתקבל ומסומן ת/43** |
| ש. | זה ניתן לתובע על ידי עורכי הדין של אדלסון ב- 2001? |
| ת. | נכון. |
| ש. | האם זה הסכם שלפיו אדלסון ישלם סכום שלא פורש לסילוק סופי ? |
| ת. | אני צריך לקרוא את המסמך. |
| ש. | אני מפנה לפיסקה שאומר התובע .... **מסומנת A** האם אתה יודע מדוע  בסיום הפיסקא |
| | נרשם קוינו .... מ מדינות אחרות ? |
| ת. | אני לא יודע. צריך לשאול את המנסח של המסמך. |

157



בתי הדין לעבודה

עב 006245/01
17/01/2008

בית הדין האזורי לעבודה תל אביב – יפו

בפני:
כב' השופט אילן איטח
נ.צ. (ע) מר מעוז הלוי
נ.צ. (מ) מר מילר עמירם

ש. אני מציג לך מסמך **שכתבת ת/44 לעורך דין** של התובע אחרי מכתב שנשלח למערכי חדין
של התובע לנתבע שבו התובע פירט את דרישותיו לגבי קיזון במקאו, ואני מפנה אותך
לפיסקא השניה **מסומנת A** לאור העובדות הידועות לך כיום האם אתה רוצה לתקן את
מה שכתוב בפיסקא זו ?

ת. לא. זה נכון היום כמו אז.

ש. מה שאתה אומר שלמר אדלסון לא ניתן זיכיון לקזינו במקאו עד 30.7.2002, מה הסיבה
?
מר אדלסון לא קיבל זיכיון לקזינו במקאו.

ש. האם איזו חברה הנשלטת או בבעלות אדלסון קבלה זיכיון כזה ?

ת. לאס וגס סנס קורפוריישן שנשלטת על ידי אדלסון (חברה ציבורית) . אני מבין שיש לה זכיון
משנה.

ש. האם לאס וגס סנס מפעילה קזינו במקאו ?

ת. כן.

ש. האם היא נשלטת על ידי אדלסון ?

ת. היא נשלטת על ידי חבר המנהלים. מר אדלסון מתוקף היותו בעל מניות יש לו את
היכולת לשנות את חבר המנהלים אבל הוא לא יכול לשלוט על הפעילות היום יומית.

ש. למה לא ראית לנכון להסביר את ההסבר הזה במכתבך לעמיתך ת/44 ?

ת. לא הייתי מחוייב לא חוקית ולא אתית להסביר לעורך דין רוזובסקי. הוא העלה טענה
שאני הכחשתי בצורה נכונה והולמת

ש. מדוע בפיסקא B מצאת לנכון להזכיר חברות קשורות ועובדים מה שלא עשית בפיסקא A

ת. אין לי את המכתב של רוזובסקי מולי. אך מכתבי ת/44 הוא תשובה למכתבו. בחרתי
לכלול הצהרות מסוימות ולא אחרונת אפשרויות ומה שכתוב פה נכון אז ונכון היום.

ש. אני מראה לך תצהיר של ויינר אשר הוגש לבית הדין שאומר בסעיף 10 שבו ... האם
לאור מה שכתוב פה אתה רוצה לתקן את פיסקא A ת/44 ?

ת. ההצהרה נכונה. עדיין זה אמת. זה מתייחס למועד סיום העסקתו של התובע . היום אין
לי אינפורמציה שזה לא נכון.

ש. מדוע בחרת לדקדק לגבי מצב הדברים במועד סיום עבודתו ?

ת. בגלל שזה נראה לי ברור שזה מועד משמעותי . כל דבר שעלה לאחר מכן לא יכול להיות
משהו שיש לו זכויות או תביעה לגביו.

ש. חשבת שמועד הסיום הוא מועד משמעותי בגלל שהזכויות שלו פוקעות ?

ת. נכון.



158

בתי הדין לעבודה

בית הדין האזורי לעבודה תל אביב – יפו

בפני:     כב' השופט אילן איטח
נ.צ. (ע) מר מעוז תלוי
נ.צ. (מ) מר מילר עמירם

ש.   אבל הזכויות של התובע אפילו לא קשורות למקאו כך שמועד הסיום כלל לא רלבנטי   1
מצד שני התובע טוען לזכויות במקאו ללא קשר למועד סיום עבודתו ?אני מקריא לך   2
את המכתב של עו"ד רוזובסקי (נספח ח' לתביעת מקאו)!   3

ת.   (המכתב של נספח ח' מתורגם לאנגלית עד ). טענתו שהוא נקט בכמה צעדים לפתח את   4
המים. מכתבו אומר שלא היתה הזדמנות במקאו נכון למועד סיום עבודתו. כל דבר   5
שהוא פיתח אחרי סיום עבודתו לא רלבנטי.   6

ש.   הוא לא התייחס למתי הוא פיתח אלא טען שהוא  יזם את המים וטען לאחוזים ?   7

ת.   כפי שאני מבין את הטענה שתורגמה לי הוא טען שהואביצע כמה צעדים בקשר למים   8
לפני סיום עבודתו ואני אמרתי במכתבי שלא היתה הזדמנות במקאו באותו מועד  ולכן   9
מועד סיום העסקה רלבנטי.   10

ש.   תאר לי בפירוט את כל הפגישות שידיעות לך עליהם של שלדון או מי מטעמו  בקשר עם   11
הקוזינו במקאו החל מחודש אוגוסט 1999 ועד  אוקטובר 2001?   12

ת.   אני מעולם לא נכחתי באיזו פגישה לגבי מקאו. המידע  שכלול במכתבי ת/44 הוא   13
נמסר לי על ידי אנשים אחרים במיוחד על ידי אדלסון ויידנר ואחרים . אני לא יכול להעיד   14
מידיעתי האישית על איזו פגישה בקשר למקאו.   15

ש.   אתה לא יודע על איזו שהיא פגישה  אפילו שלא השתתפת בה ?   16

ת.   לא.   17

ח.ח. : אין.   18

                                                                                                        19

באי כח הצדדים : אתמול נערך ניסוי כלים לגבי שיחת היוידאו עם עדי מקאו . והניסוי עבר   20
בהצלחה.   21
                                                                                                        22

## החלטה

נקבע להמשך הוכחות ליום 21.1.2008 בית משפט המחוזי בתל-אביב לשמיעת עדי היוידאו.

מגבלת הזמן כשעה וחצי.

באי כח הנתבעים יודיעו בישיבה הקרובה האם בכוונתם לבקש העדתם  של עדים נוספים.

ניתנה היום י' בשבט, תשס"ח 17 בינואר 2008) במעמד הצדדים.   23
                                                                                                        24

אילן איטח - שופט          נ.צ. (מ) – עמירם מילר          נ.צ. (ע) – מעוז תלוי
                                                                    ראה ינאי + יוסף שולמית