UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON,<br><br>                    Plaintiff,<br><br>            v.<br><br>MOSHE HANANEL,<br><br>                    Defendant. | **Civil Action No. 04-cv-10357-RCL**<br>**(Sorokin, U.S.M.J.)**<br><br>**ECF Case** |

**PLAINTIFF'S OPPOSITION TO MOTION
TO STAY PROCEEDINGS AND TO EXTEND TIME TO ANSWER**

This action was commenced in February 2004.  Since then, Hananel has succeeded in tying the Court in knots with groundless motions and non-merits discovery.  The First Circuit recently conclusively rejected Hananel's main contention, previously embodied in the form of a *forum non conveniens* motion, that the pendency of related litigation in Israel should prevent this suit from moving forward.  The court held that

> [t]he existence of concurrent litigation is not a relevant factor to the analysis; none of the factors enumerated above invokes a comparison between the two competing fora .  By focusing on the existence of parallel proceedings in a foreign court, the district court essentially converted the analysis into a determination of which of the two pending cases should go forward.

Slip op. at 21.  Hananel petitioned for reconsideration and rehearing en banc, specifically challenging this aspect of the opinion.  The First Circuit denied the petition.

Hananel now asks this Court to disregard both the law of the case and the First Circuit's unambiguous order that this case finally move forward.  Attempting to sidestep the First Circuit's holding (which he does not even mention) that concurrent litigation is legally irrelevant to the maintenance of a U.S. lawsuit, Hananel now requests that this action be "stayed" indefinitely until his Israeli suit reaches "final judgment."  Incredibly, his primary argument in

favor of staying this action is that the Israeli court is ahead of this one; of course, the only reason for that is Hananel's so-far successful efforts to grind this action to a halt. The Court should reject this transparent and improper effort to delay this four-year-old case even further and to skirt the First Circuit's mandate.

**I.     This Court Should Respect Its Denial of Hananel's First Motion to Stay**

This is not Hananel's first motion to stay. As he admits, "[i]n June, 2004, simultaneously with his motions to dismiss for lack of jurisdiction and to dismiss for forum non conveniens, Hananel filed a motion to stay proceedings pending the outcome of the Consolidated Israeli Action. Dkt. #10." Def. Br. 3. This motion sought the exact relief that Hananel seeks now. Compare First Motion to Stay (Dkt. #11) at 9 ("the Court should dismiss or stay the action pending the outcome of the Israeli proceedings") with Def. Br. 10 ("Motion to Stay Proceedings until after final judgment in the Consolidated Israeli Action"). This Court denied the first motion. Dkt. Entry 12/01/2004.

The Supreme Court "has admonished that 'courts should be loathe to [revisit earlier decisions in the same case] in the absence of ***extraordinary circumstances*** such as where the initial decision was "***clearly erroneous*** and would work a ***manifest injustice***."'" *Davis v. Lehane*, 89 F.Supp.2d 142, 147 (D. Mass. 2000) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (emphasis added). In addition, Hananel's failure to appeal the denial of his first stay motion makes that ruling law of the case. As the First Circuit held in *United States v. Connell*,

> The lesson of the *Bell* cases[1] is as clear as their namesake:
>
>> [A] legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample

---

[1]    *United States v. Bell,* 966 F.2d 703, 704 (1st Cir. 1992); *United States v. Bell*, 988 F.2d 247 (1st Cir. 1993).

2

> opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date.

6 F.3d 27, 30 (1st Cir. 1993) (quoting *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991)).

Hananel does not even attempt to identify "extraordinary circumstances," instead repeating the same *forum non conveniens* arguments that the First Circuit rejected. His one, backhanded, effort to distinguish the prior motion from the current one is misleading: he argues that the Court denied the first motion "before the recognition by this Court that the present action was duplicative of the Israeli action and before the commencement of trial in Israel." Def. Br. 3 (citations omitted). Hananel's suggestion that this Court simply failed to notice the Israeli litigation when it denied the first motion is disingenuous. He argued at the time that "Adelson's [Massachusetts] Complaint has parties and issues that are identical to the Israeli proceedings." First Motion to Stay at 6. Indeed, that was the entire basis of the first stay motion. Thus, the alleged similarity of the cases is not a "new fact" that would warrant reversing the earlier decision.

