UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON,<br><br>        Plaintiff,<br><br>       v.<br><br>MOSHE HANANEL,<br><br>        Defendant. | **Civil Action No. 04-cv-10357-RCL**<br>**(Sorokin, U.S.M.J.)**<br><br>**ECF Case** |

## PLAINTIFF'S OPPOSITION TO
## HANANEL'S MOTION FOR LETTERS ROGATORY

After seeking unsuccessfully to stay this case indefinitely, Hananel now moves for relief almost as certain to cause lengthy delay: the issuance of letters rogatory to compel the testimony of twelve witnesses in four countries. Even by Hananel's description, most of these witnesses have nothing to offer on any material disputed issue of fact. Furthermore, Hananel makes no showing that any of these witnesses, many of whom voluntarily submitted affidavits in the Israeli case, would be unwilling to appear. In short, Hananel offers no reason to subject the parties and the Court to what the Secretary of State has described as "the complicated, dilatory and expensive system of letters rogatory." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 531 (1987) (quoting Sec. of State's Letter to President re: Hague Convention); see also *In re Lernout & Hauspie Secs. Litig.*, 218 F.R.D. 348, 351 (D. Mass. 2003) (describing "the time-consuming and uncertain process of letters rogatory").

The Court should deny Hananel's motion, because letters rogatory are not necessary as to any of the witnesses Hananel describes. We address each witness below, but three general points apply to the whole list. First, most of the witnesses' proffered testimony is simply irrelevant to the two issues in dispute in this case: what option terms, if any, Adelson (on behalf of IPI) and

Hananel agreed to, and whether Hananel satisfied the terms of such an agreement with regard to the Macau development. Most of these witnesses' testimony about the Macau options claim is a matter of record in the Israeli court, and that record shows the testimony to be of little or no relevance.[1]

Second, Hananel's descriptions of the witnesses' testimony is so terse as to be meaningless, rendering a full evaluation of this extraordinary request impossible. For example, all but two of the witnesses would testify about what Hananel calls "other matters." One would testify about "Hananel's work with Adelson." Such vague descriptions alone cannot justify the expense and extreme delay associated with acquiring evidence by letters rogatory. This omission is especially inexcusable given that most of the witnesses have submitted affidavits, testified in-person, or both, in the Israeli case. Neither Adelson nor the Court is obligated to guess what specific facts in each witness's testimony Hananel thinks might be relevant to this case. If Hananel cannot demonstrate a need for letters rogatory, the Court should deny the motion.

Finally, there is no indication that Hananel has even asked any of these witnesses whether they would be willing to testify voluntarily, sparing the parties and the two court systems the expense and time of compulsory process. In fact, many of the witnesses have cooperated with Hananel in the very recent past, submitting affidavits or appearing on his behalf in the Israeli trial. Nor has he explained why less onerous procedures, such as written questions, would be inadequate. See *DBMS Consultants Ltd. v. Computer Associates Intern., Inc.*, 131 F.R.D. 367 (D. Mass. 1990) ("Before bringing substantial resources of the litigants and the courts of two

---

[1] Hananel may argue that evidence concerning Hananel's work for IPI during 1995 is relevant to deciding where Hananel's employment contract was finalized, which is material to choice of law. (Adelson contends that the contract was formed on December 5, 1995 in Massachusetts; Hananel contends that it was formed on some earlier date, in Israel.) But the fact that Hananel performed certain services in the final months of 1995 for IPI is not in dispute. Adelson has never contested that Hananel performed some services for IPI that year, in anticipation of being hired full-time. See, *e.g.*, Dkt. #16 (Roberts Aff.) ¶ 7. Moreover, that fact has little, if any, bearing on the question of where and when any option agreement was finalized. Thus, further evidence on that undisputed point does not warrant the time-consuming process of letters rogatory.

countries to bear on oral depositions in Australia, therefore, the Court rules that DBMS should first attempt to obtain the information it seeks from Butler by taking Butler's deposition on written questions as provided for under Fed.R.Civ.P. 31. Should this less expensive and less burdensome deposition method prove inadequate, the Court will consider any further request to take Butler's oral deposition in Australia."). As such, there is no basis for finding that letters rogatory are necessary.

