Exhibit E

**Re:**          **Hananel Moshe**
                **Represented by Adv.**     **David Peretz and Adi Fighel**

<u>**The Plaintiff**</u>

**Versus**

1. **Interface Partners International Limited**
2. **Sheldon G. Adelson**
**Represented by Adv.**     **Danziger Yoram**

<u>**The Defendants**</u>

**Present:**     **Plaintiff and counsel**
                **Counsel for the Defendants**
                **No appearance by the Second Defendant**

<u>**Transcript**</u>

<u>**The Defendant's Counsel**</u>: In view of the Court's decision of yesterday, I withdraw the motion.

We are not recording the hearing, only translating simultaneously for Adv. Frank Levi, the Defendants' representative.

<u>**Alon Somech of Stenogram**</u>: I am clarifying to the Court that the instrument with which the translator is operating constitutes a transmitter and a receiver between the translator and Adv. Levi and there is no recording.

<u>**The Plaintiff, having been duly cautioned, testifies in direct examination**</u>:

Everything stated in my affidavits (September 9, 2002, January 7, 2004, December 17, 2006, May 13, 2007) is true.

<u>**Cross-examination**</u>

<u>**The time is 09:15**</u>

Q.A.   I can't read the affidavits due to a visual impairment, and I hold a blind person's certificate and therefore as agreed during the hearing of May 3, 2007, my wife will help me in reading the documents as much as I need it during the cross examination.

<u>**The First Defendant's Counsel**</u>: My examination on a certain point will not be interpreted as consent to the correctness of what is stated in the affidavit and I also object to any expansion or change of the range of litigable issues, filing of inadmissible evidence etc.

<u>**Cross-examination**</u>

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                      **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                      **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

Q.    In the first affidavit of 2001, in Section 14, and 29 of your affidavit in the 2001 claim you say and I quote on May 10, 2000 I was notified of my dismissal from the First Defendant, in your affidavit in the Macau claim in Sections 2.63 and 8.11 you say on April 10 the Second Defendant notified me of my dismissal – which of your two statements is true?

A.    I was given two notices one on April 10 and the second on May 10. On April 10, in Spaghettim Restaurant in Ramat Gan Sheldon notified me that he wanted to terminate my employment and to close the office and to dismiss all the employees. While in this period I have in my opinion until today 6 months. On May 10 I'm notified finally, we talk in-between and we correspond in-between about what was initially agreed upon 6 months and on May 10 they tell me verbally goodbye, no 6 months.

Q.    Why in the 2001 affidavit didn't you mention the dismissal in April and why in the Macau affidavit didn't you mention the notice in May?

A.    I don't remember why.

Q.    You say in the 2001 claim that according to your employment agreement you're entitled to payment for 6 months due to advance notice

A.    Yes.

Q.    In Section 23 of your affidavit in the 2001 claim, you write that the terms of your employment at the First Defendant were based on the terms of employment of my predecessor Farb. and in Section 24 of the affidavit you rely on common usage is that true?

A.    I think that you're misleading me. After the Court explains the question to me, I say that these are some of my arguments with respect to the 6 months.

Q.    In Section 23 of your first affidavit you write that the terms of your employment were based on the terms of employment of your predecessor Farb. is that true?

A.    As I answered before, some on Farb. and as appears in the affidavit, that are based on the terms of my employment at Galilee Tours, all the social and related benefits and defined for me 6 months at Galilee Tours and this is the specific example that I gave to the Second Defendant.

Q.    Show me in your affidavit in 2001 where you rely on terms of employment at Galilee Tours? (I agree that the Plaintiffs' [sic] Counsel help the Plaintiff)

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                     **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                     **November 13, 2007**
                **Public Representative (Employers) Miller Amiram**
                **Public Representative (Employee) Halevy Maoz**

**The Plaintiffs' Counsel**: We don't see at the moment that it appears in the 2001 affidavit.

**The Defendants' Counsel**: I agree to give my colleagues the time to read the 2001 affidavit so that they can confirm whether the argument regarding Galilee Tours appears in the 2001 affidavit.

**The Plaintiffs' Counsel**: I believe that it does not appear in the affidavit.

Q.    This affidavit that I just showed you, you filed on September 9, 2002 true?

A.    I don't remember. I guess you're right.

**The Court's Comment**: The affidavit was received and stamped on September 9, 2002.

Q.    On November 17, 2002 we filed our responding affidavits in the framework of the 2001 claim, and they included an affidavit of Mr. Farb. your predecessor, Mr. Farb. attached to his affidavit a copy of a document that documents his terms of employment and declared in Section 4 of his affidavit that "I did not receive...Do you remember Farb.'s affidavit

A.    I don't remember it in detail. The affidavit appears.

Q.    You're changing your version such that in the later affidavit Macau in Section 2.4.1 that it was agreed between you and Mr. Adelson that the related benefits.... Galilee Tours", I'll conclude before you saw Farb.'s affidavit you said that the terms of your employment were based on Farb.'s terms of employment and after you saw Farb.'s affidavit you changed your version and now you argue that the terms of your employment were identical to those you had at Galilee Tours, what among these is true

A.    There's no basis to your argument.

Q.    Referring you to the terms of your employment at Galilee Tours. In 98 after control of Galilee Tours was given to Clal, a legal dispute began between Clal

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
       **Public Representative (Employers) Miller Amiram**
       **Public Representative (Employee) Halevy Maoz**

in Galilee Tours on the one hand against you and against your wife and your family is that true

A.    It was started by shareholders in Galilee Tours and not by Clal.

Q.    I'm showing you a letter that was sent by your lawyer in that dispute Issie Holdstein to Clal's lawyers in Galilee Tours and there he writes in Section 3.1 "According to the agreement....3 months", - Is what the lawyer wrote on your behalf true or untrue?

