Exhibit C



**GENERAL OF ISRAEL**
**HONG KONG**

הקונסוליה הכללית של ישראל
הונג קונג

以色列總領事館

אני, החח"מ,  דן בן אליעזר

סגן-קונסול/ קונסול של ישראל בהונג קונג
מאשר בזה כי היום ניצב/(ה) בפני מר/מרת
(ה)הידוע/(ה) JORGE MANUEL FARIA DA COSTA OLIVEIRA
לי -ידיעה-אישית שזהותו/(ה) הוכחה לי ע"פ

דרכון / תעודת-זהות פורטוגל
מספר R156027 שניתן/(ה) ב ליסבון

וחתם/(ה) מרצונו/(ה) החופשי על המסמך
שלעיל/שמעבר-לדף/המצורף והמסומן באות
"א".

ולראיה הנני מאמת את חתימתו/(ה) של
מר/מרת JORGE MANUEL FARIA בחתימת
DA COSTA OLIVEIRA
ידי ובחותמי

19.4.2007

DAN BEN-ELIEZER      דן בן אליעזר
CONSUL GENERAL      קונסול כללי

המקום
החתימה

ויישום פעולות נוטריוניות

| 317 | 43 | 10 | 2007 |
|---|---|---|---|
| מסי' הזכר | מסי' הדו | מסי' סידורי בדף | שנה |

Telephone: 2821 7  
Fax: 2  5 0220

E-mail: info@hongkong.mfa.gov.il  
Website: http://hongkong.mfa.gov.il

701 Admiralty Centre Tower II  
G.P.O. Box 245 Hong Kong

# <u>Affidavit</u>

I, the undersigned, Jorge Manuel Faria da Costa Oliveira, bearer of Portuguese passport no. R156027, after having been cautioned to tell the truth, failing which I will be liable for the penalties prescribed by law, do hereby declare as follows:

1.  My name is Jorge Manuel Faria da Costa Oliveira. I am a citizen of Portugal and a permanent resident of the Macao Special Administrative Region ("**Macao SAR**"). From August 1, 2003 until the present day I serve as the Commissioner for Legal Affairs of the Macao Gaming Commission.

2.  I was also one of the Macao SAR officials sitting on the Tender Commission for Gaming Concessions ("**Tender Commission**"), established for purposes of the public tender held in the years 2001-2002 for the granting of up to three concessions to operate casino games of chance in the Macao SAR.

3.  Until December 20, 1999, Macao was under Portuguese rule. Since 1962 and until the granting of the gaming concessions in 2002, Sociedade de Turismo e Diversões de Macau ("**STDM**") had a casino gaming monopoly in Macao and operated, as of 1999, nine casinos in Macao. The concession contract between STDM and the Macao Government, which allowed STDM to operate casino games of chance in Macao, was due to expire on December 31, 2001.

4.  In December 20, 1999, the People's Republic of China resumed sovereignty over Macao. However, even though Macao is subject to Chinese sovereignty, the Basic Law of the Macao SAR affords it a high degree of autonomy other than on foreign and defense affairs (pursuant to the 'One Country – Two Systems' concept, which is also applied in Hong Kong).

    A copy of the Joint Declaration of the Government of the People's Republic of China and the Government of the Republic of Portugal on the Question of Macao dated April 15, 1987 is attached hereto as **Exhibit 1**.

    A copy of the Basic Law of the Macao Special Administrative Region of the People's Republic of China dated March 31, 1993 is attached hereto as **Exhibit 2**.

5.    Prior to the December 20, 1999 handover – and thereafter – there were many rumors and speculations regarding the future of the gaming industry in Macao. On June 29, 2000, the Chief Executive of the Macao SAR (the head of the Executive branch) established a Gaming Commission (the Portuguese language version of which is "Advisory Committee") with the stated purpose to explore the future possibilities of casino gaming in Macao and to help the Chief Executive of the Macao SAR to define policy in this field. The Gaming Commission was seeking the interest in the Macao gaming market of large casino operators located in Nevada and in other relevant casino jurisdictions that had integrated resorts. In September 2000, Arthur Andersen was commissioned by the Macao SAR Government to study the future development of the local casino gaming industry in Macao and to study and advise on the gaming market in Nevada and elsewhere.

6.    In the first half of 2001 a Macao SAR Government delegation of officials, including myself, conducted a formal visit to the USA for the purpose of exploring the gaming environment in the USA, especially in Las Vegas, Nevada. During that visit we had meetings with officials from the Nevada Gaming Control Board.

7.    On August 30, 2001, the Macao SAR Legislative Assembly passed **Law No. 16/2001: Casino Gaming Industry Regulatory Framework**. The Law laid out the general framework for the concession system and the conditions and process for the open public tender bidding. Article 7 of the Law provides that the operation of casino games of chance can only be carried out by companies limited by shares incorporated in the Macao SAR to whom a concession has been granted by the Macao SAR, and that the maximum number of concessions to be granted is three. Article 8 of the Law provides that granting of the concessions would be preceded by a public tender. The Law further determines that the opening of the public tender is carried out by a Chief Executive's Order ("*Despacho*") (Article 9) and that the rules governing the public tender shall be approved by the Chief Executive of the Macao SAR and the Macao SAR Government (Article 52). Law No. 16/2001 further determines the rate of the special gaming tax (Article 27).

A copy of Law No. 16/2001 in its original languages (in Chinese and in Portuguese), as published in the Official Gazette of the Macao SAR, as well as a translation into English, are attached hereto as **Exhibits 3 and 4**.

8.  In October 2001, pursuant to Law No. 16/2001, as preparation for the launching of an international public tender, the Macao SAR Government launched a Request for Expression of Interest (EOI) regarding Macao Casino Gaming Concession (the **"Expressions of Interest Document"**). The Expressions of Interest Document included a concise overview of the casino industry in Macao, of the intention of the Macao SAR Government to liberalize the gaming industry based on the legal framework set forth in Law No. 16/2001, of the information sought from applicants, etc. The purpose of the Expression of Interest process was to enable the Macao SAR Government to evaluate the scope of interest by various entities in a concession to operate casino games of chance in the Macao SAR. The Expressions of Interest Document required entities responding thereto, *inter alia*, to specify their experience in the gaming field and their approach to the development and operation of casinos in Macao.

A copy of the Expressions of Interest Document (as amended on p. 8 after its publication) is attached hereto as **Exhibit 5**.

9.  The Expressions of Interest Document also stated (in page 8, Section 5) that after receipt of expressions of interest, a tender would be open, in the context of which the concessions to operate casino games of chance in the Macao SAR would be adjudicated, and that the opening of a tender would be announced in the week commencing October 29, 2001.

10. In order to give maximum exposure to the Request for Expression of Interest, announcements were published on October 8, 2001 (or thereabouts) in three languages – English, Portuguese and Chinese – in several central and international media sources (such as the *Financial Times*, the *Asian Wall Street Journal* and the *South China Morning Post*).

A copy of the announcement of the Request for Expression of Interest, as published in the press, is attached hereto as **Exhibit 6**.

11.  Information about and the Request for Expression of Interest itself was also posted on the official website of the Macao SAR Government.

A copy of the notice regarding the Request for Expression of Interest, as posted on the website of the Macao SAR Government, is attached hereto as **Exhibit 7**.

12.  In response to the Request for Expression of Interest, the Gaming Commission received, by October 19, 2001 (or thereabouts) (the date of submission fixed in the Expressions of Interest Document), Expressions of Interest from more than 20 entities, including – as anticipated and hoped – from several large casino gaming operators from Nevada, USA.

A copy of the list of entities having submitted Expressions of Interest is attached hereto as **Exhibit 8**.

13.  On October 26, 2001, Administrative Regulation No. 26/2001 was promulgated. This Administrative Regulation develops and implements Law No. 16/2001 and regulates – in a detailed manner – the public tender for the granting of concessions to operate casino games of chance in the Macao SAR. *Inter alia*, the Administrative Regulation governs the process for the public tender in which the gaming concessions were due to be granted (see Chapters V-VII).

A copy of Administrative Regulation No. 26/2001 (in Portuguese), as well as a translation into English, are attached hereto as **Exhibits 9 and 10**.

14.  On October 31, 2001, Chief Executive's Order No. 216/2001 was published. The Order established the Tender Commission. As stated at the outset of this my affidavit, I was one of the Macao SAR Government officials who had a seat on the Tender Commission.

A copy of Chief Executive's Order No. 216/2001 in its original languages (in Chinese and Portuguese), as published in the Official Gazette of the Macao SAR, as well as a translation into English, are attached hereto as **Exhibits 11 and 12**.

15. On November 2, 2001, Chief Executive's Order No. 217/2001 was published. The Order officially opened the public tender for the granting of up to three concessions to operate casino games of chance in the Macao SAR ("**Tender**"). The Order fixed the date for the submission of the bidding proposals (December 7, 2001), and potential tenderers were invited to inspect the Tender documents, which were listed in the Order.

   A copy of Chief Executive's Order No. 217/2001 in its original languages (in Chinese and Portuguese), as published in the Official Gazette of the Macao SAR, as well as a translation into English, are attached hereto as **Exhibits 13 and 14**.

16. On the same day (November 2, 2001), the Tender Program, which stated among other things the requirements to be a tenderer, was published. The Tender Program made explicit reference to the provisions of the Law, the Administrative Regulation and the Orders published prior thereto (such as Law No. 16/2001, Administrative Regulation No. 26/2001 and Chief Executive's Orders No. 216/2001 and 217/2001). The last date for the submission of bids was also referred (Section 15 of the Tender Program).

   A copy of the Tender Program in Portuguese and in English, are attached hereto as **Exhibits 15 and 16**.

17. On the same day (November 2, 2001), or thereabouts, the Tender Commission approached the entities having submitted Expressions of Interest, and drew their attention to the opening of the Tender.

   A copy of the Tender Commission's letter of November 2, 2001 to the Venetian is attached hereto as **Exhibit 17**.

18. On December 8, 2001 (or thereabouts), after the lapse of the last date for the submission of the bidding proposals, the Tender Commission published a list of the 21 companies having submitted a bid in the Tender, which included (as partners therein) several of the large Nevada casino gaming operators.

   A copy of the list of companies having submitted bidding proposals is attached hereto as **Exhibit 18**.

19.     One of the bidding proposals (no. 9 on the list) was submitted by a company named Asian American Entertainment Corporation Limited ("**Asian American**"). One of the partners in Asian American tender was The Venetian.

20.     On December 10, 2001, Chief Executive's Order No. 250/2001 was published. The Order regulated the terms and procedure for association of tenderers.

        A copy of Chief Executive's Order No. 250/2001 in its original language (in Chinese and Portuguese), as published in the Official Gazette of the Macao SAR, as well as a translation into English, are attached hereto as **Exhibits 19 and 20**.

21.     During January 2002 presentations by the various tenderers were made to the Tender Commission.

22.     On January 31, 2002, Asian American notified the Tender Commission of a preliminary agreement entered into between them and another tenderer, Aspinall's Club (Macau) Entertainment Limited. On the same day (January 31, 2002) the Tender Commission held a meeting to discuss the association of tenderers and rejected the above notice as an association of tenderers since the application submitted was not in compliance with items (1) to (10) of Article 5 and Articles 6 to 8 of Chief Executive's Order No. 250/2001.

        A copy of Asian American's notice to the Tender Commission of January 31, 2002 is attached hereto as **Exhibit 21**.

23.     On February 1, 2002, the Venetian informed the Tender Commission that it had severed its relationship with Asian American, and that it was now bidding in the Tender with Galaxy Casino, S.A. ("**Galaxy**"). On the same day (February 1, 2002), Galaxy submitted to the Tender Commission a subsequent proposal in which stated that the Venetian would be the management company of Galaxy if Galaxy was granted a casino gaming concession.

        A copy of the Venetian's notice to the Tender Commission of February 1, 2002 is attached hereto as **Exhibit 22**.

        A copy of Galaxy's subsequent proposal submitted to the Tender Commission of February 1, 2002 is attached hereto as **Exhibit 23**.

24. On February 11, 2002, Chief Executive's Order No. 26/2002 was published. The Order announced that concessions had been adjudicated, on a provisional basis, to three entities: Galaxy Casino S.A., Wynn Resorts (Macau) S.A. and Sociedade de Jogos de Macau, S.A. One of the main reasons for Galaxy's being adjudicated on a provisional basis a concession was the Venetian's participation as the proposed management company of Galaxy. The Tender Commission recognized the value of having the Venetian as a management company of Galaxy, mainly due to its experience and proven success in Las Vegas. As stated in Chief Executive's Order No. 26/2002, the three concessions to operate casino games of chance in the Macao SAR were adjudicated **on a provisional basis**, in accordance with the provisions of Section 25 of the Tender Program, Article 11(1) of Law No. 16/2001 and Article 82(2) of Administrative Regulation No. 26/2001. In addition, the three runners-up, which could have taken the place of the entities to which the concessions were adjudicated on a provisional basis if a concession contract was not signed with one or more of them, were also announced.

A copy of Chief Executive's Order No. 26/2002 in its original languages (in Chinese and Portuguese), as published in the Official Gazette of the Macao SAR, as well as a translation into English, are attached hereto as **Exhibits 24 and 25**.

25. In the period following the announcement of the provisional adjudication of the three concessions, negotiation of concession contracts took place with the three above mentioned entities (see, *inter alia*, Article 11(3) of Law No. 16/2001 and Article 77 of Administrative Regulation No. 26/2001). It should be noted that the Tender Commission during the negotiations of the concession contracts had the power to disqualify any of the provisional adjudicatory casino concessionaires, and transfer the concession adjudicated on a provisional basis to one of the runners-up, "**if this is deemed to be for the Region's public interest**" (see Article 77(6) of Administrative Regulation No. 26/2001).

26.  After the negotiations for Galaxy's concession contract, it transpired that Galaxy
     and the Venetian were unable to reach a final management agreement between
     them as to the relationship between the two, thus jeopardizing the Venetian's
     participation in the activity of the concession holder (Galaxy). The Tender
     Commission was not interested in losing the Venetian as a significant factor in
     the shaping of Macao's gaming industry, which, in the assessment of the Tender
     Commission, would have resulted from the disagreements that broke out
     between Galaxy and the Venetian. Under the said circumstances, in the second
     half of 2002 the Macao SAR Government agreed in the granting to the Venetian
     of a sub-concession to operate casino games of chance in the Macao SAR, whilst
     Galaxy would remain the concession holder and act independently from the
     Venetian. This structure is in effect to date.

27.  I have been told that in a claim filed in Israel in December 2003, a person by the
     name of Moshe Hananel is claiming to have contributed to the Venetian's being
     awarded a concession to operate casino games of chance in the Macao SAR.
     Over and above the fact that the Venetian was not awarded a concession to
     operate casino games of chance in the Macao SAR, as specified above in this my
     affidavit, I would like to confirm that until after the filing of Mr. Hananel's
     above-mentioned claim, I had never heard Mr. Moshe Hananel's name, and am
     unaware of any involvement or contribution of his to the decision of the Macao
     SAR Government to grant Galaxy a concession to operate casino games of
     chance in the Macao SAR, or to the decision of the Macao SAR Government to
     grant the Venetian a sub-concession to operate casino games of chance in the
     Macao SAR.

28.    I have been told that Mr. Moshe Hananel is claiming that information he had provided to Mr. Sheldon G. Adelson ("**Adelson**") in 1999 caused Mr. Adelson to meet with certain people from Macao and China, before the Tender was opened, thus causing Mr. Adelson to "**considerably precede all of his competitors and gain a dramatic edge over his competitors by his precedence**". This claim is totally unfounded. The Tender, which was conducted by the Macao SAR Government, was conducted in accordance with the law, was equal to all and was open to any entity which met the Tender conditions stipulated in advance. Upon the opening of the Tender all of the potential participants therein were at the same starting point. If and insofar as Mr. Adelson (or anybody from the Venetian) met with people from Macao or China before the opening of the Tender, the Tender Commission was told nothing about it, and it had no effect on the results of the Tender.

29.    I have further been informed that Mr. Moshe Hananel is claiming to have given Mr. Adelson a brochure, whose title included the words "The Red Sea", and which contained a proposal for the construction of a tourism project which included a casino, to be submitted to the appropriate entities in Macao. No such brochure has been submitted to the Tender Commission nor, consequently, affected the decision regarding the final adjudication to the concessionaires of the concessions to operate casino games of chance in the Macao SAR.

30.    I hereby declare that my name is Jorge Manuel Faria da Costa Oliveira, that the signature herein below is my own and that the content of this my affidavit is the truth.

Jorge Manuel Faria da Costa Oliveira



# Handover Ceremony

## *Official Documents*

**JOINT DECLARATION OF THE GOVERNMENT OF THE PEOPLE'S REPUBLIC OF CHINA AND THE GOVERNMENT OF THE REPUBLIC OF PORTUGAL ON THE QUESTION OF MACAU**

The Government of the People's Republic of China and the Government of the Republic of Portugal have reviewed with satisfaction the development of the friendly relations between the two Governments and peoples since the establishment of diplomatic relations between the two countries and agreed that a proper negotiated settlement by the two Governments of the question of Macau, which is left over from the past, is conducive to the economic growth and social stability of Macau and to the further strengthening of the friendly relations and cooperation between the two countries. To this end, they have, after talks between the delegations of the two Governments, agreed to declare as follows:

1. The Government of the People's Republic of China and the Government of the Republic of Portugal declare that the Macau area (including the Macau Peninsula, Taipa Island and Colane Island, hereinafter referred to as Macau) is Chinese territory, and that the Government of People's Republic of China will resume the exercise of sovereignty over Macau with effect from 20 December 1999.

2. The Government of the People's Republic of China declares that in line with the principle of "one country, two systems", the People's Republic of China will pursue the following basic policies regarding Macau:

   i. In accordance with the provisions of Article 31 of the Constitution of the People's Republic of china, the People's Republic of China will establish a Macau Special Administrative Region of the People's Republic of China upon resuming the exercise of sovereignty over Macau.

   ii. The Macau Special Administrative Region will be directly under the authority of the Central People's Government of the People's Republic of China, and will enjoy a high degree of autonomy, except in foreign and defence affairs which are the responsibilities of the Central People's Government. The Macau Special Administrative Region will be vested with executive, legislative and independent judicial power, including that of final adjudication.

   iii. Both the Government and the legislature of the Macau Special Administrative Region will be composed of local inhabitants. The chief executive will be appointed by the Central People's Government on the basis of the results of elections or consultations to be held in Macau. Officials holding principal posts will be nominated by the chief executive of the Macau Special Administrative Region for appointment by the Central People's Government. Public servants 8including police) of Chinese nationality and Portuguese and other foreign nationalities previously serving in Macau may remain in employment. Portuguese and other foreign nationals may be appointed or employed to hold certain public posts in the

News
Photos
Speeches
Important Announcements
Ceremonies and Events
Pooling Arrangements
Official Documents

 

Macau Special Administrative Region.

iv. The current social and economic systems in Macau will remain unchanged and so will the life-style. The laws currently in force in Macau will remain basically unchanged. All rights and freedoms of the inhabitants and other persons in Macau, including those of the person, of speech, of the press, of assembly, of association, of travel, and movement, of strike, of choice of occupation, of academic research, of religion and belief, of communication and the ownership of property will be ensured by law in the Macau Special Administrative Region.

v. The Macau Special Administrative Region will on its own decide policies in the fields of culture, education, science and technology and protect cultural relics in Macau according to law.

In addition to Chinese, Portuguese may also be used in organs of Government and in the legislature and the courts in the Macau Special Administrative Region.

vi. The Macau Special Administrative Region may establish mutually beneficial economic relations with Portugal and other countries. Due regard will be given to the economic interests of Portugal and other countries in Macau. The interests of the inhabitants of Portuguese descent in Macau will be protected by law.

vii. Using the name "Macau, China", the Macau Special Administrative Region may on its own maintain and develop economic and cultural relations and in this context conclude agreements with states, regions and relevant international organisations.

The Macau Special Administrative Region Government may on its own issue travel documents for entry into and exit from Macau.

viii. The Macau Special Administrative Region will remain a free port and a separate customs territory in order to develop its economic activities. There will be free flow of capital. The Macau Pataca, as the legal tender of the Macau Special Administrative Region, will continue to circulate and remain freely convertible.

ix. The Macau Special Administrative Region will continue to have independent finances. The Central People's Government will not levy taxes on the Macau Special Administrative Region.

x. The maintenance of public order in the Macau Special Administrative Region will be the responsibility of the Macau Special Administrative Region Government.

xi. Apart from displaying the national flag and national emblem of the people's Republic of China, the Macau Special Administrative Region may use a regional flag and emblem of its own.

xii. The above-stated basic policies and the elaboration of them in Annex I to this Joint Declaration will be stipulated in a Basic Law of the Macau Special Administrative Region of the people's Republic of China by the national people's Congress

of the people's republic of china, and they will remain unchanged for 50 years.

3. The Government of the People's Republic of China and the Government of the Republic of Portugal declare that, during the transitional period between the date of the entry into enforce of this Joint Declaration and 19 December 1999, the Government of the Republic of Portugal will be responsible for the administration of Macau. The Government of the Republic of Portugal will continue to promote the economic growth of Macau and maintain its social stability, and the Government of the People's Republic of China will give its cooperation in this connection.

4. The Government of the People's republic of China and the Government of the Republic of Portugal declare that in order to ensure the effective implementation of this Joint Declaration and create appropriate conditions for the transfer of Government in 1999, a Sino-Portuguese Joint Liaison group will be set up when this Joint Declaration enters into force, and that it will be established and will function in accordance with the relevant provisions of Annex II to this Joint Declaration.

5. The Government of the people's Republic of China and the Government of the Republic of Portugal declare that land leases in Macau and other related matters will be deal with in accordance with the relevant provisions of the Annexes to this Joint declaration.

6. The Government of the People's Republic of China and the Government of the Republic of Portugal agree to implement all the preceding declarations and the Annexes which are a component part of the joint declaration.

7. This Joint Declaration and its Annexes shall enter into force on the date of the exchange of instruments of ratification, which shall take place in Beijing. This Joint Declaration and its Annexes shall be equally binding.

