Article 32

Mandatory submission of information

1. The concession holders and companies that assume its management must submit the trial balance referring to the previous trimester to the Gaming Control Board at the end of the subsequent month. The trial balance of the last trimester shall be submitted to the Gaming Control Board by the end of February of the following year.

2. The concession holders and companies that assume its management must submit to the Gaming Control Board, no later than the thirtieth day prior to the date of the annual general shareholders assembly held for passing the annual accounts, all accounting reports and statistical charts pertaining to the previous financial year.

3. Further to other equivalent obligations established by the present law, the concession holder and companies that assume its management shall submit the following items to the Gaming Control Board within the timeframe as specified in Clause two above:

1) The full names of those who have been members of the board of directors and board of inspectors, alternate or agent, and the person in charge of the accountancy department of the respective accounting period,

2) A report of the board of directors and accounting report, as well as reports from the board of inspectors and the external auditor.

4. The Gaming Control Board and the Finance Department shall request from the concession holder and companies that assume its management any kind of additional data or information in order to facilitate the execution of their duties.

Article 33

Inspection and supervisory activities

1. The Gaming Control Board and the Finance Department shall be entrusted with special

powers by this Law to conduct inspection and supervisory functions in order to verify a concession holder's compliance to this Law.

2. For the above stated purpose, the Gaming Control Board and the Finance Department shall at any time with or without prior notice, directly or with the approval from the most senior official of the department and through appropriately appointed persons and entities, conduct inspection and analysis on the accounting books and records kept by a concession holder and companies that assume its management, including any inspection of transaction records, books, accounting ledgers and other records or documents, inspection of any form and kind of valuable items and all or part of the duplicates for the purpose of ascertaining the concession holder and companies that assume its management's compliance with the applicable laws and regulations.

3. When in the execution of their inspection and supervisory functions, the Gaming Control Board or the Finance Department shall retain any documents or valuable items that could support an act of violation of laws or that may be considered necessary to the investigation.

## Article 34

### External audit of annual accounts

1. Accounting books and records of the concession holders and companies that assume its management shall be subject to an annual external audit carried out by independent and reputable external auditors previously approved and recognised by the Gaming Control Board and the Finance Department.

2. The audit as stipulated in Clause one above shall certify if:

1) The balance sheet, the profit and loss statement and appendices are prepared in accordance with the appropriate laws and regulations;

28

2) The balance sheet, the profit and loss statement and appendices truly and appropriately reflect the financial position of the concession holder or to the companies that assume its management;

3) The accounting books and records of the concession holder or to the companies that assume its management are properly maintained and correctly register its business operations;

4) The concession holder or to the companies that assume its management have provided or not the requested information and detailed explanation, being it necessary to specify those cases where there was a refusal to provide the requested information and clarification as well as forgery of information.

3. The auditor's report shall be submitted along with the accounting reports and statistical charts required in Article 32 Clause 2.

4. In addition to the information required in Clause two of this Article, the Gaming Control Board and the Finance Department shall also request the external auditor of the concession holders to provide other forms of information as and when considered necessary, as well as demand for their presence at meetings with the representatives of the company to facilitate explanation.

5. Without prejudice to the obligations of providing information in this Law and other regulations, the external auditor shall immediately report in writing to the Gaming Control Board of any acts detected in the course of the audit that could seriously cause damages to the concession holder or to the companies that assume its management or to the interests of the Macao SAR, namely:

1) Suspicion of involvement of the concession holder or of the company that assumes its management, of position holders of their company departments or other employees in any criminal or money laundering activities;

29

2) Any improper dealings that may jeopardise the solvency of the concession holder or the company that assume its management;

3) Unauthorised activities;

4) Other acts that in its opinion might seriously cause damages to the concession holder, the company that assumes its management or to the interests of the Macao SAR.

## Article 35

### Special audits

Whenever it is deemed as necessary or appropriate, the Gaming Control Board or the Finance Department can upon authorisation by their most senior official, order any recognised, reputable, independent external auditor or other entity to conduct a special audit at any time with or without prior notice.

## Article 36

### Duty of co-operation of the concession holder and of companies that assume its management

1.The holders of a concession to operate games of chance as well as companies that assume their management shall collaborate with the Government, namely the Gaming Control Board and the Finance Department in the giving of requested information, accounting analysis and assessment, carrying out of special audits and in general the terms imposed by the norms present in this Chapter and supplementary regulation.

2. Violation to the duty of co-operation of concession holders and companies that assume its management shall be considered as administrative infraction.

# CHAPTER IV

## ASSETS USED WITHIN THE CONCESSION

### Article 37

#### Assets of the Macao SAR

1. The concession allows for the temporary transfer to the concession holders of the entitlement, revenue and right use of assets belonging to the Macao SAR which are needed for use within the concession.

2. The above Clause is equally applicable with the necessary adaptations, to the lease or grant of land and natural resources to a concession holder to be used within a concession, for which management is at the responsibility of the Macao SAR abiding to Article 7 of the Lei Básica of the Macao SAR.

3. The concession holder shall, in accordance with instructions from the Gaming Control Board, ensure the proper maintenance or substitution of the assets provided by reason of the concession pursuant to the above two Clauses.

### Article 38

#### Records of transfer

The transfer pursuant to the above Article shall be documented in properly maintained records in triplicate listing all assets with the signatures of the representatives of the Gaming Control Board, the Finance Department and the concession holder.

Article 39

Return on the use of the assets of Macao SAR

1. The concession holders shall, in accordance with the requirements stipulated in the concession contract, provide a return on the use of those assets whose property, management, use and development belong to the Macao SAR.

2. The amount of return referred to in the above Clause shall be subject to an annual adjustment based on the average price index.

3. Should the assets provided to the concession holder for use within a concession as referred to in Article 37 be used in a way that was not contractually agreed upon, the Gaming Control Board and the concession holder shall negotiate and revise the relevant rate of return.

Article 40

Return of the assets used within a concession

1. Once a concession is cancelled, all the casinos with all its material and utensils employed for use within the concession shall return to the Macao SAR, without prejudice to the other assets and rights that shall be contractually returnable.

2. The return of the assets and rights referred to in the preceding Clause does not confer the right to a compensation, except if a contractual provision establishes for the opposite.

3. Assets returned to the Macao SAR upon expiry of the terms of the concession, particularly any material and utensils used in the exploitation of games of chance may be disposed of or destroyed should the Gaming Control Board be of the opinion that they shall no longer be fit for usage, in accordance with the Macao SAR's applicable regulations and procedures relating to asset disposal.

## Article 41

### Inventory of the assets granted to a concession holder

1. All assets granted for use in the concession business pursuant to Article 37 as well as assets returnable to the Region shall be recorded in an inventory in triplicate, with the Gaming Control Board, the Finance Department and the concession holder each retaining a copy.

2. The inventory shall be updated annually no later than 31 May of each year, with the corresponding schedules of the movement of assets.

## Article 42

### Improvement costs

The improvements done under any title on assets used within a concession pursuant to Article 37 as well as on the assets returnable to the Region do not confer the concession holder with the right to compensation.

## CHAPTER V

## NON-PERFORMANCE AND CANCELLATION

## Article 43

### Penalties

1. The penalties a concession holder or the companies that assume its management is under the obligation of paying upon failure to fulfil its duties and responsibilities are stipulated in a Regulamento Administrativo.

2. The penalties referred to in the above Clause are of administrative nature, are regulated

33

in Decreto-Lei n.º 52/99/M, of October 4th, and the penalties shall be administered by the Government.

3. The payment of the penalties shall not impede the initiation of criminal procedures.

4. The concession holder or the companies that assume its management shall be responsible for the payment of the penalties, and shareholders with 10% or more than 10% equity shareholding of the concession company shall be jointly liable to the payment of penalties even if meanwhile the company has been liquidated or ceases to exist due to any reason.

## Article 44

### Mandatory custody on temporary basis

1. The concession for the operation of games of chance in casino may be placed under temporary mandatory custody under any of the following cases:

1) Operations have been suspended or are likely to be suspended for unjustified reasons; or

2) There occurs a serious state of disorder, disturbances in the organisation and operation, or overall management of the facilities and the provision of supplies used within the concession.

2. During the period of temporary mandatory custody, representatives of the SAR Government shall take control of the concession operation and the necessary costs of maintaining the normal operations shall be borne by the concession holder.

3. The temporary mandatory custody continues for as long as it is considered necessary. The SAR Government shall notify the concession holder to resume the exploitation of the concession upon the cancellation of the temporary mandatory custody. Should the concession holder deny to re-assume its duties, the following Article governing

termination shall be applicable.

## Article 45

### Cancellation

A concession for the operation of games of chance in casino shall be cancelled through:

1) Expiry of the term of the concession;

2) Agreement reached between the SAR Government and the concession holder,

3) Redemption;

4) Termination; and

5) Termination due to reasons of public interest.

## Article 46

### Redemption

1. Redemption shall occur whenever the SAR Government redeems the concession grant before the expiry of the term of the concession.

2. The redemption of the concession grant shall confer the concession holders with the right of receiving compensation.

3. The Chief Executive shall, by means of an Administrative Regulation, prescribe the timeframe after which the redemption right can be exercised as well as the criteria that are to be observed in the calculation of the amount of compensation referred to in the above Clause.

## Article 47

### Termination

1. The concession may be unilaterally terminated by SAR Government if the concession

holder fails to honour its obligations and duties as prescribed in the laws and concession contract.

2. In particular, the following constitute as reasons for the unilateral termination of the concession:

  1) The abandonment of the operations or its unjustified suspension;

  2) The total, partial, temporary or permanent transfer of the operations in violation of the laws and terms of the concession contract; and

  3) Failure of payment of taxes, premiums or other returns to the SAR Government as prescribed in the concession contract.

3. The termination of the concession implies that all casinos with all its material and utensils deployed for use under the concession as well as other assets or rights that are contractually returnable shall return to the Macao SAR without compensation to the concession holder.

## Article 48
### Termination due to reasons of public interest

1. Irrespective of whether the concession holder has failed to honour any of its contractual obligations, the SAR Government shall at any time unilaterally terminate the concession for the operation of games of chance in casino due to reasons of public interest.

2. If the concession is terminated pursuant to Clause one of this Article, the concession holder shall be entitled to a reasonable compensation; the calculation of the compensation shall take into consideration the outstanding time until the license expires as well as the investments made by the concession holder.

CHAPTER VI

FINAL AND TRANSITIONAL PROVISIONS

Article 49

Dissolution of applicants for a concession

1. The shareholders of a company constituted abiding to Article 10, Clause 1 of the present Law, to whom a concession has not been granted under the terms of Article 11 of the present Law, shall promote for the dissolution of the public company.

2. The decision to dissolve the companies referred to in the above Clause shall be taken in the 60 subsequent days after it has been notified of not having granted a concession, or, in case of appeal of the decision of not to grant a concession, of the final and enforceable judgement of the appeal,.

3. If the decision to dissolve the company has not been taken in the timeframe referred in the above Clause, the Public Defender is entitled to promote its immediate dissolution.

4. The dissolution shall be registered within 15 days following to the decision of dissolving the company or of the final and enforceable judgement compelling to it.

5. After the dissolution of the company the previous shareholders of 10% of the shares or of more than 10% of the shares are mutually responsible for the debts still existing after that dissolution of the company.

Article 50

Maintenance of the terms of the existing concession contract

The stipulations in this Law shall not affect the maintenance of the terms of the existing concession contract for the monopoly to operate games of chance; the entire contract shall

37

continue to be subject to legislation that is currently in force prior to the coming into effect of this Law, even in case of extension of the term consented under the Article 51.

## Article 51

### Extension of the current concession term

The Chief Executive may under exceptional circumstances and through means of a justified decision extend the term of the current exclusive concession contract to operate games of chance for a maximum period of twelve months.

## Article 52

### Supplementary regulations

1. The Chief Executive and the Government shall publish all supplementary regulations relating to this Law.

2. In addition to ensuring the proper execution of this Law, the supplementary regulations shall include regulations governing the public tender, the concession contract, use and attendance of game rooms, the operation of the premises relating to the conduct of games of chance, the inspection of gross gaming revenues, the conduct of and the persons participated in the operations of games, conduct of games in casinos and defining activities considered a violation of administrative regulations and procedures.

## Article 53

### Non applicability of the "Código do Procedimento Administrativo"

For the purposes of the grant of a concession to operate games of chance in casino, Articles 168, 169, 170, 172, 173 and 174 of Decreto-Lei n.º 57/99/M "Código do Procedimento Administrativo" dated October 11th    shall not be applicable,

38

notwithstanding the above Article 16.

## Article 54

### Revocatory norm

1. All laws that contravene this Law shall be revoked, notwithstanding the above Article 50.

2. In particular, the following laws shall be revoked:

1) Articles 15 to 35, 37 to 52 and 54 to 58 of Diploma Legislativo n.° 1496, of 4 July 1961;

2) Law 6/82/M, of 29 May;

3) Law 10/86/M, of 22 September;

4) Decreto-Lei 2/84/M, of 28 January; and

5) Article 279°, Clause 13 of Estatuto dos Trabalhadores da Administração Pública of Macao, of Decreto-Lei 87/89/M, of 21 December.

## Article 55

### Amendments to the nature of the approved regulations on the operation of games of chance

The following "Despachos", "Portarias" and "Ordens Executivas" relating to the operation of games of chance shall now be changed to "Despacho Regulamentar Externo" issued by the Secretary for Economy and Finance:

1) Portaria 7461, of 1 February 1964;

2) Portaria 8116, of 5 February 1966;

3) Portaria 168/75, of 4 October;

4) Portaria 169/75, of 4 October;

5)  Portaria 223/75, of 20 October;

6)  Portaria 9/76/M, of 17 January;

7)  Portaria 210/76/M, of 13 December;

8)  Portaria 171/79/M, of 27 October;

9)  Portaria 211/80/M, of 15 November;

10) Portaria 54/81/M, of 28 March;

11) Portaria 57/83/M, of 5 March;

12) Portaria 96/85/M, of 18 May;

13) Portaria 97/85/M, of 18 May;

14) Portaria 104/85/M, of 25 May;

15) Despacho 260/85, of 16 December;

16) Despacho 16/SAEFT/86, of 14 July;

17) Portaria 48/86/M, of 22 February,

18) Portaria 153/88/M, of 12 September;

19) Portaria 51/89/M, of 20 March;

20) Portaria 100/89/M, of 12 June;

21) Portaria 108/89/M, of 26 June;

22) Portaria 118/89/M, of 17 July;

23) Portaria 178/89/M, of 23 October;

24) Portaria 15/90/M, of 22 January;

25) Portaria 65/90/M, of 26 February;

26) Portaria 65/90/M, of 19 March;

27) Portaria 57/91/M, of 25 March;

28) Portaria 58/91/M, of 25 March;

29) Portaria 125/91/M, of 15 July;

30) Portaria 135/91/M, of 5 August;

31) Portaria 14/96/M, of 29 January;

32) Portaria 15/96/M, of 29 January;

33) Portaria 21/96/M, of 12 February;

34) Portaria 22/96/M, of 12 February;

35) Portaria 219/96/M, of 26 August;

36) Portaria 261/96/M, of 21 October;

37) Portaria 274/96/M, of 4 November;

38) Portaria 234/98/M, of 16 November;

39) Ordem Executiva 69/2000, of 29 December;

40) Ordem Executiva70/2000, of 29 December; and

41) Ordem Executiva 141/2000, of 24 July;

### Article 57

### Remission of norms that have been revoked

Before this Law becomes effective, all other relevant regulations applicable to those laws that have been revoked shall be regarded as applicable regulations pertaining to this Law.

### Article 58

### Entry into force

1. This Law shall come into effect the day immediately after its publication, without prejudice to the following Clauses.

2. Article 27, Clause 2, Articles 29, 30, 32 and 34 of this Law only comes into effect on the financial year that starts on 1 January 2002.

3. Article 17, Clauses 1 to 3, Articles 18, 19, 21 and 22, paragraphs 2), 7) and 8), Articles

41

23, 28 and 37 to 42 of this Law only come into effect after the publication of the first concession contract for the operation of games of chance in casino resulting from the opening of the first public tender pursuant to Articles 9 and subsequent of this Law.

Approved on the 30 of  August of 2001.

The President of the Legislative Assembly, Susana Chou. Signed on the 19 of September of 2001.

To be published.

The Chief Executive, Ho Hau Wah.



# Request for Expression of Interest (EOI)

# Macao Casino Gaming Concession

## Lodgment of EOI

**EOI must be enclosed in a plain envelope endorsed as follows:**

**Expression of Interest
Macao Casino Gaming Concession**

*and be addressed to :*

**Macao Gaming Committee**

4th Floor, World Trade Center,
No. 918, Avenida de Amizade,
Macao, China

Tel:    (853) 378 221
Fax:    (853) 710 337

**Closing Time and Date: 5:30pm on October 19, 2001**

## Important Information for Respondents

In lodging an Expression of Interest for a Macao casino gaming concession, a respondent is taken to have read and accepted the following:

1. The lodgment of an Expression of Interest by a respondent does not confer any rights upon the respondent to be admitted to a public tender, the outcome of which may be the grant of a Macao casino gaming concession or concessions.

2. The cost of developing an Expression of Interest document shall be borne by the respondent.

3. Since the Request for Expression of Interest is not intended to solicit proposals or tenders for casino gaming concessions in Macao, no queries and/or site visit will be entertained. Respondents may however seek clarification of any matter contained within the Request for Expression of Interest.

4. The Government of the Macao SAR reserves the right to withdraw or amend this Request at anytime without obligation or commitment to any respondent or prospective respondent.

5. The information contained within this request is general in nature. Respondents should make their own inquiries in relation to matters such as the provisions of Law No. 16/2001, which provides the legal framework for the conduct of casino games of chance in the Macao SAR.

6. The property in an Expression of Interest and all documentation lodged with the EOI will pass to the Macao SAR when the EOI is lodged. The information provided in support of an EOI shall not be considered to be confidential information.

