2. São admitidas à fase seguinte as concorrentes que demonstrem reunir condições de natureza profissional, económica, financeira ou outra, necessárias à exploração da concessão.

3. Sem prejuízo do estabelecido no programa do concurso, os critérios específicos de selecção a ter em conta no despacho que decidir a fase de pré-qualificação são os seguintes:

1) A experiência da concorrente ou da sua sócia dominante na exploração de jogos de fortuna ou azar;

2) A experiência da concorrente ou da sua sócia dominante na exploração de actividades correlativas;

3) A experiência dos administradores da concorrente na gestão de casinos ou empresas similares;

4) A reputação da concorrente ou da sua sócia dominante;

5) A situação económica e financeira da concorrente e, caso exista, da sua sócia dominante.

### Artigo 98.º

#### Admissão à fase de consulta

1. O despacho que decide a fase de pré-qualificação é notificado a todas as concorrentes.

2. Salvo determinação em contrário pelo Governo, nomeadamente no despacho de abertura do concurso, o número de concorrentes seleccionadas não pode ser inferior a três, quatro ou cinco, consoante sejam postas a concurso uma, duas ou três concessões.

3. Sendo seleccionadas concorrentes em número inferior ao estabelecido no número anterior, o Governo pode convidar empresas de reconhecida reputação a apresentar propostas de adjudicação nos termos do n.º 3 do artigo 50.º.

# CAPÍTULO VIII

# DISPOSIÇÕES FINAIS E TRANSITÓRIAS

### Artigo 99.º

#### Associação de sociedades concorrentes

O Chefe do Executivo, mediante despacho, determina o regime jurídico aplicável à associação de sociedades concorrentes, designadamente os termos em que as mesmas podem ser admitidas.

### Artigo 100.º

#### Violação da declaração de renúncia a foro especial e submissão à lei vigente

1. A violação da declaração de renúncia a foro especial e submissão à lei vigente na Região, prevista na alínea 10) do n.º 1 do artigo 54.º, importa na perda, a favor da Região, da caução para admissão a concurso ou da caução, prevista na alínea 2) do artigo 22.º da Lei n.º

lação, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais, conforme o caso.

2. Os custos ou despesas da Região resultantes da violação da declaração referida no número anterior são suportados pela entidade violadora e as dívidas relativas ao seu pagamento são cobradas em processo de execução fiscal.

## Artigo 101.º

### Principais empregados com funções relevantes no casino

1. O Governo, através de despacho do Secretário para a Economia e Finanças, indica as funções relevantes no casino para efeitos do disposto no n.º 6 do artigo 14.º da Lei n.º 16/2001 e do previsto em demais normas que sejam aplicáveis aos principais empregados com funções relevantes no casino.

2. O Governo pode conceder um prazo especial para as concorrentes, concessionárias ou respectivas sociedades gestoras submeterem a indicação das pessoas que pretendem designar como principais empregados com funções relevantes no casino, bem como o respectivo "Formulário contendo dados sobre os principais empregados das concorrentes ou das concessionárias com funções relevantes no casino".

3. Na fixação do prazo referido no número anterior é tomada em consideração a situação da concorrente, concessionária ou respectiva sociedade gestora, devendo o mesmo terminar antes de 90 dias do previsível início de operação do casino onde o respectivo principal empregado vai exercer funções relevantes.

4. Para efeitos do primeiro concurso público a abrir nos termos do artigo 9.º e seguintes da Lei n.º 16/2001 e demais regulamentação complementar, nomeadamente o presente regulamento administrativo, o Governo fixa o prazo referido nos n.os 2 e 3 no programa do concurso ou através de despacho do Secretário para a Economia e Finanças.

## Artigo 102.º

### Entrada em vigor

O presente regulamento administrativo entra em vigor no dia seguinte ao da sua publicação.

Aprovado em 26 de Outubro de 2001.

Publique-se.

O Chefe do Executivo, Ho Hau Wah.

———————

附件 I - ANEXO I - ANNEX I

附件 II - ANEXO II - ANNEX II

附件 III - ANEXO III - ANNEX III

[ Página Anterior ] [ Versão Chinesa ]

Disponível em: 29/10/2001 - 09:00:00



Consulte também:

**27 de Julho de 2001**, está disponível o nono número da revista **'Perspectivas do Direito'**, ~~nono~~ da responsabilidade da **Direcção de Serviços de Assuntos de Justiça**, composta e impressa na Imprensa Oficial.



The Chief Executive, after having consulted with the Board of Directors, decrees, under the terms of paragraph 5) of article 50.&ordm; of the Lei Básica of the Macau Special Administrative Region and of article 52. of Law no. 16/2001, to be taken as "regulamento administrativo", the following:

# CHAPTER I

# GENERAL PROVISIONS

## Article 1

### Scope

The present "regulamento administrativo" governs the public tender for the granting of concessions for the exploitation of games of chance in casino, namely regarding its processual aspects, the concession contract, the creditability requisites, the financial capacity of the tender applicants for a concession for the exploitation of games of chance in casino, and the concession holders, including the respective assessment processes.

## Article 2

### Definitions

So far as the present "regulamento administrativo" is concerned:

1) The main associate is an individual or corporate body that, according to point 1 of article 212 of the Commercial code, on its own or with other companies, of which it is also the main associate, or with other associates to which it is connected by parasocial agreements, holds the major participation of the share capital, has more than the majority of the votes or the power to elect the majority of the administration members of a company;

2) Casinos are the places legally authorized and classified as such by the Government;

3) Games of chance are games where the result is determined wholly or mainly by the luck of the player;

4) Managing companies are those that, through a contract signed with a concession holder, assume its management powers;

5) Entities closely related to a tender applicant or a concession holder are those individuals or corporate bodies to which a tender applicant or a concession holder has a special relation, due to having assumed 'an agreement or given financial guarantee for the investments and engagements that a tender applicant or a concession holder proposes to undertake or assume, or due to, in a triennial period, the average of the annual turnover of a tender applicant or a concession holder being equal or above 500 million patacas, or due to fulfilling other criteria or requisites approved by "despacho" by the Secretary for Economy and Finance;

6) Tender committee is the body foreseen in article 44 of the present "regulamento administrativo".

# CHAPTER II

# OF THE PREMIUM

## Article 3

### Juridical nature of the premium

1. As a compensation for the attribution of a concession for the exploitation of games of chance in casino, the concession holders are bound to pay a premium to the Macau Special Administrative Region, henceforth designated in short by Region.

2. The amount of the premium to be paid by the concession holders is made up of a fixed part and a variable part.

3. The fixed part of the premium is equal for all the concession holders and determined by "despacho" issued by the Chief Executive, to be published on the Official Bulletin of Macau Special Administrative Region up to the opening of the tender.

4. The variable part of the premium is determined regarding the specific contents of each of the concessions, and is settled through the criteria foreseen in the following article.

5. The global amount of the premium to be paid by each concession holder is fixed on the respective concession contract.

## Article 4

### Criteria to determine the variable part of the premium

In order to determine the variable part of the premium, the following criteria are taken into consideration:

1) Number of casinos that each concession holder is allowed to operate;
2) Number of gambling tables each is allowed to exploit;
3) Types of games each is allowed to exploit; and
4) Geographical location of the casinos.

## Article 5

### Payment of the premium

1. The payment of the premium is fractioned in annual instalments.

2. The Government may determine that the annual instalments regarding the premium are paid on a monthly basis.

3. The concession agreements may foresee updating mechanisms of the amount of the premium to be paid by the concession holders.

# CHAPTER III

# OF THE CREDITABILITY

## Article 6

### Creditability of tender applicant and concession holders

1. A concession for the operation of games of chance in casino shall only be granted to a tender applicant who is recognised to be creditable to hold a concession, except for what is disposed on article 13.

2. The concession holder shall remain creditable for the entire duration of the concession.

3. To the effects of the previous point, the concession holders shall be submitted to continuous and permanent monitoring and supervision undertaken by the Government.

## Article 7

### Creditability of shareholders, directors and key position employees

The requirement of creditability of the applicant company, as well as of the concession holders, is also extended to their shareholders who own 5% or more than 5% of the company's share capital, to the directors of the company and key position employees of the casinos.

## Article 8

### Checking the creditability of the tender applicants, the concession holders and their shareholders, directors and key position employees

1. The tender applicants, the concession holders, their shareholders who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos, are subject to creditability assessment procedures undertaken by the Government.

2. When determining the tender applicants and concession holders' creditability, the Government takes into account, amongst other, the following criteria:

1) The applicant or concession holder's business experience, determined through the analysis of data supplied by filling in the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", being an integral part of it;

2) The applicant or concession holder's reputation, determined through the analysis of data supplied by filling in the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", being an integral part of it; and of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", being an integral part of it, as well as a risk assessment report regarding the applicant company or the concession holder;

3) The nature of business and reputation of other group companies related to the applicant or concession holder, namely those that are its main associates, determined through the analysis of data supplied by filling in the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", being an integral part of it; and of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", being an integral part of it, as well as a risk assessment report regarding the applicant company or the concession holder; and

4) The nature of business and reputation of the applicant or concession holder's direct associates, namely those that are its main associates determined through the analysis of data supplied by filling in the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", being an integral part of it; and of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", being an integral part of it, as well as a risk assessment report regarding the entities that are closely related to the applicant or concession holder, namely those that are its main associates.

3. When determining the creditability of the applicant or concession holder' shareholders who own 5% or more than 5% of the company's share capital, as well as when determining the creditability of the applicant or concession holder's directors, the Government takes into account, amongst other deemed relevant, the data supplied by filling in the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", being an integral part of it, as well as a risk assessment report regarding those shareholders and directors.

4. When determining the creditability of the applicant or concession holder' key position employees of the casinos, the Government takes into account, amongst other deemed relevant, the data supplied by filling in the "Form including data on tender applicant or concession holder's key position employees of the casinos", its model being approved by "despacho" issued by the Secretary for Economy and Finance.

5. When determining the creditability of the applicant companies, concession holders, the shareholders of the applicant companies who own 5% or more than 5% of the company's share capital, the directors of the companies and key position employees of the casinos, the Government still takes into special consideration the fulfilment of the legal norms to which each of these entities is bound.

6. For the continuous and permanent monitoring and supervision of the creditability of the concession holders, the shareholders of the applicant companies who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos, the Government, during the concession period, proceeds to the updating and verification of the data appearing in the documents mentioned on the previous points.

7. The risk evaluation reports mentioned in points 2 and 3 and other orders of the present "regulamento administrativo" must include information and data regarding the identification of the individual or company and the respective holders of the social bodies, any lawsuits proposed by them or if sued in law, its economical and financial situation including eventual loans or relevant financial operations and the estimation of the value of goods and rights it holds, under the terms required by Appendix I of the present "regulamento administrativo".

## Article 9

### Costs

1. The costs of the investigation intended to assess the creditability of the applicants, the shareholders of the applicant companies who own 5% or more than 5% of the company's share capital, the directors of the companies and key position employees of the casinos, are paid by the applicants; such costs of investigation shall be deducted from the guarantee deposit paid for the admission to the public tender.

2. In case it happens that, the amount of the guarantee deposit mentioned on the previous point is insufficient to assure the costs of the creditability assessment procedure and, in case it is demanded and no backing is made, the resulting debit constitutes a debt from the applicant to the Region, and shall be charged as a tax foreclosure process.

3. The costs of the investigation intended to assess the creditability of the applicants, the shareholders of the applicant companies who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos, are paid by the applicants; its payment terms shall be established on the respective concession contract or by means of an agreement between the Government and the concession holder.

4. The debts regarding the payment of costs of the assessment procedure mentioned on the previous point shall be charged as a tax foreclosure process.

5. Certificates or other documents issued by the Gaming Control Board that report, in detail, the assessment procedure costs mentioned on the present article, constitute enough evidence for such costs.

## Article 10

### Information Disclosure

1. For the purpose of the creditability assessment procedures, the applicant company or the concession holder shall submit to the Government:

1) Regarding the company itself and its main associate, a copy of the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", duly filled in and signed; the signatures being subject to a presential notary recognition;

2) Regarding each shareholder who owns 5% or more than 5% of the company's share capital, and each of the directors, a copy of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", duly filled in and signed; the signatures being subject to a presential notary recognition;

3) Regarding each key position employee of the casinos, a copy of the "Form including data on tender applicant or concession holder's key position employees of the casinos", duly filled in and signed; the signatures being subject to a presential notary recognition.

2. For the creditability assessment procedures, each applicant, concession holder, main associate, shareholder who owns 5% or more than 5% of the company's share capital, director and key position employee of the casino, allows the Government to have access to all the documents, information and data that the Government regards as necessary for such assessment, even if protected by secrecy obligation, namely submitting to the Government a copy of the "Declaration authorising the revelation of information"; its model constituting Appendix III of the present "regulamento administrativo", being an integral part of it, duly filled in and signed; the signatures being subject to a presential notary recognition.

3. Regarding the shareholders directors who reside in a jurisdiction in which it is not possible to obtain presential notary recognition of the signatures on the documents mentioned on the previous points, one must produce a way of witnessing the signatures by a qualified public authority, duly legalised.

## Article 11

### Duty of co-operation

1. For the effect of what has been disposed on the present "regulamento administrativo", in particular on the present chapter, and other additional legislation of Law no. 16/2001, besides the submission to the Government of the copies of the "Declaration authorising the revelation of information", mentioned in point 2 of the previous article, each applicant, concession holder, the company's main associate, shareholder who owns 5% or more than 5% of the company's share capital, director and key position employee of the casino, has a special obligation to co-operate with the Government, and as such having to submit all documents and give information, data, authorizations or evidences that are requested for the effect.

2. For the effect of what has been disposed on the present "regulamento administrativo", and in particular on the present chapter, and other additional legislation of Law no. 16/2001, each applicant, concession holder, the company's main associate, shareholder who owns 5% or more than 5% of the company's share capital, director and key position employee of the casino, has the obligation to immediately make available to the Government, any document, information or data, that the Government may regard as necessary to check if the creditability is kept.

3. For the purpose of the creditability assessment procedures, all individuals, entities, and corporate bodies, either public or private, have the obligation to co-operate with the Government, and as such having to submit all documents and give information, data, authorizations or evidences that are requested regarding any tender applicant or concession holder.

## Article 12

### Conclusion of the creditability assessment process

1. The creditability assessment procedures are instructed by the Gaming Control Board and are concluded with the elaboration of reports by its director, where the applicant or the concession holder, shareholders who own 5% or more than 5% of the company's share capital, directors and key position employees of the casino are considered creditable or not.

2. The processes to assess creditability mentioned on the present chapter must be concluded before the concession is granted.

3. For the purpose of the proceedings regarding the creditability assessment procedures, the Gaming Control Board may resort to specialized companies as well as assistance by any other service of the Administration.

4. The reports mentioned on point 1 are sent by the Gaming Control Board to the Secretary for Economy and Finance except the reports regarding the tender applicants that are sent to the tender committee, as long as the conclusion of the creditability assessment process does not take place after granting the concession contracts.

5. The Gaming Control Board may invite any of the individuals or entities mentioned in point 1 to clarify any aspect or to complete any data, as long as it is an essential element, before the conclusion of the respective report.

6. If the report, mentioned on point 1, concludes that a tender applicant is not considered creditable, such involves the applicant's exclusion from the tender; the tender committee can then determine the reselection of an applicant that had been excluded on the previous stage, under the terms foreseen on point 4 article 75.

7. Not withstanding the disposed on point 5, if on the report mentioned on point 1 regarding a concession holder one concludes that the company ceased being creditable, and in case it can be resolved, the Government may allow the resolution of the fault that is on the basis for the loss of creditability; if the fault that fundaments the loss of creditability cannot be resolved, the Government promotes the unilateral annulment of the respective concession contract, under the terms and for the effects of what is disposed on article 48 of Law no. 16/2001.

8. If on the reports mentioned on point 1 regarding a director or key position employee of the casino one concludes that he/she is not considered creditable, the respective tender applicant or concession holder must promote his/her immediate suspension.

9. If on the report mentioned on point 1, regarding an applicant or concession holder's shareholder who owns 5% or more than 5% of the company's share capital, one concludes that he/she is not considered creditable, he/she, not withstanding the disposed on point 7 of article 17 of Law no. 16/2001, shall hand over his/her shares to a third party within a time limit established for the effect; if the transfer of shares does not take place within the established time limit, the respective tender applicant or concession holder must acquire those shares.

10. The disposed on the previous points does not exclude the application of fines or other penalties that may be applied.

## Article 13

### Subsequent conclusion of the creditability assessment process

1. Under exceptional circumstances, and duly authorized by the Government, the conclusion of the creditability assessment processes may occur subsequently to the granting of the concession.

2. When the conclusion of the creditability assessment processes takes place subsequently to the granting of the concession, and in case a concession has already been granted, the respective concession agreement must obligatorily append a clause determining the validity of the contract to the result of the respective creditability assessment process, not withstanding the disposed on point 5 of the previous article.

## Article 14

### Communication obligation

For the purpose of appraising one's creditability, the tender applicants and the concession holders are obliged to communicate to the Gaming Control Board, as briefly as possible, any imminent or foreseeable alteration regarding the company's shareholders who own 5% or more than 5% of the company's share capital, the company's directors or key position employees of the casino, as well as any imminent or foreseeable alteration of the company or administration structure of its main associates or closely related entities as well as their respective main associates.

## Article 15

### Contracts of supply and rendering of goods and services

1. The contracts of supply and rendering of goods and services of one million or more than one million patacas signed by a tender applicant or concession holder shall be obligatorily put in writing.

