

澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



considerar a falta devidamente justificada.

22.3 As negociações podem ocorrer, individualmente, com cada uma das concorrentes ou, conjuntamente, com algumas ou todas elas.

22.4 As negociações decorrem, em princípio, perante pelo menos 3 membros da comissão do concurso por esta indicados, um dos quais dirige a sessão.

22.5 A comissão do concurso pode fixar, para cada sessão de negociações, o número máximo de membros que pode integrar a delegação da concorrente.

22.6 No início de cada sessão de negociações o chefe da delegação da concorrente identifica-se nessa qualidade.

22.7 As delegações representativas da comissão do concurso e da concorrente podem integrar especialistas nas matérias a negociar.

22.8 De cada sessão de negociação é lavrada acta, assinada pelos membros presentes.

22.9 As actas contêm, pelo menos, referência à convocatória, nome dos negociadores presentes e dos especialistas de que se fizeram acompanhar, bem como o resumo das posições formuladas.

22.10 As actas e documentação apensa são consideradas reservadas enquanto durarem as negociações e por um período subsequente a determinar pelo Governo.

22.11 As negociações podem decorrer em qualquer fase do concurso até ao momento da outorga dos contratos de concessão.

## 23. Proposta de adjudicação

23.1 Em cada uma das fases de consulta, a comissão do concurso pode convidar as concorrentes a apresentar uma ou mais propostas de adjudicação subsequentes à inicial.

23.2 As concorrentes podem apresentar, dentro da mesma fase de consulta, mais do que uma proposta de adjudicação subsequente.

23.3 As propostas de adjudicação subsequentes à inicial não necessitam de ser instruídas com documentos para além dos necessários para a sua perfeita apreciação, devendo ser elaboradas com sistematização idêntica à da



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

proposta inicial e em termos que permitam uma comparação fácil.

23.4  As propostas de adjudicação subsequentes podem remeter parcialmente, de forma expressa, para o teor de proposta de adjudicação anterior, indicando neste caso, clara e inequivocamente, as modificações operadas relativamente à proposta de adjudicação revista.

23.5  As propostas de adjudicação subsequentes são subscritas por representante legal ou por administradores da concorrente que a obriguem, com assinatura e qualidade reconhecidas notarialmente.

23.6  As propostas de adjudicação subsequentes devem ser redigidas nos termos do disposto nos n.ºs 13.3 a 13.5 supra.

23.7  As propostas de adjudicação subsequentes devem ser encerradas em invólucro opaco, fechado e lacrado, no rosto do qual deve ser escrita a palavra "Proposta subsequente n.º _____", indicando-se o nome ou denominação social da concorrente e a indicação de que respeita ao concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino.

23.8  O invólucro a que se refere o número anterior deve ser encerrado num segundo invólucro com as mesmas características, que se denomina "Invólucro exterior", indicando-se neste o nome ou denominação social da concorrente, a indicação de que respeita a proposta de adjudicação subsequente relativa ao concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, a fim de ser entregue, contra recibo, à comissão do concurso.

23.9  À recepção dos invólucros a que se refere o número anterior, aplica-se o disposto no n.º 14.6 supra.

## 24. Relatório fundamentado

24.1  Após o termo da fase ou fases de consulta e negociação, a comissão do concurso elabora um relatório fundamentado, que deve conter um resumo dos procedimentos e decisões tomadas nessa fase, bem como a análise dos resultados obtidos no âmbito da negociação com cada concorrente, a avaliação das propostas apresentadas e respectiva hierarquização das concorrentes segundo os critérios enunciados no artigo 78.º do Regulamento Administrativo n.º 26/2001.

24.2  Para efeitos do disposto no n.º 4 do artigo 75.º do Regulamento

20



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

Administrativo n.º 26/2001, a hierarquização das concorrentes incluirá, para além das três seleccionadas, três concorrentes preteridas hierarquizadas igualmente em função dos critérios enunciados no artigo 78.º do Regulamento Administrativo n.º 26/2001.

24.3 O relatório referido no n.º 24.1 *supra* deve concluir pela proposta de selecção das três concorrentes cujas propostas de adjudicação, como resultantes da fase ou, fases de consulta e negociação, apresentem as condições mais vantajosas para a Região Administrativa Especial de Macau.

## 25. Adjudicação provisória

25.1 O acto de adjudicação provisória é exarado mediante despacho do Chefe do Executivo proferido sobre o relatório fundamentado a que se refere o n.º 24 *supra*, e consiste na escolha de três concorrentes.

25.2 A adjudicação provisória é notificada, no prazo de 15 (quinze) dias, às concorrentes seleccionadas.

25.3 A comissão do concurso comunica também a adjudicação provisória às concorrentes preteridas, no prazo de 15 dias.

25.4 Por ocasião da notificação da adjudicação provisória, determina-se que cada concorrente seleccionada deve prestar, em prazo a fixar então, a caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que se haja vinculado, sob pena de caducidade da adjudicação nos termos do artigo 83.º do Regulamento Administrativo n.º 26/2001.

25.5 Sem prejuízo do disposto no número anterior, o Governo, através da comissão do concurso, pode ainda exigir que sejam prestadas as garantias bancárias previstas no n.º 3 do artigo 20.º e no n.º 5 do artigo 27.º da Lei n.º 16/2001 e nos n.ºs 2 a 5 do artigo 84.º do Regulamento Administrativo n.º 26/2001.

25.6 Na prestação da caução prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual cumprimento das obrigações legais e contratuais a que a concorrente se haja vinculado, observa-se o disposto no artigo 87.º do Regulamento Administrativo n.º 26/2001.

25.7 As concorrentes seleccionadas devem ainda, após a notificação da adjudicação provisória e no prazo então fixado, comprovar junto da comissão do concurso que o capital social de montante não inferior a 200

澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

milhões de patacas se encontra integralmente realizado em dinheiro e depositado em instituição de crédito local ou em sucursal ou subsidiária de instituição de crédito autorizada a operar na Região Administrativa Especial de Macau, sob pena de caducidade da adjudicação nos termos do artigo 83.º do Regulamento Administrativo n.º 26/2001.

25.8  Antes do acto de adjudicação são remetidas às concorrentes seleccionadas as minutas dos respectivos contratos de concessão, para sobre elas se pronunciarem no prazo de 5 (cinco) dias, aplicando-se o disposto nos artigos 80.º e 81.º do Regulamento Administrativo n.º 26/2001.

## 26. Adjudicação definitiva

26.1  O acto de adjudicação é exarado mediante despacho do Chefe do Executivo e consiste na escolha dos 3 adjudicatários com quem será celebrado contrato de concessão para a exploração de jogos de fortuna ou azar em casino.

26.2  O despacho do Chefe do Executivo referido no número anterior é proferido sobre relatório fundamentado da comissão do concurso, que incidirá essencialmente na verificação do cumprimento, pelas concorrentes seleccionadas no acto de adjudicação provisória, das obrigações previstas nos n.ºs 25.4 a 25.8 supra e comunicado às concorrentes referidas nos n.ºs 25.2 e 25.3 supra.

## 27. Contratos de concessão

Aprovada a minuta do contrato de concessão, nos termos e para os efeitos previstos nos artigos 80.º e 81.º do Regulamento Administrativo n.º 26/2001, e exarado o acto de adjudicação referido no número anterior, serão celebrados os contratos de concessão entre a Região Administrativa Especial de Macau, representada pelo Governo, e cada uma das adjudicatárias, nos termos dos artigos 88.º a 91.º do Regulamento Administrativo n.º 26/2001.





澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

## Anexo n.º 1

*(a que se refere a alínea 10) do n.º 7.1 do programa de concurso)*

Modelo de
Declaração de renúncia a foro especial e submissão à lei vigente na Região
Administrativa Especial de Macau

Eu, (nome)_____ _____, na qualidade de
[administrador(es) / representante legal], com poderes bastantes para o efeito, da
sociedade anónima (denominação social)_____
concorrente ao "Primeiro concurso público para a atribuição de concessões para a
exploração de jogos de fortuna ou azar em casino" na Região Administrativa Especial de
Macau, declaro que, nos termos e para os efeitos da alínea 10) do n.º 1 do artigo 54.º do
Regulamento Administrativo n.º 26/2001, a sociedade acima referida renuncia a litigar
em qualquer foro especial por reconhecer e submeter-se à jurisdição exclusiva dos
Tribunais da Região Administrativa Especial de Macau para decidir sobre quaisquer
eventuais situações de conflitos de interesses.

Mais declara que, em conformidade com o disposto no artigo 100.º do
Regulamento Administrativo n.º 26/2001, aceita perder a favor da Região Administrativa
Especial de Macau o valor da caução para admissão a concurso bem como da caução,
prevista na alínea 2) do artigo 22.º da Lei n.º 16/2001, como garantia do exacto e pontual
cumprimento das obrigações legais e contratuais, caso viole o teor da presente
declaração, sem prejuízo, além do que decorre do n.º 2 do artigo 100.º do Regulamento
Administrativo n.º 26/2001, da responsabilidade civil, administrativa ou criminal que
possa estar subjacente à sua conduta.

Macau, aos _____ de _____ de _____

_____
(Assinatura(s) do(s) declarante(s))

[ forma de reconhecimento notarial ou, quanto a jurisdição na qual não seja possível obter
o reconhecimento notarial da assinatura, forma de reconhecimento da assinatura por parte
de autoridade pública competente, devidamente legalizado ]



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



## Anexo n.º 2

*(a que se refere a alínea 11) do n.º 7.1) do programa do concurso)*

Modelo de
## Declaração da concorrente comprometendo-se a acatar e cumprir todas as obrigações estabelecidas por lei, por regulamento ou por despacho, designadamente no despacho de abertura do concurso, bem como nas alterações posteriores referidas no artigo 32.º do Regulamento Administrativo n.º 26/2001

Eu, (nome)_____, na qualidade de [administrador(es) / representante legal], com poderes bastantes para o efeito, da sociedade anónima (denominação social) _____ concorrente ao "Primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino" na Região Administrativa Especial de Macau, declaro que, nos termos e para os efeitos da alínea 11) do n.º 1 do artigo 54.º do Regulamento Administrativo n.º 26/2001, a sociedade acima referida se compromete a acatar e cumprir todas as obrigações estabelecidas por lei, por regulamento ou por despacho, designadamente no despacho de abertura do concurso, do ordenamento jurídico da Região Administrativa Especial de Macau, incluindo as alterações complementares aos elementos que servem de base ao concurso que, nos termos do artigo 32.º do Regulamento Administrativo n.º 26/2001, se justifiquem por motivos de interesse público.

Macau, _____ de _____ de _____


_____
(Assinatura do(s) declarante(s))

[ forma de reconhecimento notarial ou, quanto a jurisdição na qual não seja possível obter o reconhecimento notarial da assinatura, forma de reconhecimento da assinatura por parte de autoridade pública competente, devidamente legalizado ]



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



<u>Anexo n.º 3</u>

*(a que se refere o n.º 10.5 do programa do concurso)*

Modelo de

Caução para admissão a concurso a prestar por depósito em dinheiro


MOP 1.000.000,00 (um milhão de patacas)


      Vai (nome)_____, com (sede ou escritório) em (localidade / país) _____, na (morada) _____, depositar na _____(sede, filial, agência, ou delegação) da (instituição de crédito que exerce funções de caixa de tesouro da Região Administrativa Especial de Macau a quantia de MOP 1.000.000,00 (um milhão de patacas) em dinheiro, como caução exigida para admissão ao concurso público para a atribuição de concessões para exploração de jogos de fortuna e azar em casino, para os efeitos do artigo 55.º e seguintes, e demais disposições relevantes aplicáveis, do Regulamento Administrativo n.º 26/2001. Este depósito fica à ordem do Governo da Região Administrativa Especial de Macau e destina-se a servir de caução para admissão ao concurso público para a atribuição de concessões para a exploração de jogo de fortuna e azar em casino, pelo que pode ser usada por este para fazer face a todas as despesas em que o mesmo haja incorrido com o programa do concurso, devendo o respectivo conhecimento ser remetido à Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, sita em Macau, na Avenida da Praia Grande, n.ºs 762-804, edifício "China Plaza", 21.º andar.


Macau, aos _____ de _____ de _____


[Assinaturas]



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

## Anexo n.º 4

*(a que se refere o n.º 10.5 do programa do concurso)*

### Modelo de
Caução de admissão a concurso prestado por garantia bancária

O Banco _____, com sede em _____, matriculado na Conservatória do Registo Comercial e Automóvel de Macau, com o capital social de _____, presta a favor do Governo da Região Administrativa Especial de Macau, garantia autónoma, à primeira solicitação, no valor de MOP 1.000.000,00 (um milhão de patacas), destinado a garantir o imediato pagamento de quaisquer importâncias exigidas pelo Governo da Região Administrativa Especial de Macau para reembolso de despesas em que este haja incorrido com o processo do concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, nos termos do n.º 4 do artigo 57º, do Regulamento Administrativo 26/2001.

O Banco obriga-se a pagar aquela quantia à primeira solicitação do Governo da Região Administrativa Especial de Macau sem que este tenha de justificar o pedido e sem que o primeiro possa invocar em seu benefício quaisquer meios de defesa relacionados com o pagamento das despesas inerentes ao processo do concurso atrás identificado.

O Banco deve pagar aquela quantia no dia seguinte ao do pedido, findo o qual, sem que o pagamento seja realizado, contar-se-ão juros moratórios à taxa para as operações activas mais elevada praticada pelo Banco, sem prejuízo de execução imediata da dívida assumida por este.

A presente garantia bancária autónoma ("first demand") não pode em qualquer circunstância ser denunciada, mantendo-se em vigor até à sua extinção, nos termos previstos na legislação aplicável.

Macau, aos _____ de _____ de _____

[Assinaturas]

澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



Anexo n.º 5

*(a que se refere o n.º 10.5 do programa do concurso)*

Modelo de

Caução para admissão a concurso prestado por seguro-caução

A Seguradora _____, com sede em _____, matriculada na Conservatória do Registo Comercial de _____, com o capital social de _____, presta a favor do Governo da Região Administrativa Especial de Macau e ao abrigo de contrato de seguro-caução celebrado com _____ (tomador do seguro), garantia à primeira solicitação, no valor de MOP 1.000.000,00 (um milhão de patacas) destinada a garantir o imediato pagamento de quaisquer importâncias exigidas pelo Governo da Região Administrativa Especial de Macau para reembolso de despesas em que este haja incorrido com o processo do concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, nos termos do n.º 5 do artigo 57º, do Regulamento Administrativo 26/2001.

A Seguradora obriga-se a pagar aquela quantia à primeira solicitação do Governo da Região Administrativa Especial de Macau sem que este tenha de justificar o pedido e sem que a primeira possa invocar em seu benefício quaisquer meios de defesa relacionados com o pagamento das despesas inerentes ao processo do concurso atrás identificado.

A Seguradora não pode opor ao Governo da Região Administrativa Especial de Macau quaisquer excepções relativas ao contrato de seguro-caução celebrado entre esta e o tomador do seguro.

A presente garantia, à primeira solicitação, não pode em qualquer circunstância ser revogada ou denunciada, mantendo-se em vigor até à sua extinção ou cancelamento, nos termos previstos na legislação aplicável.

Macau, aos _____ de _____ de _____

[Assinaturas]



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



## <u>Anexo n.º 6</u>
*(a que se refere a alínea 11) do n.º 12.1 do programa de concurso)*


### Modelo de
### Declaração em como a concorrente se obriga a explorar a concessão
### nos termos e condições propostos


      Eu, (nome)_____, na qualidade de [administrador(es) / representante legal], com poderes bastantes para o efeito, da sociedade anónima ___(denominação social)_____ concorrente ao "Primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino" na Região Administrativa Especial de Macau, declaro que, nos termos e para os efeitos da alínea 11) do n.º 1 do artigo 61.º do Regulamento Administrativo n.º 26/2001, a sociedade acima referida assume solenemente a obrigação de, caso lhe seja atribuída uma concessão para a exploração de jogos de fortuna ou azar em casino, explorar tal concessão nos termos e condições constantes da sua proposta de adjudicação, nesta se incluindo todas as propostas subsequentes.


Macau, aos _____ de _____ de _____


_____
(Assinatura(s) do(s) declarante(s))

[ forma de reconhecimento notarial ou, quanto a jurisdição na qual não seja possível obter o reconhecimento notarial da assinatura, forma de reconhecimento da assinatura por parte de autoridade pública competente, devidamente legalizado ]



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



Government of the Macao Special Administrative Region, People's Republic of China

Committee for the First Call for Tender to Grant Concessions for the Commercial
Operation of Games of Chance in Casino

# PROGRAMME OF THE FIRST CALL FOR TENDER TO GRANT CONCESSIONS FOR THE COMMERCIAL OPERATION OF GAMES OF CHANCE IN CASINO

Macao, 2nd November 2001

i:\pedrojor\casino\governme.doc\17/11/01\v.11



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



# PROGRAMME OF THE FIRST CALL FOR TENDER TO GRANT CONCESSIONS FOR THE COMMERCIAL OPERATION OF GAMES OF CHANCE IN CASINO

## 1. Object and method of the call for tender

1.1 The Call for tender to grant concessions for the commercial operation of casino games of chance, hereafter referred to as·"Call for Tender", and opened by the Chief Executive "Despacho" no. 217/2001, aims to grant 3 concessions to operate commercially games of chance in casino, and is governed by Law no. 16/2001, by "Regulamento Administrativo no. 26/2001, by Chief Executive "Despacho" no. 215/2001, by Chief Executive "Despacho" no. 216/2001, by Chief Executive "Despacho" no. 217/2001, and by other applicable regulations. This "Programme of the first call for tender to grant concessions for the commercial operation of casino games of chance" was developed in accordance with the latter rulings, and is hereafter referred to as "Tender Programme".