As to the commencement of the (months-long) Israeli trial, it would set a terrible precedent to treat Hananel's success at slowing down this litigation as a **reason** to grant a further stay, on the theory that "judicial efficiency" requires deference to the Israeli action – if Hananel had permitted this case to proceed efficiently, it would have produced a final judgment years ago. Allowing Hananel to renew the motion endlessly based on each new development in Israel will only guarantee that this case never goes anywhere, exactly the result that both this Court and the First Circuit rejected.

## II.    This Court Must Respect the Clear Mandate of the First Circuit

It should go without saying that the First Circuit's mandate is binding on this Court.

3

*See, e.g., United States v. Rivera-Martinez*, 931 F.2d 148 (1st Cir. 1991). On appeal in this case, the First Circuit held that

> [t]he existence of concurrent litigation ***is not a relevant factor*** to the analysis; none of the factors enumerated above invokes a comparison between the two competing fora. By focusing on the existence of parallel proceedings in a foreign court, the district court essentially converted the analysis into a determination of which of the two pending cases should go forward.

Slip op. at 21 (emphasis added). Hananel's current motion is a barely disguised effort to revisit that ruling. The cases he now cites – *Sinochem*, *Pritzker*, *Linkco*, *MLC (Bermuda)* – are the same *forum non conveniens* cases he cited to this Court and in his briefs and 28(j) letters to the First Circuit. The arguments he makes are identical as well. See, *e.g.*, Def. Br. 2 (arguing that the Israeli court's consolidation of two cases is somehow relevant); *id.* at 3 (arguing that the Israeli proceedings are ahead of this case); *id.* at 3, 8 (arguing that "[t]he balance of convenience, however, has substantially altered in favor of Israel since the record on which the First Circuit ruled"); *id.* at 3 (arguing that claims and parties are identical).

Hananel's citation to *Sinochem v. Malaysia Int'l Shipping Corp.* is especially misleading. 127 S. Ct. 1184 (2007). He describes that case as holding that "*forum non conveniens* dismissal was appropriate 'when considerations of convenience, fairness, and judicial economy so warrant'" and "explaining that 'considerations . . . of judicial economy' included dismissal based on the existence of prior pending foreign litigation which the plaintiff was trying to duplicate, stating '[j]udicial economy is disserved by continuing litigation in [Pennsylvania] given the proceedings long launched in China.'" Def. Br. 4 (alteration, emphasis, and omission in Def. Br.). First, this language was all dictum – the question presented in *Sinochem* was not the merits of the *forum non conveniens* ruling but "whether a federal court can dismiss under the *forum non conveniens* doctrine before definitively ascertaining its own jurisdiction." 127 S. Ct. at 1193. Second, the U.S. suit in *Sinochem* came after a ruling in the Chinese case and did not merely

4

"duplicate" the Chinese proceedings, it alleged a "negligent misrepresentation" *in* those proceedings, with the alleged injury being the harm Malaysia International suffered from the Chinese court's judgment. *Id.* at 1189.

Third, and most importantly, Hananel filed a 28(j) letter on *Sinochem* with the First Circuit, which discussed and distinguished the case at oral argument. The court also denied a rehearing petition based largely on the argument that *Sinochem* contradicts the First Circuit's holding on the irrelevance of foreign proceedings to *forum non conveniens*. For Hananel now to offer *Sinochem* as casting doubt on the First Circuit's clear ruling on the precise facts of this case, or to imply that the First Circuit was unaware of it, is extremely misleading.

The only reason that the First Circuit did not have the opportunity to rule directly on Hananel's motion for a stay is that Hananel did not raise that issue on appeal. It is abundantly clear that the First Circuit would not countenance this Court halting this action in its tracks on exactly the same grounds that it found legally irrelevant to *forum non conveniens*. Hananel's strategic decision not to raise the stay motion on appeal is one that he must live with.