It is worth noting that Hananel first tried to stay this case and then proposed almost two years of discovery and pre-trial proceedings. This is thus his third submission that would have the effect, if not the express intent, of delaying trial considerably. In light of this history, this Court should not give Hananel the benefit of the doubt as to either the importance of the witnesses' testimony or the need for letters rogatory to obtain it, in the absence of a clear showing on both points.

Hananel lists a total of twelve witnesses. The motion should not be granted as to any of them.

1.    <u>Huggatt Elhadad.</u>[2]    Hananel asserts in his motion that Elhadad would testify concerning "finding investments for Adelson including casino investments in Israel and elsewhere outside the United States, and other matters." If this is true, she should have given some hint of this knowledge in her affidavit in the Israeli case concerning the Macau claim. In fact, that affidavit (Dkt. #128-1, at 2) contains no information relevant to the Macau claim: the witness testified that she "was aware that Mr. Moshe Hananel (hereinafter: 'Hananel') was involved in and worked at Interface Partners International Limited" and concluded that Adelson

---

[2]    We follow Hananel's numbering convention, based on his original list of witnesses. The spelling of certain witnesses' names are corrected.

must have been aware of Hananel's work for Galilee Tours, an assertion that is not relevant to this case. In addition to being entirely conclusory and void of detail, most of her testimony was based on hearsay, not personal knowledge.

Furthermore, the fact that Elhadad voluntarily submitted an affidavit on Hananel's behalf in the Israeli cases, without judicial compulsion, strongly suggests that she is a "voluntary" witness. Hananel does not describe any efforts to determine whether she would testify voluntarily in this action.

2. <u>Majali Wahaba.</u> According to Hananel, Wahaba would testify as to "Hananel's work with Adelson on casino development and other matters." Once again, this witnesses's knowledge can be gleaned from his affidavit in Israel. That affidavit describes a single proposed casino development in Eilat, Israel, on Israeli-Jordanian border: there is no information concerning Hananel's alleged option agreement, the Macau project, or any project outside of Israel. Moreover, Adelson does not dispute that Hananel was involved in the Israeli-Jordanian border casino proposal, rendering Wahaba's testimony pointless.

In addition, as with Elhadad, this witness's voluntary submission of an affidavit in Israel (Dkt. #128-1, at 4) undermines Hananel's unsupported assertion that he would refuse to testify in this case.

6. <u>David Itach.</u> This witness would testify to "Hananel's work with Adelson (including before December 1995)." As explained above, it is not disputed that Hananel performed services for IPI before December 1995; this witness's testimony is therefore irrelevant to any issue in dispute.

There is also no reason to believe that this witness, who worked as Hananel's driver during the 1990's and submitted an affidavit on his behalf in Israel (Schapiro Decl., Ex. C) (which said nothing relevant to the present claim) would not appear voluntarily.

7.  Oded Efrat.  This witness agreed to testify voluntarily in Israel, and there is no indication that he would have information relevant to the Macau claim.  Hananel asserts only that he would testify about unspecified "key terms of Hananel's employment, including finding investments for Adelson including casino investments in Israel and elsewhere outside the United States, and other matters."  Hananel does not state which "key terms" Efrat was aware of (or whether he could give non-hearsay testimony about them) or which casino investments Efrat knows about.  As noted above, Adelson does not dispute that Hananel worked on a casino project in Israel, and Hananel does not explain why any investments outside of Israel, other than in Macau, would be relevant.

8.  Arye Lis.  This witness, who gave an affidavit at Hananel's request and also testified voluntarily in the Israeli case, had nothing to say about Macau.  His affidavit described work related to a development in Zhuhai, an area of southeastern China that is not part of the Macau SAR.  Schapiro Aff., Ex. D ¶ 1.  The Zhuhai housing development, moreover, was completely unrelated to the Macau casino project.  Lis has already given his testimony concerning the Macau claim, and it was shown to be irrelevant.