**The Plaintiff's Counsel**: Before the witness answers, I wish to read to him Sections 3.1 and also 3.5.

**Comment**: The sections are read out.

A.    In total I claimed 7 months and received 6 months by a ruling of an arbitrator in Court and according to advice I received, adjustment and advance notice – are the same and I received advice then.

**The Plaintiff's Counsel**: No objection to the filing. **Filed and marked Def/1.**

Q.    I am placing before you your employment agreement at Galilee Tours which is mentioned in Def/1 and my question to you is where in the document, in the employment agreement does your right to an advance notice appear? I argue that in this agreement the right to an advance notice doesn't appear is that true?

A.    I know that in my judgment between myself and Clal I received a 6-month advance notice.

Q.    Is this document your employment agreement at Galilee Tours

A.    I cannot answer without checking the document with my vision device.

## Decision

The document will be marked as Def/2.

The Plaintiff will answer the aforesaid question within 7 days.

Admissibility will be after receipt of the answer.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    Labor Case 007704/03

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

**Issued today, Kislev 3, 5768 (November 13, 2007), in the presence of the parties.**

            **(-)**

_____

**Justice Ilan Itach**

Q.    Every so often in the answers to my questions you mention that arbitration award and rely on it as evidence of your rights, is it true that we're talking about an arbitration award by consent?

A.    I think so.

Q.    I'm referring you now to Section 3.6 at the bottom of the second page of Def/2 where it says "Moshe will be entitled…",

A.    From what date is the contract?

Q.    On the other hand, I'm presenting to you your affidavit that was given in the framework of the 2001 claim, of the First Defendant - an affidavit dated November 7, 2004, referring to Section 88 of the affidavit (**marked Def/3**), where it says in Section 88, "in the framework of…", Question – were you entitled according to the terms of your employment at Galilee Tours 28 days as written in Def/2 or 45 days as written in Section 88 of Def/3?

A.    I insist on what was stated in the affidavit here Def/3.

Q.    Do you remember that from 1996 an action was conducted between a former employee of the First Defendant's Mr. Melnik

A.    I certainly remember.

Q.    The person who represented the First Defendant at the time was the late Adv. Weisel?

A.    I remember.

Q.    Was it you who maintained contact with Adv. Weisel on behalf of the First Defendant

A.    Indeed.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                 **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                 **November 13, 2007**
          **Public Representative (Employers) Miller Amiram**
          **Public Representative (Employee) Halevy Maoz**


Q.     In this context you received for your review the Second Defendant's draft affidavit in this claim

A.     I remember receiving. I don't remember it in detail.

Q.     In this draft that Adv. Weisel prepared,


**The Plaintiff's Counsel**: I object to the filing because the document does not appear in the discovery affidavit.


**The Defendant's Counsel**: I'm presenting to the Court the discovery affidavit dated November 4, 2002 and referring to Section 2.38 and expect an apology from my colleague.


**The Plaintiff's Counsel**: Reviewing the affidavit. We withdraw the objection. The document was disclosed.

**Comment: Marked Def/4.**


Q.     In the draft affidavit that Adv. Weisel transferred to you it says in Section 12, that at the First Defendant's a matter of a years-long policy and I quote, - How come you didn't say to Adv. Weisel listen this isn't true, I have an agreement for 6 months advance notice?

A.     Like in this trial, instructions were received from the United States. Adelson's partner Irwin Chafetz, gave an affidavit that as a policy no written agreements are signed with employees. While this point refers to the writing of the affidavit not to the mere existence of the agreement, the making of the agreement or the conclusion of the agreement. I asked and the late Weisel explained to me and showed me Chafetz's affidavit and if you read the whole paragraph it was also mentioned.

Q.     In the affidavit that was ultimately filed by Mr. Adelson with the Labor Court in the Melnik claim, Mr. Adelson writes and I'm referring to Sections 24 and 27 Annex N1A to Adelson's affidavit in 2001, and in Section 27 he writes

[ Emblem of the State of Israel ]
**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:   The Hon. Justice Ilan Itach**                    **November 13, 2007**
            **Public Representative (Employers) Miller Amiram**
            **Public Representative (Employee) Halevy Maoz**

even more clearly – did you tell Adv. Weisel or Mr. Adelson listen this isn't true, I have a commitment to a 6-month advance notice

A.     As I testified before, I talked to Weisel on the matter even before I knew what was in this section, what I talked with him I don't intend to specify. Because I don't remember word for word and he passed away.