Done in duplicate at Beijing on April 15, 1987 in the Chinese and Portuguese languages, both texts being equally authentic.

For the Government of theFor the Government of the People's Republic of China Republic of Portugal (Signed) Zhao Ziyang(Signed) Anabal Cavaco Silva

## ANNEX I

### ELABORATION BY THE GOVERNMENT OF THE PEOPLE'S REPUBLIC OF CHINA OF ITS BASIC POLICIES REGARDING MACAU

The Government of the People's republic of China elaborates the basic policies of the People's Republic of China regarding Macau as set out in paragraph 2 of the joint Declaration of the Government of the people's Republic of China and the Government of the Republic of Portugal on the Question of Macau as follows:

I

The Constitution of the People's republic of China stipulates in Article 31 that "the state may establish special administrative regions when necessary. The systems to be instituted in special administrative regions shall be prescribed by laws enacted by the National People's Congress in the light of the specific conditions". In accordance with this Article, the People's Republic of China shall, upon the resumption of the exercise of

sovereignty over Macau on 20 December 1999, establish the Macau Special Administrative Region of the People's Republic of China. The national People's Congress of the People's Republic of China shall enact and promulgate a Basic law of the Macau Special Administrative Region of the People's Republic of China (hereinafter referred to as the Basic Law) in accordance with the Constitution of the People's Republic of China, stipulating that after the establishment of the Macau Special Administrative Region the socialist system and socialist policies shall not be practised in the Macau Special Administrative Region and that the current social and economic systems and life-style in Macau shall remain unchanged for 50 years.

The Macau Special Administrative Region shall be directly under the authority of the Central People's Government of the People's Republic of China, and shall enjoy a high degree of autonomy, except in foreign and defence affairs which are the responsibilities of the Central People's Government. The Macau Special Administrative Region shall be vested with executive, legislative and independent judicial power, including that of the final adjudication. The Central People's Government shall authorise the Macau Special Administrative Region to conduct on its own those external affairs specified in Section VIII of this Annex.

II

The executive power of the Macau Special Administrative Region shall be vested in the Government of the Macau Special Administrative Region. The Government of the Macau Special Administrative Region shall be composed of local inhabitants. The chief executive of the Macau Special Administrative Region shall be appointed by the Central People's Government on the basis of the results of elections or consultations to be held in Macau. Officials holding principal posts (equivalent to Assistant-Secretaries, procurator-general and principal officer of the police service) shall be nominated by the chief executive of the Macao Special Administrative Region for appointment by the Central People's Government.

The executive authorise shall abide by the law and shall be accountable to the legislature.

III

The legislative power of the Macau Special Administrative Region shall be vested in the legislature of the Macau Special Administrative Region. The legislature shall be composed of local inhabitants, and the majority of its members shall be elected.

After the establishment of the Macau Special Administrative Region, the laws, decrees, administrative regulations and other normative acts previously in force in Macau shall be maintained, save for whatever therein may contravene the Basic Law or subject to any amendment by the Macau Special Administrative Region legislature.

The legislature of the Macau Special Administrative Region may enact laws in accordance with the provisions of the Basic Law and legal procedures, and such laws shall be reported to the Standing Committee of the National People's Congress of the People's Republic of China for record. Laws enacted by the legislature of the Macau Special Administrative Region which are in accordance with the Basic Law and legal procedures shall be regarded as valid.

The legal system of the Macau Special Administrative Region shall consist of the basic Law, the laws previously in force in Macau and the laws enacted by the Macau Special Administrative Region as above.

IV

Judicial power in the Macau Special Administrative Region shall be vested in the courts of the Macau Special Administrative Region. The power of final adjudication shall be exercised by the court of final appeal in the Macau Special Administrative Region. The courts shall exercise judicial power independently and free from any interference, and shall be subordinated only to the law. The judges shall enjoy the immunities appropriate to the performance of their functions.

Judges of the Macau Special Administrative Region courts shall be appointed by the chief executive of Macau Special Administrative Region acting in accordance with the recommendation of the independent commission composed of local judges, lawyers and noted public figures. Judges shall be chosen by reference to their professional qualifications. Qualified judges of foreign nationalities may also be invited to serve as judges in the Macau Special Administrative Region. A judge may only be removed for inability to discharge the functions of his office, or for behaviour incompatible with the post he holds, by the chief executive acting in accordance with the recommendation of a tribunal appointed by the president of the court of final appeal, consisting of not fewer than three local judges. The removal of judges of the court of final appeal shall be decided upon by the chief executive in accordance with the recommendation of a review committee consisting of members of the Macau Special Administrative Region Legislature. The appointment and removal of judges of the court of final appeal shall be reported to the Standing Committee of the National People's Congress for the record.

The prosecuting authority of the Macau Special Administrative Region shall exercise procuratorial functions as vested by law independently and free from any interference.

The system previously in force in Macau for appointment and removal of supporting members of the judiciary shall be maintained.

On the basis of the system previously operating in Macau, the Macau Special Administrative Region Government shall make provisions for local lawyers and lawyers from outside Macau to practise in the Macau Special Administrative Region.

The Central People's Government shall assist or authorise the Macau Special Administrative Region Government to make appropriate arrangements for reciprocal juridical assistance with foreign states.

**V**

The Macau Special Administrative Region shall, according to law, ensure the rights and freedoms of the inhabitants and other persons in Macau as provided for by the laws previously in force in Macau, including freedom of the person, of speech, of the press, of assembly, of demonstration, of association (e.g., to form and join non-official associations), to form and join trade unions, of travel and movement, of choice of occupation and work, of strike, of religion and belief, of education and academic research; inviolability of the home and of communication, and the right to have access to law and court; rights concerning the ownership of private property and of enterprises and their transfer and inheritance, and to obtain appropriate compensation for lawful deprivation paid without undue delay; freedom to marry and the right to form and raise a family freely.

The inhabitants and other persons in the Macau Special Administrative Region shall all be equal before the law, and shall be free from discrimination, irrespective of nationality, descent, sex, race, language, religion, political or ideological belief, educational level, economic status or social conditions.

The Macau Special Administrative Region shall prospect, according to law,

the interests of residents of Portuguese descent in Macau and shall respect their customs and cultural traditions.

Religious organisation and believers in the Macau Special Administrative Region may carry out activities as before for religious purposes and within the limits as prescribed by law, and may maintain relations with religious organisations and believers outside Macau. Schools, hospitals and charitable institutions attached to religious organisations may continue to operate as before. The relationship between religious organisations in the Macau Special Administrative Region and those in other parts of the People's Republic of China shall be based on the principles of non-subordination, non-interference and mutual respect.

## VI

After the establishment of the Macau Special Administrative Region, public servants (including police) of Chinese nationality And Portuguese and other foreign nationalities previously serving in Macau may all remain in employment and continue their service with pay, allowances and benefits no less favourable than before. Those of the above-mentioned public servants who have retired after the establishment of the Macau Special Administrative Region shall, in accordance with regulations currently in force, be entitled to pensions and allowances on terms no less favourable than before, and irrespective of their nationality or place of residence.

The Macau Special Administrative Region may appoint Portuguese and other foreign nationals previously serving in the public service in Macau or currently holding Permanent Identity Cards of the Macau Special Administrative Region to public posts (except certain principal official posts). The Macau Special Administrative Region may also invite Portuguese and other foreign nationals to serve as advisers or hold professional and technical posts. The Portuguese and other foreign nationals holding public posts in the Macau Special Administrative Region shall be employed only in their individual capacities and shall be responsible exclusively to the Macau Special Administrative Region.

The appointment and promotion of public servants shall be on the basis of qualifications, experience and ability. Macau's previous system of employment, discipline, promotion and normal rise in rank for the public service shall remain basically unchanged.

## VII

The Macau Special Administrative Region shall on its own decide policies in the fields of culture, education, science and technology, such as policies regarding the languages of instruction (including Portuguese) and the system of academic qualifications and the recognition of academic degrees. All educational institutions may remain in operation and retain their autonomy. They may continue to recruit teaching and administrative staff and use teaching materials from outside Macau. Students shall enjoy freedom to pursue their education outside the Macau Special Administrative Region. The Macau Special Administrative Region shall protect cultural relics in Macau according to law.

## VIII

Subject to the principle that foreign affairs are the responsibility of the Central People's Government, the Macau Special Administrative Region may on its own, using the name "Macau, China", maintain and develop relations and conclude and implement agreements with states, regions and revelant international or regional organisations in appropriate fields, such as the economy, trade, finance, shiping, communications, tourism, culture, science and technology and sports. Representatives of the Macau Special Administrative Region Government may participate, as members of the delegations of the Government of the People's Republic of China, in

international organisations or conferences in appropriate fields limited to states and affecting the Macau Special Administrative Region, or may attend in such other capacity as may be permitted by the Central People's Government and the organisation or conference concerned, and may express their views in the name of "Macau, China". The Macau Special Administrative Region may, using the name "Macau, China", participate in international organisations and conferences not limited to states.

Representatives of the Macau Special Administrative Region Government may participate, as members of delegations of the Government of the People's Republic of China, in negotiations conducted by the Central People's Government at the diplomatic level directly affecting the Macau Special Administrative Region.

The application to the Macau Special Administrative Region of international agreements to which the People's Republic of China is or becomes a party shall be decided by the Central People's Government, in accordance with the circumstances of each case and the needs of Macau Special Administrative Region and after seeking the views of the Macau Special Administrative Region Government. International agreements to which the People's Republic of China is not a party but which are implemented in Macau may remain implemented in the Macau Special Administrative Region. The Central People's Government shall, according to the circumstances and the needs, authorise or assist the Macau Special Administrative Region Government to make appropriate arrangements for the application to the Macau Special Administrative Region of other relevant international agreements.

The Central People's Government shall, in accordance with the circumstances of each case and the needs of the Macau Special Administrative Region, take steps to ensure that the Macau Special Administrative Region shall continue to retain its status in an appropriate capacity in those international organisations of which the People's Republic of China is a member and in which Macau participates in one capacity or another. The Central People's Government shall, according to the circumstances and the needs, facilitate the continued participation of the Macau Special Administrative Region in an appropriate capacity in those international organisations in which Macau is a participant in one capacity or another, but of which the People's Republic of China is not a member.

Foreign consular and other official or semi-official missions may be established in the Macau Special Administrative Region with the approval of the Central People's Government. Consular and other official missions established in Macau by states which have established formal diplomatic relations with the People's Republic of China may be maintained. According to the circumstances of each case, consular and other official missions in Macau of states having no formal diplomatic relations with the People's Republic of China may either be maintained or changed to semi-official missions. States not recognised by the People's Republic of China can only establish non-governmental institutions.

The Republic of Portugal may establish a Consulate-General in the Macau Special Administrative Region.

## IX

The following categories of persons shall have the right of abode in Macau Special Administrative Region and be qualified to obtain Permanent Identity Cards of the Macau Special Administrative Region:

- the Chinese's nationals who were born or who have ordinarily resided in Macau before or after the establishment of the Macau Special Administrative Region for a continuous period of 7 years or more, and persons of Chinese nationality born outside Macau of

such Chinese nationals;

- the Portuguese who were born in Macau or who have ordinarily resided in Macau before or after the establishment of the Macau Special Administrative Region for a continuous period of 7 years or more and who, in either case, have taken Macau as their place of permanent residence; and

- the other persons who have ordinarily resided in Macau for a continuous period of 7 years or more and have taken Macau as their place of permanent residence before or after the establishment of the Macau Special Administrative Region, and persons under 18 years of age who were born of such persons in Macau before or after the establishment of the Macau Special Administrative Region.

The Central People's Government shall authorise the Macau Special Administrative Region Government to issue, in accordance with the law, passports of the Macau Special Administrative Region of the People's Republic of China to all Chinese nationals who hold Permanent Identity Cards of the Macau Special Administrative Region.

The above passports and travel documents of the Macau Special Administrative Region shall be valid for all states and regions and shall record the holder's right to return to the Macau Special Administrative Region.

For the purpose of travelling to and from the Macau Special Administrative Region, inhabitants of the Macau Special Administrative Region may use travel documents issued by the Macau Special Administrative Region Government, or by other competent authorities of the People's Republic of China, or of other states. Holders of Permanent Identity Cards of the Macau Special Administrative Region may have this fact stated in their travel documents as evidence that the holders have the right of abode in the Macau Special Administrative Region.

Entry into the Macau Special Administrative Region by inhabitants of other parts of China shall be regulated in an appropriate way.

The Macau Special Administrative Region may apply immigration controls on entry into, stay in and departure from the Macau Special Administrative Region by persons from foreign states and regions.

Unless restrained by law, holders of valid travel documents shall be free to leave the Macau Special Administrative Region without special authorisation.

The Central People's Government shall assist or authorise the Macau Special Administrative Region Government to negotiate and conclude visa abolition agreements with the states and regions concerned.

**X**

The Macau Special Administrative Region shall decide its economic and trade policies on its own. As a free port and a separate customs territory, it shall maintain and develop economic and trade relations with all states and regions and continue to participate in relevant international organisations and international agreements, such as the General Agreement on Tariffs and Trade and agreements regarding international trade in textiles. Export quotas, tariff preferences and other similar arrangement obtained by the Macau Special Administrative Region shall be enjoyed exclusively by the Macau Special Administrative Region. The Macau Special Administrative Region shall have authority to issue its owns certificates of origin for products manufactured locally, in accordance with prevailing rules of origin.

The Macau Special Administrative Region shall protect foreign investments in accordance with the law.

The Macau Special Administrative Region may, as necessary, establish official and semi-official economic and trade missions in foreign countries, reporting the establishment of such missions to the Central People's Government for the record.

## XI

After the establishment of the Macau Special Administrative Region, the monetary and financial systems previously practised in Macau shall remain basically unchanged. The Macau Special Administrative Region shall decide its monetary and financial policies on its own. It shall safeguard the free operation of the financial institutions and the free flow of capital within, into and out of the Macau Special Administrative Region. No exchange control policy shall be applied in the Macau Special Administrative Region.

The Macau Pataca, as the legal tender of the Macau Special Administrative Region, shall continue to circulate and remain freely convertible. The authority to issue Macau currency shall be vested in the Macau Special Administrative Region Government. The Macau Special Administrative Region Government may authorise designated banks to perform or continue to perform the function of its agents in the issuance of Macau currency. Macau currency bearing references inappropriate to the status of Macau as a special administrative region of the People's Republic of China shall be progressively replaced and withdrawn from circulation.

## XII

The Macau Special Administrative Region shall draw up on its own its budget and taxation policy. The Macau Special Administrative Region shall report its budget and final accounts to the Central People's Government for the record. The Macau Special Administrative Region shall use its financial revenues exclusively for its own purposes and they shall not be handed over to the Central People's Government. The Central People's Government shall not levy taxes on the Macau Special Administrative Region.

## XIII

The Central People's Government shall be responsible for the defence of the Macau Special Administrative Region.

The maintenance of public order in the Macau Special Administrative Region shall be the responsibility of the Macau Special Administrative Region Government.

## XI

Legal leases of land granted or decided upon before the establishment of the Macau Special Administrative Region and extending beyond 19 December 1999, and all rights in relation to such leases shall be recognised and protected according to law by the Macau Special Administrative Region. Land leases approved or renewed after the establishment of the Macau Special Administrative Region shall be dealt with in accordance with the relevant land laws and policies of the Macau Special Administrative Region.

## ANNEX II

## ARRANGEMENTS FOR THE TRANSITIONAL PERIOD

In order to ensure the effective implementation of the Joint Declaration of the Government of the People's Republic of China and the Government of

the Republic of Portugal on the Question of Macau and create appropriate conditions for the transfer of Government of Macau, the Government of the People's Republic of China and the Government of the Republic of Portugal have agreed to continue their friendly cooperation during the transitional period between the date of the entry into force of the Joint Declaration and 19 December 1999.

For this purpose, the Government of People's Republic of China and the Government of Republic of Portugal have agreed to set up a Sino-Portuguese Joint Liaison Group and a Sino-Portuguese Land Group in accordance with the provisions of paragraphs 3, 4, and 5 of the Joint Declaration.

    I.   Sino-Portuguese Joint Liaison Group

1. The Joint Liaison Group shall be an organ for liaison, consultation and exchange of information between the two Governments. It shall not interfere in the administration of Macau, nor shall it have any supervisory role over that administration.

2. The functions of the Joint Liaison Group shall be:

    a.  to conduct consultations on the implementation of the Joint Declaration and its Annexes;

    b.  to exchange information and conduct consultations on matters relating to the transfer of Government of Macau in 1999;

    c.  to conduct consultations on actions to be taken by the two Governments to enable the Macau Special Administrative Region to maintain and develop external economic, cultural and other relations;

    d.  to exchange information and conduct consultations on other subjects as may be agreed by the two sides.

Matters on which there is disagreement in the Joint Liaison Group shall be referred to the two Governments for solution through consultations.

3. Each side shall designate a leader of ambassadorial rank and four other members of the group. Each side may also designate experts and supporting staff as required, whose number shall be determined through consultations.

4. The Joint Liaison Group shall be established on the entry into force of the Joint Declaration and shall start work within three months after its establishment. It shall meet in Beijing, Lisbon and Macau alternately in the first year of work. Thereafter, it shall have its principal base in Macau. The Joint Liaison Group shall continue its work until 1 January 2000.

5. Members, experts and supporting staff of the Joint Liaison Group shall enjoy diplomatic privileges and immunities or such privileges and immunities as are compatible with their status.

6. The working and organisational procedures of the Joint

Liaison Group shall be agreed between the two sides through consultations within the guidelines laid down in this Annex. The work of the Joint Liaison Group shall remain confidential unless otherwise agreed.

II.    Sino-Portuguese Land Group

1. The two Governments have agreed that, with effect from the entry into force of the Joint Declaration, land leases in Macau and related matters shall be dealt with in accordance with the following provisions:

     a. Leases of land granted previously by the Portuguese Macau Government that expire before 19 December 1999, except temporary leases and leases for special purposes, may, in accordance with the relevant laws and regulations currently in force, be extended for a period expiring not later than 19 December 2049, with a premium to be collected.

     b. From the entry into force of the Joint Declaration until 19 December 1999 and in accordance with the relevant laws and regulations currently in force, new leases of land may be granted by the Portuguese Macau Government for terms expiring not later than 19 December 2049, with a premium to be collected.

     c. The total amount of new land, including fields reclaimed from the sea and undeveloped land to be granted under section II, paragraph 1(b) of this Annex shall be limited to 20 hectares a year. The Land group may, on the basis of the proposals of the Portuguese Macau Government, examine any change in the above-mentioned quota and make decisions accordingly.

     d. From the entry into force of the Joint Declaration until 19 December 1999, all incomes obtained by the Portuguese Macau Government from granting new releases and renewing leases shall, after deduction on the average cost of land production, be share equally between the Portuguese Macau Government and the future Government of the Macau Special Administrative Region. All the income so obtained from land by the Portuguese Macau Government, including the amount of the above mentioned deduction, shall be used for financial landing development and public works in Macao. The Macau Special Administrative Region Governments share of land' income shall serve as a reserve fund of the Government of the Macau Special Administrative Region and shall be deposited in banks incorporated in Macao and, if necessary, may be used by the Portuguese Macau Government for land development and public works in Macau during the transitional period with the endorsement of the Chinese side.

2. The Sino-Portuguese Land Group shall be an organ for handling land leases in Macau and related matters on behalf of the two Governments.

3. The functions of the Land Group shall be:

a. to conduct consultations on the implementation of Section II of this Annex:

b. to monitor the amount and terms of land granted, and division and use of income from land granted in accordance with the provisions of Section II, paragraph 1 of this Annex;

c. to examine the proposals of the Portuguese Macau Government for drawing on the Macau Special Administrative Region Governments share of income from land and to make recommendations to the Chinese side for decision.

Matters on which there is disagreement in the Land Group shall be referred to the two Governments for solution through consultations.

4. Each side shall designate three members of the Land Group. Each side may also designate experts and supporting staff as required, whose number shall be determined through consultations.

5. Upon the entry into force of the joint declaration, the Land Group shall be established and shall have its principal base in Macau. The Land Group shall continue its work until 19 December 1999.

6. Members, experts and supporting staff of the Land Group shall enjoy diplomatic privileges and immunities or other privileges and immunities as are compatible with their status.

7. The working and organisational procedures of the Land group shall be agreed between the two sides trough consultations, within laid down in this Annex.

## MEMORANDA EXCHANGED BETWEEN THE CHINESE AND PORTUGUESE SIDES

## MEMORANDUM

In connection with the Joint Declaration of the Government of the People's Republic of China and the Government of the Republic of Portugal on the Question of Macau signed this day, the Government of the People Republic of China declares:

The inhabitants in Macau who come under provisions of the Nationality Law of People's Republic of China, whether they are holders of the Portuguese travel or identity documents or not, have Chinese citizenship. Taking account of the historical background of Macau and its realities, the competent authorities of the Government of the People's Republic of China will permit Chinese nationals in Macau previously holding Portuguese travel documents to continue to use these documents for travelling to other states and regions after the establishment of the Macau Special Administrative Region. The above-mentioned Chinese nationals will not be entitled to Portuguese consular protection in the Macau Special Administrative Region and other parts of the People's Republic of China.

Beijing, April 13, 1987.

Case 1:04-cv-10357-RCL    Document 205-3    Filed 07/30/2008    Page 24 of 80
Page 13 of 13

MEMORANDUM

In connection with the Joint Declaration of the Government of the Republic of Portugal and the Government of the People's Republic of China on the Question of Macau signed this day, the Government of the Republic of Portugal declares:

In conformity with the Portuguese legislation, the inhabitants is Macau who, having Portuguese citizenship, are holders of a Portuguese passport on 19 December 1999 may continue to use it after this date. No person may acquire Portuguese citizenship as from 20 December 1999 by virtue of his or her connection with Macau.

Beijing, April 13, 1987.