Respondents should ensure that the information required to be provided in accordance with Section 4 of this request is both accurate and comprehensive. An Expression of Interest must be in one of the official languages of the Macao SAR (Chinese or Portuguese) or in English. Six copies of the EOI must be lodged.

*Request for EOI: Macao Casino Gaming Concession*

Queries in relation to the content of this request may be directed in the first instance to:

**Macao Gaming Committee**
4th Floor, World Trade Center, No. 918,
Avenida de Amizade,
Macao, China
Tel: (853) 378 221
Fax: (853) 710 337

3

*Request for EOI: Macao Casino Gaming Concession*

1. Overview of the Casino Industry in Macao

Macao's prominence as a casino gaming destination in Asia was assured as early as 1872. In 1937, gambling in Macao was legalized and in 1962, a casino gaming concession was awarded to Sociedade de Turismo e Diversões de Macau (STDM). Since that time, no additional concessions have been granted. The concession held by STDM is due to expire on December 31, 2001.

Macao received over nine million visitors in the year 2000, with the vast majority of them visiting at least one of the eleven casinos in Macao. While over 54% of these visitors came from Hong Kong, residents from Mainland China and Taiwan represent 24.8% and 14.3% of that figure, respectively.

The casino industry in Macao is estimated to have a turnover close to MOP 492 billion (approximately 61.5 billions USD) and a gross revenue of MOP 15.88 billion (close to 2 billions USD) in the year 2000. The casino industry directly employs around ten thousands people. Besides, the industry also sustains a number of junket promoters and independent agents, not to mention the numerous employment opportunities provided by the tourism industry – an industry which the gaming sector helps to enhance through the creation of different transportation infrastructure and entertainment facilities.

There are currently a total of eleven casinos in operation in Macao, all of which function on a 24/7 basis. Of the twenty-four types of games authorized for play in casinos in Macao, twelve table games are offered by the existing casinos. In total, there are 337 gaming tables and 796 slot machines installed in casinos and dedicated Slot Machine Halls. Baccarat and its variants account for about 75% of the tables and 85% of the total Macao casino revenue. Baccarat is the only game played in casino VIP rooms, with those rooms accounting for approximately 70% of the industry's gross revenue.

2. Liberalization of the Macao Casino Gaming Industry

The Government of the Macao SAR has decided to liberalize the casino industry from the beginning of 2002. The objectives of the liberalization include the

4

following:

(i)     The development of a competitive casino industry which will move to adopt more contemporary practices in casino operation and customer service.

(ii)    To provide additional employment opportunities for Macao residents and to derive associated benefits of enhanced economic development and social stability.

(iii)   To consolidate Macao's position as the regional center of casino gaming, with an enhanced reputation for fairness, honesty and freedom from criminal influence in its gaming industry.

The Government has taken the opportunity to develop a new legal framework to govern the operation of casino games of chance (Law No. 16/2001). This Law will be supported by detailed administrative regulations.

## 3.  Key Provisions of the Macao Gaming Legislation (Law No. 16/2001)

Law No. 16/2001 (The Law) was passed on August 30, 2001. The Law provides the legal framework for the conduct of casino games of chance in Macao.

Key features of the Law include the following:

(i)     There are a number of objectives articulated for the legal framework for the operation of casino games of chance, including the intent that those involved in the supervision, management and conduct of casino games are suitable persons to exercise their functions and assume those responsibilities, and that the operation of casinos in the Macao SAR is fair, honest and free of criminal influence. ·

(ii)    While twenty-four games are approved, additional games and their associated rules may be approved by the Secretary for Economy and Finance.

(iii)   The location and premises within which a casino is conducted must be approved by the Government of Macao SAR.

(iv)    The process leading to the award of a concession to conduct casino gaming requires a public tender, access to which may be restricted by pre-qualification.

(v)     A maximum of three concessions may be granted. The term of a concession

is to be stipulated in the contract evidencing the concession but it cannot be longer than twenty years.

(vi)   Subject to a limited exception for foreign incorporated companies, only legally constituted limited companies incorporated in Macao can be admitted to the public tender.

(vii)  The Law provides for an assessment to be undertaken of the suitability of an applicant corporation, and of its financial capacity. This assessment involves the consideration of companies related to the applicant, and the suitability of substantial equity holders and key employees and directors.

(viii) The holder of a concession must maintain not less than MOP 200,000,000 of share capital at all times.

(ix)   Transfers of equity interests and voting or other rights in a concession holding company must be approved by the Government.

(x)    A concession holding company must delegate executive management authority to a permanent resident of the Macao SAR holding not less than 10% of the share capital of that company.

(xi)   The Government has a positive duty imposed upon it to ensure that regulations are observed to secure competition which is both honest and fair among all concession holders.

(xii)  Gaming tax is charged at 35%, based on gross gaming revenue.

*Respondents to this Request are advised to seek their own legal advice in relation to the Law.*

## 4.  Information Required from Respondents

The following information must be provided by the respondent in order to lodge a compliant EOI:

a.   The name, date and place of incorporation of the respondent. An EOI will not be accepted unless it is from a company.

b.   Details of any current casino operator licenses, or concessions held by the respondent or any related company (i.e., either a subsidiary or parent company). The details should include the jurisdiction or jurisdictions in which any such licenses or concessions are held, the date of grant of each such license or concession, and the name and contact details of the regulator

6

responsible for licensing in each such jurisdiction.

c.  The respondent's last annual report or, if the company is not required to have an annual report, its last financial statements. Where the company is required to be subject to audit, a copy of the auditor's report on the financial statements must be included. Alternatively, the respondent can also use other means he/she feels fit to demonstrate the financial capacity of the company.

d.  An organization chart showing the deployment of the company's personnel.

e.  The name and address of directors of the corporation and its senior managers, (designated as General Managers, Vice Presidents and above). For each such person, there must also be detail of his or her place and date of birth, any former names or aliases and the particulars of any relevant experience in the casino industry which he or she may have. In cases where any such person is licensed by a casino regulator, particulars of any license or approval held should be provided together with a copy of the license or approval.

f.  A brief statement is required of the respondent's proposed approach to the development or operation of a casino or casinos in Macao. The statement should not exceed five pages in length.

g.  The respondent must confirm in writing that if it is admitted to the tender round it will incorporate a public company in Macao that is compliant in all respects with the requirements of the Law. The statement must also confirm that the concession holding company will in all respects be subject to the paramountcy of the laws of Macao and its courts.

The EOI must be signed by a duly authorized officer of the respondent. Six copies of the EOI are to be lodged in person or by post with the Macao Gaming Committee. Responses must be received in Macao before 5:30pm on Friday, October 19, 2001. Inquiries concerning the requirements of this Request or the information contained in it should be directed in the first instance to:

### Macao Gaming Committee
4th Floor, World Trade Center,
No. 918, Avenida de Amizade,
Macao, China
Tel: (853) 378 221
Fax: (853) 710 337

7

*Request for EOI: Macao Casino Gaming Concession*

Applicants are directed to re-read the section entitled "Important Information for Respondents"

5.  The Process Post-EOI

Subsequent to the receipt of expressions of interest, the EOIs will be evaluated with a view to determining which respondents, if any, should be admitted to the tender process. It is expected that the request for tender will be issued in the week commencing October 29, 2001. Tender bidders will have approximately five weeks within which to prepare their tenders and provide the required detailed information to enable suitability and financial capacity assessments to be undertaken. Time lines will necessarily be tight given the Government's intention to grant a concession or concessions by the end of the 2001 calendar year.

While tender bidders are likely to be drawn from respondents to the request for expression of interest, the Government reserves the right to extend an invitation to tender to parties who do not register an EOI.

*Amendment:*

*In page 7 of the original version of this document posted on the 8th of October, it was stated that "the EOI are to be lodged by post with the Macao Gaming Committee." To expedite the lodgment of EOI, amendment was made so that "the EOI are to be lodged in person or by post with the Macao Gaming Committee."*

———— **End of Document** ————

**COMPANIES & FINANCE** UK

SUPPORT SERVICES LOWER EXPECTATIONS AS RIVALS WARN

# Hays' forecasts trimmed by brokers

*By Andrew Fetterd*

# E&Y called in as receivers to Snackhouse

*By Alison Smith*

## Atlantic Telecom cuts jobs by half

*By Gautam Malkani*



Old King Coal: Richard Budge, chairman of Coal Power, visits miners at Hatfield Colliery near Doncaster yesterday

## Budge digs deep and saves Hatfield Colliery

*By Andrew Taylor, Utilities Correspondent*

## Deltex Medical to make switch to Aim

*By David Firn*

## Music royalty collector tunes up for Ofex listing

*By David Blackwell*

### Request for Expression of Interest (EOI)
### For Macao Casino Gaming Concession

The Government of the Macao Special Administrative Region of the People's Republic of China proposes to grant a maximum of three concessions for the conduct of Casino Games of Chance.

MLB (S) (LUX) INTERNATIONAL COMPANY
Société d'Investissement à Capital Variable
ANNUAL GENERAL MEETING OF SHAREHOLDERS

PERUVIAN INVESTMENT COMPANY
NOTICE OF THE EXTRAORDINARY GENERAL MEETING OF SHAREHOLDERS TO BE HELD ON 17 OCTOBER 2001

*South China Morning Post    Monday October 8 2001* (handwritten)



# Request for Expression of Interest (EOI)
## *For Macao Casino Gaming Concession*

*The Government of the Macao Special Administrative Region of the People's Republic of China proposes to grant a maximum of three concessions for the conduct of Casino Games of Chance.*

Macao Special Administrative Region's (hereafter referred to as "Macao") prominence as a casino gaming destination in Asia was assured as early as 1872. In 1937, gambling in Macao was legalized and in 1962, a casino gaming concession was awarded to Sociedade de Turismo e Diversões de Macau (STDM). The concession held by STDM is due to expire on December 31, 2001. Upon expiry of the current concession, the Government of Macao intends to liberalize the casino gaming industry by granting up to three concessions.

There are a total of eleven casinos operating in Macao, offering twelve types of table games. Baccara and its varian is the most popular game, accounting for 75% of the tables presently operated by the casinos and 85% of the total casino revenue.

A new Law, Nº 16/2001 (The Law), passed on August 30, 2001, provides the legal framework for the conduct of casino games of chance in Macao. Gaming in Macao is regulated by the Gaming Control Bureau.

The Law requires a public tender to precede the award of any casino concessions. Access to the public tender may be restricted to pre-qualified organizations. A concession to operate casino games of chance in Macao may only be granted to a corporation which is assessed to be suitable

to hold such a concession and which can demonstrate that it has adequate financial capacity to conduct its business under the concession.

Organizations interested in being considered for the grant of a concession for the conduct of casino games of chance in Macao are invited to lodge an EOI. Information on the EOI registration procedure and a downloadable EOI document are available in PDF format from the Government's web-site: **www.macau.gov.mo**. The same documents may also be obtained upon written request from the Macao Gaming Committee. The written request should be directed to the following fax number: (853) 710 337.

Organizations wishing to lodge an EOI must do so by post, addressed to the attention of the President of the Macao Gaming Committee. No EOI will be accepted after October 19, 2001.

**Respondents should note that this invitation does not constitute part of the tender process leading to the grant of a casino gaming concession in Macao. Accordingly, no queries and/or site visits will be entertained at this time. The lodgment of an EOI does not give rise to an obligation on the part of the Government of Macao to admit a respondent to the tender process leading to the grant of a concession to operate casino games of chance in Macao.**

# Pedido de Manifestação de Interesse (MI)
## Para Concessão de Jogos em Casinos em Macau



O Governo da Região Administrativa Especial de Macau da República Popular da China propõe-se atribuir um máximo de três concessões para exploração de jogos de fortuna ou azar nos casinos.

A importância da Região Administrativa Especial de Macau (adiante designado por "Macau") como destino de jogo na Ásia foi assegurada desde 1872. O jogo foi legalizado em Macau em 1937 e, em 1962, foi atribuída à Sociedade de Turismo e Diversões de Macau (STDM) a sua concessão. O monopólio detido pela STDM irá expirar a 31 de Dezembro de 2001. Após esta data, o Governo de Macau pretende liberalizar a indústria de jogo em casino através da atribuição de um máximo de três concessões.

Actualmente existem onze casinos a operar em Macau, oferecendo um total de doze tipos de jogos de mesa. O Bacará, e as suas variantes, é o jogo mais popular, representando 75% das mesas presentemente operadas pelos casinos e 85% da receita total destes.

A nova Lei n.º 16/2001 (adiante designada por "Lei"), aprovada a 30 de Agosto de 2001, define o regime jurídico da exploração de jogos de fortuna ou azar nos casinos em Macau. O jogo em Macau é fiscalizado pela Direcção de Inspecção e Coordenação de Jogos.

A Lei exige a abertura de concurso público para a atribuição das concessões de jogo. O acesso ao concurso público pode ser limitado a

sociedades pré-qualificadas. Uma concessão para exploração de jogos de fortuna ou azar nos casinos apenas pode ser adjudicada a uma concorrente que seja considerada idónea para obter a concessão, e que possa fazer prova de adequada capacidade financeira para operar a concessão.

As sociedades interessadas na atribuição de concessão para exploração de jogos de fortuna ou azar nos casinos em Macau devem apresentar uma MI. A informação necessária ao processo de registo da MI, bem como uma minuta de MI podem ser obtidas em formato PDF na página do Governo na "Internet": www.macau.gov.mo. Estes documentos podem também ser obtidos mediante pedido escrito dirigido à Comissão de Jogo de Macau, através do fax: (853) 710 337.

As sociedades que desejem apresentar uma MI têm de a fazer através de carta enviada por correio dirigida ao Presidente da Comissão de Jogo de Macau. Não serão aceites MI após o dia 19 de Outubro de 2001.

Avisam-se os interessados que este anúncio não constitui parte integrante do concurso público para atribuição de concessão de jogos de fortuna ou azar nos casinos em Macau. Consequentemente, não serão, por enquanto, recebidas quaisquer perguntas e/ou visitas aos locais de funcionamento dos casinos. A simples apresentação de uma MI não constitui, por parte do Governo de Macau, obrigação de admitir o respectivo proponente ao concurso público para atribuição de concessão de exploração de jogos de fortuna ou azar nos casinos em Macau.

*Ponto Final*



# 徵求提交意向書

## 澳門娛樂場幸運博彩專營權

中華人民共和國澳門特別行政區政府計劃批給最多三個經營娛樂場幸運博彩之牌照。

澳門特別行政區(下簡稱"澳門")早於1872年已確定其作為亞洲主要博彩娛樂點的重要地位。澳門在1937年正式將博彩活動合法化,並在1962年將博彩娛樂場之專營權批給澳門旅遊娛樂有限公司(STDM),而STDM所擁有之專營權將於二零零一年十二月三十一日屆滿。在該專營權屆滿後,澳門政府擬開放博彩業並批給最多三個專營牌照。

目前,澳門總共有十一個博彩娛樂場所,合共提供十二類幸運博彩方式,其中,百家樂及由其演變而來的博彩方式最受歡迎,佔目前娛樂場內博彩桌總數的百分之七十五,並佔娛樂場總收入的百分之八十五。

第16/2001號法律(下稱"法律")於二零零一年八月三十日獲得通過,其制訂了在澳門從事幸運博彩業的法律框架。澳門博彩業是由博彩監察暨協調局監管的。

該法律規定任何娛樂場專營權的批給必須首先通過公開投標程序。參與有關公開投標可以只限於已預先就許可資格之機構。在澳門經營幸運博彩娛樂場的專營權只可批給一間被評估為適合持有此專營權之公司,該公司亦同時須顯示出其具備足夠之財政實力在該專營權下從事其業務。

現邀請有興趣被考慮獲得澳門娛樂場幸運博彩專營權批給之機構提交一份意向書。有關意向書的登記程序資料及一份以PDF格式存放的意向書文件可透過澳門政府網站 www.macau.gov.mo 瀏覽及下載,或通過傳真(853)710 337向澳門博彩委員會索取。

有意者必須以郵遞方式提交意向書,抬頭應註明收件人為澳門博彩委員會主席。二零零一年十月十九日後收到之意向書將不予受理。

提交意向書之機構必須注意:此邀請並不作為澳門娛樂場幸運博彩專營權批給公開投標的組成部分,因此,目前任何查詢及/或考察之要求將不會被受理。意向書的提交對澳門政府不構成任何義務,即意向書的提交並不代表接受意向書提交者進入有關澳門娛樂場幸運博彩的專營權批給之公開投標程序。



# Request for Expression of Interest (EOI)
## For Macao Casino Gaming Concession

*The Government of the Macao Special Administrative Region of the People's Republic of China proposes to grant a maximum of three concessions for the conduct of Casino Games of Chance.*

The Macao Special Administrative Region's (hereafter referred to as "Macao") prominence as a casino gaming destination in Asia was assured as early as 1872. In 1937, gambling in Macao was legalized and in 1962, a casino gaming concession was awarded to Sociedade de Turismo e Diversos de Macau (STDM). The concession held by STDM is due to expire on December 31, 2001. Upon expiry of the current concession, the Government of Macao intends to liberalize the casino gaming industry by granting up to three concessions.

There are a total of eleven casinos operating in Macao, offering twelve types of table games. Baccarat and its variants is the most popular game, accounting for 75% of the tables presently operated by the casinos and 85% of the total casino revenue.

A new Law, No 16/2001 (The Law), passed on August 30, 2001, provides the legal framework for the conduct of casino games of chance in Macao. Gaming in Macao is regulated by the Gaming Control Bureau.

The Law requires a public tender to precede the award of any casino concessions. Access to the public tender may be restricted to pre-qualified organizations. A concession to operate casino games of chance in Macao may only be granted to a corporation which is assessed to be suitable to hold such a concession and which can demonstrate that it has adequate financial capacity to conduct its business under the concession.

Organizations interested in being considered for the grant of a concession for the conduct of casino games of chance in Macao are invited to lodge an EOI. Information on the EOI registration procedure and a downloadable EOI document are available in PDF format from the Government's web-site: **www.macau.gov.mo**. The same documents may also be obtained upon written request from the Macao Gaming Committee. The written request should be directed to the following fax number: (853) 710 337.