2. The concession holders, or the companies that assume their management, shall send to the Gaming Control Board a copy of all the contracts mentioned on the previous point, as well as any additional documents regarding those contractual relations.

3. One shall also send to the Gaming Control Board copies of all the contracts, as well as any additional documents regarding that contractual relation, when the payments to a sole entity annually reaches 1 million or more than one million patacas on the account of supplying or rendering of goods or services.

4. The dispatching mentioned on point 2 must be carried out within 15 days after the signing of the contract, if a shorter term is not fixed by the Gaming Control Board; the obligatorily dispatching reported on the previous point must be carried out within 15 days after the action takes place or in case of a contract with a value that, added up to the actions or to previous contracts, amount to the alluded value.

5. The un-fulfilment of the obligations foreseen on the present article establishes an administrative breach and, independently of fines or other penalties that may occur, is taken into account for the purpose of assessing the creditability of the concession holders or the companies that assume their management.

## Article 16

### Creditability of the managing companies

1. The managing companies, as well as its shareholders who own 5% or more than 5% of the company's share capital, the directors of the company and key position employees of the casinos, are also subject to a credibility assessment process.

2. To the credibility assessment procedures regarding the managing companies, one applies the disposed on the articles of the present chapter regarding the creditability assessment procedures of the concession holders.

3. To the credibility assessment procedures regarding the company's shareholders who own 5% or more than 5% of the company's share capital and these company's directors one applies the disposed on the articles of the present chapter regarding the creditability assessment procedures of the company's shareholders who own 5% or more than 5% of the company's share capital and these company's directors.

4. To the credibility assessment procedures regarding the managing company's key position employees of the casino, one applies the disposed on the articles of the present chapter regarding the creditability assessment procedures of the concession holder's key position employees of the casino.

# CHAPTER IV

# OF THE FINANCIAL CAPACITY

## Article 17

### Financial capacity of the tender applicants and concession holders

1. A concession for the exploitation of games of chance in casino can only be granted to a tender applicant that possesses the adequate financial capacity to operate it.

2. The concession holders are obliged to keep an adequate financial capacity during the concession period.

3. For the effects of the previous point, the concession holders are subject to a continuous and permanent monitoring and supervision undertaken by the Government.

## Article 18

### Demonstration of the adequate financial capacity

1. The adequate financial capacity is demonstrated, amongst other, the following ways:

1) Assumption of an engagement or a guarantee deposit, by a third party, for the financing of investments and obligations that the tender applicants or concession holders propose to carry out or assume, namely through a binding document rendered by a bank or banks.;

2) Assumption of an engagement or a guarantee deposit, by shareholders who own 5% or more than 5% of the company's share capital, for the financing of investments and obligations that the tender applicants or concession holders propose to carry out or assume, rendering for the effect appropriate guarantees regarding goods and rights that they may hold.

2. When the adequate financial capacity is demonstrated as foreseen in paragraph 1) of the previous point, besides the obligation to communicate foreseen in article 28, in particular what is disposed in paragraph 1) of its point 1, each concession holder shall hand over to the government, every six months, a declaration from the third party or third parties that assumed the engagement or rendered a financial guarantee for the investments and obligations that the concession holder proposed do undertake or assume, that, up to the date mentioned on the declaration, the concession holder had been fulfilling the underlying obligations to such engagement or financial guarantee.

## Article 19

### Assessment of the financial capacity of the tender applicants and of the concession holders

1. The tender applicants and the concession holders are subject to an assessment process of their adequate financial capacity undertaken by the Government.

2. When assessing the tender applicants and concession holders' adequate financial capacity, the Government takes into account, amongst other deemed relevant, the following criteria:

1) The applicant or concession holder's economic and financial status; for the effect one must send the respective reports and board of directors' accounts, together with the judgements of the auditing board and external auditors regarding the last five financial years, as well as a risk evaluation report regarding the tender applicant or the concession holder;

2) The economic and financial status of the main associate companies of the tender applicant or concession holder; for the effect one must send the respective reports and board of directors' accounts, together with the statements of opinion of the auditing board and external auditors regarding the last five financial years, as well as a risk evaluation report regarding the respective main associate;

3) The economic and financial status of the tender applicant or concession holder's direct associates, namely that guarantee the financing of the investments and obligations that the tender applicant or concession holder should comply with; for the effect one must send the respective reports and board of directors' accounts, together with the statements of opinion of the auditing board and external auditors regarding the last five financial years, as well as a risk evaluation report regarding those entities;

4) The economic and financial status of the tender applicant or concession's shareholders who own 5% or more than 5% of the company's share capital, verified through the analysis of data supplied by filling in the "Form on the

revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", as well as a risk assessment report regarding each of these shareholders, when the way to demonstrate the adequate financial capacity is foreseen on 2) of point 1 of the previous article; and

5) The nature and type of casino or casinos that the tender applicant or concession holder intends to exploit as well as the infrastructures that the company proposes to associate to it.

3. The risk evaluation reports mentioned on the present "regulamento administrativo" shall include information and data regarding the identification of the individual or company and the respective holders of the social bodies, the juridical actions proposed by it or in which it is claimed, its economical and financial situation, including possible loans or relevant financial operations and the estimation of the value of the goods and rights it holds, under the terms required by Appendix I to the present "regulamento administrativo".

4. Each entity that is subject to the obligation to present a risk evaluation report shall previously request the agreement by the Government, through the Secretary for the Economy and Finance, as for the firm being of international, local or external reputation, except in case of those indicated on the tender program or by "despacho".

## Article 20

### Costs

1. The costs of the investigation intended to assess the adequate financial capacity of the tender applicants and the shareholders of the applicant companies who own 5% or more than 5% of the company's share capital shall be held by these and shall be deducted from the guarantee deposit paid for the admission to the public tender.

2. In case it happens that the amount of the guarantee deposit mentioned on the previous point is insufficient to assure the costs of the assessment procedures regarding the adequate financial capacity and, in case it is demanded and no backing is made, de resulting debit constitutes a debt from the applicant to the Region, and shall be charged as a tax foreclosure process.

3. The costs of the investigation intended to assess the adequate financial capacity of the concession holders, and of the shareholders of these companies who own 5% or more than 5% of the company's share capital, are paid by the concession holders; its payment terms shall be established on the respective concession contract or by means of an agreement between the Government and the concession holder.

4. The debts regarding the payment of costs of the assessment procedure mentioned on the previous point shall be charged as a tax foreclosure process.

5. Certificates or other documents issued by the Gaming Control Board that report, in detail, the costs for the assessment procedure costs mentioned on the present article, constitute enough evidence for such costs.

## Article 21

### Information Disclosure

1. For the purpose of the investigation intended to assess its adequate financial capacity, the tender applicant or concession holder submits to the Government, regarding each shareholder who owns 5% or more than 5% of the company's share capital, a copy of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", duly filled in and signed by the respective shareholder; the signatures being subject to a presential notary recognition.

2. For the purpose of the investigation intended to assess the adequate financial capacity, each tender applicant, concession holder and shareholder who owns 5% or more than 5% of the company's share capital, allows the Government to have access to all the documents, information and data that the Government regards as necessary for such assessment, even if protected by secrecy obligation, namely submitting to the Government a copy of the "Declaration authorising the revelation of information"; its model constituting Appendix III of the present "regulamento administrativo", duly filled in and signed; the signatures being subject to a presential notary recognition.

3. For the purpose of the investigation intended to assess the adequate financial capacity, each tender applicant or concession holder allows the Government to have access to all the documents, information and data in which they can be consubstantiated or regarding the occurrences mentioned on point 1 of article 28 that the Government regards as necessary for such assessment, even if protected by secrecy obligation.

4. Regarding the shareholders who reside in a jurisdiction in which it is not possible to obtain presential notary recognition of the signatures on the documents mentioned on points 1 and 2, one must produce a way of witnessing the signatures by a qualified public authority, duly legalised.

## Article 22

### Duty of co-operation

1. For the effect of what has been disposed on the present " "regulamento administrativo"", in particular on the present chapter, and other additional legislation of Law no. 16/2001, besides the submission to the Government of the copies of the "Declaration authorising the revelation of information", mentioned on point 2 of the previous article, each applicant, concession holder, the company's main associate, shareholder who owns 5% or more than 5% of the company's share capital, has a special obligation to co-operate with the Government, and as such having to submit all documents and give information, data, authorizations or evidences that are requested for the effect.

2. For the effect of what has been disposed on the present "regulamento administrativo", and in particular on the present chapter, and other additional legislation of Law no. 16/2001, each concession holder, the company's main associate and shareholder who owns 5% or more than 5% of the company's share capital, has the obligation to immediately make available to the Government, any

document, information or data, that the Government may deem as necessary to check if the adequate financial capacity is kept.

3. For the effect of the investigation intended to assess the financial capacity, all individuals, entities, and corporate bodies, either public or private, have the obligation to co-operate with the Government, and as such having to submit all documents and give information, data, authorizations or evidences that are requested regarding any tender applicant or concession holder.

## Article 23

### Guarantee rendering by the main associate

Not withstanding the disposed on article 212 of the <u>Código Comercial</u>, the main associate of a concession holder is obliged to render a guarantee, accepted by the Government, regarding the fulfilment of the engagements and obligations assumed by the concession holder.

## Article 24

### Conclusion of the investigation intended to assess the adequate financial capacity

1. The investigation processes intended to assess the adequate financial capacity are instructed by the Gaming Control Board and are concluded with the elaboration of reports by its director, where the applicants or the concession holders, are considered to possess an adequate financial capacity to operate the concession.

2. For the effect of the proceedings regarding the investigation processes intended to assess the adequate financial capacity, the Gaming Control Board may resort to specialized companies as well as assistance by any other service of the Administration.

3. The reports mentioned on point 1 are sent by the Gaming Control Board to the Secretary for Economy and Finance except the reports regarding the tender applicants that are sent to the tender committee, as long as the conclusion of the investigation processes intended to assess the adequate financial capacity does not take place after granting the concession contracts.

4. The Gaming Control Board may invite any of the individuals or entities mentioned on point 1 to clarify any aspect or to complete any data before the conclusion of the respective report.

5. If the report, mentioned on point 1, concludes that a tender applicant is not considered to possess an adequate financial capacity, such involves the applicant's exclusion from the tender; the tender committee can then determine the reselection of an applicant that had been excluded on the previous stage, under the terms foreseen on point 4 article 75.

6. Not withstanding the disposed on point 4, if on the report mentioned on point 1 regarding a concession holder one concludes that the company ceased having an adequate financial capacity, the Government may fix a deadline so that the concession holder can take measures in order to demonstrate possessing adequate financial capacity to operate the concession under the terms assumed under agreement; in case the concession holder does not take such measures, the Government may promote the unilateral annulment of the respective concession

contract, under the terms and for the effects of what is disposed on article 48 of Law no. 16/2001.

7. The disposed on the previous points does not exclude the application of fines or other penalties that may be applied.

## Article 25

### Just apprehension for the diminishing of the adequate financial capacity and delay by the concession holder

1. When there is just apprehension for the adequate financial capacity, one may demand, without further grounds, the rendering of an appropriate guarantee, such as a bank guarantee, accepted by the Government.

2. When there is a delay in payment of any tax due, owed by the concession holder, or that it should be collected by it, regarding the premium or fine imposed due to an administrative breach, the Government may determine:

1) The urgent payment of such debts, namely those regarding the obligations the concession holder has towards its financers, in particular the third party or third parties that have assumed the engagement or rendered a financial guarantee of the investments and obligations the concession holder proposed to carry out or assume;

2) The temporary prohibition to the distribution of dividends regarding the concession holder in question; and

3) The settlement of financial rations by the concession holder in question, in order to facilitate the subsequent assessment regarding the adequate financial capacity.

3. The disposed on the previous points does not exclude the application of fines or other penalties that may be applied.

## Article 26

### Previous authorisation

1. The contract signed between a tender applicant or a concession holder and a commercial businessperson, namely a management company, that assumes or may assume management powers regarding the tender applicant or the concession holder, is null, except by previous authorisation by the Government.

2. Any loan or similar contract equal or above 500 million patacas, made by the concession holder for financing any aspect of its activity is annullable, except by previous authorisation by the Government.

## Article 27

### Obligation of previous communication when signing a contract with a company that will assume their management

1. The concession holders shall communicate to the Government, through the Gaming Control Board, with a minimum antecedence of 90 days, the intention to hire a company that will assume their management.

2. At the time of the communication mentioned on the previous point, the concession holder shall submit a copy of the contract minute that the company intends to sign with the company assuming their management, and further additional documents.

3. In case a tender applicant suggests being its intention, in case of the attribution of the concession to exploit games of chance in casino, to sign a contract with a company assuming its management, the tender applicant shall clearly mention such fact at the time of the presentation of the bid, identifying the company aspiring to assume the management powers, and, not withstanding their being demanded information or additional data, it shall submit, regarding this company, and duly filled in, the "Form on the revelation of information about tender applicants or concession holders", its model constituting Appendix I of the present "regulamento administrativo", and of the "Form on the revelation personal information about shareholders and directors of the tender applicants/concession holders", its model constituting Appendix II of the present "regulamento administrativo", being an integral part of it, as well as a risk assessment report regarding the company that aspires to assume their management.

## Article 28

## Obligation to communicate other occurrences

1. Not withstanding the disposed on articles 15, 17, no. 8, 22, 32, no. 4, 33, 34 and 36 of Law no. 16/2001 and other additional regulation, namely article 26, the tender applicants and concession holders shall inform the Government, as briefly as possible, through the Gaming Control Board, regarding any of the following occurrences:

1) Any loans, mortgages, debt declarations, guarantees, or any other obligation acquired or to be acquired for the financing of any aspect of the company's activity;

2) The fixed or accidental, frequent or exceptional payment of its directors, financers, and key position employees, being it received as wages, salaries, fees, or other, as well as possible participation mechanisms of the company's profits by them;

3) Existing fringe benefits or to be created, including profit distribution ways; and

4) Existing management and service rendering contracts or proposed by the company.

2. To fulfil the disposed on the previous point, the tender applicants and the concession holders shall send to the Government, through the Gaming Control Board, as briefly as possible, two authenticated copies of:

1) The documents regarding any loans, mortgages, debt declarations, guarantees, or any other obligation acquired or to be acquired for the financing of any aspect of the company's activity;

2) The contracts or other instruments entitling or describing any fixed or accidental, frequent or exceptional payment of its directors, financers, and key position employees, being it received as wages, salaries, fees, or other, as well as possible participation mechanisms of the company's profits by them;

3) The contracts or other instruments entitling or describing any fringe benefits or profit distribution ways, existing or to be created; and

4) The existing management and service rendering contracts or proposed by the company.

3. For the effects of the disposed on the present "regulamento administrativo", in particular on the present chapter, and other additional legislation of Law no. 16/2001, the concession holders are still obliged to communicate to the Gaming Control Board, as briefly as possible, any imminent or foreseeable alteration of the company's economic and financial situation, as well as the economic and financial situation:

1) Of the company's main associates;

2) Of the entities closely related to the company, namely those that have assumed an engagement or given a financial guarantee for the investments and engagements that the concession holder is contractually bound to undertake or assume; and

3) Of the shareholders who own 5% or more than 5% of the company's share capital that, under the terms foreseen on paragraph 2) of point 1 of article 18, assumed the engagement or given financial guarantee for the investments and engagements that the concession holders are contractually bound to undertake or assume.

# CHAPTER V

# OF THE SETTLEMENT OF THE CONCESSION CONTRACT

## Article 29

### Settlement of the concession contract

1. The concessions for the exploitation of games of chance in casino are granted, following the granting of the concession, by signing an administrative concession agreement for the exploitation of games of chance in casino, to be signed between the Government, representing the Regions and the contractor.

2. The signing of the concession agreement is preceded by a public tender.

3. The tender may be simple or limited with previous qualification and include one or more stages of consultation with the tender applicants.

## Article 30

### Public tender

A tender is public when all the entities, that fulfil the general requisites established by normative act as well as the specific conditions previously defined in the "despacho" opening the public tender, can be admitted to tender.

## Article 31

### Stages of the public tender

1. The tender includes one or more consecutive stages for the consultation with the tender applicants for the bid of the concession, aimed essentially to the presentation of the bids and its appreciation.

2. In case the tender is limited, the consultation phase of stages mentioned in the previous point is preceded by a pre-qualification stage that is exclusively aimed at the selection of tender applicants to the consultation stage for the granting of the concession, according to general criteria of experience, reputation, technical qualification, economical and financial situation or other, to be defined in the tender program, and it does not foresee the presentation of bids.

## Article 32

### Alterations during the course of the tender

1. The elements that serve as the basic guidelines for the call for tender, as well as the references included on the "despacho" opening the public tender, may, during its course, be object of additional alterations that are justified due to public interest, not withstanding the right to equal treatment of the tender applicants admitted to the stage in which the alterations take place.

2. The "despacho" issued by the Chief Executive that proceeds to carry out the alterations mentioned on the previous point must be summoned to all the applicants admitted to the stage in which the alterations take place

## Article 33

### Number and duration of the concessions

1. The Chief Executive decides, within the limits of the law, the number of concessions admitted to tender.

2. The maximum duration of each of the concessions admitted to tender is mentioned on the "despacho" opening the public tender, not withstanding the power to subsequently carry out its alteration, under the terms defined on the previous article.

3. Even after the provisional granting of the concession, the Chief Executive may, under exceptional situations of acknowledged interest for the Region, following the negotiations to which the first half of point 2 article 10 of Law no. 16/2001 mentions, to grant the concession for a different period from the one initially established.