1.2 The Call for Tender follows the simple model of calls for tender and includes the minimum number of two phases. One phase is allocated to the tendering of bids, followed by one or more consecutive phases of consultation with the tender applicants, essentially designed to appraise the bids tendered, and also to tender and appraise new bids.

## 2. Entities

2.1 The entity responsible for granting concessions is the Macao Special Administrative Region.

2.2 The entity responsible for managing the call for tender is the Committee for the First Call for Tender to Grant Concessions for the Commercial Operation of Casino Games of Chance, hereafter referred to as "Tender Committee", created by



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



Chief Executive "Despacho" no. 216/2001. The headquarters, telephone number, facsimile number and electronic address of this body are as follows:

Avenida da Praia Grande, no.s 762-804, edificio "China Plaza", 21° Andar, Macao

Fax: (++853) 370296

Electronic Address (e-mail): concurso@dici.gov.mo
Tel.: (++853) 3973333

## 3. Basic guidelines for the call for tender

3.1 The basic guidelines for the call for tender are available to interested parties by consultation with the tender committee, based at the address mentioned above in item 2.2, from Monday to Friday between 09:00 and 13:00 and between 14:30 and 17:45, from the date upon which the "despacho" is published, opening the call for tender (namely 2nd November 2001) until the provision awarding of concessions.

3.2 Interested parties may obtain authenticated copies of the basic guidelines for the call for tender at cost price.

3.3 The basic guidelines for the call for tender, including those stipulated by the "despacho" opening the call for tender, may be subject to additional alteration in the interests of the public, without affecting the right to equal treatment afforded to all tender applicants entering the phase to be altered.

## 4. Clarifying doubts concerning the interpretation of the basic guidelines for the call for tender

4.1 Any interested party may request explanation from the committee of any item considered necessary to the presentation of a bid, namely, any items considered necessary to the correct understanding and interpretation of the basic guidelines for the call for tender, *until 14th November 2001.*

i:\pedrojor\casino\governme.doc\17/11/01\P.33



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



4.2 Any explanations requested after the deadline mentioned in the previous item will not be satisfied unless the tender committee considers them to be of high interest to the regulation of the call for tender.

4.3 Explanations requested, of the committee will be given by the deadline of November 26th 2001.

4.4 Failure on the part of the tender committee to give explanations within the deadline mentioned in the previous item, may justify an extension by an equal period of the bid presentation deadline, providing this is requested by any interested party, and in which case all interested parties may benefit.

4.5 The requests for explanation considered to be opportune, and respective responses, may be assembled by the tender committee, which may then declare them part of the standard regulations of the call for tender.

## 5. Notification

5.1 On tendering their bids, tender applicants must indicate their address, telephone and facsimile numbers for notification purposes.

5.2 Tender applicants must previously inform the committee of any changes of address, telephone or facsimile numbers, otherwise notification given using the originally declared address, telephone or facsimile numbers will be considered valid.

5.3 For notification purposes, tender applicants not based in the Macao Special Administrative Region, but who have been authorised to tender bids under the terms of item 6.2 mentioned below, must indicate a representative based in Macao, who will remain in the Region during the period of the call for tender. This representative will be contactable by the address, telephone and facsimile numbers declared by the tender applicant.

5.4 Notification is given under the terms of article 40 of the "Regulamento Administrativo" no. 26/2001.

i:\pedrojor\casino\governme.doc\17/11/01\p.44



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



### 6. Legal status of tender applicants

6.1 The call for tender will only admit limited companies established in the Macao Special Administrative Region, whose exclusive capital objective is to operate commercially games of chance, or games of other types, in casinos.

6.2 Exceptional cases may be admitted to the call for tender, of commercial entrepreneurs of known reputation, who otherwise do not fulfil the requirements established in the previous item, as long as they commit themselves to establishing a limited company to fulfil those requirements in the Macao Special Administrative Region, under the terms and deadlines stipulated in the Chief Executive "despacho". For these purposes, commercial entrepreneurs should submit a duly supported request for authorisation to the Chief Executive as soon as possible, to be handed in to the tender committee.

### 7. Obligatory documents proving ability to tender

7.1 Without compromising the demands made by the "Regulamento Administrativo" no. 26/2001 or by this document, tender applicants are required to present the follow documents:

1) A declaration of entry to the call for tender, which should include the tender applicant's identity, headquarters, branches, identification of the directors and other decision-making powers, commercial registration at the time of founding and subsequent alterations;

2) Indication of the address, telephone and facsimile numbers of the tender applicant for notification purposes, as well as identification of the representative of the tender applicant mentioned above in item 6.2 of this programme of the call for tender;

3) Documentation proving that the admission bond for the call for tender has been paid;




澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

4) Documentation proving that neither the tender applicant, nor any company belonging to the tender applicant's group, namely the group's holding company, nor shareholders in the tender applicant's company with a stake equal to or above 5% of the company's share capital, nor any of its directors, are indebted to the Macao Special Administrative Region due to payments and taxes incurred over the last 5 years, as registered with the Finance Administration Service;

5) Documentation proving that the tender applicant, any companies belonging to the tender applicant, namely the group's holding company, the shareholder's with a stake equal to or above 5% of the company's share capital, and the company's directors, all have regularised situations concerning their contributions to the social security of the Macao Special Administrative Region, as registered with the Social Security Fund;

6) Due copies of the "Form on the revelation of information about tender applicants or concession holders", the "Form on the revelation of personal information about shareholders and directors of the tender applicants/concession holders" and the "Declaration authorising the revelation of information", which, respectively, constitute Appendices I to III of the "Regulamento Administrativo" no. 26/2001;

7) Copies of the management report and accounts from the board of directors, statements of opinion from the fiscal board and the external auditors as established by article 19 of the "Regulamento Administrativo" no. 26/2001;

8) A declaration stating a complete list and identification of companies belonging to the same group as the tender applicant, of those companies closely linked to the tender applicant, of shareholders with a stake of 5% or higher in the tender applicant's company, of its directors, including the proposed delegate director, and its key position employees of the casino; in the event that the tender applicant is authorised to tender a bid before having established a limited company in the Macao Special Administrative Region, the tender applicant must inform the committee of the elements likely to be responsible for founding the company to be established, and must also notify the committee of any alterations or updates to which this information is subsequently subjected;





澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

9) Appraisal and risk reports concerning the tender applicant's company, the main holding body of the tender applicant's company, the shareholders with a stake of 5% or higher in the tender applicant's company, and the directors of the company;

10) A declaration renouncing the right to a special presiding court, and submission to the applicable law within the Macao Special Administrative Region, under the terms of the model outlined in Appendix 1 to this programme for the call for tender;

11) A declaration obliging the tender applicant to follow and fulfil all duties imposed on the tender applicant by law, by "regulamento" or "despacho", namely in the "despacho" opening the call for tender, as well as alterations later established by article 32 of the "Regulamento Administrativo" no. 26/2001, under the terms of the model outlined in Appendix 2 to this programme for the call for tender;

12) Other information and documentation proving compliance with the requirements imposed by law or by "despacho".

7.2 The documents mentioned in points 1), 2), 8), 10) and 11) of the previous item are to be signed by a legal representative or by the directors of the tender applicant's company. With the signature and quality duly authenticated by a notary, in the cases of point 1) and 8), these documents must declare, by word of honour, the correct, current and truthful nature of the data and information contained within them.

7.3 The documents mentioned in points 3) to 5), 7) and 9) of item 7.1 above, are to be accompanied by a declaration, under the terms of which the tender applicant declares, by word of honour, that the aforementioned documents are originals, or authenticated copies in the case of the documents mentioned in point 7), signed by a legal representative or by the directors of the tender applicant's company, and with the signature and quality duly authenticated by a notary.

i:\pedrojor\casino\governme.doc\17/11/01\P.77



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

7.4 In the documents mentioned in point 6) of item 7.1 above, the signatures of those stating their declaration are subject to verification by witness of a notary. In the event that the signatory resides in a jurisdiction, which does not permit the witness of a notary to verify the signatures, this verification should be carried out by the duly invested competent public authority.

7.5 In the event of falsification or removal of documents or technical notes, or any other action considered to be criminal, the public prosecution office will be notified of the event and criminal procedure will begin.

7.6 In the event outlined in the previous item, the tender applicant will furthermore be eliminated from the call for tender, or if the concession has already been awarded to this tender applicant, the award will be considered null and void.

## 8. Competition

Agreements and practice aiming to or resulting in the obstruction, limitation or falsification of competition will result in the exclusion of the tender applicant in question from the call for tender.

## 9. Risk Assessment Reports

9.1 The risk assessment reports should be produced by firms with a reputation known internationally, locally or externally, under the terms of item no. 4 of article 19 and section 16 of Appendix I to the "Regulamento Administrativo" no. 26/2001.

9.2 Each entity obliged to submit a risk assessment report, when choosing a firm with an international reputation, must previously request the acquiescence of the Government, through the Secretary for Economy and Finance, except in the case of the following firms:

- Dun & Bradstreet;

- Standard & Poors; or

- Moodys.

i:\pedrojor\casino\governme.doc\17/11/01\P.88



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



9.3 The risk assessment reports mentioned in the "Regulamento Administrativo" no. 26/2001 and in this programme for the call for tender, must contain information and data regarding the identification of the person or company and respective leaders of its social bodies, any legal action taken by the company or in which the company is involved, the company's economic and financial situation, including any relevant loans or financial operations and an estimation of the value of the assets and rights owned by the company, under the terms established by section 16 of Appendix I to the "Regulamento Administrativo" no. 26/2001.

Merely as an example, the Internet address cited below is an area where interested parties may gain access to a model of the type of risk assessment evaluation required:

http://www.dnbasia.com/hk/english/services/credit/samples/dnbreport_sample.html

## 10. Admission bond for the call for tender

10.1 Each tender applicant must pay an admission bond to enter the call for tender, which may be used to bear all the expenses incurred by the Government during this call for tender, in proportion to the responsibility of each tender applicant, regarding the procedures to verify the reliability and financial capacity of the tender applicant's company.

10.2 The amount of the admission bond is one million Patacas, under the terms of the Chief Executive "Despacho" no. 217/2001.

10.3 The Chief Executive may request an extension of the initial amount of the admission bond if this proves necessary.

10.4 If the admission bond is paid using banking guarantee or insurance bond, the tender committee may request a replacement, in the event that the entity responsible suffers a reduction in its financial capabilities, resulting in the impossibility of fully or partly guaranteeing the financial commitments assumed.

10.5 The admission bond to enter the call for tender may be paid by capital deposit, by banking guarantee or by insurance bond, under the terms of the models



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



which constitute Appendices 3, 4 and 5 of this programme for the call for tender.

10.6  All expenses resulting from the payment of the admission bond or claiming the value of the bond will be borne by the tender applicant.

10.7  Admission bonds paid by capital deposit will be effected through a credit institution, which carries out treasury functions for the Macao Special Administrative Region (Bank of China and Banco Nacional Ultramarino, S.A.), made out to the Government.

10.8  Admission bonds paid by banking guarantee will be carried out through a credit institution legally authorised to operate in the Macao Special Administrative Region, and may not be subject to additional conditions or terms.

10.9  Admission bonds paid by insurance bond will be carried out by an insurance company legally authorised to carry out this insurance activity in the Macao Special Administrative Region, and may not be subject to additional conditions or terms.

10.10  Rejected tender applicants may request the reimbursement of the amount deposited as an admission bond to the call for tender, or the cancellation of the banking guarantee, or the annulment of the insurance bond, as soon as the tender applicant receives notification that the tender applicant has not been awarded concessions, or receives definitive notification of non-admission to the call for tender. In these cases the Government should carry out the necessary procedures for this reimbursement within a period of 20 days.

10.11  The value of the bond is considered to be the property of the Macao Special Administrative Region if the tender applicants chosen do not present candidature for the next phase, or if the bid is not considered due to a fault attributed to the tender applicant, or also if the contract is not signed by the tender applicant, after having been awarded the concessions, due to a fault attributed to the tender applicant.

## 11. The bid



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



11.1 The bid is the document, through which the tender applicant informs the government of the tender applicant's wish to assume the contract, and of the conditions under which the tender applicant is willing to assume the contract.

11.2 The bid must be signed by legal representatives or by the directors of the tender applicant's company, with the signatures and quality duly authenticated by a notary. When signed by a legal representative, the bid must be accompanied by the document of procuration conferring the necessary powers upon the representative, or a duly authenticated certified copy thereof.

11.3 The amounts stated in the bid, namely the amount of the quote, must always be indicated in figures and in written form, whereby the amount stated in written form takes precedence in the event of discrepancy between the two.

11.4 Simple, alternative or subsidiary bids may be tendered.

11.5 Alternative or subsidiary bids must be tendered in a clear and unambiguous manner, must contain all the elements necessary for the bid to be perfectly appraised, and must be produced in such a way as to facilitate comparison.

## 12. Documents and elements that constitute the bid

12.1 As well as expressing the wish of the tender applicant to assume the contract, as mentioned in item 11.1 above, the bid is made up of the following documents:

  1) Identification of the tender applicant

  2) Amount of the overall quote proposed by the tender applicant, with distinction between the fixed part and the variable part;

  3) Amount of contribution proposed by the tender applicant for purposes of the provisions mentioned in point 7) of article 22 of Law no. 16/2001;

  4) Amount of contribution proposed by the tender applicant for purposes of the provisions mentioned in point 8) of article 22 of Law no. 16/2001;



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



5) A report describing experience managing and commercially operating games of chance in casinos or in other pertinent areas;

6) A descriptive and justifying report of the investment proposals, regardless of their nature, of relevant interest to the Macao Special Administrative Region, that the tender applicant proposes to carry out;

7) A declaration, for the purposes established in chapter IV of the "Regulamento Administrativo" no. 26/2001, made by the third party or parties who assume this obligation, or who guarantee the financing of these investments and obligations proposed by the tender applicant, or, alternatively made by the shareholders with a stake of 5% or higher of the company's share capital, who, under the terms of point 2), item no. 1 of article 18 of the "regulamento administrativo" mentioned above, assume the obligation or guarantee the financing of the investments and obligations proposed by the tender applicant;

8) A descriptive and justifying record of the proposals made by the tender applicant to improve the areas and sites where the casinos will operate, with a view to diversifying the tourist product on offer;

9) Reference to the relevance of the bid to the development of employment in the gaming industry, as well as to the professional training of the respective professional workers;

10) Alternative or subsidiary bids, if required;

11) A declaration stating how the tender applicant will assume the obligation to operate the concessions under the terms and conditions proposed, under the terms of the models which constitute appendix no. 6 to this programme for the call for tender;

12) Other documents or elements considered relevant by the tender applicant to the analysis of the bid, including technical appendixes considered necessary to justify any of the documents or elements mentioned in the points above.





澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

12.2  The document mentioned in point 7) of the previous item is to be accompanied by a declaration, by which the tender applicant states that the documents are original, signed by a legal representative or by directors of the tender applicant's company, with the signatures and quality duly authenticated by a notary.

12.3  In the event of falsification or removal of documents or technical notes, or any other action considered to be criminal, the public prosecution office will be notified of the event and criminal procedure will begin.

12.4  In the event outlined in the previous item, the tender applicant will furthermore be eliminated from the call for tender, or if the concession has already been awarded to this tender applicant, the award will be considered null and void.

## 13. Languages

13.1  The <u>documents proving the tender applicant's capacity</u> to present a bid, mentioned in item 7 above, should be produced in one of the official languages of the Macao Special Administrative Region; where these documents were originally produced in another language, the tender applicant must accompany the documents with a certified translation in one of the official languages of the Macao Special Administrative Region, a version which will take precedence for all and any purposes.

13.2  If the language of the documents mentioned above is originally English, elements presented in this language do not require translation into one of the official languages of the Macao Special Administrative Region, unless the full or partial translation is specifically requested by the tender committee.

13.3  must be produced in or translated into one of the official languages of the Macao Special Administrative Region, with the exception of the appendixes presented under the terms of point 12) of item 12.1 above.

13.4  The bid and the documents which constitute the bid, including the appendixes presented under the terms of point 12) of item 12.1 above, may be produced in English. In this case, the tender committee may request the full or partial certified translation of these documents into one of the official languages of the Macao Special Administrative Region.



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



13.5  When the appendices presented under the terms of point 12) of item 12.1 above are produced in a non-official language which is not English, these documents must be accompanied by a certified translation into one of the official languages of the Macao Special Administrative Region, a version which takes precedence for all and any purposes.

## 14. Formal Requirements of the elements to be presented

14.1  All elements to be presented, such as requirements, proposals, declarations and documents which make up the bid, should be handwritten, typed of printed by computer without erasures, markings or crossed words, unless this is entirely unavoidable.

14.2  Where documents contain more than one sheet, the pages should be numbered, the first page should indicate the total number of pages, and the sheets should be bound in such a way as to impede the separation or addition of extra sheets.

14.3  The documents mentioned in item 7.1 above should be presented in transparent covers, closed and sealed. On the front of these covers the word "Documentos" should be written, indicating the name or corporate title held by the tender applicant and indication that the document refers to the call for tender for the granting of concessions for the commercial operation of games of chance in casino.

14.4  The bid and the documents mentioned in item 12.1 above should be presented in transparent covers, with the characteristics mentioned in the previous paragraph. On the cover should be written the word "Proposta", indicating the name or the corporate title of the tender applicant and an indication that the document refers to the call for tender for the granting of concessions for the commercial operation of games of chance in casino.

14.5  The transparent covers mentioned above must in turn be enclosed by a third cover, also transparent, closed and sealed, entitled "Invólucro exterior", indicating the name or corporate title held by the tender applicant, and an indication that the document refers to the call for tender for the granting of



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



concessions for the commercial operation of games of chance in casino. This should be handed in to the tender committee for which a receipt will be given.

14.6 The receipt of the transparent covers mentioned above will be registered by the tender committee, noting the date and time of receipt of the above, the number of presentation order and the identity and address of the persons delivering the documents, and the "Invólucro exterior" will be sealed and closed in the act of handing the bid in to the committee.