It is also obvious that Hananel's request is motivated by a desire, not merely to stay this case temporarily, but to prevent it from ever moving forward. He argues on page 7 that "Israel is an adequate forum to resolve Adelson's claim, and that jurisdiction over Hananel exists there." Aside from reinforcing the point that this motion is really a dressing up of Hananel's rejected *forum non conveniens* motion,[2] that section makes clear that Hananel wishes and expects that the Israeli proceedings will not merely delay this case, but will supplant it. There would be no

---

[2]     Compare FNC Motion (Dkt. #9) at 5 ("Israel is an available forum"; "Israel is an adequate forum"). There is no authority for the proposition that the adequacy of an alternative forum is relevant to the propriety of a stay.

5

reason to set final judgment in Israel as the end point of the stay unless Hananel plans to argue that the result in Israel will bind this Court, rendering four years of litigation a complete waste.

### III.     If This Court Reaches the Merits of Hananel's Motion, It Should Be Denied

#### A.     Hananel Identifies No "Exceptional Circumstances" Warranting a Stay

Though this Court's previous denial of an identical motion by Hananel and the First Circuit's mandate are independent reasons for this Court to deny the current motion, the motion should also be denied on its own merits.  The First Circuit has cited the "accepted proposition that parallel proceedings on the same *in personam* claim generally should be allowed to proceed simultaneously.  The decisional calculus must take account of this ***presumption in favor of concurrent jurisdiction***."  *Quaak* v. *Klynveld Peat Marwick*, 361 F.3d 11, 16 (1st Cir. 2004) (emphasis added and citation omitted); see also *Spring City Corp.* v. *Bradeen*, 193 F.3d 165, 171-72 (3d Cir.1999) ("We cannot disagree that it would be more efficient to hold the federal cases in abeyance until the conclusion of the state case.  But * * * ***abstention must be grounded on more than just the interest in avoiding duplicative litigation***.") (emphasis added); *Laker Airways Ltd.* v. *Sabena*, 731 F.2d 909, 926 (D.C. Cir. 1984).

The Second Circuit recently reaffirmed this principle:

> [t]he mere existence of parallel foreign proceedings does not negate the district courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them."  * * *  The exceptional circumstances that would support such a surrender must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise the routine would be considered exceptional, and a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request.

*Royal & Sun Alliance Ins. Co. of Canada* v. *Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, (1976) (first omission in original)).  The court emphasized that exceptional circumstances, aside from mere duplication, must be present to warrant a stay.

6

> The existence of a parallel action in an adequate foreign jurisdiction must be the beginning, not the end, of a district court's determination of whether abstention is appropriate. * * * [C]ircumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances * * * . [A]dditional circumstances must be present – such as a foreign nation's interest in uniform bankruptcy proceedings – that outweigh the district court's general obligation to exercise its jurisdiction.

*Id.* at 95. Even the cases Hananel cites acknowledge this. *Goldhammer*, for example, says that "this inherent power to stay parallel litigation must be balanced against the federal courts' 'strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" (59 F. Supp. 2d 248, 251 (D. Mass. 1999) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). This Court went on to note that "[c]ourts have been hesitant to abrogate this jurisdictional duty in the international context." *Id.*

### B.    The Two Lawsuits Are Not Identical

In this case, not only are no "exceptional circumstances" present, but the litigations are not even identical, as Adelson has explained many times before. In the Israeli action, besides monetary claims due to his termination, Hananel demands shares in ***only*** what he refers to as the Macau venture and two Israeli hi-tech companies (by the name of IMDsoft and Denex). The Complaint in this case, by contrast, seeks a declaration that Adelson "owes defendant nothing and that defendant is not entitled to any option, interest or claim to ***any business*** in which plaintiff has any interest." Complaint ¶ 33 (A-22).[3] That distinction is critical, because Hananel has repeatedly asserted a right to obtain a 12% share of any of Adelson's projects worldwide –