In any event, Lis cooperated with Hananel in the Israeli case, testifying that he has known Hananel since 1975, and should be expected to do the same now.  *Id.* ¶ 1.

10.  Ariel Kouby.  This witness testified voluntarily in the Israeli case. (In fact, Hananel misrepresented to the court that he had been unable to obtain an affidavit from Kouby. When Kouby testified that Hananel never asked him to submit an affidavit, the Israeli court ruled

5

that Hananel had sought to obtain "an unfair and improper procedural and evidentiary advantage." Schapiro Decl., Ex. F, at 118.) If he was willing to travel from Canada to Israel to testify on Hananel's behalf, there is no reason to believe that he would not travel to Massachusetts for the same purpose, or voluntarily agree to a deposition in Canada.

      12.    <u>Dan Tichon.</u>  This witness would testify to "Adelson's involvement in casino projects" – a fact that is hardly in dispute – "and Hananel's work with Adelson on casino development and investments and other matters." There is no suggestion that Tichon is aware of any developments outside of Israel.  In fact, though Tichon had submitted an affidavit at Hananel's request (Schapiro Decl., Ex. C) and was prepared to testify in Israel, Hananel withdrew the affidavit and did not call the witness.  Schapiro Decl., Ex. G, at 14.

      Furthermore, in his deposition, Hananel described Tichon as "a very good friend of mine" for "[m]ore than 20 years." Dkt. #106, Ex. A, at 15.  Tichon has voluntarily submitted an affidavit on Hananel's behalf not only in Israel but in this case (Dkt. #125, Ex. 2), and appeared with his wife in the Israeli court to support Hananel.  See Schapiro Decl., Ex. F, at 14.  When there was an immediate need for Tichon's testimony, Hananel had no trouble obtaining it, but now he reclassifies Tichon as an unwilling witness.

      13.    <u>Avi Hefetz.</u>  As with Tichon, there is no indication that Hefetz knows anything about Macau or any other project outside of Israel.  By Hananel's account, he is familiar only with "the Africa Israel potential investment and the Eilat [Israel] casino project, all material to proof of Hananel's work with Adelson on casino development" – which is not in dispute as to developments in Israel – "and other matters."  And as with Tichon, Hananel waived this witness's testimony in Israel.

Furthermore, this witness has voluntarily submitted an affidavit for Hananel in this case. Dkt. #56, Ex. 4. Given this history, there is no need for letters rogatory to compel additional testimony.

14.  Dermod Dwyer.  This witness, who lives in Ireland, would testify about "Hananel's work with Adelson on casino development and other matters." Hananel does not suggest that this witness knows anything about either Macau or Hananel's employment contract, and his testimony would be, at best, collateral.

Hananel also offers no evidence that Dwyer would be unwilling to testify voluntarily. In his deposition, Hananel described Dwyer as a "friend." Dkt. #106, Ex. A, at 43.

15.  Kittie Chan.  Hananel asserts that Chan "had conversations and meetings with Mr. Adelson and/or his employees or representatives, including in Macau, concerning the Macau project, during the relevant period." That description would apply to dozens, if not hundreds, of people – Hananel offers no reason to believe that Chan knows anything that is relevant to *Hananel's claim* concerning Macau.

16.  Moshe Melnick.  This witness did not appear in the Israeli case, because Hananel apparently made no effort to call him. Hananel has repeatedly argued that the Israeli case involves the same issues as this one; in the absence of newly-discovered information, then, there is no reason for this Court to go to extraordinary lengths to obtain testimony from an Israeli witness that Hananel did not bother to elicit in Israeli court. Hananel admits that Melnick worked for Interface Group Massachusetts in Israel *before* Hananel joined, and he does not suggest that Melnick knows anything about Hananel's contract or Macau.