Q.     In Section 4.9 of the Complaint that you filed in the 2001 claim you talk about a 6-month advance notice and say "this consent…" – is your argument in Section 4.9 true

A.     True.

Q.     And the same words appear in Section 28 of the 2001 claim

A.     Section 4.9 is true. Section 28 - true.

Q.     When you write that the consent was based on the usage, namely that the usage preceded the consent is that true?

A.     There are two parts here. I write about a secretary who was dismissed after me. There are some who were dismissed before me.
       It's also before me and also after me. I dismissed Mr. Melnik per Adelson's instructions and I gave him an advance notice of 3 months in 95 if I understood correctly this is proof of something earlier and the consent came after the usage.

Q.     We asked your lawyers here who are those senior employees who benefited from the usage mentioned in Section 4.9 of the Complaint and in Section 28 of the affidavit and their answer was in a letter Annex N/12 to the affidavit of accountant Zamir, Moshe Melnik, Adv. Efrat, David Farb. and Miri Schory, is their answer correct?

A.     They are presumed to give a correct answer. Yes.

Q.     I would like to show you another change in your version. In the 2001 claim you argued that Mr. Farb. your predecessor was dismissed and received an advance notice and this is how the usage was created among other things, on the other hand, when you reached the Macau claim it no longer suited you to say that Mr. Farb. was dismissed and in the Macau affidavit referring to Sections 2.2.4 and also 2.2.5 you declare that Mr. Farb. wasn't dismissed but rather resigned, which of the two is correct

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                                **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

A.     According to Mr. Adelson's version he dismissed him. I wasn't in the room when the separation event took place. According to Mr. Farb.'s version he resigned.

Q.     Why in the 2001 claim was he dismissed and in the Macau claim he resigned? Why didn't you tell in both places the whole story that you told now

A.     Due to the shortage of space.

Q.     In the 2001 claim you wanted to demonstrate a usage that after dismissal advance notice payments were made in the Macau claim you wanted to demonstrate that it was urgent for Mr. Adelson to find a substitute general manager since Mr. Farb. resigned, is it true my explanation?

A.     The attribution to me is incorrect but the facts are true. It was urgent for Mr. Adelson to find a general manager.

Q.     You know today that both Mr. Farb. and Ms. Schory filed affidavits in the 2001 claim in which they declared that they didn't receive payments due to advance notice is that true

A.     It's true that they filed affidavits and weren't examined on them.

Q.     You didn't summon Mr. Melnik for testimony is that true

A.     No.

Q.     With respect to Adv. Efrat when you write in your affidavit that he actually received a payment due to advance notice of 3 months (Section 4.9 of the Complaint), what happened was that Adv. Efrat didn't repay a loan that he had taken from the First Defendant arguing that he was entitled to advance notice pay, is that true

A.     There's technique and there's action. He received advance notice pay. After that whether he offset it against other things is a technical question. In practice he received advance notice pay by way of setoff. To the best of my knowledge part of the advance notice was by way of setoff – not repaying the loan.

Q.     Do you know that this too is untrue because after we contacted him Adv. Efrat repaid the loan?

A.     I don't know all the details. I know that pressure was applied to him.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

**To the Court's Question** – Whether I know that Adv. Efrat repaid the said loan I answer: I know partially and the source of the information is what Adv. Efrat told me about an entire system during an hour and I don't know all the details because he prepared me on what he went through and then I lost my eyesight in the right eye during the course of the conversation.

Q.    I'm placing before you a complaint that you filed against me with the Ethics Committee on this matter together with the decision of the Ethics Committee. **Filed and Marked Def/5a, Def/5b, Def/5c**

A.    I filed a complaint and a petition and I also filed a letter with this Court following the decision of the Bar Association.

Q.    I'm showing you the letter, this is the letter that you filed

A.    Yes. **Def/6**. I filed a complaint with the Bar Association about the event that I told about concerning the loss of eyesight, what I heard and I was handed a decision and on the same day another decision, this is the Bar's last decision.

**The Defendant's Counsel**: This letter that was attached was filed with the Court in the context of the discovery along with the complaint about Adv. Efrat last Sunday. While this letter Def/6 has got nothing to do with Efrat's complaint but with another complaint filed by the Plaintiff. It can be seen according to the file number on the left-hand side of the letter and I am saying this since the Plaintiff has created a deliberate false impression as if this letter is an answer to the complaint concerning Efrat. The right answers concerning Efrat are attached to the Plaintiff's petition to the High Court of Justice Def/5b.

Q.    You became acquainted in 88 you and Adelson

A.    Yes.

Q.    Was the relationship between you friendly?

A.    The relationship was a friendship and a little business.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**            Labor Case 007704/03

**Before:   The Hon. Justice Ilan Itach**            **November 13, 2007**
         **Public Representative (Employers) Miller Amiram**
         **Public Representative (Employee) Halevy Maoz**


Q.    In Section 8 of your affidavit in the 2001 claim you write "the strong ties…" – is that true

A.    Yes.

Q.    When did you mutually initiate as you say in your words the tourist venture

A.    In 94 to the best of my recollection.

Q.    When you say that Adelson undertook to grant you shares in the project, I asked how many shares, what percentage did he undertake to grant you in the venture

A.    12%, according to a mechanism.

Q.    According to what you declared in the proceedings that took place in the United States, all of your terms of employment were agreed with you even before December 95, even before your visit to Boston in December 95 is that true?