**The Macau Handover Ceremony Coordination Office** 



# Handover Ceremony

# *Official Documents*



THE BASIC LAW OF THE MACAO SPECIAL ADMINISTRATIVE REGION
OF THE PEOPLE'S REPUBLIC OF CHINA
(Adpoted by the Eighth National People's Congress at its First Session on
31 March 1993)

**Decreto do Presidente da Repnblica Popular da China**

**No. 3**

I hereby promulgate the Basic Law of the Macao Special Administrative
Region of the People' s Republic of China, including Annex I, Method for the
Selection of the Chief Executive of the Macao Special Administrative
Region, Annex II, Method for the Formation of the Legislative Council of the
Macao Special Administrative Region, Annex III, National Laws to Be
Applied in the Macao Special Administrative Region, and designs of the
regional flag and regional emblem of the Macao Special Administrative
Region, which was adopted at the First Session of the Eighth National
People' s Congress of the People ' s Republic of China on 31 March 1993
and shall be put into effect as of 20 December 1999.

**Jiang Zemin**
President of the People's Republic of China
31 March 1993

News
Photos
Speeches
Important
Announcements
Ceremonies and Events
Pooling Arrangements
Official Documents

 

## Preamble

Macao, including the Macao Peninsula, Taipa Island and Coloane Island,
has been part of the territory of China since ancient times; it was gradually
occupied by Portugal after the mid 16th century. On 13 April 1987, the
Chinese and Portuguese Governments signed the Joint Declaration on the
Question of Macao, affirming that the Government of the People' s Republic
of China will resume the exercise of sovereignty over Macao with effect from
20 December 1999, thus fulfilling the long cherished common aspiration of
the Chinese people for the recovery of Macao.

Upholding national unity and territorial integrity, contributing to social
stability and economic development, and taking account of its history and
realities, the People' s Republic of China has decided that upon China's
resumption of the exercise of sovereignty over Macao, a Macao Special
Administrative Region will be established in accordance with the provisions
of Article 31 of the Constitution of the People's Republic of China, and that
under the principle of " one country, two systems", the socialist system and
policies will not be practised in Macao. The basic policies of the People's
Republic of China regarding Macao have been elaborated by the Chinese
Government in the Sino-Portuguese Joint Declaration.

In accordance with the Constitution of the People's Republic of China, the
National People's Congress hereby enacts the Basic Law of the Macao
Special Administrative Region of the People's Republic of China,
prescribing the systems to be practised in the Macao Special Administrative
Region, in order to ensure the implementation of the basic policies of the
People's Republic of China regarding Macao.

# CONTENTS

Chapter I        General Principles

Chapter II       Relationship between the Central Authorities and the
                 Macao Special Administrative Region

Chapter III      Fundamental Rights and Duties of the Residents

Chapter IV       Political Structure

Chapter V        Economy

Chapter VI       Culture and Social Affairs

Chapter VII      External Affairs

Chapter VIII     Interpretation and Amendment of the Basic Law

Chapter IX       Supplementary Provisions

ANNEX I          Method for the Selection of the Chief Executive of the
                 Macao Special Administrative Region

ANNEX II         Method for the Formation of the Legislative Council of the
                 Macao Special Administrative Region

ANNEX III        National Laws to Be Applied in the Macao Special
                 Admrnistrative Region

**The Macau Handover Ceremony Coordination Office**   

N.° 39 — 24-9-2001   BOLETIM OFICIAL DA REGIÃO ADMINISTRATIVA ... — I SÉRIE

**3**

澳 門 特 別 行 政 區

REGIÃO ADMINISTRATIVA ESPECIAL
DE MACAU

Ang ⑫  3

澳門特別行政區

第 16/2001 號法律

娛樂場幸運博彩經營法律制度

立法會根據《澳門特別行政區基本法》第七十一條（一）項
及（三）項，制定本法律。

第一章
一般規定

第一條
本法律之範圍及標的

一、本法律訂定在澳門特別行政區經營娛樂場幸運博彩之法
律制度。

二、娛樂場幸運博彩經營法律制度之主要標的為確保：

（一）娛樂場幸運博彩之適當經營及操作；

（二）參與娛樂場幸運博彩監察、管理及操作之人為具適當資
格任此等職務及承擔此等責任之人；

（三）娛樂場幸運博彩之經營及操作在公正、誠實及不受犯罪
影響下進行；

（四）澳門特別行政區從娛樂場運作收取稅項之利益受到應有
保障；及

（五）促進澳門特別行政區之旅遊、社會穩定和經濟發展。

三、非法博彩根據特別法予以刑事處罰。

第二條
定義

一、就本法律而言：

（一）互相博彩——以動物之速度競賽或體育賽事作為投注對

REGIÃO ADMINISTRATIVA ESPECIAL
DE MACAU

Lei n.° 16/2001

Regime jurídico da exploração de jogos de fortuna
ou azar em casino

A Assembleia Legislativa decreta, nos termos das alíneas 1) e
3) do artigo 71.° da Lei Básica da Região Administrativa Especial
de Macau, para valer como lei, o seguinte:

CAPÍTULO I

DISPOSIÇÕES GERAIS

Artigo 1.°

Âmbito e objectivos da lei

1. A presente lei define o regime jurídico da exploração de
jogos de fortuna ou azar em casino na Região Administrativa
Especial de Macau.

2. O regime jurídico da exploração de jogos de fortuna ou azar
em casino tem como objectivos, em especial, assegurar:

1) A exploração e operação adequadas dos jogos de fortuna
ou azar em casino;

2) Que aqueles que estão envolvidos na fiscalização, gestão e
operação dos jogos de fortuna ou azar em casino são pes-
soas idóneas para o exercício dessas funções e para a assun-
ção dessas responsabilidades;

3) Que a exploração e a operação dos jogos de fortuna ou
azar em casino são realizadas de forma justa, honesta e li-
vre de influência criminosa;

4) Que o interesse da Região Administrativa Especial de Ma-
cau na percepção de impostos resultantes do funcionamento
dos casinos é devidamente protegido; e

5) O fomento do turismo, a estabilidade social e o desenvolvi-
mento económico na Região Administrativa Especial de
Macau.

3. Lei especial criminaliza o jogo ilícito.

Artigo 2.°

Definições

1. Para os efeitos da presente lei, entende-se por:

1) Apostas mútuas — um sistema de apostas numa corrida de
animais em velocidade ou num evento desportivo no qual

象，而當中的跟賭者在扣除佣金、百月及稅項後，按個別投注額之比例互相分取被改往金額之博彩；

（二）娛樂場——經澳門特別行政區政府許可及定為開展此類娛樂之地點及場所；

（三）幸運博彩——結果係不確定而博彩者純粹或主要是靠運氣之博彩；

（四）互動博彩——同時以以下列方式進行之幸運博彩：

　　（a）按有關規則之規定，給予或贏取一項金錢或其他具價值之獎品；

　　（b）博彩者透過電訊工具如電話、電話傳真、互聯網、數據網或錄像訊號和數碼資料傳送而進入或參與博彩，並為此支付或同意支付金錢或其他價值；

　　（c）該博彩亦在澳門各娛樂場提供或獲核准之幸運博彩或電動或機動博彩機之博彩。

（五）向公眾提供之博彩活動——僅靠運氣贏出之博彩活動，諸如彩票、獎券、烹波本及抽獎等；

（六）博彩中介人——在娛樂場推介幸運博彩者，其工作係給予博彩者各種便利，尤其是有關交通運輸、住宿、餐飲及消遣等，而收取由一承批公司支付之佣金或其他報酬。

二、"娛樂場"一詞僅可由經營幸運博彩之承批公司使用。

## 第三條
## 幸運博彩

一、凡非為澳門特別行政區之實體經營幸運博彩、以及電動或機動博彩機之博彩，必須經事先批給。

二、幸運博彩、以及電動或機動博彩機之博彩僅可在娛樂場內經營，但不影響第五條第三款之規定。

三、以下為獲准在娛樂場內經營之幸運博彩方式：

（一）百家樂；

（二）"跛路"百家樂；

（三）廿一點；

（四）廿五門；

---

os vencedores dividem entre si o total do montante apostado, depois de deduzidas as comissões, taxas e impostos na proporção do montante individualmente apostado;

2) Casinos — os locais e recintos autorizados e classificados como tal pelo Governo da Região Administrativa Especial de Macau;

3) Jogos de fortuna ou azar — aqueles em que o resultado é contingente por depender exclusiva ou principalmente da sorte do jogador;

4) Jogos interactivos — os jogos de fortuna ou azar nos quais:

a) Um prémio em dinheiro ou em outro valor é oferecido ou pode ser ganho nos termos das respectivas regras;

b) Um jogador entra ou participa no jogo através de meios de telecomunicação, nomeadamente através de telefones, telefaxes, acesso via «internet», redes de dados, transmissão de sinais de vídeo ou de dados digitais, e para tal faz, ou concorda em fazer, pagamentos em dinheiro ou em qualquer outro valor; e

c) O jogo é igualmente oferecido ou aprovado como jogo de fortuna ou azar ou como jogo de máquina eléctrica ou mecânico, nos casinos de Macau;

5) Operações oferecidas ao público — aquelas em que a esperança do ganho reside exclusivamente na sorte, tais como lotarias, rifas, tômbolas e sorteios;

6) Promotores de jogo — os agentes de promoção de jogos de fortuna ou azar em casino, que exercem a sua actividade através da atribuição de facilidades a jogadores, nomeadamente no que respeita a transportes, alojamento, alimentação e entretenimento, recebendo uma comissão ou outra remuneração paga por uma concessionária.

2. O uso do termo «casino» fica reservado unicamente às concessionárias da exploração de jogos de fortuna ou azar.

## Artigo 3.º
## Jogos de fortuna ou azar

1. A exploração de jogos de fortuna ou azar, bem como de jogos de máquina eléctricos ou mecânicos, por entidade distinta da Região Administrativa Especial de Macau, é sempre condicionada a prévia concessão.

2. Os jogos de fortuna ou azar, bem como os jogos de máquina eléctricos ou mecânicos, só podem ser explorados em casinos, sem prejuízo do disposto no n.º 3 do artigo 5.º.

3. Nos casinos é autorizada a exploração dos seguintes tipos de jogos de fortuna ou azar:

1) Bacará;

2) Bacará «chemin de fer»;

3) «Black Jack» ou «Vinte e um»;

4) «Boule»;

BOLETIM OFICIAL DA REGIÃO ADMINISTRATIVA ... 1039

（五）　花旗骰；

（六）　牌九；

（七）　十二號碼；

（八）　番攤；

（九）　搏牛；

（十）　魚蝦蟹投注；

（十一）　十三張撲克；

（十二）　麻雀；

（十三）　麻雀百家樂；

（十四）　麻雀牌九；

（十五）　骰子機；

（十六）　牌九；

（十七）　小牌九；

（十八）　沙普三公；

（十九）　五張牌撲克；

（二十）　輪盤；

（二十一）　十一支或十二張牌博彩；

（二十二）　九家樂；

（二十三）　台灣牌九；及

（二十四）　三公百家樂。

四、任何其他醫業之幸運博彩，須由一間或一間以上承批公司提出申請且在博彩監察及協調局發表意見後，由經濟財政司司長以對外規範性批示許可。

五、幸運博彩之施行規則，經博彩監察及協調局建議，由經濟財政司司長以對外規範性批示核准。

六、在娛樂場內不得經營互相博彩，亦不得經營向公眾提供之博彩活動。

七、在例外情況下，經濟財政司司長得以對外規範性批示許可承批公司經營向公眾提供之博彩活動，在此情況下批給合同得予以修訂，亦得由雙方簽訂合同附錄。

八、尚可依據法律規定在娛樂場內經營電動或機動博彩機，包括"角子機"之博彩。

第四條

互動博彩

一、經營娛樂場幸運博彩之承批公司不得經營任何形式之互動博彩。

5) «Craps»;

6) «Cussec»;

7) «Doze números»;

8) «Fantan»;

9) Jogo Chinês de Dados;

10) Jogo de Dados Peixe-Camarão-Caranguejo;

11) Jogo de 13 Cartas;

12) «Mahjong»;

13) «Mahjong-Bacará»;

14) «Mahjong-Pai Kao»;

15) «Pachinko»;

16) «P'ai Kao»;

17) «P'ai Kao de 2 Pedras»;

18) «Poker de 3 Cartas»;

19) «Poker de 5 cartas»;

20) Roleta;

21) «Sap-I-Chi» ou Jogo de 12 Cartas;

22) «Super Pan 9»;

23) «Taiwan- P'ai Kao»; e

24) «3-Card Bacará Game».

4. Quaisquer outros tipos de jogos de fortuna ou azar são autorizados por despacho regulamentar externo do Secretário para a Economia e Finanças, a requerimento de uma ou mais concessionárias e após parecer da Direcção de Inspecção e Coordenação de Jogos.

5. As regras de execução para a prática de jogos de fortuna ou azar são aprovadas por despacho regulamentar externo do Secretário para a Economia e Finanças, mediante proposta da Direcção de Inspecção e Coordenação de Jogos.

6. Nos casinos não podem ser exploradas as apostas mútuas, nem as operações oferecidas ao público.

7. A título excepcional, pode o Secretário para a Economia e Finanças, por despacho regulamentar externo, autorizar as concessionárias a explorar as operações oferecidas ao público, podendo, em tal caso, haver lugar a uma revisão do contrato de concessão, assim como à celebração entre as partes de adendas ao contrato.

8. Nos casinos podem ainda operar-se jogos de máquina eléctricos ou mecânicos, incluindo «slot machines», nos termos da lei.

Artigo 4.º

Jogos interactivos

1. As concessionárias da exploração de jogos de fortuna ou azar em casino não podem explorar nenhum jogo interactivo.

二、相對於娛樂場幸運博彩之經營批給而言，互動幸運博彩之經營係以另一獨立批給為之。

第五條

幸運博彩之經營地方

一、娛樂場幸運博彩之經營限於在政府批准之地方及場所範圍內進行。

二、上款所指之場所之特徵、所在地點及運作規則，由行政法規或在批給合同內訂定。

三、行政長官可批准在訂定之期間內：

（一）在澳門註冊之船舶或航空器當處於澳門特別行政區以外且在具旅遊利益之航綫上，於該等船舶或航空器上經營及進行任何方式之幸運博彩；

（二）在澳門國際機場離境之已清關區域內，經營及進行直接以籌碼或貨幣跟彩之博彩機之博彩。

四、上款（一）項所指之博彩，僅可批給予已在特區註冊之船舶或航空器之所有人或租賃人之商業企業主，或獲此等商業企業主許可之經營娛樂場幸運博彩之承批公司。

五、按第三款及第四款規定獲許可經營及進行之幸運博彩，須遵守由行政長官以行政法規訂定之特定規則及條件；該等規則及條件，除作出必需之配合外，均須依循本法律及有關經營娛樂場幸運博彩之其他適用法例的規定。

六、按第三款及第四款規定許可經營及進行之幸運博彩，不適用第七條至第十三條、第十六條至第二十條、第二十二條（七）項及（八）項、第三十一條及第四十九條至第五十二條之規定。

第六條

持續博彩區域

一、澳門特別行政區視為持續性博彩區域，而各娛樂場應全年運作。

二、僅在政府許可之例外情況下，承批公司方可中止某一間娛樂場之運作一日或一日以上。

三、在緊急情況下，尤其是在發生嚴重事故、災禍或自然災禍等威脅個人生命安全之情況，可免除上款所指之許可，而有關承批公司應盡快將娛樂場暫停運作一事通知政府。

---

2. As concessões para a exploração de jogos de fortuna ou azar interactivos são autónomas em relação às concessões para a exploração de jogos de fortuna ou azar em casino.

Artigo 5.º

Locais de exploração dos jogos de fortuna ou azar

1. A exploração de jogos de fortuna ou azar em casino é confinada aos locais e recintos autorizados pelo Governo.

2. As características, localização e normas de funcionamento dos recintos referidos no número anterior são definidas em Regulamento Administrativo ou nos contratos de concessão.

3. O Chefe do Executivo pode autorizar, por tempo determinado, a exploração e prática de:

1) Quaisquer jogos de fortuna ou azar a bordo de navio ou aeronave matriculado em Macau, quando fora da Região Administrativa Especial de Macau e operando em percursos de interesse turístico;

2) Jogos de máquina, pagando directamente em fichas ou moedas, na área desalfandegada das partidas internacionais do Aeroporto Internacional de Macau.

4. A exploração a que se refere a alínea 1) do número anterior apenas pode ser concedida aos empresários comerciais proprietários ou afretadores de navio ou aeronave matriculado na Região ou a concessionárias da exploração dos jogos de fortuna ou azar em casino, com autorização daqueles.

5. A exploração e prática dos jogos de fortuna ou azar que sejam autorizadas nos termos dos n.ºs 3 e 4 obedecem às regras e condições específicas a determinar pelo Chefe do Executivo, mediante Regulamento Administrativo, as quais seguem, com as adaptações estritamente necessárias, o preceituado na presente lei e demais legislação aplicável quanto à exploração dos jogos de fortuna ou azar em casino.

6. Não se aplica à exploração e prática dos jogos de fortuna ou azar que sejam autorizadas nos termos dos n.ºs 3 e 4 o disposto nos artigos 7.º a 13.º, 16.º a 20.º, 22.º, alíneas 7) e 8), 31.º e 49.º a 52.º.

Artigo 6.º

Zona de jogo contínuo

1. A Região Administrativa Especial de Macau é considerada zona de jogo contínuo, devendo os casinos funcionar durante todos os dias do ano.

2. Apenas em casos excepcionais e mediante autorização do Governo, pode uma concessionária suspender por um período de um ou mais dias a operação de um casino.

3. A autorização referida no número anterior é dispensada em situações urgentes, nomeadamente emergentes de acidente grave, catástrofe ou calamidade natural, que acarretem grave risco para a segurança das pessoas, devendo a respectiva concessionária dar conhecimento ao Governo, no mais curto prazo possível, da suspensão da operação do casino.

四、在不影響上款規定之情況下，承批公司可訂定娛樂場及在其內安排之博彩活動每日向公眾開放之時間。

五、承批公司之行政管理部門，如對其所管理之任一娛樂場之每日開放時間作任何更改，應至少提前三日通知博彩監察暨協調局。

## 第二章
## 批給制度

### 第一節
### 競投

#### 第七條
#### 批給制度

一、澳門特別行政區保有幸運博彩之經營權，僅可由在特區成立並獲得批給之股份有限公司從事，而有關批給係按照本法律規定以行政合同為之。

二、經營娛樂場幸運博彩之批給至多為三個。

#### 第八條
#### 公開競投

一、娛樂場幸運博彩之經營批給須預先進行公開競投。

二、公開競投可採用預先評定資格之限制競投。

#### 第九條
#### 開投

開投係以行政長官批示為之，其內應特別載明：

（一）是否須先經預先評定資格；

（二）開投之程序，包括接收競投書之日期；

（三）為獲接納為競投人而應繳之擔保金金額；

（四）批給制度，包括法律框架、將簽訂之批給合同之必要條款，並明確指出有關批給之最長期間；及

（五）接納競投之要件。

4. Sem prejuízo do disposto nos números anteriores, podem as concessionárias estabelecer um período diário de abertura ao público dos casinos e das actividades neles integradas.

5. A administração de uma concessionária deve comunicar à Direcção de Inspecção e Coordenação de Jogos, com três dias de antecedência, qualquer alteração ao período diário de abertura que esteja a ser praticado num casino por si operado.

## CAPÍTULO II
## DO REGIME DAS CONCESSÕES

### SECÇÃO I
### DO CONCURSO

#### Artigo 7.º
#### Regime da concessão

1. A exploração de jogos de fortuna ou azar é reservada à Região Administrativa Especial de Macau e só pode ser exercida por sociedades anónimas constituídas na Região, às quais haja sido atribuída uma concessão mediante contrato administrativo, nos termos da presente lei.

2. É de três o número máximo de concessões para a exploração de jogos de fortuna ou azar em casino.

#### Artigo 8.º
#### Concurso público

1. A atribuição das concessões para exploração de jogos de fortuna ou azar em casino é precedida de concurso público.

2. O concurso público pode ser limitado com prévia qualificação.

#### Artigo 9.º
#### Abertura de concurso

A abertura do concurso é feita por despacho do Chefe do Executivo e nele devem ser especificadas, designadamente:

1) A eventual precedência de pré-qualificação;

2) A tramitação processual do concurso, incluindo a data para recebimento das propostas;

3) Montante da caução a prestar pelos eventuais concorrentes para admissão a concurso;

4) O regime das concessões, incluindo o enquadramento legal, as cláusulas obrigatórias dos contratos de concessão a celebrar, com expressa menção ao prazo máximo previsto para as concessões; e

5) Requisitos de admissão ao concurso.

第十條

接納競投

Artigo 10.º

Admissão ao concurso

一、在特區成立、且其公司所營事業僅為經營�fortuna或azar或透過其他方式博彩之股份有限公司，方獲接納參與競投。

二、政府可在作出判給行為前，命令修改上款所指股份有限公司之章程、及全體或若干股東間所訂定之集公司協議內所載之任何規定。

三、在政府訂定之期限內，不依用上款規定須予以修改之股份有限公司章程或集公司協議內所載之規定者，等同於放棄競投。

四、每一競投人應提供一項為獲接納參與競投之擔保金，其金額由行政長官訂定，而該擔保金得以適當之銀行擔保代替。

五、在接收競投書所訂期限屆滿後放棄競投者，導致喪失已提供之擔保金。

六、在例外情況下，尚未符合第一款所定要件之獲承認具商譽之商業企業主可獲接納參與競投，但有關企業主必須按行政長官以批示定出之規定及期限，依據該等要件在特區成立股份有限公司；本條之規定適用於該等公司。

1. Apenas são admitidas a concurso sociedades anónimas constituídas na Região e cujo objecto social seja, exclusivamente, a exploração de jogos de fortuna ou azar ou outros jogos em casino.

2. O Governo pode, até ao acto de adjudicação, determinar a alteração de qualquer preceito constante dos estatutos das sociedades anónimas referidas no número anterior, bem como de acordos parassociais celebrados entre todos ou alguns accionistas.