Organizations wishing to lodge an EOI must do so by post, addressed to the attention of the President of the Macao Gaming Committee. No EOI will be accepted after October 19, 2001.

**Respondents should note that this invitation does not constitute part of the tender process leading to the grant of a casino gaming concession in Macao. Accordingly, no queries and/or site visits will be entertained at this time. The lodgment of an EOI does not give rise to an obligation on the part of the Government of Macao to admit a respondent to the tender process leading to the grant of a concession to operate casino games of chance in Macao.**



# Lista de empresas interessadas

A lista, divulgada ontem, de empresas e consórcios que entregaram ao Governo Manifestações de Interesse formais no processo de liberalização do jogo em curso é a seguinte:

## MACAU:

- Sociedade de Turismo e Diversões de Macau (STDM);
- Macau Leisure World Resort Limited;
- Sociedade de Importação e Exportação Silver Faith (Holdings) Limitada;
- Baía da Nossa Senhora da Esperança Real Estate Development Company Limited;
- Moon Valley Inc.;
- Agência Comercial San Tai Son Ltd.

## CONSÓRCIOS

- Genting International Consortium (consórcio que integra interesses de Macau e da Maláisia);
- Asiawide Holdings Limited (consórcio que integra interesses de Macau, Hong Kong e Grã-Bretanha);
- Grand Macau International Development (consórcio que integra interesses de Macau e de Hong Kong);
- Kao U Holding Ltd. (consórcio que integra interesses de Macau e de Hong Kong);
- Wynn Resorts (Macau) Limited (consórcio que integra interesses de Macau e dos Estados Unidos);

- Sun Entertainment Holding Co. (consórcio que integra interesses de Macau e dos Estados Unidos);
- Genton International Ltd. (empresa da Maláisia);
- Environmental Energy Investment Limited (consórcio que integra interesses de Hong Kong, Filipinas e da Nova Zelândia).

## HONG KONG

- Golden Island Limited;
- Chow Tai Fook Enterprises Ltd.;
- Art Concept International Foundation for Cultural Study.

## GRÃ-BRETANHA

- Aspinall's Club Ltd.

## ESTADOS UNIDOS

- Crown Group Inc.;
- Macau-Las Vegas East Development Corp. Inc.;
- The Venetian;
- MGM Mirage.

01.10.23

[<] [^] [>]

# REGIÃO ADMINISTRATIVA ESPECIAL DE MACAU

## Regulamento Administrativo n.º 26/2001

Consulte também: Lei n.º 16/2001, Despacho do Chefe do Executivo n.º 215/2001, Despacho do Chefe do Executivo n.º 216/2001, Despacho do Chefe do Executivo n.º 217/2001, Rectificação

Regulamenta o concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, o contrato de concessão e os requisitos de idoneidade e capacidade financeira das concorrentes e das concessionárias

CAPÍTULO I - DISPOSIÇÕES GERAIS
CAPÍTULO II - DO PRÉMIO
CAPÍTULO III - DA IDONEIDADE
CAPÍTULO IV - DA CAPACIDADE FINANCEIRA
CAPÍTULO V - DA FORMAÇÃO DO CONTRATO DE CONCESSÃO
CAPÍTULO VI - DO CONCURSO PÚBLICO
    SECÇÃO I - Da comissão do concurso
    SECÇÃO II - Da abertura do concurso
    SECÇÃO III - Dos elementos que servem de base ao concurso
    SECÇÃO IV - Dos prazos e do modo de apresentação a concurso
    SECÇÃO V - Das concorrentes
    SECÇÃO VI - Da caução para admissão a concurso
    SECÇÃO VII - Da proposta de adjudicação
    SECÇÃO VIII - Do acto de abertura das propostas de adjudicação
    SECÇÃO IX - Da consulta e das negociações
    SECÇÃO X - Da adjudicação
    SECÇÃO XI - Da garantia do cumprimento
    SECÇÃO XII - Do contrato de concessão
CAPÍTULO VII - DO CONCURSO LIMITADO COM PRÉVIA QUALIFICAÇÃO
CAPÍTULO VIII - DISPOSIÇÕES FINAIS E TRANSITÓRIAS

ANEXO I - ANNEX I
ANEXO II - ANNEX II
ANEXO III - ANNEX III

O Chefe do Executivo, depois de ouvido o Conselho Executivo, decreta, nos termos da alínea 5) do artigo 50.º da Lei Básica da Região Administrativa Especial de Macau e do artigo 52.º da Lei n.º 16/2001, para valer como regulamento administrativo, o seguinte:

## CAPÍTULO I

## DISPOSIÇÕES GERAIS

### Artigo 1.º

### Âmbito

O presente regulamento administrativo regula o concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, nomeadamente nos seus aspectos processuais, o contrato de concessão e os requisitos de idoneidade e capacidade financeira das concorrentes a uma concessão para a exploração de jogos de fortuna ou azar em casino e das concessionárias, incluindo os respectivos processos de verificação.

### Artigo 2.º

### Definições

Para efeitos do presente regulamento administrativo, entende-se por:

1) Sócia dominante - a pessoa singular ou colectiva que, de acordo com o n.º 1 do artigo 212.º do **Código Comercial**, por si só ou conjuntamente com outras sociedades de que seja também sócia dominante ou com outras sócias a quem esteja ligada por acordos parassociais, detém uma participação maioritária no capital social, dispõe de mais de metade dos votos ou do poder de fazer eleger a maioria dos membros da administração de uma sociedade;

2) Casinos - os locais e recintos autorizados e classificados como tal pelo Governo;

3) Jogos de fortuna ou azar - aqueles em que o resultado é contingente por depender exclusiva ou principalmente da sorte do jogador;

4) Sociedades gestoras - aquelas que, através de contrato celebrado com uma concessionária, assumem poderes de gestão relativos a esta;

5) Entidades estreitamente associadas a uma concorrente ou a uma concessionária - as pessoas, singulares ou colectivas, com as quais uma concorrente ou uma concessionária tem uma relação especial, em virtude de haverem assumido o compromisso ou prestado garantia de financiamento dos investimentos e obrigações que uma concessionária se propõe realizar ou assumir, ou em virtude de, num período trienal, a média do volume de negócios anual com uma concorrente ou uma concessionária ser igual ou superior a 500 milhões de patacas, ou em virtude de preencherem outros critérios ou requisitos aprovados por despacho do Secretário para a Economia e Finanças;

6) Comissão do concurso - o órgão previsto no artigo 44.º do presente regulamento administrativo.

## CAPÍTULO II

## DO PRÉMIO

### Artigo 3.º

### Natureza jurídica do prémio

fortuna ou azar em casino, as concessionárias ficam obrigadas ao pagamento de um prémio à Região Administrativa Especial de Macau, adiante abreviadamente designada por Região.

2. O montante do prémio a pagar pelas concessionárias é composto por uma parte fixa e uma parte variável.

3. A parte fixa do prémio é igual para todas as concessionárias e determinada por despacho do Chefe do Executivo, a publicar no Boletim Oficial da Região Administrativa Especial de Macau até ao momento da abertura do concurso.

4. A parte variável do prémio é determinada em função do conteúdo específico de cada uma das concessões, e é apurada através dos critérios previstos no artigo seguinte.

5. O montante global do prémio a pagar por cada concessionária é fixado no respectivo contrato de concessão.

### Artigo 4.º

#### Critérios para a determinação da parte variável do prémio

Para efeitos de determinação da parte variável do prémio são tomados em consideração, designadamente, os seguintes critérios:

1) Número de casinos que cada concessionária seja autorizada a operar;

2) Número de mesas de jogo cuja exploração é autorizada;

3) Tipos de jogos cuja exploração é autorizada; e

4) Localização geográfica dos casinos.

### Artigo 5.º

#### Pagamento do prémio

1. O pagamento do prémio é fraccionado em prestações anuais.

2. O Governo pode determinar que as prestações anuais relativas ao prémio sejam pagas mensalmente.

3. Os contratos de concessão podem prever mecanismos de actualização do montante do prémio a pagar pelas concessionárias.

# CAPÍTULO III

# DA IDONEIDADE

## Artigo 6.º

### Idoneidade das concorrentes e das concessionárias

1. Uma concessão para a exploração de jogos de fortuna ou azar em casino apenas pode ser

uma concorrente que seja considerada idónea para a obter, ressalvado o disposto

.º.

essionárias são obrigadas a permanecer idóneas durante o período da concessão.

tos do número anterior, as concessionárias estão sujeitas a uma contínua e
e monitorização e supervisão por parte do Governo.

## Artigo 7.º

Idoneidade dos accionistas, administradores e principais empregados

a de idoneidade das concorrentes, bem como das concessionárias, estende-se aos
destas titulares de valor igual ou superior a 5% do seu capital social, aos seus
dores e aos seus principais empregados com funções relevantes no casino.

## Artigo 8.º

ificação da idoneidade das concorrentes, das concessionárias e dos seus
accionistas, administradores e principais empregados

orrentes, as concessionárias, os accionistas destas titulares de valor igual ou
5% do seu capital social, os seus administradores e os seus principais
com funções relevantes no casino estão sujeitos a um processo de verificação
de por parte do Governo.

icação da idoneidade das concorrentes e das concessionárias, o Governo toma
ração, entre outros julgados relevantes, os seguintes critérios:

ência da concorrente ou da concessionária, apurada através da análise dos dados
mediante o preenchimento do "Formulário relativo à revelação de dados das
ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento
vo e é dele parte integrante;

ção da concorrente ou da concessionária, apurada através da análise dos dados
mediante o preenchimento do "Formulário relativo à revelação de dados das
ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento
vo, e do "Formulário relativo à revelação de dados pessoais dos accionistas e
tradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II
regulamento administrativo e é dele parte integrante, bem como de um relatório
o de risco relativamente à concorrente ou à concessionária;

za e reputação de sociedades pertencendo ao mesmo grupo da concorrente ou da
ária, nomeadamente das que são suas sócias dominantes, apuradas através da
dados fornecidos mediante o preenchimento do "Formulário relativo à revelação
s concorrentes ou concessionárias", cujo modelo constitui o Anexo I ao presente
administrativo, e do "Formulário relativo à revelação de dados pessoais dos
dos administradores das concorrentes/concessionárias", cujo modelo constitui
no presente regulamento administrativo, bem como de um relatório de avaliação
tivamente às sócias dominantes da concorrente ou da concessionária; e

r e a reputação de entidades estreitamente associadas à concorrente ou à
ária, nomeadamente das que são sócias dominantes daquelas, apurados através

revelação de dados das concorrentes ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento administrativo, e do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, bem como de um relatório de avaliação de risco relativamente às entidades estreitamente associadas à concorrente ou à concessionária, nomeadamente das que são sócias dominantes daquelas.

3. Na verificação da idoneidade dos accionistas das concorrentes e das concessionárias titulares de valor igual ou superior a 5% do seu capital social, bem como na verificação da idoneidade dos administradores das concorrentes e das concessionárias, o Governo toma em consideração, entre outros julgados relevantes, os dados fornecidos mediante o preenchimento do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, bem como de um relatório de avaliação de risco relativamente a esses accionistas e administradores.

4. Na verificação da idoneidade dos principais empregados das concorrentes e das concessionárias com funções relevantes no casino, o Governo toma em consideração, entre outros julgados relevantes, os dados fornecidos mediante o preenchimento do "Formulário contendo dados sobre os principais empregados das concorrentes ou das concessionárias com funções relevantes no casino", cujo modelo é aprovado por despacho do Secretário para a Economia e Finanças.

5. Na verificação da idoneidade das concorrentes, das concessionárias, dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social, dos seus administradores e dos seus principais empregados com funções relevantes no casino, o Governo toma ainda em especial consideração o cumprimento das normas legais a que cada uma destas entidades esteja vinculada.

6. Para efeitos da contínua e permanente monitorização e supervisão da idoneidade das concessionárias, dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social, dos seus administradores e dos seus principais empregados com funções relevantes no casino, o Governo procede durante o período da concessão à actualização e confirmação dos dados constantes dos documentos referidos nos números anteriores.

7. Os relatórios de avaliação de risco referidos nos n.os 2 e 3 e noutros preceitos do presente regulamento administrativo devem conter informação e dados relativos à identificação da pessoa ou sociedade e respectivos titulares dos órgãos sociais, às acções judiciais por esta propostas ou em que é demandada, à sua situação económica e financeira, incluindo eventuais mútuos ou operações financeiras relevantes e à estimativa do valor dos bens e direitos de que é titular, nos termos requeridos pelo Anexo I ao presente regulamento administrativo.

### Artigo 9.º

### Custos

1. Os custos do processo de verificação da idoneidade das concorrentes, dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social, dos seus administradores e dos seus principais empregados com funções relevantes no casino, são suportados pelas concorrentes, sendo deduzidos do montante da caução a prestar para admissão a concurso.

garantir os custos do processo de verificação da idoneidade e, tendo sido exigido não houver sido efectuado o seu reforço, o débito daí resultante constitui uma dívida da concorrente à Região, sendo cobrada em processo de execução fiscal.

3. Os custos do processo de verificação da idoneidade das concessionárias, dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social, dos seus administradores e dos seus principais empregados com funções relevantes no casino, são suportados pelas concessionárias, sendo o modo do seu pagamento estabelecido no respectivo contrato de concessão ou mediante acordo entre o Governo e a concessionária.

4. As dívidas relativas ao pagamento dos custos do processo de verificação referido no número anterior são cobradas em processo de execução fiscal.

5. As certidões ou outros documentos emitidos pela Direcção de Inspecção e Coordenação de Jogos dos quais constem, de forma pormenorizada, os custos do processo de verificação referidos no presente artigo, constituem prova bastante de tais custos.

## Artigo 10.º

### Revelação de informação

1. Para efeitos de verificação da idoneidade, a concorrente ou a concessionária submete ao Governo:

1) Relativamente a si e à sua sócia dominante, um exemplar do "Formulário relativo à revelação de dados das concorrentes ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento administrativo, devidamente preenchido e assinado, sendo as assinaturas objecto de reconhecimento notarial presencial;

2) Relativamente a cada accionista titular de valor igual ou superior a 5% do seu capital social e a cada um dos seus administradores, um exemplar do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, devidamente preenchido e assinado pelo respectivo accionista ou administrador, sendo a assinatura objecto de reconhecimento notarial presencial;

3) Relativamente a cada principal empregado com funções relevantes no casino, um exemplar do "Formulário contendo dados sobre os principais empregados das concorrentes ou das concessionárias com funções relevantes no casino", devidamente preenchido e assinado pelo respectivo principal empregado, sendo a assinatura objecto de reconhecimento notarial presencial.

2. Para efeitos de verificação da idoneidade, cada concorrente, concessionária, sócia dominante destas, accionista daquelas titular de valor igual ou superior a 5% do seu capital social, seu administrador e seu principal empregado com funções relevantes no casino, autoriza o Governo a aceder a todos os documentos, informações e dados que o Governo considere necessários para tal verificação, ainda que protegidos por dever de sigilo, designadamente submetendo ao Governo um exemplar da "Declaração autorizando a revelação de informação", cujo modelo constitui o Anexo III ao presente regulamento administrativo e é dele parte integrante, devidamente preenchido e assinado, sendo as assinaturas objecto de reconhecimento notarial presencial.

3. Quanto aos accionistas ou administradores residentes em jurisdição na qual não seja

possível obter o reconhecimento notarial presencial das assinaturas nos documentos referidos nos números anteriores, deve ser produzida forma de reconhecimento das assinaturas por parte de autoridade pública competente, devidamente legalizado.

## Artigo 11.º

### Dever de cooperação

1. Para efeitos do disposto no presente regulamento administrativo, em especial no presente capítulo, e demais legislação complementar da Lei n.º 16/2001, para além da submissão ao Governo dos exemplares da "Declaração autorizando a revelação de informação" referidos no n.º 2 do artigo anterior, impende sobre cada concorrente, concessionária, sócia dominante destas, accionista daquelas titular de valor igual ou superior a 5% do seu capital social, administrador daquelas e principal empregado com funções relevantes no casino, um especial dever de cooperação com o Governo, devendo submeter quaisquer documentos e prestar quaisquer informações, dados, autorizações ou provas que para o efeito lhe sejam solicitados.

2. Para efeitos do disposto no presente regulamento administrativo, em especial no presente capítulo, e demais legislação complementar da Lei n.º 16/2001, impende sobre cada concessionária, sua sócia dominante, seu accionista titular de valor igual ou superior a 5% do capital social, seu administrador e seu principal empregado com funções relevantes no casino, a obrigação de disponibilizar imediatamente ao Governo qualquer documento, informação ou dado que o Governo considere necessário para verificar se a idoneidade se mantém.

3. Para efeitos dos processos de verificação da idoneidade, impende sobre todas as pessoas e entidades, singulares ou colectivas, públicas ou privadas, um dever de cooperação com o Governo, devendo ser submetidos quaisquer documentos e prestadas quaisquer informações, dados, autorizações ou provas que lhes sejam solicitados relativamente a qualquer concorrente ou concessionária.

## Artigo 12.º

### Conclusão do processo de verificação da idoneidade

1. Os processos de verificação da idoneidade são instruídos pela Direcção de Inspecção e Coordenação de Jogos e terminam com a elaboração de relatórios por parte do seu director, onde se consideram idóneos, ou não, a concorrente ou a concessionária, os accionistas destas titulares de valor igual ou superior a 5% do seu capital social, os seus administradores e os principais empregados com funções relevantes no casino.

2. Os processos de verificação da idoneidade referidos no presente capítulo devem ser concluídos antes do acto de adjudicação.

3. Para efeitos do processo de instrução dos processos de verificação da idoneidade, pode a Direcção de Inspecção e Coordenação de Jogos recorrer a empresas especializadas e obter a colaboração de qualquer outro serviço da Administração.