## Article 34

### Administrative dispute

1. As tender applicants have the right to request the annulment or alteration of the acts carried out under the scope of the tender, under the terms regulated on Law no. 16/2001 and on the present "regulamento administrativo" and, additionally, on Código do Procedimento Administrativo.

2. The right mentioned on the previous point may be undertaken in face of a complaint to the author of the act or by means of administrative appeal to the Chief Executive.

3. If the complaint or administrative appeal is consequent, one must resolve the problem reproved, annulling thus the subsequent formalities, when necessary.

## Article 35

## Complaint

1. There is place for a complaint for the act's author, based on preterition or irregular fulfilment of the tender's formalities or any other illegal act.

2. It is not possible to complain against an act that decides a previous appeal or administrative appeal, except when based on indictment omission.

## Article 36

## Judicial appeal

All the acts performed within the scope of the tender – including the decision that overrules, totally or partially, the complaint presented, except if the decision being complained about comes from him – can be object of a judicial appeal for the Chief Executive, based on the grounds mentioned on point 1 of the previous article.

## Article 37

## Litigious appeal

The decision that decides a complaint or an administrative resource or any other preliminary act practiced within the scope of the tender, independently from its express or tacit nature, no judicial dispute is possible, nor any other action or disposition, except litigious appeal of the granting of the concession to interpose to the Intermediary Judicial Court.

## Article 38

## Appeals and terms

1. Acts before the grant of the concession, particularly those regarding pre-qualification shall not be subject to judicial dispute, and therefore judicial appeals or any application to stop the effectiveness in respect to such acts, or any forms of litigation or measures shall not be permitted.

2. Judicial appeals relating to the act of granting of a concession shall be made to the Intermediary Judicial Court, according to the "Código de Processo Administrativo Contencioso", particularly Article 6 stipulating the rules and effectiveness; such judicial appeal shall be classified as an emergency procedure. Therefore, every delay assigned to the appellant shall be reduced to a half, namely the deadline for the interposition of the appeal.

3. Any claims or judicial appeals have not suspensive effects.

4. Except if any specific statement of complimentary legal framework to Law no. 16/2001 states differently, or if any other specific deadlines are assigned by the Government, namely in the "despacho" opening the public tender, the deadlines to claim or appeal assigned by the Código do Procedimento Administrativo, as

well as the periods of time to require or to practise any acts, to promote, to answer or to exercise any other rights, are reduced to a half.

## Article 39

### Evidence for the delivery of applications

1. The applications in which the complaints, appeals or other requests are formulated are presented with a copy.

2. The copy is returned to the petitioner after registering a receipt with the presentation date and authenticating the signature initials by stamp or embossed seal of the lawful service or entity designated on the "despacho" opening the public tender.

3. The dispatching of the application by registered mail with acknowledgement of receipt, made up to the last working day immediately prior to the limit of the respective deadline.

## Article 40

### Notifications

1. The notifications during the course of the tender are made in person or by registered mail with acknowledgement of receipt, and are considered made on the date of the certificate signature confirming the respective notification or notice; in case of an emergency the notifications may be carried out by facsimile or by telephone, and have to confirmed immediately under the terms foreseen on the first half of the present point, not withstanding the fact that the notification is considered made on the date of the first communication.

2. The notifications sent to the address or facsimile number to indicate under the terms of the following article produce effects even if the letter is sent back or the facsimile is not received, associating thus to the process the returned envelope or facsimile and the respective receipt; the mentioned effects will not be produced only if the entity being summoned proves that the notification was not carried out or that it took place on a date subsequent to the assumed one due to reasons that cannot be imputed to that same entity.

3. The tender applicants' notifications do not go against article 69 of the <u>Código do Procedimento Administrativo</u> and follow, with the due alterations, and not withstanding the disposed on the present article, what has been settled on the general law, namely regarding the notification of corporate bodies.

4. The notification shall clearly state the act or decision it concerns, so that the entity being notified is aware of the respective nature and content, not withstanding the disposed on article 70 of the <u>Código do Procedimento Administrativo</u>.

## Article 41

### Elements to be given for the purpose of notifications

1. The tender applicants indicate, when bidding, the contact address, and telephone and facsimile numbers, for the purpose of notification.

2. The tender applicants shall communicate in advance any changes regarding address, telephone and facsimile numbers, under penalty of the notifications being considered legally carried out when sent to the address and numbers initially declared.

3. The tender applicants that are not established in the Region and that, under the disposed on point 6 of article 10 of Law no. 16/2001, have been authorised to bid, shall still indicate, for notification purposes, a representative based in Macao. This representative will be contactable by the address, telephone and facsimile numbers declared by tender applicants.

## Article 42

### Deadline

1. When counting any deadline one does not include the day, nor time, in which the notification occurs.

2. Except stated or appointed otherwise, the deadlines established by law, "regulamento" or "despacho" are continuous, not being interrupted on Saturdays, Sundays or Bank Holidays, and start to count independently of any formality, concluding at the usual time the service or entity, lawful to receive proposals, applications or other documents, usually closes to the public.

3. When the deadline falls on a day that the lawful service or entity is not open to the public, or that it does not operate during the usual period, it is transferred to the first subsequent working day.

4. To the deadlines regarding the litigious appeal, one applies the respective dispositions of the Código de Processo Administrativo Contencioso; not withstanding what has been established on article 12 of Law no. 16/2001 and article 52.

## Article 43

### Publication of the actions

1. Except with what is disposed on article 3 of Law no.&ordm; 3/1999, whenever the publication of any action is required, it is carried out on the 2nd series of the "Boletim Oficial" of the Macau Special Administrative Region.

2. The "despacho" opening the public tender and other acts, and for which a publication is expressly required, shall be published in two of the Region's most read journals, which obligatorily have to be in Chinese and Portuguese.

3. The Government may choose additional publishing forms, within the Region or outside, namely regarding the opening of the public tender.

4. The Government may adopt publishing ways specifically directed at official or private entities connected to the exploitation of games of chance in casino, including expressed invitations to tender.

5. The publishing mentioned on the two previous points may initiate before the publication of the communication opening the public tender.

# CHAPTER VI

# OF THE PUBLIC TENDER

## SECTION I

## Of the tender committee

### Article 44

### Tender Committee

1. In the course of the opening of a public tender to grant a concession or concessions for the exploitation of games of chance in casino, the Chief Executive, appoints, by "despacho", a committee for the respective tender.

2. It is within the committee's scope to analyse and decide on all the matters regarding the public tender up to the granting of the concession contracts, except the acts regarding the provisional granting of the concessions, granting of the concession and other specially appointed, by Law no. 16/2001, by this "regulamento administrativo" or other additional regulations, to other entities.

3. The tender committee is, in particular, incumbent on:

1) Clarifying the parties interested in bidding, under the terms foreseen on article 49;

2) Appraising and deciding on the complaints regarding acts they carried out, under the terms foreseen on articles 34 e 35;

3) Deciding on the acceptance of securities and guarantees that have to given by the tender applicants;

4) Deciding on the qualification of the tender applicants admitted to the subsequent stages of the tender;

5) Deciding on the admission of the bids;

6) Consulting and negotiating with the tender applicants, under the legal terms;

7) Deciding the admission or exclusion of one or more of the tender applicants on any stage of the tender;

8) Preparing a report with grounds, mentioned on point 1 of article 11 of Law no. 16/2001; and

9) Preparing the minutes of the concession contracts, sending them to the tender applicants that have had their bids selected on the provisional adjudication act.

4. The tender committee has access to al the documents, information and data submitted by the entities mentioned on the present "regulamento administrativo" and to all additional documents, information and data deemed necessary to carry out their activity. As such, all individuals, entities, and corporate bodies, either public or private, have the obligation to co-operate with the tender committee, and as such having to submit all documents and give information, data, authorizations or evidences, even if protected by secrecy, that are requested during the tender process.

5. The tender committee is composed by, at least, three members, appointed by the "despacho" mentioned on point 1, one of whom bears the role of Chairman and another the role of Secretary.

6. The Chairman and the Secretary are elected by the members of the tender committee.

7. It is the Chairman of the committee's duty to summon, open, and bring to an end the meetings, run the agenda and assure the fulfilment of the laws and the order of the deliberations.

8. It is the Secretary of the committee's duty, besides other functions conferred by the present "regulamento administrativo", besides the applicable legislation or appointed to him/her, to draw up the tender committee's minutes, which are subscribed by them and signed by the remaining members of the tender committee.

9. Not withstanding the disposed on points 5 to 8, one may still specially appoint Public Administration workers to assist on the tender committee's works, namely secretarial works.

10. Except otherwise stated on the "despacho" mentioned on point 1, the tender committee starts its activity on the first working day after the publication of the "despacho" of the opening of the public tender.

## SECTION II

## Of the opening of the tender

## Article 45

## "Despacho" of the opening of the tender

1. The opening of a public tender shall be achieved by a "despacho" issued by the Chief Executive, to be published under the terms of points 1 and 2 of article 43.

2. The "despacho" of the opening of the public tender reports, namely:

1) The declaration of the opening of the public tender;

2) The modality of the tender, namely if it is a simple or limited tender;

3) The processual bureaucratic procedures of the tender, including the limit date and time for the admission to the public tender, the minimum number of the tender stages, the tender committee's address, to which the bids or pre-qualification applications shall be directed, and the language or languages in which the documents and elements to be delivered shall be written;

4) The indication of the elements that serve as the basic guidelines for the call for tender;

5) The address and schedule for the consultation of the elements that serve as basic guidelines for the call for tender and where one can obtain authenticated copies of those elements;

6) The conditions required the interested parties to be admitted to tender;

7) The amount and requisites of the guarantee for the admission to tender;

8) The maximum deadline foreseen for the concessions being granted;

9) The criteria used on the selection of the tender applicants for the adjudication of the concessions;

10) The criteria for the selection of the tender applicants on the pre-qualification stage, in case of a limited tender; and

11) Other documents, elements or information that are considered relevant.

## SECTION III

### Of the elements that serve as basic guidelines for the call for tender

## Article 46

### Elements that serve as basic guidelines for the call for tender

1. The basic guidelines for the call for tender lie on the program, the type of concession, as well as other possible additional elements.

2. The elements that serve as the basic guidelines for the call for tender must be available for consultation by the interested parties, on the service or entity appointed for the effect under the "despacho" of the opening of the public tender and, except otherwise determined, from the first working day subsequently to the publication of the "despacho" of the opening of the public tender, up to the provisional granting of the concessions.

3. The interested parties may request that authenticated copies of the elements that serve as the basic guidelines for the call for tender may be supplied by the service or entity mentioned on the previous point or by the tender committee, at cost price.

4. The elements that serve as the basic guidelines for the call for tender shall be written in the official languages of the Region; they can also be written in the English language, namely in case of appendices or exemplifying elements to the tender program.

## Article 47

### Tender program

The tender program is intended to defining the terms with which the respective process must comply and specify:

1) The conditions established for admission of the tender applicants and any additional information deemed necessary, namely regarding creditability and financial capacity;

2) The address of the service or entity, as well as the time and place in which the elements that serve as the basic guidelines for the call for tender may be examined, and where one can obtain authenticated copies, and the amount and payment modality of the costs due by its supply;

3) The requisites the presentation to tender shall follow, namely the bid and the amount of the guarantee for admission to tender;

4) The modality and stages of the tender, including the existence or not of a pre-qualification stage;

5) The criteria for the adjudication of the concessions;

6) The "despacho" creating the tender committee, when already registered; and

7) Other special dispositions regarding the bureaucratic procedures of the tender.

## Article 48

### Concession system

1. The concession system is composed by the legal framework, which includes the juridical system for the exploitation of games of chance in casino approved by <u>Law</u>

no. 16/2001, the present "regulamento administrativo" and other additional regulations of Law no. 16/2001, as well as by the concession contracts for the exploitation of games of chance in casino.

2. The concession contracts for the exploitation of games of chance in casino include, not withstanding other that may be included therein, obligatory clauses regarding the matters foreseen on article 90.

## Article 49

### Clarifying doubts concerning the interpretation of the basic guidelines for the call for tender

1. Any interested party in presenting themselves to tender may request the clarifications one perceives as necessary for the presentation to tender, namely those required for a correct understanding and interpretation of the elements that constitute its basic guidelines.

2. The clarification requests shall be deducted from the first third fraction of the fixed time period for the presentation to tender and the clarifications given, by the tender committee, up to the end of the immediate third fraction of the same time period.

3. The clarification requests presented after the respective deadline shall not be taken into account, except if considered by the tender committee as being of high interest for the tender regulation.

4. The failing in rendering the clarifications requested by the tender committee within the deadline requested, may justify the extension of the term for the presentation to tender, for a corresponding period, as long as required by any of the interested parties.

5. The extension of term foreseen on the previous point benefits all the interested parties, and it shall be communicated, as briefly as possible, to the interested parties that have acquired the copies mentioned on point 3 of article 46 and published by the means deemed most convenient.

6. The clarifications that are considered convenient and the respective answers may be gathered by the tender committee and made known, anonymously, to the interested parties that have acquired the copies mentioned on point 3 of article 46, as briefly as possible; and it can be determined that these may become an integral part of the tender's regulation, except if the tender committee perceives it to seriously endanger the public interest that the confidentiality duty is aimed at protecting.

7. Regarding the complaints and judicial appeals that are deemed convenient, the tender committee may also anonymously disclose, to the interested parties that have acquired the copies mentioned on point 3 of article 46, as briefly as possible, the decisions taken; and may determine that these become an integral part of the tender regulations.

## SECTION IV

### Of the deadlines and method of presentation to tender

### Article 50

### Presentation to tender

1. The presentation to tender consists on the presentation of the bid or application to pre-qualification, depending on it being a simple tender or a limited tender.

2. The deadline for the presentation to tender, fixed on the "despacho" of the opening of the tender, may be extended during its course by "despacho" issued by the Chief Executive; a new deadline may, still, exceptionally be granted, that shall be notified to the tender applicants or published under the terms of article 43, depending on the fact of having taken place or not the pre-qualification stage or stages where tender applicants have been excluded.

3. Even in case of a limited tender, the Government may invite companies known by their reputation and creditability to present bids, independently from their submission to a pre-qualification stage.

### Article 51

### Presentation of the bids

1. The bids shall be presented on the deadline fixed by the "despacho" of the opening of the public tender.

2. The term to which the previous article refers to must be fixed between 30 and 90 days.

3. Not withstanding the disposed on point 3 of the previous article, one will not accept any bids presented after the deadline established for that purpose.

4. The tender applicants are bound to the conditions reported on the presented bid, not withstanding the power to submit additional elements or conditions up to the limit of the respective deadline, except the disposed on point 3 of article 11 of Law no. 16/2001.

### Article 52

### Presentation format for documents and the tender proposal

1. The documents referred to in no. 1 of article 54 shall be inserted in an opaque envelope, closed and officially sealed, labelled "Documents." The corporate name of the tender applicant and indication that the documents pertain to the public tender for awarding the concession to operate games of chance in casino shall also be indicated.

2. The proposal and the documents mentioned in no. 1 of article 61 shall be officially sealed in an envelope having the characteristics listed in the previous number. It shall be labelled "Proposal" and the corporate name of the tender

applicant shall be indicated along with indication that the documents pertain to the public tender for granting the concession to operate games of chance in casino.

.3. The envelopes mentioned in the previous numbers shall be inserted in another opaque envelope closed and officially sealed, labelled "exterior envelope" along with indication that the documents pertain to the public tender for granting the concession to operate games of chance in casino for submission to the appropriate department or body against receipt issued.

4. Reception of the envelopes referred to in the previous numbers shall be registered by the appropriate body or department, indicating the date and time the envelopes are received, the order of presentation and the identity and address of the people who deliver them. The "exterior envelope" shall be closed and officially sealed at the time of delivery.

## SECTION V

### The tender applicants

### Article 53

### Qualification

1. Only companies established in the Region and whose business is exclusively the operation of games of chance or any other type of casino games shall be permitted to tender.

2. The Government may, in exceptional cases, permit reputable businesses that do not fulfil the requirements listed in the previous number to tender if they agree to establish a company in the Region fulfilling these requirements within the terms and deadlines listed in the "despacho" of the Chief Executive.

### Article 54

### Documents pertaining to tender applicant qualification

1. Notwithstanding any other documents that may be required under the provisions of the present administrative regulation and in terms of the public tender program, tender applicants shall submit the following information or documents:

1) Tender applicant declaration identifying the tender applicant, his head office, branches, as well as identifying directors or other persons with legal binding power, also containing the commercial registry of the incorporation act and its amendments;

2) Indication of address and telephone and fax numbers for notification purposes, as well as identification of the representative referred to in no. 3 of Article 41.

3) Document proving pledge of deposit guarantee for admission to the public tender;

4) Document issued by the Finance Department proving that neither the tender applicant nor companies held by its group, namely a major partner, nor shareholders of the tender applicant holding a greater than 5% stake in shareholder capital, nor the tender applicant's directors owe the Region any taxes with respect to the last 5 fiscal years;

5) Document issued by the Social Security Fund proving that the tender applicant or companies held by its group, namely a major partner, or shareholders of the tender applicant holding a greater than 5% stake in shareholder capital or the tender applicant's directors have fulfilled all of the Region's Social Security contribution obligations;

6) A copy of the "Tender applicant or concession holder information disclosure form," the sample of which is included in Appendix I of the present administrative regulation, as well as  a copy of the "Tender applicants/concession holders shareholders and directors personal information disclosure form" the sample of which is included in Appendix II of the present administrative regulation, together with a copy of the "Authorisation of disclosure of information declaration," the sample of which is included in Appendix III of the present administrative regulation;

7) Copies of the Board of Directors Report and Accounts, Audit Committee Report and External Auditors Report, in accordance with Article 19.