14.7 The documents mentioned in points 7.1 and 12.1 above, as well as the bid, should be presented in duplicate, each copy being presented in accordance with the paragraphs above. On the cover of the original document, the word "Original" should be written clearly and visibly. In the event of discrepancies between the original and the copy, the original takes precedence.

## 15. Deadline for tendering bids

Bids should be tendered by 17:45 on *7th December 2001* to the tender committee.

## 16. The act of opening the bids

16.1 The act of opening the bids, which does not involve any appraisal of their merit, does not constitute a public act.

16.2 The act of opening the bids will take place upon assembly of the tender committee, and will take place in the five days following the closing date for tendering bids, presided over by the president of the committee.

16.3 Other parties may attend the opening of the bids, if duly authorised by the president of the committee, and will be bound to confidentiality.

16.4 The act of opening the bids will be attended by a representative of the public prosecution office, named for this duty by the regional public prosecutor.

16.5 Unless otherwise dictated by the tender committee, the act of opening the bids will be continuous and will include as many sessions as necessary to complete all the formalities.

i:\pedrojor\casino\governme.doc\17/11/01\p.1515



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



16.6 If the act of opening the bids cannot be completed in one single session, or if any session has to be suspended, the documentation contained in the opened transparent covers and the transparent covers still to be opened will be grouped together, identified, and will be entrusted to one of the members present, to be indicated by the president of the committee.

16.7 The events of the act of opening the bids will be recorded in minutes by the secretary of the tender committee, which will be signed by all those present.

16.8 If the act of opening the bids comprises more than one session, independent minutes will be taken for each session.

16.9 The tender applicants may, on request, obtain a copy of the minutes mentioned in the preceding paragraphs, for the purposes of requesting claims or administrative resources.

## 17. Proceedings for the act of opening bids

17.1 The act of opening the bids will begin by producing a list of all tender applicants, in the order that their bids were tendered, which must be attached to the minutes mentioned in point 16.7 above.

17.2 The exterior coverings will then be opened, in the order of the list mentioned in the previous paragraph, extracting from each one the two documents, which they should contain, and proceeding to open, in the same order, the covers, which display the words "Documentos".

17.3 The documentation contained in the covers displaying the word "Documentos" will be numbered and initialled by the secretary of the tender committee, or, in the secretary's absence, by the person responsible named by the president of the tender committee.

## 18. Decision regarding the capacities of the tender applicants

18.1 Once the requirements of the previous section have been fulfilled, the tender committee will proceed to formally verifying the documents presented by the



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



tender applicants, and will decide upon their capacity to be admitted to the subsequent phases, or otherwise, giving reasons for the latter refusal of admission.

18.2 Without altering the requirements of the previous sections, the following tender applicants will not be admitted to the next phase:

1) Tender applicants who have not submitted all obligatory documents regarding capacity to tender bids, mentioned in point 7.1 above; or
2) Tender applicants who have not submitted documents in one of the official languages of the Macao Special Administrative Region, or in accordance with point 13.1 or 13.2 above.

18.3 Tender applicants whose documentation shows certain non-essential omissions may, conditionally, be admitted, on the condition that these irregularities are rectified within the period established for this purpose by the tender committee, otherwise their admission will be refused.

18.4 Tender applicants who, for reasons outside their control, have not submitted the documents established by items 4), 5) and 9) of point 7.1 above, but whose omission has been duly justified and accepted by the tender committee, may, conditionally, be accepted, providing that they submit these documents within the deadline established for this purpose by the tender committee, otherwise their admission will be refused.

18.5 Once the documents proving the tender applicant's capacity have been established, the tender committee will then draw up a comparative chart of these capacities, with mention of any decision about each of the tender applicants, as well as any other elements which have been decided upon.

18.6 The tender applicants will be notified of the decision mentioned in the previous paragraph as soon as possible, and this notification should include the elements mentioned in no. 3 of article 69 of the "Regulamento Administrativo" no. 26/2001.

18.7 Any tender applicant may contest non-admission or conditional admission, to be presented within a period of 3 (three) days from notification, without affecting

i:\pedrojor\casino\governme.doc\17/11/01\p.1717





澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

the provisions made by the final part of no. 2 of the "Regulamento Administrativo" no. 26/2001.

18.8  Tender applicants wishing to contest may examine and obtain copies of the elements mentioned in no. 2 of article 69 of the "Regulamento Administrativo" no. 26/2001.

18.9  The contestation must be formulated and presented with a copy, under the terms and for the purposes of the provisions made in article 39 of the "Regulamento Administrativo" no. 26/2001.

18.10  The contestation does not suspend the process, in accordance with no. 3 of article 38 of the "Regulamento Administrativo" no. 26/2001.

**19. Opening of the covers containing proposals**

19.1  After the decision has been made concerning the capacity of the tender applicants, the covers containing the indication "Proposals" will then be opened, in the order of the aforementioned list.

19.2  The documentation in the covers will be numbered and initialled in accordance with the provisions made in point 17.3 above.

19.3  The tender committee will then proceed to the formal examination of the proposals and of the documents, which constitute them, and decide upon the admission of the tender applicants.

19.4  Proposals will be excluded if:

1) They do not contain all the documents mentioned in no. 12.1 above;

2) They are not produced in accordance with point 13.3 or 13.4 above; or

3) They result in illicit practice, which harms the tender.

19.5  Proposals may be admitted, conditionally, if they present certain non-essential omissions, providing that these irregularities are rectified within the period



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



established for this purpose by the committee, otherwise their admission will be refused.

19.6 Once the requirements of the previous paragraphs has been fulfilled, the tender committee will draw up a comparative chart of the proposals presented by the tender applicants under the terms of no. 11 and no. 12 above, including any decisions taken about any tender applicants or any other information considered relevant.

19.7 The tender applicants will be notified of the decision mentioned in the previous paragraph, whereby the provisions of point 18.6 apply, with the necessary adaptations.

19.8 Interested parties may contest the decision to refuse admission or to grant conditional admission of their proposals. The provisions of points 18.7 to 18.10 apply to this contestation, with the necessary adaptations.

19.9 Once the decisions have been made regarding the admission, the act of opening the bids is terminated.

## 20. Appeal against the tender committee's decision

20.1 Any interested party may appeal to the Chief Executive against the decisions taken by the tender committee, under the terms of the provisions made by the "Regulamento Administrativo" no. 26/2001.

20.2 As regards the period reserved for administrative appeal, the provisions of no. 4 of article 38 of the "Regulamento Administrativo" no. 26/2001 apply.

20.3 Administrative appeal does not suspend normal procedures, in accordance with no. 3 of article 38 of the "Regulamento Administrativo" no. 26/2001.

## 21. Consultation

21.1 The act of opening the bids will be followed by one or more phases of consultation, essentially designed to appraise the proposals initially submitted,

i:\pedrojor\casino\governme.doc\17/11/01\P.1919



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

to present subsequent proposals and appraise them, and for the negotiations referred to by the first part of no. 3 of article 11 of Law no. 16/2001.

21.2  There is no maximum time limit for the consultation phase.

21.3  The process of verifying the reliability and the adequate financial capacities of the tender applicants will be governed by the Gaming Control Board, under the terms of the "Regulamento Administrativo" no. 26/2001, namely article 12 thereof.

21.4  For the purpose of carrying out the process of verification mentioned in the previous paragraph, the Gaming Control Board may use the services of specialised companies and collaborate with any other administrational service.

21.5  The tender committee may decide on the exclusion of one or more tender applicants at the end of each phase of consultation, for reasons based on the proposal, on the reliability or the financial capacity of the tender applicant.

21.6  The government may decide on the re-admission of tender applicants previously excluded in earlier phases, if such an option proves justified in the interests of the public within the Macao Special Administrative Region, and the decision of which previously rejected tender applicants to re-admit should be based on those which present the most advantageous conditions.

## 22. Negotiations

22.1  During each phase of consultation, the tender committee may invite the tender applicants, under the terms of the provisions made by article 40 of the "Regulamento Administrivo" no. 26/2001 to negotiate the conditions presented in the proposal.

22.2  Tender applicants not attending consultation sessions to which they have been invited may be excluded from the call for tender and subsequently lose the value of the admission bond which will remain the property of the Macao Special Administrative Region, except in cases where the tender committee considers the absence to be duly justified.

i:\pedrojor\casino\governme.doc\17/11/01\p.2020



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



22.3  Negotiations may take place individually, with each tender applicant, or together, including some or all tender applicants.

22.4  The negotiations will take place in the presence of three selected members of the tender committee, one of whom will chair the session.

22.5  The tender committee may fix, for each negotiation session, a maximum number of members who may constitute the tender applicant's delegation.

22.6  At the beginning of each negotiation session, the head of the tender applicant's delegation will identify himself/herself as such.

22.7  The delegations representing the committee and representing the tender applicant may include specialists in the areas to be negotiated.

22.8  The minutes of each negotiation session will be taken, and finally signed by all present.

22.9  The minutes will contain, at least, references to the session, the name of the negotiators present and the specialists accompanying them, as well as a summary of the positions taken.

22.10  The minutes and the documentation will be considered reserved while the negotiation phases continue and for a subsequent period to be determined by the Government.

22.11  The negotiations may take place at any phase of the call for tender, until the moment of signing the contracts to award concessions.

## 23. Proposals

23.1  During each of the consultation phases, the tender committee may invite the tender applicants to present one or more proposals as subsequent to the original proposal.

23.2  During the same phase of consultation, the tender applicants may present more than one subsequent proposal.

i:\pedrojor\casino\governme.doc\17/11/01\P.2121



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



23.3  Proposals subsequent to the initial proposal do not need to include the same documents as the initial proposal, apart from those documents necessary to the perfect appraisal of that proposal. Proposals should be produced using the same system as the initial proposal in such a way as to facilitate comparison.

23.4  Subsequent proposals may partially, expressly, be based on the initial proposal, and in this case the modifications presented in the revised proposal should be clearly and unambiguously stated.

23.5  Subsequent proposals should be signed by a legal representative or by the directors of the tender applicant's company, with the signatures and quality authenticated by a notary.

23.6  Subsequent proposals should be produced in accordance with the terms of no.s 13.3 to 13.5 above.

23.7  Subsequent proposals should be presented in a transparent cover, closed and sealed, displaying the word "Proposta Subsequente no.____", indicating the name or corporate title held by the tender applicant and an indication that the proposal refers to the call for tender for the attribution of concessions for the commercial operation of games of chance in casinos.

23.8  The transparent cover mentioned in the previous paragraph should be enclosed in a second transparent cover with the same characteristics, entitled "Invólucro exterior", bearing the name or corporate title of the tender applicant and an indication that the proposal refers to the call for tender for the attribution of concessions for the commercial operation of games of chance in casinos. This document will then be handed in to the tender committee and a receipt will be given.

23.9  The receipt of the transparent covers mentioned in the previous paragraph should take place in accordance with the provisions made in point 14.6 above.

## 24. Report with justification

i:\pedrojor\casino\governme.doc\17/11/01\P.2222



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



24.1  After the phase or phases of consultation and negotiation, the tender committee will produce a report with respective justification, which must contain a summary of the procedures followed and the decisions made during this phase, as well as an analysis of the results obtained from the negotiations with each tender applicant, an appraisal of the bids presented, and the respective classification of the tender applicants in accordance with the criteria established in article 78 of the "Regulamento Administrativo" no. 26/2001.

24.2  Under the terms of the provisions made in no. 4 of article 75 of the "Regulamento Administrativo" no. 26/2001, the classification of the tender applicants will include, as well as the three tender applicants selected, three rejected tender applicants classified equally based on the criteria established in article 78 of the "Regulamento Administrativo" no. 26/2001.

24.3  The report referred to in point 24.1 above must conclude with the proposal to select three tender applicants whose proposals, as a result of the phase or phases of consultation and negotiation, offer the most advantageous conditions to the Macao Special Administrative Region.

## 25. Provisional Awarding

25.1  The act of provisionally awarding the contracts is registered through a Chief Executive "Despacho", based on the report with justification mentioned in point 24 above, and which involves the selection of three tender applicants.

25.2  The tender applicants chosen are notified of provisional awarding within a period of 15 (fifteen) days.

25.3  The tender committee will also inform the rejected tender applicants of provision awarding within a period of 15 days.

25.4  On being notified of provisional awarding, each tender applicant chosen should pay, within the period established for this purpose, the bond referred to in item 2) of article 22 of Law no. 16/2001, as a guarantee of exact and punctual fulfilment of the legal and contractual duties assumed, otherwise the awarding will be annulled under the terms of article 83 of the "Regulamento Administrativo" no. 26/2001.

i:\pedrojor\casino\governme.doc\17/11/01\p.2323



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



25.5  Without altering the provisions made in the previous paragraph, the Government, through the tender committee, may further demand that the banking guarantees be paid, referred to in no. 3 of article 20 and no. 5 of article 27 of Law no. 16/2001, and in no.s 2 to 5 of article 84 of the "Regulamento Administrativo" no. 26/2001.

25.6  In paying the bond referred to in item 2) of article 22 of Law no. 16/2001, as a guarantee of exact and punctual fulfilment of the legal and contractual duties assumed, the provisions established in article 87 of the "Regulamento Administrativo" no. 26/2001 must be followed.

25.7  Once notified of provisional awarding, and within an established period, the tender applicants must prove to the tender committee that a share capital of no less than 200 million patacas is fully realised in capital and deposited in a local credit institution or branch or subsidiary of a credit institution authorised to operate in the Macao Special Administrative Region, otherwise the provisional awarding may be annulled, under the terms of article 83 of the "Regulamento Administrativo" no. 26/2001.

25.8  Before the act of awarding the contracts, the tender applicants will be presented with draft copies of their respective contracts for the awarding of concessions, and have a period of 5 (five) days in which to consider the documents, under the terms of articles no. 80 and 81 of the "Regulamento Administrativo" no. 26/2001.

## 26. Definitive Awarding

26.1  The act of awarding the contracts is registered through a Chief Executive "Despacho", and consists in choosing three tender applicants with whom contracts will be awarded to grant concessions to operate commercially games of chance in casino.

26.2  The Chief Executive "Despacho" mentioned in the previous paragraph is produced based on the report and justification emitted by the tender committee, which essentially confirms the verification that the tender applicants, chosen in the act of provisional awarding, have fulfilled the duties established by no.s 25.4



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



to 25.8 mentioned above, and has duly notified the tender applicants as regards point 25.2 and 25.3 above.

## 27. Contracts of concession

When the draft copies of the contracts of concession have been approved, under the terms of the provisions established by articles 80 and 81 of the "Regulamento Administrativo" no. 26/2001, and the act of awarding the contract has been fulfilled as referred to in the previous point, the contracts of concession will be signed between the Macao Special Administrative Region, represented by the Government, and each one of the successful tender applicants, under the terms of articles 88 to 91 of the "Regulamento Administrativo" no. 26/2001.



澳門特別行政區政府
Governo da Região Administrativa Especial de Macau



## Appendix no. 1

*Referred to by item 10) of no. 7 of the programme for the call for tender*

Model of declaration to renounce special presiding court and submission to
applicable law in the Macao Special Administrative Region

    I, (name) _____, in my capacity as
[director(s) / legal representative], with sufficient powers vested in me to carry out this
act, limited company (corporate title) _____
_____ tender applicant in the "First call for tender to grant concessions for the
commercial operation of games of chance in casinos" in the Macao Special
Administrative Region, do declare that, under the terms and for the purposes of item 10),
no. 1 of article 54 of the "Regulamento Administrativo" no. 26/2001, the company
mentioned above does hereby renounce litigation in any special presiding court, and
recognise and submit to the exclusive jurisdiction of the Courts of the Macao Special
Administrative Region to pronounce on eventual cases of conflicts of interests.

    The company further declares that, in accordance with the provisions made by
article 100 of the "Regulamento Administrativo" no. 26/2001, it accepts the loss of the
value of the admission bond to the call for tender, which will remain the property of the
Macao Special Administrative Region, as well as the loss of the bond established by item
2), article 22 of Law no. 16/2001, as the guarantee of exact and punctual fulfilment of
legal and contractual duties, in the event that the principles of the present declaration are
violated by the Declarant. This will not affect the civil, administrative or criminal
responsibility, which may be involved in the actions of the company, as well as the
provisions made by no. 2, article 100 of the "Regulamento Administrativo" no. 26/2001.

Macao, _____(date)


_____
Signature(s) of Declarant(s)


[Authentication of notary, or, in the case of the jurisdiction not allowing authentication of
signature by notary, authentication by competent public authority, duly legalised.]

i:\pedrojor\casino\governme.doc\17/11/01\2626




澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

# Appendix no. 2

*(Referred to by item 11) of no. 7.1 of the programme for the call for tender)*

Model of tender applicant's declaration to accept and fulfil all duties established by law, by "regulamento" or by "despacho", namely in the "despacho" opening the call for tender, as well as in posterior alterations mentioned in article 32 of the "Regulamento Administrativo" no. 26/2001

     I, (name) _____, in my capacity as [director(s) / legal representative], with sufficient powers vested in me to carry out this act, limited company (corporate title) _____ _____ tender applicant in the "First call for tender to grant concessions for the commercial operation of games of chance in casinos" in the Macao Special Administrative Region, do declare that, under the terms and for the purposes of item 10), no. 1 of article 54 of the "Regulamento Administrativo" no. 26/2001, the company mentioned above does hereby commit itself to accept and fulfil all the duties established by law, by "Regulamento" or by "Despacho", namely in the "Despacho" opening the call for tender, under the jurisdiction of the Macao Special Administrational Region, including additional alterations to the basic guidelines of the call for tender, which, under the terms of article 32 of the "Regulamento Administrativo" no. 26/2001, are justified in the interests of the public.