---

[3]    See also Complaint ¶ 29 (Hananel's "persistence has created a bogus dispute as to what the IPI employment agreement negotiated between the parties provides, if anything, to Hananel with respect to Macau ***or otherwise***.") (emphasis added); Amended Complaint ¶ 42 (requesting "declaratory judgment that Hananel has no rights in any of the casino/hotel/real estate/investments ***anywhere in the world*** made by plaintiff or in which plaintiff has any interest"). Compare with Hananel's Israeli Complaint ¶ 1 ("This Complaint concerns the Defendants' undertaking to give the Plaintiff stock options in a casino venture in the Macau region of the People's Republic of China.").

not just in Macau.[4] Those claims will never be adjudicated unless and until this action is permitted to move forward.

These differences go to the heart of declaratory judgment: "[T]he purpose of the Declaratory Judgment Act is to enable those threatened to remove such a cloud on their commercial activity, instead of being obliged to await the convenience of the threatening party." *Phillips Plastics Corp.* v. *Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995).[5] The Israeli litigation, controlled by Hananel, ***will not remove the uncertainty***. Even if the Israeli court rejects Hananel's claim as to an alleged ownership interest in the Macau project, he may remain free to litigate (and threaten to litigate) over other investments around the world in which he claims he was involved years ago, however peripherally. Only this case ensures a comprehensive adjudication of the dispute.

### C. The Proposed Stay Is Improperly One-Sided

Finally, Hananel's "stay" is one-sided: he will not be obligated to answer, the Court will be prevented from considering the two-year-old summary judgment motion, and Adelson will be barred from finally beginning discovery, but Hananel intends to submit evidence on the choice of law. Dkt. #168. (Presumably, if the present motion is granted, Adelson would be stayed from opposing the Motion to Supplement.) Hananel offers no authority for an indefinite stay of one party that leaves the other party free to dribble in evidence as it sees fit.

---

[4] See, *e.g.*, February 22, 2005 Hananel deposition at 135-36 (claiming entitlement to shares if Adelson invests in Ireland, Malta, Morocco, "Bulgaria, Italy, Rhodes, [Cyprus,] Turkey, Jordan, * * * Czechoslovakia, * * * Israel, * * * and maybe others"); Hananel affidavit filed in Tel Aviv District Labor Court ¶¶ 8, 21-23, 27.11, 27.18, 30, 48, 65, 74.3.

[5] See also *Great Am. Ins. Co.* v. *Houston Gen. Ins. Co.*, 735 F. Supp. 581, 584 (S.D.N.Y. 1990) ("[T]he declaratory judgment procedure 'enable[s] a party who is challenged, threatened, or endangered * * * to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination.'" (quoting BORCHARD, DECLARATORY JUDGMENTS 280 (2d ed. 1941)) (alteration in original)).

IV. **The Motion to Extend Hananel's Answer and Opposition to Summary Judgment Should Be Denied**

The First Circuit's mandate issued on January 16, making the answer due on January 31. *See* Rule 12(a)(4)(A). Hananel is now in default.

Hananel contends (Dkt. #165) that the deadlines for his Answer and opposition to the summary judgment should be extended to 20 days after a ruling on the Motion to Stay. This request is outrageous. Hananel has had four years to draft his answer. Simply refiling a motion that has already been denied by both this Court and the First Circuit should not give Hananel an automatic extension.

Hananel has now filed his thirteenth affidavit. The docket contains over 200 entries. It is time – finally – for this case to move forward.

February 11, 2008

                                            Respectfully submitted,

                                            /s/ Andrew H. Schapiro_____
                                            MAYER BROWN LLP
                                            Andrew H. Schapiro
                                            Christopher J. Houpt
                                            1675 Broadway
                                            New York, New York 10019
                                            (212) 506-2500

                                            *Attorneys for Plaintiff*
                                            *Sheldon G. Adelson*

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                            /s/ Andrew H. Schapiro_____