17.  Richard Suen.  As Hananel explains, Suen sued Adelson in Nevada over the Macau project. What Hananel does not mention is that Suen claims that *he* (not Hananel)

7

sparked Adelson's interest in Macau. His claim, already expounded at length in Nevada, is inconsistent with Hananel's. Hananel did not make any effort to call him as a witness in Israel, and testified that he had never met or communicated with Suen. Dkt. #106, Ex. A, at 43-45. Because there is no reason to believe that Suen, has ever heard of Hananel or would give Hananel credit for initiating the Macau project, letters should not issue as to Suen. See *United States v. Kincaid*, 712 F.2d 1, 4 (1st Cir. 1983) ("since this evidence would not help the appellants, we find no error in the court's denial of their motion" for letters rogatory).

   The testimony of most of these witnesses, as described by Hananel and proven in the Israeli case, is irrelevant as a matter of law – the witnesses would testify to facts that are not in dispute, are not material to the Macau options claim, or both. As such, their testimony would be inadmissible. Even if some of the testimony is marginally relevant, it is not worth the effort required to secure the testimony by letters rogatory. In the alternative, if some of the witnesses' Israeli testimony is deemed relevant, Adelson would agree that the affidavits submitted in the Israeli case and the witnesses' Israeli trial testimony are admissible under Federal Rule of Evidence 804(b)(1) (though Adelson reserves the right to make objections that would be available if the witnesses were testifying in person, including but not limited to hearsay and irrelevance).

   Finally, even if the testimony is found to be relevant and the previous Israeli submissions are for some reason insufficient, there is still no reason to believe that letters rogatory are necessary. Most of these witnesses have cooperated fully with Hananel in the Israeli proceedings, and some are his close friends. The burden should be on Hananel to first

demonstrate witness unavailability before embarking on the long road of letters rogatory, and he has not met that burden.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Hananel's motion for letters rogatory.

May 29, 2008

                          Respectfully submitted,

                          /s/ Andrew H. Schapiro
                          MAYER BROWN LLP
                          Andrew H. Schapiro
                          Christopher J. Houpt
                          1675 Broadway
                          New York, New York 10019
                          (212) 506-2500

                          *Attorneys for Plaintiff*
                          *Sheldon G. Adelson*

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                          /s/ Andrew H. Schapiro

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHELDON G. ADELSON,<br><br>    Plaintiff,<br><br>  v.<br><br>MOSHE HANANEL,<br><br>    Defendant. | **Civil Action No. 04-cv-10357-RCL**<br>**(Sorokin, U.S.M.J.)**<br><br>**ECF Case** |

### DECLARATION OF ANDREW H. SCHAPIRO

ANDREW H. SCHAPIRO hereby declares under penalty of perjury pursuant to 28 U.S.C. §1746:

1. I am a member of the law firm of Mayer Brown LLP, attorneys for Sheldon G. Adelson in connection with the above-captioned case. I submit this declaration in support of plaintiff's opposition to defendant's motion for letters rogatory.

2. Attached as Exhibit A is a true and complete copy of a translation of the affidavit of Dan Tichon, which was submitted by Hananel in *Moshe Hananel v. Interface Partners International Limited and Sheldon G. Adelson* (Israeli Labor Case 7704/03).

3. Attached as Exhibit B is a true and complete copy of a translation of the affidavit of Arye Lis, which was submitted by Hananel in *Moshe Hananel v. Interface Partners International Limited and Sheldon G. Adelson* (Israeli Labor Case 7704/03).

4. Attached as Exhibit C is a true and complete copy of a translation of the affidavit of David Itach, which was submitted by Hananel in *Moshe Hananel v. Interface Partners International Limited and Sheldon G. Adelson* (Israeli Labor Case 7704/03).

5. Attached as Exhibit D is a true and complete copy of a translation of the protocol of a December 20, 2007 hearing in *Moshe Hananel v. Interface Partners International Limited and Sheldon G. Adelson* (Israeli Labor Case 7704/03).

6. Attached as Exhibit E is a true and complete copy of a translation of the protocol of a November 13, 2007 hearing in *Moshe Hananel v. Interface Partners International Limited and Sheldon G. Adelson* (Israeli Labor Case 7704/03).

Dated: May 29, 2008

/s/ Andrew H. Schapiro
Andrew H. Schapiro
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2672

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Andrew H. Schapiro