A.    Yes.

Q.    Was there any change to your terms of employment following the visit to Boston?

A.    No.

Q.    Referring you to Section 23.2 of your affidavit in the 2001 claim, where you specify the expenses that the First Defendant paid you in the framework of your employment agreement and in Section 23.4 you sum up all these expenses together with the monthly salary for which you are suing for 6 months of advance notice, is that true?

A.    There's a breakdown, there's a basic salary, there's a sum and I'm suing both of them for 6 months.

Q.    In Section 23.2.1 you declare about car expenses in the sum of NIS 5000 a month and in 23.2.5 you declare about the salary of the full-time driver that the First Defendant paid for you, the driver you're talking about is David Miro who worked for you also at Galilee Tours?

A.    True.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                                   **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                                   **November 13, 2007**
          **Public Representative (Employers) Miller Amiram**
          **Public Representative (Employee) Halevy Maoz**

Q.     Is it true that until December 31, 1998 the First Defendant paid Galilee Tours 1500 dollars due to your car maintenance and since January 1, 1999 the First Defendant paid your driver a gross salary of NIS 4957

A.     I guess that's true.

Q.     I'm taking you back to the legal dispute that you had between Clal and Galilee Tours and placing before you the complaint that you filed against them, and referring you to Section 40.9 of the complaint –
       **Marked Def/7** referring you to page 16 at the bottom – is it true that what's written at the end of 40.9 is a lie since it was the First Defendant and not you who paid Mr. Miro's salary from the day of his dismissal from January 1, 1999.

A.     To the best of my recollection there was a gap, an in-between window and during this window I paid money to David Miro.

Q.     Is it not true that from January 1, 1998 the First Defendant paid David Miro?

A.     I answered you as best as I could.

Q.     Is it true that the arbitrator the Honorable Retired Judge Porat, who issues [sic] the arbitration award awarded you reimbursement of expenses in Section 1.1.5, reimbursement of expenses that the Plaintiff incurred for hiring an alternative driver and I'm telling you that in fact she awarded you expenses that were incurred not by you but by the First Defendant **Marked Def/8**

A.     What was awarded to me is less than a month cost-wise which is only the in-between.

Q.     Didn't the Defendant pay for the in-between?

A.     In my opinion – I didn't receive for the in-between.

Q.     You said according to your affidavit in Section 23.2.5 that the full-time driver is part of the terms of your employment at the First Defendant

A.     Absolutely

Q.     This is in addition to what's written in Section 2.3.1 to car expenses

A.     Yes.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

Q.    You will agree with me that until January 1, 1999 the First Defendant paid for you only car expenses to Galilee Tours and only from January 1, 1999 it also started paying a salary to the driver, is that right?

A.    Car and driver's expenses were paid to Galilee Tours until the said date and Galilee Tours paid the second half. From that date the First Defendant paid everything.

Q.    Until January 1, 1999 the First Defendant paid Galilee Tours 1500 dollar

A.    Yes.

Q.    And that's it in connection with car and driver expenses?

A.    Right.

Q.    From January 1, 1999 it paid both 6500 to the driver and NIS 5,000 car expenses?

A.    Yes.

Q.    This addition from January 1, 1999 who approved it?

A.    The Second Defendant.

Q.    When?

A.    Can't say an accurate date. But around the same period of time before the First Defendant changed the payment and therefore I paid Mr. David Miro in the in-between.

Q.    How is that consistent with the answer you gave earlier that the terms of your employment didn't change after they were agreed upon prior to your visit to Boston in December 95

A.    My terms of employment included a driver and a car. At the first stage - Galilee Tours and the First Defendant split the car costs. Since the driver was a salaried employee at Galilee Tours, Galilee Tours issued an invoice for the one half. Prior to the visit in Boston I had a driver and a car and also after the visit to Boston. The costs of the car, the fuel and the insurance – changed. As far as I was concerned I had a driver and a car before and after.

Q.    In Section 23.2.2 of your affidavit you explain that the First Defendant paid for a Globes subscription for you, in the Complaint that you filed against Clal and Galilee Tours, page 16, you wrote that Galilee Tours breached the

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before: The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

agreement with you (referring to Section 40.7) namely also here the argument that you argued in the Galilee Tours claim as if after you were dismissed you had to buy a subscription at your own expense is untrue because it was the First Defendant which paid for your subscription from the termination of your employment at Galilee Tours is that true.

A.    To the best of my recollection here too there was an in-between.

Q.    In the same claim Def/7, page 16 Section 40.8 you write that the mobile phone given to Moshe was disconnected… I'm telling you again you will agree with me that from January 1, 1999 the First Defendant paid your mobile phone bill?