3. Equivale a desistência do concurso a não alteração, dentro do prazo estipulado pelo Governo, de preceito constante dos estatutos das sociedades anónimas ou de acordos parassociais determinada nos termos do número anterior.

4. Cada concorrente deve prestar uma caução para admissão a concurso, de montante a determinar pelo Chefe do Executivo, a qual pode ser substituída por garantia bancária adequada.

5. A desistência do concurso, decorrido o prazo fixado para recebimento das propostas, importa a quebra da caução prestada.

6. Podem, excepcionalmente, ser admitidos a concurso empresários comerciais de reconhecida reputação que não preencham os requisitos previstos no n.º 1, desde que estes se obriguem a constituir na Região sociedade anónima com esses requisitos, em termos e prazos a constar de despacho do Chefe do Executivo, sendo-lhes aplicável as demais disposições do presente artigo.

第十一條

批給之判給

Artigo 11.º

Adjudicação das concessões

一、經營幸運博彩或azar或透過其他方式博彩之批給係經調行政長官在其載明理由之報告書內以批示臨時判給。

二、在簽署批給合同前，須以行政長官之批示作出判給之行為。

三、在批給合同簽署前可與競投公司進行磋商，以訂定附加條件，而在競投書內所載之每年溢價金金額不得在其後減少，但獲政府同意者，則不在此限。

四、對於已進行競投之一個或多個批給，行政長官如認為基於特區之利益，不宜判給者，有權不作判給。

五、批給合同應以載入財政局記錄簿冊之公證書形式訂立，並由政府代表特區作為簽署人。

六、批給合同須在《澳門特別行政區公報》第二組公佈。

1. A adjudicação provisória das concessões da exploração de jogos de fortuna ou azar em casino é feita mediante despacho do Chefe do Executivo, proferido sobre relatório fundamentado.

2. A outorga dos contratos de concessão é precedida do acto de adjudicação, que reveste a forma de despacho do Chefe do Executivo.

3. A outorga dos contratos de concessão pode ser precedida de negociações com as concorrentes com vista à estipulação de condições adicionais, não podendo o montante do prémio anual constante da proposta ser posteriormente reduzido, salvo com o acordo do Governo.

4. O Chefe do Executivo tem a faculdade de, sempre que o entenda conveniente aos interesses da Região, decidir pela não adjudicação da concessão ou concessões postas a concurso.

5. O contrato de concessão consta de escritura pública, lançada no livro de notas da Direcção dos Serviços de Finanças, nela outorgando o Governo em representação da Região.

6. Os contratos de concessão são publicados na II Série do *Boletim Oficial* da Região Administrativa Especial de Macau.

第十二條

上訴及期限

一、就判給行為前所作出之行為，尤其是有關預先評定資格之調投之行為，不可提起司法爭執，因而對此等行為不得提起司法上訴或根起中止其效力之請求，亦不得提起其他訴訟或措施。

二、針對判給行為之司法上訴，應向中級法院提起；按照十二月十三日第110/99/M號法令核准之《行政訴訟法典》第六條之規定及效力，上述司法上訴屬緊急程序，而利害關係人就進行行為之期限則減半，尤其是提出上訴之期限。

三、聲明異議及行政上訴均不具有中止效力。

四、除非本法律之補足法規有特定規定、且不妨礙政府尤其在命令開投之批示中定出之特別期限下，截至十月十一日第57/99/M號法令核准之《行政程序法典》就提出聲明異議或行政上訴之期限，以及為利害關係人之聲請或進行任何行為、從事採取措施及就相關事務應表達之答辯或行使其他權力等之期間均減半。

第十三條

批給之期間

一、經營娛樂場幸運博彩之批給期間應在批給合同內訂定且不得多於二十年。

二、如批給之判給期限低於本法律允許之上限，政府可隨時或在批給期屆滿前六個月，批准一次過或分多次將批給延長，但以期間之總數不超過上款規定之最長期間為限。

三、如批給期間已經到第一款規定之上限時，有關期間可例外地透過具說明理由之行政長官批示一次過或分多次延長，但總數不得超過五年。

四、批給期間之延長可引致批給合同被修訂，亦可引致由雙方簽訂合同附錄。

第十四條

適當資格

一、經營娛樂場幸運博彩之批給僅可判給予被認定具備適當資格取得批給之參與競投公司。

Artigo 12.º

Recursos e prazos

1. Os actos anteriores ao acto de adjudicação, nomeadamente os relativos à pré-qualificação do concurso, não são susceptíveis de impugnação contenciosa, não cabendo deles recurso contencioso ou pedido de suspensão da sua eficácia, nem outra acção ou providência.

2. Do acto de adjudicação cabe recurso contencioso para o Tribunal da Segunda Instância, sendo o processo considerado urgente, nomeadamente nos termos e para os efeitos do artigo 6.º do Código de Processo Administrativo Contencioso, aprovado pelo Decreto-Lei n.º 110/99/M, de 13 de Dezembro, reduzindo-se a metade os prazos dos actos a praticar pelos interessados, nomeadamente o prazo para interposição de recurso.

3. As reclamações e os recursos administrativos não têm efeito suspensivo.

4. Salvo disposição específica constante de regulamentação complementar da presente lei, e sem prejuízo da fixação de prazos especiais pelo Governo, nomeadamente no despacho que ordene a abertura de concurso, os prazos para a interposição de reclamação ou recursos administrativos constantes do Código do Procedimento Administrativo, aprovado pelo Decreto-Lei n.º 57/99/M, de 11 de Outubro, bem como o prazo para os interessados requererem ou praticarem quaisquer actos, promoverem diligências, responderem sobre os assuntos acerca dos quais se devem pronunciar ou exercerem outros poderes, são reduzidos a metade.

Artigo 13.º

Prazo das concessões

1. O prazo de uma concessão para exploração de jogos de fortuna ou azar em casino é fixado no contrato de concessão e não pode ser superior a 20 anos.

2. Se uma concessão for adjudicada por um período inferior ao máximo permitido pela presente lei, o Governo pode, a qualquer momento e até seis meses antes do fim da concessão, autorizar uma ou mais prorrogações da concessão, desde que o período total não exceda o prazo máximo previsto no número anterior.

3. Uma vez atingido o prazo máximo previsto no n.º 1, a duração da concessão pode, a título excepcional, ser prorrogada, mediante despacho fundamentado do Chefe do Executivo, por uma ou mais vezes, não podendo exceder, no total, o período de cinco anos.

4. A prorrogação do prazo de uma concessão pode dar lugar a uma revisão do contrato de concessão, assim como à celebração entre as partes de adendas ao mesmo.

Artigo 14.º

Idoneidade

1. Uma concessão para exploração de jogos de fortuna ou azar em casino apenas pode ser adjudicada a uma concorrente que seja considerada idónea para obter a concessão.

澳門特別行政區公報 —— 第一組

二、參與競投之公司須接受由政府作出之一項審查是否具備適當資格之程序。

三、參與競投之公司須支付用於審查其資格之調查費用；該費用將從接納參與競投之擔保金金額中扣除。

四、在審查是否具備適當資格時，政府尤應考慮以下標準：

（一）參與競投公司之經驗；

（二）參與競投公司之商譽；

（三）屬同一參與競投公司集團之其他公司之性質和商譽，尤其是有關參與競投公司之控權股東之性質和商譽；

（四）與參與競投公司有密切聯繫之實體之性質和商譽，尤其有關參與競投公司之控權股東之性質和商譽。

五、承批公司必須在批給期間保持其適當資格且須接受政府為此目的而作出之持續性引領及監管。

六、具備適當資格之要求亦延伸至參與競投公司之擁有該公司5%或5%以上公司資本之股東、該公司之董事以及在娛樂場擔任要職之主要僱員。

七、透過與某一承批公司簽訂合同而具有管理該承批公司權力之管理公司，以及擁有其5%或5%以上公司資本之所有人、其董事及主要僱員，亦須接受審查是否具備適當資格之程序。

第十五條
財力

一、參與競投保證娛樂運博彩經營批給之公司，應證明具備適當財力經營所批給之業務。

二、參與競投之公司須接受由政府作出之一項審查是否具備財力之程序。

三、參與競投之公司須支付用於審查其財力之調查費用；該費用將從接納參與競投之擔保金金額中扣除。

四、在審查財力時，政府尤應考慮以下標準：

（一）參與競投公司之經濟與財務狀況；

（二）參與競投公司之控權股東公司之經濟與財務狀況；

（三）與參與競投公司有緊密聯繫之實體之經濟與財務狀況，尤其是承諾保障參與競投公司相關屬之投資及承擔之義務提供融資之實體之經濟與財務狀況；

2. As concorrentes são sujeitas a um processo de verificação de idoneidade por parte do Governo.

3. Os custos da investigação destinada a verificar a idoneidade das concorrentes são por estas suportados, sendo deduzidos do montante da caução a prestar para a admissão a concurso.

4. Na verificação da idoneidade o Governo toma em consideração, entre outros, os seguintes critérios:

1) A experiência da concorrente;

2) A reputação da concorrente;

3) A natureza e reputação de sociedades pertencendo ao mesmo grupo da concorrente, nomeadamente das que são sócias dominantes desta;

4) O carácter e a reputação de entidades estreitamente associadas à concorrente, nomeadamente das que são sócias dominantes desta.

5. As concessionárias são obrigadas a permanecer idóneas durante o período da concessão e estão sujeitas a uma contínua monitorização e supervisão para este efeito pelo Governo.

6. A exigência de idoneidade estende-se também aos accionistas das concorrentes titulares de valor igual ou superior a 5% do seu capital social, aos seus administradores e aos principais empregados com funções relevantes nos casinos.

7. São igualmente sujeitas ao processo de verificação de idoneidade as sociedades gestoras que, através de contrato celebrado com uma concessionária, assumam poderes de gestão relativos a esta, bem como os titulares de valor igual ou superior a 5% do seu capital social, os seus administradores e os seus principais empregados.

Artigo 15.º

Capacidade financeira

1. As concorrentes a uma concessão para exploração de jogos de fortuna ou azar em casino devem fazer prova de adequada capacidade financeira para operar a concessão.

2. As concorrentes são sujeitas a um processo de verificação da capacidade financeira por parte do Governo.

3. Os custos da investigação destinada a verificar a capacidade financeira das concorrentes são por estas suportados, sendo deduzidos do montante da caução a prestar para a admissão a concurso.

4. Na verificação da capacidade financeira o Governo toma em consideração, entre outros, os seguintes critérios:

1) A situação económica e financeira da concorrente;

2) A situação económica e financeira das sociedades que são sócias dominantes da concorrente;

3) A situação económica e financeira de entidades estreitamente associadas à concorrente, nomeadamente das que se comprometem a assegurar o financiamento dos investimentos e obrigações que as concorrentes se propõem realizar ou assumir;

1035

（四）擁有參與競投公司5%或5%以上公司資本之持有人之經濟與財務狀況；

（五）參與競投公司擬經營之一間或一間以上娛樂場之性質及類型，以及其有否準備在該等娛樂場興建附加基礎設施。

五、承批公司必須在批給期間保持其財力且須接受政府為此目的而訂定之持續性引領及監管。

六、如有合理理由相信不具備適當財力時，可要求承批公司提供政府認定屬適當之擔保，尤其是銀行擔保，而無需再說明理由。

第十六條

機密性

競投檔案，包括其內所載之文件及資料，以及有關競投之全部文件及資料均屬機密文件，第三人不得查閱，為此，不適用十月十一日第57/99/M號法令核准之《行政程序法典》第六十三條至第六十七條以及第九十三條至第九十八條之規定。

第二節

承批公司

第十七條

承批公司之公司資本及股份

一、承批公司如公司資本不足澳門幣二億圓者，不得營運。

二、承批公司必須證明上款所指之公司資本已全數以現金繳足，並應提供有關金額已存入獲許可在特區經營之信用機構之證明。

三、承批公司不得在開業前調動上款所指之存款。

四、如屬後情況顯示有需要者，行政長官可命令已成立之承批公司增加公司資本。

五、承批公司之全部公司資本，必須以記名股份表示。

六、在不影響第十條第一款之規定下，經政府預先許可，承批公司之所營事業亦可涵蓋其他相關業務。

七、承批公司之所有權或有關股份之其他物權作任何名義之參移或設定負擔，以及作出涉及將表決權或其他股東權利屬於原

---

4) A situação económica e financeira dos titulares de valor igual ou superior a 5% do capital social da concorrente;

5) A natureza e tipo de casino ou casinos que a concorrente pretende explorar e as infra-estruturas que se lhes propõe associar.

5. As concessionárias são obrigadas a manter capacidade financeira durante o período da concessão e estão sujeitas a uma contínua monitorização e supervisão para este efeito pelo Governo.

6. Quando haja justo receio de diminuição da adequada capacidade financeira pode ser exigida, sem mais fundamentação, a prestação de garantia adequada, nomeadamente bancária, aceite pelo Governo.

Artigo 16.º

Confidencialidade

Os processos de candidatura, os documentos e dados deles constantes, bem como todos os documentos e dados relativos ao concurso, são confidenciais, sendo interdita a sua consulta ou o seu acesso por parte de terceiros, não sendo aplicável, para este efeito, o disposto nos artigos 63.º a 67.º e 93.º a 98.º do Código do Procedimento Administrativo, aprovado pelo Decreto-Lei n.º 57/99/M, de 11 de Outubro.

SECÇÃO II

DAS CONCESSIONÁRIAS

Artigo 17.º

Capital social e acções das concessionárias

1. As concessionárias não podem operar com um capital social inferior a 200 milhões de Patacas.

2. As concessionárias têm que comprovar que o capital social referido no número anterior se encontra integralmente realizado em dinheiro, devendo fazer prova de que se encontra depositado em instituição de crédito autorizada a operar na Região.

3. O depósito referido no número anterior não pode ser movimentado antes do início da actividade da concessionária.

4. O Chefe do Executivo pode determinar o aumento de capital social das concessionárias já constituídas, quando circunstâncias supervenientes o justifiquem.

5. A totalidade do capital social das concessionárias é representado por acções nominativas.

6. Sem prejuízo do disposto no n.º 1 do artigo 10.º, o objecto social das concessionárias pode ainda, mediante autorização prévia do Governo, incluir outras actividades correlativas.

7. A transmissão ou oneração, a qualquer título, da propriedade ou outro direito real sobre acções da concessionária e bem assim a realização de quaisquer actos que envolvam a atribuição de direito de voto ou outros direitos sociais a pessoa dife-

有人以外之人之任何行為，均須經得政府許可，否則視為無效。

八：承批公司必須將上款所指之任何行為在公司之股份記錄簿冊作出有關記錄後或等同之程序作出後三十日內通知博彩監察暨協調局。

九、未獲政府預先許可，以任何名義將承批公司之娛樂場幸運博彩經營作轉移或讓與第三人，以及將構成承批公司之法定或合同約定義務之其他業務轉移或讓與第三人，視為無效。

十、承批公司以及擁有該公司之資本5%或5%以上之股東，均不得直接或間接於其他在特區經營娛樂場幸運博彩之承批公司擁有5%或5%以上公司資本。

十一、承批公司與某一商業企業主如管理公司之間所訂定以及具有或可具有管理該承批公司權力之合同屬無效，但經政府預先許可者則除外。

### 第十八條
### 禁止在公司機構兼任職務

一、禁止在一間以上之承批公司之公司機構或一間以上之管理公司之公司機構兼任職務，以及禁止在承批公司之公司機構及在管理公司之公司機構兼任職務。

二、違反上款規定之公司機構成員所參與之行為或決議，均可撤銷。

三、政府應將違反第一款規定而指派之承批公司或管理公司之公司機構成員撤換，而該等成員尚可暫時或確定性被禁止在該些公司之公司機構擔任職務。

四、違反第一款規定指派人員，構成行政上之違法行為。

### 第十九條
### 常務董事

一、必須將承批公司之管理權授予一名常務董事。

二、上款所指之常務董事必須為澳門特別行政區之永久性居民，並至少擁有承批公司10%之公司資本。

三、對於承批公司管理權之授予，包括常務董事之委任、權力之範圍及委任期限，以及對該委任作出任何變更，尤其是涉及

---

rente do seu titular carecem de autorização do Governo, sob pena de nulidade.

8. É obrigatória a comunicação, pelas concessionárias à Direcção de Inspecção e Coordenação de Jogos, de qualquer dos actos referidos no número anterior, no prazo de 30 dias após o registo no livro de registo de acções da sociedade ou de formalidade equivalente.

9. É nula a transferência ou cessão para terceiro, a qualquer título, da exploração de jogos de fortuna ou azar em casino, bem como de outras actividades que constituam obrigações legais ou contratuais da concessionária, sem prévia autorização do Governo.

10. As concessionárias, bem como os seus accionistas titulares de valor igual ou superior a 5% do respectivo capital social, não podem ser proprietários, directa ou indirectamente, de percentagem igual ou superior de capital social de outra concessionária da exploração de jogos de fortuna ou azar em casino na Região.

11. É nulo o contrato celebrado entre uma concessionária e um empresário comercial, nomeadamente uma sociedade gestora, pelo qual aquele assuma ou possa assumir poderes de gestão relativos à concessionária, salvo prévia autorização do Governo.

### Artigo 18.º
### Proibição de acumulação de funções em órgãos sociais

1. É proibida a acumulação de funções em órgãos sociais de mais do que uma concessionária ou de mais do que uma sociedade gestora, bem como a acumulação de funções em órgãos sociais de concessionárias e em órgãos sociais de sociedades gestoras.

2. São anuláveis os actos ou deliberações em que intervenham os membros de órgãos sociais em violação do disposto no número anterior.

3. O Governo deve proceder à remoção dos membros dos órgãos sociais das concessionárias ou sociedades gestoras, designados em violação do disposto no n.º 1, podendo ainda essas pessoas ficar inibidas, temporária ou definitivamente, para o desempenho de funções nos órgãos sociais dessas sociedades.

4. A designação de pessoas em violação do disposto no n.º 1 constitui infracção administrativa.

### Artigo 19.º
### Administrador-delegado

1. A gestão das concessionárias é obrigatoriamente delegada num administrador-delegado.

2. O administrador-delegado referido no número anterior tem que ser residente permanente da Região Administrativa Especial de Macau e ser detentor de, pelo menos, 10% do capital social da concessionária.

3. A delegação da gestão das concessionárias, incluindo a designação do administrador-delegado, o âmbito dos seus poderes

Case 1:04-cv-10357-RCL     Document 205-3     Filed 07/30/2008     Page 37 of 80

常務董事之暫時性代任或確定性代替，均須預先獲得政府之許可，否則視為無效。

四、常務董事除須符合第十四條規定有關要求適當資格之約束外，不得為不能擔任此職務之人，尤其是不得為特區之公共行政工作人員及行政會委員。

五、如承批公司與某一管理公司訂立合同，則上數款所載之要求及限制僅適用於該管理公司。

第二十條
溢價金之繳納

一、承批公司須按照批給合同之規定繳納每年之溢價金；有關溢價金按每一承批公司經營之娛樂場數目、要准設置之博彩枱數目、所經營之博彩方式、娛樂場之所在地點及政府定出之其他重要準則等而有所變動。

二、政府可規定溢價金按月繳納。

三、政府可要求提供獨立之銀行擔保（"first demand"）或政府可接受之其他擔保，以保證承批公司按合同規定繳納溢價金。

第二十一條
禁止作出限制競爭之行為

一、承批公司應遵守市場經濟所固有之原則，在良性及公平競爭下從事其業務。

二、政府以一視同仁之態度對待所有承批公司，並確保遵守規定以保障競爭，尤其是在各承批公司之間的良性及公平競爭。

三、禁止承批公司之間或屬於有關集團之公司之間以任何方式訂定、能對承批公司之間之競爭造成阻礙、限制或破壞之協議或行為。

四、禁止一間或一間以上之承批公司不當利用在整個市場或在市場內相當部分所佔之主導地位，以阻礙、限制或破壞承批公司之間之競爭。

五、第三款及第四款所禁止之協議、決定、行為或事實均為無效，但經過行政長官批示明確宣示其說明理由之情況者除外。

---

e o prazo da delegação, bem como qualquer alteração à mesma, nomeadamente envolvendo a substituição, temporária ou definitiva, do administrador-delegado, está sujeita a autorização prévia do Governo, sob pena de nulidade.

4. O administrador-delegado, para além de estar sujeito à exigência de idoneidade nos termos do artigo 14.º, não pode estar impedido para o efeito, não podendo nomeadamente ser trabalhador da Administração Pública da Região nem membro do Conselho Executivo.

5. No caso de ser celebrado um contrato entre uma concessionária e uma sociedade gestora, aplicam-se apenas a esta os requisitos e inibições constantes dos números anteriores.

## Artigo 20.º
### Pagamento de prémio

1. As concessionárias estão obrigadas ao pagamento de um prémio anual, a estabelecer nos termos dos respectivos contratos de concessão, e que será variável em função do número de casinos que cada concessionária seja autorizada a operar, do número de mesas de jogo autorizadas, dos jogos explorados, da localização dos casinos e de outros critérios relevantes que o Governo venha a determinar.

2. O Governo pode determinar que o prémio seja pago mensalmente.

3. O Governo pode exigir que seja prestada garantia bancária autónoma («first demand») ou outra por si julgada aceitável, que garanta o pagamento dos prémios a que a concessionária se haja obrigado contratualmente.

## Artigo 21.º
### Proibição de práticas restritivas da concorrência

1. As concessionárias exercem a sua actividade em concorrência sã e leal, com respeito pelos princípios inerentes a uma economia de mercado.

2. O Governo trata todas as concessionárias de forma não discriminatória e assegura o cumprimento das normas visando a defesa da concorrência, nomeadamente a existência de uma concorrência sã e leal entre as concessionárias.

3. São proibidos os acordos e as práticas concertadas, qualquer que seja a forma que revistam, entre as concessionárias ou sociedades pertencentes aos respectivos grupos, que sejam susceptíveis de impedir, restringir ou falsear a concorrência entre as concessionárias.

4. É proibida a exploração abusiva, por uma ou mais concessionárias, de uma posição dominante no mercado ou numa parte substancial deste, que seja susceptível de impedir, restringir ou falsear a concorrência entre as concessionárias.