4. Os relatórios referidos no n.º 1 são enviados pela Direcção de Inspecção e Coordenação de Jogos ao Secretário para a Economia e Finanças, excepto os relatórios respeitantes às concorrentes que são enviados à comissão do concurso, desde que a conclusão dos processos de verificação da idoneidade não ocorra em momento posterior à outorga dos contratos de concessão.

5. A Direcção de Inspecção e Coordenação de Jogos pode, com relevância, ouvir das pessoas ou entidades referidas no n.º 1 a esclarecer qualquer aspecto ou a completar qualquer dado, contanto que não se trate de um elemento essencial, antes de terminar a elaboração do relatório respectivo.

6. Se no relatório referido no n.º 1 respeitante a uma concorrente se concluir que a mesma não é considerada idónea, tal implica a sua exclusão do concurso, podendo a comissão do concurso determinar a repescagem de concorrente que tenha sido excluída em fase anterior, nos termos previstos no n.º 4 do artigo 75.º.

7. Sem prejuízo do disposto no n.º 5, se no relatório referido no n.º 1 respeitante a uma concessionária se concluir que a mesma deixou de ser idónea, o Governo pode permitir a sanação do vício que fundamenta a perda de idoneidade, se este for sanável; se o vício que fundamenta a perda de idoneidade não for sanável, o Governo promove a rescisão unilateral do respectivo contrato de concessão, nos termos e para os efeitos do disposto no artigo 48.º da Lei n.º 16/2001.

8. Se nos relatórios referidos no n.º 1 respeitantes a administrador ou a principal empregado com funções relevantes no casino se concluir que o mesmo não é considerado idóneo, deve a respectiva concorrente ou concessionária promover a sua imediata cessação de funções.

9. Se no relatório referido no n.º 1 respeitante a accionista de uma concorrente ou de uma concessionária titular de valor igual ou superior a 5% do seu capital social se concluir que o mesmo não é considerado idóneo, este, sem prejuízo do disposto no n.º 7 do artigo 17.º da Lei n.º 16/2001, deve transmitir as suas acções a terceiro no prazo fixado pelo Governo para o efeito; se, expirado tal prazo, a transmissão não tiver sido efectuada, deve a respectiva concorrente ou concessionária adquirir essas acções.

10. O disposto nos números anteriores não afasta a aplicação de multas ou outras penalidades que possam ser aplicadas.

## Artigo 13.º

### Conclusão posterior do processo de verificação da idoneidade

1. Em casos excepcionais, devidamente autorizados pelo Governo, pode a conclusão dos processos de verificação da idoneidade ocorrer em momento posterior ao do acto de adjudicação.

2. Quando a conclusão de processo de verificação da idoneidade ocorrer em momento posterior ao do acto de adjudicação, caso já tenha sido atribuída uma concessão, no respectivo contrato de concessão é obrigatoriamente aposta uma cláusula condicionando a validade do contrato ao resultado do respectivo processo de verificação da idoneidade, sem prejuízo do disposto no n.º 5 do artigo anterior.

## Artigo 14.º

### Obrigação de comunicação

Para efeitos de apreciação da sua idoneidade, as concorrentes e as concessionárias estão obrigadas a comunicar à Direcção de Inspecção e Coordenação de Jogos, tão brevemente quanto possível, qualquer alteração iminente ou previsível quanto aos seus accionistas titulares de valor igual ou superior a 5% do seu capital social, aos seus administradores e aos seus principais empregados com funções relevantes no casino, bem como qualquer

alteração iminente ou previsível da estrutura societária e na composição da administração das suas sócias dominantes ou das entidades estreitamente a elas associadas e respectivas sócias dominantes.

## Artigo 15.º

### Contratos de fornecimento e de prestação de bens e serviços

1. São obrigatoriamente reduzidos a escrito os contratos de fornecimento e de prestação de bens ou serviços de valor igual ou superior a 1 milhão de patacas celebrados por uma concessionária ou pela respectiva sociedade gestora.

2. As concessionárias, ou as respectivas sociedades gestoras, estão obrigadas a remeter à Direcção de Inspecção e Coordenação de Jogos cópia de todos os contratos referidos no número anterior, bem como dos demais documentos relativos a essas relações contratuais.

3. Devem ainda ser remetidas à Direcção de Inspecção e Coordenação de Jogos cópias de todos os contratos, bem como dos demais documentos relativos a essa relação contratual, quando os pagamentos a uma mesma entidade atingem anualmente um valor igual ou superior a 1 milhão de patacas, a título de fornecimentos ou de prestações de bens ou serviços.

4. A obrigação de remessa constante do n.º 2 deve ser cumprida no prazo de 15 dias após a celebração do contrato, se prazo mais curto não for fixado pela Direcção de Inspecção e Coordenação de Jogos; a obrigação de remessa constante do número anterior deve ser cumprida no prazo de 15 dias após a celebração do acto ou contrato cujo valor, somado ao de actos ou contratos anteriores, perfaça o montante referido.

5. O incumprimento das obrigações previstas no presente artigo constitui infracção administrativa e, independentemente de multas ou outras penalidades a que haja lugar, é tomado em consideração para efeitos de verificação da idoneidade das concessionárias ou das respectivas sociedades gestoras.

## Artigo 16.º

### Idoneidade das sociedades gestoras

1. São igualmente sujeitas a um processo de verificação da idoneidade as sociedades gestoras, bem como os titulares de valor igual ou superior a 5% do seu capital social, os seus administradores e os seus principais empregados com funções relevantes no casino.

2. Aplica-se ao processo de verificação da idoneidade das sociedades gestoras o disposto nos artigos do presente capítulo relativamente ao processo de verificação da idoneidade das concessionárias.

3. Aplica-se ao processo de verificação da idoneidade dos titulares de valor igual ou superior a 5% do capital social das sociedades gestoras e dos administradores destas o disposto nos artigos do presente capítulo relativamente ao processo de verificação da idoneidade dos accionistas das concessionárias titulares de valor igual ou superior a 5% do seu capital social e dos administradores destas.

4. Aplica-se ao processo de verificação da idoneidade dos principais empregados das sociedades gestoras com funções relevantes no casino o disposto nos artigos do presente

capítulo relativamente ao processo de verificação da idoneidade dos principais empregados das concessionárias com funções relevantes no casino.

# CAPÍTULO IV

## DA CAPACIDADE FINANCEIRA

### Artigo 17.º

#### Capacidade financeira das concorrentes e das concessionárias

1. Uma concessão para a exploração de jogos de fortuna ou azar em casino apenas pode ser atribuída a uma concorrente que tenha adequada capacidade financeira para a operar.

2. As concessionárias são obrigadas a manter adequada capacidade financeira durante o período da concessão.

3. Para efeitos do número anterior, as concessionárias estão sujeitas a uma contínua e permanente monitorização e supervisão por parte do Governo.

### Artigo 18.º

#### Demonstração da adequada capacidade financeira

1. A adequada capacidade financeira é demonstrada, entre outras, pelas seguintes formas:

1) Assunção de compromisso ou prestação de garantia, por terceiro, de financiamento dos investimentos e obrigações que as concorrentes ou as concessionárias se propõem realizar ou assumir, nomeadamente através de instrumento vinculativo prestado por instituição ou instituições bancárias;

2) Assunção de compromisso ou prestação de garantia, por accionistas das concorrentes ou das concessionárias titulares de valor igual ou superior a 5% do seu capital social, de financiamento dos investimentos e obrigações que as concorrentes ou as concessionárias se propõem realizar ou assumir, prestando para o efeito garantias apropriadas relativamente a bens e direitos de que sejam titulares.

2. Quando a adequada capacidade financeira seja demonstrada através da forma prevista na alínea 1) do número anterior, para além da obrigação de comunicação prevista no artigo 28.º, em especial do disposto na alínea 1) do seu n.º 1, deve cada concessionária, semestralmente, entregar ao Governo uma declaração do terceiro ou terceiros que assumiram o compromisso ou prestaram garantia de financiamento dos investimentos e obrigações que a concessionária se propôs realizar ou assumir, de que, até à data da referida declaração, a concessionária tinha vindo a cumprir as obrigações subjacentes a tal compromisso ou garantia de financiamento.

### Artigo 19.º

#### Verificação da capacidade financeira das concorrentes e das concessionárias

1. As concorrentes e as concessionárias estão sujeitas a um processo de verificação da adequada capacidade financeira por parte do Governo.

adequada capacidade financeira das concorrentes e das concessionárias, o Governo toma em consideração, entre outros julgados relevantes, os seguintes critérios:

1) A situação económica e financeira da concorrente ou da concessionária, devendo para o efeito ser enviados os respectivos relatórios e contas do conselho de administração, acompanhados dos pareceres do conselho fiscal e dos auditores externos relativos aos últimos cinco exercícios, bem como um relatório de avaliação de risco relativamente à concorrente ou à concessionária;

2) A situação económica e financeira das sociedades que são sócias dominantes da concorrente ou da concessionária, devendo para o efeito ser enviados os respectivos relatórios e contas do conselho de administração, acompanhados dos pareceres do conselho fiscal e dos auditores externos relativos aos últimos cinco exercícios, bem como um relatório de avaliação de risco relativamente à respectiva sócia dominante;

3) A situação económica e financeira de entidades estreitamente associadas à concorrente ou à concessionária, nomeadamente das que assumiram o compromisso ou prestaram garantia de financiamento dos investimentos e obrigações que as concorrentes ou as concessionárias se propõem realizar ou assumir, devendo para o efeito ser enviados os respectivos relatórios e contas do conselho de administração, acompanhados dos pareceres do conselho fiscal e dos auditores externos relativos aos últimos cinco exercícios, bem como um relatório de avaliação de risco relativamente a essas entidades;

4) A situação económica e financeira dos accionistas da concorrente ou da concessionária titulares de valor igual ou superior a 5% do seu capital social, apurada através da análise dos dados fornecidos mediante o preenchimento do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, e de relatório de avaliação de risco relativamente a cada um desses accionistas, quando a forma de demonstrar a adequada capacidade financeira seja a prevista na alínea 2) do n.º 1 do artigo anterior; e

5) A natureza e tipo de casino ou casinos que a concorrente ou a concessionária pretende explorar e as infra-estruturas que se lhes propõe associar.

3. Os relatórios de avaliação de risco referidos no presente regulamento administrativo devem conter informação e dados relativos à identificação da pessoa ou sociedade e respectivos titulares dos órgãos sociais, às acções judiciais por esta propostas ou em que é demandada, à sua situação económica e financeira, incluindo eventuais mútuos ou operações financeiras relevantes e à estimativa do valor dos bens e direitos de que é titular, nos termos requeridos pelo Anexo I ao presente regulamento administrativo.

4. Cada entidade sujeita à obrigação de apresentação de relatório de avaliação de risco deve solicitar previamente a aquiescência do Governo, através do Secretário para a Economia e Finanças, quanto a firma de reconhecida reputação internacional, local ou do exterior, excepto no caso das indicadas no programa do concurso ou em despacho.

## Artigo 20.º

### Custos

1. Os custos do processo de verificação da adequada capacidade financeira das concorrentes e dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social são

concurso.

2. Se se verificar que o montante da caução referida no número anterior é insuficiente para garantir os custos do processo de verificação da adequada capacidade financeira e, tendo sido exigido não houver sido efectuado o seu reforço, o débito daí resultante constitui uma dívida da concorrente à Região, sendo cobrada em processo de execução fiscal.

3. Os custos do processo de verificação da adequada capacidade financeira das concessionárias e dos accionistas destas titulares de valor igual ou superior a 5% do seu capital social, são suportados pelas concessionárias, sendo o modo do seu pagamento estabelecido no respectivo contrato de concessão ou mediante acordo entre o Governo e a concessionária.

4. As dívidas relativas ao pagamento dos custos do processo de verificação referido no número anterior são cobradas em processo de execução fiscal.

5. As certidões ou outros documentos emitidos pela Direcção de Inspecção e Coordenação de Jogos dos quais constem, de forma pormenorizada, os custos do processo de verificação referidos no presente artigo, constituem prova bastante de tais custos.

## Artigo 21.º

### Revelação de informação

1. Para efeitos de verificação da adequada capacidade financeira, a concorrente ou a concessionária submete ao Governo, relativamente a cada accionista titular de valor igual ou superior a 5% do seu capital social, um exemplar do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, devidamente preenchido e assinado pelo respectivo accionista, sendo a assinatura objecto de reconhecimento notarial presencial.

2. Para efeitos de verificação da adequada capacidade financeira, cada concorrente, concessionária e accionista destas titular de valor igual ou superior a 5% do seu capital social, autoriza o Governo a aceder a todos os documentos, informações e dados que o Governo considere necessários para tal verificação, ainda que protegidos por dever de sigilo, designadamente submetendo ao Governo um exemplar da "Declaração autorizando a revelação de informação", cujo modelo constitui o Anexo III ao presente regulamento administrativo, devidamente preenchido e assinado, sendo as assinaturas objecto de reconhecimento notarial presencial.

3. Para efeitos de verificação da adequada capacidade financeira, cada concorrente ou concessionária autoriza o Governo a aceder a todos os documentos, informações e dados em que se consubstanciem ou relativos às ocorrências elencadas no n.º 1 do artigo 28.º que o Governo considere necessários para tal verificação, ainda que protegidos por dever de sigilo.

4. Quanto aos accionistas residentes em jurisdição na qual não seja possível obter o reconhecimento notarial presencial das assinaturas nos documentos referidos nos n.os 1 e 2, deve ser produzida forma de reconhecimento das assinaturas por parte de autoridade pública competente, devidamente legalizado.

## Artigo 22.º

1. Para efeitos do disposto no presente regulamento administrativo, em especial no presente capítulo, e demais legislação complementar da Lei n.º 16/2001, para além da submissão ao Governo dos exemplares da "Declaração autorizando a revelação de informação" referidos no n.º 2 do artigo anterior, impende sobre cada concorrente, concessionária, sócia dominante destas e accionista daquelas titular de valor igual ou superior a 5% do seu capital social, um especial dever de cooperação com o Governo, devendo submeter quaisquer documentos e prestar quaisquer informações, dados, autorizações ou provas que para o efeito lhe sejam solicitados.

2. Para efeitos do disposto no presente regulamento administrativo, em especial no presente capítulo, e demais legislação complementar da Lei n.º 16/2001, impende sobre cada concessionária, sócia dominante desta e accionista daquelas titular de valor igual ou superior a 5% do seu capital social, a obrigação de disponibilizar imediatamente ao Governo qualquer documento, informação ou dado que o Governo considere necessário para verificar se a adequada capacidade financeira se mantém.

3. Para efeitos dos processos de verificação da capacidade financeira, impende sobre todas as pessoas e entidades, singulares ou colectivas, públicas ou privadas, um dever de cooperação com o Governo, devendo ser submetidos quaisquer documentos e prestadas quaisquer informações, dados, autorizações ou provas que lhes sejam solicitados relativamente a qualquer concorrente ou concessionária.

### Artigo 23.º

### Prestação de garantia pela sócia dominante

Sem prejuízo do disposto no artigo 212.º do **Código Comercial**, a sócia dominante de uma concessionária fica obrigada à prestação de uma garantia, aceite pelo Governo, relativa ao cumprimento dos compromissos e obrigações assumidos pela concessionária.

### Artigo 24.º

### Conclusão do processo de verificação da adequada capacidade financeira

1. Os processos de verificação da adequada capacidade financeira são instruídos pela Direcção de Inspecção e Coordenação de Jogos e terminam com a elaboração de relatórios por parte do seu director, onde se considera terem, ou não, as concorrentes ou as concessionárias, adequada capacidade financeira para operar a concessão.

2. Para efeitos do processo de instrução dos processos de verificação da adequada capacidade financeira, pode a Direcção de Inspecção e Coordenação de Jogos recorrer a empresas especializadas e obter a colaboração de qualquer outro serviço da Administração.

3. Os relatórios referidos no n.º 1 são enviados pela Direcção de Inspecção e Coordenação de Jogos ao Secretário para a Economia e Finanças, excepto os relatórios respeitantes às concorrentes que são enviados à comissão do concurso, desde que a conclusão dos processos de verificação da adequada capacidade financeira não ocorra em momento posterior à outorga dos contratos de concessão.

4. A Direcção de Inspecção e Coordenação de Jogos pode convidar as entidades referidas no n.º 1 a esclarecer qualquer aspecto ou a completar qualquer dado antes de terminar a elaboração do relatório respectivo.

não detém adequada capacidade financeira, tal implica a sua exclusão do concurso, podendo a comissão do concurso determinar a repescagem de concorrente que tenha sido excluída em fase anterior, nos termos previstos no n.º 4 do artigo 75.º.

6. Sem prejuízo do disposto no n.º 4, se no relatório referido no n.º 1 respeitante a uma concessionária se concluir que a mesma deixou de ter adequada capacidade financeira, o Governo pode fixar um prazo para que a concessionária tome providências no sentido de demonstrar deter adequada capacidade financeira para operar a concessão nos termos assumidos contratualmente; não tomando a concessionária tais providências, o Governo pode promover a rescisão unilateral do respectivo contrato de concessão, nos termos e para os efeitos do disposto no artigo 48.º da Lei n.º 16/2001.

7. O disposto nos números anteriores não afasta a aplicação de multas ou outras penalidades que possam ser aplicadas.

## Artigo 25.º

### Justo receio de diminuição da adequada capacidade financeira e mora da concessionária

1. Quando haja justo receio de diminuição da adequada capacidade financeira pode ser exigida, sem mais fundamentação, a prestação de garantia adequada, nomeadamente bancária, aceite pelo Governo.

2. Quando haja mora no pagamento de qualquer imposto devido pela concessionária ou que por ela deva ser cobrado, do prémio ou de multa imposta em virtude de infracção administrativa, pode o Governo determinar:

1) O pagamento prioritário de tais dívidas, nomeadamente as relativas às obrigações que a concessionária tenha para com os seus financiadores, em especial o terceiro ou terceiros que hajam assumido o compromisso ou prestado garantia de financiamento dos investimentos e obrigações que a concessionária se propôs realizar ou assumir;

2) A proibição temporária de distribuição de dividendos quanto à concessionária em causa; e

3) A fixação de ratios financeiros a satisfazer pela concessionária em causa, para facilitar a verificação subsequente da existência de adequada capacidade financeira.