8) Declaration including a complete list of the companies belonging to the same tender applicant group, as well as those solely associated with the tender applicant group and the shareholders' group holding a stake equal to or greater than 5% of shareholder capital. The list shall also include directors, including the proposed deputy-director, and the main staff carrying out relevant functions at the casinos. If the tender applicant is authorised to submit his bid before being registered in the Region as a company, he shall provide all information that he foresees will be listed in the incorporation act of the company undergoing registration. All changes to such information shall be reported to the tender committee;

9) Risk assessment report regarding the tender applicant, the tender's majority partner company, the tender's shareholders holding a stake greater than or equal to 5% of the tender's shareholder capital, and respective directors. The report shall be drawn up by a local or foreign, reputable international firm which shall be listed in the tenders program in advance or approved via "despacho" or accepted by the Government under no. 4 of Article 19;

10) Declaration of renunciation of special venues and acceptance of the Region's applicable legislation;

11) Declaration to honour and comply with all obligations established by law, regulation, or "despacho," namely with respect to the "despacho" for initiating a public tender, as well as all the subsequent amendments referred to in article 32.

12) Other information and documents that prove compliance with legal requirements and requirements enforceable via "despacho," namely with regard to the "despacho" for initiating the public tender.

2. The documents referred to in points 1), 2), 8) and 11) of the previous number are to be signed by the tender applicant's legal representative or by his directors. The notarised signature shall bind the tender applicant as well as a declaration under oath that the documents referred to in points 1) and 8) are accurate, true and current, as well as all information attached to these documents.

3. The documents referred to in points 3) to 5), 7) and 9) of no. 1 are to be accompanied by a declaration under oath certifying that they are original or that the copies have been certified. As regards documents referred to in point 7), the notarised signature of which by a legal representative or by the tender applicant's directors shall bind the tender applicant.

4. Notwithstanding the provisions of the following number, the documents referred to in no. 1 shall be written in one of the Region's official languages; however, when they are originally written in another language, the tender applicant shall provide a certified translation into one of the Region's official languages. The translation shall prevail for all intents and purposes.

5. When the unofficial language used in terms of the previous number is English, a certified translation will not be necessary, except if the tender committee requires an integral or partial translation.

6. Any falsification or misappropriation of documents or technical notes or any criminal act committed shall be reported to the Public Prosecutor in view of initiating criminal proceedings.

7. Should any of the events referred to in the previous number take place, the tender applicant shall be excluded from the public tender. If a concession has already been granted, it shall be annulled.

## SECTION VI

### Guarantee deposit for admission to the public tender

### Article 55

### Purpose of the guarantee deposit

1. Each tender applicant shall provide a guarantee deposit in order to be admitted to the public tender.

2. The guarantee deposit referred to in the previous number may be used to cover all the expenses the Government may incur during the tenders procedure in

proportion to the responsibility of each tender applicant, namely those expenses related to verification of good repute and financial capacity.

## Article 56

### Amount of the guarantee deposit

1. The amount of the guarantee deposit shall be established by the Chief Executive in the "despacho" for initiating the public tender.

2. The Chief Executive may require that the initial guarantee deposit requested from the tender applicants be increased, whenever such is deemed necessary.

## Article 57

### Method of deposit

1. The guarantee deposit for admission to the public tender may be issued in cash, via bank guarantee or fidelity guarantee insurance.

2. The cash deposit shall be made at a credit institution that conducts cash operations with the Region's treasury, in the name of the Government, and the purpose of the deposit shall be specified as well.

3. If the proper deposit document is not included in the public tenders program, the tender applicant wishing to make a guarantee deposit in cash shall specify, at the time of the deposit, that it is to be used as a guarantee deposit for admission to the public tender for granting concession to operate games of chance in casino. The deposit may be used to cover all expenses the Government may incur during the public tender process.

4. If the proper deposit document is not included in the public tenders program, the tender applicant wishing to make a guarantee deposit via bank guarantee shall submit a document issued by a credit institution legally authorised to operate in the Region guaranteeing immediate payment, within the guarantee deposit limit amount, of any sum demanded by the Government for the reimbursement of expenses it has incurred during the public tender process.

5. A tender applicant wishing to provide a guarantee deposit via fidelity guarantee insurance shall submit a policy issued by an insurance company legally authorised to issue such a policy in the Region, the company thereby guaranteeing immediate payment of any sum demanded by the Government for the reimbursement of expenses it has incurred during the public tender process.

6. Bank guarantees and fidelity guarantee insurance provided may not be conditional or resolutory.

7. As regards the guarantee deposit provided via bank guarantee or fidelity guarantee insurance, the tender committee may require its substitution when the guaranteeing body is no longer financially capable of fulfilling, in whole or in part, the obligations assumed.

8. All expenses associated with providing a deposit guarantee or from its withdrawal shall be incurred by the tender applicant.

## Article 58

## Reimbursement and cessation

1. Tender applicants that have not been selected may request reimbursement of the guarantee deposited for admission to the pubic tender or request cancellation of the bank guarantee or annulment of the fidelity guarantee insurance once they have been notified that they have not been awarded the concession. The Government shall take the necessary measures to meet this request within the 20 days that follow it.

2. Following notification of the decision not to admit the tender applicant, the latter has the right to request reimbursement of the deposit after cancellation of the bank guarantee or annulment of the fidelity guarantee insurance if his proposal is not admitted,. The Government shall take the necessary measures to meet this request within the 20 days that follow it.

3. The guarantee deposit shall be considered forfeited to the Region if the selected tender applicants are not present at the next phase of the public tender or if the tender proposal is not considered for reasons attributable to the tender applicant, and if, once the decision has been made to award the concession, the contract is not signed for reasons attributable to the awardee.

## SECTION VII

## Tender proposal

## Article 59

## Drafting and writing the tender proposal

1. The tender proposal is the document via which tender applicants notify the Government that they wish to contract and vi which they indicate the conditions under which they are willing to do so.

2. The tender proposal and the documents used to formulate it shall be written in one of the Region's official languages and translated, with the exception of the appendixes submitted in terms of point 13 of no. 1 of article 61 , to the other official language.

3. Barring any prohibition expressed in the public tender program, the tender proposal and the documents used to formulate it may be written in English. In such cases the tender committee may require partial or integral certified translation into one of the official languages of the region.

## Article 60

## Types of tender proposals

1. Unless otherwise prohibited by the public tender program, simple, alternative or subsidiary tender proposals may be submitted.

2. The alternative or subsidiary proposals shall be submitted in a clear and unequivocal manner.

## Article 61

## Documents and instruments used to formulate the tenders proposal

1. If the tenders proposal sample is not included in the public tenders program, the tender proposal shall include, in addition to an expressed will to contract, the following information:

1) Identification of the tender applicant;

2) Value of the overall premium proposed by the tender applicant, stipulating which is the fixed part and which is the variable part.

3) Value of the contribution proposed by the tender applicant in terms of point 7) of article 22 of Law no. 16/2001;

4) Value of the contribution proposed by the tender applicant in terms of point 8) of article 22 of Law no. 16/2001;

5) Descriptive report of management experience in operating games of chance in casino or experience in related areas;

6) Descriptive and justificatory memo of the investment proposals the tender applicant wishes to undertake that are of interest to the Region, regardless of their nature;

7) For the purposes referred to in Chapter IV of the present administrative regulation, a declaration issued by the third parties who assume obligations or provide a guarantee to finance the investments and meet the obligations the tender applicant wishes to undertake or assume. The declaration may also be issued by the shareholders holding a stake equal to or greater than 5% of the tender applicant's shareholder capital, who under point 2) of no. 1 of Article 18, assume an obligation or provide a guarantee deposit for financing investments and meeting obligations the tender applicant wishes to undertake or assume.

8)Descriptive, justificatory memo concerning the tender's proposals for improving the locations and surrounding areas of the casinos, particularly when they contribute to tourist attractions.

9) Reference to the relevance of the tender applicant's proposal regarding employment development in the gaming industry, as well as development of professional training;

10) Alternative or subsidiary proposals, should they exist;

11) Declaration via which the tender applicant agrees to operate the concession under the proposed terms and conditions;

12) Other documents or information required by the tender program; and

13) Other documents or information the tender applicant may consider relevant to the analysis of the respective proposal, including technical appendixes deemed necessary for justifying any of the documents or information referred to in the previous points.

2. The provisions of no. 5 of Article 54 shall be applied to the appendixes submitted by in terms of point 13) of the previous number.

3. The tender proposal shall be signed by the legal representative or directors that may bind the tender applicant via notarised signature.

4. The documents referred to in point 7) of no. 1 shall be accompanied by a declaration certifying that they are original, signed by the legal representative or by the directors that may bind the tender applicant via notarised signature.

The documents referred to in point 7) of no. 1 shall be accompanied by a declaration certifying that they are originals. The declaration shall be signed by the legal representative or directors that may bind the tender applicant via notarised signature.

5. The provisions of nos. 6 and 7 of Article 54 apply to the present article.

## Article 62

### Formal requisites for submission

1. All petitions, proposals, declarations and documents used to help formulate the presentation of the public tender shall be printed and submitted without erasures, writing between the lines or crossed-out words, unless such is fundamentally impossible.

2. The monetary values listed in the proposal, namely the premium, shall always be listed in numerical and written form. The written form shall supersede the numerical form if there is a discrepancy between the two.

## SECTION VIII

## Opening of the tender proposals

## Article 63

## Aim and objective of opening the proposals

1. The act of opening the proposal is carried out with the aim of preparing the decision to award the concession and rectifying any potential errors. It involves opening the envelopes containing the tender proposals and the documents that help formulate the proposal. It also involves creation of the tender applicants registry and registration of the essential proposal documents in order to verify their formal compliance and avoid any irregularities, in addition to helping assess their admissibility.

2. The proposal opening procedure shall begin within the five working days following the end of the tender submission deadline. It shall be presided over by the Chairman of the tender committee chair, which shall determine who is authorised to be present during the procedure.

3. One of the persons authorised to be present during the opening procedure is the Public Prosecutor representative appointed by the Region's Prosecutor.

4. Barring any decision to the contrary by the Government, the opening procedure is not a public act. It may only be attended by persons expressly authorised to do so. These persons are bound by a confidentiality agreement.

5. Barring any decision to the contrary by the tender committee, the session of the opening procedure shall be uninterrupted and shall consist of the number of sessions necessary for compliance with all the formalities.

## Article 64

## Minutes

1. The secretary of the tender committee shall take minutes of all the events of the opening procedure. The minutes shall be signed by the secretary and everyone else present.

2. If the opening procedure consists of various sessions, separate minutes shall be taken for each session.

3. Upon request, the tender applicants may obtain a copy of the minutes referred to in the previous numbers for the purposes of instituting complaints or administrative appeals.

## Article 65

## Registration of the tender applicants and the tender proposals

Before the envelopes are opened, the list of tender applicants is drawn up by order of entry of the tender proposals. The list shall be obligatorily attached to the minutes referred to in the previous article and shall constitute an integral part of the latter.

## Article 66

## Opening the envelopes and numbering and initialling the documents

1. The exterior envelopes shall be opened by order of entry at the relevant department or body. The two envelopes inside the exterior envelope are removed during this stage.

2. The envelopes labelled "Documents" shall be opened next.

3. The documents inside the envelopes labelled "Documents" shall be numbered and initialled by the secretary of the tender committee or, in his or her absence, by the person appointed by the chairman of the committee.

## Article 67

## Decision on the qualification of the tender applicants

1. Once the stages referred to in Articles 65 and 66 have been completed and the documents and information submitted by the tender applicants have been verified, the tender committee shall decide which tender applicants are admissible to the next stage. Reasons shall be provided in cases of non-admission.

2. Notwithstanding the provisions of the following number, the following tender applicants shall not be admitted during this phase:

1) Those who have not submitted all the obligatory qualification documents;

2) Those who have not submitted the documents in one of the Region's official languages or in accordance with no. 4 of Article 54; or

3) Those who have not presented documents under the conditions listed in the public tender program.

3. 'Tender applicants who have omitted non-essential formalities with respect to the submission of their documents may be admitted conditionally providing the irregularities are rectified within the deadline established by the public tender committee, failure to do so will result in non-admission.

4. Tender applicants who for duly justified reasons beyond their control have not submitted any one of the qualification documents listed in points 4), 5) and 9) of no. 1 of Article 54, may be conditionally admitted if the reason for such is accepted by the public tender committee and if the tender applicants submit the document within the deadline established for this purpose, failure to do so will result in non-admission.

## Article 68

## Comparative table of the submitted documentation

Once the envelopes labelled "Documents" are opened, a comparison table shall be drawn up by the public tender committee with respect to the documentation submitted by the tender applicants in accordance with Article 54. The table shall also mention the decision regarding each document and any other information submitted.

## Article 69

## Challenging the decision for non-admission of the tender applicants

1. Any tender applicant may challenge the decision for non-admission or conditional admission within 3 days of notification of the decision.

2. Tender applicants who wish to challenge the decision may, examine and obtain a copy of the comparative table drawn up in accordance with the previous article in addition to obtaining copies of the acts by virtue of no. 3 of Article 64,. These documents shall be provided immediately. Should such not occur, the deadline for challenging a decision shall be determined as of the date the documents have been provided.

3. The notification shall mention the right on the part of a tender applicant representative or whoever is mandated for such purposes to challenge the decision and the right to examine the documents referred to in the previous number. The notification shall also mention the deadlines for exercising such rights. Persons wishing to examine these documents shall identify themselves and provide documented proof of their capacity. Copy of this proof shall be attached to the registry referred to in the following number.

4. There shall be a registry of all the people who consult the documents referred to in nos. 2 and 3. These persons shall sign the registry and declare that they agree to maintain the information therein confidential.

5. Under no circumstances shall the tender applicants have access to the information listed in the "Tender applicant or concession holder information disclosure form" of another tender applicant – a sample of this document is included in Appendix I of the present administrative regulation. This restriction also applies to the "Tender applicants/concession holders shareholders and directors personal information disclosure form" submitted by each tender applicant, the sample of which is included in Appendix II of the present administrative regulation.

## Article 70

## Opening the tender proposal envelopes

1. Once the decision regarding admission has been made, the envelopes of the admitted tender applicants labelled "Proposals" shall be opened in the order set by the tender applicant list.

2. No. 3 of Article 66 shall apply to the numbering and initialling of the tender proposal and all documents and information used to help formulate it.

## Article 71

## Decision regarding the admission of tender proposals

1. Once the tender proposals have been read, they shall be formally analysed and a decision shall be made regarding admission.

2. The following tender proposals shall be excluded:

1) Those that have not been formulated using all the documents and information required in accordance with no. 1 of Article 61 and the public tender program;

2) Those that do not comply with the provisions of nos. 2 or 3 of Article 59; or

3) Those that are the result of illicit practices interfering with competition.

3. Tender proposals that have omitted non-essential formalities may be admitted conditionally providing the irregularities are rectified within the deadline established, failure to do so will result in non-admission.

## Article 72

## Comparative table of the tender proposals submitted

Following the opening of the envelopes labelled "Proposals" and the decision concerning the admission of tender proposals, in accordance with Article 61, a table comparing the tender proposals shall be drawn up by the public tender committee. This table shall also contain mention of the decision reached regarding each tender proposal and all other information deemed necessary.

## Article 73

## Challenging the decisions to exclude tender proposals

Interested parties may challenge decisions to exclude tender proposals or conditionally admit tender proposals. Article 69 is applicable with the necessary adaptations.

## Article 74

## Closing the opening procedure

Once the decision has been made regarding which tender proposals shall be admitted, the opening procedure shall be closed.

## SECTION IX

## Consultation and negotiations

## Article 75

## Consultation

1. A consultation consists of the submission and evaluation of the tender proposals. It may include the negotiations referred to in the first part of no. 3 of article 11 of Law no. 16/2001.

2. The "despacho" opening the public tender shall determine the minimum number of consultation phases, notwithstanding Article 32.

3. Should there be two or more consultation phases, the tender committee may decide to exclude one or more of the tender applicants at the end of each phase, whether it be for reasons related to the tender proposal or for reasons related to good repute or financial capacity or due to the criteria referred to in Article 97.

4. The Government may decide to select, via repêchage, tender applicants that have been excluded during earlier phases of the public tender, if the Region's public interest warrants such. The excluded tender applicants that have submitted the best conditions shall be selected.

## Article 76

## Granting Bids

1. If there is just one consultation stage, the form and content of the granting, as well as all information documents that should be attached to it are those mentioned in article 61 and the elements on which the tender is based.

2. In case there are two or more consultation stages, the bids to be submitted during the stages following the first one shall not need to be instructed by any documents a part from those especially established by the tender's committee.

3. In the case mentioned in the previous number, the subsequent bids may refer in part to the content of the previous bid, and in this case the former should, clearly and unequivocally, indicate the changes introduced to the reviewed bid.

4. The deadline to submit the terms or requirements of the subsequent bids are established in the elements which are the base of the tender or by means of a despacho of the Chief Executive which is to be delivered at the end of the previous stage. Unless when it is expressed otherwise and notwithstanding what is established in nos. 2 and 3, the dispositions of section VII are to be applied for the initial bid.

5. Unless it is established otherwise, the tender applicants may submit, afterwards or during the negotiations process mentioned in first part of no. 3 of article 11 of

Law no. 16/2001, and notwithstanding what is established under no. 4 of article 51, as well as after the provisional granting act, more than just one bid within the same stage.