Macao, _____(date)

_____
Signature(s) of Declarant(s)

[Authentication of notary, or, in the case of the jurisdiction not allowing authentication of signature by notary, authentication by competent public authority, duly legalised.]

i:\pedrojor\casino\governme.doc\17/11/01\P.2727



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



## Appendix no. 3

*(Referred to by point 10.5 of the programme for the call for tender)*

Model of admission bond to be paid by capital deposit


MOP 1,000,000.00 (one million patacas)


    (name)_____, based in (headquarters or office) in (region / country) _____, at (address) _____...., hereby deposits in _____(headquarters, branch, agency or delegation) of (credit institution which operates the treasury fund of the Macao Special Administrative Region) the quantity of MOP 1,000,000.00 (one million patacas) in capital, as a bond required for the admission to the call for tender to grant concessions for the commercial operation of games of chance in casinos, for the purposes of article 55 and the articles that follow, and further applicable provisions of the "Regulamento Administrativo" no. 26/2001. This deposit will be made to the Government of the Macao Special Administrative Region and is designed to act as a bond for the admission to the call for tender to grant concessions for the commercial operation of games of chance in casinos, and may be used by the latter to bear the expenses incurred with the programme of the call for tender. Notification of this use should be transmitted to the committee for the first call for tender to grant concessions for the commercial operation of games of chance in casinos, based in Macao, in Avenida da Praia Grande, no.s 762-804, edifício "China Plaza", 21º Andar.



Macao, _____(date)



_____
Signatures


i:\pedrojor\casino\governme.doc\17/11/01\P.2828



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



# Appendix no. 4

*(Referred to by point 10.5 of the programme for the call for tender)*

Model of admission bond paid by banking guarantee

     The Bank _____, based in _____, registered with the Commercial and Automobile Registry of Macao, with a share capital of _____, does hereby extend an autonomous banking guarantee to the Government of the Macao Special Administrative Region, on first demand, to the value of MOP 1,000,000.00 (one million patacas), with the aim of guaranteeing the immediate payment of any sum required by the government of the Macao Special Administrative Region, as reimbursement for expenses incurred by the latter resulting from the process of the call for tender to grant concessions for the commercial operation of games of chance in casinos, under the terms of no. 4, article 57 of the "Regulamento Administrativo" no. 26/2001.

     The Bank is obliged to pay this sum on first demand by the Government of the Macao Special Administrative Region without the need for the latter to justify the request, and without the former being able to implement any defence methods regarding the payment of the expenses resulting from the process of the call for tender mentioned above.

     The Bank must pay the sum on the day following the request; at the end of which, if no payment has been made, the Bank will add interest for late payment at the highest rate practised by the Bank, without altering the need for direct liquidation of the debt on the part of the Bank.

     This autonomous banking guarantee (first-demand) may not under any circumstances be renounced, and will remain valid until expiry under the terms laid down by applicable law.


Macao, _____(date)


_____
Signatures

i:\pedrojor\casino\governme.doc\17/11/01\p.2929



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



# Appendix no. 5
*(Referred to by point 10.5 of the programme for the call for tender)*

Model of admission bond paid by insurance bond

The Insurance company _____, based in _____, registered with the commercial registry of _____, with a share capital of _____, does hereby extend a first-demand guarantee, under the terms of the insurance bond contract, to the Government of the Macao Special Administrative Region, to the value of MOP 1,000,000.00 (one million patacas) with the aim of guaranteeing the immediate payment of any of any sum required by the government of the Macao Special Administrative Region, as reimbursement for expenses incurred by the latter resulting from the process of the call for tender to grant concessions for the commercial operation of games of chance in casinos, under the terms of no. 5, article 57 of the "Regulamento Administrativo" no. 26/2001.

The insurer is obliged to pay this sum on first demand by the Government of the Macao Special Administrative Region without the need for the latter to justify the request, and without the former being able to implement any defence methods regarding the payment of the expenses resulting from the process of the call for tender mentioned above.

The insurer may not oppose the Government of the Macao Special Administrative Region with any exceptions to the insurance bond contract signed between the former and the policyholder.

This first-demand guarantee may not be revoked or renounced under any circumstances, and will remain valid until expiry or annulment, under the terms laid down by applicable legislation.

Macao, _____ (date)

_____
Signatures

i:\pedrojor\casino\governme.doc\17/11/01w.3030



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau



i:\pedrojor\casino\governme.doc\17/11/01\P.3131




澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau

# Appendix no. 6

*(Referred to by item 11) of no. 12.1 of the programme for the call for tender)*

Model of the declaration by which the tender applicant commits to the commercial
operation under the terms and conditions proposed

I, (name) _____, in my capacity as [director / legal
representative] with due authority vested in me to carry out this act, of the limited
company ___(corporate title)_____, tender applicant in the "first
call for tender to grant concessions for the commercial operation of games of chance in
casinos", in the Macao Special Administrative Region, do hereby declare that, under the
terms of item 11), no. 1 of article 61 of the "Regulamento Administrativo" no. 26/2001,
the aforementioned company does solemnly assume the duty, in the event of being
awarded the concessions to operate commercially games of chance in casinos, of
commercially operating this concession under the terms and conditions of the initial
proposal, including all subsequent proposals.

Macao, _____(date)

_____
Signatures

[Authentication of notary, or, in the case of the jurisdiction not allowing authentication of
signature by notary, authentication by competent public authority, duly legalised.]

i:\pedrojor\casino\governme.doc\17/11/01\p.3232

17



17

澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau
娛 樂 場 幸 運 博 彩 經 營 批 給 首 次 公 開 競 投 委 員 會
Comissão do primeiro concurso público para a atribuição de concessões
para a exploração de jogos de fortuna ou azar em casino
Commission for the First Public Tender to grant Concessions to operate
Casino Games of Chance

The Venetian
3355 Las Vegas Boulevard South,
Las Vegas, Nevada
U.S.A.
Fax no. 001-702-414-2122

Date: November 2, 2001

Dear Sir/Madam,

   Subsequent to the publication of Dispatch No. 216/2001 of the Chief Executive of the Macao Special Administrative Region, the **Commission for the First Public Tender to Grant Concessions to Operate Casino Games of Chance** (hereafter referred as the "Tender Commission") has been officially formed on October 31, 2001.

   Knowing that your company/organization had recently submitted to the Macao Gaming Committee an Expression of Interest for the Macao Casino Gaming Concession, we would like to inform you the followings:

1. Through the publication of Dispatch No. 217/2001 of November 2, 2001, the Chief Executive has announced the opening of a public tender for the awarding of three licenses to operate casino of games of chance in Macao.
2. This public tender will take the form of simple public tender.
3. Bid proposal must be presented to the Tender Commission located at the 21st floor of China Plaza Building, Avenida da Praia Grande nos. 762-804, Macao, before 5:45pm of December 7, 2001.
4. Tender Program for this public tender along with other pertinent documents can now be purchased, at cost, at the office of the Tender Commission located at the above address.

   Thank you for your attention to this matter and best regards.

Yours truly,

Eric H. Y. Ho
*(Secretary)*
Tender Commission

---

澳門南灣大馬路762-804號中華廣場21樓.
Avenida da Praia Grande, n.° 762-804, Edifício China Plaza, 21.° andar, Macau
傳真 Fax : (853) 370296    電子郵件 e-mail : concurso@dicj.gov.mo    電話 Tel : (853) 3973333







澳門特別行政區政府
Governo da Região Administrativa Especial de Macau

娛樂場�$ 娛博彩批給的首次公開競投設立會
Comissão do primeiro concurso público para a atribuição de concessões
para a exploração de jogos de fortuna ou azar em casino
Commission for the First Public Tender to grant Concessions to operate
Casino Games of Chance

## 參與競投公司名單
## LISTA DAS CONCORRENTES
## APPLICATION'S LIST

| 收件序號<br>ORDEM DE ENTRADA<br>ORDER OF PRESENTATION | 參與競投公司名稱<br>DENOMINAÇÃO SOCIAL DAS CONCORRENTES |
|---|---|
| 1 | 新華華博彩股份有限公司<br>Jogos de Fortuna ou Azar San Wah Wah, S.A.<br>San Wah Wah Gaming Company Limited |
| 2 | 蒙地卡羅娛樂股份有限公司<br>Sociedade de Diversões Monte Carlo, S.A.<br>Monte Carlo Entertainment Company Limited |
| 3 | 新澳門娛樂場股份有限公司<br>Grand Macau Casino – S.A.<br>Grand Macau Gaming Limited |
| 4 | 澳門美高梅金殿<br>MGM Mirage Macao |
| 5 | 永利渡假村 (澳門) 股份有限公司<br>Wynn Resorts (Macau) S. A.<br>Wynn Resorts (Macau) Limited |
| 6 | 聖母灣娛樂股份有限公司<br>Sociedade de Diversão Baía da Nossa Senhora da Esperança, S.A.<br>Baía da Nossa Senhora Entertainment Company Limited |
| 7 | 澳門聯興華逼博彩股份有限公司<br>Companhia de Jogos de Fortuna ou Azar Macau Luen Hing, S.A.<br>Macau Luen Hing Gambling Company Limited |
| 8 | 銀河娛樂場股份有限公司<br>Galaxy Casino, S.A.<br>Galaxy Casino Company Limited |

澳門南灣大馬路 762-904 號中間商業21樓
Avenida da Praia Grande, n.º 762-804, Edifício China Plaza, 21.º andar, Macau
電子郵件 Fax: (853) 370296  電子郵件 e-mail: concurso@gdtej.gov.mo  電話 Tel: (853) 3973333



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau
娛 樂 場 幸 運 博 彩 批 給 首 次 公 開 競 投 委 員 會
Comissão do primeiro concurso público para a atribuição de concessões
para a exploração de jogos de fortuna ou azar em casino
Commission for the First Public Tender to grant Concessions to operate
Casino Games of Chance

| 收件序號 ORDEM DE ENTRADA ORDER OF PRESENTATION | 參與競投公司名稱 DENOMINAÇÃO SOCIAL DAS CONCORRENTES |
|---|---|
| 9 | 亞美娛樂股份有限公司 Asian American Sociedade de Diversões, S.A. Asian American Entertainment Corporation Limited |
| 10 | 澳門博彩股份有限公司 Sociedade de Jogos de Macau, S.A. |
| 11 | 新城市娛樂股份有限公司 New City Casino, S.A. New City Casino Limited |
| 12 | 拉斯維加斯東方娛樂 (澳門) 股份有限公司 Sociedade de Divertimento Las Vegas East (Macau), S.A. Las Vegas East (Macau) Limited |
| 13 | 澳門麗星股份有限公司 Macau Star, S.A. Macau Star Limited |
| 14 | 超藝國際博彩股份有限公司 Art Concept Internacional Casino Resort, S.A. Art Concept Internacional Gaming Resort Company Limited |
| 15 | MP 娛樂股份有限公司 Sociedade de Diversões MP, S.A. MP Entertainment Company Limited |
| 16 | 祥九世界博彩股份有限公司 Lucky 9 Casino, S.A. Lucky 9 Casino Corporation Limited |
| 17 | 澳薇型博彩娛樂股份有限公司 M. Felicidade – Sociedade de Exploração de Jogos e Diversões de Macau, S.A. M. Bliss Casinos Company Limited |

澳門南灣大馬路 762–804 號中華廣場 21樓
Avenida da Praia Grande, n.° 762-804, Edifício China Plaza, 21.° andar, Macau
圖文傳真 Fax : (853) 370296     電子郵件 e-mail: concurso@dicj.gov.mo     電話 Tel : (853) 3973333



澳 門 特 別 行 政 區 政 府
Governo da Região Administrativa Especial de Macau
娛 樂 場 幸 運 博 彩 經 營 批 給 首 次 公 開 競 投 委 員 會
Comissão do primeiro concurso público para a atribuição de concessões
para a exploração de jogos de fortuna ou azar em casino
Commission for the First Public Tender to grant Concessions to operate
Casino Games of Chance

| 收件序號<br>ORDEM DE<br>ENTRADA<br>ORDER OF<br>PRESENTATION | 參與競投公司名稱<br>DENOMINAÇÃO SOCIAL DAS CONCORRENTES |
|---|---|
| 18 | 澳英 (澳門) 娛樂股份有限公司<br>Sociedade de Diversões Aspinall's Clube (Macau) S.A.<br>Aspinall's Clube (Macau) Entertainment Limited |
| 19 | 太陽娛樂股份有限公司<br>Sun Entretenimento Grupo, S.A.<br>Sun Entertaiment Holding Company Limited |
| 20 | 九如投資股份有限公司<br>Kao U – Investimento, S.A.<br>Kao U – Investiment Limited |
| 21 | 華澳發展股份有限公司<br>CM-Desenvolvimento, S.A.<br>CM-Development Limited |

第 一 組

澳門特別行政區公報
由第一組及第二組組成

二零零一年十二月十日，星期一



I
SÉRIE

do Boletim Oficial da Região Administrativa
Especial de Macau, constituído pelas séries I e II

Segunda-feira, 10 de Dezembro de 2001

# 澳門特別行政區公報
# BOLETIM OFICIAL DA REGIÃO
# ADMINISTRATIVA ESPECIAL DE MACAU

# 副　刊
# SUPLEMENTO

## 目　錄

### 澳門特別行政區

第 250/2001 號行政長官批示：

　　訂定經第 217/2001 號行政長官批示展開的娛樂場幸運博彩經營權批給（三個）的公開競投範疇內的競投公司組合所適用的法律制度，尤其是訂定可以接納組合的規定。................................2286

## SUMÁRIO

### REGIÃO ADMINISTRATIVA ESPECIAL DE MACAU

Despacho do Chefe do Executivo n.° 250/2001:

Determina o regime jurídico aplicável à associação de sociedades concorrentes no âmbito do concurso público para a atribuição de três concessões para a exploração de jogos de fortuna ou azar em casino, aberto pelo Despacho do Chefe do Executivo n.° 217/2001, nomeadamente os termos em que tal associação pode ser admitida. ................................2286

印務局，澳門官印局街。電話：573822．傳真：596802．電子郵件：iom@macau.ctm.net
Imprensa Oficial, Rua da Imprensa Nacional — Macau. Tel.: 573822 • Fax: 596802 • E-mail: iom@macau.ctm.net
網址 Nets re: http://www.imprensa.macau.gov.mo

澳 門 特 別 行 政 區

REGIÃO ADMINISTRATIVA ESPECIAL
DE MACAU

第 250/2001 號行政長官批示

行政長官行使《澳門特別行政區基本法》第五十條賦予的職權及根據第26/2001號行政法規第九十九條的規定，作出本批示。

一、本批示訂定經第217/2001號行政長官批示展開的娛樂場幸運博彩經營批給（三個）的公開競投範疇內的競投公司組合所適用的法律制度，尤其是訂定可以接納組合的規定。

二、競投公司的組合須得到經第216/2001號行政長官批示設立的娛樂場幸運博彩經營批給首次公開競投委員會（以下簡稱「競投委員會」）的許可，競投委員會在審理過程中須公平對待各競投公司。

三、按第26/2001號行政法規第六十七條的規定，於首個諮詢階段不獲接納的競投公司不得組成或加入競投公司的組合。在首個諮詢階段的競投階段，競投公司的組合不得由在作出競投公司組合申請的諮詢階段中不獲接納的競投公司組成或加入，但經投委員會許可者除外。

四、競投委員會得訂定關於競投公司組合的期限或設定認為對許可競投公司的組合屬必要的條件。

五、如兩間或兩間以上競投公司有意組合，應向競投委員會申請許可，申請書應附有下列資料，但不妨礙競投委員會要求提供其他文件或材料，以及補充資訊或資料：

（一）如競投委員會許可有關競投公司的組合時，應附有將設立的新股份有限公司章程的草稿；

（二）按照第26/2001號行政法規附件一第五節規定，指出將設立的新股份有限公司擬訂定的公司資本分配；

（三）指出將獲指定為將設立的股份有限公司的董事會成員；

（四）根據並適用第16/2001號法律第十九條及第26/2001號行政法規附件一IH項的規定，指出將設立的新股份有限公司所建議的常務董事；

（五）指出三官及代表競投公司組合的自然人，以及說明該自然人在新股份有限公司成立前，作為競投公司組合在面對競投委員會及澳門特別行政區政府時的唯一代表；

Despacho do Chefe do Executivo n.º 250/2001

Usando da faculdade conferida pelo artigo 50.º da Lei Básica, e nos termos do artigo 99.º do Regulamento Administrativo n.º 26/2001, o Chefe do Executivo manda:

1. O presente despacho determina o regime jurídico aplicável à associação de sociedades concorrentes no âmbito do concurso público para a atribuição de 3 concessões para a exploração de jogos de fortuna ou azar em casino, aberto pelo Despacho do Chefe do Executivo n.º 217/2001, nomeadamente os termos em que tal associação pode ser admitida.

2. A associação de sociedades concorrentes encontra-se sujeita à autorização da Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, criada pelo Despacho do Chefe do Executivo n.º 216/2001, adiante designada por comissão do concurso. A comissão do concurso, na sua actuação, dará igualdade de tratamento a todas as concorrentes.

3. As concorrentes que não sejam admitidas à primeira fase de consulta, nos termos do artigo 67.º do Regulamento Administrativo n.º 26/2001, não podem constituir ou integrar uma associação de sociedades concorrentes; em fases subsequentes à primeira fase de consulta, uma associação de sociedades concorrentes não pode ser constituída ou integrada por concorrentes que não hajam sido admitidas à fase de consulta em que o pedido de associação de sociedades concorrentes seja feito, salvo autorização da comissão do concurso.

4. A comissão do concurso pode fixar os prazos ou estipular as condições que entender necessárias para autorizar a associação de sociedades concorrentes.