A.    No. Here this is not an in-between. I got myself a private telephone and I had a telephone of the First Defendant's.

Q.    What was the telephone number of your private telephone

A.    I don't remember. I had two different networks and I don't remember the numbers.

Q.    In Section 23.2.3 of the affidavit, you say that in the framework of your terms of employment the First Defendant paid for 2 telephone landlines is that true?

A.    Partly true. During the in-between the fax was ordered and paid by the First Defendant. We tried even before filing the Complaint to inquire with the First Defendant's bookkeeper about the second line and I didn't succeed. I cooperated with the lawyers in order for us to know from Bezeq who paid the second line, and ultimately Bezeq notified us that it couldn't since it was done with a credit card. That it could be mine.
       **Filed with consent the notice concerning Bezeq marked Def/9.**
       Had I known that, Bezeq's answer – then I wouldn't have filed the complaint about the second line.

Q.    But you paid for the second line, how could you not know

A.    I didn't say that I paid for the second line, it's unclear who paid for the second line.

Q.    It was paid with an Isracard credit card

A.    That's the only thing known

Q.    You had an Isracard card at the time

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                          **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                          **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

A.    I had cards of all the companies.

Q.    About the money setoff – referring you to Section 34 in the 2001 claim you
      say "on the eve of my departure…- is that right

A.    Right.

Q.    We're speaking about two checks the one to the order of Schory for NIS
      10,000 and the second to your order for NIS 20,000

A.    Right.

Q.    I'm showing you a letter that you wrote to Accountant Zamir, Annex N/14 to
      Accountant Zamir's affidavit, is this your handwriting?

A.    Yes after my wife confirms to me. Comment: **The original is filed and
      marked Def/10**

**Comment**: Mr. Dan Tichon and his wife enter the courtroom.

**The Plaintiff's Counsel**: I announce that we are withdrawing Mr. Tichon's affidavit
and he will not be a witness.

**Comment**: Mr. Dan Tichon's affidavit is returned to the Plaintiffs' counsel.

Q.    You write that there's a debt to Galilee Tours, from which it is necessary to
      offset my debt – NIS 20,000 and in addition my debt – NIS 10,000 is that right

A.    Right.

Q.    Did you write in this letter that the setoff issue would be checked and that if it
      would be found to be unjustified the amount would be repaid to you and if not
      – why?

A.    To answer the first question – it's not written. Regarding the why – I'm not a
      lawyer and until the lawyers entered there was no dispute and in May after my
      dismissal Accountant Zamir corresponds with me about amounts in dispute

[ Emblem of the State of Israel ]

**The Labor Courts**

Tel Aviv Jaffa District Labor Court                     Labor Case 007704/03

**Before:  The Hon. Justice Ilan Itach                     November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

and sends me materials and I answer him, and if Def/10 is a final document why does he send me to the best of my recollection on May 10 which is 10 days after the termination of my employment letters with copies of checks.

Q.    Regarding a NIS 10,000 check you say in the section that this check was given to Ms. Schory and cashed by her, Miri Schory says that she cashed the money and gave it to you in cash per your request, is that true

A.    A barefaced lie.

Q.    If you look at the check, P/14, it says for Moshe Hananel per his instruction, so what's written on the check is untrue?

A.    What's written on the check is true the question is when it was written. When I signed it wasn't written.

Q.    What's written is true

A.    This sentence is a barefaced lie. I didn't receive the money, I didn't ask to receive the money.

Q.    In the complementary affidavit that you filed in the claim of 2001, you say in Section 6, the check was written to the order of Miri due to her salary for her work at the First Defendant from February 96 until the end of April 96... What you're telling us is that in August 98 Miri Schory received a check for NIS 10,000 because in February to April 96 she didn't receive a salary?

A.    That's my opinion.

Q.    I'm placing before you Ms. Schory's complementary affidavit to which we attached Ms. Schory's pay slips for the months of February to April 96 and even a printout of her bank statement attesting that the amounts have entered the account what do you have to say

A.    Ms. Schory will be examined here and Oded Efrat will testify and be examined and the truth will come out.

Q.    Referring to the second check of NIS 20,000, in Section 7 of the complementary affidavit, in fact you're saying that the check was given to you without pay slips at the end of 95 and the setoff that was done was unjustified is the argument true?

A.    Yes.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                     **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                     **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**

Q.      What you're saying to the Court is that in July 98 you received a check for
        NIS 20,000 for your employment at the end of 95 is that true?

A.      True. That's my argument.

Q.      Referring you to Annexes P/11 and P/12 of your affidavit, according to P/11
        your employment began on January 1, 1996 and also according to P/12 your
        employment was 4 years 4 months and 10 days. In other words, according to
        these two documents, your employment at the First Defendant began on
        January 1, 1996 and not in the last months of 95 is that true?