5. Excepto nos casos em que sejam expressamente declarados justificados por despacho do Chefe do Executivo, os acordos, decisões, práticas ou factos proibidos pelos n.ºs 3 e 4 são nulos.

六、違反本條規定，倘成行政上之違法行為，但不妨礙追究
有關之民事或刑事責任。

6. A violação ao disposto no presente artigo constitui infracção administrativa, sem prejuízo da responsabilidade civil ou criminal que lhe possa estar subjacente.

第二十二條

承批公司之其他義務

Artigo 22.º

Outros deveres das concessionárias

除本法律、其他適用法例以及在批給合同內所規定之義務外，承批公司尚須：

Para além de outros deveres previstos na presente lei e demais legislação aplicável, bem como nos respectivos contratos de concessão, as concessionárias estão obrigadas a:

（一）保持娛樂場之所有附屬設施及相連部分按指定用途或按獲准之用途正常運作；

1) Fazer funcionar normalmente todas as dependências dos casinos e anexos para os fins a que se destinam ou sejam autorizados;

（二）提供一項擔保金，作為執行其須履行之法定義務及合同之擔保；如已按第二十條第三款規定提供擔保者，可免除提上述擔保金；

2) Prestar uma caução como garantia de execução das obrigações legais e contratuais a que estejam vinculadas, podendo esta caução ser dispensada caso tenha sido prestada a garantia referida no n.º 3 do artigo 20.º;

（三）向政府遞交有關其章程之任何修改以供核准，否則，視之為無效；

3) Submeter ao Governo, para aprovação, quaisquer alterações dos seus estatutos, sob pena de nulidade;

（四）儘快將可能影響公司正常運作之任何情況通知政府，諸如：與公司清償能力或償還能力有關之情況，針對公司或其董事而提起之任何司法訴訟，在其娛樂場發生之任何欺詐行為、暴力行為或犯罪行為，以及特區公共行政當局任一機關之據位人或工作人員包括保安部隊及治安部門之人員針對公司或公司之任一公司機構據位人所採取之敵視行為；

4) Informar o Governo, no mais curto prazo possível, de quaisquer circunstâncias que possam afectar o seu normal funcionamento, tais como as que estão relacionadas com a liquidez ou solvência, a existência de qualquer processo judicial contra si ou os seus administradores, qualquer fraude, conduta violenta ou criminal nos seus casinos e qualquer atitude adversa levada a cabo, contra si ou os titulares dos seus órgãos sociais, por um titular de um órgão ou trabalhador da Administração Pública da Região, incluindo os agentes das Forças e Serviços de Segurança;

（五）讓經營博彩之毛收入接受每日監察；

5) Submeter a exploração dos jogos à fiscalização diária das receitas brutas;

（六）在博彩廳及區域裝設電子監控設備，以保障人身和財產安全；

6) Instalar, nas salas ou zonas de jogos, equipamento electrónico de vigilância e controlo, como medida de protecção e segurança de pessoas e bens;

（七）每年撥出不超過其博彩經營毛收入2%之款項予一個以促進、發展或研究文化、社會、經濟、教育、科學、學術及慈善活動為宗旨之公共基金會；及

7) Efectuar contribuições com um quantitativo anual de valor não superior a 2% das receitas brutas de exploração do jogo para uma fundação pública que tenha por fins a promoção, o desenvolvimento e o estudo de acções de carácter cultural, social, económico, educativo, científico, académico e filantrópico; e

（八）每年撥出不超過其博彩經營毛收入3%之款項，用以發展城市建設、推廣旅遊及提供社會保障。

8) Efectuar contribuições com um quantitativo anual de valor não superior a 3% das receitas brutas de exploração do jogo para o desenvolvimento urbanístico, a promoção turística e a segurança social.

第二十三條

博彩中介人

Artigo 23.º

Promotores de jogo

一、從事博彩中介人之活動須取得准照且須受政府之監察。

1. A actividade dos promotores de jogo está sujeita a licenciamento e o respectivo exercício fica submetido à fiscalização do Governo.

二、為經營賭場工作，博彩中介人尚須在其提供服務之每一承批公司作登記。

三、承批公司須就有關博彩中介人及其行政管理機關成員和合作人在娛樂場開展之活動，以及就彼等是否遵守法律及規章規定向政府承擔責任；為此，承批公司應監督其活動。

四、博彩中介人及擁有佔承批公司5%或5%以上公司資本之持有人，以及其行政管理機關成員及主要僱員，均應具備獲承認之適當資格。

五、每一承批公司必須每年將預計在下一年內為其服務之博彩中介人之附有身份資料之名單交予博彩監察暨協調局，以便由政府核准。

六、政府每年定出獲准為每一承批公司服務之博彩中介人之最高名額。

七、為從事活動，博彩中介人可擁有至其選定之合作人，合作人之最高限額由每年由博彩監察暨協調局定出；為此，博彩中介人應透過承批公司將下一年度與其合作之人之附有身份資料之名單交予博彩監察暨協調局。

### 第二十四條
### 博彩廳或區域之進入

一、以下人士禁止進入博彩廳或區域：

（一）未滿十八周歲之人；

（二）無行為能力人、准禁治產人，以及蓄意破產被判罪人，但已恢復權利者除外；

（三）特區公共行政工作人員，包括保安部隊及治安部門之人員，但獲許可或在執行其職務者除外；

（四）非在值班時間之娛樂場經營博彩承批公司之僱員，但以有關僱主實際所經營之博彩廳或區域為限；

（五）處於醉酒狀態或受毒品作用影響之人；及

（六）攜帶武器、爆炸裝置或物品以及錄象或錄音儀器之人。

二、以下人士享有在博彩廳或區域內之自由通行權，但不得直接或透過他人進行博彩：

（一）行政長官、司長及行政會委員；

2. Para exercer a actividade nos casinos, os promotores de jogo têm ainda que se registar junto de cada concessionária com que pretendam operar.

3. Perante o Governo, é sempre uma concessionária a responsável pela actividade desenvolvida nos casinos pelos promotores de jogo, seus administradores e colaboradores e pelo cumprimento por parte deles das normas legais e regulamentares, devendo para o efeito proceder à supervisão da sua actividade.

4. Os promotores de jogo e os titulares de valor igual ou superior a 5% do seu capital social, bem como os seus administradores e os seus principais empregados, devem ser dotados de reconhecida idoneidade.

5. Cada concessionária submete anualmente à Direcção de Inspecção e Coordenação de Jogos, para aprovação do Governo, uma lista com a identificação dos promotores de jogo com os quais pretenda vir a operar no ano seguinte.

6. O Governo fixa anualmente o número máximo dos promotores de jogo autorizados a operar junto de cada concessionária.

7. Os promotores de jogo podem dispor, para o exercício da sua actividade, de colaboradores por si escolhidos, até um número máximo a ser fixado anualmente pela Direcção de Inspecção e Coordenação de Jogos, devendo, para o efeito, entregar-lhe através das concessionárias, uma lista com a identificação dos seus colaboradores para o ano seguinte.

### Artigo 24.º
### Acesso às salas ou zonas de jogos

1. É vedado o acesso às salas ou zonas de jogos:

1) Aos menores de 18 anos;

2) Aos incapazes, inabilitados e culpados de falência intencional, excepto se tiverem sido entretanto reabilitados;

3) Aos trabalhadores da Administração Pública da Região, incluindo os agentes das Forças e Serviços de Segurança, excepto quando autorizados ou no desempenho das suas funções;

4) Quando não em serviço, aos empregados das concessionárias de jogos de fortuna ou azar em casino, quanto às salas ou zonas de jogo exploradas pela respectiva entidade patronal;

5) Aos indivíduos em estado de embriaguez ou sob o efeito de drogas; e

6) Aos portadores de armas, engenhos ou materiais explosivos, bem como de aparelhos de registo de imagem ou de som.

2. Gozam de livre acesso às salas ou zonas de jogos, sendo-lhes, no entanto, vedada a prática de jogos, directamente ou por interposta pessoa:

1) O Chefe do Executivo, os Secretários do Governo e os membros do Conselho Executivo;

（二）廉政專員；

（三）審計長；

（四）警察總局局長；

（五）海關關長；

（六）經營娛樂場幸運博彩承批公司之公司機構成員及其邀請之人；

（七）管理公司之公司機構成員及其邀請之人；及

（八）娛樂場所在地之市政議會及市政執行委員會主席。

三·以下人士在執行職務時，亦可進入博彩廳或區域，但不得直接或透過他人進行博彩：

（一）法院及檢察院司法官；

（二）廉政公署之公務人員；

（三）審計署之公務人員；

（四）特區保安部隊及治安部門之人員：及

（五）博彩監察暨協調局之公務人員。

### 第二十五條
### 博彩廳或區域之禁絕離場

一·凡在博彩廳或區域內被發現違反有關特定規則及條件而被認為不適宜在場者，博彩監察暨協調局之督察或負責博彩廳或區域之娛樂場管理層人員，可命令該人離場；拒絕遵守由上指督察發出之命令或經其確認之命令者，構成違令罪。

二·負責博彩廳或區域之娛樂場管理層人員，在行使上述所指權力後，應於二十四小時內將其決定通知博彩監察暨協調局，並指出所作決定之理由及能就有關事實作證之證人，以及請求確認已採取之措施。

三·凡在上兩款所指情況下被逐離博彩廳或區域者，即處於防範性禁止進入之狀態。

### 第二十六條
### 保留允許進入之權利

允許進入娛樂場，尤其是允許進入博彩廳或區域之權利，均予以保留。

---

2) O Comissário contra a Corrupção;

3) O Comissário da Auditoria;

4) O Comandante-Geral dos Serviços de Polícia Unitários;

5) O Director-Geral dos Serviços de Alfândega;

6) Os membros dos órgãos sociais das concessionárias da exploração de jogos de fortuna ou azar em casino e seus convidados;

7) Os membros dos órgãos sociais das sociedades gestoras e seus convidados; e

8) Os Presidentes da Assembleia Municipal e da Câmara Municipal do município em que se localiza o casino.

3. Quando no desempenho das suas funções, podem também entrar nas salas ou zonas de jogos, sendo-lhes vedada a prática de jogos, directamente ou por interposta pessoa:

1) Os Magistrados Judiciais e do Ministério Público;

2) Os funcionários do Comissariado contra a Corrupção;

3) Os funcionários do Comissariado da Auditoria;

4) Os agentes das Forças e Serviços de Segurança da Região; e

5) Os funcionários da Direcção de Inspecção e Coordenação de Jogos.

### Artigo 25.º
### Expulsão das salas ou zonas de jogos

1. Todo aquele que for encontrado numa sala ou zona de jogos em infracção às regras e condições específicas aprovadas para o efeito, ou quando seja inconveniente a sua presença, é mandado retirar por inspectores da Direcção de Inspecção e Coordenação de Jogos ou por membro da direcção do casino responsável pelas salas ou zonas de jogos, constituindo a recusa crime de desobediência, no caso de a ordem ser dada ou confirmada por um inspector.

2. Sempre que o membro da direcção do casino responsável pelas salas ou zonas de jogos tenha de exercer o poder de expulsão conferido pelo número anterior, deve comunicar a sua decisão à Direcção de Inspecção e Coordenação de Jogos no prazo de 24 horas, indicando os motivos que a justificam e as testemunhas que possam ser ouvidas sobre os factos, pedindo a confirmação da medida adoptada.

3. A expulsão de sala ou zona de jogos nas condições referidas nos números anteriores implica a interdição preventiva de entrada quanto à pessoa expulsa.

### Artigo 26.º
### Reserva do direito de admissão

Nos casinos, nomeadamente nas salas ou zonas de jogos, é reservado o direito de admissão.

Case 1:04-cv-10357-RCL    Document 205-3    Filed 07/30/2008    Page 41 of 80

第三章

稅務登記及提供帳目

第二十七條

博彩特別稅

一、承批公司必須繳納博彩特別稅，該稅款係按照經營博彩之毛收入計算。

二、博彩特別稅之稅率為35%。

三、博彩特別稅款以十二分之一方式繳納，並應於有關月份翌月首十日內交到澳門財稅廳徵收處。

四、特區與承批公司之間，可通過合同方式訂定一項博彩特別稅款之最低擔保額。

五、政府可要求提供適當之銀行擔保，以保證繳納等於預計為每月須繳納之博彩特別稅款總和之款項。

六、就博彩特別稅之債務，以稅務執行程序徵收。

第二十八條

稅務制度

一、承批公司除須繳納博彩特別稅之外，尚須繳納法律訂定之稅項、稅捐、費用及手續費。

二、基於公共利益之原因，行政長官可暫時及例外地全部或部分豁免承批公司繳納所得補充稅。

第二十九條

博彩中介人佣金之稅項

一、承批公司必須透過確定性扣繳來源的之方式，收繳支付予博彩中介人之佣金或其他報酬有關之稅項，而有關款額原按源自博彩者之毛收入計得者。

二、支付予博彩中介人之佣金或其他報酬之稅率為5%且具免除責任之性質。

三、基於公共利益之原因，行政長官可於最多五年內部分豁免繳納上兩款所指稅項，但該豁免不得超過有關稅率40%。

---

CAPÍTULO III

DAS OBRIGAÇÕES FISCAIS E DE PRESTAÇÃO
DE CONTAS

Artigo 27.º

Imposto especial sobre o jogo

1. As concessionárias ficam obrigadas ao pagamento de imposto especial sobre o jogo, o qual incide sobre as receitas brutas de exploração do jogo.

2. A taxa do imposto especial sobre o jogo é de 35%.

3. O imposto especial sobre o jogo é pago em duodécimos na Recebedoria da Repartição de Finanças de Macau até ao décimo dia do mês seguinte a que respeitar.

4. Pode ser estabelecido contratualmente entre a Região e as concessionárias um valor de garantia mínimo do imposto especial sobre o jogo.

5. O Governo pode exigir que seja prestada garantia bancária adequada que garanta o pagamento de montante igual aos valores mensais prováveis do imposto especial sobre o jogo.

6. As dívidas relativas ao imposto especial sobre o jogo são cobradas em execução fiscal.

Artigo 28.º

Regime fiscal

1. Independentemente da sujeição ao pagamento do imposto especial sobre o jogo, as concessionárias ficam obrigadas ao pagamento dos impostos, contribuições, taxas ou emolumentos estabelecidos na lei.

2. Quando motivo de interesse público o justifique, o Chefe do Executivo pode isentar, temporária e excepcionalmente, total ou parcialmente, as concessionárias do pagamento do imposto complementar de rendimentos.

Artigo 29.º

Imposto sobre as comissões pagas a promotores de jogo

1. As concessionárias ficam obrigadas à retenção na fonte, a título definitivo, do imposto devido sobre as comissões ou quantitativos das comissões ou outras remunerações pagas a promotores de jogo, o qual é calculado sobre a receita bruta originada pelo jogador.

2. A taxa do imposto sobre as comissões ou outras remunerações pagas a promotores de jogo é de 5% e tem natureza liberatória.

3. Quando motivo de interesse público o justifique, o Chefe do Executivo pode isentar parcialmente, por um período não superior a 5 anos, o pagamento do imposto referido nos números anteriores, não podendo, todavia, essa isenção ser superior a 40% da taxa do imposto.

四、基於公共利益之原因，行政長官可批准針對作為給予博彩者各種便利之實物給付之報酬，尤其是與博彩中介人所提供之交通運輸、住宿、餐飲及消遣有關之報酬，全部或部分不納入該稅項範圍內。

五、支付予博彩中介人之佣金或其他報酬之應繳稅項，以十二分之一方式繳納，並應由承批公司於有關月份翌月首十日內交到澳門財政局徵收納庫。

六、與支付予博彩中介人之佣金或其他報酬稅項有關之債務應以稅務執行程序徵收。

### 第三十條
#### 會計及內部查核

一、承批公司及管理公司均應設置本身之會計系統、健全之行政組織、適當之內部查核程序並須遵從政府指示，尤其是遵循博彩監察協調局及財政局就此等事宜發出之任何指示。

二、承批公司及管理公司之商業記帳應以特區任一正式語文作出。

三、為會計上之效力，承批公司及管理公司之財政年度等同於曆年。

四、承批公司及管理公司在會計之編排與提交方面，應採用特區現行公定會計格式之標準；經博彩監察協調局局長或財政局局長建議，行政長官得以批示訂定必須設置之會計簿冊、文件或其他資料，以及訂定承批公司或管理公司在將其營業活動記錄時應採用之標準及在會計之編排與提交方面必須遵守之特別規定。

### 第三十一條
#### 強制公佈

一、承批公司及管理公司必須於批給期間，須遍於每年四月三十日在《澳門特別行政區公報》及在特區閱章中最多人閱讀的兩份報章，其一為中文報章，另一為他文報章，公佈上一營業年度截至十二月三十一日之以下資料：

（一）資產負債表、損益表及附件；

（二）業務綜合報告；

4. Quando motivo de interesse público o justifique, o Chefe do Executivo pode autorizar que sejam excluídas, total ou parcialmente, do âmbito de incidência deste imposto as remunerações consistindo em prestações em espécie relativas à atribuição de facilidades a jogadores, nomeadamente no que respeita a transportes, alojamento, alimentação e entretenimento, postas à disposição de promotores de jogo.

5. O imposto sobre as comissões ou outras remunerações pagas a promotores de jogo é entregue pelas concessionárias em duodécimos na Recebedoria da Repartição de Finanças de Macau até ao décimo dia do mês seguinte a que respeitar.

6. As dívidas relativas ao imposto sobre as comissões ou outras remunerações pagas a promotores de jogo são cobradas em execução fiscal.

### Artigo 30.º
#### Contabilidade e controlo interno

1. As concessionárias e as sociedades gestoras devem estar dotadas de contabilidade própria, de boa organização administrativa e de adequados procedimentos de controlo interno e acatar qualquer instrução emitida pelo Governo quanto a estas matérias, nomeadamente através da Direcção de Inspecção e Coordenação de Jogos e da Direcção dos Serviços de Finanças.

2. A escrituração mercantil das concessionárias e das sociedades gestoras deve ser efectuada numa das línguas oficiais da Região.

3. Para efeitos contabilísticos, o ano económico das concessionárias e das sociedades gestoras coincide com o ano civil.

4. Na arrumação e apresentação da contabilidade, as concessionárias e as sociedades gestoras devem adoptar unicamente os critérios do Plano Oficial de Contabilidade em vigor na Região, podendo o Chefe do Executivo, mediante proposta do Director de Inspecção e Coordenação de Jogos ou do Director dos Serviços de Finanças, por despacho, tornar obrigatória a existência de determinados livros, ou outros elementos de contabilidade, bem como determinar os critérios a adoptar pelas concessionárias ou pelas sociedades gestoras na escrituração das suas operações e a observância de normas especiais na sua arrumação ou apresentação.

### Artigo 31.º
#### Publicações obrigatórias

1. As concessionárias e as sociedades gestoras ficam obrigadas a publicar, até 30 de Abril de cada ano, durante o período da concessão e em relação ao exercício do ano anterior encerrado a 31 de Dezembro, no Boletim Oficial da Região Administrativa Especial de Macau e em dois dos jornais mais lidos da Região, sendo obrigatoriamente um em língua chinesa e outro em língua portuguesa, os seguintes elementos:

1) Balanço, conta de ganhos e perdas e anexo;

2) Síntese do relatório de actividade;

（三）監事會意見書；

（四）外部核數師之綜合意見書；

（五）於全年任何期間擁有承批公司或管理公司之公司資本5%或5%以上之主要股東名單，並指出有關百分率之數值；及

（六）公司機構據位人之姓名。

二、上款（一）項所指附件內須列明融資項目，並於其中登錄該營業年度內取得之資金、其來源，以及資金在固定資產及流動資產上之運用。

三、承批公司及管理公司必須至少提前十日，將按照本章規定須公佈之所有資料之副本送交博彩監察暨協調局。

#### 第三十二條
#### 提供資訊

一、承批公司及管理公司必須最遲在每季度之翌月月底，將上一季度之試算表送交予博彩監察暨協調局，而最後一季度之試算表，則最遲在下年度之二月底送交。

二、承批公司及管理公司必須最遲在舉行通過帳目之每年股東大會之日前第三十日，向博彩監察暨協調局送交有關上一營業年度之全部會計報表及統計表。

三、除本法律所定之其他類同義務外，承批公司及管理公司須在上款所定之期限內，向博彩監察暨協調局送交以下資料：

（一）在有關營業年度內曾為董事會或監事會成員、受託人，以及會計部門負責人之全名，以及儘可能載有此等姓名之各種文本；及

（二）一份附有監事會及外部核數師之意見書之董事會報告及帳目。

四、博彩監察暨協調局及財政局，為順利執行其職務所需，得要求承批公司或管理公司提供任何資料及資訊。

#### 第三十三條
#### 查驗及監察活動

一、賦予博彩監察暨協調局及財政局在查驗及監察方面特別

---

3) Parecer do conselho fiscal;

4) Síntese do parecer dos auditores externos;

5) Lista dos accionistas qualificados, detentores de 5% ou mais do capital social da concessionária ou da sociedade gestora em qualquer período do ano, com indicação do respectivo valor percentual; e

6) Nomes dos titulares dos órgãos sociais.

2. O anexo referido na alínea 1) do número anterior inclui uma rubrica de financiamento, na qual se inscrevem os recursos obtidos no exercício e suas diferentes origens, bem como a aplicação ou emprego dos mesmos em activo imobilizado ou activo circulante.

3. As concessionárias e as sociedades gestoras devem obrigatoriamente remeter à Direcção de Inspecção e Coordenação de Jogos cópia de todos os elementos destinados à publicação nos termos do presente capítulo, com a antecedência mínima de 10 dias.

#### Artigo 32.º
#### Prestação de informações

1. As concessionárias e as sociedades gestoras ficam obrigadas a enviar à Direcção de Inspecção e Coordenação de Jogos, até ao último dia do mês seguinte, o balancete referente ao trimestre anterior, salvo o relativo ao último trimestre, que é enviado até ao último dia do mês de Fevereiro seguinte.