3. O disposto nos números anteriores não afasta a aplicação de multas ou outras penalidades que possam ser aplicadas.

## Artigo 26.º

### Prévia autorização

1. É nulo o contrato celebrado entre uma concorrente ou uma concessionária e um empresário comercial, nomeadamente uma sociedade gestora, pelo qual este assuma ou possa assumir poderes de gestão relativos à concorrente ou à concessionária, salvo prévia autorização do Governo.

2. É anulável qualquer mútuo ou contrato similar de valor igual ou superior a 5 milhões de

naturais à contratação de concessionária para financiamento de qualquer aspecto da sua actividade, salvo prévia autorização do Governo.

Artigo 27.º

Obrigação de comunicação prévia à celebração de contrato com sociedade gestora

1. As concessionárias estão obrigadas a comunicar ao Governo, através da Direcção de Inspecção e Coordenação de Jogos, com a antecedência mínima de 90 dias, a intenção de contratar uma sociedade gestora.

2. Por ocasião da comunicação referida no número anterior, a concessionária deve submeter cópia da minuta do contrato que pretende celebrar com a sociedade gestora, e demais documentos complementares.

3. Caso uma concorrente indique ser sua intenção, caso lhe seja atribuída uma concessão para exploração de jogos de fortuna ou de azar em casino, vir a celebrar um contrato com uma sociedade pelo qual esta assuma poderes de gestão relativamente àquela, deve a concorrente mencionar expressamente tal facto por ocasião da apresentação da proposta de adjudicação, identificando a sociedade que pretende assumir poderes de gestão, e, sem prejuízo de lhe serem exigidos informações ou dados suplementares, deve submeter, quanto a esta sociedade, devidamente preenchido, o "Formulário relativo à revelação de dados das concorrentes ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento administrativo, e o "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo e é dele parte integrante, bem como um relatório de avaliação de risco relativamente à mesma sociedade que pretende assumir poderes de gestão.

Artigo 28.º

Obrigação de comunicação de outras ocorrências

1. Sem prejuízo do disposto nos artigos 15.º, 17.º, n.º 8, 22.º, 32.º, n.º 4, 33.º, 34.º e 36.º da Lei n.º 16/2001 e demais regulamentação complementar, nomeadamente no artigo 26.º, as concorrentes e as concessionárias devem informar o Governo, tão brevemente quanto possível, através da Direcção de Inspecção e Coordenação de Jogos, quanto a qualquer uma das seguintes ocorrências:

1) Quaisquer mútuos, hipotecas, declarações de dívida, garantias, ou qualquer outra obrigação contraída ou a contrair para financiamento de qualquer aspecto da sua actividade;

2) As remunerações certas ou acidentais, periódicas ou extraordinárias dos seus administradores, financiadores e principais empregados, sejam estas recebidas a título de ordenados, vencimentos, salários, honorários ou outro, bem como eventuais mecanismos de participações nos seus lucros por parte daqueles;

3) Regalias existentes ou a criar, incluindo formas de distribuição de lucros; e

4) Os contratos de gestão e de prestação de serviços existentes ou por si propostos.

2. Para cumprimento do disposto no número anterior, as concorrentes e as concessionárias devem remeter ao Governo, através da Direcção de Inspecção e Coordenação de Jogos, tão

certamente quanto possível, cópias autenticadas de:

1) Os documentos relativos a quaisquer mútuos, hipotecas, declarações de dívida, garantias, ou qualquer outra obrigação contraída ou a contrair para financiamento de qualquer aspecto da sua actividade;

2) Os contratos ou outros instrumentos titulando ou descrevendo qualquer remuneração certa ou acidental, periódica ou extraordinária, dos seus administradores, financiadores e principais empregados, sejam estas recebidas a título de ordenados, vencimentos, salários, honorários ou outro, bem como eventuais mecanismos de participações nos seus lucros por parte daqueles;

3) Os contratos ou outros instrumentos titulando ou descrevendo quaisquer regalias ou formas de distribuição de lucros existentes ou a ser criadas; e

4) Os contratos de gestão e de prestação de serviços existentes ou por si propostos.

3. Para efeitos do disposto no presente regulamento administrativo, em especial no presente capítulo, e demais legislação complementar da Lei n.º 16/2001, as concessionárias estão ainda obrigadas a comunicar à Direcção de Inspecção e Coordenação de Jogos, tão brevemente quanto possível, qualquer alteração iminente ou previsível na sua situação económica e financeira, bem como na situação económica e financeira:

1) Das suas sócias dominantes;

2) De entidades que lhes estejam estreitamente associadas, nomeadamente das que assumiram o compromisso ou prestaram garantia de financiamento dos investimentos e obrigações que as concessionárias se vincularam contratualmente a realizar ou assumir; e

3) Dos accionistas titulares de valor igual ou superior a 5% do seu capital social, que, nos termos previstos na alínea 2) do n.º 1 do artigo 18.º, assumiram o compromisso ou prestaram garantia de financiamento dos investimentos e obrigações que as concessionárias se vincularam contratualmente a realizar ou assumir.

# CAPÍTULO V

# DA FORMAÇÃO DO CONTRATO DE CONCESSÃO

## Artigo 29.º

### Formação do contrato de concessão

1. As concessões para a exploração de jogos de fortuna ou azar em casino são atribuídas, na sequência de um acto de adjudicação, por via da celebração de contrato administrativo de concessão para a exploração de jogos de fortuna ou azar em casino, a celebrar entre o Governo, em representação da Região, e a adjudicatária.

2. A celebração do contrato de concessão é precedida de concurso público.

3. O concurso pode ser simples ou limitado com prévia qualificação e incluir uma ou mais fases de consulta com as concorrentes.

## Artigo 30.º

## Concurso público

· O concurso diz-se público quando se podem apresentar a concurso todas as entidades que se encontrem nas condições gerais estabelecidas por acto normativo e nas condições particulares previamente definidas no despacho de abertura do concurso.

### Artigo 31.º

### Fases do concurso

1. O concurso inclui uma ou mais fases consecutivas de consulta com as concorrentes para a adjudicação da concessão, destinadas essencialmente à apresentação das propostas de adjudicação e à sua apreciação.

2. Caso o concurso seja limitado, a fase ou fases de consulta referidas no número anterior é antecedida de uma fase de pré-qualificação que se destina exclusivamente à selecção dos candidatos à fase de consulta para adjudicação da concessão, segundo critérios gerais de experiência, reputação, qualificação técnica, situação económica e financeira ou outros, a definir no programa do concurso, e não prevê a apresentação de propostas de adjudicação.

### Artigo 32.º

### Alterações no decurso do concurso

1. Os elementos que servem de base ao concurso, incluindo as menções constantes do despacho de abertura do concurso, podem, durante o decurso deste, ser objecto de alterações complementares que se justifiquem por motivos de interesse público, sem prejuízo do direito à igualdade de tratamento das concorrentes admitidas à fase em que se proceda às alterações.

2. O despacho do Chefe do Executivo que proceder às alterações referidas no número anterior deve ser notificado a todas as concorrentes admitidas à fase em que se proceda às alterações.

### Artigo 33.º

### Número e duração das concessões

1. O Chefe do Executivo decide, dentro dos limites da lei, o número de concessões postas a concurso.

2. A duração máxima de cada uma das concessões postas a concurso é referida no despacho de abertura do concurso, sem prejuízo da faculdade de se proceder posteriormente à sua alteração, nos termos definidos no artigo anterior.

3. Mesmo após o acto de adjudicação provisória, o Chefe do Executivo pode, em situações excepcionais de reconhecido interesse para a Região, na sequência das negociações a que se refere a primeira parte do n.º 2 do artigo 10.º da Lei n.º 16/2001, atribuir a concessão por um período diferente do estabelecido inicialmente.

### Artigo 34.º

### Impugnação administrativa

1. As concorrentes têm direito a solicitar a revogação ou modificação dos actos praticados no âmbito do concurso, nos termos regulados na Lei n.° 16/2001 e no presente regulamento administrativo e, subsidiariamente, no Código do Procedimento Administrativo.

2. O direito referido no número anterior pode ser exercido mediante reclamação para o autor do acto ou mediante recurso administrativo para o Chefe do Executivo.

3. Sendo a reclamação ou o recurso administrativo procedente, deve sanar-se o vício arguido, anulando-se as formalidades subsequentes, quando tal se torne necessário.

## Artigo 35.°

### Reclamação

1. Há lugar a reclamação para o autor do acto, com fundamento em preterição ou irregular cumprimento das formalidades do concurso ou em qualquer outra ilegalidade.

2. Não é possível reclamar de acto que decida anterior reclamação ou recurso administrativo, salvo com fundamento em omissão de pronúncia.

## Artigo 36.°

### Recurso administrativo

Podem ser objecto de recurso administrativo para o Chefe do Executivo, pelos fundamentos referidos no n.° 1 do artigo anterior, todos os actos praticados no âmbito do concurso, incluindo a decisão que indefira, total ou parcialmente, a reclamação apresentada, excepto se a decisão reclamada for da sua autoria.

## Artigo 37.°

### Recurso contencioso

Da decisão que decida reclamação ou recurso administrativo ou de qualquer outro acto preparatório ou praticado no âmbito do concurso, independentemente da sua natureza expressa ou tácita, não cabe impugnação contenciosa, nem qualquer outra acção ou providência, salvo recurso contencioso do acto de adjudicação a interpor para o Tribunal da Segunda Instância.

## Artigo 38.°

### Recursos e prazos

1. Os actos anteriores ao acto de adjudicação, nomeadamente os relativos à pré-qualificação do concurso, não são susceptíveis de impugnação contenciosa, não cabendo deles recurso contencioso ou pedido de suspensão da sua eficácia, nem outra acção ou providência.

2. Do acto de adjudicação cabe recurso contencioso para o Tribunal da Segunda Instância, sendo o processo considerado urgente, nomeadamente nos termos e para os efeitos do artigo 6.° do Código de Processo Administrativo Contencioso, reduzindo-se a metade os prazos dos actos a praticar pelos interessados, nomeadamente o prazo para interposição de recurso.

3. As reclamações e os recursos administrativos não têm efeito suspensivo.

4. Salvo disposição específica constante de regulamentação complementar da Lei n.º 16/2001, e sem prejuízo da fixação de prazos especiais pelo Governo, nomeadamente no despacho de abertura do concurso, os prazos para a interposição de reclamação ou recurso administrativo constantes do Código do Procedimento Administrativo, bem como os prazos para os interessados requererem ou praticarem quaisquer actos, promoverem diligências, responderem sobre os assuntos ácerca dos quais se devem pronunciar ou exercerem outros poderes, são reduzidos a metade.

### Artigo 39.º

### Prova da entrega de requerimentos

1. Os requerimentos em que são formuladas reclamações, recursos ou outros pedidos são apresentados com uma cópia.

2. A cópia é devolvida ao apresentante depois de nela ser exarado recibo com a data da apresentação e rubrica autenticada por carimbo ou selo branco do serviço ou entidade competente designada no despacho de abertura do concurso.

3. Equivale à apresentação prevista nos números anteriores o envio do requerimento por correio registado com aviso de recepção, efectuado até ao último dia útil imediatamente anterior ao do termo do respectivo prazo.

### Artigo 40.º

### Notificações

1. As notificações no decurso do concurso são feitas pessoalmente ou por correio registado com aviso de recepção, considerando-se efectuadas na data de assinatura da certidão comprovativa da notificação ou do aviso respectivos; em caso de urgência, as notificações podem ser efectuadas por telefax ou por telefone, devendo ser confirmadas de imediato nos termos previstos na primeira parte do presente número, sem prejuízo de a notificação se considerar feita na data da primeira comunicação.

2. As notificações enviadas para o endereço ou número de telefax a indicar nos termos do artigo seguinte produzem efeitos mesmo que a carta seja devolvida ou o telefax não seja recebido, juntando-se ao processo o sobrescrito devolvido ou o telefax e o recibo respectivo; os efeitos referidos só não se produzem se o notificado provar que a notificação não foi efectuada ou ocorreu em data posterior à presumida por razões que lhe não sejam imputáveis.

3. As notificações das concorrentes não prejudicam o disposto no artigo 69.º do **Código do Procedimento Administrativo** e seguem, com as devidas adaptações, e sem prejuízo do disposto no presente artigo, o estipulado na lei geral, designadamente no respeitante à notificação das pessoas colectivas.

4. Da notificação deve constar, com precisão, o acto ou decisão a que respeita, de modo que o notificado fique ciente da respectiva natureza e conteúdo, sem prejuízo do disposto no artigo 70.º do **Código do Procedimento Administrativo**.

### Artigo 41.º

Elementos a prestar para efeitos de notificação

1. As concorrentes indicam, no momento da apresentação a concurso, o endereço e os números de telefone e telefax de contacto para efeitos de notificação.

2. As concorrentes obrigam-se a comunicar antecipadamente quaisquer mudanças de endereço e dos números de telefone e telefax, sob pena de se considerarem validamente efectuadas as notificações dirigidas para o endereço e números declarados inicialmente.

3. As concorrentes não estabelecidas na Região que, ao abrigo do disposto no n.º 6 do artigo 10.º da Lei n.º 16/2001, tenham sido autorizadas a apresentar-se a concurso, devem ainda indicar, para efeitos de notificação, um representante com residência habitual em Macau que permaneça na Região durante o processo do concurso, o qual se tem por contactável no endereço e nos números de telefone e telefax declarados pelas mesmas.

## Artigo 42.º

### Prazos

1. Na contagem de qualquer prazo não se inclui o dia, nem a hora, se o prazo for de horas, em que ocorrer a notificação.

2. Salvo disposição ou determinação em contrário, os prazos estabelecidos por lei, regulamento ou despacho são contínuos, não se suspendendo aos sábados, domingos ou feriados, e começam a correr independentemente de quaisquer formalidades, terminando à hora normal de encerramento ao público do serviço ou entidade competente para a recepção das propostas, requerimentos ou outros documentos.

3. O termo do prazo que caia em dia em que o serviço ou entidade competente não estiver aberto ao público, ou em que não funcione durante o período normal, transfere-se para o primeiro dia útil subsequente.

4. Aos prazos respeitantes ao recurso contencioso aplicam-se as disposições respectivas do Código de Processo Administrativo Contencioso, sem prejuízo do estabelecido no artigo 12.º da Lei n.º 16/2001 e no artigo 52.º.

## Artigo 43.º

### Publicidade dos actos

1. Com ressalva do disposto no artigo 3.º da Lei n.º 3/1999, sempre que se exija a publicação de algum acto, a mesma é feita na II série do Boletim Oficial da Região Administrativa Especial de Macau.

2. O despacho de abertura do concurso e demais actos relativamente aos quais seja expressamente prevista a exigência de publicação são ainda publicitados em dois dos jornais mais lidos da Região, sendo obrigatoriamente um de língua chinesa e outro de língua portuguesa.

3. O Governo pode escolher formas adicionais de publicitação, na Região ou no exterior, designadamente da abertura do concurso.

4. O Governo pode adoptar formas de publicitação especificamente dirigidas a entidades

Oficial, nos termos das disposições desses actos de abertura, incluindo convites expressos para apresentação a concurso.

5. A publicitação referida nos dois números anteriores pode iniciar-se antes da publicação do anúncio de abertura do concurso.

# CAPÍTULO VI

# DO CONCURSO PÚBLICO

## SECÇÃO I

### Da comissão do concurso

### Artigo 44.º

#### Comissão do concurso

1. Por ocasião da abertura de um concurso público para a atribuição de concessão ou concessões para a exploração de jogos de fortuna ou de azar em casino, o Chefe do Executivo, nomeia, por despacho, uma comissão para o respectivo concurso.

2. Compete à comissão do concurso analisar e decidir sobre todas as matérias relativas ao concurso público até à outorga dos contratos de concessão, com excepção dos actos de adjudicação provisória e de adjudicação e de outros especialmente cometidos, pela Lei n.º 16/2001, por este regulamento administrativo ou demais regulamentação complementar, a outras entidades.

3. Compete, em especial, à comissão do concurso:

1) Prestar os esclarecimentos solicitados pelos interessados em apresentar-se a concurso, nos termos previstos no artigo 49.º;

2) Apreciar e decidir as reclamações de actos por si praticados, nos termos previstos nos artigos 34.º e 35.º;

3) Decidir sobre a aceitação das cauções e garantias que devem ser prestadas pelas concorrentes;

4) Decidir sobre a habilitação das concorrentes admitidas às fases subsequentes do concurso;

5) Decidir sobre a admissão das propostas de adjudicação;

6) Proceder a consultas e negociações com as concorrentes, nos termos legais;

7) Decidir pela admissão ou exclusão de alguma ou algumas das concorrentes em qualquer fase do concurso;

8) Elaborar o relatório fundamentado referido no n.º 1 do artigo 11.º da Lei n.º 16/2001; e

9) Elaborar as minutas dos contratos de concessão e remetê-las às concorrentes cujas propostas de adjudicação tenham sido seleccionadas no acto de adjudicação provisória.

submetidos pelas entidades referidas no presente regulamento administrativo e a todos os demais documentos, informações e dados que considere necessários para o exercício das suas funções, impendendo sobre todas as pessoas e entidades, singulares ou colectivas, públicas ou privadas, um dever de cooperação com a comissão do concurso, devendo, quando por ela solicitados no decurso do processo do concurso, ser-lhe submetidos quaisquer documentos e prestadas quaisquer informações, dados, autorizações ou provas, ainda que protegidos por dever de sigilo.

5. A comissão do concurso é composta por, pelo menos, três membros, nomeados no despacho referido no n.º 1, um dos quais exerce as funções de presidente e outro as de secretário.

6. O presidente e o secretário são eleitos pelos membros da comissão do concurso.

7. Compete ao presidente da comissão, além de outras funções que lhe sejam atribuídas pelo presente regulamento administrativo, demais legislação aplicável ou delegadas, convocar, abrir e encerrar as reuniões, dirigir os trabalhos e assegurar o cumprimento das leis e a regularidade das deliberações.