## Article 77.º

### Negotiations

1. The negotiations with tender applicants, mentioned in the first part of no. 3 of article 11 of Lei n.º 16/2001, shall be held, informally, or according to the terms established by the Tender Committee, in presence of the representatives indicated by the former. One of the latter shall superintend the sessions.

2. The negotiations may be held at any stage of the tender, until the moment of the granting of the concession contracts. Unless when otherwise established, no minimum or maximum number limitation is foreseen for these negotiation meetings.

3. The tender applicants should participate in the negotiation sessions when duly summoned under the terms established in article 40, and they may incur in the loss of the guarantee deposit for tender admission in case of absence, unless the tender committee rules to consider the excuse for the absence as dully justifiable.

4. The tender committee may choose to hold the negotiations with each of the tender applicants, individually, or jointly, with some or all of them.

5. It is the committee's duty to establish the terms according to which the negotiations sessions shall be recorded in a draft, which may be under the form of understandable précis.

6. During the negotiations mentioned in the first part of no. 3 of article 11 of Law n.º 16/2001, the tender committee may exclude one or more of the tender applicants to which the concession may have been provisionally granted and determine the provisional granting to one or more tender applicants not considered with provisional granting of the concession, if this is deemed to be for the Region's public interest. The choice should be done among the tender applicants that are better placed regarding the tender.

7. Unless it is otherwise established, the tender applicants to whom the concession is granted may be invited to submit during or after the negotiations' process mentioned in the previous number, one or more subsequent bids, notwithstanding what is established in no. 4 of article 51.

## SECÇÃO X

### Of granting

## Article 78.º

### Criterion for the granting of concessions

1. The concessions are granted to the tender applicants to be considered as idoneous and with suitable financial capacity and who show the most advantageous conditions for the Rgion, regarding the suitable exploitation and operation of games of chance in Casino. 2. The following criteria are used to choose among the tender applicants:

1) Value of the proposed global premium;

2) Value of the proposed contribution established under paragraph 7 of article 22 of Lei n.º 16/2001;

3) Value of the proposed contribution under paragraph 8 of article 22 of Lei n.º 16/2001;

4) Experience regarding exploitation and operation of games of chance in casino, activities related with exploitation of games of chance in casino, or the management of casinos or other kind of games and bets; and

5) The existence and nature of the investment proposals of relevant interest for the Region, especially when carried out as from the beginning.

3. In addition to what has been mentioned in the previous number it should also be taken into consideration:

1) The valuation of the places and premises where the casinos operate, namely when these contribute to the diversification of the touristic product provided; and

2) The contribution of the proposals for the promotion of employment in the game industry, as well as to the professional training of the people working in it

## Article 79

### Non-granting

1. The Chief Executive will have the capacity to decide for the non-granting of all or some of the tendered concessions whenever he deems that decision meet the Region's interests.

2. The Chief Executive may not grant one or some of the concessions namely in situations like the following:

1) The granting of the concession is postponed;

2) All the bids or the most suitable offer values are considered to be too low or not likely to bring any advantages to the Region;

3) A revision or structural change on the terms and conditions of the concession or the tender are to be carried out due to some relevant supervening circumstance;

4) If signs of collusion among the tender applicants are detected, namely by means of practices, acts or agreements likely to deceive the competition; or

5) If, after previous application for limited tender, the selected tender applicants are in a number which is less than what is established in no. 2 of article 98.

## Article 80

### Concession contract Draft

1. The drafts of concession contracts are sent to the tender applicants whose bids have been selected, before the granting act, enabling the latter to pronounce themselves on the matter within a period of 5 days.

2. If the tender applicant does not pronounce itself within the mentioned period of time, the draft is to be considered as approved.

## Article 81

## Claim against the Draft

1. Claims against the concession contract draft are admissible whenever the arising obligations contradict or are not included in the elements, which are the base of the contract, in the bid, or the clarifications submitted in writing by the tender applicant.

2. If the claim is not accepted, in whole or in part, the tender applicant is released from the obligation of contracting, with loss of the guarantee deposit for tender admission, provided that within 5 days counting from the date of the acknowledgement of this decision, it communicates to the Government, through the tender committee, its intention not to accept the concession granting.

3. If the tender does not notify the Government, in writing, within the mentioned period, it will loose the guarantee deposit for the tender admission in favour of the Region and the granting, regarding it, expires.

## Article 82

### Granting concept and notification

1. The granting is the act through which Chief Executive accepts the bids of the selected tender applicants.

2. The provisional granting is carried out by means of Chief Executive's despacho, pronounced on a grounded report, and consists on the selection of a number of tender applicants equal to the concessions to be granted.

3. The report grounded on no. 1 of article 11 of Lei n.º 16/2001 is composed by the tender committee.

4. The provisional granting is notified to the selected tender applicants, requiring from them that they should render all due fulfilment guarantees, the value of which is expressly indicated.

5. After the provisional granting notification, the preferred tender applicants should also, within the timely established period, make proof near the tender commission that the share capital not less than 200 million patacas is fully paid in cash and deposited in a local Bank or its authorized agency operating in the Region.

6. The provisional granting is also communicated to the other tender applicants that have been admitted to the stage preceding the provisional granting, within a period of 15 days.

7. The granting is carried out by means of a despacho of Chief Executive, pronounced after the tender committee's grounded report, and conveyed to the tender applicants mentioned in nos. 4 and 6 within a period of 15 days.

## Article 83

### Granting forfeiture

1. If the tender applicant selected by the provisional granting act does not give security foreseen in paragraph 2 of article 22 of Lei n.º 16/2001, in time, as a guarantee of the exact and timely fulfilment of the legal and contractual obligations that binds it, not having been prevented from doing so by any reason beyond its will, deemed to be duly justified, it shall lose the value of the guarantee deposit required to be admitted to the tender in favour of the Region and the granting, regarding it expires.

9. The tender applicant selected by the provisional granting act may convert the security given for the admission as a guarantee of the exact and timely fulfilment of the binding legal and contractual obligations with the required adaptations or reinforcements.

## SECTION XII

## Of the granting contract

## Article 88

## Term periods to make granting contracts

1. The granting contract should be made within a period of 30 days counting from the date of the security foreseen in paragraph 2 of article 22 of Law n.º 16/2001, as a guarantee of the exact and timely fulfilment of the binding legal and contractual obligations of the tender applicant selected by the provisional granting.

2. The Government notifies the contractor in writing, through the tender committee, at least five days in advance, about the date, time and place where the former should appear to sign the mentioned granting contract, in compliance with the approved draft.

3. If the contractor does not appear on the day, time and place established for signing the granting contract, not having been prevented from doing so by any reason beyond its will, deemed to be duly justified within a period of 3 days, it shall lose the value of the guarantee deposit mentioned in no. 1 in favour of the Region and the granting, regarding it expire, unless the Chief Executive rules otherwise.

4. If the Government does not promote the celebration of the granting contract within the period established in no. 1, the contractor may refuse to sign it subsequently, and is entitled to be reimbursed, within 90 days, of all the expenses and all charges deriving from giving the securities, as well as the costs of the checking for and financial capacity processes.

## Article 89

## Elements comprised in the granting contract

1. The submitted bid is considered as an integral part of the granting contract, in all matters that are not explicitly or implicitly contradicted by the latter.

2. When the documents required to sign the granting contract are not written in one of the official languages of the Region they should be accompanied by a legalized translation, into one of the mentioned Region's official languages, which shall be prevailing for all intents and purposes.

## Article 90

## Contractual Clauses

Notwithstanding what is established in the previous article, the granting contract should include, namely, the clauses regarding:

1) The reference to Macau Special Administrative Region as granting entity and the identification of its representative, in legal terms;

2) The identification of the concession holder, and its representative or representatives, mentioning the principles of the statutes or the act conferring these representatives the powers to bind it;

3) The mention of the granting act;

4) The compliance with creditability and financial capacity requirements for the concession holder according to what is established in articles 14 and 15 of Law n.º 16/2001 and chapters III and IV of the present regulamento administrativo (administrative regulation);

5) The number of casinos each concession holder is allowed and undertakes the obligation to operate;

6) The number of tables and type of games each concession holder is allowed and undertakes the obligation to operate;

7) The concession period term, in compliance with what is established in article 13 of Law n.º 16/2001;

8) The value of premium assumed by the concession holder, distinguishing the fixed part and the variable part of the mentioned premium;

9) The value of the contribution to be paid by the concession holder for the effects of what is established under paragraph 7 of article 22 of Law no. 16/2001

10) The value of the contribution to be paid by the concession holder for the effects of what is established under paragraph 8 of article 22 of Law no. 16/2001;

11) The fulfilment of duties established by article 22 of Law no. 16/2001;

12) The investment obligations, regardless its nature, of relevant interest for the Region, that that the concession holder undertakes the obligation to make, as well as, when that is the case, the obligations of the concession holder regarding the valorisation of the places and precincts where the casinos are operating, namely when they contribute for the diversification of the provided touristic product;

13) The compliance with what is established in article 17 of Law n.º 16/2001, regarding the share capital and shares belonging to concession holder;

14) The securities and guarantees that have to be given by the concession holder under legal terms;

15) The commitment of the duly and timely fulfilment of the fiscal obligations and rendering of accounts in compliance with what is established in articles 27 and 36 of Law n.º 16/2001;

16) The observation of legal obligations of the concession holders regarding any goods of the Region allocated to the later, under the terms of articles 37 and subsequent of Law n.º 16/2001;

17) The obligation, taken by the concession holder of exploiting the concession according to the terms and conditons included in the concession contract; and

18) The obligation taken by the concession holder, of renouncing to special jurisdiction and compliance with the Law in force in the Region.

## Article 91

### Formalities of the granting contract

1. The granting contracts for the exploitation of games of chance in casino are made by means of a public deed, to be signed by the Chief Executive or member

of the Government, representing the Region, to whom granting powers have been delegated, and the concession holder's representatives.

2. The public deed is recorded in the book of notes of Finance Department, in the presence of the private notary of that agency acting as a public officer.

3. The revisions of the granting contracts, as well as their addenda, comply with same rules and the same form, and are also recorded in Livro de Notas (book of notes) of Finance Department.

4. The revisions of the granting contracts, as well as their addenda, are published in Boletim Oficial II series of Macau Special Administrative Region.

5. Each concession holder receives an authentic copy of the respective granting contract, as well as the revisions and addenda regarding the mentioned contract, including all the elements that are an integral part of it.

6. All the expenses and charges inherent to making the contracts as well as their revisions and addenda, are born by the concession holders.

## Article 92

### Date of activity start

For the effects of what is established in no. 3 of article 17 of <u>Law no. 16/2001</u> it is considered as date of the activity start of one concession holder only the one which the Government, by means of despacho of Secretary for Economy, will recognize expressly as such.

# CHAPTER VII

# OF THE LIMITED TENDER

# WITH PREVIOUS QUALIFICATION

## Article 93.

### Tender Regime

1. The limited tender begins with a pre-qualification, and will be ruled, with the necessary adjustments, by the dispositions ruling the simple public tender in everything that is not incompatible with its nature or the following dispositions.

2. During the pre-qualification stage, the application to tender does not include the delivery of the bids, and the respective dispositions included in the present Regulamento Administrativo (administrative regulation) are not applicable.

## Article 94

### Application

1. The application should be instructed with the application documents required under the terms of article 54, as well as all those that are necessary to prove the fulfilment of the criteria included in article 97.

2. The tender committee may, exceptionally, exempt from the obligation of submitting some of the documents mentioned in the previous number, when applying, establishing a date for its submission.

3. The applying documents required under the terms of article 54 should be inside an envelope, opaque, closed and sealed with wax. On the face of the envelope it should read "Documentos respeitantes à pré-qualificação" (documents regarding the pre-qualification), indicating the name or the social name of the tender applicant and the indication that it concerns a public tender for the granting of a concession for the exploitation of games of chance in casino.

4. The documents required to prove the compliance with requirements of article 97 should be inside an envelope with similar characteristics of the one described in the previous number above. On the face of the envelope it should read "Documentos respeitantes à pré-qualificação" (documents regarding the pre-qualification), indicating the name or the social name of the tender applicant and the indication that it concerns a public tender for the granting of a concession for the exploitation of games of chance in casino.

5. The envelopes mentioned in the previous numbers should be put inside a third one, equally opaque, closed and sealed with wax. On the face of the envelope it should read "Invólucro exterior - Pré-qualificação" (external envelope - pre-qualification), indicating the name or the social name of the tender applicant and the indication that it concerns a public tender for the granting of a concession for the exploitation of games of chance in casino and to be handed against receipt to the service or the suitable entity.

## Article 95

## Application

1. All the entities that comply with the necessary formal requirements, namely those foreseen in article 53 may apply for the limited tender, notwithstanding the capacity of Chief Executive to address specific invitations regarding the application for the pre-qualification stage.

2. The period term for the submission of the applications for the tender, may never be less than 30 days.

## Article 96

## Opening the applications

It is applicable to pre-qualification stage, with the necessary adjustments, what is established in section VIII of the previous chapter, except for what is established under articles 64, no 2, and 70 to 72.

## Article 97

## Selection Criteria

1. The Government will select among the tender applicants applying for pre-qualification, by means of despacho pronounced on the tender committee's opinion, those which have been admitted to the consultation stage.

2. The tender applicants that prove to comply with the professional, economic, financial or other nature conditions, required for the concession of exploitation, will be admitted to the following stage.

3. Notwithstanding what is established in the tender program, the specific criteria to be taken into account in despacho deciding upon the pre-qualification stage are the following:

1) The experience of the tender applicant or its dominant partner regarding the exploitation of games of chance;

2) The experience of the tender applicant or its dominant partner regarding the exploitation of correlated activities;

3) The experience of the competitor's managers regarding the management of casinos or similar companies.;

4) The reputation of the tender applicant or its dominant partner;

5) The tender applicant's economic and financial situation and, if there is one that of its dominant partner.

### Article 98

### Admission to consultation stage

1. The despacho which is to decide about pre-qualification is notified to all the tender applicants.

2. Except when otherwise decided by the Government, namely by despacho regarding tender opening, the number of selected tender applicants may never be less than three, four or five, depending on whether the number of concessions to be called for tender are one two or three.

3. When the number of selected tender applicants is less than what is established under the previous number, the Government may invite companies of recognised reputation to present their bids according to the terms of no. 3 of article 50.

# CHAPTER VIII

# FINAL AND TRANSITORY DISPOSITIONS

### Article 99

### Tender applicants association

By means of a despacho it is established the juridical system applicable to tender applicants association, namely the terms in which those associations are to be admitted.

### Article 100

### Violation of the declaration of waiver of special jurisdiction and submission to law in force.

1. The violation of the declaration of waiver of special jurisdiction and submission to law in force in the Region, foreseen under paragraph 10 of no. 1 of article 54, involves the loss of the security given to be admitted to the tender, in favour of the Region, as it is foreseen in paragraph 2 of article 22 of <u>Lei n.º 16/2001</u> as the

guarantee of the accurate and timely fulfilment of legal and contractual obligations, depending on what the case may be.

2. The costs and expenses incurred by the Region resulting from the violation of the declaration mentioned in the previous number are born by the violating entity and the debts regarding its payment are collected in process of tax foreclosure.

## Article 101

### Key position employees with relevant functions in the casino

1. The Government, by means of despacho of the Secretary for Economy and Finance, indicates the relevant job functions inside the casino for the effects of what is established in no. 6 of article 14 of Law n.º 16/2001 and what is foreseen in other applicable rules regarding key position employees with relevant tasks in the casino.

2. The Government may allow a special term period for tender applicants, concession holders or respective managing companies to submit the indication of people the mentioned entities wish to appoint as key position employees performing relevant tasks in the casino, as well as the respective "Formulário including data on the tender applicant or concession holder's key position employees, performing relevant tasks in the casino".

3. When establishing a period term the position of the tender applicant, concession holder or respective managing company should be taken into consideration. That period term should elapse before 90 days counting from the foreseeable start of the operation of the casino where the respective key position employee is going to perform relevant tasks.

4. For the effects of the first public tender to be called under the terms of article 9 and following of Law n.º 16/2001 and other complementary regulations, namely the present Regulamento Administrativo, the Government establishes the period term mentioned in no. 2 and 3, of the tender program or by means of despacho of the Secretary for Economy and Finance.

## Article 102

### Coming into force

The present Regulamento Administrativo comes into force the day following its publication.

Approved on 26 October 2001.

To be published.

Chief Executive, Ho Hau Wah.

REGIÃO ADMINISTRATIVA ESPECIAL
DE MACAU

*11*

## 第 215/2001 號行政長官批示

行政長官行使《澳門特別行政區基本法》第五十條賦予的職權，並根據第 16/2001 號法律第二十條及第 26/2001 號行政法規第三條第三款，作出本批示。

一、承批公司繳納作為獲批給娛樂場幸運博彩經營的回報的每年溢價金固定部分為澳門幣三千萬元。

二、本批示自公佈翌日起生效。

二零零一年十月三十日

行政長官　何厚鏵

## Despacho do Chefe do Executivo n.º 215/2001

Usando da faculdade conferida pelo artigo 50.º da Lei Básica, e nos termos do artigo 20.º da Lei n.º 16/2001 e do n.º 3 do artigo 3.º do Regulamento Administrativo n.º 26/2001, o Chefe do Executivo manda:

1. A parte fixa do prémio anual a pagar pelas concessionárias como contrapartida pela atribuição de uma concessão para a exploração de jogos de fortuna ou azar em casino é de MOP 30.000.000,00 (trinta milhões de patacas).

2. O presente despacho entra em vigor no dia seguinte ao da sua publicação.

30 de Outubro de 2001.