5. Quando duas ou mais sociedades concorrentes pretendam associar-se devem solicitar autorização à comissão do concurso e, sem prejuízo de esta comissão poder vir a exigir outros documentos ou elementos bem como informações ou dados suplementares, devem instruir o pedido juntando para o efeito:

1) projecto de estatutos da nova sociedade anónima a ser constituída caso a comissão do concurso autorize a associação de sociedades concorrentes em causa;

2) indicação da projectada repartição do capital social da nova sociedade anónima a ser constituída, nos termos previstos na secção 5 do Anexo I ao Regulamento Administrativo n.º 26/2001;

3) indicação dos administradores a serem designados para o conselho de administração da nova sociedade anónima a ser constituída;

4) indicação do administrador-delegado proposto da nova sociedade anónima a ser constituída, nos termos e para os efeitos previstos no artigo 19.º da Lei n.º 16/2001 e do ponto n.º 1H do Anexo I ao Regulamento Administrativo n.º 26/2001;

5) indicação da pessoa singular que chefia e representa a associação de sociedades concorrentes, bem como menção de que esta funciona como representante exclusivo da associação de sociedades concorrentes junto da comissão do concurso e do Governo da Região Administrativa Especial de Macau, até à constituição da nova sociedade anónima;

（六）有意組合的競投公司的股東所作的聲明，內容為承諾將競投委員會許可競投公司的組合，則解散有關的競投公司；

（七）承諾如競投委員會許可有關競投公司的組合，則設立具備法定要件、與交予競投委員會的文件內容相符的股份有限公司的聲明；

（八）載有將提交的新建議的主要資料並指出展經營的娛樂場數目、博彩業數目及博彩方式的文件，以及將設立的新股份有限公司擬開展的有利於澳門特別行政區的投資建議的說明及理由書，其須以有意組合的各競投公司所提交的損害為基礎；

（九）承諾如競投委員會許可有關競投公司的組合，則呈交為26/2001號行政法規第五十四條第一款及「澳門特別行政區第一次公開競投方案」（以下簡稱「競投方案」）第7.1款所指的、關於將設立的新股份有限公司的文件的聲明；但考慮到本示第九款及第十款的規定，無須呈交擁有競投公司5%或5%以上公司資本的董事或股東的「參與競投公司／承批公司股東及董事個人資料披露表」（該表的式樣載於第26/2001號行政法規附件II）；

（十）承諾如競投委員會許可有關競投公司的組合，則呈交26/2001號行政法規第六十一條第一款及競投方案12.1款所指的、關於將設立的新股份有限公司的文件的聲明。

六、上款第（一）項至第（五）項、第（七）項至第（十）項所指的文件，須由有意組合的其一間競投公司的法定代理或由能使該等公司承擔義務的董事簽署，簽署及身份須經公證認定；所述的法定代理或董事尚應在上款第（一）項至第（五）項、第（七）項至第（十）項規定呈交的文件的各頁上簽署。

七、第五款第（六）項所指的文件，由有意組合的競投公司的股東、其法定代理或由能使屬法人，包括屬公司的每一股東承擔義務的董事簽署，簽署及身份須經公證認定；所述的股東、其法定代理或董事尚應在第五款第（六）項規定呈交的文件的各頁上簽署。

八、第五款所述文件應經過適當編排後呈交，並附同一份由競投公司作出的聲明書，該聲明書應指出該等公司有意組合，並

b) declaração dos accionistas das sociedades concorrentes que pretendem associar-se assumindo o compromisso de promover a dissolução destas sociedades concorrentes caso a comissão do concurso autorize a associação de sociedades concorrentes em causa;

7) declaração assumindo o compromisso de, caso a comissão do concurso autorize a associação de sociedades concorrentes em causa, constituírem uma sociedade anónima que preencha os requisitos legais, em conformidade com os documentos submetidos à comissão do concurso;

8) documento contendo os elementos essenciais de uma nova proposta de adjudicação a apresentar, com menção do número de casinos, mesas de jogo e tipos de jogos que pretende operar, e uma memória descritiva e justificativa das propostas de investimento de relevante interesse para a Região, que a nova sociedade anónima a ser constituída se propõe efectuar, baseada nas propostas de adjudicação submetidas pelas sociedades concorrentes que pretendam associar-se;

9) declaração assumindo o compromisso de, caso a comissão do concurso autorize a associação de sociedades concorrentes em causa, submeter, relativamente à nova sociedade anónima a ser constituída, os documentos referidos no n.° 1 do artigo 54.° do Regulamento Administrativo n.° 26/2001 e no ponto n.° 7.1 do «Programa do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino na Região Administrativa Especial de Macau», adiante designado por programa do concurso, com excepção dos exemplares do «Formulário relativo à revelação de dados pessoais dos accionistas e dos administradores das concorrentes/concessionárias», cujo modelo constitui o Anexo II ao Regulamento Administrativo n.° 26/2001 relativamente aos seus administradores e accionistas titulares de valor igual ou superior a 5% do seu capital social, atento o disposto nos n.ºs 9 e 10 do presente despacho;

10) declaração assumindo o compromisso de, caso a comissão do concurso autorize a associação de sociedades concorrentes em causa, submeter, relativamente à nova sociedade anónima a ser constituída, os documentos referidos no n.° 1 do artigo 61.° do Regulamento Administrativo n.° 26/2001 e no ponto n.° 12.1 do programa do concurso.

6. Os documentos referidos nas alíneas 1) a 5) e 7) a 10) do número anterior são subscritos por representante legal ou por administradores que obriguem cada uma das sociedades concorrentes que pretende associar-se, com assinatura e qualidade reconhecidas notarialmente. Os representantes legais ou os administradores referidos devem ainda rubricar todas as demais páginas dos documentos que devem ser submetidos nos termos das alíneas 1) a 5) e 7) a 10) do número anterior.

7. O documento referido na alínea 6) do n.° 5 é subscrito pelos accionistas das sociedades concorrentes que pretendem associar-se ou pelos seus representantes legais ou por administradores que obriguem cada um dos accionistas que sejam pessoas colectivas, maxime sociedades comerciais, com assinatura e qualidade reconhecidas notarialmente. Os accionistas, os seus representantes legais ou os administradores referidos devem ainda rubricar todas as demais páginas do documento que deve ser submetido nos termos da alínea 6) do n.° 5.

8. Os documentos referidos no n.° 5 devem ser submetidos, devidamente elencados, acompanhados de uma declaração das sociedades concorrentes indicando que pretendem associar-se, subscrita por representante legal ou por administradores que

九、適有窓組合的競投公司的股東方可成為將設立的新股份有限公司的股東，至於依照第 16/2001 號法律第十條第六款、第 26/2001 號行政法規第五十三條第二款及競投方案第 6.2 款規定已經繳納參與競投的但尚未在澳門作特別行政區依法設立股份有限公司的競投公司，競投委員會將另作適當配合。

十、適有窓組合的競投公司的董事方可成為將設立的新股份有限公司的董事，至於依照第 16/2001 號法律第十條第六款、第 26/2001 號行政法規第五十三條第二款及競投方案第 6.2 款規定已經繳納參與競投的但尚未在澳門作特別行政區依法設立股份有限公司的競投公司，競投委員會將另作適當配合。

十一、主有窓組合的競投公司以現金存放的為競投繳費與競同返還的保證金，待有關交回部分將另為將設立的新股份有限公司的為繳納參與競投委所提供的保證金。

十二、如競投公司的組合經競投委員會許可，有窓組合的競投公司繼而被屬為一個唯一的競投公司，其招書以及續後標書將代替加入該組合的競投公司所是交的標書。

十三、當一個競投公司的組合經競投委員會許可，有窓組合的競投公司應在競投委員會訂定的最短期間內，促使設立一開其屬法事要件、與交予競投委員會的文件內容相符的股份有限公司。

十四、競投公司的組合申請，必須在競投委員會完成第 16/2001 號法律第十一條第一款、第 26/2001 號行政法規第八十二條第二款、第三款及第七款所指的具說明理由的報告書前提出，但不妨礙競投委員會訂定足短的期間。

十五、本批示自公佈日起生效。

二零零一年十二月七日

行政長官　何厚鏵

obriguem cada uma das sociedades concorrentes que pretende associar-se, com assinatura e qualidade reconhecidas notarialmente.

9. Apenas podem ser accionistas da nova sociedade anónima a ser constituída accionistas das sociedades concorrentes que pretendam associar-se. Relativamente às sociedades concorrentes que tenham sido admitidas a concurso ao abrigo do n.º 6 do artigo 10.º da Lei n.º 16/2001, do n.º 2 do artigo 53.º do Regulamento Administrativo n.º 26/2001 e do ponto n.º 6.2 do programa do concurso e ainda não hajam constituído na Região Administrativa Especial de Macau uma sociedade anónima nos termos legais, a comissão do concurso procederá às devidas adaptações.

10. Apenas podem ser administradores da nova sociedade anónima a ser constituída administradores das sociedades concorrentes que pretendam associar-se. Relativamente às sociedades concorrentes que tenham sido admitidas a concurso ao abrigo do n.º 6 do artigo 10.º da Lei n.º 16/2001, do n.º 2 do artigo 53.º do Regulamento Administrativo n.º 26/2001 e do ponto n.º 6.2 do programa do concurso e ainda não hajam constituído na Região Administrativa Especial de Macau uma sociedade anónima nos termos legais, a comissão do concurso procederá às devidas adaptações.

11. As cauções para admissão a concurso prestadas por depósito em dinheiro pelas sociedades concorrentes que pretendem associar-se podem ser, total ou parcialmente, convertidas em caução para admissão a concurso da nova sociedade anónima a ser constituída.

12. Caso a associação de sociedades concorrentes seja autorizada pela comissão do concurso, as sociedades concorrentes que pretendam associar-se passam a ser consideradas como uma única concorrente e a sua proposta de adjudicação, bem como propostas subsequentes, substituem as propostas de adjudicação submetidas pelas sociedades concorrentes que integram a associação.

13. Quando uma associação de sociedades concorrentes seja autorizada pela comissão do concurso, devem as sociedades concorrentes que pretendam associar-se promover, no mais curto prazo possível a fixar pela comissão do concurso, a constituição de uma sociedade anónima que preencha os requisitos legais, em conformidade com os documentos submetidos à comissão do concurso.

14. Sem prejuízo de a comissão do concurso poder fixar um prazo mais curto, apenas podem ser formulados pedidos de associação de concorrentes até ao momento em que a comissão do concurso haja elaborado o relatório fundamentado referido no n.º 1 do artigo 11.º da Lei n.º 16/2001 e nos n.ºs 2, 5 e 7 do artigo 82.º do Regulamento Administrativo n.º 26/2001.

15. O presente despacho entra em vigor no dia da sua publicação.

7 de Dezembro de 2001.

O Chefe do Executivo, *Ho Hau Wah*.



印務局
Imprensa Oficial
本份售價澳門幣四元正
PREÇO DESTE NÚMERO $ 4,00

PWRW&G Translation 12/19/2001

OFFICIAL BULLETIN OF THE MACAU SPECIAL ADMINISTRATIVE
REGION

(No. 50)

Date: December 10, 2001

---

MACAU SPECIAL ADMINISTRATIVE REGION

———

No. 250/2001 Chief Executive Order

The Chief Executive hereby issues this Order by exercising the authorities
conferred by the Basic Law of the Macau Special Administrative Region and in
accordance with Article 99 of No. 26/2001 Administrative Regulations.

1.    This Order regulates the applicable legal system with respect to a merger of
tenderers in the public tender to grant three concessions to operate casino games of
chances as set forth in No. 217/2001 Chief Executive Order.  It especially contains
requirements for accepting a merger.

2.    A merger of tenderers must be subject to the approval of the Commission for
the First Public Tender to Grant Concessions to Operate Casino Games of Chances
(the "Tender Commission") established in accordance No. 216/2001 Chief Executive
Order.  The Tender Commission shall treat all tenderers fairly during the process.

3.    In accordance with Article 67 of No. 26/2001 Administrative Regulations,
tenderers that are not accepted in the first consultation stage may not merge with other
tenderers or participate in a merger of tenderers.  After the first consultation stage, a
merger of tenderers must not consist of or include tenderers that are not accepted
during the consultation stage for application for a merger, except as otherwise
approved by the Tender Commission.

4.    The Tender Commission must set forth a time limit for a merger to be
established by tenderers or necessary requirements for establishment of a merger.

5.    If two or more tenderers wish to merge, they must make an application to the
Tender Commission for approval.  Without prejudice to the right of the Tender
Commission to request other documents or materials and supplemental information or
materials, their written application shall be attached with the following information:

(1)    if the Tender Commission approves a merger of relevant tenderers, draft articles of association of the proposed new company limited by shares;

(2)    in accordance with Section 5 of Appendix 1 of No. 26/2001 Administrative Regulations, the capital allocation of the proposed new company limited by shares;

(3)    members of the board of directors of the proposed new company limited by shares;

(4)    in accordance with Article 19 of No. 16/2001 Law and Section 1H of Appendix 1 of No. 26/2001 Administrative Regulations, proposed managing director(s) of the proposed new company limited by shares;

(5)    natural person who will be in charge of or represent the group consisting of tenderers, and a statement that such natural person shall be the sole representative of the group consisting of tenderers when dealing with the Tender Commission and the Government of the Macau Special Administrative Region before the establishment of the proposed new company limited by shares;

(6)    a statement of the shareholders of the tenderers which intend to merge undertaking that if the Tender Commission approves the merger of the tenderers, the relevant tenderers shall be dissolved;

(7)    a statement undertaking that if the Tender Commission approves the merger of the relevant tenderers, a proposed new company limited by shares shall be established in accordance with the legal requirements for establishment and be in compliance with the documents submitted to the Tender Commission.

(8)    documents setting forth the major information contained in the new tender offer to be submitted and describing the number of casinos and gambling tables and the forms of gambling proposed for operation and an explanation of and reasons for the investment proposal of the proposed new company limited by shares which is intended to benefit the Macau SAR. Such documents and explanation and reasons shall base on the tender offers submitted by all tenderers that wish to merge;

(9)    a statement undertaking that if the Tender Commission approves the merger of the relevant tenderers, a statement that the documents of the proposed new company limited by shares as stipulated in Article 54.1 of No. 26/2001 Administrative Regulations and Item 7.1 of the Macau Special Administrative Region Procedures for the First Public Tender to Grant Concessions to Operate Casino Games of Chance (the "Tender Procedures") shall be submitted. However, in view of the provisions of Articles 9 and 10 of this Order, the Personal History Disclosure Form for Shareholders and Directors of Applicants/Concessionaires (sample of such form is set forth in Annex II of the Administrative Regulations No. 26/2001) of the directors or shareholders which own 5% or more of the capital of a tenderer is not required for submission;

(10)    a statement undertaking that if the Tender Commission approves the merger of the relevant tenderers, a statement that the documents of the proposed new

company limited by shares as stipulated in Article 61.1 of No. 26/2001 Administrative Regulations and Item 12.1 of the Tender Procedures shall be submitted.

6.    Documents as specified in Items (1) to (5) and Items (7) to (10) of the above article shall be executed by the legal representative of each tenderer which intends to merge or director whose act can cause such tenderer to bear its liabilities. Such signatures and identities of the signatories shall be notarized. The said legal representatives or directors shall initial on each page of the documents to be submitted set forth in the provisions of Items (1) to (5) and Items (7) to (10) of the above article.

7.    Documents as specified in Item (6) of Article 5 shall be executed by the shareholders and legal representatives of the tenderers which intend to merge or directors whose acts can cause the tenderers and each shareholder of such tenderers to bear the liabilities. Such signatures and identities of the signatories shall be notarized. The said shareholders, legal representatives or directors shall initial on each page of the documents to be submitted set forth in the provisions of Item (6) of Article 5.

8.    Documents as specified in Article 5 shall be arranged in proper order and submitted, together with a statement made by the tenderers. Such statement shall state the intention of the tenderers to merge and be executed by the legal representatives or directors whose acts can cause each tenderer, which intends to merge, to bear the liabilities. Such signatures and identities of the signatories shall be notarized.

9.    Only the shareholders of the tenderers intend to merge shall become the shareholders of the proposed new company limited by shares. With respect to the tenderers which have been accepted to participate in the tender in accordance with Article 10.6 of No. 16/2001 Law, Article 53.2 of No. 26/2001 Administrative Regulations and Article 6.2 of the Tender Procedures but have not duly established a company limited by shares in Macau SAR, the Tender Commission will otherwise make appropriate coordination.

10.    Only the directors of the tenderers intend to merge shall become the directors of the proposed new company limited by shares. With respect to the tenderers which have been accepted to participate in the tender in accordance with Article 10.6 of No. 16/2001 Law, Article 53.2 of No. 26/2001 Administrative Regulations and Article 6.2 of the Tender Procedure but have not duly established a company limited by shares in Macau SAR, the Tender Commission will otherwise make appropriate coordination.

11.    The cash guarantee bond provided by the tenderers which intend to merge for being accepted to participate in the tender shall wholly or partially become the cash guarantee bond provided by the proposed new company limited by shares for being accepted to participate in the tender.

12.    If the merger of tenderers is approved by the Tender Commission, the tenderers which intend to merge shall be deemed as a single tenderer and its existing and subsequent tender offers shall replace the tender offers submitted by the tenderers joining the merger.

4

13.     When the merger of tenderers is approved by the Tender Commission, the tenderers which intend to merge shall, within the shortest time as stipulated by the Tender Commission, cause to establish a company limited by shares which shall meet legal requirements and comply with the contents of the documents submitted to the Tender Commission.

14.     An application for merger of tenderers must be made prior to the completion by the Tender Commission of the report describing explanatory reasons set forth in Article 11.1 of No. 16/2001 Law, Items 2, 3 and 7 of Article 82 of No. 26/2001 Administration Regulations, without prejudice to the right of the Tender Commission to set a shorter period.

15.     This Order shall come into effectiveness from the date it is announced.

                                        Chief Executive
                                        Ho Hau Wah

                              Date: December 7, 2001

**21**

亞美娛樂股份有限公司
Asian American Entertainment
Corporation Limited.