A.      No.

Q.      Presenting to you your pay slips that were disclosed in the framework of the
        discovery in the 2001 claim, will you agree with me that in all of these pay
        slips – **Def/11** it's written at the bottom of the slip that your seniority is from
        January 96

A.      That's what's written in the slips.

Q.      These are the pay slips of the First Defendant whose manager was you

A.      Yes. **Def/11**.

Q.      To complete the picture I'm placing before you an affidavit that you filed in
        the framework of Melnik's claim

A.      This is the affidavit **marked Def/12**

Q.      In Section 2 of the affidavit in proximity to the termination of the Plaintiff
        Melnik's employment with the First Defendant I started managing the First
        Defendant in Israel, Mr. Melnik's employment expired on December 31, 1995
        is that true

A.      It's untrue.

Q.      Referring you to Annex A of your affidavit Def/12 and asking you what do
        you say now
        A letter signed by Mr. Hananel which states that Mr. Melnik's employment
        with us expired on December 31, 1995 what do you say now is what's written
        in this letter true

A.      Yes. There's expired in practice and there's expired for severance pay,
        national insurance purposes. In practice, his employment expired in

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
            **Public Representative (Employers) Miller Amiram**
            **Public Representative (Employee) Halevy Maoz**

September. And in October I started a little and in November and December I'm suing.

Q.    To complete the picture I'm placing before you the testimony in the Melnik claim

A.    Yes. Marked **Def/13**.

Q.    I'm presenting to you two letters that were exchanged between you and Melnik I'm asking to mark them.

A.    Marked **Def/14a** Mr. Melnik's letter and **Def/14b** is Mr. Hananel's answer.

Q.    Referring you to your letter Annex P/5 to your affidavit, there especially to Section E where you refer to NIS 20,000 due to the first months of your employment in 97, my question to you – is the NIS 20,000 due to the months of 97 or due to the last months of 95?

A.    (The letter is read out to the Plaintiff by his wife). It's for the last two months of 95. 10,000 of Schory and 20,000 for the last two months of 95.

Q.    You're saying that your employment at the end of 95 began in October 95 is that true

A.    Yes

Q.    If so, why NIS 20,000. Since for 3 months of work you're entitled to much more?

A.    I decided already then because in October I worked a few days and in 2000 I couldn't say how many days exactly I worked in October 95 I said that I'm leaving October, with respect to November December 95 – I'm saying at the time of this letter, that we separated but from 98 I'm saying that because then I received the NIS 20,000 net for each month, it was on account of the November December 95 salary when the bookkeeper should have seen what's the exact amount in order to pay the taxes for it and then it would have come out 12,300 or 11,700 for example.

Q.    You said earlier that you are suing for the salary that you're entitled to due to those months of your employment at the end of November December 95, where are you suing them?

A.    I don't remember among those hundreds thousands of pages and can't refer.

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
          **Public Representative (Employers) Miller Amiram**
          **Public Representative (Employee) Halevy Maoz**

Q.    I put it to you that you're not suing the salary for the months of November, December 95 anywhere.

A.    The 20,000 I'm suing for the salary and then of course I'm suing.

Q.    In Section 53 of your affidavit, you tell the story of Auto Depot Ltd., is it true what's written in Section 53

A.    Yes.

Q.    You said it was in 97

A.    Auto Depot deteriorated to a state of insolvency in 97 I'm chairman since 95.

Q.    You write in your affidavit at the beginning of my term of employment at the First Defendant at the same period Auto Depot was on the verge of insolvency, now you're saying that in 95 you started acting as chairman and that the company became insolvent only in 97 is that true?

A.    The company wasn't legally insolvent at any moment. It was in a bad condition.

**To the Court's question** – In Section 53, at the same period, do you mean 97?

A.    I mean insolvency in people's terms in 95 and legally in 97.

Q.    Referring you to a letter dated January 7, 1996

A.    Yes. **Marked Def/15.**

Q.    Presenting to you an additional letter that you sent on June 26, 1996

A.    Yes. **Marked Def/16.**

Q.    I'm referring you to a letter of Oded Efrat that was cc'ed also to you to the First Defendant's management in the United States

A.    Yes. **Def/17**

Q.    Your letter dated April 10, 1997

A.    Yes. **Marked Def/18**

Q.    I'm presenting to you a letter dated July 16, 1997

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:** **The Hon. Justice Ilan Itach**                    **November 13, 2007**
          **Public Representative (Employers) Miller Amiram**
          **Public Representative (Employee) Halevy Maoz**


A.    Yes, marked **Def/19**.

Q.    Referring you to your letter the last one there's a business forecast of Auto
      Depot – Def/18
      of April 10 where there's a business forecast of Auto Depot in the years 95-97,
      from 98 Auto Depot shifts to profitability after a tax of NIS 3 million.
      (Referring to page 6), in 2000-2002 the profit only increases, in your affidavit
      you said that at the beginning of your term of employment Auto Depot was, in
      people's terms, on the verge of insolvency and the First Defendant estimated
      that its entire investment had been lost. What we see in the documents that I
      presented and because of this estimation you were promised a bonus if you
      saved the investment and here we saw that contrary to this the First Defendant
      invested per your request more and more monies in the project, a new store at
      Bilu Junction and in Haifa and in Beer Sheva and in Tel Aviv, and a glowing
      business forecast that the business is growing, how is this consistent with what
      you said?