2. As concessionárias e as sociedades gestoras ficam obrigadas a enviar à Direcção de Inspecção e Coordenação de Jogos, até 30 dias antes da data da realização da assembleia geral anual para a aprovação de contas, o conjunto de mapas contabilísticos e estatísticos referentes ao exercício anterior.

3. Para além de outras obrigações análogas estabelecidas na presente lei, as concessionárias e as sociedades gestoras devem enviar à Direcção de Inspecção e Coordenação de Jogos, dentro do prazo estabelecido no número anterior, os seguintes elementos:

1) Os nomes completos, em todas as suas possíveis versões, das pessoas que durante o respectivo exercício fizeram parte dos conselhos de administração e fiscal, dos procuradores nomeados, bem como do responsável pelo departamento de contabilidade; e

1) Um exemplar do relatório e contas do conselho de administração, acompanhado dos pareceres do conselho fiscal e dos auditores externos.

4. A Direcção de Inspecção e Coordenação de Jogos e a Direcção dos Serviços de Finanças podem solicitar das concessionárias ou das sociedades gestoras quaisquer outros elementos e informações de que careçam para o cabal desempenho das suas funções.

#### Artigo 33.º
#### Acções de inspecção e fiscalização

1. À Direcção de Inspecção e Coordenação de Jogos e à Direcção dos Serviços de Finanças incumbem poderes especiais de

1044    澳門特別行政區公報 —— 第一組

能力，以查核本規定之委託之履行情況。

二、為上述目的，博彩監察暨協調局及財政局經部門之最高負責人許可隨時均在有或無預先通知之情況下，直接或經過獲適當委託之人士或實體對承批公司或管理公司之會計或據記進行分析或查核，包括查驗交易記錄、賬冊、帳目及其他紀錄或文件，查核是否存在任何類別之有價物，以及全部或部分複印為核實承批公司及管理公司有否遵守適用之法律規定及合同規定所必需之資料。

三、博彩監察暨協調局或財政局在進行本條所指查驗及監察活動期間，得扣押任何為違法行為之標的或對組成有關宗屬必要之文件或有價物。

第三十四條
年度帳目之外部審計

一、承批公司及管理公司應每年將其帳目交由預先經博彩監察暨協調局及財政局同意之具公認聲譽之獨立外部實體進行審計。

二、上款所指之審計，應核實：

（一）資產負債表、損益表及附件是否在符合適用之法律及規章性規定之情況下編作；

（二）資產負債表、損益表及附件能否真實及適當地反映承批公司或管理公司之財務狀況；

（三）承批公司或管理公司之會計簿冊是否以適當之方式保持且正確記錄其業務；及

（四）承批公司或管理公司有否提供被要求之資訊及解釋，並應就拒絕提供資訊或解釋之情況，以及提供虛假資訊之情況作詳細說明。

三、核數師公司之報告應與第三十二條第二款所指之會計報表及統計表一併送交。

四、除第二款所指資料外，博彩監察暨協調局或財政局可要求承批公司或管理公司之核數師提供其認為必需之其他資訊性質之資料，以及要求其出席與承批公司或管理公司之代表所舉行之會議，以便作出解釋。

inspecção e fiscalização na verificação do cumprimento das obrigações previstas no presente capítulo.

2. Para o efeito, podem a Direcção de Inspecção e Coordenação de Jogos ou a Direcção dos Serviços de Finanças, mediante autorização do dirigente máximo do serviço, directamente ou por intermédio de pessoas ou entidades devidamente mandatadas para o efeito, em qualquer momento, com ou sem aviso prévio, analisar ou examinar a contabilidade ou escrita das concessionárias ou das sociedades gestoras, incluindo quaisquer transacções, livros, contas e demais registos ou documentos, constatar a existência de quaisquer classes de valores, bem como fotocopiar, total ou parcialmente, o que considerar necessário para verificar o cumprimento, pelas concessionárias e pelas sociedades gestoras das disposições legais e contratuais aplicáveis.

3. No decurso das acções de inspecção e fiscalização a que se refere o presente artigo, podem a Direcção de Inspecção e Coordenação de Jogos ou a Direcção dos Serviços de Finanças proceder à apreensão de quaisquer documentos ou valores que constituam objecto de infracção ou se mostrem necessários à instrução do respectivo processo.

Artigo 34.º

Auditoria externa das contas anuais

1. As concessionárias e as sociedades gestoras promovem a realização anual de uma auditoria às suas contas, por entidade externa independente de reputação reconhecida, previamente aceite pela Direcção de Inspecção e Coordenação de Jogos e pela Direcção dos Serviços de Finanças.

2. A auditoria referida no número anterior deve certificar se:

1) O balanço, a conta de ganhos e perdas e o anexo estão elaborados em conformidade com as disposições legais e regulamentares aplicáveis;

2) O balanço, a conta de ganhos e perdas e o anexo reflectem de forma verdadeira e apropriada a situação financeira da concessionária ou da sociedade gestora;

3) Os livros contabilísticos da concessionária ou da sociedade gestora têm sido mantidos de forma adequada e registam correctamente as suas operações; e

4) A concessionária ou a sociedade gestora prestaram as informações e explicações que lhes foram solicitadas, devendo especificar se os casos em que houve recusa na prestação de informações ou explicações, bem como de falsificação de informações.

3. Os relatórios das sociedades de auditores devem ser enviados conjuntamente com os mapas contabilísticos e estatísticos a que se refere o n.º 2 do artigo 32.º

4. Para além dos elementos referidos no n.º 2, a Direcção de Inspecção e Coordenação de Jogos ou a Direcção dos Serviços de Finanças podem solicitar dos auditores das concessionárias ou das sociedades gestoras quaisquer outros elementos de informação que reputem necessários, bem como exigir a sua participação em reunião com representantes das respectivas concessionárias ou das sociedades gestoras, tendo em vista a prestação de esclarecimentos.

五、在不妨礙本法律及其他法例規定之提供資訊義務之情況下，核數師應立即以書面方式將任何在履行其職務時所發現之可能致損害承批公司或管理公司或特區之利益之事實，通知博彩監察協調局及財政局，尤其是以下所列事項者：

（一）承批公司或管理公司、有關機構之其他人或工作人員涉嫌涉及任何犯罪活動或清洗黑錢活動；

（二）直接危及承批公司或管理公司之償付能力之不當情事；

（三）進行未經准許之活動；及

（四）認為可嚴重影響承批公司、管理公司或特區之利益之其他事實。

### 第三十五條
### 特別審計

如有需要或屬適宜時，博彩監察暨協調局或財政局，經其最高負責人許可，得隨時及在有或無預先通知之情況下，命令由其公認聲譽之獨立核數師或由其他實體進行特別審計。

### 第三十六條
### 合作義務

一、承批公司及管理公司均必須與政府合作，尤其是與博彩監察暨協調局及財政局合作，以便向該等部門提供所要求之資料及資訊、讓該等部門分析或查核會計系統及進行特別審計，以及履行本章規定及其他補足規範所規定之義務。

二、違反合作義務，構成行政上之違法行為。

### 第四章
### 用於批給業務之財產

### 第三十七條
### 特區之財產

一、可將經營批給業務所需之屬於特區所有之財產之享有、收益和使用暫時性轉予承批公司。

5. Sem prejuízo de outros deveres de informação previstos na presente lei ou demais legislação, os auditores devem comunicar imediatamente à Direcção de Inspecção e Coordenação de Jogos e à Direcção dos Serviços de Finanças, por escrito, quaisquer factos detectados no exercício das suas funções susceptíveis de provocar grave dano à concessionária, à sociedade gestora ou aos interesses da Região, nomeadamente:

1) A suspeita de envolvimento da concessionária ou da sociedade gestora, dos titulares dos respectivos órgãos sociais ou dos seus trabalhadores em quaisquer actividades criminosas ou em práticas de branqueamento de capitais;

2) Irregularidades que ponham em risco imediato a solvabilidade da concessionária ou da sociedade gestora;

3) A realização de actividades não permitidas; e

4) Outros factos que, em sua opinião, possam afectar gravemente a concessionária, a sociedade gestora ou os interesses da Região.

### Artigo 35.º
### Auditorias extraordinárias

Quando o reputem necessário ou conveniente, podem a Direcção de Inspecção e Coordenação de Jogos ou a Direcção dos Serviços de Finanças, mediante autorização do dirigente máximo do serviço, em qualquer momento, com ou sem aviso prévio, determinar a realização de auditoria extraordinária, conduzida por auditor independente de reputação reconhecida ou por outra entidade.

### Artigo 36.º
### Dever de cooperação

1. As concessionárias e as sociedades gestoras estão obrigadas à cooperação com o Governo, nomeadamente com a Direcção de Inspecção e Coordenação de Jogos e com a Direcção dos Serviços de Finanças, quanto à prestação de elementos e informações que lhes sejam solicitados, à análise ou exame da sua contabilidade, na realização de auditorias extraordinárias e, em geral, aos deveres impostos por normas constantes do presente capítulo e demais regulamentação complementar.

2. A violação do dever de cooperação constitui infracção administrativa.

### CAPÍTULO IV
### DOS BENS AFECTOS ÀS CONCESSÕES

### Artigo 37.º
### Bens da Região

1. A concessão permite a transferência temporária para as concessionárias do gozo, fruição e utilização de bens propriedade da Região que haja necessidade de serem afectos à exploração.

二、上款之規定，經作出必要配合後，亦適用於按照《澳門特別行政區基本法》第七條規定，由特區負責管理之土地和自然資源之出租或批給，而有關土地和自然資源保作為供應者批給事業所需者。

三、承批公司應按照博彩監察暨協調局之指示，確保上兩款因批給而獲提供之財產完全得到保管或代替。

2. O disposto no número anterior aplica-se também às necessárias adaptações, ao arrendamento ou concessão dos terrenos, solos ou recursos naturais por cuja gestão a Região é responsável nos termos do artigo 7.º da Lei Básica da Região Administrativa Especial de Macau, que haja necessidade de serem afectos à exploração.

3. As concessionárias devem assegurar a perfeita conservação ou substituição dos bens referidos nos números anteriores afectos à concessão, conforme instruções da Direcção de Inspecção e Coordenação de Jogos.

### 第三十八條
### 移交筆錄

上條所指之轉移應以一式三份之保管筆錄載明，其內列出所有財產，並由博彩監察暨協調局、財政局及承批公司之代表簽署。

### Artigo 38.º
### Auto de entrega

A transferência referida no artigo anterior consta de auto de conservação, feito em triplicado, compreendendo a relação de todos os bens abrangidos, assinado por representantes da Direcção de Inspecção e Coordenação de Jogos da Direcção dos Serviços de Finanças e da respectiva concessionária.

### 第三十九條
### 因使用特區財產而須作之回報

一、承批公司應就使用特區之財產或使用屬特區管理、使用及開發之財產而按批給合同規定給予回報。

二、上款所指回報之金額應每年按照特區之物價平均指數調整。

三、對於第三十七條提供予批給業務之用之財產，如其用途已與合同不相符者，應由博彩監察暨協調局與承批公司協商修訂有關回報。

### Artigo 39.º
### Contrapartidas pelo uso dos bens da Região

1. As concessionárias devem remunerar a Região pela utilização de bens desta, ou pela utilização dos bens cuja gestão, uso e desenvolvimento lhe pertencem, nos termos do respectivo contrato de concessão.

2. Os valores pecuniários das remunerações referidas no número anterior são actualizados anualmente, de acordo com o índice médio de preços na Região.

3. As remunerações relativas a bens afectos as concessões referidos no artigo 37.º que passem a ter utilização diversa da contratada, devem ser revistas por acordo entre a Direcção de Inspecção e Coordenação de Jogos e a concessionária.

### 第四十條
### 可歸屬特區之財產

一、批給一旦廢銷，有關娛樂場連同其全部設備及用具歸屬特區所有，但不妨礙按合同條款規定亦應歸屬特區所有之其他財產或權利。

二、除非合同另有規定，上款所指財產和權利之歸屬，不賦予支付補償之權利。

三、於批給期屆滿時歸屬特區之財產，尤其是由承批公司取得之用於博彩業務之設備及用具，如博彩監察暨協調局認為不適宜繼續使用者，則可以將之棄用或銷毀，並隨即按特區財產冊銷程序之適用法例，將之冊銷。

### Artigo 40.º
### Bens reversíveis para a Região

1. Extinta uma concessão revertem para a Região os respectivos casinos, com todo o seu equipamento e utensilagem, sem prejuízo de outros bens ou direitos que devam reverter em virtude de cláusula contratual.

2. A reversão dos bens e direitos referidos no número anterior não confere o direito ao pagamento de uma compensação, salvo disposição contratual em contrário.

3. Quando os bens reversíveis para a Região no termo da concessão, nomeadamente o equipamento e utensilagem afectos a jogos, adquiridos pelas concessionárias forem julgados pela Direcção de Inspecção e Coordenação de Jogos impróprios para utilização, são postos fora de uso ou destruídos, seguindo-se o processo de abate previsto na legislação aplicável ao abate de bens património da Região.

第四十一條

用於批給業務之財產清冊

一、第三十七條所指用於批給業務之全部財產，以及可歸屬特區之財產，屬以一式三份之財產清冊載明，並分別由博彩監察暨協調局、財政局及承批公司各執一份。

二、財產清冊應每年更新，並最遲於每年五月三十一日更新出現變更之相關表。

第四十二條

改善費

對於第三十七條所指用於批給業務之財產所作之任何形式之改善費，以及對可歸屬於特區之財產所作之改善費，概不賦予承批公司任何賠償權利。

第五章

不遵守及撤銷

第四十三條

行政上之違法行為

一、對於違反或不遵守本法律、補足法規或批給合同的規定可歸責於承批公司或管理公司而適用之違法行為制度，由行政法規訂定。

二、上款所指違法行為具行政性質，受十月四日第52/99/M號法令規範，並由政府執行有關處罰。

三、繳納有限上兩款所指行政上之違法行為之罰款並不妨礙或有之刑事程序。

四、承批公司或管理公司須承擔繳納罰款之責任，而所有擁有10%或10%以上公司資本之股東，即使其間公司已解散或基於任何原因已終止業務，亦須負連帶責任。

第四十四條

暫時行政介入

還有以下任何情況，可暫時行政介入娛樂場幸運博彩之批給經營：

（一）發生或即將出現無合理理由中斷經營之情況；或

Artigo 41.º

Inventário dos bens afectos às concessões

1. Todos os bens afectos às concessões referidos no artigo 37.º, e bem assim os bens reversíveis para a Região, constam de inventário, elaborado em triplicado, ficando um dos exemplares na posse da Direcção de Inspecção e Coordenação de Jogos, outro exemplar na posse da Direcção dos Serviços de Finanças e outro na posse da concessionária.

2. O inventário deve ser actualizado anualmente, promovendo-se, até 31 de Maio de cada ano, à actualização dos mapas correspondentes às alterações verificadas.

Artigo 42.º

Benfeitorias

As benfeitorias que, a qualquer título, sejam feitas em bens afectos às concessões referidos no artigo 37.º bem como em bens reversíveis para a Região, não conferem à concessionária direito a qualquer indemnização.

CAPÍTULO V

NÃO CUMPRIMENTO E EXTINÇÃO

Artigo 43.º

Infracções administrativas

1. O regime das infracções pela violação ou incumprimento, imputável às concessionárias ou às sociedades gestoras, ao disposto na presente lei, em regulamentação complementar ou em contratos de concessão é determinado em Regulamento Administrativo.

2. As infracções referidas no número anterior têm natureza administrativa, regem-se pelo disposto no Decreto-Lei n.º 52/99/M, de 4 de Outubro, e as respectivas sanções são impostas pelo Governo.

3. O pagamento das multas relativas às infracções administrativas referidas nos números anteriores não prejudica o procedimento criminal a que porventura houver lugar.

4. Pelo pagamento das multas é responsável a concessionária ou a sociedade gestora e, solidariamente, os respectivos accionistas que sejam titulares de valor igual ou superior a 10% do capital social, ainda que as sociedades hajam entretanto sido dissolvidas ou cessado a sua actividade por qualquer razão.

Artigo 44.º

Sequestro

1. Uma concessão para a exploração de jogos de fortuna ou azar em casino pode ser sequestrada:

1) Quando ocorra ou esteja iminente a interrupção injustificada da respectiva exploração; ou

（二）在承批公司之組織及運作上，或在設施及在供經營之用之物品在經營狀況上出現嚴重混亂或不足之情況。

二、在暫時行政介入期間，批給之經營由政府之代表執管，而用作維持正常經營所必需之開支，由承批公司支付。

三、如認定屬必要，可維持暫時行政介入；政府可在撤銷暫時行政介入時，通知承批公司取回經營之批給；如承批公司不接受，則按第四十七條之規定解除批給。

第四十五條

撤銷

娛樂場幸運博彩之經營批給，得基於下列原因撤銷：

（一）批給之期間屆滿；

（二）特區政府與承批公司間協議；

（三）贖回；

（四）因不履行義務而解除；及

（五）因公共利益而解除。

第四十六條

贖回

一、贖回是指政府在合同期屆滿前收回批給之權營。

二、批給之贖回使承批公司有權收取賠償。

三、行政長官以行政法規訂定須經過多少時間後，方可行使贖回之權利，以及計算上款規定之賠償金額應遵從之標準。

第四十七條

因不履行義務而解除

一、如承批公司不履行按照法例或合同訂定之規定須承擔之主要義務時，政府可單方解除娛樂場幸運博彩經營之批給。

二、特別為下列者，構成單方解除批給之原因：

（一）放棄經營或無合理理由暫停經營；

（二）違反本法律、其補足法規或批給合同之規定，暫時或確

---

2) Quando se verifiquem perturbações ou deficiências graves na organização e funcionamento das concessionárias ou no estado geral das instalações e do material afecto à respectiva exploração.

2. Durante o sequestro, a exploração da concessão será assegurada por representantes do Governo, correndo por conta da concessionária as despesas necessárias para a manutenção e normalização da exploração.

3. O sequestro é mantido enquanto for julgado necessário, podendo o Governo notificar no seu termo a concessionária para retomar a exploração da concessão, a qual é rescindida, nos termos do artigo 47.º, caso a concessionária não a aceite.

Artigo 45.º

Extinção

Uma concessão para a exploração de jogos de fortuna ou azar em casino extingue-se por:

1) Decurso do prazo por que foi atribuída;

2) Acordo entre o Governo e a concessionária;

3) Resgate;

4) Rescisão por incumprimento; e

5) Rescisão por razões de interesse público.

Artigo 46.º

Resgate

1. Verifica-se o resgate sempre que o Governo retome a exploração da concessão antes do termo do prazo contratual.

2. O resgate da concessão confere às concessionárias o direito ao recebimento de uma indemnização.

3. O Chefe do Executivo determina, mediante Regulamento Administrativo, o prazo a partir do qual poderá ser exercido o direito de resgate e os critérios a observar para o cálculo do valor da indemnização prevista no número anterior.

Artigo 47.º

Rescisão por incumprimento

1. Uma concessão para a exploração de jogos de fortuna ou azar em casino pode ser rescindida unilateralmente pelo Governo em caso de não cumprimento de obrigações fundamentais a que a concessionária esteja legal ou contratualmente obrigada.

2. Constituem, em especial, motivo para a rescisão unilateral da concessão:

1) O abandono da exploração ou a sua suspensão injustificada;

2) A transmissão total ou parcial da exploração, temporária ou definitiva, efectuada com desrespeito do estabelecido

Case 1:04-cv-10357-RCL    Document 205-3    Filed 07/30/2008    Page 49 of 80

定性將全部或部分經營作暫停；及

（三）欠繳在批給合同內訂定應付于政府之稅項、溢價金或其他回報。

三、批給一旦解除，須將有關娛樂場連同其全部設備及用具無償地歸屬特區所有，以及按合同條款規定於批給終止時應歸屬特區所有之其他財產或權利。

### 第四十八條
### 因公共利益而解除

一、不論承批公司有否不履行其受約束之任何義務，政府得基於公共利益隨時單方解除娛樂場幸運博彩經營之批給。

二、按上款規定而宣告之解除，賦予承批公司有權收取一項合理賠償，有關金額之計算須特別考慮如離批給剩餘尚餘期末之時間及承批公司已作出之投資。

### 第六章
### 最後及過渡規定

### 第四十九條
### 不獲判給之公司之解散

一、依據第十條第一款規定成立但未能按第十一條規定取得批給之公司之股東，必須解散有限公司。

二、解散上款所指公司之決議須由不判給決定通知之日起，或對不判給提出上訴之裁決確定之日起，六十日內作出。

三、上款所指期限一經屆滿而解散公司之決議尚未作出時，檢察院應立即促請法院命令將有限公司解散。

四、公司之解散應在有關決議作出日起或命令解散之判決確定日起十五日內予以登記。

五、公司一經消滅，原擁有該公司10%或10%以上公司資本之股東須對嗣後負債承擔連帶責任。

---

na presente lei e respectiva regulamentação complementar ou no contrato de concessão; e

3) A falta de pagamento dos impostos, prémios ou outras retribuições devidas ao Governo estabelecidas no respectivo contrato de concessão.

3. A rescisão da concessão implica a reversão gratuita para a Região dos respectivos casinos, com todo o seu equipamento e utensilagem, bem como de outros bens ou direitos que devessem reverter para a Região no termo da concessão em virtude de cláusula contratual.

### Artigo 48.º
### Rescisão por razões de interesse público

1. Uma concessão para exploração de jogos de fortuna ou azar em casino pode ser rescindida unilateralmente pelo Governo, em qualquer momento, quando razões de interesse público o imponham, independentemente do incumprimento pela concessionária de quaisquer obrigações a que esteja vinculada.

2. A rescisão declarada ao abrigo do número anterior confere à concessionária o direito a receber uma indemnização justa, cujo montante deve ser calculado tendo em conta especialmente o tempo em falta para o termo da concessão e os investimentos efectuados pela concessionária.