8. Compete ao secretário da comissão, além de outras funções que lhe sejam atribuídas pelo presente regulamento administrativo, demais legislação aplicável ou nele delegadas, lavrar actas das reuniões da comissão do concurso, as quais são por si subscritas e assinadas pelos restantes membros da comissão do concurso.

9. Sem prejuízo do disposto nos n.os 5 a 8, podem ainda ser especialmente designados trabalhadores da Administração Pública para coadjuvar os trabalhos da comissão do concurso, nomeadamente de secretariado.

10. Salvo disposição em contrário no despacho referido no n.º 1, a comissão do concurso inicia funções no primeiro dia útil subsequente ao da publicação do despacho de abertura do concurso.

## SECÇÃO II

### Da abertura do concurso

### Artigo 45.º

### Despacho de abertura do concurso

1. O concurso é aberto por despacho do Chefe do Executivo, a publicitar nos termos dos n.os 1 e 2 do artigo 43.º.

2. Do despacho de abertura do concurso consta, nomeadamente:

1) A declaração da abertura de concurso;

2) A modalidade do concurso, designadamente se se trata de um concurso simples ou limitado;

3) A tramitação processual do concurso, incluindo a data e hora limites de apresentação a concurso, o número mínimo de fases do concurso, o endereço da comissão do concurso à

e a língua ou línguas em que os documentos e elementos a entregar devem ser redigidos;

4) A indicação dos elementos que servem de base ao concurso;

5) O endereço e horário em que podem ser consultados os elementos que servem de base ao concurso e em que podem ser obtidas cópias autenticadas desses elementos;

6) As condições exigidas aos interessados para admissão a concurso;

7) O montante e requisitos da caução para admissão a concurso;

8) O prazo máximo previsto para as concessões a atribuir;

9) Os critérios utilizados na selecção das concorrentes para adjudicação das concessões;

10) Os critérios para selecção de concorrentes na fase de pré-qualificação, tratando-se de um concurso limitado; e

11) Outros documentos, elementos ou informações considerados relevantes.

### SECÇÃO III

#### Dos elementos que servem de base ao concurso

#### Artigo 46.º

#### Elementos que servem de base ao concurso

1. O concurso tem por base um programa, o regime das concessões, bem como eventuais elementos adicionais.

2. Os elementos que servem de base ao concurso devem estar disponíveis para consulta dos interessados no serviço ou entidade designada para o efeito no despacho de abertura do concurso e, salvo disposição em contrário neste, desde o primeiro dia útil subsequente ao da publicação do despacho de abertura do concurso até ao acto de adjudicação provisória das concessões.

3. Os interessados podem solicitar que lhes sejam fornecidas, pelo serviço ou entidade referida no número anterior ou pela comissão do concurso, a preço de custo, cópias autenticadas dos elementos que servem de base ao concurso.

4. Os elementos que servem de base ao concurso devem estar redigidos nas línguas oficiais da Região, podendo também estar redigidos em língua inglesa, nomeadamente quando se trate anexos ou elementos exemplificativos ao programa do concurso.

#### Artigo 47.º

#### Programa do concurso

O programa do concurso destina-se a definir os termos a que obedece o respectivo processo e deve especificar:

1) As condições estabelecidas para admissão das concorrentes e demais informações que se considerem necessárias, designadamente as respeitantes à idoneidade e capacidade financeira;

2) O endereço do serviço ou entidade e o local e horário em que podem ser examinados os elementos que servem de base ao concurso e em que podem ser obtidas cópias autenticadas desses elementos, bem como a data limite para solicitar tais cópias e o montante e modalidade de pagamento das importâncias eventualmente devidas pelo seu fornecimento;

3) Os requisitos a que devem obedecer os elementos de apresentação a concurso, designadamente a proposta de adjudicação e o montante da caução para admissão a concurso;

4) A modalidade e as fases do concurso, incluindo a existência ou não de fase de pré-qualificação;

5) Os critérios para adjudicação das concessões;

6) O despacho criando a comissão do concurso, quando já haja sido exarado; e

7) Outras disposições especiais relativas à tramitação do concurso.

## Artigo 48.º

### Regime das concessões

1. O regime das concessões é composto pelo enquadramento legal, o qual compreende o regime jurídico da exploração de jogos de fortuna ou azar em casino aprovado pela Lei n.º 16/2001, o presente regulamento administrativo e demais regulamentação complementar da Lei n.º 16/2001, bem como pelos contratos de concessão para a exploração de jogos de fortuna ou azar em casino.

2. Os contratos de concessão para a exploração dos jogos de fortuna ou azar em casino contêm, sem prejuízo de outras que neles sejam inseridas, cláusulas obrigatórias relativas às matérias previstas no artigo 90.º.

## Artigo 49.º

### Esclarecimento de dúvidas surgidas na interpretação dos elementos que servem de base ao concurso

1. Os interessados em apresentar-se a concurso poderão solicitar os esclarecimentos que entendam necessários para efeitos de apresentação a concurso, designadamente os necessários à boa compreensão e interpretação dos elementos que lhe servem de base.

2. Os pedidos de esclarecimento devem ser deduzidos no primeiro terço do prazo fixado para a apresentação a concurso e os esclarecimentos prestados, pela comissão do concurso, até ao fim do terço imediato do mesmo prazo.

3. Os pedidos de esclarecimento apresentados após o prazo respectivo não são atendidos, excepto se forem considerados pela comissão do concurso de elevado interesse para a regulamentação do concurso.

4. A falta de prestação dos esclarecimentos pela comissão do concurso dentro do prazo estabelecido, pode justificar a prorrogação do prazo para a apresentação a concurso por período correspondente, desde que requerida por qualquer interessado.

5. A prorrogação do prazo prevista no número anterior beneficia todos os interessados, devendo ser comunicada, no mais curto prazo possível, aos interessados que tenham adquirido as cópias referidas no n.º 3 do artigo 46.º e publicitada pelos meios julgados mais convenientes.

6. Os esclarecimentos deduzidos que sejam julgados oportunos e as respostas respectivas podem ser pela comissão do concurso coligidos e dados à conhecer, de forma anónima, aos interessados que tenham adquirido as cópias referidas no n.º 3 do artigo 46.º, no mais curto prazo possível, podendo ser determinado que passam a fazer parte integrante das normas reguladoras do concurso, excepto se a comissão do concurso entender que tal pode pôr em causa, de forma grave, o interesse público que o dever de confidencialidade se destina a proteger.

7. Nas reclamações e recursos administrativos que sejam julgados oportunos pode a comissão do concurso também dar a conhecer, de forma anónima, aos interessados que tenham adquirido as cópias referidas no n.º 3 do artigo 46.º, no mais curto prazo possível, as decisões tomadas, podendo determinar que estas passem a fazer parte integrante das normas reguladoras do concurso.

## SECÇÃO IV

### Dos prazos e do modo de apresentação a concurso

### Artigo 50.º

### Apresentação a concurso

1. A apresentação a concurso consiste na apresentação da proposta de adjudicação ou na candidatura à pré-qualificação, consoante se trate de concurso simples ou de concurso limitado.

2. O prazo de apresentação a concurso, fixado no despacho de abertura do concurso, pode ser prorrogado durante o seu decurso por despacho do Chefe do Executivo; pode, ainda, excepcionalmente, ser concedido novo prazo, a notificar às concorrentes ou a publicitar nos termos do artigo 43.º, consoante já tenha ou não havido fase de pré-qualificação ou fases em que tenha havido exclusão de concorrentes.

3. Mesmo tratando-se de um concurso limitado, o Governo pode convidar sociedades de reconhecida reputação e idoneidade a apresentar propostas de adjudicação, independentemente da sua submissão a uma fase de pré-qualificação.

### Artigo 51.º

### Apresentação das propostas de adjudicação

1. As propostas de adjudicação devem ser apresentadas no prazo fixado no despacho de abertura do concurso.

2. O prazo a que se refere o artigo anterior deve ser fixado entre 30 e 90 dias.

adjudicação apresentadas após o prazo fixado para o efeito.

4. As concorrentes ficam vinculadas às condições constantes da proposta de adjudicação apresentada, sem prejuízo da faculdade de submeterem condições adicionais até ao termo do prazo respectivo, ressalvado o disposto no n.º 3 do artigo 11.º da Lei n.º 16/2001.

## Artigo 52.º

### Modo de apresentação dos documentos e da proposta de adjudicação

1. Os documentos referidos no n.º 1 do artigo 54.º devem ser encerrados em invólucro opaco, fechado e lacrado, no rosto do qual deve ser escrita a palavra "Documentos", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino.

2. A proposta e os documentos enunciados no n.º 1 do artigo 61.º devem ser encerrados em invólucro com as características indicadas no número anterior, no rosto do qual deve ser escrita a palavra "Proposta", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino.

3. Os invólucros a que se referem os números anteriores devem ser encerrados num terceiro, igualmente opaco, fechado e lacrado, que se denomina "Invólucro exterior", indicando-se neste o nome ou denominação social da concorrente, a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino, a fim de ser entregue contra recibo ao serviço ou entidade competente.

4. A recepção dos invólucros a que se referem os números anteriores deve ser registada pelo serviço ou entidade competente, anotando-se a data e hora em que que os mesmos são recebidos, o número de ordem de apresentação e a identidade e morada das pessoas que os entregam, sendo o "Invólucro exterior" fechado e lacrado no acto da entrega.

## SECÇÃO V

### Das concorrentes

### Artigo 53.º

### Habilitação

1. Apenas são admitidas a concurso sociedades anónimas constituídas na Região e cujo objecto social seja, exclusivamente, a exploração de jogos de fortuna ou azar ou outros jogos em casino.

2. O Governo pode, excepcionalmente, admitir a concurso empresários comerciais de reconhecida reputação que não preencham os requisitos previstos no número anterior desde que estes se obriguem a constituir na Região sociedade anónima com esses requisitos, em termos e prazos a constar de despacho do Chefe do Executivo.

Documentos de habilitação das concorrentes

1. Sem prejuízo de outros exigidos noutros preceitos do presente regulamento
administrativo e no programa do concurso, as concorrentes têm de apresentar os seguintes
documentos:

1) Declaração de apresentação a concurso, da qual deve constar a identificação da
concorrente, a sede, as sucursais, a identificação dos administradores e de outras pessoas
com poderes para a obrigar, o registo comercial do acto constitutivo e das suas alterações;

2) Indicação do endereço e dos números de telefone e telefax de contacto para efeitos de
notificação, bem como a identificação do representante a que se refere o n.º 3 do artigo 41.º;

3) Documento comprovativo da prestação da caução para admissão a concurso;

4) Documento comprovativo de que nem a concorrente nem sociedades pertencendo ao
mesmo grupo desta, nomeadamente uma sua sócia dominante, nem accionistas da
concorrente titulares de valor igual ou superior a 5% do seu capital social, nem os seus
administradores se encontram em dívida à Região por contribuições e impostos liquidados
nos últimos 5 anos, passado pela Direcção dos Serviços de Finanças;

5) Documento comprovativo de que quer a concorrente, quer as sociedades pertencendo ao
mesmo grupo desta, nomeadamente uma sua sócia dominante, quer os accionistas da
concorrente titulares de valor igual ou superior a 5% do seu capital social, quer os seus
administradores, têm a sua situação contributiva regularizada para com a segurança social
da Região, passado pelo Fundo de Segurança Social;

6) Exemplares devidos do "Formulário relativo à revelação de dados das concorrentes ou
concessionárias", cujo modelo constitui o Anexo I ao presente regulamento administrativo,
do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores
das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente
regulamento administrativo e da "Declaração autorizando a revelação de informação", cujo
modelo constitui o Anexo III ao presente regulamento administrativo;

7) Exemplares dos relatórios e contas do conselho de administração, pareceres do conselho
fiscal e dos auditores externos previstos no artigo 19.º;

8) Declaração da qual conste a enumeração e identificação completa das empresas que
pertençam ao mesmo grupo da concorrente, das que estejam estreitamente associadas a esta
e dos accionistas que sejam titulares de valor igual ou superior a 5% do capital social
daquela, dos seus administradores, incluindo o administrador-delegado proposto, e dos seus
principais empregados com funções relevantes nos casinos; no caso de a concorrente ser
autorizada a apresentar-se antes de se ter constituído na Região sob a forma de sociedade
anónima, deve indicar aqueles elementos que fundamente preveja venham a constar do
acto constitutivo da sociedade a constituir, ficando obrigada a comunicar à comissão do
concurso todas as alterações ou actualizações dos mesmos;

9) Relatório de avaliação de risco relativamente à concorrente, à sociedade sócia dominante
desta, aos accionistas da concorrente titulares de valor igual ou superior a 5% do seu capital
social, e aos seus administradores, a ser prestado por firma de reconhecida reputação
internacional, local ou do exterior, indicada previamente no programa do concurso ou em
despacho ou aceite pelo Governo nos termos previstos no n.º 4 do artigo 19.º;

10) Declaração de renúncia a foro especial e submissão à lei vigente na Região;

11) Declaração comprometendo-se a acatar e cumprir todas as obrigações estabelecidas por lei, por regulamento ou por despacho, designadamente no despacho de abertura do concurso, bem como nas alterações posteriores referidas no artigo 32.º;

12) Outras informações e documentos que permitam comprovar o cumprimento dos requisitos previstos na lei e os que sejam requeridos por despacho, designadamente no despacho de abertura do concurso.

2. Os documentos referidos nas alíneas 1), 2), 8), 10) e 11) do número anterior são subscritos por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente, devendo ainda, quanto aos referidos nas alíneas 1) e 8) declarar, sob compromisso de honra, a correcção, actualidade e veracidade dos dados e informações deles constantes, ou anexados.

3. Os documentos referidos nas alíneas 3) a 5), 7) e 9) do n.º 1 são acompanhados de uma declaração nos termos da qual se declara, sob compromisso de honra, que aqueles documentos são os originais, ou cópias autenticadas no caso dos referidos na alínea 7), subscrita por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente.

4. Sem prejuízo do disposto no número seguinte, os documentos referidos no n.º 1 são redigidos numa das línguas oficiais da Região; porém, quando pela sua própria origem ou natureza, estiverem redigidos noutra língua, deve a concorrente fazê-los acompanhar de tradução legalizada para uma das línguas oficiais da Região, a qual prevalece para todos e quaisquer efeitos.

5. Quando a língua não oficial utilizada nos termos do número anterior for a inglesa, os elementos apresentados nesta língua não carecem de tradução legalizada para qualquer das línguas oficiais da Região, excepto se tal tradução, parcial ou integral, for exigida pela comissão do concurso.

6. Caso haja lugar a falsificação ou subtracção de documentos ou notações técnicas ou outro acto considerado crime, deve a ocorrência ser participada ao Ministério Público para o competente procedimento criminal.

7. No caso referido no número anterior, a concorrente é ainda excluída do concurso ou, se já lhe tiver sido adjudicada uma concessão, esta caduca.

## SECÇÃO VI

### Da caução para admissão a concurso

### Artigo 55.º

### Objectivo da caução

1. Cada concorrente deve prestar uma caução para admissão a concurso.

2. A caução referida no número anterior pode ser usada para fazer face a todas as despesas em que o Governo incorra com o processo do concurso, na proporção da responsabilidade de cada concorrente, designadamente as relativas aos processos de verificação da

Artigo 56.º

Valor da caução

1. O montante da caução é fixado pelo Chefe do Executivo no despacho de abertura do concurso.

2. O Chefe do Executivo pode exigir às concorrentes o reforço da caução prestada inicialmente sempre que tal se revele necessário.

Artigo 57.º

Modo de prestação

1. A caução para admissão a concurso pode ser prestada por depósito em dinheiro, por garantia bancária ou por seguro-caução.

2. O depósito em dinheiro é efectuado em instituição de crédito que exerça funções de caixa do tesouro da Região, à ordem do Governo, devendo ser especificado o fim a que se destina.

3. Caso o modelo para a sua prestação não conste do programa do concurso, a concorrente que pretenda prestar caução por depósito em dinheiro deve especificar, no momento do depósito, que este se destina a servir de caução para admissão a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino, pelo que pode ser usada para fazer face a todas as despesas em que o Governo haja incorrido com o processo do concurso.

4. Caso o modelo para a sua prestação não conste do programa do concurso, a concorrente que pretenda prestar caução por garantia bancária deve apresentar documento emitido por uma instituição de crédito legalmente autorizada a exercer actividade na Região pelo qual este assegura, até ao limite do valor da caução, o imediato pagamento de quaisquer importâncias exigidas pelo Governo para reembolso de despesas em que o Governo haja incorrido com o processo do concurso.

5. A concorrente que pretenda prestar caução por seguro-caução deve apresentar apólice pela qual uma seguradora legalmente autorizada a realizar esse seguro na Região assume, até ao limite do valor da caução, o encargo de satisfazer de imediato o pagamento de quaisquer importâncias exigidas pelo Governo para reembolso de despesas em que o Governo haja incorrido com o processo do concurso.

6. As garantias bancárias e os seguros-caução prestados não podem ser sujeitos a condição ou termo resolutivo.

7. No caso de caução prestada através de garantia bancária ou seguro-caução, a comissão do concurso pode exigir a sua substituição quando ocorra uma diminuição da capacidade financeira da entidade garante que indicie impossibilidade de cumprimento, no todo ou em parte, das obrigações assumidas.

8. Todas as despesas que resultem da prestação da caução ou do seu levantamento são suportadas pela concorrente.

Artigo 58.º

Restituição e cessação

1. As concorrentes preteridas podem solicitar a restituição do montante depositado como caução para admissão a concurso, o cancelamento da garantia bancária ou a extinção do seguro-caução, a partir do conhecimento da não adjudicação da concessão, devendo o Governo promover, nos 20 dias subsequentes, as diligências necessárias para o efeito.