O Chefe do Executivo, *Ho Hau Wah.*

## 第 216/2001 號行政長官批示

行政長官行使《澳門特別行政區基本法》第五十條賦予的職權，並根據第 26/2001 號行政法規第四十四條第一款，作出本批示。

一、設立"娛樂場幸運博彩經營批給首次公開競投委員會"，以下簡稱"競投委員會"。

二、競投委員會具有第26/2001號行政法規第四十四條第二款及第三款規定的權限，但不妨礙由法規賦予的其他權力或獲授予的其他權力。

三、競投委員會有權查閱由第26/2001號行政法規所述實體提交的一切文件、資訊及資料，亦有權查閱其認為對執行本身職務屬必要的其他文件、資訊及資料；任何人或實體，包括自然人或法人、公共或私人實體，均須負起一項與競投委員會合作的義務，並應提供由競投委員會在競投程序進行期間要求提供的任何文件、資訊、資料或證據，以及給予競投委員會要求給予的准許，即使該等文件、資訊、資料、准許或證據受到保密義務所保護亦然。

四、委任下列學士為競投委員會成員：

（一）譚伯源── 經濟財政司司長；

（二）雪萬龍── 博彩監察暨協調局局長；

## Despacho do Chefe do Executivo n.º 216/2001

Usando da faculdade conferida pelo artigo 50.º da Lei Básica, e nos termos do n.º 1 do artigo 44.º do Regulamento Administrativo n.º 26/2001, o Chefe do Executivo manda:

1. É criada a Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, adiante designada por «comissão do concurso».

2. A comissão do concurso tem a competência prevista nos n.ºs 2 e 3 do artigo 44.º do Regulamento Administrativo n.º 26/2001, sem prejuízo de outros poderes que lhe sejam ou venham a ser atribuídos por diploma legal ou nela delegados.

3. A comissão do concurso tem acesso a todos os documentos, informações e dados submetidos pelas entidades referidas no Regulamento Administrativo n.º 26/2001 e a todos os demais documentos, informações e dados que considere necessários para o exercício das suas funções, impendendo sobre todas as pessoas e entidades, singulares ou colectivas, públicas ou privadas, um dever de cooperação com ela, devendo, quando por ela solicitados no decurso do processo do concurso, ser-lhe submetidos quaisquer documentos e prestadas quaisquer informações, dados, autorizações ou provas, ainda que protegidos por dever de sigilo.

4. São nomeados membros da comissão do concurso os seguintes licenciados:

1) Tam Pak Yuen, Secretário para a Economia e Finanças;

2) Manuel Joaquim das Neves, Director da Direcção de Inspecção e Coordenação de Jogos;

（三）高德志—— 國際法事務辦公室主任；

（四）沈頌年—— 保安司司長辦公室顧問；

（五）何浩然—— 澳門貿易投資促進局執行委員；

（六）文綺華—— 旅遊局副局長；

（七）陳守信—— 澳門金融管理局研究暨統計辦公室總監；

（八）潘德玲—— 土地工務運輸局法律廳廳長。

五、競投委員會在首次會議中選出主席及一名秘書。

六、除了由特別規範，尤其是載於第26/2001號行政法規的特別規範賦予的其他職能，又或獲授予的其他職能外，競投委員會主席尚有召集、展開及結束會議、領導工作，以及確保遵守法律及按照規範作出決議的權限。

七、除了由特別規範，尤其是載於第26/2001號行政法規的特別規範賦予的其他職能，又或獲授予的其他職能外，競投委員會的秘書尚有繕立競投委員會會議錄的權限，會議錄須由競投委員會的秘書及其餘成員簽名。

八、競投委員會的工作，尤其是秘書工作，尚可由專門指定的公共行政工作人員協助進行，但不妨礙第五款至第七款規定的適用。

九、本批示自公佈日起生效。

二零零一年十月三十日

行政長官　何厚鏵

3) Jorge Manuel Faria da Costa Oliveira, Coordenador do Gabinete para os Assuntos do Direito Internacional;

4) Sam Chong Nin, Assessor do Gabinete do Secretário para a Segurança;

5) Ho Hou Yin, Vogal Executivo do Conselho de Administração do Instituto de Promoção do Comércio e do Investimento de Macau;

6) Maria Helena de Senna Fernandes, Subdirectora da Direcção dos Serviços de Turismo;

7) Chan Sau San, Director do Gabinete de Estudos e Estatísticas da Autoridade Monetária de Macau;

8) Maria Nazaré Saias Portela, Chefe do Departamento Jurídico da Direcção dos Serviços de Solos, Obras Públicas e Transportes.

5. A comissão do concurso elege, na sua primeira reunião, o seu presidente e um secretário.

6. Compete ao presidente da comissão, além de outras funções que lhe sejam atribuídas por norma especial, nomeadamente constante do Regulamento Administrativo n.º 26/2001 ou nele delegadas, convocar, abrir e encerrar as reuniões, dirigir os trabalhos e assegurar o cumprimento das leis e a regularidade das deliberações.

7. Compete ao secretário da comissão, além de outras funções que lhe sejam atribuídas por norma especial, nomeadamente constante do Regulamento Administrativo n.º 26/2001 ou nele delegadas, lavrar actas das reuniões da comissão do concurso, as quais são por si subscritas e assinadas pelos restantes membros da comissão do concurso.

8. Sem prejuízo do disposto nos n.ºs 5 a 7, podem ainda ser especialmente designados trabalhadores da Administração Pública para coadjuvar os trabalhos da comissão do concurso, nomeadamente de secretariado.

9. O presente despacho entra em vigor no dia da sua publicação.

30 de Outubro de 2001.

O Chefe do Executivo, Ho Hau Wah.

12

*12*

# MACAU SPECIAL ADMINISTRATIVE REGION

## Order of the Chief Executive n.º 216/2001

By means of the powers granted on article number 50.º of the Basic Law, and according to the terms of number 1 from article 44.º of Regulation number 26/2001, the Chief Executive orders that:

1. The Committee for the first public tender to grant concessions to operate casino games of chance in casino is hereby created, hereinafter called «the tender committe».

2. The tender committee's scope of powers is set in numbers 2 and 3 from article 44.º of Regulation number 26/2001, apart from other powers that could be or will be granted by additional regulations or by way of delegation.

3. The tender committee has access to all the documents, information and data submitted by the entities referred on Regulation number 26/2001 and to all additional documents, information and data deemed necessary to carry out its activity, and all persons, individuals or corporate bodies, public or private, have the obligation to co-operate with the tender committee, having to submit all documents or provide information, data, authorizations or evidences that the tender committee may request, even if confidential.

4. The following university degree holders are appointed as members of the tender committee:

    1) Tam Pak Yuen, Secretary for Economy and Finance;
    2) Manuel Joaquim das Neves, Director of the Gaming Inspection and Coordination Bureau;
    3) Jorge Manuel Faria da Costa Oliveira, Coordinator of the International Law Office;
    4) Sam Chog Nin, Advisor to the Secretary for Security;
    5) Ho Hou Yin, Executive Director of Macau Trade and Investment Promotion Institute;
    6) Maria Helena de Senna Fernandes, Subdirector of the Macau Government Tourism Office;
    7) Chan Au San, Director of the Macau Monetary Authority Research and Statistics Department;
    8) Maria Nazaré Saias Portela, Head of the Legal Department of the Land, Public Works and Transportation Bureau.

5. On its first meeting, the tender committee shall appoint a Chairman and a Secretary.

6.  The duties of the Chairman shall include, besides others that may be established by a specific law, namely those foreseen by Regulation number 26/2001 or assigned to him/her, to summon, open and close the meetings, run the agenda and to ensure compliance with all laws and the legality of the resolution taken.

7.  The duties of the Secretary shall include, besides others that may be established by a specific law, namely those foreseen by Regulation number 26/2001 or assigned to him/her, to draw up the minutes of the meetings, which are to be signed by him/her, as well as by the remaining members of the tender committee.

8.  Notwithstanding number 5 to 7 above, Government staff can be specially appointed to assist with the tender committee's work, particularly secretarial work.

9.  The present order will become effective from the day of its publication.


30th October 2001

The Chief Executive, *Ho Hau Wah*

## 澳門特別行政區

# REGIÃO ADMINISTRATIVA ESPECIAL DE MACAU

### 第217/2001號行政長官批示

行政長官行使《澳門特別行政區基本法》第五十條賦予的職權，並根據第16/2001號法律第九條及第26/2001號行政法規第四十五條的規定，作出本批示。

一、展開澳門特別行政區娛樂場幸運博彩經營批給的公開競投，批給的數目為三個。

二、是次公開競投是採用簡單公開競投的方式。

三、擬投標者最遲須於二零零一年十二月七日下午五時四十五分投標；競投最少須進行兩個階段；標書應送達位於澳門南灣大馬路762-804號21樓（"中華廣場"）的競投委員會；所遞交的文件及資料尤應按照26/2001號行政法規第五十四條第四款及第五款、第五十九條第二款及第三款，以及第六十一條第二款的規定，以澳門特別行政區的正式語文或英語作成。

四、作為是次公開競投所依據的資料如下：

（一）澳門特別行政區娛樂場幸運博彩經營批給的首次公開競投的方案，以下簡稱"競投方案"；

（二）根據第26/2001號行政法規第四十八條第一款的規定而訂立的批給制度。

五、自本批示公佈之日起至作出批給的臨時判給為止，上款所指作為競投依據的資料存放在位於第三款所述地址的競投委員會內，供利害關係人查閱，查閱時間為星期一至星期五，上午九時至下午一時及下午二時三十分至下午五時四十五分；此外，亦可在上述查閱地點按成本價取得該等資料的經認證副本。

六、為獲接納參與競投，有意競投者須遵守下列條件：

（一）提交第26/2001號行政法規規定的必須提交的資格文件；

（二）以澳門特別行政區的正式語文或按第26/2001號行政法規第五十四條第四款的規定作成上述文件；

（三）遵守競投方案規定的其他條件。

七、根據並適用第16/2001號法律第十條第四款，以及第26/2001號行政法規第五十五條及續後條文的規定，參與競投公司必

### Despacho do Chefe do Executivo n.º 217/2001

Usando da faculdade conferida pelo artigo 50.º da Lei Básica, e nos termos do artigo 9.º da Lei n.º 16/2001 e do artigo 45.º do Regulamento Administrativo n.º 26/2001, o Chefe do Executivo manda:

1. É aberto um concurso público para a atribuição de 3 concessões para a exploração de jogos de fortuna ou azar em casino na Região Administrativa Especial de Macau.

2. Este concurso público reveste a forma de concurso público simples.

3. A apresentação a concurso deve ser feita até às 17h45m do dia 7 de Dezembro de 2001, o número mínimo de fases do concurso é duas, as propostas de adjudicação devem ser dirigidas à comissão do concurso, sita em Macau, na Avenida da Praia Grande, n.º 762-804-21.º andar, edifício «China Plaza», e os documentos e elementos devem ser redigidos em língua oficial da Região ou em língua inglesa, nos termos, entre outras, dos artigos 54.º, n.ºs 4 e 5, 59.º, n.ºs 2 e 3 e 61.º, n.º 2, do Regulamento Administrativo n.º 26/2001.

4. Os elementos que servem de base a este concurso público são:

1) O «Programa do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino na Região Administrativa Especial de Macau», adiante designado por programa do concurso; e

2) O regime das concessões, nos termos do n.º 1 do artigo 48.º do Regulamento Administrativo n.º 26/2001.

5. Os elementos que servem de base ao concurso, referidos no número anterior, estão disponíveis para consulta dos interessados na comissão do concurso, sita na morada referida no n.º 3, de segunda a sexta-feira, das 09h00m às 13h00m e das 14h30m às 17h45m, desde o dia da publicação do presente despacho até ao acto de adjudicação provisória das concessões, onde podem ser obtidas, a preço de custo, cópias autenticadas dos mesmos.

6. Constituem condições exigidas aos interessados para admissão a concurso:

1) A apresentação dos documentos de habilitação de apresentação obrigatória previstos no Regulamento Administrativo n.º 26/2001;

2) A redacção desses documentos em língua oficial da Região ou nos termos do n.º 4 do artigo 54.º do Regulamento Administrativo n.º 26/2001; e

3) O cumprimento de outras condições previstas no programa do concurso.

7. As concorrentes estão obrigadas à prestação de uma caução para admissão a concurso, de montante não inferior a MOP

須提供一項為獲接納參與競投而提供的、金額不低於澳門幣一百萬元的擔保金。

按照第26/2001號行政法規第五十七條的規定，為獲接納參與競投而提供的擔保金，可以現金存放、銀行擔保或保證保險的方式提供。

八、各個批給的最長期間為二十年。

九、根據第26/2001號行政法規第七十八條的規定，在甄選參與競投公司時，尤應採用下列標準，以評定在適當經營及操作娛樂場幸運博彩方面提供最有利於澳門特別行政區的條件的參與競投公司：

（一）所建議的總溢價金；

（二）按第16/2001號法律第二十二條（七）項的規定建議的撥款額；

（三）按第16/2001號法律第二十二條（八）項的規定建議的撥款額；

（四）在經營及操作娛樂場幸運博彩方面、在從事有關經營幸運博彩的業務方面或在管理娛樂場或其他種類的博彩或賭博方面的經驗；

（五）有否對澳門特別行政區有重大利益的投資，尤其是全新的投資的建議書，以及投資的性質。

此外，亦應考慮下列標準：

（一）提高娛樂場所在地點及場所的價值，尤其是有利於使所提供的旅遊產品多元化者；

（二）就博彩業就業發展及專業人士的職業培訓方面所作建議的貢獻。

十、本批示自公佈日起生效。

二零零一年十一月一日

行政長官　何厚鏵

1,000 000.00 (um milhão de patacas), nos termos e para os efeitos do n.º 4 do artigo 10.º da Lei n.º 16/2001 e dos artigos 55.º e seguintes do Regulamento Administrativo n.º 26/2001.

A caução para admissão a concurso pode ser prestada por depósito em dinheiro, por garantia bancária ou por seguro-caução nos termos do artigo 57.º do Regulamento Administrativo n.º 26/2001.

8. O prazo máximo previsto para as concessões a atribuir é de 20 anos.

9. Os critérios utilizados na selecção das concorrentes para determinar as que apresentem as condições mais vantajosas para a Região na exploração e operação adequadas dos jogos de fortuna ou azar em casino são, nos termos do artigo 78.º do Regulamento Administrativo n.º 26/2001, os seguintes:

1) Valor do prémio global proposto;

2) Valor da contribuição proposta ao abrigo da alínea 7) do artigo 22.º da Lei n.º 16/2001;

3) Valor da contribuição proposta ao abrigo da alínea 8) do artigo 22.º da Lei n.º 16/2001;

4) Experiência na exploração e operação de jogos de fortuna ou azar em casino, em actividades relacionadas com a exploração de jogos de fortuna ou azar, ou na gestão de casinos ou outro tipo de jogos ou apostas; e

5) A existência e natureza das propostas de investimento de relevante interesse para a Região, em especial quando realizado de raiz.

É, ainda, tomado em consideração:

1) A valorização dos locais e recintos onde funcionam os casinos, designadamente quando contribuam para a diversificação do produto turístico oferecido; e

2) O contributo das propostas para o desenvolvimento do emprego na indústria do jogo, bem como para a formação profissional dos respectivos profissionais.

10. O presente despacho entra em vigor no dia da sua publicação.

1 de Novembro de 2001.

O Chefe do Executivo, *Ho Hau Wah.*

## 更　正

鑑於第26/2001號行政法規的文本有不正確之處，現根據第3/1999號法律第九條規定更正如下：

上述法規葡文文本第三條第三款，原文為：

"no *Boletim Oficial* até"

應改為：

"no *Boletim Oficial da Região Administrativa Especial de Macau* até"；

## Rectificação

Tendo-se verificado algumas inexactidões no Regulamento Administrativo n.º 26/2001, ao abrigo do previsto no artigo 9.º da Lei n.º 3/1999, procede-se à seguinte rectificação:

Assim, no n.º 3 do artigo 3.º do referido diploma, onde se lê:

«no *Boletim Oficial* até»

deve ler-se:

«no *Boletim Oficial da Região Administrativa Especial de Macau* até»

14

# MACAU SPECIAL ADMINISTRATIVE REGION

## Order of the Chief Executive n.º 217/2001

By means of the powers granted on article number 50.º of the Basic Law, and according to the terms of article 9.º of Regulation number 16/2001, the Chief Executive orders that:

1. A public tender to grant 3 concessions to operate games of chance in casino in the Macau Special Administrative Region is hereby open.

2. This public tender shall obey to the rules of a simple public tender.

3. The applicants shall submit their applications until 5:45 p.m. on 7th December 2001, the minimum number of stages is two, the bids shall be send to the tender committee, in Macau, at Avenida da Praia Grande, numbers 762-804 – 21.º floor, «China Plaza» Building, and the documents and materials shall be written in an official language of the Region or in English, according to the terms, among others, of articles 54.º, numbers 4 and 5, 59.º, numbers 2 and 3 and 61.º, n.º 2, of Regulation number 26/2001.

4. The materials that are to be use as the basic guidelines for the call to tender are:

    1. The «First public tender procedures for the granting of casino gambling licenses in the Macau Special Administrative Region», hereinafter called tender's programme; and
    2. The concessions' legal framework, as per the terms of number 1 of article 48.º of Regulation number 26/2001.

5. The materials that are to be use as the basic guidelines for the call to tender are available for consultation by the interested parties at the tender committee, placed in the address mentioned above (number 3), Monday to Friday, from 9.00a.m. to 13.00a.m. and 14.30p.m. to 17.45p.m., from the date of the publication of this order until the provisional award of the concessions, where they can request, at cost, certified copies of the same.