台灣：台北市民權東路三段 35 號 6 樓
Taiwan: 6FL., No. 35, Min Chuan East Road, Sec. 3, Taipei
Tel:(02)2508-0855    Fax:(02)2508-0561
澳門：南灣大馬路 429 號南灣商業中心二十三樓全層
Macau: Edf Centro Comercial da Praia Grande
Avenida da Praia Grande, 429, 23°
Tel:530413    Fax:560015

**21.**

31ˢᵗ January 2002

Public Tender Commission
Avenida da Praia Grande
No. 768-804
Edificio China Plaza
21.° andar
Macau

Dear Sirs,

We write to advise that we have today reached a preliminary agreement with ASPINALL'S CLUB (MACAU) ENTERTAINMENT LIMITED regarding subscription of shares by them in our Company to the extent of 25% shareholding.

Enclosed is a copy of the preliminary agreement for your reference, wherein you will note that should the venture succeed, we agreed that 7% of our net profit shall be contributed to the Macau Government for development of high technology industries and to aid unemployment.

A new join venture Company and relevant documents will be formed and provided within the time prescribed by law and according to the same, if required.

Ip Sio Man
Legal Representative

Reconheço a assinatura *supra* de IP SIO MAN (葉紹文) (5509-4801-2429), feita na minha presença, na qualidade de administrador-delegado, em representação da ASIAN AMERICAN SOCIEDADE DE DIVERSÕES, S.A., cuja identidade, qualidade e poderes para o acto verifiquei por conhecimento pessoal.
Macau, 31 de Janeiro de 2002.
A Notária Privada,

MARIA DE LURDES COSTA
Emol: catorze patacas. —
Conta n.° 181

亞 美 娛 樂 股 份 有 限 公 司
Asian American Entertainment
Corporation Limited.

台 北 ：台 北 市 長 眷 東 路 三 段 15 號 6 樓
Taiwan: 6FL., No. 15, Min Chuan East Road, Sec. 3, Taipei
Tel:(02)2500-0855    Fax:(02)2500-0561
澳 門 ：南 灣 大 馬 路 429 號 南 灣 商 業 中 心 三 十 五 樓 全 層
Macau: Edf Centro Comercial da Praia Grande
Avenida da Praia Grande, 429, 35°
Tel:550413    Fax:560015



To: ASPINALL'S CLUB (MACAU) ENTERTAINMENT LIMITED

31st January 2002

## TENDER FOR GAMING LICENCE IN MACAU

We refer to our recent discussions in connection with the proposed subscription of shares in our company, ASIAN AMERICAN ENTERTAINMENT CORPORATION LIMITED.

As discussed, we shall upon the grant of the gaming license by the Macau authorities to us for the development and operation of a casino, hotel and related facilities, offer to you for subscription of up to 25% of the shares in the issued share capital of our company. Final agreements documenting the relationship and shareholding arrangements shall be subsequently discussed and agreed upon.

We and you further agree that in the event of the above, 7% of the net profits of our company shall be contributed to the Macau Government for development of high technology industries and to aid unemployment in Macau.

For and on behalf of
ASIAN AMERICAN ENTERTAINMENT
CORPORATION LIMITED

We accept the above,
For and on behalf of
ASPINALL'S CLUB (MACAU)
ENTERTAINMENT LIMITED

_____
LEGAL REPRESENTATIVE
IP SIO MAN

_____
LEGAL REPRESENTATIVE
SIO KOI VENG

22                                                                                          22

# Venetian Venture Development, LLC

c/o Venetian Resort Hotel Casino
3355 Las Vegas Blvd So
Las Vegas, NV 89109

February 1, 2002

Public Tender Commission
Avenida da Praia Grande
n.º 768-804
Edificio China Plaza
21.º andar
Macau

**Asian American Entertainment Corporation Limited (the "Tenderer")**

Dear Sirs:

We respectfully notify you that we have severed our relationship with the Tenderer and have terminated any further participation in the Tenderer's bid for a casino licence. We are now bidding with Galaxy Casino Limited and we will contact you shortly to provide more information with regard to this development.

Yours sincerely,

David Friedman

**23**

To: The Tender Commission ("Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino, Governo da Região Administrativa Especial de Macau da República Popular da China")

*23*

# Galaxy Casino Company Limited

## Subsequent Proposal

## For the First Public Tender for a Concession for Operating Games of Chance or Other Games in Casino in Macau

Galaxy Casino Company Limited ("Galaxy"), a company incorporated in Macau, with registered office at Avenida da Praia Grande, n°409, China Law Building, 25th Floor, Register Number 15066, hereby represented by its director, Mr. Pedro Ho alias Ho On Chun, is willing and undertakes to enter into an agreement with the Macau Government under which a concession for operating games of chance or other games in casino in Macau is granted by the Macau Government to Galaxy Casino Company Limited in the terms and conditions referred in this Subsequent Proposal as follows:

1. The premium proposed remains the same as mentioned in the

Galaxy's Proposal submitted on December 7, 2002 (the "Said Proposal"), duly adapted if necessary.

2. The <u>contributions</u> referred in subparagraph (7) and (8) of Article 22 of Law nº 16/2001 shall also remain the same as mentioned in the Said Proposal

3. With regards to the <u>experience in the management of the operation of casinos</u>, it remains the same as described in the Said Proposal but now added by the enormous experience of "<u>Venetian Venture Development, LLC</u>" which Galaxy Casino Company Ltd." intends to contract as Managing Company as per communications submitted today to the Commission.

4. Regarding the <u>relevance of this Subsequent Proposal in respect of the development of employment in the gaming industry as well as professional training</u> it remains the same as stated in the said Proposal, combined with the training program offered by the "Venetian" as more particularly described in Annex A.

5. In respect of the <u>investment proposals of relevant interest to Macau</u> that the Applicant intends to accomplish according to this Subsequent Proposal, they are described in the Annex A enclosed herewith.

Macau, February 1, 2002

*(signature)*

Cartório do Notário Privado RICARDO SÁ CARNEIRO
Reconheço a assinatura supra de Pedro Ho aliás Ho On Chun, e certifico que foi feita na minha presença pelo signatário, cuja identidade verifiquei por exibição do Bilhete de Identidade de Residente de Macau nº 5/015712/2, emitido em 12/4/99, pelos Serviços de Identificação de Macau, na qualidade de administrador e em representação da sociedade denominada "Galaxy Casino S.A.", qualidade e poderes para o acto conforme verifiquei por exibição de uma certidão do registo comercial emitido em 4 de Dezembro de 2001.
Macau, aos 1 de Fevereiro de 2002.
O Notário,

*(signature)*

Conta nº 145                                                    $14,00

ANNEX A

EXECUTIVE SUMMARY

1.    Introduction

Galaxy Casino Company Limited's (GCCL) bid for a casino license in Macau represents a powerful opportunity for Macau to revitalize its casino tourism based economy and to fundamentally strengthen, broaden and diversify its entire economic base. At its completion, GCCL's themed destination resort alone would:

(i)     bring over US$1.1 billion (8.8 billion patacas) of investment;
(ii)    employ over 7,000 people; and
(iii)   generate as much as a 20% boost to Macau's GDP.

GCCL's vision begins with a world class resort that will attract tourists to:

(i)     its all superior rooms;
(ii)    its themed architecture;
(iii)   the exciting entertainment along its festive Venetian Grand Canal;
(iv)    the tropical river and waterfalls of its pool and spa complex;
(v)     shopping, dining and live entertainment showrooms; and
(vi)    world-class exhibition and conference facilities.

GCCL's vision begins with a temporary facility, follow with a comprehensive trade show exhibition and convention center as more particularly described in the Letter (as defined below). This facility, combined with our convention and tradeshow expertise, will enable us to stimulate midweek tourist trade in Macau. Importantly, this convention and exhibition center will present the products of China to the world's buying community.

GCCL has committed no less than US$400 million (3.2 billion patacas) to immediately begin the development of our vision.

2.    Experienced Operator

The Venetian will manage the Project with an experienced and highly successful management team that is well-known for its excellence and integrity in the industry. Additional information on this management team has been provided to the PTC.

The Venetian Resort owns and operates the Venice-themed resort situated on the Las Vegas Strip in Las Vegas, Nevada. The Venetian (Las Vegas) includes 3,036 luxury suites, a gaming facility of 116,000 sq. ft., an enclosed retail, dining and entertainment complex of approx. 450,000 sq. ft. and a meeting and conference facility of approx. 500,000 sq. ft. The Venetian (Las Vegas) is physically connected to the Sands Expo and Convention Center, one of the largest trade show and

convention facilities in the U.S., and together, have approximately 1,500,000 sq. ft. of exhibition and meeting space.

The Venetian cost over US$1.3 billion (over 10 billion patacas) to build and opened in 1999. The property generates US$590 million (4.72 billion patacas) in net revenues for the year ended 31 December 2000 and is one of the most successful casino establishments in Las Vegas. The Venetian is owned by Mr. Sheldon G. Adelson, one of the most successful and wealthy businessmen in the U.S. Mr. Adelson's numerous privately-held corporations range from technological enterprises to leisure resorts – among them, the Sands Expo and Convention Center, the only privately-financed, developed and operated convention center in the U.S. In April of 1995, as Chairman of the Board and C.E.O. of the Interface Group, Mr. Adelson and his partners pioneered the largest transaction in the history of the worldwide trade show industry by selling Interface's trade show division, including COMDEX, to a Japanese corporation for nearly US$900 million (7 billion patacas).

3.    Overview of Gaming, Convention and Entertainment Project

Overview

Our vision is a master-planned multi-phased casino, tradeshow/convention and entertainment complex as described in the draft letter submitted to the Public Tender Commission ("PTC") on February 1st, 2002 (the "Letter") which remains subject to the approval of GCCL and the Venetian.

Phase I

Initially, Phase I would include 500 rooms, exhibit, conference and multi-purpose complex space (as further described in the Letter) which will be expanded as the convention and exhibition market for Macau is developed. Similar to the retail facilities at the Venetian, Las Vegas, the complex would include a themed shopping complex. In addition, a live entertainment showroom and health club, spa and gymnasium is planned. The outdoor areas would include tropical gardens, lagoons, pools, waterfalls and other amenities.

The casino hall will be reflective of a large, luxurious, Las Vegas-style casino with a wide mix of gaming tables and slot machines. It will be surrounded by restaurants, entertainment venues and shopping experiences. The project will include back of the house support facilities and parking for 1000 cars.

Future Development

Subsequent additional phases of development will include the expansion of the convention and exhibition space, additional five-star luxury hotel rooms, restaurants, stores, and entertainment room. This additional investment will be made as the market demands.

Proposed Site

No definitive site for the project has been selected. However, GCCL has identified a 160-acre plot of reclamation land on the southeastern part of the Taipa Island.

Located just east of the Rotunda da Estrada do Istmo, it is about 5 minutes from the airport and the proposed new ferry terminal. It also is close to the Lotus Bridge that connects Macau with China. This land links Mainland China to Macau and Macau's airport and passenger port transportation infrastructure, and provides land parcels large enough for Las Vegas-style tourist attractions. By bridging Mainland China to the transportation amenities of Macau, the new development would provide convenient access for tourists, and act as a cluster of attractions to develop into a tourism magnet for Macau.

## Market Positioning

The Venetian Project will appeal to a diverse group of customer segments. The property will offer a quality entertainment experience superior to anything currently available in Asia. The property will appeal to the existing Hong Kong and Macau markets and, additionally, will expand the existing customer base by providing a safe, attractive Las Vegas-quality environment. The property will specifically target business and convention travelers from all over Asia as well as higher-budget customers seeking a quality destination vacation experience. The hotel suites proposed for the project will enable the casino to aggressively market customers who will stay for longer periods than the average visitation of existing customers to Macau.

With our vast knowledge of the Asian market, combined with our extensive work with international tradeshow companies and our experience with airlines and the travel industry, our marketing efforts will initially focus on utilizing existing gaming, convention and travel industry database contacts. Additionally, we intend to create and maintain a marketing fund based on operating cash flow. With this fund, GCCL will create its own tourism promotion department and preside over wide-reaching marketing campaigns that will generate tourists, conventioneers and gamblers to Macau.

## Temporary Facility

GCCL plans to open a temporary facility as soon as possible, while the permanent facility is under construction. Further details in relation to this temporary facility (the City Club) are included in the Letter. This will provide an excellent training facility for our future staff, further reduce unemployment, and create additional revenue to Macau. This temporary facility will be of very high quality and may continue to operate after completion of the permanent facility. Permission to develop additional gaming facilities may be requested as the market demands.

## Design

The Venetian intends to retain the Jerde Partnership International, Inc., one of the world's leading architectural firms. Since 1977, the Jerde Partnership has developed some of the world's leading structures, including Las Vegas' own Bellagio Resorts (cost: US$1.9 billion (15 billion patacas); opened: 1998), Fukuoka, Japan's Canal City Hakata (cost: US$1.4 billion (11.2 billion patacas); opened: 1996) and Minnesota's Mall of America (cost: US$625 million (5 billion patacas); opened: 1992), to name a few.

Initial conceptual design materials depicting preliminary designs of the proposed project are included in GCCL's Tender materials for your reference. A diagram of the project master plan is attached to this summary.

4.    Beneficial Impact on Macau

Project Capital Commitment

The total development cost of the Venetian (Macau) is estimated to be US$1.1 billion (8.8 billion patacas). The Project will be constructed in Phases. Phase I is estimated to be approximately US$400 million (3.2 billion patacas).

Introduction of International, Public, Regulated Sponsors

The operation of casinos by US operators anywhere in the world must be conducted to meet the stringent regulatory standards of US gaming authorities. The Venetian in Las Vegas and its gaming operations are subject to extensive regulations by the Nevada Gaming Commission. The Venetian's securities are regulated by the U.S. Securities and Exchange Commission and its senior executives are individually licensed. As world-class gaming operators and to guard against any violation that may jeopardize the Venetian's gaming license, the company has adopted a series of internal controls or self-regulation, that ensure that all management and employees comply with certain policies and controls. **The policy of the Venetian is to conduct its business with honesty and integrity and in compliance with the highest legal and ethical standards. Management of the operations of the Venetian Casino (Macau) will be conducted to meet the high standards of the Venetian (Las Vegas).**

Broadening the Business Model

GCCL proposes to develop a very different business to the existing casino operations in Macau. The business model will resemble the Venetian Las Vegas where, unlike its competitors, 60% of the business profits are derived from convention, hotel, resort and entertainment activities and only 40% is derived from gaming. **This model will have the greatest positive impact on Macau's economy and create the greatest economic diversification and opportunity for growth.**

What will truly differentiate this Project, in both design and operation, will be its emphasis on the convention, conference and business traveler market. This emphasis is critical to increasing mid-week occupancy for all Macau hotels and generally diversify and grow the Macau economy.

Positive Impact on Macau Labor Force

Upon full implementation of this bid, over 13,000 jobs will be created. This employment increase will introduce leading casino systems management and operating skills as well as those relating to marketing, accounting and hospitality management.

Economic Impact on Macau

As noted above, Gaming tax will generate significantly higher revenues for Macau than current gaming tax receipts.

Non-gaming profits, a significant component of our planned project, will generate incremental corporate tax for Macau.

5.   Building a Convention/Exhibit-Based Casino Resort and Temporary Casino Facility

It is anticipated that design, approval, and construction of a five-star Las Vegas-style hotel would be completed within three years. Given this time frame, we are also requesting permission to operate a temporary casino, dining, and entertainment facility while the permanent facility is under construction which could provide an excellent training facility for our future staff, further reduce unemployment in the area, and create additional revenue to Macau. We are in the process of identifying an appropriate currently vacant building in Macau which can be quickly retrofitted and developed as such a temporary facility, and which could be opened within one year of receiving the subject gaming concession. This temporary facility, although developed quickly, will be a major tourism attraction, focusing on upscale travelers and providing luxury amenities, and will likely continue to operate after completion of the permanent facility.

Phase 1 of the casino, conference, and entertainment facility (which is described briefly in the Letter) will include the following:

A. Hotel Guest Suites

The hotel would initially feature approximately 500 luxurious suites with all-marble baths and foyer, crown molding, fine fabric, two phone lines, a computer modem line with high speed internet access, fully stocked mini-bar, and an in-room safe.

B. Conference Rooms/Exhibition Hall/Multi-Purpose Facility

A large exhibit, conference and multi-purpose complex will be built with the ability to be expanded as the convention and exhibition market for Macau is developed. The primary advantage of The Venetian group (in addition to developing the largest resort in Las Vegas with over 800,000 square meters under one roof) is its experience in the conference/exhibition center business. The owner of The Venetian, Sheldon G. Adelson, created and developed the world's largest trade show, the giant high-tech Comdex exhibition. The Venetian operates the world's largest privately-owned conference/exhibition complex of 170,000 square meters in Las Vegas. The

combination of exhibition development and conference/exhibition management expertise with conference/exhibition centers in Macau, Beijing, and Las Vegas should rapidly develop a new tourism base for Macau that will further diversify its tourism economy.

C. Restaurants

Restaurants of Chinese and Western styles will be built near the casino halls, providing convenient service for tourists.

D. Shopping Center

Similar to The Venetian's Grand Canal Shoppes Shopping Center in Las Vegas (note: this is the **second most lucrative mall in the world** generating sales of nearly $1,000 US (8,032 patacas) per square foot of leased space), shops and stores will be arranged along a Venetian street-scene with stone walkways, canals, bridges, and The Venetian's famous singing gondoliers.

E. Live Entertainment Showroom

A luxurious showroom with flexible stage, lighting and sound will be built to present varied entertainment shows from the elaborate stage shows of Las Vegas to the nightclubs of the Pearl River Delta.

F. Health Spa, Gymnasium

Featuring saunas, steam rooms, and health and beauty treatments.

G. Garden Pool and River Ride

Tropical swimming lagoon, water gardens, waterfalls, circulating river attraction meandering through lush foliage of a tropical rain forest.