A.    I remember the principles of the table. The basis of the question is absolute
      rubbish, and I'm referring to Mr. Adelson's two letters to Uzi Katz in 97 to the
      best of my recollection. Second, Mr. Adelson had to decide at the beginning of
      my employment whether he was cutting and stopping his investment in Auto
      Depot completely in 95 or despite the situation continuing with it and the
      forecasts were made based on his business decision that derived from different
      motives not necessarily economic of a first activity in Israel and prestige that
      he wasn't withdrawing the investment but restoring. Also in the forecasts that
      the Defendant's counsel read out prove that the turning point of the change in
      the company's situation was 97-98 and indeed in 98 due to unrelated matters,
      the company reached the court in Haifa with a dissolution petition.

Q.    I'm presenting to you the motion for a composition with creditors marked
      Def/20 and referring to Section 4.1 where it says that at the end of 98 it
      reached insolvency in legal terms and this was after 3 years in which you
      served as chairman

A.    True. More than 3 years because I started in October 95.

Q.    Do you remember for how much the First Defendant sold its investment in
      Auto Depot

A.    2 million and 50,000 dollars that were received in bank guarantees the last of
      which was paid after my dismissal.

Q.    How much did the First Defendant invest in total in Auto Depot in purchasing
      the shares and the shareholders' loans

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**


A.    The accurate amount would be larger than the amount that was sold.


<u>**Decision**</u>

The time is now 11:55 the hearing will continue at 12:25.

**Issued today, Kislev 3, 5768 (November 13, 2007), in the presence of the parties.**


(-)

———————————
**Justice Ilan Itach**


<u>**The time is now 12:30 and the hearing continues:**</u>


Q.    According to the story that you're telling, you're saying that in August 99 you told Adelson about a business opportunity in Macau, following which he traveled there twice, in August 99 and in March 2000 and when he returned to Israel in April 2000 he dismissed you, is that true.

A.    True.

Q.    Before we delve into the matter, I'm putting in front of you a map, could you confirm that Macau is divided into 3 main parts: One part which is connected to the Chinese mainland which is called Macau, an Island called Taipa and another island called Coloane? Marked **<u>Def/21</u>**.

A.    Yes.

Q.    Between Taipa and Coloane as seen on page 2, there's a strip of reclaimed land called Cotai, if we look at page 3 above the part which is connected to China called Macau there's a city called Zhuhai which is already part of China is that true?

A.    No. Zhuhai is across the sea parallel to all 3 islands. That's the region Zhuhai. The region Zhuhai is on the left and to the west north of Macau and the city Zhuhai is more or less below the lowest island Coloane. Zhuhai is a special region in China and the city Zhuhai is also in China.

Q.    Politically-wise, do you know that Macau like Hong Kong was until the end of the 90s a colony that was returned to China?

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
**Public Representative (Employers) Miller Amiram**
**Public Representative (Employee) Halevy Maoz**


A.      True.

Q.      Hong Kong was returned in 97 from England to China and Macau was
        returned in December 99 from Portugal to China

A.      True.

Q.      Both of these places in Hong Kong and in Macau a special system is operated
        which is called an economic autonomy.

A.      Yes. Also in Zhuhai.

Q.      Referring to Section 4.1 of the Complaint, we asked you for a long time and
        you refused who's that entrepreneur, finally we filed a motion for additional
        details that was granted by Judge Tenenbaum and ordered you to disclose the
        name of the entrepreneur, right?

A.      Right and for good reason.

Q.      I'm showing you now the letter that we received from your lawyer, and
        according to the letter the entrepreneur is Aryeh Lis (**Def/22**).

A.      Right.

Q.      Referring to the affidavit of Mr. Aryeh Lis from December 4, 2006 in Section
        1, Mr. Lis refers to the building of a time-sharing-type resort project in the
        region of Zhuhai near Macau in China, at the end of the affidavit he says that
        he approached other persons with respect to the Zhuhai area. In other words,
        you in your claim state that Aryeh Lis approached you and described a tourist
        venture in the area of Cotai in Macau between the islands of Coloane and
        Taipa and Aryeh Lis said that he approached you with an offer concerning the
        building of a time-sharing project in Zhuhai, so what's true what you say in
        the complaint or what Lis says in the affidavit?

A.      They're both true.

Q.      Aryeh Lis approached you in order to describe to you a tourist venture in the
        area of Macau which is in Cotai between the islands of Coloane and Taipa. Is
        that true?