### CAPÍTULO VI
### DISPOSIÇÕES FINAIS E TRANSITÓRIAS

### Artigo 49.º
### Dissolução das sociedades não adjudicatárias

1. Os accionistas das sociedades constituídas para efeito do disposto no n.º 1 do artigo 10.º, que não tenham obtido uma concessão nos termos do artigo 11.º, ficam obrigados a dissolver aquelas sociedades.

2. A dissolução das sociedades referidas no número anterior deve ser deliberada no prazo de 60 dias contados da data de notificação da decisão de não adjudicação, ou do trânsito em julgado da decisão sobre o recurso do acto de não adjudicação, se a ele tiver havido lugar.

3. Decorrido o prazo referido no número anterior sem que tenha sido tornada a deliberação de dissolução da sociedade, deve o Ministério Público promover de imediato a sua dissolução judicial.

4. A dissolução da sociedade deve ser registada no prazo de 15 dias a contar da deliberação ou do trânsito em julgado da sentença que a determine.

5. Extinta a sociedade, os antigos accionistas detentores de valor igual ou superior a 10% do seu capital social respondem solidariamente pelo passivo superveniente.

1050

第五十條

對現時之批給合約之條款之維持

本法律之規定，不影響對現時之幸運博彩專營批給合約之條款之維持；整份合約繼續受於本法律生效前之法例所規範，即使出現按第五十一條規定作出延長之情況亦然。

第五十一條

現時之批給期間之延長

行政長官可透過具說明理由之批示將現時之幸運博彩專營批給合約之期間至多延長十二個月。

第五十二條

補足法規之制定

一、行政長官及政府應公佈本法律之補足法規。

二、除妥善實施本法律所必需之其他規定外，補足法規應包括規範公開競投及批給合約之施行細則、博彩廳之使用和逗留、供經營博彩業務之場所之運作、博彩毛收入之監察、參與經營之人、娛樂場博彩之進行及行政上之違法行為等活動之規定。

第五十三條

不適用《行政程序法典》之規定

經營娛樂場幸運博彩之批給，除不適用第十六條之規定外，亦不適用十月十一日第57/99/M號法令核准之《行政程序法典》第一百六十八條、第一百六十九條、第一百七十條、第一百七十二條、第一百七十三條及第一百七十四條之規定。

第五十四條

廢止性規定

一、廢止與本法律規定相抵觸之所有法例，但不妨礙第五十條之規定。

二、尤其廢止以下法例：

（一）一九六一年七月四日第1496號立法性法規第十五條至第三十五條、第三十七條至第五十二條及第五十四條至第五十八條；
      ...

（二）五月二十九日第6/82/M號法律；

Artigo 50.º

Manutenção das cláusulas do actual contrato de concessão

O disposto na presente lei não prejudica a manutenção das cláusulas do actual contrato para a concessão do exclusivo da exploração de jogos de fortuna ou azar, o qual se mantém integralmente regido pela legislação vigente à data da entrada em vigor da presente lei, mesmo no caso de eventual prorrogação nos termos do artigo 51.º.

Artigo 51.º

Prorrogação do prazo da actual concessão

O Chefe do Executivo pode, mediante despacho fundamentado, prorrogar o prazo do actual contrato para a concessão do exclusivo da exploração de jogos de fortuna ou azar pelo período máximo de doze meses.

Artigo 52.º

Regulamentação complementar

1. O Chefe do Executivo e o Governo aprovarão os diplomas complementares da presente lei.

2. Além de outras disposições necessárias à boa execução da presente lei, os diplomas complementares incluirão normas respeitantes à regulamentação do concurso público, ao contrato de concessão, à utilização e frequência das salas de jogo, ao funcionamento dos recintos afectos à exploração, à fiscalização das receitas brutas dos jogos, às pessoas afectas à exploração, à prática dos jogos em casino e às infracções administrativas.

Artigo 53.º

Não aplicação de preceitos do Código do Procedimento Administrativo

Não é aplicável às concessões para exploração de jogos de fortuna ou azar em casino o disposto nos artigos 168.º, 169.º, 170.º, 172.º, 173.º e 174.º do Código do Procedimento Administrativo, aprovado pelo Decreto-Lei n.º 57/99/M, de 11 de Outubro, para além do disposto no artigo 16.º

Artigo 54.º

Norma revogatória

1. É revogada toda a legislação que contrarie as disposições da presente lei, sem prejuízo do disposto no artigo 50.º.

2. São revogados, nomeadamente:

1) Os artigos 15.º a 35.º, 37.º a 52.º e 54.º a 58.º do Diploma Legislativo n.º 1496, de 4 de Julho de 1961;

2) A Lei n.º 6/82/M, de 29 de Maio;

（三）　九月二十二日第 10/86/M 號法律；

（四）　一月二十八日第 2/84/M 號法令；及

（五）　經十二月二十一日第 87/89/M 號法令核准之《澳門公共行政工作人員通則》第二百七十九條第十三款。

3) A Lei n.º 10/86/M, de 22 de Setembro;

4) O Decreto-Lei n.º 2/84/M, de 28 de Janeiro; e

5) O n.º 13 do artigo 279.º do Estatuto dos Trabalhadores da Administração Pública de Macau, aprovado pelo Decreto-Lei n.º 87/89/M, de 21 de Dezembro.

第五十五條

變更規範性行為之性質

Artigo 55.º

Alteração da natureza de actos normativos

核准進行幸運博彩施行規則之批示、訓令及行政命令，尤其是以下所列舉者，現改為對外規範性批示性質之經濟財政司司長批示：

Passam a revestir a natureza de despacho regulamentar externo do Secretário para a Economia e Finanças os Despachos, as Portarias e as Ordens Executivas que aprovam as regras de execução para a prática de jogos de fortuna ou azar, designadamente os seguintes:

（一）　一九六四年二月一日第 7461 號訓令；

（二）　一九六六年二月五日第 8116 號訓令；

（三）　十月四日第 168/75 號訓令；

（四）　十月四日第 169/75 號訓令；

（五）　十二月二十日第 223/75 號訓令；

（六）　一月十七日第 9/76/M 號訓令；

（七）　十二月十三日第 210/76/M 號訓令；

（八）　十月二十七日第 171/79/M 號訓令；

（九）　十一月十五日第 211/80/M 號訓令；

（十）　三月二十八日第 54/81/M 號訓令；

（十一）　三月五日第 57/83/M 號訓令；

（十二）　五月十八日第 96/85/M 號訓令；

（十三）　五月十八日第 97/85/M 號訓令；

（十四）　五月二十五日第 104/85/M 號訓令；

（十五）　十二月十六日第 260/85 號批示；

（十六）　七月十四日第 16/SAEFT/86 號批示；

（十七）　二月二十二日第 48/86/M 號訓令；

（十八）　九月十二日第 153/88/M 號訓令；

（十九）　三月二十日第 51/89/M 號訓令；

（二十）　六月十二日第 100/89/M 號訓令；

（二十一）　六月二十六日第 108/89/M 號訓令；

（二十二）　七月十七日第 118/89/M 號訓令；

（二十三）　十月二十三日第 178/89/M 號訓令；

（二十四）　一月二十二日第 15/90/M 號訓令；

（二十五）　二月二十六日第 65/90/M 號訓令；

（二十六）　三月十九日第 83/90/M 號訓令；

1) Portaria n.º 7461, de 1 de Fevereiro de 1964;

2) Portaria n.º 8116, de 5 de Fevereiro de 1966;

3) Portaria n.º 168/75, de 4 de Outubro;

4) Portaria n.º 169/75, de 4 de Outubro;

5) Portaria n.º 223/75, de 20 de Dezembro;

6) Portaria n.º 9/76/M, de 17 de Janeiro;

7) Portaria n.º 210/76/M, de 13 de Dezembro;

8) Portaria n.º 171/79/M, de 27 de Outubro;

9) Portaria n.º 211/80/M, de 15 de Novembro;

10) Portaria n.º 54/81/M, de 28 de Março;

11) Portaria n.º 57/83/M, de 5 de Março;

12) Portaria n.º 96/85/M, de 18 de Maio;

13) Portaria n.º 97/85/M, de 18 de Maio;

14) Portaria n.º 104/85/M, de 25 de Maio;

15) Despacho n.º 260/85, de 16 de Dezembro;

16) Despacho n.º 16/SAEFT/86, de 14 de Julho;

17) Portaria n.º 48/86/M, de 22 de Fevereiro;

18) Portaria n.º 153/88/M, de 12 de Setembro;

19) Portaria n.º 51/89/M, de 20 de Março;

20) Portaria n.º 100/89/M, de 12 de Junho;

21) Portaria n.º 108/89/M, de 26 de Junho;

22) Portaria n.º 118/89/M, de 17 de Julho;

23) Portaria n.º 178/89/M, de 23 de Outubro;

24) Portaria n.º 15/90/M, de 22 de Janeiro;

25) Portaria n.º 65/90/M, de 26 de Fevereiro;

26) Portaria n.º 83/90/M, de 19 de Março;

<table>
<tr><td>（二七）三月二十五日第 57/91/M 號訓令；</td><td>27) Portaria n.º 57/91/M, de 25 de Março;</td></tr>
<tr><td>（二八）三月二十五日第 58/91/M 號訓令；</td><td>28) Portaria n.º 58/91/M, de 25 de Março;</td></tr>
<tr><td>（二九）七月十五日第 125/91/M 號訓令；</td><td>29) Portaria n.º 125/91/M, de 15 de Julho;</td></tr>
<tr><td>（三十）　八月五日第 135/91/M 號訓令；</td><td>30) Portaria n.º 135/91/M, de 5 de Agosto;</td></tr>
<tr><td>（三十一）一月二十九日第 14/96/M 號訓令；</td><td>31) Portaria n.º 14/96/M, de 29 de Janeiro;</td></tr>
<tr><td>（三十二）一月二十九日第 15/96/M 號訓令；</td><td>32) Portaria n.º 15/96/M, de 29 de Janeiro;</td></tr>
<tr><td>（三十三）二月十二日第 21/96/M 號訓令；</td><td>33) Portaria n.º 21/96/M, de 12 de Fevereiro;</td></tr>
<tr><td>（三十四）二月十二日第 22/96/M 號訓令；</td><td>34) Portaria n.º 22/96/M, de 12 de Fevereiro;</td></tr>
<tr><td>（三十五）八月二十六日第 219/96/M 號訓令；</td><td>35) Portaria n.º 219/96/M, de 26 de Agosto;</td></tr>
<tr><td>（三十六）十月二十一日第 261/96/M 號訓令；</td><td>36) Portaria n.º 261/96/M, de 21 de Outubro;</td></tr>
<tr><td>（三十七）十一月四日第 274/96/M 號訓令；</td><td>37) Portaria n.º 274/96/M, de 4 de Novembro;</td></tr>
<tr><td>（三十八）十一月十六日第 234/98/M 號訓令；</td><td>38) Portaria n.º 234/98/M, de 16 de Novembro;</td></tr>
<tr><td>（三十九）十二月二十九日第 69/2000 號行政命令；</td><td>39) Ordem Executiva n.º 69/2000, de 29 de Dezembro;</td></tr>
<tr><td>（四十）　十二月二十九日第 70/2000 號行政命令；及</td><td>40) Ordem Executiva n.º 70/2000, de 29 de Dezembro; e</td></tr>
<tr><td>（四十一）七月二十四日第 141/2000 號行政長官批示。</td><td>41) Despacho do Chefe do Executivo n.º 141/2000, de 24 de Julho.</td></tr>
</table>

## 第五十六條
### 被廢止規定之準用

在本法律生效前，任何法規對被本法律廢止之法例所載規定所作之準用，視為對本法律相關規定之準用。

## 第五十七條
### 生效

一、本法律自公佈之翌日起生效，但不影響以下兩款之規定。

二、第二十七條第二款、第二十九條、第三十條、第三十二條及第三十四條於二零零二年一月一日開始生效。

三、第十七條第一款至第三款、第十八條、第十九條、第二十一條、第二十二條（二）項至（七）項及（八）項、第二十三條、第二十八條、第三十七條至第四十二條於按第九條及續後數條規定作出的第一次公開競投所產生之首份娛樂場幸運博彩經營批給合同公佈後開始生效。

二零零一年八月三十日通過。

立法會主席 曹其真

二零零一年九月十九日簽署。
命令公佈。

行政長官 何厚鏵

## Artigo 56.º
### Remissões para normas revogadas

Qualquer remissão feita em diploma legal anterior à entrada em vigor da presente lei para preceito legal constante de legislação por esta revogada considera-se feita para a disposição correspondente da presente lei.

## Artigo 57.º
### Entrada em vigor

1. A presente lei entra em vigor no dia seguinte ao da sua publicação, sem prejuízo do disposto nos números seguintes.

2. Os artigos 27.º, n.º 2, 29.º, 30.º, 32.º e 34.º entram em vigor em 1 de Janeiro de 2002.

3. Os artigos 17.º, n.º 1 a 3, 18.º, 19.º, 21.º, 22.º, alíneas 2), 7) e 8), 23.º, 28.º e 37.º a 42.º entram em vigor após a publicação do primeiro contrato de concessão para a exploração de jogos de fortuna ou azar em casino decorrente da abertura do primeiro concurso público previsto nos artigos 9.º e seguintes.

Aprovada em 30 de Agosto de 2001.

A Presidente da Assembleia Legislativa, Susana Chou.

Assinada em 19 de Setembro de 2001.

Publique-se.

O Chefe do Executivo, Ho Hau Wah.

MACAU SPECIAL ADMINISTRATIVE REGION

Law no. 16/2001

Legal framework for the conduct of game of chance

The Legislative Assembly stipulates, under the terms of paragraph 1) of Article 71 of the Lei Básica of the Macao Special Administrative Region, to be taken as law the following:

## CHAPTER 1

### General Provisions

### Article 1

### Scope and objective of the Law

1. This Law governs the legal framework for the conduct of games of chance in the Macao Special Administrative Region (Macao SAR).

2. The objectives of the legal framework for the conduct of games of chance in the Macau SAR is to ensure:

1) The proper management and operation of games of chance in casinos;

2) That those involved in the supervision, management and operation of games of chance in casinos are suitable persons to exercise their functions and to assume such responsibilities;

3) That the operation of games of chance in casinos within the Macao SAR are conducted fairly and honestly, and are free of any criminal influence;

4) That the interest of the Macao SAR in the taxation of gaming revenue arising from the operation of the casinos in Macao is properly protected; and

1

5)  The promotion of tourism, social stability and economic development of the Macao SAR.

3. Special law incriminates illegal gaming.

## Article 2
### Definitions

1. In so far as this Law is concerned:

1)  mutual bets is a betting system on speedy animal races or in sport events where winners divide amongst themselves the total sum of the stake, after deduction of the commissions, taxes and fees on the proportion of the individual bet sums.

2)  casinos are the places legally authorized and classified as such by Macao SAR Executive.

3)  games of chance are games where the result is determined wholly or principally by the luck of the player.

4)  an interactive game is a game of chance in which:

a) A prize consisting of money or something else of value is offered or can be won under the rules of the game;

b) A player enters the game or takes any steps in the game by means of a telecommunication device such as telephone, facsimile machine, internet, computer networks, or video link, and gives, or agrees to give, a monetary payment or something else of value to enter or participate in the game;

c) The game is also offered or approved as a game of chance or electric or mechanic devices in a casino in Macao.

5)  Activities offered to the public are those in which the chance of winning is exclusively determined by the luck of the player, such as lotteries, raffles, tombolas and lucky

draws.

6) "Junket" refers to any person who arranges for the promotion of gaming in a casino and whose work involves the provision of any form of convenience for patrons, particularly arrangement of transportation, accommodation, food and drink and entertainment in return for a commission or other forms of compensation paid by the concession holder.

2. The term "casino" can only be used by the grantee of a concession to operate games of chance.

### Article 3

### Games of chance

1. Entities other than the Macao SAR that intend to operate games of chance as well as games that use electric or mechanical devices in casinos in the Macao SAR must first be granted with a concession.

2. Games of chance as well as games that use electric or mechanical devices or shall only be operated in premises and facilities designated as casinos, without prejudice to Article 5, Clause 3 of this Law.

3. The following are approved games of chance that can be operated in casinos:

      1) Baccarat;

      2) Baccarat "Chemin de fer";

      3) Blackjack;

      4) Boule;

      5) Craps;

      6) Cussec;

      7) Twelve Numbers;

      8) Fantan;

3

9) Kauccarate;

10) Fish, Prawn, Crab Cussex;

11) Poker with thirteen cards;

12) Ma Chong;

13) Ma Chong Baccarat;

14) Ma Chong Par Kao;

15) Tuan Cow;

16) Pal Kao;

17) Small Par Kao;

18) Fortune San Kun;

19) Poker with five cards;

20) Roulette;

21) Sap-1 Chi, or game of twelve cards;

22) Pin ball machine;

23) Taiwan Pal Kao; and

24) San Kun Baccarat;

4. Any other forms of games of chance shall be submitted by one concessionaire or more than one concessionaire for approval by the Secretary for Economy and Finance, in the form of an "despacho regulamentar externo", after the Gaming Control Board has expressed its opinion on such application.

5. The rules regarding games of chance shall be approved by the Secretary for Economy and Finance in the form of an "despacho regulamentar externo" through recommendations by the Gaming Control Board.

6. Casinos shall not operate mutual bets, nor shall they operate the activities offered to public.

4

7. Under exceptional circumstances, the Secretary for Economy and Finance shall approve in the form of an "despacho regulamentar externo" the concession holder of the games of chance to conduct the activities offered to the public. Under such circumstances, the concession contract shall be amended and signed by both parties in the form of supplementary appendix.

8. Casinos can operate games that use electric or mechanical devices or "Slot Machines" in accordance with the prescribed regulations.

### Article 4

### Interactive gaming

1. Concession holders shall not operate in casino any interactive game.

2. The concession for the operation of interactive games of chance is independent from concessions for the operation of games of chance in casinos.

### Article 5

### Authorised casino premises

1. The conduct of games of chance shall be restricted to places and premises that are authorised by the Government of the Macao SAR.

2. The features, location and regulations of the operation of casino premises pertaining to the conduct of games of chance shall be stipulated in "Regulamento Administrativo" or in the respective concession contracts.

3. The Chief Executive may approve within a prescribed period:

1) The conduct of any form of games of chance on Macao registered vessels or aircrafts when they are outside of Macao but on routes that are beneficial to tourism; and

2) The operation of gaming machines that pay wins by money or chips located in the

5

post-immigration zone at the Macao International Airport Departure Hall.

4. Referring to part one of the above Clause, the operation of such activities shall only be granted to the enterprises which own or lease the Macao registered vessels or aircrafts, or to any concession holder of the games of chance permitted by such enterprises.

5. All conduct of games of chance permitted to operate pursuant to Clause Three and Four of this Article shall comply with the special regulations and conditions prescribed by the Chief Executive under "Regulamento Administrativo", and such regulations and conditions shall, with the strictly necessary adaptations, conform with this Law and other relevant laws which govern the operation and conduct of casino games of chance.

6. Articles 7 to 13, 16 to 20, 22, Clauses 7 and 8, 31 and 49 to 52 of this Law shall not be applicable to the operation of games of chance as authorised under the terms of Clauses 3 and 4 of this Article.


## Article 6

### Uninterrupted gaming zone

1. The Macau Special Administrative Region shall be considered as an uninterrupted gaming zone and each casino shall operate during the entire year.

2. Only in exceptional cases with the approval of the Government may a concession holder of the games of chance in casinos suspend operation of any one of its casinos for one or more days.

3. The approval referred to in the preceding Clause is only granted by the Government in cases of urgency, namely those resulting from a serious accident, catastrophe or natural calamity, that might bring serious risk to the security of persons. In the event these cases occur, the concession holder of games of chance in casino shall inform the Government as soon as possible of the suspension of that operation.

4. Without affecting the conditions stipulated in the above two Clauses, the concession holder of the games of chance may determine the period of opening to the public of its casinos and all gaming activities therein.

5. The management departments of the concession holder of games of chance in casino shall notify the Gaming Control Board at least three days in advance in respect of any changes made to the period of opening to the public of any of the casinos operated under the concession.

## CHAPTER II

## CONCESSION REGIME

## PART I

## TENDERING

## Article 7

## Concession regime

1. The exploitation of games of chance is reserved to the Macao SAR and such shall only be operated by a limited company by shares ("S.A.") incorporated in the Macao SAR, and the award of a concession shall be made in the form of an administrative contract as stipulated in this Law.

2. The number of concession grants to be awarded for the operation of games of chance in casinos is a maximum of three.

## Article 8

## Public tender

1. A public tender shall precede the award of the concession for the exploitation of games

of chance.

2. The public tendering may be restricted by a pre-qualification.

## Article 9

### Opening of a public tender

The opening of a public tender shall be achieved by a "despacho" issued by the Chief Executive and shall stipulate specifically:

1) The eventual priority of pre-qualification;

2) Procedures for the opening of a public tender, including the date of reception of the tender;

3) The guarantee deposit payable by the applicant for the admission to the public tender,

4) The concession grant regime, including the legal framework, the essential terms and conditions of the concession contract to be entered into, and clear specification of the legally set maximum period for the grant of the concession; and

5) The essential criteria for being admitted to the tender.

## Article 10

### Admission to the public tender

1. Only the legally constituted limited companies dully incorporated in the Region with the sole business of operating casino games of chance or other types of gaming activities shall be admitted to the public tender.

2. Before the act of granting a concession, the Government may order to amend the Memorandum and Article of Association of the company referred to in the above Clause, as well as any provisions set forth in the Shareholder's Agreement reached among all or certain shareholders of the company.

B

3. Failure to comply with the above Clause to make the necessary amendment in the Memorandum and Article or any provisions stated in the Shareholders' Agreement of the company within the prescribed period set forth by the Government shall be considered as a withdrawal from the tender.

4. Every applicant shall provide a guarantee deposit for the admission to the public tender. The amount of the guarantee deposit shall be determined by the Chief Executive. This guarantee deposit can also be provided in the form of an appropriate bank guarantee.

5. Applicants who withdraw from the tender after the deadline stipulated for the reception of the tenders shall face forfeiture of the paid guarantee deposit.