2. A concorrente tem igualmente direito à restituição do depósito, ao cancelamento da garantia bancária ou à extinção do seguro-caução se a sua proposta não for admitida, a partir do conhecimento da decisão definitiva de não admissão, devendo o Governo promover, nos 20 dias subsequentes, as diligências necessárias para o efeito.

3. A caução é considerada perdida a favor da Região se as concorrentes seleccionadas não se apresentarem à fase seguinte ou se a proposta de adjudicação não vier a ser considerada por facto imputável à concorrente, e ainda se, decidida a adjudicação, o contrato não vier a ser assinado por facto imputável à adjudicatária.

## SECÇÃO VII

### Da proposta de adjudicação

### Artigo 59.º

### Conceito e redacção da proposta de adjudicação

1. A proposta de adjudicação é o documento pelo qual a concorrente manifesta ao Governo a vontade de contratar e indica as condições em que se dispõe a fazê-lo.

2. A proposta de adjudicação e os documentos que a instruem devem ser redigidos numa das línguas oficiais da Região e traduzidos, com excepção dos anexos apresentados nos termos da alínea 13) do n.º 1 do artigo 61.º, para a outra.

3. Salvo se o programa do concurso o proibir, as propostas de adjudicação, assim como os documentos que a instruem, podem ser redigidos em língua inglesa, podendo neste caso a comissão do concurso exigir tradução legalizada, parcial ou integral, para uma das línguas oficiais da Região.

### Artigo 60.º

### Tipo de propostas de adjudicação

1. Salvo se o programa do concurso o proibir, podem ser apresentadas propostas de adjudicação simples, alternativas ou subsidiárias.

2. Quando apresentadas, as propostas alternativas ou subsidiárias devem sê-lo de forma clara e inequívoca.

### Artigo 61.º

### Documentos e elementos que instruem a proposta de adjudicação

1. Caso o modelo para elaboração das propostas de adjudicação não conste do programa do concurso, a proposta de adjudicação, para além da manifestação de vontade de contratar, é instruída com os seguintes documentos e elementos:

1) A identificação da concorrente;

2) Valor do prémio global proposto pela concorrente, com discriminação da parte fixa e da parte variável;

3) Valor da contribuição proposta pela concorrente para os efeitos do disposto na alínea 7) do artigo 22.º da Lei n.º 16/2001;

4) Valor da contribuição proposta pela concorrente para os efeitos do disposto na alínea 8) do artigo 22.º da Lei n.º 16/2001;

5) Relatório descritivo da experiência de gestão na exploração e operação de jogos de fortuna ou azar em casino ou experiência em áreas correlativas;

6) Memória descritiva e justificativa das propostas de investimento, independentemente da sua natureza, de relevante interesse para a Região, que a concorrente se propõe efectuar;

7) Declaração, para os efeitos previstos no capítulo IV do presente regulamento administrativo, prestada pelo terceiro ou terceiros que assumam o compromisso ou prestem garantia de financiamento dos investimentos e obrigações que a concorrente se propõe realizar ou assumir ou, em alternativa, prestada pelos accionistas titulares de valor igual ou superior a 5% do seu capital social que, nos termos da alínea 2) do n.º 1 do artigo 18.º, assumam o compromisso ou prestem garantia de financiamento dos investimentos e obrigações que a concorrente se propõe realizar ou assumir;

8) Memória descritiva e justificativa das propostas da concorrente para a valorização dos locais e recintos onde funcionam os casinos, designadamente quando contribuam para a diversificação do produto turístico oferecido;

9) Referência à relevância da proposta da concorrente relativamente ao desenvolvimento do emprego na indústria do jogo, bem como para a formação profissional dos respectivos profissionais;

10) As propostas alternativas ou subsidiárias, caso existam;

11) Declaração em como a concorrente se obriga a explorar a concessão nos termos e condições propostos;

12) Outros documentos ou elementos exigidos no programa do concurso; e

13) Outros documentos ou elementos que a concorrente considere relevantes para a análise da respectiva proposta, incluindo anexos de carácter técnico considerados necessários à fundamentação de quaisquer dos documentos ou elementos referidos nas alíneas anteriores.

2. Aos anexos apresentados nos termos da alínea 13) do número anterior aplica-se o disposto no n.º 5 do artigo 54.º.

3. A proposta de adjudicação é subscrita por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente.

4. Os documentos referidos na alínea 7) do n.º 1 são acompanhados de uma declaração nos termos da qual se atesta serem os originais, subscrita por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente.

5. É aplicável ao presente artigo o disposto nos n.os 6 e 7 do artigo 54.º.

## Artigo 62.º

### Requisitos formais dos elementos a apresentar

1. Todos os requerimentos, propostas, declarações e documentos que se destinem a instruir a apresentação a concurso devem ser impressos e apresentados sem rasuras, entrelinhas ou palavras cruzadas, salvo se tal se revelar fundamentadamente inviável.

2. Os montantes constantes da proposta, designadamente o do prémio, devem ser sempre indicados em algarismos e por extenso, prevalecendo o indicado por extenso em caso de divergência entre ambos.

## SECÇÃO VIII

### Do acto de abertura das propostas de adjudicação

## Artigo 63.º

### Finalidade e objecto do acto de abertura

1. O acto de abertura destina-se ao saneamento e preparação da decisão de adjudicação e consiste na abertura dos invólucros que contêm as propostas de adjudicação e os documentos e elementos que as instruem, na elaboração do registo das concorrentes e dos elementos essenciais das propostas, na averiguação da sua regularidade formal e suprimento de eventuais irregularidades e na decisão sobre a sua admissão ou não admissão.

2. O acto de abertura inicia-se num dos cinco dias úteis subsequentes ao termo do prazo para a apresentação a concurso, sendo ordenado e presidido pelo presidente da comissão do concurso, que determina as pessoas autorizadas a presenciar o acto.

3. Uma das pessoas autorizadas a presenciar o acto de abertura é um representante do Ministério Público, indicado para o efeito pelo Procurador da Região.

4. Salvo determinação em contrário do Governo, o acto de abertura não constitui um acto público, sendo reservado às pessoas expressamente autorizadas, as quais ficam adstritas ao dever de confidencialidade.

5. Salvo deliberação em contrário da comissão do concurso, a sessão do acto de abertura é contínua e compreende o número de sessões necessárias ao cumprimento de todas as formalidades.

## Artigo 64.º

### Acta

1. De tudo o que ocorrer no acto de abertura lavra a comissão do concurso acta do concurso, a qual é por si subscrita e assinada por todos os presentes.

2. Se o acto de abertura for constituído por várias sessões, serão elaboradas actas autónomas relativamente a cada sessão.

3. As concorrentes podem obter, mediante requerimento, cópia das actas referidas nos números anteriores, para efeitos de interposição de reclamações ou recursos administrativos.

### Artigo 65.º

### Registo de concorrentes e propostas de adjudicação

Antes da abertura dos invólucros é elaborada a lista das concorrentes, pela ordem de entrada das propostas de adjudicação, a qual é obrigatoriamente anexa à acta referida no artigo anterior, dela fazendo parte integrante.

### Artigo 66.º

### Abertura dos invólucros e numeração e rubrica dos documentos

1. A abertura dos invólucros exteriores é feita pela ordem da sua entrada no serviço ou entidade competente, extraindo-se, de cada um, os dois invólucros que devem conter.

2. Pela mesma ordem faz-se a abertura dos invólucros que contenham exteriormente a indicação "Documentos".

3. A documentação contida nos invólucros que contenham exteriormente a indicação "Documentos" é numerada e rubricada pelo secretário da comissão do concurso ou, no seu impedimento, por quem for designado para o efeito pelo presidente da mesma comissão.

### Artigo 67.º

### Decisão sobre a habilitação das concorrentes

1. Cumprido o disposto nos artigos 65.º e 66.º, e após verificação dos documentos e elementos apresentados pelas concorrentes, é tomada, pela comissão do concurso, decisão sobre a habilitação das admitidas às fases subsequentes e as não admitidas, bem como as razões da não admissão destas.

2. Sem prejuízo do disposto no número seguinte, não são admitidas, nesta fase, as concorrentes:

1) Que não tenham apresentado todos os documentos de habilitação de apresentação obrigatória;

2) Que não tenham apresentado os documentos redigidos numa das línguas oficiais da Região ou nos termos do disposto no n.º 4 do artigo 54.º; ou

3) Que não tenham apresentado os documentos nas condições previstas no programa do concurso.

3. Podem ser admitidas, condicionalmente, as concorrentes cujos documentos sejam apresentados com preterição de formalidades não essenciais, devendo, porém, tais irregularidades ser sanadas no prazo fixado para o efeito pela comissão do concurso, sob pena de ficar sem efeito a admissão.

4. Podem ser admitidas, condicionalmente, as concorrentes que, por motivo independente da sua vontade, devidamente justificado e que seja como tal aceite pela comissão do concurso, não hajam apresentado algum dos documentos de habilitação previsto nas alíneas 4), 5) e 9) do n.º 1 do artigo 54.º, contanto que o apresentem no prazo fixado para o efeito, sob pena de ficar sem efeito a admissão.

## Artigo 68.º

### Quadro comparativo da documentação apresentada

Após a abertura dos invólucros que contenham exteriormente a indicação "Documentos" é elaborado pela comissão do concurso um quadro comparativo da documentação apresentada pelas concorrentes nos termos do artigo 54.º, que contém ainda menção da decisão relativa a cada uma delas, bem como quaisquer outros elementos que tenham, entretanto, sido determinados.

## Artigo 69.º

### Reclamação da decisão de não admissão de concorrentes

1. Qualquer concorrente pode reclamar da decisão de não admissão ou de admissão condicionada, a apresentar no prazo de 3 dias contados da notificação respectiva.

2. As concorrentes que pretendam reclamar podem, para esse efeito, para além de obter cópias das actas nos termos do n.º 3 do artigo 64.º, examinar e obter cópia do quadro comparativo elaborado nos termos do artigo anterior, devendo tais elementos ser-lhes facultado de imediato; caso esses elementos não lhes sejam facultados imediatamente, o prazo para apresentar reclamação conta-se a partir da data em que os mesmos lhes sejam facultados.

3. Da notificação deve constar o direito de reclamação e o direito de exame dos elementos referidos no número anterior por representante da concorrente ou por quem esta tenha mandatado para o efeito, bem como os prazos respectivos; as pessoas que pretendam examinar esses elementos devem identificar-se e fazer prova documental da sua qualidade, de que será junta cópia ao registo referido no número seguinte.

4. É feito o registo das pessoas que consultarem os elementos referidos nos n.os 2 e 3, que é por elas assinado e do qual consta a advertência de que devem declarar-se cientes da adstrição ao dever de confidencialidade.

5. Em caso algum há lugar à consulta por parte dos demais concorrentes dos dados constantes do "Formulário relativo à revelação de dados das concorrentes ou concessionárias", cujo modelo constitui o Anexo I ao presente regulamento administrativo e do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias", cujo modelo constitui o Anexo II ao presente regulamento administrativo, apresentados por cada uma das concorrentes.

## Artigo 70.º

Abertura dos invólucros das propostas de adjudicação

1. Após a decisão de admissão, procede-se à abertura dos invólucros que contenham exteriormente a indicação "Propostas" relativamente às concorrentes admitidas, pela ordem que conste da lista das concorrentes.

2. À numeração e rubrica da proposta de adjudicação e dos documentos e elementos que a instruem, aplica-se o disposto no n.º 3 do artigo 66.º.

## Artigo 71.º

### Decisão sobre a admissão das propostas de adjudicação

1. Lidas as propostas de adjudicação, procede-se ao seu exame formal e é tomada decisão sobre a sua admissão.

2. São excluídas as propostas de adjudicação:

1) Que não estejam instruídas com todos os documentos e elementos exigidos no n.º 1 do artigo 61.º e no programa do concurso;

2) Que não cumpram o disposto nos n.os 2 ou 3 do artigo 59.º; ou

3) Que resultem de práticas restritivas da concorrência ilícitas.

3. Podem ser admitidas, condicionalmente, propostas de adjudicação apresentadas com preterição de formalidades não essenciais, devendo, porém, tais irregularidades ser sanadas no prazo fixado para o efeito, sob pena de ficar sem efeito a sua admissão.

## Artigo 72.º

### Quadro comparativo das propostas de adjudicação apresentadas

Após a abertura dos invólucros que contenham exteriormente a indicação "Propostas", e decidido sobre a admissão das propostas de adjudicação, é elaborado pela comissão do concurso um quadro comparativo das propostas de adjudicação apresentadas pelas concorrentes nos termos do artigo 61.º, que contem ainda a menção da decisão relativa a cada uma delas, e tudo o mais que for julgado conveniente.

## Artigo 73.º

### Reclamação das decisões sobre exclusão das propostas de adjudicação

Os interessados podem reclamar das decisões que excluam as propostas de adjudicação ou que as admitam condicionalmente, sendo correspondentemente aplicável, com as necessárias adaptações, o disposto no artigo 69.º.

## Artigo 74.º

### Encerramento do acto de abertura

Decidida a admissão das propostas de adjudicação, considera-se encerrado o acto de abertura.

SECÇÃO IX

Da consulta e das negociações

Artigo 75.º

Consulta

1. A consulta tem por objectivo a apresentação e apreciação das propostas de adjudicação e pode incluir as negociações a que se refere a primeira parte do n.º 3 do artigo 11.º da Lei n.º 16/2001.

2. O despacho de abertura do concurso determina o número mínimo de fases de consulta, sem prejuízo do disposto no artigo 32.º.

3. Havendo duas ou mais fases de consulta, a comissão do concurso pode decidir pela exclusão de alguma ou algumas das concorrentes no final de cada fase, quer por motivos atinentes à proposta de adjudicação, quer por razões relativas à idoneidade ou à capacidade financeira, quer por consideração dos critérios previstos no artigo 97.º.

4. O Governo pode determinar a repescagem de concorrentes que tenham sido excluídas em fases anteriores, se tal se justificar por motivos de interesse público da Região, devendo a escolha incidir, de entre as concorrentes preteridas, pelas que tenham apresentado condições mais vantajosas.

Artigo 76.º

Propostas de adjudicação

1. Havendo uma só fase de consulta, a forma e teor da proposta de adjudicação, bem como os documentos que a deverão instruir, são os referidos no artigo 61.º e nos elementos que servem de base ao concurso.

2. Havendo duas ou mais fases de consulta, as propostas de adjudicação a apresentar nas fases subsequentes à primeira não necessitam de ser instruídas com quaisquer documentos para além dos que forem especialmente estabelecidos pela comissão do concurso.

3. No caso referido no número anterior, as propostas de adjudicação subsequentes podem remeter parcialmente, de forma expressa, para o teor de proposta de adjudicação anterior, indicando nesse caso, clara e inequivocamente, as modificações operadas relativamente à proposta de adjudicação revista.

4. O prazo de apresentação e os termos ou requisitos das propostas de adjudicação subsequentes são definidos nos elementos que servem de base ao concurso ou por despacho do Chefe do Executivo a proferir no final da fase anterior, aplicando-se, na falta de determinação em contrário e sem prejuízo do estabelecido nos n.os 2 e 3, o disposto na secção VII para a proposta de adjudicação inicial.

5. Salvo determinação em contrário, as concorrentes podem apresentar, na sequência ou no decurso das negociações a que se refere a primeira parte do n.º 3 do artigo 11.º da Lei n.º 16/2001, e sem prejuízo do disposto no n.º 4 do artigo 51.º, mais do que uma proposta de adjudicação subsequente dentro da mesma fase, bem como após o acto de adjudicação provisória.

Negociações

1. As negociações com as concorrentes, a que se refere a primeira parte do n.º 3 do artigo 11.º da Lei n.º 16/2001, decorrem, informalmente ou nos termos definidos pela comissão do concurso, perante os representantes por esta indicados, um dos quais dirige a sessão.

2. As negociações podem decorrer em quaisquer fases do concurso, até ao momento da outorga dos contratos de concessão, não havendo, salvo determinação em contrário, limite mínimo ou máximo de sessões de negociação.

3. As concorrentes devem participar nas sessões de negociação para que forem devidamente convocadas nos termos definidos no artigo 40.º, podendo resultar em exclusão do concurso com a consequente perda a favor da Região da caução para admissão a concurso, salvo se a comissão do concurso considerar a falta devidamente justificada.

4. A comissão do concurso pode optar por manter negociações, individualmente, com cada uma das concorrentes ou, conjuntamente, com algumas ou todas elas.

5. Cabe à comissão do concurso determinar os termos em que as sessões de negociação são registadas em acta, podendo sê-lo sob a forma de súmula compreensiva.

6. No decurso das negociações a que se refere a primeira parte do n.º 3 do artigo 11.º da Lei n.º 16/2001, a comissão do concurso pode excluir alguma ou algumas das concorrentes a quem haja sido provisoriamente adjudicada a concessão e determinar a adjudicação provisória a alguma ou algumas concorrentes a quem não tenha sido adjudicada provisoriamente a concessão, se tal se justificar por motivos de interesse público da Região, devendo a escolha incidir, de entre as concorrentes preteridas, pelas melhor colocadas no concurso.

7. Salvo determinação em contrário, as concorrentes a quem for adjudicada provisoriamente a concessão podem ser convidadas a apresentar, na sequência ou no decurso das negociações a que alude o número anterior, uma ou mais propostas subsequentes, sem prejuízo do disposto no n.º 4 do artigo 51.º.

## SECÇÃO X

### Da adjudicação

### Artigo 78.º

### Critérios para adjudicação das concessões

1. As concessões são adjudicadas às concorrentes que venham a ser consideradas idóneas e dotadas de capacidade financeira e que apresentem as condições mais vantajosas para a Região na exploração e operação adequadas dos jogos de fortuna ou azar em casino.

2. Na selecção das concorrentes são utilizados, designadamente, os seguintes critérios:

1) Valor do prémio global proposto;

2) Valor da contribuição proposta ao abrigo da alínea 7) do artigo 22.º da Lei n.º 16/2001;

3) Valor da contribuição proposta ao abrigo da alínea 8) do artigo 22.º da Lei n.º 16/2001;

4) Experiência na exploração e operação de jogos de fortuna ou azar em casino, em actividades relacionadas com a exploração de jogos de fortuna ou azar, ou na gestão de casinos ou outro tipo de jogos ou apostas; e

5) A existência e natureza das propostas de investimento de relevante interesse para a Região, em especial quando realizado de raiz.