6. For admission to the public tender, the applicants shall comply with the following requirements:

    1. The submission of the mandatory qualification documents mentioned in Regulation number 26/2001;
    2. Such documents shall be written in an official language of the Region or in English, according to the terms of number 4 of article 54.º of Regulation number 26/2001; and

3.  The fulfilment of any additional conditions that may be mentioned in the tender's programme.

7.  For admission to the public tender, the applicants shall provide a security in the minimum amount of MOP $1,000,000.00 (one million patacas), in accordance with and for the purposes mentioned in number 4 of article 10.º of Law number 16/2001 and article 55.º of Regulation number 26/2001.

   The security for admission to the public tender may be given by way of a cash deposit, via bank guarantee or fidelity guarantee insurance, according to the terms of article 57.º of Regulation number 26/2001.

8.  The concessions shall be awarded for a maximum of 20 years.

9.  The criteria used to choose among the tender applicants, in view of the most advantageous ones to explore and operate games of chance in casino in the Region are, according to the terms of article 78.º of the Regulation number 26/2001, as follows:

   1.  Amount of the proposed global premium;
   2.  Amount of the contribution proposed in accordance with paragraph 7) of article 22.º of Law number 16/2001;
   3.  Amount of the contribution proposed in accordance with paragraph 8) of article 22.º of Law number 16/2001;
   4.  Experience regarding management and operation of games of chance in casino, related activities, or casino management, or other kind of gaming and betting activities;
   5.  The existence and nature of investment proposals of relevant interest for the Region, particularly when involving new developments and infrastructure.

It should also be taken into consideration:

   1.  The enhancement of the locations and premises where casinos operate, namely when these contribute to the diversification of the tourism product on offer; and
   2.  The contribution to the proposals to the development of employment in the gaming industry, as well as to the professional training of their employees.

10. The present order will become effective from the day of its publication.

1st November 2001

The Chief Executive, *Ho Hau Wah*





中華人民共和國澳門特別行政區政府

Governo da Região Administrativa Especial de Macau da República Popular da China

娛樂場幸運博彩經營批給首次公開競投委員會

Comissão do primeiro concurso público para a atribuição de concessões para a exploração
de jogos de fortuna ou azar em casino

## PROGRAMA DO PRIMEIRO CONCURSO PÚBLICO PARA A ATRIBUIÇÃO DE CONCESSÕES PARA A EXPLORAÇÃO DE JOGOS DE FORTUNA OU AZAR EM CASINO

Macau, 2 de Novembro de 2001




澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

# PROGRAMA DO PRIMEIRO CONCURSO PÚBLICO PARA A ATRIBUIÇÃO DE CONCESSÕES PARA A EXPLORAÇÃO DE JOGOS DE FORTUNA OU AZAR EM CASINO

## 1. Objecto e modalidade do concurso

1.1 O concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, adiante designado por "concurso público", aberto pelo Despacho do Chefe do Executivo n.º 217/2001, tem por objecto a atribuição de 3 concessões para a exploração de jogos de fortuna ou azar em casino, e é regido pela Lei n.º 16/2001, pelo Regulamento Administrativo n.º 26/2001, pelo Despacho do Chefe do Executivo n.º 215/2001, pelo Despacho do Chefe do Executivo n.º 216/2001, pelo Despacho do Chefe do Executivo n.º 217/2001 e pela demais regulamentação complementar aplicável, em obediência à qual foi elaborado o presente "Programa do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino na Região Administrativa Especial de Macau", adiante designado por "programa do concurso".

1.2 O concurso público reveste a modalidade de concurso público simples e inclui um número mínimo de duas fases do concurso, uma das quais se destina à apresentação das propostas de adjudicação, à qual se segue uma ou mais fases consecutivas de consulta com as concorrentes, destinadas essencialmente à apreciação das propostas de adjudicação apresentadas, à apresentação de novas propostas de adjudicação e à sua apreciação.

## 2. Entidades

2.1 A entidade concedente é a Região Administrativa Especial de Macau.

2.2 A entidade que dirige o concurso público é a Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, adiante designada abreviadamente por "comissão do concurso", criada pelo Despacho do Chefe do Executivo n.º 216/2001, cujo local de funcionamento, números de telefone e de telefax de contacto e endereço electrónico são:

2

澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



Avenida da Praia Grande, n.ºs 762-804, edifício "China Plaza", 21.º andar, Macau

Fax: (++ 853) 370296

Endereço electrónico (*e-mail*): concurso@dicj.gov.mo

Tel.: (++ 853) 3973333

## 3. Elementos que servem de base ao concurso

3.1 Os elementos que servem de base ao concurso estão disponíveis para consulta dos interessados na comissão do concurso, sita na morada referida no n.º 2.2 *supra*, de segunda a sexta-feira, das 09h00m às 13h00m e das 14h30m às 17h45m, desde o dia da publicação do despacho de abertura do concurso (ou seja, *2 de Novembro de 2001*) até ao acto de adjudicação provisória das concessões.

3.2 Os interessados podem obter, a preço de custo, cópias autenticadas dos elementos que servem de base ao concurso.

3.3 Os elementos que servem de base ao concurso, incluindo as menções constantes do despacho de abertura do concurso, podem, durante o decurso deste, ser objecto de alterações complementares que se justifiquem por motivos de interesse público, sem prejuízo do direito à igualdade de tratamento das concorrentes admitidas à fase em que se proceda às alterações.

## 4. Esclarecimento de dúvidas surgidas na interpretação dos elementos que servem de base ao concurso

4.1 Qualquer interessado pode solicitar à comissão do concurso os esclarecimentos que entender necessários para efeitos de apresentação a concurso, designadamente os necessários à boa compreensão e interpretação dos elementos que lhe servem de base, *até ao dia 14 de Novembro de 2001*.

4.2 Os esclarecimentos solicitados após o prazo referido no número anterior não são atendidos excepto se forem considerados pela comissão do concurso de elevado interesse para a regulamentação do concurso.

4.3 Os esclarecimentos solicitados são prestados pela comissão do concurso *até*

3

澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

*ao dia 26 de Novembro de 2001.*

4.4 A falta de prestação dos esclarecimentos pela comissão do concurso dentro do prazo referido no número anterior pode justificar a prorrogação do prazo para a apresentação a concurso por período correspondente, desde que requerida por qualquer interessado, caso em que beneficia todos os interessados.

4.5 Os esclarecimentos que tenham sido julgados oportunos e as respostas respectivas podem ser coligidos pela comissão do concurso podendo ser determinado que passam a fazer parte integrante das normas reguladoras do concurso.

## 5. Notificações

5.1. As concorrentes indicam, no momento da apresentação a concurso, o endereço e os números de telefone e telefax de contacto para efeitos de notificação.

5.2. As concorrentes obrigam-se a comunicar antecipadamente quaisquer mudanças de endereço e números de telefone e telefax, sob pena de se considerarem validamente efectuadas as notificações dirigidas para o endereço e números declarados inicialmente.

5.3. As concorrentes não estabelecidas na Região Administrativa Especial de Macau que tenham sido autorizadas a apresentar-se ao concurso, nos termos do disposto no n.º 6.2. *infra* devem ainda indicar, para efeitos de notificação, um representante com residência habitual em Macau que permaneça na Região durante o processo do concurso, o qual se tem por contactável no endereço e nos números de telefone e telefax declarados pelas mesmas.

5.4. As notificações são feitas nos termos do artigo 40.º do Regulamento Administrativo n.º 26/2001.

## 6. Natureza jurídica das concorrentes

6.1 Apenas são admitidas ao concurso público sociedades anónimas constituídas na Região Administrativa Especial de Macau e cujo objecto social seja, exclusivamente, a exploração de jogos de fortuna ou azar ou outros jogos em casino.

4



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

6.2 Podem, excepcionalmente, ser admitidos ao concurso público empresários comerciais de reconhecida reputação que não preencham os requisitos previstos no número anterior, desde que estes se obriguem a constituir na Região Administrativa Especial de Macau sociedade anónima com aqueles requisitos, nos termos e prazos a constar de despacho do Chefe do Executivo. Para este efeito, os empresários comerciais devem apresentar, tão brevemente quanto possível, pedido de autorização, devidamente fundamentado, dirigido ao Chefe do Executivo e entregue na comissão do concurso.

## 7. Documentos de habilitação de apresentação obrigatória

7.1 As concorrentes têm, sem prejuízo de ouros que sejam exigidos pelo Regulamento Administrativo n.º 26/2001 ou no presente programa do concurso, de apresentar os seguintes documentos:

1) Declaração de apresentação a concurso, da qual deve constar a identificação da concorrente, a sede, as sucursais, a identificação dos administradores e de outras pessoas com poderes para a obrigar, o registo comercial do acto constitutivo e das suas alterações;

2) Indicação do endereço e dos números de telefone e telefax de contacto para efeitos de notificação, bem como a identificação do representante da concorrente a que se refere o n.º 6.2 *supra* do presente programa do concurso;

3) Documento comprovativo da prestação da caução para admissão a concurso;

4) Documento comprovativo de que nem a concorrente nem sociedades pertencendo ao mesmo grupo desta, nomeadamente uma sua sócia dominante, nem accionistas da concorrente titulares de valor igual ou superior a 5% do seu capital social, nem os seus administradores, se encontram em dívida à Região Administrativa Especial de Macau por contribuições e impostos liquidados nos últimos 5 anos, passado pela Direcção dos Serviços de Finanças;

5) Documento comprovativo de que quer a concorrente, quer as sociedades pertencendo ao mesmo grupo desta, nomeadamente uma sua sócia dominante, quer os accionistas da concorrente titulares de valor igual ou superior a 5% do seu capital social, quer os seus administradores, têm a sua situação contributiva regularizada para com a segurança social da Região Administrativa Especial de Macau,

澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



passado pelo Fundo de Segurança Social;

6) Exemplares devidos do "Formulário relativo à revelação de dados das concorrentes ou concessionárias", do "Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias" e da "Declaração autorizando a revelação de informação", cujos modelos constituem, respectivamente, os Anexos I a III ao Regulamento Administrativo n.º 26/2001;

7) Exemplares dos relatórios e contas do conselho de administração, pareceres do conselho fiscal e dos auditores externos previstos no artigo 19.º do Regulamento Administrativo n.º 26/2001;

8) Declaração da qual conste a enumeração e identificação completa das empresas que pertençam ao mesmo grupo da concorrente, das que estejam estreitamente associadas a esta e dos accionistas que sejam titulares de valor igual ou superior a 5% do capital social daquela, dos seus administradores, incluindo o administrador-delegado proposto, e dos seus principais empregados com funções relevantes nos casinos; no caso de a concorrente ser autorizada a apresentar-se antes de se ter constituído na Região Administrativa Especial de Macau sob a forma de sociedade anónima, deve indicar aqueles elementos que fundadamente preveja venham a constar do acto constitutivo da sociedade a constituir, ficando obrigada a comunicar à comissão do concurso todas as alterações ou actualizações dos mesmos;

9) Relatórios de avaliação e risco relativamente à concorrente, à sociedade sócia dominante desta, aos accionistas da concorrente titulares de valor igual ou superior a 5% do seu capital social, e aos seus administradores;

10) Declaração de renúncia a foro especial e submissão à lei vigente na Região Administrativa Especial de Macau, nos termos do modelo que constitui o anexo n.º 1 ao presente programa do concurso;

11) Declaração comprometendo-se a acatar e cumprir todas as obrigações estabelecidas por lei, por regulamento ou por despacho, designadamente no despacho de abertura do concurso, bem como nas alterações posteriores referidas no artigo 32.º do Regulamento Administrativo n.º 26/2001, nos termos do modelo que constitui o anexo n.º 2 ao presente programa do concurso;

12) Outras informações e documentos que permitam comprovar o cumprimento de outros os requisitos previstos na lei ou requeridos por despacho.



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

7.2 Os documentos referidos nas alíneas 1), 2), 8), 10) e 11) do número anterior
são subscritos por representante legal ou por administradores da concorrente
que a obriguem, com assinatura e qualidade reconhecidas notarialmente,
devendo ainda, quanto aos referidos nas alíneas 1) e 8), declarar, sob
compromisso de honra, a correcção, actualidade e veracidade dos dados e
informações deles constantes ou anexados.

7.3 Os documentos referidos nas alíneas 3) a 5), 7) e 9) do n.º 7.1 *supra* são
acompanhados de uma declaração nos termos da qual se declara, sob
compromisso de honra, que aqueles documentos são os originais, ou cópias
autenticadas no caso dos referidos na alínea 7), subscrita por representante
legal ou por administradores da concorrente que a obriguem, com assinatura
e qualidade reconhecidas notarialmente.

7.4 Nos documentos referidos na alínea 6) do n.º 7.1 *supra* as assinaturas dos
declarantes são objecto de reconhecimento notarial presencial. No caso de o
declarante residir em jurisdição na qual não seja possível obter o
reconhecimento notarial presencial das assinaturas, deve ser produzida forma
de reconhecimento das assinaturas por parte de autoridade pública
competente, devidamente legalizado.

7.5 Caso haja lugar a falsificação ou subtracção de documentos ou notações
técnicas ou outro acto considerado crime, a ocorrência é participada ao
Ministério Público para o competente procedimento criminal.

7.6 No caso referido no número anterior, a concorrente é ainda excluída do
concurso público ou, se já lhe tiver sido adjudicada uma concessão, esta
caduca.

## 8. Concorrência

Os acordos e práticas que tenham por objecto ou como efeito impedir,
restringir ou falsear a concorrência implicam a exclusão da proposta de
adjudicação da concorrente em causa.

## 9. Relatórios de avaliação de risco

9.1 Os relatórios de avaliação de risco devem ser elaborados por firmas de
reconhecida reputação internacional, locais ou do exterior, nos termos do n.º
4 do artigo 19.º e da secção 16 do Anexo I ao Regulamento Administrativo
n.º 26/2001.




澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

9.2 Na selecção de firma de reconhecida reputação internacional, cada entidade sujeita à obrigação de apresentação de relatório de avaliação de risco deve solicitar previamente a aquiescência do Governo, através do Secretário para a Economia e Finanças, excepto no caso das seguintes firmas:

- Dun & Bradstreet;

- Standard & Poors; ou

- Moodys.

9.3 Os relatórios de avaliação de risco referidos no Regulamento Administrativo n.° 26/2001 e no presente programa de concurso, devem conter informação e dados relativos à identificação da pessoa ou sociedade e respectivos titulares dos órgãos sociais, às acções judiciais por esta propostas ou em que é demandada, à sua situação económica e financeira, incluindo eventuais mútuos ou operações financeiras relevantes e à estimativa do valor dos bens e direitos de que é titular, nos termos requeridos pela secção 16 do Anexo I ao Regulamento Administrativo n.° 26/2001.

Apenas como mera referência, indica-se *infra* um endereço na Internet onde os interessados podem aceder a um exemplo de relatório de avaliação de risco pretendido:

http://www.dnbasia.com/hk/english/services/credit/samples/dnbreport_sample.htm

## 10. Caução para admissão ao concurso

10.1 Cada concorrente deve prestar uma caução para admissão a concurso que pode ser usada para fazer face a todas as despesas em que o Governo incorra com o processo do concurso, na proporção da responsabilidade de cada concorrente, designadamente as relativas aos processos de verificação da idoneidade e da capacidade financeira.

10.2 O montante da caução para admissão a concurso é de um milhão de patacas, nos termos do Despacho do Chefe do Executivo n.° 217/2001.

10.3 O Chefe do Executivo pode exigir o reforço da caução para admissão a concurso prestada inicialmente sempre que tal se revele necessário.

10.4 No caso de caução prestada através de garantia bancária ou seguro-caução, a comissão do concurso pode exigir a sua substituição quando ocorra uma diminuição da capacidade financeira da entidade garante que indicie

8



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

impossibilidade de cumprimento, no todo ou em parte, das obrigações assumidas.

10.5 A caução para admissão a concurso pode ser prestada por depósito em dinheiro, por garantia bancária ou por seguro-caução, nos termos dos modelos que constituem, respectivamente, os anexos n.ºs 3, 4 e 5 ao presente programa do concurso.

10.6 Todas as despesas que resultem da prestação da caução para admissão a concurso ou do seu levantamento são suportadas pela concorrente.

10.7 A caução para admissão a concurso prestada sob a forma de depósito em dinheiro é efectuada em instituição de crédito que exerça funções de caixa de tesouro da Região Administrativa Especial de Macau (Banco da China e Banco Nacional Ultramarino, S. A.), à ordem do Governo.

10.8 A caução para admissão a concurso prestada sob a forma de garantia bancária é efectuada por instituição de crédito legalmente autorizada a exercer actividade na Região Administrativa Especial de Macau e não pode ser sujeita a condição ou termo resolutivo.

10.9 A caução para admissão a concurso prestada sob a forma de seguro-caução é efectuada por seguradora legalmente autorizada a realizar esse seguro na Região Administrativa Especial de Macau e não pode ser sujeito a condição ou termo resolutivo.

10.10 As concorrentes preteridas podem solicitar a restituição do montante depositado como caução para admissão a concurso, o cancelamento da garantia bancária ou a extinção do seguro-caução, a partir do conhecimento da não adjudicação da concessão ou do conhecimento da decisão definitiva de não admissão, casos em que o Governo deve promover, nos 20 dias subsequentes, as diligências necessárias para o efeito.

10.11 A caução é considerada perdida a favor da Região Administrativa Especial de Macau se as concorrentes seleccionadas não se apresentarem à fase seguinte ou se a proposta de adjudicação não vier a ser considerada por facto imputável à concorrente, e ainda se, decidida a adjudicação, o contrato não vier a ser assinado por facto imputável à adjudicatária.