H. Art Museum

The Guggenheim Hermitage Museum located inside The Venetian in Las Vegas displays world-renowned art valued in the billions of U.S. dollars. The Venetian would propose to build a similar attraction for Macau through its affiliations with the Guggenheim in New York and The Hermitage in St. Petersburg and their affiliations with museums in Vienna and Shanghai. The Art Museum of Macau would display world-renowned collections of western and eastern art and artifacts bringing an additional element of culture and education to Macau's tourism appeal. This museum, like its sister facility in Las Vegas, will also have special art programs available for students in Macau schools.

I.  Entrance Feature

A large pool of water representing the sea approach to Venice greets the visitor upon arrival to The Venetian. Fountains, waterfalls, and a floating restaurant add activities and interest to the arrival experience to transport the visitor to The Venetian experience.

J.  Casino

As more particularly described in the Letter.

K.  Back of House Support Facilities
L.  Parking (For 1000 Cars)

*Expanding The Facility*

Additional phases of development would expand the exhibit center, add thousands of hotel rooms, restaurants, stores, and entertainment rooms, and make The Venetian a full Las Vegas entertainment destination in the heart of Macau.

Initial conceptual design materials depicting preliminary designs of the proposed project are included in GCCL's Tender materials for your reference.

6.    **Summary of Phase I**

Phase I development represents not only a $400,000,000 US (3.2 billion patacas) full-fledged convention-anchored destinations resort, but the beginning of a new Macau. The Venetian Resort will be master-planned to include a huge convention/exhibition hall, thousands of all-suite rooms, restaurants, retail stores, entertainment rooms, and museums representing a total investment of over $1.1 billion US (8.8 billion patacas).

7.    **Jerde Partnership International, Inc. – Architect**

To help facilitate this development, The Venetian has retained the Jerde Partnership International, Inc., one of the world's leading architectural firms, well-known for designs of large-scale retail and mixed use projects that successfully create a sense of place and identity for cities world wide. Since 1977, the Jerde Partnership has developed some of the world's leading structures, including Las Vegas' own Bellagio Resort (cost: $1.9 billion US/15,260,799,217 patacas; opened: 1998), Fukuoka, Japan's Canal City Hakata (cost: $1.4 billion US/ 11,244,799,423 patacas; opened: 1996) and Minnesota's Mall of America (cost: $625 million US/5,019,999,742 patacas; opened: 1992), to name a few.

Projects of the Jerde Partnership have been recognized by the American Institute of Architects (AIA), the International Council of Shopping Centers (ICSC), and two ministries of the Japanese government, among many others. With that in mind, the Venetian finds the

Jerde Partnership well-suited to make its vision for Macau a reality. We have included additional background information on the Jerde Partnership for your reference.

## 8.   The Venetian Group - Experienced Management

The Venetian group's top management comprises the following executives. Please note that they are highly experienced executives who have been licensed for many years in a variety of major gaming jurisdictions and thoroughly scrutinized and approved by the Nevada Gaming Control Board and other regulatory agencies.

(i)   SHELDON G. ADELSON

CHAIRMAN OF THE BOARD

As Chairman of Las Vegas Sands, Inc. (LVSI), developer of the $1.5 billion US (12,047,999,382 patacas) Venetian Resort-Hotel-Casino, a 3,036 suite luxury resort, hotel, retail, casino and convention complex, *Mr. Sheldon G. Adelson* is a "Forbes 400" member and Las Vegas resident. He is the sole creator of COMDEX, the world's largest trade show. Known worldwide for his business acumen and visionary leadership, he is also the Chairman of G.W.V., a Needham, Massachusetts-based travel company and one of the largest regional travel wholesalers in the United States.

Mr. Adelson's numerous privately-held corporations range from technological enterprises to leisure resorts. Among them, the Sands Expo and Convention Center, the only privately-financed, developed, and operated convention center in the United States. In April of 1995, as Chairman of the Board and C.E.O. of The Interface Group, Mr. Adelson and his partners pioneered the largest transaction in the history of the worldwide trade show industry by selling Interface's trade show division, including COMDEX, to a Japanese corporation for nearly $900 million US.

COMDEX, under Mr. Adelson's creation and development, grew into what is now considered "the" premiere event for the worldwide computer and communications industry. Since the sale of his trade show division, Mr. Adelson assumed sole ownership of LVSI and is currently overseeing The Venetian Resort-Hotel-Casino. . .

(ii)   WILLIAM P. WEIDNER

PRESIDENT AND CHIEF OPERATING OFFICER

*Mr. William P. Weidner* has served as President and C.O.O. of LVSI since December of 1995. A veteran hospitality industry executive, Mr. Weidner's responsibilities include directing all development activities of LVSI, including the planning, financing, construction, and implementation stages, and the creation, review and oversight of all programs, systems, departments, and functions related to the management and administration of LVSI.

Mr. Weidner is an M.B.A. graduate of Michigan State University. After serving as Assistant Professor of Business Administration and Hotel Management at Smith College for 2-1/2 years, he spent eight years with the Marriott Hotel Group, receiving its prestigious "Man of the Year" award in 1975.

In 1978, Mr. Weidner joined Caesars in Atlantic City as Vice President of Hotel Operations, and was named Vice President of Marketing a year later. Recruited by the Pratt Organization in 1981, he went on to serve as Executive Vice President of the Greate Bay Casino Corporation, owner of the Sands Hotel and Casino in Atlantic City. In 1983, he was elected President of Greate Bay, and in 1985, President of the Pratt Hotel Corporation, Greate Bay's publicly traded corporate parent. He also served as President of Pratt's Hollywood Casino-Aurora subsidiary and sat on the Board of Directors of Pratt Hotel Corporation and Hollywood Casino Corporation.

        (iii)   BRADLEY H. STONE

## EXECUTIVE VICE PRESIDENT

As Executive Vice President of LVSI, *Mr. Bradley H. Stone* oversees the operations of The Venetian, as well as the development and construction for LVSI and all its subsidiaries. Mr. Stone is an experienced hospitality industry executive and a graduate of the prestigious Hotel School at Cornell University.

Beginning his career as a trainee at New York City's famed Plaza Hotel, Mr. Stone went on to management positions at Marriott's Essex House in New York and at Caesars in Atlantic City, where he served as General Manager.

Joining the Sands Hotel in Atlantic City as Director of Operations, Mr. Stone earned a series of promotions, first to Vice President of Hotel and Casino Operations, then to Executive Vice President, and finally to President and C.O.O., as well as Executive Vice President of the parent Pratt Hotel Corporation. Before joining LVSI, Mr. Stone was Chairman of the Casino Association of New Jersey.

        (iv)   ROBERT G. GOLDSTEIN

        (V)    PRESIDENT

        (VI)   THE VENETIAN

As Senior Vice President of LVSI and President of The Venetian, *Mr. Robert G. Goldstein* is an experienced hotel casino executive with expertise in marketing and operations.

Mr. Goldstein is a graduate of the University of Pittsburgh and holds a law degree from Temple University. In 1981, Mr. Goldstein joined the Sands in Atlantic City as Director of Casino Marketing, earning a series of promotions and ultimately becoming Vice President of Marketing and Executive Vice President. He also served as Executive Vice President of Pratt Hotel Corporation.

        (vii)   DAVID FRIEDMAN

## ASSISTANT TO THE CHAIRMAN OF THE BOARD/COUNSEL/SECRETARY

As Assistant to the Chairman, *Mr. David Friedman* brings to LVSI and The Venetian, an extensive legal background. Mr. Friedman has extensive experience in developing, financing and operating gaming, hospitality and related projects. Mr. Friedman is a magna cum laude graduate of the University of Pennsylvania with a law degree from the Georgetown University Law Center.

After graduating law school, Mr. Friedman joined the corporate law department of a large law firm. He left private practice in 1983 to join the legal department of Bally's Park Place in Atlantic City, New Jersey. In 1988, Mr. Friedman left Bally's to become counsel to the Atlantic City law firm of Horn, Goldberg, Gorny and Daniels, which was retained by Merv Griffin to assist in the acquisition of Resorts International. After completing the acquisition, Mr. Friedman became Vice President and General Counsel to Resorts through 1993. Subsequently, he became Senior Vice President of Development and Legal Affairs for President Casinos, Inc., where he served until 1995, at which time he joined the Interface Group and LVSI in his present capacity, providing legal and other assistance to Mr. Adelson in his various business activities.

Mr. Friedman also serves as the Chairman of The Venetian's Compliance Committee. Additionally, Mr. Friedman has advised numerous governments on the establishment and regulation of gaming enterprises and drafted regulations and internal controls for the Gaming Industry which continue to serve as industry standards today.  He also has extensive experience in training casino personnel, including his experience as the President of the largest gaming school on the East Coast of the United States.

HARRY D. MILTENBERGER

VICE PRESIDENT OF FINANCE

*Mr. Harry D. Miltenberger* began his career in public accounting and served a variety of publicly- and privately-held gaming companies, including The Golden Nugget, Primadonna, Boomtown, and the El Dorado.

In 1984, Mr. Miltenberger joined Golden Nugget, Inc.'s Las Vegas operating subsidiary, GNLV Corp., as Principal Financial Officer and Treasurer. His responsibilities included SEC reporting, financial reporting, forecasting, and budgeting. In 1987, Mr. Miltenberger became Chief Financial Officer and Treasurer of the Naiman Company, a San Diego-based nationwide developer of mixed-use office complexes and hotels.

In 1997, Mr. Miltenberger became Vice President of Finance for Las Vegas Sands, Inc., the developer of The Venetian Casino Resort. His responsibilities include financial reporting and accounting activity for the company, as well as its subsidiaries.  Mr. Miltenberger is a California Certified Public Accountant.

Set forth below is a Corporate Organization Chart, which summarizes the above relationships:



The Venetian in Las Vegas and its gaming operations are subject to extensive regulation by the Nevada Gaming Commission, the Nevada State Gaming Control Board and Clark County. The Venetian's securities are regulated by the United States Securities and Exchange Commission. Taken together, these regulators have broad authority with respect to licensing and registration of entities and individuals involved in gaming and disclosure of financial information. During operation, The Venetian Las Vegas may be required to disclose the identities of the holders of its securities to the Nevada Gaming Authorities upon request. The Nevada Commission may, in its discretion, require the holders of any securities of The Venetian to file an application, be investigated and be found suitable to hold these securities.

To guard against any violation that may jeopardise its gaming license, The Venetian has adopted a series of internal controls, or self-regulation, that ensure that all management and employees comply with certain stringent policies and controls. Stated simply, the policy of The Venetian is to conduct its business with honesty and integrity, and in accordance with proper legal and ethical standards. The Venetian has produced a Compliance Policy which is administered by a Compliance Committee, and which sets forth responsibilities of all Venetian executives and employees. A copy of this Compliance Policy is attached for your information. A similar policy tailored to Macau operations will be implemented by GCCL.

## 10. The Venetian Business Model

The Venetian assures high occupancy and higher average daily room rates year-round with the 1.7 million square foot combined Sands Expo and Congress Center – making The Venetian campus the largest combined meeting, conference and hotel facility in the world. In that respect, The Venetian is different from all other Las Vegas mega-resorts in

that its own meeting facilities enable it to displace weaker mid-week tour and travel customers with higher-value convention and trade show attendees.

The Venetian's luxury, all-suite rooms cater to a higher-budget customer mix composed of premium casino players and higher-end business and free and independent travelers. On the highest occupancy weekends, players will be assured a suite at The Venetian when they may not receive one at other Strip resorts that have limited suite inventory. Additionally, the Sands Expo and Convention Center continues to bolster mid-week occupancy throughout Las Vegas, as it has since it opened in 1990. **GCCL will bring a very similar business model to Macau to assure maximum diversification of the economy, job creation, and positive economic impact.**

In addition to the seven high-quality restaurants in the mall, the casino floor features six high-end brand-name restaurants including Zagat's #1 restaurants: from San Francisco, Postrio; from Los Angeles, Pinot and Valentino; from New York, Lutece; and from New Orleans, Emeril Lagasse's new Delmonico Steak House. This name-brand "restaurant row" concept draws upscale visitors and gaming "high rollers."

The Venetian has dispelled yesterday's assumptions and created a new Las Vegas that attracts millions of new visitors who might normally head for other resort destination cities, such as Palm Springs, San Francisco or Scottsdale.

Unlike other hotel operators in Las Vegas, The Venetian derives 60% of its profit from hotel, resort and conference operations, while just 40% stems from gaming. By contrast, other so-called Las Vegas "strip" hotels generally rely on their casinos for over 50% of their profits.

And, the awards keep coming in...

## 11. Awards Bestowed Upon The Venetian

| | |
|---|---|
| Top 100 Hotels in the Continental US & Canada | *Travel & Leisure Magazine* |
| Ultimate 10 Hotels in the World | The Learning Channel |
| Grandest Hotels in the World (out of 10 hotels) | *London Sunday Mail* |
| Best Business Hotels (out of 7 hotels) | *American Way Magazine (American Airlines)* |
| Largest Standard Hotel Room in the World | *Guinness Book of World Records* |
| Best of the West (out of 50 hotels) | *Meetings Magazine* |
| Image of the Year Award (for six uniforms) | Nat'l Assoc. of Uniform Manufacturers & Distributors |
| 2000 Gold Key Award | *Meetings & Conventions Magazine* |
| 1999 Planners' Choice Award | *Meeting News* |
| Best Architecture | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Hotel Lobby | *Las Vegas Review-Journal--Best of 2000 Awards* |

| | |
|---|---|
| Best Amusement Attraction—Gondola Rides | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Place to People Watch—Grand Canal Shoppes | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Hotel Shop—Celebration of Golf | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Individual Store—Ripa di Monti | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Asian Restaurant—Royal Star | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best Italian Restaurant—Zefferino | *Las Vegas Review-Journal--Best of 2000 Awards* |
| Best of Award of Excellence—Valentino | *Wine Spectator Magazine* |
| Award of Excellence—Delmonico | *Wine Spectator Magazine* |
| Best Chinese--Royal Star | *Las Vegas Life--Epicurean 2000 Awards* |
| Best Steakhouse—Delmonico | *Las Vegas Life--Epicurean 2000 Awards* |
| Best Desserts—Postrio | *Las Vegas Life--Epicurean 2000 Awards* |
| Top 10 Resort Spas in North America—Canyon Ranch | *Conde Nast Traveler Magazine* |
| Seven Best Fitness Day Spas—Canyon Ranch | *Shape Magazine* |

## 12. Recruiting and Training

The Venetian in Las Vegas is generally regarded as one of the best employers, if not the best employer, in Las Vegas. There are a variety of reasons for this.

The Venetian has created unique benefit plans for its staff (which it refers to as "team members") that are designed to help team members better balance their personal and professional lives, so when they are at work they are in the best possible frame of mind to serve the guest. The Venetian offers a Team Member Concierge, which provides a number of services that save people time they would have to spend running errands. The Team Member Concierge provides free copying, faxing and delivery of prescriptions and sells bus passes, stamps, greeting cards, notary public services, dry cleaning and car washing. Another popular service is having a representative of our benefits administration company on-site. If a team member has a question about a benefits claim, he or she can meet with a representative (who has on-line access to the claims system) and get the situation resolved quickly.

The Venetian was the first Las Vegas casino to offer on-site childcare. This benefit is greatly appreciated by team members who can stop in and see their children on their breaks. Childcare concerns can weigh on team members' minds and affect the level of service they provide. Knowing their child is receiving excellent care in the very same building removes this concern so team members can focus their attention on our guests' needs. The Venetian offers a free wellness center that is open 24 hours, 7 days a week to make it convenient for people to work out and stay healthy. As part of the wellness program The Venetian also offers subsidized Weight Watchers classes.

The Venetian supports team members who are experiencing serious personal challenges. It provides an Employee Assistance Program that goes beyond the norm. The program offers free counseling visits. It also provides referrals to experts for people who are having stressful situations involving legal, financial, or family issues.

Another unusual benefit is having a Community Services Representative within the Human Resources Department. This person is an expert on services available through various community agencies and programs. When team members are facing a personal problem, they can obtain confidential assistance in finding resources to help them.

People tend to be more committed to an organization when they are involved and they feel their concerns are listened to and their ideas are valued. The Venetian uses a variety of methods to get team members involved in making The Venetian a great place to stay and to work.

The Venetian's President conducts "Coffees with the President" in which he meets for about an hour with ten to 15 team members from various departments two or three times a week. He also meets with managers for "Lunches with the President" twice each month.

The Human Resources Department conducts regular meetings with groups of team members and managers to get feedback on how things are going and suggestions for improvement. Issues are then discussed and, when possible, resolved at monthly "Work Environment Improvement Meetings," which involve the key operational Vice Presidents and Directors. The Venetian communicates responses to all the issues raised so team members know that their concerns can be effectively addressed.

The Venetian has a positive discipline process that focuses on building team member commitment to change, and which includes a Peer Review system that involves team members in reviewing any terminations or suspensions for fairness.

Included with this Tender submission is additional information regarding certain community outreach and training programs at The Venetian, which have helped to make The Venetian the most admired and respected employer in Las Vegas by Las Vegas' workforce. Similar programs, tailored to Macau operational requirements, would be instituted by GCCL. Also included is a preliminary management organization chart and staffing plan for the project.


13. Educational Outreach

With expertise provided by The Venetian and guided by David Friedman, who at one point during his career was the president of the largest casino school on the East Coast, The Venetian will work with all schools in Macau, such as the University of Macau, Macau Polytechnic Institute, the Institute For Tourism Studies, Inter-University Institute of Macau, Asia International Open University (Macau), The Institute of European Studies of Macau, United Nations University – International Institute for Software Technology, Macau University of Science and Technology, and Macau Institute of Management in developing a variety of educational outreach programs. The Venetian will become a corporate partner with these institutions to ensure the resources of the project will be accessible to Macau residents and workers.