A.      Untrue.

Q.      After you found out that what's written in your complaint is a lie then in your
        affidavit your version as usual changes, in your affidavit it says in Section 4.3

[ Emblem of the State of Israel ]

**The Labor Courts**

Tel Aviv Jaffa District Labor Court                    Labor Case 007704/03

**Before:  The Hon. Justice Ilan Itach                    November 13, 2007**
         **Public Representative (Employers) Miller Amiram**
         **Public Representative (Employee) Halevy Maoz**

|   |   |
|---|---|
|   | contrary to the complaint that Mr. Aryeh Lis didn't present to you as written for you in the complaint but a resort project in the area of Zhuhai what do you say? |
| A. | That everything you're saying is a lie. It's not true. Aryeh Lis presented to me a project in the state of Zhuhai which is in the area of Macau and it's a special area like Macau that surrounds Macau on 3 sides and the famous place is Macau. Therefore I'm saying that it's in the Macau area not geographically because that's what people know. Like when people say that Macau is in the area of Hong Kong which is 40 km away but Hong Kong is the famous place. |
| Q. | If that's so, why did you correct yourself in the affidavit compared to the complaint? |
| A. | I don't think that I corrected but expanded in order to try to explain. Because it needs to be kept in mind that there are 2 Cotais like there are 4 Taipeis and the famous one is the capital of Taiwan. |
| Q. | Where's the other Cotai |
| A. | In the area of Guangdong in the Zhuhai region. |
| Q. | When you explained about the Cotai area in the Complaint you focused it accurately, |

**Comment**: Section 4.1 of the Complaint is re-read to the Plaintiff by his counsel

|   |   |
|---|---|
| Q. | What you explained to the Court if I understand correctly that in your affidavit you wanted to clarify the words in the Macau area which is in Cotai between the islands of Coloane and Taipa by writing in the Zhuhai area near Macau, yes? |
| A. | Yes. |
| Q. | In Section 4.4 of your affidavit you write that in a follow-up meeting that I had with Mr. Lis at the end of June 99 he gave me two official brochures in two copies that are aimed at foreign investors in the area and describe the infrastructures investment options and rules etc., a copy of the materials that Mr. Lis gave me with respect to Zhuhai in particular and China in general is attached as Annex M. Referring to the first brochure – M/1 called Zhuhai. |

[ Emblem of the State of Israel ]

**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:**  **The Hon. Justice Ilan Itach**                    **November 13, 2007**
          **Public Representative (Employers) Miller Amiram**
          **Public Representative (Employee) Halevy Maoz**

**The Plaintiff's wife**: He didn't read him the whole passage.

<u>Decision</u>

I am clarifying again to the Plaintiff's wife that her job is limited to reading out passages to the Plaintiff. Insofar as there is any need for an objection or there is a problem with a question of the Defendants' counsel, then remarks on the matter will be addressed to the Plaintiff's counsel and only they have the option to object or to make various motions. Any other behavior may prejudice the Plaintiff's testimony.

**Issued today, Kislev 3, 5768 (November 13, 2007), in the presence of the parties.**
    **(-)**
    _____

**Justice Ilan Itach**

Q.    Let's start with the brochure called Zhuhai, M/1, this is a brochure that deals with Zhuhai and not with the Macau area is that true?

A.    It deals with Macau – the area and speaks of Zhuhai.

Q.    Show me in the brochure where it refers to Macau

A.    To the best of my recollection, the brochure opens to a map showing all of China, highlights Zhuhai, speaks of Macau, there's what's called the Pearl River Delta. Hong Kong, Macau and Zhuhai are called the Pearl River Delta and below this map there should be a reference both to Macau and to the entire area. Then the second brochure mentions Hong Kong.

Q.    You will agree with me that in this brochure there's not a single word about infrastructures, options, investment rules not even in Zhuhai is that true?

A.    It has photos of infrastructures. Under the photo there's a caption. The answer is no but the explanation is that there are photos of infrastructures for instance of airports, water reservoirs etc.

Q.    Anyhow, if you wrote that the brochures feature investment rules and options then this brochure doesn't.

A.    It doesn't and therefore I wrote in the brochures.

[ Emblem of the State of Israel ]
**The Labor Courts**

**Tel Aviv Jaffa District Labor Court**                    **Labor Case 007704/03**

**Before:  The Hon. Justice Ilan Itach**                    **November 13, 2007**
           **Public Representative (Employers) Miller Amiram**
           **Public Representative (Employee) Halevy Maoz**

Q.  Referring to the second brochure – M/2, you will agree with me that there isn't any explanation and any information in this brochure about an investment in Macau?

A.  Not true.

Q.  Where is there any explanation or information about an investment in Macau?


**To the Court's question**: After the Court again demands a clear answer from me to the Defendants' counsel's question I respond that the answer is no.


Q.  You further added in your statements that you gave the brochure because the rules that would apply to Macau would be derived from it, is that true?

A.  You can't take half a sentence of what I wanted to say and derive further. The answer is positive in general and this is the genius of what was going on at the time the ability to project from the special area Zhuhai that surrounds Macau to what will happen in the special area Macau but it's possible to project.

Q.  Will you agree with me that when you wrote in Section 4.3 of the Complaint about these brochures, it's a lie?

A.  No. Zhuhai in the Macau area surrounds Macau. It was clear that the Chinese government made Zhuhai a special area because of Hong Kong and Macau and what you're saying is not true.

Q.  In Section 4.3 of your affidavit, you tell Mr. Lis and later you mention that you asked him to look into the possibility of building a casino-related project in Zhuhai.

A.  Yes.

Q.  You testify about yourself that you have a close acquaintance with China, is that true

A.  Yes.

Q.  You say that you spent time in China for a relatively long period of time is that also true?

A.  Yes. Relatively long