6. Under exceptional circumstances, the Government may admit a foreign incorporated company with recognised reputation that do not fulfil the prerequisites referred to in Clause one of this Article as long as it complies with the regulations as prescribed by the Chief Executive to incorporate a limited company by shares in the territory of Macao within the prescribed  period. The provisions in this Article shall apply to such foreign companies.

## Article 11

### Grant of a concession

1. The provisory granting of a concession to operate games of chance in casino shall be made under a Chief Executive's "despacho" along with a report justifying the reasons for that grant.

2. The grant of the licensing contracts is preceded by the assignment act which is made by a "despacho" issued by the Chief Executive.

3. Negotiations may be conducted with the tenderers before the grant of the licensing contracts in view of stipulating additional conditions. The amount of the annual premium

9

indicated on the proposal of a tenderer cannot be subsequently reduced, except if this carries the consent of the Region's Government.

4. The Chief Executive has the right to deny the award of a concession to an applicant who has participated in the tendering process if he considers such act as of benefit to Macao.

5. The concession contract shall be in the form of a public deed, and entered into by the Government on behalf of the territory of the Macao SAR and kept in the register of the Finance Department.

6. The awarded concession contract shall be published in Series II of the Macao SAR Official Gazette.

## Article 12

### Appeals

1. Acts prior to the grant of the concession, particularly those regarding pre-qualification shall not be subject to judicial dispute, and therefore judicial appeals or any application to stop the effectiveness in respect to such acts, or any forms of litigation or measures shall not be permitted.

2. Judicial appeals relating to the act of the granting of a concession shall be made to the intermediary judicial Court; according to the "Código de Procedimento Administrativo" prescribed by Law 110/99/M, of December 12th, particularly Article 6 stipulating the rules and effectiveness, such judicial appeal shall be classified as an emergency procedure. Therefore, every delay assigned to the appellant shall be reduced to a half.

3. Any claims or judicial appeals have not suspensive effects.

4. Except if any specific statement of complimentary legal framework to this law states differently, or if any other specific term periods are assigned by the Government, namely in the "despacho" introducing the public tender, the term periods to claim or appeal

10

assigned by the "Código de Procedimento Administrativo", promulgated by Decreto-Lei n.º 57/99/M, of October 11th, as well as the periods of time to require or to practise any acts, to promote, to answer or to exercise any other rights, are reduced to a half.

## Article 13

### Terms of concession

1. The concession term for the operation of games of chance in casino shall be stipulated in the awarded concession contract and shall not be for more than twenty years.

2. Should the awarded term of concession for the games of chance be less than the maximum permitted term as stipulated in this Law, the Government may at any given moment and up to six months prior to the expiry of the concession, grant to the concession holder one or more than one extension of the term, provided that the aggregate term of concession does not exceed the maximum period specified in the preceding Clause.

3. Once the maximum term of concession as stipulated in Clause 1 for the games of chance in casino expires, the concessor may under exceptional circumstances give an extension or extensions to the term of the concession for a maximum of 5 years in total, through means of a Chief Executive's directive that establishes the supporting reasons.

4. The extension of the concession can intend modifications of the previous awarded concession contract or supplementary appendices to it.

## Article 14

### Creditability

1. A concession for the operation of games of chance in casino shall only be granted to a tender applicant who is recognised to be creditable to hold a concession.

2. The applicant for the concession for the operation of games of chance in casino shall be subject to creditability assessment procedures undertaken by the Government.

3. The costs of the investigation intended to assess the creditability of the applicants for a concession for the operation of games of chance in casino shall be paid by these; such costs of investigation shall be deducted from the guarantee deposit paid for the admission to the public tender.

4. When determining creditability, the Government shall take into account especially the following criteria:

1) The applicant's business experience;

2) The applicant's reputation;

3) The nature of business and reputation of other group companies related to the applicant, namely those that are its main associates; and

4) The nature of business and reputation of applicant's direct associates, namely those that are its main associates.

5. The concession holder shall remain creditable for the entire duration of the concession and shall be submitted to continuous monitoring and supervision of its casino operations by the Government.

6. The requirement of creditability shall also extend to the shareholders of the applicant company who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos.

7. Companies that, due to a contract that binds them to a concession holder come to have a management position as well as those who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees shall equally be subject to creditability assessment procedures undertaken by the Government.

Article 15

Financial capacity

1. The applicant for a concession for the operation of games of chance in casino shall demonstrate that it has the adequate financial capacity in order to operate the concession.

2. The applicant for a concession for the operation of games of chance in casino shall be subject to assessment procedures of financial capacity undertaken by the Government.

3. The costs of the investigation intended to assess the financial background of the applicants for a concession for the operation of games of chance in casino shall be paid by these; such costs of investigation shall be deducted from the guarantee deposit paid for the admission to the public tender.

4. When determining financial capacity, the Government shall take into account especially the following criteria:

1) The applicant's economic and financial status;

2) The economic and financial status of the main associate companies of the applicant;

3) The economic and financial status of the applicant's direct associates, namely that guarantee the financing of the investments and obligations that the applicant should comply with;

4) The economic and financial status of the applicant's shareholders who own 5% or more than 5% of the company's share capital;

5) The nature and kind of the casino or casinos which the applicant intends to operate, and the facilities or infrastructure intended to be provided in or in conjunction with the casino or casinos.

5. The concession holder shall maintain financial and economic status for the entire duration of the concession and shall be submitted to continuous monitoring and supervision of its casino operations by the Government.

6. The demand of an appropriate guarantee, such as a bank guarantee, from the concession holder to be given to the Government can take place if there is any accrued risk of diminishing his economic or financial status, without requiring a validated reason.

## Article 16

### Confidentiality

All documents and information contained in the tender proposals and all other relevant tender documents shall be classified as confidential documents and shall be prohibited from review by third parties. Accordingly, Articles 63 to 67 and 93 to 98 of the "Administrative Procedural Act", promulgated by Decreto-Lei n.º 57/99/M, of October 11th, shall be inapplicable.

## SECTION II

## CONCESSION HOLDERS.

## Article 17

### Share capital and shareholding of the concession holder

1. The holders of a concession for the operation of games of chance in casino shall be prohibited to be established or maintained with a share capital of less than 200 million patacas.

2. The share capital of the holders of a concession for the operation of games of chance in casino shall be fully subscribed and paid up in cash at the time of its establishment; the concession holder company shall provide evidence of proof of deposit of the subscribed capital from credit institutions operating in Macao.

14

3. The deposit fund pursuant to the preceding Clause shall not be transferred before the commencement of business.

4. The Chief Executive may order for the increase of the share capital of the established concession holder company, whenever subsequent circumstances justify for such.

5. The entire share capital of the concession holders of games of chance in casino shall be in the form of registered shares.

6. Notwithstanding the above Article 10, n.º 1, with prior approval by the Government, the scope of business activities of holders of a concession for the operation of games of chance may also incorporate other associated business activities.

7. All transfer or encumbrance of ownership rights or other rights attached to the shares in the concession holder company in whatever name, and any act relating to the transfer of voting rights, or any rights of the concession holder company to any person other than the original concession holder shall be approved by the Government, otherwise such transfer shall not be effective.

8. All transfer or encumbrance of ownership rights or other rights as well as any other act relating to the transfer of voting rights or any rights of the concession holder company to any person other than the original concession holder shall be notified to the Gaming Control Board; such notification shall be done within 30 days after the transfer is documented in the book of share register or concerning similar procedures undertaken.

9. Any transfer of the concession of games of chance to a third party in whatever name or any transfer of any rights and obligations pursuant to any legal or contractual agreements to a third party without the Macao SAR's Government approval shall be considered ineffective.

10. Any shareholder with more than 5% shareholding in one concession holder company shall not directly or indirectly hold 5% or more than 5% of shareholding in another

concession holder company in the territory of Macao.

11. A contract signed between the concession holder and a company whereby the latter assumes or could assume the management of the concession holder company without the Macao SAR's Government previous approval shall be considered ineffective.


## Article 18

### Prohibition of accumulation of duties at leading positions

1. The accumulation of duties at leading positions of company bodies of several concession holder companies or companies directly associated to them, as well as the accumulation of duties in company bodies of the concession holder company and their associates is prohibited.

2. All acts or deliberations whereby members of company bodies intervene in violation of the preceding Clause shall be considered ineffective.

3. The Government shall proceed with the removal from duties of the members of the concession holder company bodies who are in violation of Clause 1 of this Article. The Government may also proceed with the temporary or final interdiction of these persons from holding future positions at the concession holder company or associated companies.

4. The nomination of persons that are in violation of Clause 1 of this Article shall be considered administrative infraction.


## Article 19

### Executive Director

1. The management of all concession holder companies for the conduct of games of chance in the Macao SAR must be granted to an Executive Director.

2. The Executive Director shall be a permanent resident of the Macao SAR and shall hold

at least 10% of the share capital of the concession holder company for the conduct of games of chance in the Macao SAR.

3. The act of granting the right of management of the concession holder company, including the his/her appointment, his/her level of authority and term of appointment as well as any changes associated with that appointment particularly regarding his/her temporary and permanent substitution shall first be approved by the SAR Government or will otherwise be considered as ineffective.

4. In addition to complying with Article 14 of this Law regarding the requirement of suitability, the Executive Director shall not be disabled, civil servant or a member of the Executive Council of the Macao SAR.

5. In case a contract is celebrated between the concession holder and a company whereby the latter assumes management of the former, only the latter shall be applied with the prerequisites and restrictions referred to in the preceding clauses.


Article 20

Payment of the concession premium

1. A concession holder is under the obligation to pay an annual premium as prescribed by the concession contract. The amount of the annual premium shall vary in accordance with the approved number of casinos, gaming tables, forms of gaming, location of casinos of the concession holder and other important criteria as set out by the Government.

2. The Government may allow the annual premium to be paid on a monthly basis.

3. The Government may request for the provision of an independent bank guarantee (first demand') or other forms of guarantee accepted by the Government to secure the payment of the annual premium as prescribed in the terms of the concession contract.

## Article 21

### Prohibition of practices of restrictive competition

1. The concession holders of games of chance shall observe the established principles of market economy and operate under an environment of honest and fair competition.

2. The Government shall adopt an impartial attitude towards all concession holders and shall ensure that regulations are observed to secure competition, especially an honest and fair competition amongst all concession holders.

3. Any form of arrangement or act amongst concession holders or associated companies of a concession holder, which may obstruct, restrict, impair or destroy fair competition shall be prohibited.

4. A concession holder or holders shall be prohibited from taking advantage improperly of their leading position in the entire or considerable portion of the market share, which may obstruct, restrict, impair or destroy fair competition amongst concession holders.

5. All arrangements, decisions, acts or facts as prohibited under Clause Three and Four in this Article shall be ineffective, except under special circumstances expressly supported by a Chief Executive's "despacho".

6. Violation of this Article shall constitute an administrative offence notwithstanding the civil or criminal responsibilities that may have arisen from them.

## Article 22

### Other obligations of a concession holder

In addition to the obligations stipulated in this Law and other relevant regulations as well as concession contracts, a concession holder shall also:

1) Maintain in a proper manner all facilities associated and in conjunction with the casinos and ensure that these are operated according to their prescribed and approved

18

functions;

2) Provide a form of cash deposit as prescribed by the Chief Executive as a guarantee on the concession holder's compliance with the legal obligations and the terms of the concession contract. If a guarantee deposit is provided in accordance with Article 20 Clause 3, this guarantee deposit may be waived;

3) Submit any amendment of the Memorandum and Articles of Association to the SAR Government, or otherwise will be rendered ineffective;

4) Inform the Government as soon as possible of any circumstances that could affect the proper functioning of the company, such as any matter regarding its liquidity or solvency, the prosecution or litigation of it or of any of its directors under any law, any fraud, violent or otherwise criminal conduct occurred in its casino or casinos and any hostile action carried out or threatened by any position holder or employee of a government administrative body or law enforcement agency against the company or any of its position holder;

5) Allow the daily inspection of the gaming revenue;

6) Install electronic surveillance devices in gaming rooms or areas as to ensure security for persons and safeguarding assets.

7) Make an annual contribution of no more than 2% of the gross gaming revenue to a public foundation that is aimed at the promotion, development and research of cultural, social, economic, educational, scientific, academic and charitable activities; and

8) Make an annual contribution of no more than 3% of the gross gaming revenue for the development of urban infrastructures, promotion of tourism and social security.

Article 24

Access to gaming rooms or areas

1. The access to the gaming rooms or areas is prohibited to:

1)  Persons below eighteen years old;

2)  Persons of incapacity, interdiction and are fraudulently bankrupt, except for those whose rights have been meanwhile reinstated;

3)  Public Administration officials of the Macao SAR, including security forces and members of the Police Department, except on duty;

4)  Off-duty personnel of the concession holder, but restricted only to the gaming areas as operated by the concession employer entity;

5)  Persons who are intoxicated or affected by alcohol or narcotics; and

6)  Persons who are armed with weapons, explosive devices or carry audio or video recording devices.

2. Free access to the gaming rooms or areas is allowed to the following persons, who are prohibited to gamble directly or through the middleman:

1)  The Chief Executive, the Secretaries of the Government Departments and the members of the Executive Council;

2)  The Commissioner Against Corruption;

3)  The Commissioner of Audit;

4)  The director of the Police Department;

5)  The Director of the Customs and Excise Department;

6)  The members of the concession holder company bodies and their guests;

7)  The members of the company bodies of a company that assumes management role at a concession holder company and their guests; and

8)  The Municipal Council and Chairman of the Municipal Executive Committee of the

functions;

2) Provide a form of cash deposit as prescribed by the Chief Executive as a guarantee on the concession holder's compliance with the legal obligations and the terms of the concession contract. If a guarantee deposit is provided in accordance with Article 20 Clause 3, this guarantee deposit may be waived;

3) Submit any amendment of the Memorandum and Articles of Association to the SAR Government, or otherwise will be rendered ineffective;

4) Inform the Government as soon as possible of any circumstances that could affect the proper functioning of the company, such as any matter regarding its liquidity or solvency, the prosecution or litigation of it or of any of its directors under any law, any fraud, violent or otherwise criminal conduct occurred in its casino or casinos and any hostile action carried out or threatened by any position holder or employee of a government administrative body or law enforcement agency against the company or any of its position holder;

5) Allow the daily inspection of the gaming revenue;

6) Install electronic surveillance devices in gaming rooms or areas as to ensure security for persons and safeguarding assets.

7) Make an annual contribution of no more than 2% of the gross gaming revenue to a public foundation that is aimed at the promotion, development and research of cultural, social, economic, educational, scientific, academic and charitable activities; and

8) Make an annual contribution of no more than 3% of the gross gaming revenue for the development of urban infrastructures, promotion of tourism and social security.

Article 23

Junkets

1. Junkets shall operate in accordance with the prescribed laws and regulations; junkets undertaking junket operations shall be subject to Government inspection and shall apply for a license.

2. In order to operate in casinos, junkets shall register with each concession holder for whom the junket provides services.

3. As regarding the Government, Concession holders shall be accountable for all the undertakings of their junkets, their management personnel and their co-operating persons who operate inside their casinos and shall ensure that their undertakings comply with the laws, rules and regulations. Accordingly, the concession holder shall supervise and control the activities of the said persons.

4. Junkets and their shareholders who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos shall possess suitable creditability.

5. The concession holder shall submit a list of the names of the junkets who are intended to be engaged by the concession holder to provide services in the following year, together with their personal identification information to the Gaming Control Board, for approval of the Government.

6. In order to engage in their activities, a junket may select his co-operating persons; the maximum number of cooperating persons allowed shall be determined annually by the Gaming Control Board. For this purpose, junkets shall through the concession holder provide a list of the co-operating persons with whom they intend to work in the following year to the Gaming Control Board.

20

Article 24

Access to gaming rooms or areas

1. The access to the gaming rooms or areas is prohibited to:

1)  Persons below eighteen years old;

2)  Persons of incapacity, interdiction and are fraudulently bankrupt, except for those whose rights have been meanwhile reinstated;

3)  Public Administration officials of the Macao SAR, including security forces and members of the Police Department, except on duty;

4)  Off-duty personnel of the concession holder, but restricted only to the gaming areas as operated by the concession employer entity;

5)  Persons who are intoxicated or affected by alcohol or narcotics; and

6)  Persons who are armed with weapons, explosive devices or carry audio or video recording devices.

2. Free access to the gaming rooms or areas is allowed to the following persons, who are prohibited to gamble directly or through the middleman:

1)  The Chief Executive, the Secretaries of the Government Departments and the members of the Executive Council;

2)  The Commissioner Against Corruption;

3)  The Commissioner of Audit;

4)  The director of the Police Department;

5)  The Director of the Customs and Excise Department;

6)  The members of the concession holder company bodies and their guests;

7)  The members of the company bodies of a company that assumes management role at a concession holder company and their guests; and

8)  The Municipal Council and Chairman of the Municipal Executive Committee of the

district in which the gaming rooms or areas of the casinos are located.

3. While carrying out their duties, the following persons are also allowed to enter into the gaming rooms and areas, but are prohibited to gamble directly or indirectly:

1) The judicial magistrates and court prosecutors;

2) The officials of the Commission Against Corruption;

3) The officials of the Commission of Audit;

4) The officials of Security Force and the Police Department; and

5) The officials of the Gaming Control Board.


## Article 25

### Exclusion from gaming rooms or areas

1. Inspectors of the Gaming Control Board or management personnel of the casinos may order the exclusion from gaming rooms or areas of violators of gaming regulations or persons whose presence at the gaming rooms or areas is considered inappropriate. Refusal to obey the exclusion order or confirmed orders executed by inspectors or personnel stipulated above shall constitute an offence.

2. Casino personnel who has exercised the power as stated in the preceding Clause shall report to the Gaming Control Board within 24 hours of their decision, explaining the reasons therefor and providing witnesses to the situation, and seeking confirmation from the Gaming Control Board to undertake such a measure.

3. Persons excluded from gaming rooms or areas pursuant to the above two Clauses shall be preventive prohibited from re-entry.

22

Article 26

Reservation of the right of access

Casinos and namely the gaming rooms and areas reserve the right of admission.

CHAPTER III

TAX OBLIGATIONS AND PROVISION OF ACCOUNTS

Article 27

Special gaming tax

1. Each concession holder is under the obligation of paying a special gaming tax, calculated based on the gross gaming revenue.

2. The special gaming tax is charged at 35%.

3. The special gaming tax shall be paid in twelve monthly payments to the Macao Finance Department's treasury within 10 days of the following month.

4. The Macao SAR and the concession holder may agree in the form of a contract on the minimum amount of the guarantee deposit.

5. The Government may demand an appropriate bank guarantee of an amount that is equal to the estimated aggregate yearly total of the special gaming tax payment due each month in order to ensure payment of the special gaming tax.

6. The liabilities arising from the special gaming tax shall be collected in accordance with tax compliance procedures.

Article 28

Taxation system

1. Other than the special gaming tax, concession holders are under the obligation to pay other taxes, contributions, fees and charges as prescribed by law.

2. Whenever there is a justifying reason of public interest, the Chief Executive may exempt on a temporary and exceptional basis, totally or partially, the concession holder from the obligation to pay additional revenue taxation.


Article 29

Taxation on junket commission

1. The concession holders are under the obligation to withhold at source a final tax on the commission or other remuneration paid to junkets and the respective amounts are calculated based on the gaming revenue originated from the junket player.

2. The withholding tax rate on junket commission or other remuneration shall be charged at 5% and shall have an acquittal nature.

3. Due to reasons of public interest, the Chief Executive may partially exempt, for a maximum of a 5 years period of time, for the partial non-payment of the tax referred to in the preceding Clauses. The exemption cannot, however, be superior to 40% of the tax rate.

4. The Chief Executive may authorise due to reasons of public interest for the total or partial exclusion from this taxation of the revenues coming from instalments in goods related to the attribution of facilities to players, namely the arrangement of transportation, accommodation, food and drink and entertainment as offered by junkets.

5. The concession holder shall pay the withholding tax to the Macao Finance Department's treasury in twelve monthly payments within the first 10 days of the

24

following month.

6. The liabilities arising from the tax on commissions or from any other revenues payed to a junket player shall be collected in accordance with tax compliance procedures.


### Article 30

### Accounting and internal auditing

1. A concession holder and companies that assume its management shall maintain a proper accounting system, internal control system and sound management structure and shall comply with any instruction given to it by the Government, especially that from the Gaming Control Board and the Finance Department in regard to any such matter.

2. The business accounting records of the concession holders and companies that assume its management shall be maintained in either one of the official languages of the Macao SAR.

3. For accounting purposes, the financial year of a concession holder company and companies that assume its management shall align with the calendar year.

4. The preparation and submission of accounting records by the concession holders and companies that assume its management shall comply only     current                accounting codification standards prevailing in the Macao SAR. Subject to recommendation by the Director of the Gaming Control Board and the Secretary for Economy and Finance, the Chief Executive shall through a "despacho" issued by him determine as mandatory the existence of certain accounting books and records documentation, and other information that the concession holder is under the obligation of keeping, as well as determine for special criteria to be adopted by the concession holder when recording their business activities, accounting records preparation and submission of operational transactions.

Article 31

Mandatory announcement

1. During the concession term, a concession holder and companies that assume its management are under the obligation of publishing by 30 April of each year in the Official Gazette and in the two most popular newspapers of the Macao SAR, being it mandatory that one is a Chinese publication and the other Portuguese, the following information relating to its activities in respect to the previous year that ended on 31 of December:

1) Balance sheet, profit and loss statement and supplementary appendices;

2) A summary of its business operation;

3) A report from its inspection board;

4) A summary of the external auditor's report;

5) A list of shareholders owning 5% or more than 5% of the share equity of the company at any given time during the year, along with the indication of the respective shareholding percentage;

6) The names of the company's position holders in the departments.

2. The supplementary appendices referred to in item one of the preceding Clause shall contain a listing of all corporate financing activities, amount of funds originated in the respective financial year, the source of funding as well as the application of such funds on fixed and current assets.

3. It is mandatory for the concession holders and companies that assume its management to submit a copy of the required information as prescribed in this Law to the Gaming Control Board at least 10 days in advance.