3. Para além do referido no número anterior é ainda tomado em consideração:

1) A valorização dos locais e recintos onde funcionam os casinos, designadamente quando contribuam para a diversificação do produto turístico oferecido; e

2) O contributo das propostas para o desenvolvimento do emprego na indústria do jogo, bem como para a formação profissional dos respectivos profissionais.

### Artigo 79.º

#### Não adjudicação

1. O Chefe do Executivo tem a faculdade de, sempre que o entenda conveniente aos interesses da Região, decidir pela não adjudicação de todas ou algumas das concessões postas a concurso.

2. O Chefe do Executivo pode não adjudicar todas ou algumas das concessões nomeadamente quando:

1) A adjudicação da concessão seja adiada;

2) Todas as propostas, ou as mais convenientes, ofereçam valores consideravelmente baixos ou não sejam vantajosas para a Região;

3) Tenha de proceder-se, por circunstância superveniente relevante, a uma revisão ou alteração estrutural dos termos e condições da concessão ou do concurso;

4) Haja fortes indícios de conluio entre as concorrentes, nomeadamente por via de práticas, actos ou acordos susceptíveis de falsear a concorrência; ou

5) Ocorra a situação, após concurso limitado por prévia qualificação, de selecção de concorrentes em número inferior ao estabelecido no n.º 2 do artigo 98.º.

### Artigo 80.º

#### Minuta do contrato de concessão

1. As minutas dos contratos de concessão são remetidas antes do acto de adjudicação às concorrentes cujas propostas de adjudicação tenham sido seleccionadas, para sobre elas se pronunciarem no prazo de 5 dias.

2. Se a concorrente não se pronunciar no prazo referido, considera-se aprovada a minuta.

### Artigo 81.º

Reclamação contra a minuta

1. São admissíveis reclamações contra a minuta do contrato de concessão sempre que dela resultem obrigações que contrariem ou não se contenham nos elementos que servem de base ao concurso, na proposta de adjudicação ou nos esclarecimentos que sobre esta a concorrente tenha prestado por escrito.

2. Se a reclamação não for aceite, total ou parcialmente, a concorrente fica desobrigada de contratar, com perda da caução para admissão a concurso, desde que, no prazo de 5 dias contados da data em que tome conhecimento da decisão, comunique ao Governo, através da comissão do concurso, que desiste da adjudicação da concessão.

3. Caso a concorrente não comunique ao Governo, no prazo referido no número anterior, que desiste da adjudicação da concessão, perde o montante da caução para admissão a concurso a favor da Região e a adjudicação, na parte que a ela respeita, caduca.

### Artigo 82.º

### Conceito e notificação da adjudicação

1. A adjudicação é o acto pelo qual o Chefe do Executivo aceita as propostas de adjudicação das concorrentes seleccionadas.

2. A adjudicação provisória é feita mediante despacho do Chefe do Executivo, proferido sobre relatório fundamentado, e consiste na escolha de um número de concorrentes igual ao das concessões a adjudicar.

3. O relatório fundamentado referido no n.º 1 do artigo 11.º da Lei n.º 16/2001 é elaborado pela comissão do concurso.

4. A adjudicação provisória é notificada às concorrentes seleccionadas, determinando-se-lhes logo que prestem, em prazo a fixar então, as garantias de cumprimento que forem devidas e cujo valor expressamente se indica.

5. As concorrentes preferidas devem ainda, após a notificação da adjudicação provisória e no prazo então fixado, comprovar junto da comissão do concurso que o capital social de montante não inferior a 200 milhões de patacas se encontra integralmente realizado em dinheiro e depositado em instituição de crédito local ou em sucursal ou subsidiária de instituição de crédito autorizada a operar na Região.

6. A adjudicação provisória é também comunicada às restantes concorrentes admitidas à fase precedendo a adjudicação provisória, no prazo de 15 dias.

7. A adjudicação é feita mediante despacho do Chefe do Executivo, proferido sobre relatório fundamentado da comissão do concurso, e comunicada às concorrentes referidas nos n.os 4 e 6, no prazo de 15 dias.

### Artigo 83.º

### Caducidade da adjudicação

1. Se a concorrente seleccionada no acto de adjudicação provisória não prestar em tempo a caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e

pontual cumprimento das obrigações legais e contratuais a que se haja vinculado, e não tiver sido impedida de o fazer por facto independente da sua vontade que seja considerado devidamente justificado, perde o montante da caução para admissão a concurso a favor da Região e a adjudicação, na parte que a ela respeita, caduca.

2. Se a concorrente seleccionada no acto de adjudicação provisória não proceder em tempo ao cumprimento das obrigações relativas ao capital social previstas no n.º 5 do artigo anterior, e não tiver sido impedida de o fazer por facto independente da sua vontade que seja considerado devidamente justificado, perde o montante da caução para admissão a concurso a favor da Região e a adjudicação, na parte que a ela respeita, caduca.

## SECÇÃO XI

### Da garantia do cumprimento

### Artigo 84.º

### Garantias a prestar pelas concorrentes seleccionadas

1. Cada concorrente seleccionada no acto de adjudicação provisória está obrigada a prestar a caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que se haja vinculado.

2. O Governo, através da comissão do concurso, pode ainda exigir que seja prestada garantia bancária específica, conforme o previsto no n.º 3 do artigo 20.º da Lei n.º 16/2001, que garanta o pagamento dos prémios a que a concorrente seleccionada no acto de adjudicação provisória se haja obrigado.

3. A caução prevista no n.º 1 pode ser dispensada pelo Governo, através da comissão do concurso, caso a garantia referida no número anterior haja sido prestada e englobe a generalidade das obrigações legais e contratuais a que a concorrente seleccionada no acto de adjudicação provisória se haja vinculado.

4. O Governo, através da comissão do concurso, pode exigir que a concorrente seleccionada no acto de adjudicação provisória preste garantia bancária específica para garantia do pagamento de montante igual aos valores mensais prováveis do imposto especial sobre o jogo, conforme previsto no n.º 5 do artigo 27.º da Lei n.º 16/2001.

5. Caso seja ordenada a prestação de todas ou de duas das garantias previstas nos números anteriores, o Governo, através da comissão do concurso, pode autorizar a sua prestação através de um único título.

### Artigo 85.º

### Recurso às garantias

O Governo pode recorrer às garantias prestadas, independentemente de decisão judicial, nos casos em que a concessionária não pague, nem conteste no prazo legal as multas aplicadas ou não cumpra as obrigações legais ou contratuais líquidas e certas.

### Artigo 86.º

### Valor

despacho do Chefe do Executivo e deve ser comunicado às concorrentes antes do acto de adjudicação.

Artigo 87.º

Modo de prestação

1. A caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que a concorrente seleccionada no acto de adjudicação provisória se haja vinculado, pode ser prestada por depósito em dinheiro, por garantia bancária ou por seguro-caução, nos termos a definir no programa do concurso ou por despacho do Chefe do Executivo, podendo ainda ser prestada por qualquer das formas adicionais previstas no artigo 619.º do Código Civil, mediante autorização do Governo ou da comissão do concurso.

2. O depósito em dinheiro é efectuado em instituição de crédito que exerça funções de caixa do tesouro da Região, à ordem do Governo, devendo ser especificado o fim a que se destina.

3. Caso o modelo para a sua prestação não conste do programa do concurso, a concorrente seleccionada no acto de adjudicação provisória que pretenda prestar caução por depósito em dinheiro deve especificar, no momento do depósito, que este se destina a servir de caução como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que se haja vinculado, pelo que pode ser usada pelo Governo nos termos do artigo 85.º.

4. Caso o modelo para a sua prestação não conste do programa do concurso, a concorrente seleccionada no acto de adjudicação provisória que pretenda prestar caução por garantia bancária deve apresentar documento emitido por instituição de crédito legalmente autorizada a exercer actividade na Região pelo qual esta assegura, até ao limite do valor da caução, o imediato pagamento de quaisquer importâncias exigidas pelo Governo nos termos do artigo 85.º.

5. A concorrente seleccionada no acto de adjudicação provisória que pretenda prestar caução por seguro-caução deve apresentar apólice pela qual uma seguradora legalmente autorizada a realizar esse seguro na Região assume, até ao limite do valor da caução, o encargo de satisfazer de imediato o pagamento de quaisquer importâncias exigidas pelo Governo nos termos do artigo 85.º.

6. As garantias bancárias e os seguros-caução prestados não podem ser sujeitos a condição ou termo resolutivo.

7. No caso de caução prestada através de garantia bancária ou seguro-caução, o Governo pode exigir a sua substituição, quando ocorra uma diminuição da capacidade financeira da entidade garante que indicie impossibilidade de cumprimento, no todo ou em parte, das obrigações assumidas.

8. Todas as despesas que resultem da prestação da caução ou do seu levantamento são suportadas pela concorrente seleccionada no acto de adjudicação provisória.

9. A concorrente seleccionada no acto de adjudicação provisória pode converter a caução para admissão a concurso em caução como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que se haja vinculado, com as adaptações ou reforços necessários.

SECÇÃO XII

Do contrato de concessão

Artigo 88.º

Prazos para celebração do contrato de concessão

1. O contrato de concessão deve ser celebrado no prazo de 30 dias contados da data da prestação da caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que a concorrente seleccionada no acto de adjudicação provisória se haja vinculado.

2. O Governo, através da comissão do concurso, comunica por escrito, com a antecipação mínima de 5 dias, a data, a hora e o local em que a adjudicatária deve comparecer para a outorga do respectivo contrato de concessão, de acordo com a minuta aprovada.

3. Se a adjudicatária não comparecer no dia, hora e local fixados para a outorga do contrato de concessão e não tiver sido impedida de o fazer por motivo independente da sua vontade, devidamente justificado no prazo de 3 dias, perde a favor da Região a caução referida no n.º 1, e a adjudicação, na parte que a ela respeita, caduca, salvo decisão em contrário do Chefe do Executivo.

4. Se o Governo não promover a celebração do contrato de concessão dentro do prazo estabelecido no n.º 1, pode a adjudicatária recusar-se a outorgá-lo posteriormente, tendo direito a ser reembolsada, no prazo de 90 dias, de todas as despesas e demais encargos decorrentes da prestação das cauções, bem como dos custos dos processos de verificação da idoneidade e da capacidade financeira.

Artigo 89.º

Elementos integrados no contrato de concessão

1. Considera-se integrada no contrato de concessão, em tudo quanto não for explícita ou implicitamente contrariado por ele, a proposta de adjudicação apresentada.

2. Os documentos necessários à outorga do contrato de concessão, quando não forem redigidos numa das línguas oficiais da Região, devem ser acompanhados de tradução legalizada para uma das línguas oficiais da Região, a qual prevalece para todos e quaisquer efeitos.

Artigo 90.º

Cláusulas contratuais

Sem prejuízo do disposto no artigo anterior, o contrato de concessão deve conter, designadamente, cláusulas relativas:

1) À referência da Região Administrativa Especial de Macau como entidade concedente e a identificação do seu representante, nos termos legais;

2) À identificação da concessionária, e do seu ou seus representantes, com menção dos preceitos dos estatutos ou do acto que lhes confere poderes para a obrigar;

3) A menção do acto de adjudicação;

4) À conformação com as exigências de idoneidade e capacidade financeira da concessionária de acordo com o disposto nos artigo 14.º e 15.º da Lei n.º 16/2001 e nos capítulos III e IV do presente regulamento administrativo;

5) Ao número de casinos que cada concessionária é autorizada e se compromete a operar;

6) Ao número de mesas e tipo de jogos que cada concessionária é autorizada e se compromete a explorar;

7) Ao prazo da concessão, em conformidade com o disposto no artigo 13.º da Lei n.º 16/2001;

8) Ao valor do prémio global assumido pela concessionária, com discriminação da parte fixa e da parte variável do mesmo;

9) Ao valor da contribuição a efectuar pela concessionária para os efeitos do disposto na alínea 7) do artigo 22.º da Lei n.º 16/2001;

10) Ao valor da contribuição a efectuar pela concessionária para os efeitos do disposto na alínea 8) do artigo 22.º da Lei n.º 16/2001;

11) Ao cumprimento dos deveres estipulados pelo artigo 22.º da Lei n.º 16/2001;

12) Às obrigações de investimento, independentemente da sua natureza, de relevante interesse para a Região, que a concessionária se compromete a efectuar, bem como, quando for o caso, às obrigações da concessionária para a valorização dos locais e recintos onde funcionam os casinos, designadamente quando contribuam para a diversificação do produto turístico oferecido;

13) À conformação com o disposto no artigo 17.º da Lei n.º 16/2001, relativo ao capital social e acções da concessionária;

14) Às cauções e garantias que devam ser prestadas pela concessionária, nos termos legais;

15) Ao compromisso de rigoroso e atempado cumprimento das obrigações fiscais e de prestações de contas de acordo com o disposto nos artigos 27.º e 36.º da Lei n.º 16/2001;

16) Ao acatamento, havendo bens da Região afectos às concessões, nos termos dos artigos 37.º e seguintes da Lei n.º 16/2001, das obrigações legais impendendo sobre as concessionárias no que diz respeito a tais bens;

17) À obrigação, assumida pela concessionária, de explorar a concessão nos termos e condições constantes do contrato de concessão; e

18) À obrigação, assumida pela concessionária, de renúncia a foro especial e submissão à lei vigente na Região.

## Artigo 91.º

### Formalidades dos contratos de concessão

1. Os contratos de concessão para a exploração de jogos de fortuna ou azar em casino são celebrados por escritura pública, a outorgar pelo Chefe do Executivo ou por membro do Governo em quem hajam sido delegados poderes para a outorga, em representação da Região, e pelos representantes das adjudicatárias.

2. A escritura pública é lançada no livro de notas da Direcção dos Serviços de Finanças, nela servindo de oficial público o notário privativo da Direcção dos Serviços de Finanças.

3. As revisões dos contratos de concessão, assim como as suas adendas, seguem as mesmas regras e a mesma forma, sendo também lançadas no livro de notas da Direcção dos Serviços de Finanças.

4. Os contratos de concessão, bem como as respectivas revisões e adendas, são publicados na II série do Boletim Oficial da Região Administrativa Especial de Macau.

5. Cada concessionária recebe cópia autêntica do respectivo contrato de concessão, bem como das revisões e adendas relativas ao mesmo, incluindo todos os elementos que dele façam parte integrante.

6. As despesas e encargos inerentes à celebração dos contratos, e bem assim às revisões ou adendas a estes, são suportados pelas concessionárias.

### Artigo 92.º

### Data de início da actividade

Para efeitos do disposto no n.º 3 do artigo 17.º da Lei n.º 16/2001, considera-se como data do início da actividade de uma concessionária apenas aquela que o Governo, através de despacho do Secretário para a Economia e Finanças, venha a reconhecer expressamente como tal.

# CAPÍTULO VII

## DO CONCURSO LIMITADO COM PRÉVIA QUALIFICAÇÃO

### Artigo 93.º

### Regime do concurso

1. O concurso limitado inicia-se com uma fase de pré-qualificação, regendo-se, com as necessárias adaptações, pelas disposições que regulam o concurso público simples em tudo quanto não seja incompatível com a sua natureza ou com as disposições seguintes.

2. Na fase de pré-qualificação, a apresentação a concurso não inclui a entrega de propostas de adjudicação, não sendo aplicáveis as disposições respectivas constantes do presente regulamento administrativo.

### Artigo 94.º

### Candidatura

1. A candidatura deve ser instruída com os documentos de habilitação exigíveis nos termos do artigo 54.º, bem como com todos os necessários à demonstração do preenchimento dos

critérios constantes do artigo 97.º.

2. A comissão do concurso pode, excepcionalmente, dispensar a apresentação, aquando da candidatura, de alguns dos documentos referidos no número anterior, fixando um prazo para a sua apresentação.

3. Os documentos de habilitação exigíveis nos termos do artigo 54.º devem ser encerrados em invólucro opaco, fechado e lacrado, no rosto do qual deve ser escrito "Documentos respeitantes à pré-qualificação", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino.

4. Os documentos necessários à demonstração do preenchimento dos critérios constantes do artigo 97.º devem ser encerrados em invólucro com as características indicadas no número anterior, no rosto do qual deve ser escrito "Documentos relativos à demonstração do preenchimento dos critérios de selecção na fase de pré-qualificação", indicando-se o nome ou a denominação social da concorrente e a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino.

5. Os invólucros referidos nos números anteriores devem ser encerrados num terceiro, igualmente opaco, fechado e lacrado, no rosto do qual deve ser escrito "Invólucro exterior - Pré-qualificação", indicando-se neste o nome ou denominação social da concorrente, a indicação de que respeita a concurso público para a atribuição de concessão para a exploração de jogos de fortuna ou de azar em casino, a fim de ser entregue contra recibo ao serviço ou entidade competente.

### Artigo 95.º

#### Apresentação da candidatura

1. No concurso limitado podem apresentar-se a concurso as entidades que reúnam os necessários requisitos formais, designadamente os previstos no artigo 53.º, sem prejuízo da faculdade de o Chefe do Executivo dirigir convites específicos para apresentação de candidatura à fase de pré-qualificação.

2. O prazo de apresentação a concurso, a ser fixado no despacho de abertura do concurso, não pode ser inferior a 30 dias.

### Artigo 96.º

#### Acto de abertura das candidaturas

É aplicável à fase de pré-qualificação, com as necessárias adaptações, o disposto na secção VIII do capítulo anterior, excepto o disposto nos artigos 64.º, n.º 2, e 70.º a 72.º.

### Artigo 97.º

#### Critérios de selecção

1. O Governo selecciona, por despacho precedido de parecer da comissão do concurso, e dentre as concorrentes que se apresentaram à fase de pré-qualificação, as admitidas à fase de consulta.