## 11. Proposta de adjudicação

11.1 A proposta de adjudicação é o documento pelo qual a concorrente manifesta ao Governo a vontade de contratar e indica as condições em que se dispõe a





澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

fazê-lo.

11.2 A proposta de adjudicação é subscrita por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente. Quando subscrita por representante legal, deve juntar-se procuração que confira a este último poderes para o efeito ou pública-forma da mesma, devidamente legalizada.

11.3 Os montantes constantes da proposta de adjudicação, designadamente o valor do prémio, devem ser sempre indicados em algarismos e por extenso, prevalecendo o indicado por extenso em caso de divergência entre ambos.

11.4 Podem ser apresentadas propostas simples, alternativas ou subsidiárias.

11.5 As propostas alternativas ou subsidiárias devem ser apresentadas de forma clara e inequívoca e devem conter todos os elementos necessários para a sua perfeita apreciação, devendo ser elaboradas em termos que permitam a sua fácil comparação.

## 12. Documentos e elementos que instruem a proposta de adjudicação

12.1 A proposta de adjudicação, para além da manifestação de vontade de contratar referida no n.º 11.1 *supra*, é instruída com os seguintes documentos e elementos:

1) A identificação da concorrente;

2) Valor do prémio global proposto pela concorrente, com discriminação da parte fixa e da parte variável;

3) Valor da contribuição proposta pela concorrente para os efeitos do disposto na alínea 7) do artigo 22.ª da Lei n.º 16/2001;

4) Valor da contribuição proposta pela concorrente para os efeitos do disposto na alínea 8) do artigo 22.ª da Lei n.º 16/2001;

5) Relatório descritivo da experiência de gestão na exploração e operação de jogos de fortuna ou azar em casino ou experiência em áreas correlativas;

6) Memória descritiva e justificativa das propostas de investimento, independentemente da sua natureza, de relevante interesse para a Região Administrativa Especial de Macau, que a concorrente se propõe

10



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

efectuar;

7) Declaração, para os efeitos previstos no capítulo IV do Regulamento Administrativo n.º 26/2001, prestada pelo terceiro ou terceiros que assumam o compromisso ou prestem garantia de financiamento dos investimentos e obrigações que a concorrente se propõe realizar ou assumir ou, em alternativa, prestada pelos accionistas titulares de valor igual ou superior a 5% do seu capital social que, nos termos do alínea 2) do n.º 1 do artigo 18.º do regulamento administrativo referido, assumam o compromisso ou prestem garantia de financiamento dos investimentos e obrigações que a concorrente se propõe realizar ou assumir;

8) Memória descritiva e justificativa das propostas da concorrente para a valorização dos locais e recintos onde funcionam os casinos, designadamente quando contribuam para a diversificação do produto turístico oferecido;

9) Referência à relevância da proposta de adjudicação da concorrente relativamente ao desenvolvimento do emprego na indústria do jogo, bem como para a formação profissional dos respectivos profissionais;

10) As propostas alternativas ou subsidiárias, caso existam;

11) Declaração em como a concorrente se obriga a explorar a concessão nos termos e condições propostos, nos termos do modelo que constitui o anexo n.º 6 ao presente programa do concurso;

12) Outros documentos ou elementos que a concorrente considere relevantes para a análise da respectiva proposta de adjudicação, incluindo anexos de carácter técnico considerados necessários à fundamentação de quaisquer dos documentos ou elementos referidos nas alíneas anteriores.

12.2 O documento referido na alínea 7) do número anterior é acompanhado de uma declaração nos termos da qual se atesta serem os originais, subscrita por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente.

12.3 Caso haja lugar a falsificação ou subtracção de documentos ou notações técnicas ou outro acto considerado crime, a ocorrência é participada ao Ministério Público para o competente procedimento criminal.

12.4 No caso referido no número anterior, a concorrente é ainda excluída do concurso público ou, se já lhe tiver sido adjudicada uma concessão, esta caduca.



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



## 13. Línguas

13.1 Os documentos de habilitação das concorrentes, referidos no n.º 7 *supra*, são redigidos numa das línguas oficiais da Região Administrativa Especial de Macau; porém, quando pela sua própria origem ou natureza, estiverem redigidos noutra língua, deve a concorrente fazê-los acompanhar de tradução legalizada para uma das línguas oficiais da Região Administrativa Especial de Macau, a qual prevalece para todos e quaisquer efeitos.

13.2 Quando a língua não oficial utilizada nos termos do número anterior for a inglesa, os elementos apresentados nesta língua não carecem de tradução legalizada para qualquer das línguas oficiais da Região Administrativa Especial de Macau, excepto se tal tradução, parcial ou integral, for exigida pela comissão do concurso.

13.3 A proposta de adjudicação e os documentos que a instruem devem ser redigidos numa das línguas oficiais da Região Administrativa Especial de Macau e traduzidos, com excepção dos anexos apresentados nos termos da alínea 12) do n.º 12.1 *supra*, para a outra.

13.4 A proposta de adjudicação, assim como os documentos que a instruem, incluindo os anexos apresentados nos termos da alínea 12) do n.º 12.1 *supra*, podem ser redigidos em língua inglesa, podendo neste caso a comissão do concurso exigir tradução legalizada, parcial ou integral, para uma das línguas oficiais da Região Administrativa Especial de Macau.

13.5 Quando os anexos apresentados nos termos da alínea 12) do n.º 12.1 *supra* forem redigidos em língua não oficial que não a inglesa, deve a concorrente fazê-los acompanhar de tradução legalizada para uma das línguas oficiais da Região Administrativa Especial de Macau, a qual prevalece para todos e quaisquer efeitos.

## 14. Requisitos formais dos elementos a apresentar

14.1 Todos os elementos a apresentar, designadamente requerimentos, propostas, declarações e documentos que se destinem a instruir a apresentação a concurso, devem ser manuscritos, dactilografados ou processados informaticamente sem rasuras, entrelinhas ou palavras cruzadas, salvo se tal se revelar fundamentamente inviável.

14.2 Quando os documentos sejam formados por mais de uma folha, todas as



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

páginas devem ser numeradas, devendo a primeira página mencionar o número total de páginas, por método que impeça a separação ou acréscimo de folhas.

14.3 Os documentos referidos no n.º 7.1 *supra* devem ser encerrados em invólucro opaco, fechado e lacrado, no rosto do qual deve ser escrita a palavra "Documentos", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita a concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino.

14.4 A proposta de adjudicação e os documentos referidos no n.º 12.1 *supra* devem ser encerrados em invólucro com as características indicadas no número anterior, no rosto do qual deve ser escrita a palavra "Proposta", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita ao concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino.

14.5 Os invólucros a que se referem os números anteriores devem ser encerrados num terceiro, igualmente opaco, fechado e lacrado, que se denomina "Invólucro exterior", indicando-se neste o nome ou denominação social da concorrente, a indicação de que respeita ao concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, a fim de ser entregue contra recibo à comissão do concurso.

14.6 A recepção dos invólucros a que se referem os números anteriores é registada pela comissão do concurso, anotando-se a data e hora em que os mesmos são recebidos, o número de ordem de apresentação e a identidade e morada das pessoas que os entregaram, sendo o "Invólucro exterior" fechado e lacrado no acto de entrega.

14.7 Os documentos referidos nos n.ºs 7.1 e 12.1 *supra*, assim como a proposta de adjudicação, são apresentados em duplicado, devendo cada exemplar ser organizado nos termos dos números anteriores. No invólucro do original deve ser aposta, de forma bem visível, a palavra "Original". Caso existam diferenças entre o original e a cópia prevalece aquele.

## 15. Prazo de apresentação a concurso

A apresentação a concurso deve ser feita até às 17h45m do dia *7 de Dezembro de 2001*, na comissão do concurso.



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

16. Acto de abertura das propostas de adjudicação

16.1 O acto de abertura das propostas de adjudicação, que não envolve qualquer apreciação do mérito das mesmas, não constitui um acto público.

16.2 O acto de abertura decorre perante a comissão do concurso e inicia-se num dos cinco dias úteis subsequentes ao termo do prazo para apresentação a concurso, sendo ordenado e presidido pelo presidente da comissão do concurso.

16.3 Podem ainda presenciar o acto de abertura outras pessoas expressamente autorizadas pelo presidente da comissão do concurso, as quais ficam adstritas ao dever de confidencialidade.

16.4 Assiste ao acto de abertura um representante do Ministério Público, indicado para o efeito pelo Procurador da Região.

16.5 Salvo decisão em contrário da comissão do concurso, a sessão do acto de abertura é contínua e compreende o número de sessões necessárias ao cumprimento de todas as formalidades.

16.6 Se eventualmente o acto de abertura não puder ser concluído numa única sessão ou se houver que suspender qualquer sessão, a documentação contida em invólucros já abertos e os invólucros ainda por abrir serão agrupados e identificados, ficando confiados a um dos membros presentes indicado pelo presidente da comissão de concurso.

16.7 De tudo o que ocorrer no acto de abertura é lavrada acta pelo secretário da comissão do concurso, a qual é subscrita por este e assinada por todos os presentes.

16.8 Se o acto de abertura for constituído por várias sessões, são elaboradas actas autónomas relativamente a cada sessão.

16.9 As concorrentes podem obter, mediante requerimento, cópia das actas referidas nos números anteriores, para efeitos de interposição de reclamações ou recursos administrativos.

17. Tramitação do acto de abertura das propostas de adjudicação

17.1 O acto de abertura das propostas de adjudicação inicia-se com a elaboração da lista das concorrentes, pela ordem de entrada das propostas de adjudicação, a qual é obrigatoriamente anexa à acta referida no n.º 16.7



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

*supra.*

17.2 Em seguida, procede-se à abertura dos invólucros exteriores, pela ordem da lista referida no número anterior, extraindo-se de cada um os dois invólucros que devem conter e procedendo-se à abertura, pela mesma ordem, dos invólucros que contenham exteriormente a indicação "Documentos".

17.3 A documentação contida nos invólucros que contenham exteriormente a indicação "Documentos" é numerada e rubricada pelo secretário da comissão do concurso ou, no seu impedimento, por quem for designado para o efeito pelo presidente da mesma comissão.

## 18. Decisão sobre a habilitação das concorrentes

18.1 Cumprido o que se dispõe no número anterior, a comissão do concurso procede à verificação formal dos documentos apresentados pelas concorrentes, e decide sobre a habilitação das admitidas às fases subsequentes e sobre as não admitidas, bem como as razões da não admissão destas.

18.2 Sem prejuízo do disposto nos números seguintes, não são admitidas, nesta fase, as concorrentes:

1) Que não tenham apresentado todos os documentos de habilitação de apresentação obrigatória, enunciados no n.º 7.1 *supra*; ou

2) Que não tenham apresentado os documentos redigidos numa das línguas oficiais da Região Administrativa Especial de Macau, ou nos termos do disposto no n.º 13.1 ou 13.2 *supra*.

18.3 Podem ser admitidas, condicionalmente, as concorrentes cujos documentos sejam apresentados com preterição de formalidades não essenciais, devendo, porém, tais irregularidades ser sanadas no prazo fixado para o efeito pela comissão do concurso, sob pena de ficar sem efeito a admissão.

18.4 Podem ser admitidas, condicionalmente, as concorrentes que, por motivo independente da sua vontade, devidamente justificado e que seja como tal aceite pela comissão do concurso, não hajam apresentado algum dos documentos de habilitação previstos nas alíneas 4), 5) e 9) do n.º 7.1 *supra*, contanto que o apresentem no prazo fixado para o efeito pela comissão do concurso, sob pena de ficar sem efeito a admissão.

18.5 Verificada a documentação de habilitação apresentada pelas concorrentes, a



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

comissão do concurso elabora um quadro comparativo da mesma que contém ainda menção da decisão relativa a cada uma das concorrentes bem como quaisquer outros elementos que tenham, entretanto, sido determinados.

18.6 A decisão referida no número anterior é notificada a cada uma das concorrentes, no mais curto prazo possível, devendo constar da notificação os elementos mencionados no n.º 3 do artigo 69.º do Regulamento Administrativo n.º 26/2001.

18.7 Qualquer concorrente pode reclamar da decisão de não admissão ou de admissão condicionada, a apresentar no prazo de 3 (três) dias contados da notificação respectiva, sem prejuízo do disposto na parte final do n.º 2 do artigo 69.º do Regulamento Administrativo n.º 26/2001.

18.8 As concorrentes que pretendam reclamar podem, para esse efeito, examinar e obter cópias dos elementos referidos no n.º 2 do artigo 69.º do Regulamento Administrativo n.º 26/2001.

18.9 O requerimento em que é formulada a reclamação é apresentado com uma cópia, nos termos e para os efeitos previstos no artigo 39.º do Regulamento Administrativo n.º 26/2001.

18.10 A reclamação não tem efeito suspensivo, de acordo com o n.º 3 do artigo 38.º do Regulamento Administrativo n.º 26/2001.

## 19. Abertura dos invólucros das propostas de adjudicação

19.1 Após a decisão sobre a habilitação das concorrentes, procede-se à abertura dos invólucros que contenham exteriormente a indicação "Proposta" relativamente às concorrentes admitidas, pela ordem da respectiva lista.

19.2 A documentação contida no invólucro é numerada e rubricada em conformidade com o disposto no n.º 17.3 *supra*.

19.3 A comissão do concurso procede, em seguida, ao exame formal da proposta de adjudicação e dos documentos que a instruem e decide sobre a sua admissão.

19.4 São excluídas as propostas de adjudicação:

1) Que não estejam instruídas com todos os documentos e elementos exigidos no n.º 12.1 *supra*;





澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



2) Que não estejam redigidas nos termos do disposto nos n.ºs 13.3 ou 13.4 *supra*; ou

3) Que resultem de práticas restritivas da concorrência ilícitas.

19.5  Podem ser admitidas, condicionalmente, as propostas de adjudicação que sejam apresentadas com preterição de formalidades não essenciais, devendo, porém, tais irregularidades ser sanadas no prazo fixado para o efeito, sob pena de ficar sem efeito a sua admissão.

19.6  Cumprido o que se dispõe nos números anteriores, a comissão do concurso elabora um quadro comparativo das propostas de adjudicação apresentadas pelas concorrentes nos termos dos n.ºs 11 e 12 *supra*, que contém ainda a menção da decisão relativa a cada uma delas e tudo o mais que for julgado conveniente.

19.7  A decisão referida no número anterior é notificada a cada uma das concorrentes, aplicando-se à notificação, com as necessárias adaptações, o disposto no n.º 18.6 *supra*.

19.8  Os interessados podem reclamar das decisões que excluam as propostas de adjudicação ou que as admitam condicionalmente, sendo correspondentemente aplicável, com as necessárias adaptações, o disposto nos n.ºs 18.7 a 18.10 *supra*.

19.9  Decidida a admissão das propostas de adjudicação, dá-se por encerrado o acto de abertura das propostas de adjudicação.

## 20. Recurso de decisões da comissão do concurso

20.1  Das decisões da comissão do concurso sobre reclamações deduzidas, pode qualquer interessado recorrer para o Chefe do Executivo, nos termos do disposto no artigo 36.º do Regulamento Administrativo n.º 26/2001.

20.2  Ao prazo para interposição do recurso administrativo referido no número anterior aplica-se o disposto no n.º 4 do artigo 38.º do Regulamento Administrativo n.º 26/2001.

20.3  O recurso administrativo não tem efeito suspensivo, de acordo com o n.º 3 do artigo 38.º do Regulamento Administrativo n.º 26/2001.



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

## 21. Consulta

21.1  Encerrado o acto de abertura das propostas de adjudicação, seguem-se uma ou mais fases de consulta, destinadas essencialmente à apreciação das propostas de adjudicação inicialmente apresentadas, à apresentação de propostas de adjudicação subsequentes e à sua apreciação, e que incluem as negociações a que se refere a primeira parte do n.º 3 do artigo 11.º da Lei n.º 16/2001.

21.2  Não há prazo máximo para qualquer fase de consulta.

21.3  Os processos de verificação da idoneidade e da adequada capacidade financeira das concorrentes são instruídos pela Direcção de Inspecção e Coordenação de Jogos, nos termos do Regulamento Administrativo n.º 26/2001, designadamente do seu artigo 12.º.

21.4  Para efeitos de instrução dos processos de verificação referidos no número anterior pode a Direcção de Inspecção e Coordenação de Jogos recorrer a empresas especializadas e obter a colaboração de qualquer outro serviço da Administração.

21.5  A comissão do concurso pode decidir pela exclusão de alguma ou algumas das concorrentes no final de cada fase de consulta, quer por motivos atinentes à proposta de adjudicação, quer por razões relativas à idoneidade ou à capacidade financeira.

21.6  O Governo pode determinar a repescagem de concorrentes que tenham sido excluídos em fases anteriores, se tal se justificar por motivos de interesse público da Região Administrativa Especial de Macau, devendo a escolha incidir, de entre as preteridas, pelas que tenham apresentado condições mais vantajosas.

## 22. Negociações

22.1  No decurso de cada fase de consulta, a comissão do concurso pode convocar as concorrentes, nos termos definidos no artigo 40.º do Regulamento Administrativo n.º 26/2001, para negociação das condições apresentadas nas propostas de adjudicação.

22.2  As concorrentes que não compareçam às sessões de negociação para que hajam sido devidamente convocadas podem ser excluídas do concurso com a consequente perda a favor da Região Administrativa Especial de Macau da caução para admissão a concurso, salvo se a comissão do concurso