14. Bringing Cultural Attractions – The Guggenheim and Hermitage Museums

In October, The Solomon R. Guggenheim Foundation opened two museums in Las Vegas at The Venetian: the Hermitage Guggenheim Museum, a 7,660-square-foot museum for the presentation of the collections from the Solomon R. Guggenheim Foundation, New York and The State Hermitage Museum in St. Petersburg, Russia; and the Guggenheim Las Vegas, a 63,700-square-foot facility for the presentation of special large-scale exhibitions. The two new buildings have been designed by Rem Koolhaas, a Dutch architect and winner of the prestigious 2000 Pritzker Prize.

The Guggenheim Hermitage Museum has been made possible through an alliance with The Venetian. "The new Guggenheim Hermitage Museum and Guggenheim Las Vegas at The Venetian will be the cornerstone of the continuing cultural renaissance of Las Vegas," said Sheldon Adelson, Chairman of The Venetian. "The Guggenheim is not the first cultural institution to have a presence in Las Vegas, nor is it the first occasion for world-class art to be seen in this city. However, the components involved—the Solomon R. Guggenheim Foundation, the State Hermitage Museum, Rem Koolhaas, and Frank Gehry, joining forces with The Venetian—make it by far the most compelling program to date."

The Guggenheim Hermitage Museum is located at the front of The Venetian, adjacent to the main entrance lobby. The opening exhibition features important works from the collections of The State Hermitage Museum in St. Petersburg and the Solomon R. Guggenheim Foundation. Subsequent exhibitions will be developed by the directors and curatorial staffs of the Guggenheim and Hermitage and will change approximately twice a year. The Guggenheim Hermitage Museum is operated by the Solomon R. Guggenheim Foundation.

The inaugural exhibition at The Guggenheim Hermitage Museum presents a selection of 45 masterpieces that highlight the distinct but highly complementary strengths of these two world-renowned collections. *Masterpieces and Master Collectors: Impressionist and Early Modern Paintings from the Hermitage and Guggenheim Museums* features key examples of Impressionism, Post-Impressionism, and early Modernism, including exceptional paintings valued at over $2 billion US (16,063,999,176 patacas) by Cézanne, Chagall, Kandinsky, Matisse, Monet, Picasso, Renoir, and van Gogh.

The Guggenheim Las Vegas was conceived for the presentation of special exhibitions, ranging from contemporary painting and sculpture, to architecture and design, and multi-media art. "The exhibition spaces at the Guggenheim Las Vegas were inspired—in part—by the large gallery at the Guggenheim Museum Bilbao," said Mr. Thomas Krens, the Director

of the Guggenheim. "In 1999, we presented nine steel sculptures by Richard Serra in that space, each piece weighing approximately 150 tons. It was one of the most beautiful exhibitions I have ever experienced; the equation between objects and the Frank Gehry space was sublime. From that point on, it was absolutely clear. The challenge for the Guggenheim Las Vegas was to expand upon the Bilbao space in every way possible, with an emphasis on difference, context, flexibility, and practicality. I believe that we have designed a space in Las Vegas that is absolutely unique. Rem Koolhaas brings an industrial aesthetic, an impeccable precision, and a powerful sense of space and humor to all aspects of the design."

The main gallery in the 63,700-square-foot building is approximately 210-feet-long, 160-feet-wide, and 70-feet-high. The largest gallery features a 70-foot by 70-foot pivoting door, as well as a functioning industrial bridge crane—hovering close to the ceiling and suspended from tracks at either side of the space—with a lifting capacity of 35 tons. The main floor of the large gallery is breached by a 210-foot by 30-foot trench, which can either be covered with 21 five-ton trench covers to create a single level, or the trench covers can be selectively removed to reveal the galleries on the lower level. The lower level is accessed either by escalators or via a lime green processional staircase 30-feet-wide. A skylight in the ceiling—12-feet by 70-feet—features motorized trap covers, located on the roof, which can either filter out all natural light or be fully open to the sky. A media wall that is 60-feet-high and 120-feet-wide comprises the northern wall of the main gallery.

The inaugural exhibition of the Guggenheim Las Vegas is *The Art of the Motorcycle*, first presented at the Solomon R. Guggenheim Museum in 1998 and one of the most successful art exhibitions in history. With more than 130 motorcycles on display, the exhibition chronicles the most compelling moments in motorcycle design and technology—from its humble beginnings as a steam-powered vehicle to the sophisticated state of motorcycle production today. The exhibition both explores and celebrates the motorcycle as a quintessential symbol of the Modern age.

Included in our Tender materials is an additional information package regarding the Guggenheim museums. This is an example of the type of cultural program The Venetian has developed in Las Vegas. It is anticipated that similar cultural attractions and facilities would be developed by GCCL in Macau that would be accessible to Macau residents and students.

## 15. Marketing Expertise

### Brand Identification
In only two and one-half years of operation, The Venetian Hotel and Casino has become recognized worldwide as a leading convention and casino destination resort taking its place as one of the major brand names on the Las Vegas strip.

The Venetian has appeared on every network and cable television broadcast in the United States as well as major networks in Europe, Asia and South America. Non U.S. television exposure includes China T.V., Taiwan T.V., FTV, CTS, CTN, KNUV and many others. Articles on The Venetian have appeared in every major magazine and daily newspaper including Time, Newsweek, Forbes, Business Week to USA Today, Wall Street Journal, New York Times, Los Angeles Times, CDN Magazine and The Great Daily News. As an example, more than 1,000 stories, television segments, and radio broadcasts were generated from the opening of The Venetian alone, resulting in nearly 200 million media impressions world-wide. More recently, the opening of two Guggenheim museums at The Venetian

resulted in over 300 media attendees from the United States, Europe, Asia, and South America. The result: major network and cable television exposure and front page print reviews culminating in thousands of stories equaling millions of dollars of publicity exposure. It's worthwhile to note that The Venetian has been featured on unprecedented six one-hour documentaries: "The Secrets of Venice in Vegas" (Travel Channel); "On the Inside: The World's Largest Hotel" (Discovery Channel); "King of the Strip" (The Learning Channel); "High Rollers" (E-Entertainment); "Modern Marvels – The Venetian" (The History Channel); and "Future Makers" (Discovery Channel). These one-hour specials are a part of cable programming that rotates as many as 15 times per year resulting in additional millions of exposures for The Venetian Brand. Since opening in 1999, The Venetian has been recognized as one of the "10 Ultimate Hotels in the world" (The Learning Channel); "One of the Ten Grandest Hotels in the World" (London Sunday Mail); "One of the Top 100 Hotels in the World" (Travel and Leisure Magazine); "One of the Seven Best Business Hotels" (American Way Magazine); "One of the World's Best Places to Stay in the World" (2001 Gold List – Conde Nast Traveler), and the list goes on.

Marketing Activities: Since its opening, The Venetian has spent over $40 million U.S. in direct advertising in American and international markets in major newspapers, magazines, billboards and in television advertising. The Venetian sent over 1,176,000 pieces of direct mail to date in the year 2001 alone. In its casino database of over 700,000 players, Asian players represented over 20% of the casino table games volume. Almost 250,000 e-mail promotional communications have been sent since September 11th to re-energize demand efforts after that tragic event. The Venetian's web site averages over 18 million visits per month, over 15% of these visitors are from outside the U.S.

Casino Marketing
The Venetian employs more than 38 casino sales representatives. Each executive spends 4-6 hours per day telemarketing to targeted casino players. Player packages, entertainment offers and special events (boxing matches, Hollywood star gatherings, famous athletes' events, etc.) are used as promotional vehicles to invite casino guests to visit The Venetian.

Asian Marketing Initiatives
The Venetian Asian Marketing Department has 16 full time employees. The Asian Player Services Marketing Department provides comprehensive coverage of the casino floor, assists Asian guests with any service issues. The staff has multiple language capabilities, including Japanese, Korean, Mandarin and Cantonese. A multi-lingual Butler team provides assistance to all premium casino players. The Department also has extensive associations with independent agents, who represent domestic and international players from all over Southeast Asia. A retail shopping discount program with the Japanese Travel Bureau (JTB) in Grand Canal Shoppes augment these efforts.

Asian Offices/Reps, Cities/Activities
Current office locations are in Hong Kong and Taiwan, as well as Vancouver, British Columbia and Monterey Park, California. Offices coordinate sales activities under direction of the Marketing Office located in Las Vegas. Each Branch Office is staffed with an executive, a marketing representative and an administrative assistant. There are also 13 commissioned representatives throughout Southeast Asia, who coordinate player trips and in-market parties.

Venetian Executives from Las Vegas make several sales trips to Southeast Asia annually with high-level executive personnel and casino sales personnel to promote The Venetian throughout the region.

Asian Special Events such as a million dollar baccarat tournament, Chinese New Year event with live entertainment and catered banquet, Asian Christmas concert with live entertainment and drawings for prizes, a variety of premium blackjack, craps, slot and video poker tournaments, and a high-end Christmas shopping program for established casino players are used to support selling activities.

## 15.    Convention/Trade Show Marketing

The owner of The Venetian/Sands is Sheldon G. Adelson, the founder of COMDEX, which remains one of the largest trade shows in the world.  Several employees from the Interface Group, who ran COMDEX, are now employed by The Venetian/Sands.  Under Mr. Adelson, COMDEX events in Brazil, Canada, and France became the largest trade shows in those respective countries.  COMDEX eventually launched events in Asia, including COMDEX China in Beijing, COMDEX Asia in Singapore, and COMDEX Japan in Tokyo.
The Venetian/Sands organization has relationships with the largest trade show organizers in the world, including Reed exhibitions, Advanstar, VNU expositions, Hanley Wood, as well as numerous associations, such as the National Association of Broadcasters, the Sporting Goods Manufacturers Association, and the Automotive After Market Industry Association. The Venetian plays host to 25 of the Tradeshow 200 shows (the 200 largest shows in the United States).

The Venetian employs 25 sales representatives that "sell" the group/convention market into our complex.

The Venetian/Sands advertises in many of the top meeting publications, including Meetings and Conventions, Meetings West, Corporate and Incentive Travel, Convene, MPI publications, EXPO magazine, OMFG (Official Meeting and Facilities Guide) as well as several others.  The Venetian sends direct mail to all exhibitors in trade shows held in Las Vegas with a call to action that includes the sales telephone number, email address, and Venetian's web site address.  This past August (2001), The Venetian hosted MPI's annual WEC conference and played host to several thousand meeting planners (members of MPI) from around the world.

The Venetian has earned numerous awards from the meetings industry.  They include Meeting and Convention's Gold Award for 2001, which honors the best properties, food and beverage services, and convention and visitors bureau, as voted by the readers of their magazine.  In addition, The Venetian was named the "Best of the West" in 2000 by the readers of Meetings West magazine.  In addition, The Venetian was recognized as the 1999 "Planner's Choice" Award by Meeting News magazine.

With our the vast knowledge of the Asian market, combined with our extensive work with international tradeshow companies and our vast experience with airlines and the travel industry, our marketing efforts for this project will initially focus on utilizing and expanding upon existing gaming, convention, and travel industry database contacts and programs.

Additionally, customized marketing programs will be implemented to lure business and convention travelers to Macau, and increase mid-week occupancy and visitation to the area. Further, we intend to create and maintain a marketing fund based on operating cash flow. With this fund, GCCL will create its own Tourism Promotion Department and preside over wide-reaching marketing campaigns that will generate tourists, conventioneers and gamblers to Macau.

**澳門特別行政區** | REGIÃO ADMINISTRATIVA ESPECIAL DE MACAU

24

第 26/2002 號行政長官批示 | Despacho do Chefe do Executivo n.º 26/2002

行政長官行使《澳門特別行政區基本法》第五十條賦予的職權，並根據第 16/2001 號法律第十一條第一款，以及第 26/2001 號行政法規第八十二條第二款、第三款的規定，作出本批示。

透過第 217/2001 號行政長官批示，展開了一項娛樂場幸運博彩經營批給的公開競投，批給的數目為三個，與此同時，亦核准了有關競投方案。

共十八家參與競投公司的標審獲接納。

經過諮詢及磋商階段，"娛樂場幸運博彩經營批給首次公開招投委員會"（以下簡稱"競投委員會"）向行政長官提交了一份按照第 26/2001 號行政法規第四十四條第三款（八）項及第八十二條第三款的規定而編製的具說明理由的報告書，以便適用第 16/2001 號法律第十一條第一款以及第 26/2001 號行政法規第八十二條第七款的規定。

一、經考慮競投委員會所提交具說明理由的報告書的內容，其內獲得本人的贊同，此外，尤其考慮到載於該報告書的結論及建議部分，認為下列參與公開競投的公司所提交的標書對澳門特別行政區最為有利，現將三個供公開競投的娛樂場幸運博彩經營批給臨時判給等參與競投公司：

——銀河娛樂場股份有限公司

——永利渡假村（澳門）股份有限公司

——澳門博彩股份有限公司

二、為按照第 26/2001 號行政法規第七十七條第六款的規定在需要時招回參與競投公司的目的，以及按照競投方案第 24.2 款的規定，現順序排列出第四、第五、第六位的未獲臨時判給的參與競投公司：

第四位——MP 娛樂股份有限公司

第五位——MGM 娛樂股份有限公司

第六位——澳門麗星股份有限公司

二零零二年二月八日

行政長官 何厚鏵

Usando da faculdade conferida pelo artigo 50.º da Lei Básica, e nos termos do disposto no n.º 1 do artigo 11.º da Lei n.º 16/2001 e dos n.º 2 e 3 do artigo 82.º do Regulamento Administrativo n.º 26/2001, o Chefe do Executivo manda:

Pelo Despacho do Chefe do Executivo n.º 217/2001 foi aberto um concurso público para a atribuição de três concessões para a exploração de jogos de fortuna ou azar em casino, ao mesmo passo que era aprovado o respectivo Programa do Concurso.

Foram admitidas as propostas de adjudicação de dezoito concorrentes.

Após a fase de consultas e negociações, a «Comissão do primeiro concurso público para a atribuição de concessões para a exploração de jogos de fortuna ou azar em casino» (adiante designada por Comissão do Concurso) apresentou ao Chefe do Executivo, para efeitos do disposto no artigo 11.º, n.º 1, da Lei n.º 16/2001 e no artigo 82.º, n.º 7, do Regulamento Administrativo n.º 26/2001, um Relatório Fundamentado elaborado ao abrigo do disposto no artigo 44.º, n.º 3, alínea 8), e no artigo 82.º, n.º 3, do Regulamento Administrativo n.º 26/2001.

1. Atendendo ao teor do Relatório Fundamentado submetido pela Comissão do Concurso, cujos fundamentos merecem a minha concordância, e atento em especial a conclusão e proposta dele constantes, as três concessões para a exploração de jogos de fortuna ou azar em casino postas a concurso público são adjudicadas provisoriamente às seguintes concorrentes do concurso público, por se considerar terem apresentado as propostas mais vantajosas para a Região:

– «Galaxy Casino, S.A.»;

– «Wynn Resorts (Macau), S.A.»;

– «Sociedade de Jogos de Macau, S.A.».

2. Para efeitos de uma eventual repescagem de concorrentes, nos termos do n.º 6 do artigo 77.º do Regulamento Administrativo n.º 26/2001, e de acordo com o previsto no ponto n.º 24.2 do Programa do Concurso, hierarquizam-se, respectivamente em 4.º, 5.º, e 6.º lugares as seguintes concorrentes preteridas:

– 4.º – «Sociedade de Diversões MP, S.A.»;

– 5.º – «Sociedade de Diversões MGM – Grand (Macau), S.A.»;

– 6.º – «Macau Star, S.A.».

8 de Fevereiro de 2002.

O Chefe do Executivo, Ho Hau Wah.



印務局

Imprensa Oficial

每份價銀二元正

PREÇO DESTE NÚMERO $ 2,00

PWRW&G Translation 02/20/2002

# OFFICIAL BULLETIN OF

# THE MACAU SPECIAL ADMINISTRATIVE REGION

Date: February 11, 2002

### CHIEF EXECUTIVE ORDER NO. 26/2002

### REGARDING THREE PROVISIONAL CONCESSIONS TO OPERATE CASINO GAMES OF CHANCE

1

MACAU SPECIAL ADMINISTRATIVE REGION

-------------

Chief Executive Order No. 26/2002

The Chief Executive hereby issues this Order by exercising the authorities conferred by Article 50 of the Basic Law of the Macau Special Administrative Region and in accordance with Article 11.1 of Law No. 16/2001 and Articles 82.2 and 82.3 of the Administrative Regulations No. 26/2001.

Based on the Chief Executive Order No. 217/2001, the public tender for three concessions to operate the casino games of chance was carried out. At the same time, the relevant tender proposals were approved.

Eighteen tender proposals submitted by the tenderers were accepted.

Upon consultation and discussion, the Commission for the First Public Tender to Grant Concessions to Operate Casino Games of Chance (the"Tender Commission") has submitted to the Chief Executive a Report on Explaining the Reasons for Granting Concessions to Operate Casino Games of Chance (the "Report") prepared in accordance with Articles 44.3 (8) and 82.3 of the Administrative Regulations No. 26/2001 so as to apply Article 11.1 of Law No. 16/2001 and Article 82.7 of the Administrative Regulations No. 26/2001.

1.     After giving consideration to the content of the Report submitted by the Tender Commission, I agree with the basis of the Report. In addition, especially giving consideration to the conclusion and proposal part in the Report, I think that the tenders submitted by the following tenderers are the most favorable to the Macau SAR, and hereby grant the three provisional concessions to operate casino games of chance to such tenderers:

-     Galaxy Casino Company Limited

-     Wynn Resorts (Macau) Limited

-     Sociedade de Jogos de Macau, S.A.

2

2.    For the purpose of calling back the tenderers when necessary according to Article 77.6 of the Administrative Regulations No. 26/2001, and according to Article 24.2 of the tender proposal, the fourth, fifth and sixth tenderers that are not granted the provisional concession are ranked as follows:

The fourth place - MP Entertainment Company Limited

The fifth place - MGM - Grand (Macau) Limited

The sixth place - Macau Star Limited

February 8, 2002

Chief Executive    Ho Hau Wah